220.    PRPD shall develop protocols for collecting, analyzing, and reporting the information required by this Agreement. These protocols shall be developed and implemented in coordination with the TCA and shall be approved by the DOJ prior to implementation.

221.    PRPD shall develop and maintain an automated record management system and electronic files as part of the Action Plans developed for each subsection above.

222.    PRPD shall provide each supervisor with handheld recording devices and require that supervisors use these devices to record complainant and witness statements taken as part of use of force or misconduct complaint investigations.

223.    All officers shall have secure access to National Crime Information Center ("NCIC") data for valid law enforcement purposes only. PRPD shall develop a protocol for the handling and use of NCIC data.

224.    Nothing in this Agreement shall be construed as prohibiting PRPD from contracting services related to technology and data collection, entry, and analysis.

## XIV.   IMPLEMENTATION, COMPLIANCE ASSESSMENT, AND ENFORCEMENT

### A.    Technical Compliance Advisor

225.    The Parties shall select a Technical Compliance Advisor ("TCA") to assess and report whether the provisions of this Agreement have been implemented, and whether this implementation is resulting in constitutional and effective policing, professional treatment of individuals, and increased community trust of PRPD.

226.    The TCA shall only have the duties, responsibilities, and authority conferred by this Agreement. The TCA shall not, and is not intended to, replace or assume the role and duties of PRPD, including the Superintendent, UCCJ, or any other agency official of the

71

Commonwealth of Puerto Rico. The TCA shall be subject to the supervision and orders of the Court, consistent with this Agreement, the Court's dismissal order, and applicable law.

227.    In order to assess and report on PRPD's implementation of this Agreement and whether implementation is having the intended beneficial impact on policing and community trust in Puerto Rico, the TCA shall conduct the reviews specified in this Agreement; shall review PRPD policies, training material, protocols, and programs developed and implemented pursuant to this Agreement; and conduct such additional audits, reviews, and assessments as the TCA or the Parties deem appropriate, or the Court, consistent with this Agreement and the dismissal order.

**B.      Review and Implementation of Policies, Procedures, and Programs**

228.    Consistent with this Agreement, PRPD shall submit all new and revised policies, procedures, plans, programs, protocols, forms, systems, and mechanisms required by this Agreement to the TCA and DOJ for review and comment. DOJ shall have 15 days to complete its review and submit comments, if any, to PRPD and the TCA. The TCA may grant DOJ a reasonable extension. If DOJ does not submit any comments within the 15-day period or within the extension period granted by the TCA, DOJ shall be deemed not to object to the PRPD submission. The TCA shall complete its review and approval within 30 days of PRPD's submission. If the TCA or DOJ object to the proposed new or revised policy, procedure, plan, program, protocol, form, system, or mechanism, it shall note the objection in writing to all Parties within its respective review period. If neither the TCA nor DOJ object or offer comments to the new or revised policy, procedure, plan, program, protocol, form, system, or mechanism, PRPD agrees to implement it within 45 days of it being provided to DOJ and the TCA.

72

229.     PRPD shall have 15 days to resolve any objections to the new or revised policies, procedures, plans, programs, protocols, systems, or mechanisms implementing the specified provisions. If, after this 15-day period has run, DOJ maintains its objection, then the TCA shall have an additional 15 days to resolve the objection. If either party disagrees with the TCA's resolution of the objection, either Party may ask the Court to resolve the matter. The TCA shall determine whether in some instances an additional amount of time is necessary to ensure full and proper review of policies. Factors to consider in making this determination include:  1) complexity of the policy; 2) extent of disagreement regarding policy; 3) number of policies provided simultaneously; and, 4) extraordinary circumstances delaying review by DOJ or the TCA. In determining whether these factors warrant additional time for review, the TCA shall fully consider the importance of prompt implementation of policies, and shall allow additional time for policy review only where it is clear that additional time is necessary to ensure full and proper review. Any extension to the above timelines by the TCA shall also toll PRPD's deadline for policy implementation.

**C.     Development, Implementation, and Assessment of Action Plans**

230.     PRPD shall hire and retain qualified employees, or reassign qualified current PRPD employees, to strengthen PRPD's Reform Unit ("RU"), which shall be an interdisciplinary and multi-rank unit with the skills and abilities necessary to plan for and facilitate implementation of this Agreement. The RU shall serve as the source of reform within PRPD, and PRPD shall ensure that members of the RU receive all necessary training and resources to successfully complete their tasks. This unit also shall serve as the liaison between the Parties,  the TCA, and the CICs, and will assist with PRPD's implementation of and compliance with this Agreement.

231.    At a minimum, the RU will coordinate PRPD's compliance and implementation activities; facilitate the provision of data, documents, materials, and access to Commonwealth of Puerto Rico and PRPD officials or employees to the TCA, CICs, and DOJ, as needed, in accordance with the terms of this Agreement; ensure that all data, documents and records are maintained as provided in this Agreement; and assist in assigning implementation and compliance related tasks to PRPD personnel, as directed by the Superintendent or his or her designee.

232.    The RU shall include at least one PRPD supervisor who reports directly to the Superintendent.  PRPD shall inform the TCA and DOJ of any changes to RU staff, including suspensions, reassignments, and dismissals of personnel.

233.    PRPD, with assistance from the RU, shall be responsible for drafting Action Plans that shall set forth the detailed steps PRPD will take to implement and achieve compliance with each of the Agreement's provisions in Sections III through XIII.

234.    The Action Plans shall include reasonable and achievable timeframes for completing and implementing each detailed step. At a minimum, each action plan will:  identify each policy and procedure change required; the dates by which these changes will be drafted for submission to the TCA and DOJ; the date for preparation of training curricula, modules, or plans; a schedule for training (by precinct, zone, rank, or other appropriate categorization); a schedule for the implementation of policies and procedures in the field; and the date by which compliance data will begin to be collected and reported to the Parties.

235.    Within 15 days of submission by PRPD, the TCA and DOJ will review the Action Plans to ensure that they specify actions necessary to comply with all applicable substantive provisions of the Agreement and that timelines and implementation plans are reasonable,

achievable, and prioritized to promote efficiency. DOJ shall have 15 days to complete its review

and submit comments, if any, to PRPD and the TCA. If DOJ does not submit any comments or

request a reasonable extension, then DOJ shall be deemed not to object to the Action Plan. The

TCA shall complete its review and approval within 45 days of PRPD's submission. Upon

approval by the TCA, the Action Plan shall be implemented immediately according to the

schedule set forth in the Action Plan. The TCA will provide PRPD with feedback and technical

assistance as necessary to achieve these outcomes. The TCA and DOJ will not unreasonably

withhold approval. Any dispute shall be resolved consistent with Paragraph 229.

     236.    PRPD shall submit the first set of Action Plans to the TCA and DOJ for review

and approval on a rolling basis beginning 90 days of the Effective Date and shall cover the first

three years of the Agreement. The Action Plans shall address resource, staffing, technology,

capacity, and other infrastructure needs to place PRPD in a position to implement each of the

Agreement's provisions in Sections III through XIII within three years from the Effective Date.

The Action Plans shall provide specific steps to achieve the following interim milestones during

the first three years of the Agreement:

          a)    PRPD shall create, revise, or adopt provisional policies and procedures on

use of force, searches and seizures, equal protection, and ethics that are

consistent with this Agreement and generally accepted policing practices,

and shall provide sufficient training on these policies and procedures, to

all PRPD officers assigned to, or engaged in, joint operations with federal

law enforcement agencies in Puerto Rico within 240 days of the Effective

Date. To achieve this milestone, PRPD may contract with qualified

external providers to ensure that relevant PRPD officers have the requisite

guidance, training, and capacity to provide policing services in an effective and constitutional manner. Nothing in this provision is intended to alter, modify, or substitute any inter-governmental agreement or federal program requirement concerning joint task forces or joint law enforcement operations.

b) PRPD will complete all policies required by paragraphs 22-72, 74-100, 159-201, 205-217, and 269 no later than 12 months from the Effective Date. PRPD will train 50 percent of relevant officers on those policies no later than 12 months from the date the policies are approved by the TCA. PRPD shall train all relevant officers no later than 24 months from the date the policies are approved by the TCA.

c) PRPD will complete all policies required by provisions 13-21, 73, 101-108, 145-158, 202-204, and 218-224 no later than 15 months of the Effective Date. PRPD will train 50 percent of relevant officers on those policies no later than nine months from the date the policies are approved by the TCA. PRPD shall train all relevant officers no later than 21 months from the date the policies are approved by the TCA.

237. Once the Action Plans are approved, the Parties will submit them to the Court as addendums to this Agreement. Upon submission to the Court, the Parties shall treat the Action Plans as fully incorporated, enforceable terms in this Agreement, unless the Court instructs otherwise. Once approved, the Action Plans will be deemed incorporated into this Agreement. PRPD will make the Action Plans publicly available.

238.     Should PRPD need to modify any of the timeframes set forth in the Action Plans, PRPD shall explain to the TCA, in writing, why such modification is necessary. For good cause, the TCA may extend any timeframe by up to four months. However, the TCA shall not extend the initial timeframe by more than four months without the approval of DOJ. Any modification to an Action Plan, including extensions approved by the TCA and DOJ, shall be filed with the Court for approval. DOJ shall not unreasonably withhold approval. Disputes on approval for extensions may be submitted to the Court for resolution.

239.     During the first three years from the Effective Date, the TCA shall evaluate PRPD's compliance with this Agreement by assessing PRPD's progress against its Action Plans. The TCA shall assess whether PRPD has met the timeline for each detailed step specified in the Action Plans, and whether PRPD is in full, partial, or noncompliance with the detailed steps. The TCA shall conduct the first progress assessment six months from the Effective Date, and every six months thereafter.

**D.     Compliance Reviews**

240.     In order to assess PRPD's overall compliance with and the effectiveness of this Agreement, the TCA shall conduct a reliable, comprehensive survey of members of the Puerto Rico community regarding their experiences with and perceptions of PRPD once during the first three years of this Agreement and annually thereafter. The community survey should be statistically valid, based on a sound methodology, and conducted by an independent entity. This community survey shall include measures to ensure input from individuals of each demographic category. The survey shall also assess the number and variety of community partnerships with PRPD and the depth and effectiveness of those partnerships. In particular, the survey shall:

a)    include interviews with a random sample of residents of Puerto Rico,
      PRPD officers, and detainees arrested by PRPD within the past week;

b)    ensure the anonymity of all interview participants; and

c)    survey participants regarding community-police relations; PRPD's
      integrity, effectiveness, and service; and how it treats members of different
      demographic groups.

241.    No later than three years after the Effective Date, the TCA shall begin to regularly conduct compliance reviews to assess PRPD's compliance with each of the Agreement provisions in Sections III through XIII. The TCA shall assess and report whether PRPD has, for each Agreement requirement: (a) incorporated the requirement into an implemented policy; (b) trained all relevant personnel in the requirement and policy; and (c) fully requirement in practice. These compliance reviews shall contain both quantitative elements as necessary for reliability and comprehensiveness.

E.    **Outcome Assessments**

242.    In addition to the compliance reviews, the TCA shall conduct qualitative and quantitative outcome assessments to measure whether the implementation of this Agreement has resulted in constitutional policing. These outcome assessments shall include collection and analysis of the following outcome data trends and patterns:

a)    Use of Force Reforms

      1)    rate of force used overall and by force type, geographic area, type
            of arrest, and demographic category;

      2)    rate of force complaints overall and by disposition, force type,
            geographic area, type of arrest, and demographic category;

3) number of officers who frequently or repeatedly use force, or have more than one instance of force found to violate policy;

4) uses of force found to violate policy overall and by force type, geographic area, type of arrest, and demographic category;

5) number and rate of use of force administrative investigations which are returned for further investigation or for completeness;

6) rate of STU deployments for routine patrol or general policing; and

7) rate of CIT use.

b) Stop, Search, and Seizure Reforms

1) number of civilian complaints regarding stop, searches, and seizures overall and by disposition, geographic area, type of stop or seizure, and demographic category;

2) the number and rate of searches which result in a finding of contraband or evidence seized, overall and broken down by geographic area, type of arrest, and demographic category;

3) the number and rate of arrests for which there is documented reasonable suspicion for the stop and probable cause for the arrest, overall and broken down by geographic area, type of arrest, and demographic category;

4) the number and rate of arrests which are not prosecuted, overall and broken down by geographic area, type of arrest, demographic category, and reason for declination of prosecution, if available; and

79

5) demographic and geographic data related to arrests and citations for conduct-based allegations, including citations and arrests for disorderly conduct, obstruction of justice, assault on a police officer, and failure to obey a lawful order.

c) Equal Protection, Non-Discrimination, and Community Engagement

1) civilian complaints regarding police services related to discrimination or sexual assault, including by their disposition, geographic area, and demographic category;

2) rate of accurately classified reports of hate crimes, sexual assault, and domestic violence;

3) clearance rate of hate crimes, sexual assault, and domestic violence cases, overall and by clearance type; and

4) a satisfaction survey of representatives from the community, including rape crisis advocates, service providers, and/or legal providers, regarding PRPD services related to equal protection, sexual assault, and domestic violence, that is drafted by PRPD and the TCA and is statistically valid, based on a sound methodology, and conducted by an independent entity. ,

d) Civilian Complaints, Internal Investigations, and Discipline

1) investigation timeliness;

2) notification to complainant of initiation, status, and final disposition of investigation;

3)   number of misconduct complaints, with a qualitative assessment of whether any increase or decrease appears related to access to the complaint process, and assessment of where and when complaints are coming from, by geographic area and shift; and

4)   number of officers who are subjects of repeated misconduct complaints, or have repeated instances of sustained misconduct complaints.

243.   These outcome assessments shall include collection of data relevant to and analysis of the outcome measures set out in the above sections, including an analysis of patterns and trends, as well as any additional assessments the TCA deems necessary for measuring the Commonwealth of Puerto Rico's implementation of this Agreement.

**F.    Compliance Assessment Review and Methodology**

244.   Within 90 days of assuming duties as the TCA, the TCA shall develop a plan for conducting the above compliance reviews and outcome assessments, and shall submit this plan to the Parties for review and approval.  This plan shall:

a)   clearly delineate the requirements of the Agreement to be assessed for compliance, indicating which requirements will be assessed together;

b)   set out a schedule for conducting a compliance review of each requirement of this Agreement no later than three years from the Effective Date, and a compliance review of each requirement of this Agreement no later than three years from the Effective Date, and a compliance review of each requirement at least annually thereafter; and

81

        c)     set out a schedule for conducting outcome assessments for each outcome measure at least annually, with the first assessment occurring no later than four years from the Effective Date.

245.    Within 120 days of assuming duties as TCA, the TCA shall review and recommend any changes to the outcome measures detailed in Section XIV.E, above, that the TCA deems useful in assessing whether implementation of the Agreement is resulting in constitutional policing. The Parties shall adopt any recommendations upon which they agree and submit necessary modifications to this Agreement to the Court for approval. If the Parties disagree about whether to adopt a particular outcome measure, the Party seeking adoption may seek Court resolution.

246.    Where the TCA recommends and the Parties agree, the TCA may refrain from conducting a compliance review of a requirement previously found to be in compliance by the TCA pursuant to review, or where an outcome assessment indicates that the outcome intended by the requirement has been achieved.

247.    At least 90 days prior to the initiation of any outcome assessment or compliance review, the TCA shall submit a proposed methodology for the review or assessment to the Parties. The Parties shall submit any comments or concerns regarding the proposed methodology to the TCA within 45 days of the proposed date of the review or assessment. The TCA shall modify the methodology as necessary to address any concerns or shall inform the Parties in writing of the reasons it is not modifying its proposed methodology. Any unresolved disputes involving the TCA's methodology may be submitted to the Court for resolution.

### G.   Comprehensive Reassessment

248.    Five years after the Effective Date, the TCA shall conduct a comprehensive outcome assessment and review of requirements to determine whether and to what extent the outcomes intended by this Agreement have been achieved, and whether any modifications to the Agreement are necessary for continued achievement in light of changed circumstances or unanticipated impact (or lack of impact) of a requirement. This assessment also shall address areas of greatest achievement and the requirements that appear to have contributed to this success, as well as areas of greatest concern, including strategies for accelerating full and effective compliance. Based upon this comprehensive assessment, the TCA shall recommend modifications to the Agreement that are necessary to achieve and sustain intended outcomes. Where the Parties agree with the TCA's recommendations, the Parties shall stipulate to modify the Agreement accordingly. This provision in no way diminishes the Parties' ability to stipulate to modifications to this Agreement as set out in Paragraph 294, below. Nothing in this assessment shall empower the TCA to unilaterally modify the terms of this Agreement.

### H.   TCA Reports

249.    During the first three years from the Effective Date, the TCA shall file with the Court, every six months, written, public reports that shall include:

        a)    a description of the work conducted by the TCA;

        b)    a listing of each detailed step in the Action Plans and its timeframe indicating whether the timeframe has been met, and whether the Commonwealth of Puerto Rico is making satisfactory progress toward implementation of the Agreement by rating PRPD in full, partial, or noncompliance with steps in the Action Plan;

c)     the methodology and specific findings for each review conducted, where appropriate, and redacted as necessary for privacy concerns. An unredacted version shall be filed under seal with the Court and provided to the Parties. The underlying data for each audit or review shall be not be publicly available, but shall be retained by the TCA and provided to either or both Parties upon request;

d)     for any detailed steps that were reviewed and found not to have been fully implemented in practice, the TCA's recommendations regarding necessary steps to achieve compliance; and

e)     a projection of the work to be completed during the upcoming reporting period and any anticipated challenges or concerns related to implementation of the Agreement.

250.     No later than 42 months after the Effective Date, the TCA shall file with the Court, every six months, written, public reports that shall include:

a)     a description of the work conducted by the TCA;

b)     a listing of each Agreement requirement indicating which requirements have been: (1) incorporated into implemented policy; (2) the subject of sufficient training for all relevant PRPD officers and employees; (3) reviewed or audited by the TCA to determine whether they have been fully implemented in practice, including the date of the review or audit; and (4) found by the TCA to have been fully implemented in practice;

c)     the methodology and specific findings for each audit or review conducted, redacted as necessary for privacy concerns. An unredacted version shall

be filed under seal with the Court and provided to the Parties. The underlying data for each audit or review shall be not be publicly available, but shall be retained by the TCA and provided to either or both Parties upon request;

d)      for any requirements that were reviewed and found not to have been fully implemented in practice, the TCA's recommendations regarding necessary steps to achieve compliance;

e)      the methodology and specific findings for each outcome assessment conducted; an unredacted version shall be filed under seal with the Court and provided to the Parties. The underlying data for each audit or review shall be not be publicly available, but shall be retained by the TCA and provided to either or both Parties upon request;

f)      qualitative status updates on PRPD's progress in achieving the desired outcomes for each area covered by the Agreement – noting issues of concern or particular achievement; and

g)      a projection of the work to be completed during the upcoming reporting period and any anticipated challenges or concerns related to implementation of the Agreement.

251.    The TCA shall provide a copy of the six-month reports to the Parties in draft form within 15 days after the end of the reporting period. The Parties shall have  fifteen calendar days upon receipt of the draft report to allow the Parties to informally comment on the draft reports. The TCA shall consider the Parties' responses and make appropriate changes, if any, and shall

file the final report with the Court within 45 days of the end of the review period. DOJ and PRPD may file responses to the TCA's final report within 30 days.

**I.      Communication Between the TCA and Parties**

252.    The TCA shall maintain regular contact with the Parties in order to ensure effective and timely communication regarding the status of implementation of and compliance with this Agreement. To facilitate this communication, the TCA shall conduct a monthly conference that shall include participation by RU and DOJ.

253.    The TCA shall meet with community stakeholders to explain the TCA's reports, to inform the public about the Agreement implementation process, and to hear community perspectives of police interactions. Nothing in this paragraph shall limit the ability of the TCA to meet independently with community stakeholders or other individuals regarding this Agreement, consistent with Section XIV.K of this Agreement.

**J.      TCA Recommendations and Technical Assistance**

254.    In addition to recommendations set out in the TCA's six-month reports, at the request of DOJ or PRPD, based on the TCA's reviews, the TCA may make recommendations to the Parties regarding measures necessary to ensure timely, full, and effective implementation of this Agreement. Such recommendations may include technical assistance or a recommendation to change, modify, or amend a provision of the Agreement.

**K.      Public Statements, Testimony, Records, and Conflicts of Interest**

255.    Except as required or authorized by the terms of this Agreement or the Parties acting together, neither the TCA, including, for the purposes of this paragraph, any agent, employee, or independent contractor thereof, shall make any public statements, outside of unsealed documents filed with the Court, or issue findings with regard to any act or omission of

86

the Commonwealth of Puerto Rico, or its agencies, departments, officials or employees; or disclose non-public information provided to the TCA pursuant to the Agreement. Any press statement made by the TCA regarding its employment or compliance assessment activities under this Agreement must first be approved by DOJ and PRPD.

256.     The TCA and/or any agent, employee, or independent contractor of the TCA, may testify as to their observations, findings, and recommendations before the Court with jurisdiction over this matter, but the TCA shall not testify in any other litigation or proceeding with regard to any act or omission of the Commonwealth of Puerto Rico or any of its agencies, departments, officials or employees related to this Agreement or regarding any matter or subject that the TCA may know of as a result of his or her performance under this Agreement. This paragraph does not apply to any proceeding before a court related to performance of contracts or subcontracts for the compliance assessment of this Agreement.

257.     Unless such conflict is waived by the Parties, the TCA shall not accept employment or provide consulting services that would present a conflict of interest with the TCA's responsibilities under this Agreement, including being retained (on a paid or unpaid basis) by any current or future litigant or claimant, or such litigant's or claimant's attorney, in connection with a claim or suit against the Commonwealth of Puerto Rico, or its agencies, departments, officials or employees.

258.     The TCA is not a state or local agency, or an agent thereof, and accordingly the records maintained by the TCA shall not be deemed public records subject to public inspection.

259.     The TCA shall not be liable for any claim, lawsuit, or demand arising out of the TCA's performance pursuant to this Agreement.

**L.     PRPD's Reports and Self-Assessments**

260.    Beginning with the TCA's first six-month report, PRPD shall file with the Court sealed and unsealed versions of a status report, with a copy to the TCA and DOJ, no later than 15 days before the end of the period under review. PRPD's report shall delineate the steps taken by PRPD during the review period to implement this Agreement and PRPD's assessment of the status of its progress and any response to concerns raised in prior TCA reports.

**M.     Access and Confidentiality**

261.    To facilitate its work, the TCA may conduct on-site visits and assessments without prior notice to PRPD and UCCJ. The TCA shall have access to all necessary individuals, facilities, and documents, which shall include access to Agreement-related meetings and reviews such as critical incident reviews, use of force review board meetings, and disciplinary hearings.

262.    PRPD shall ensure that the TCA shall have full and direct access to all PRPD and UCCJ staff, employees, and facilities that the TCA reasonably deems necessary to carry out the duties assigned to the TCA by this Agreement. The TCA shall communicate and cooperate with PRPD and UCCJ to access staff, employees, and facilities in a reasonable manner that, consistent with the TCA's responsibilities, minimizes interference with daily operations.

263.    PRPD and UCCJ shall ensure that the TCA has full and direct access to all PRPD and UCCJ's documents and data that the TCA reasonably deems necessary to carry out the duties assigned to the TCA by this Agreement, except any documents or data protected by the attorney-client privilege. Should PRPD or UCCJ decline to provide the TCA access to documents or data based on attorney-client privilege, PRPD or UCCJ shall inform the TCA and

DOJ that it is withholding documents or data on that basis and shall provide the TCA and DOJ with a log describing the documents or data.

264.    To the extent necessary to ensure the proper implementation of this Agreement, DOJ and its consultative experts and agents shall have full and direct access to all PRPD and UCCJ's staff, employees, facilities, documents, and data. DOJ and its consultative experts and agents shall cooperate with PRPD and UCCJ to access involved personnel, facilities, and documents in a reasonable manner that, consistent with DOJ's responsibilities to enforce this Agreement, minimizes interference with daily operations. Should PRPD or UCCJ decline to provide DOJ with access to documents or data based on attorney-client privilege, PRPD and UCCJ shall inform DOJ that it is withholding documents or data on this basis and shall provide DOJ with a log describing the documents or data.

265.    PRPD and UCCJ shall facilitate access by the TCA and DOJ to other staff, employees, facilities, documents, and data of the Commonwealth of Puerto Rico and its agencies that are reasonably related to the implementation of this Agreement, in a manner that is consistent with Paragraph 262.

266.    The TCA and DOJ shall provide PRPD and UCCJ with reasonable notice of a request for copies of documents. Upon such request, PRPD and UCCJ shall provide in a timely manner copies (electronic, where readily available) of the requested documents to the requestor, unless PRPD can show that the requestor is not entitled to access to the documents under this Agreement.

267.    The TCA shall have reasonable access to all documents in criminal investigation files that have been closed by PRPD and PRDOJ, consistent with applicable law. PRPD shall facilitate this access. The TCA shall also have reasonable access to all arrest reports, warrants,

and warrant applications whether or not contained in open criminal investigation files, consistent with applicable law. Where practicable, arrest reports, warrants, and warrant applications shall be obtained from sources other than open criminal investigation files.

268.    The TCA and DOJ shall maintain confidential all non-public information provided by PRPD, UCCJ, or any other agency of the Commonwealth of Puerto Rico, pursuant to this Agreement. Other than as expressly provided in this Agreement, this Agreement shall not be deemed a waiver of any privilege or right PRPD, UCCJ, or any other agency of the Commonwealth of Puerto Rico may assert, including those recognized at common law or created by statute, rule, or regulation, against any other person or entity with respect to the disclosure of any document.

269.    PRPD and UCCJ shall ensure that all personally-identifiable information collected and maintained as part of this Agreement is adequately protected from disclosure, consistent with federal and Commonwealth law, generally accepted privacy standards, and this Agreement.

## N.    Selection and Compensation of the TCA

270.    Within 60 days from the Effective Date, the Parties shall together select an independent TCA, acceptable to both, who shall assess and report on PRPD's implementation of this Agreement. The selection of the TCA shall be pursuant to a method jointly established by the Parties, and will not be governed by any formal or legal procurement requirements.

271.    If the Parties are unable to agree on a TCA or an alternative method of selection within 60 days of the Effective Date, each Party shall submit the names of three candidates with experience as law enforcement practices or compliance assessment experts, along with resumes

and cost proposals, to the Court, and the Court shall select a TCA from among the qualified candidates.

272.     PRPD shall bear all reasonable fees and costs of the TCA.  In selecting the TCA and his/her team, DOJ and the Commonwealth of Puerto Rico recognize the importance of ensuring that the fees and costs borne by Puerto Rico are reasonable, and accordingly fees and costs shall be one factor considered in selecting the TCA.  In the event that any dispute arises regarding the reasonableness or payment of the TCA's fees and costs, PRPD, DOJ, and the TCA shall attempt to resolve the dispute cooperatively prior to seeking the assistance of the Court.

273.     PRPD shall provide the TCA with permanent office space and reasonable office support such as office furniture, telephones, access to fax and the Internet, secure document storage, and photocopying.

274.     The TCA, at any time after his or her initial selection, will hire or employ or contract with such additional persons or entities as are reasonably necessary to perform the tasks assigned to the TCA by this Agreement.  Any person or entity hired or otherwise retained by the TCA to assist in furthering any provisions of this Agreement shall be subject to the provisions of this Agreement, and entitled to the same access to PRPD staff, employees, facilities, documents, and data as the TCA.  The TCA shall notify the Commonwealth of Puerto Rico and DOJ in writing when the TCA has selected such additional persons or entities.  The notice shall identify and describe the qualifications of the person or entity to be hired or employed and the compliance assessment to be performed.  The Parties shall have an opportunity to interview the prospective hiree and request additional information about the prospective hiree's background and experience, including references and a list of recent consulting or compliance assessment work.

275.    A hiree, including the TCA, shall not be retained unless he or she has entered into an agreement with the Parties committing to notify them of any conflicts of interest, or appearance thereof, that arise in the course of his or her work pursuant to this Agreement.

276.    If the Parties agree to the TCA's proposal, the TCA shall be authorized to hire or employ such additional persons or entities. PRPD and DOJ have ten business days to disagree with the proposal in writing. PRPD and DOJ will not unreasonably withhold approval, as the Parties acknowledge that a compliance review team will be necessary to meet the responsibilities and obligations placed on the TCA by this Agreement. If the Commonwealth of Puerto Rico, PRPD, and DOJ are unable to reach agreement within ten business days of receiving notice of the disagreement, the Court shall resolve the dispute.

277.    In the event that full and effective implementation of this Agreement requires technical assistance beyond the scope of the TCA's contract between the Commonwealth of Puerto Rico, PRPD, and DOJ, the TCA shall, in writing, inform PRPD of the need for technical assistance and its relation to implementation of the Agreement. If PRPD agrees that the technical assistance identified by the TCA is necessary, PRPD shall arrange for the prompt initiation of the recommended technical assistance by the TCA, his or her agent or independent contractor, or a separate individual or entity. Any such technical assistance shall be provided at the Commonwealth of Puerto Rico's expense. This provision shall not prevent the Commonwealth of Puerto Rico from procuring, at its own expense, technical assistance independent from that requested by the TCA.

278.    Should any of the Parties to this Agreement determine that the TCA's individual members, agents, employees, or independent contractors have exceeded their authority or failed to satisfactorily perform the duties required by this Agreement, the Party may petition the Court

92

for such relief as the Court deems appropriate, including replacement of the TCA, and/or any individual members, agents, employees, or independent contractors.

**O.** **General Provisions**

279. This Agreement is effectuated pursuant to the authority granted to DOJ under Section 14141.

280. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345. Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. § 1391, because Defendants are located in and the claims arose in the District of Puerto Rico.

281. The Parties enter into this Agreement jointly for the purpose of avoiding the burdens of litigation and to support vigorous and constitutional law enforcement. This Agreement serves the public interest because the reforms set forth herein will protect public safety, promote constitutional policing practices, and strengthen community trust, while at the same time avoiding the diversion of federal and Commonwealth resources to adversarial actions.

282. The Parties agree that they are not required to preserve information and materials, otherwise than under generally applicable law, because it is not reasonably foreseeable or anticipated that there will be litigation between the Parties related to the matters covered by this Agreement.

283. This Agreement shall not and is not intended to compromise the lawful authority of PRPD officers to use reasonable and necessary force, effect arrests and investigatory stops, conduct searches and seizures, or otherwise fulfill their law enforcement obligations in a manner consistent with the requirements of the Constitutions and laws of the United States and the Commonwealth of Puerto Rico.

284.    This Agreement shall constitute the entire integrated agreement of the Parties.  No prior drafts or prior or contemporaneous communications, oral or written other than DOJ's September 2011 Report, shall be relevant or admissible for purposes of determining the meaning of any provisions herein in any litigation or any other proceeding.

285.    This Agreement is binding on all Parties hereto, by and through their officials, agents, employees, and successors.  If the Commonwealth of Puerto Rico establishes or reorganizes a government agency or entity whose function includes overseeing, regulating, accrediting, investigating, training, or reviewing the operations of PRPD, any aspect thereof, or of its officers, the Commonwealth of Puerto Rico agrees to ensure that these functions and entities are consistent with the terms of this Agreement and shall incorporate, to the extent possible under applicable law, the terms of this Agreement into the oversight, regulatory, accreditation, investigation, training, or review functions of the government agency or entity as necessary to ensure full implementation of this Agreement.

286.    This Agreement is enforceable only by the Parties.  No person or entity is intended to be a third-party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action, and accordingly, no person or entity may assert any claim or right as a beneficiary or protected class under this Agreement or otherwise.

287.    This Agreement is not intended to impair or expand the right of any person or entity to seek relief against the Commonwealth of Puerto Rico, or any officer or employee thereof, for their conduct or the conduct of PRPD officers; accordingly, it does not alter legal standards governing any such claims by any third parties, including those arising from Commonwealth of Puerto Rico or federal law.  This Agreement does not expand, nor will it be construed to expand, access to any Commonwealth of Puerto Rico, PRPD, or DOJ documents,

except as provided by this Agreement, by persons or entities other than DOJ, Commonwealth of Puerto Rico, and the TCA.

288.    The Commonwealth of Puerto Rico is responsible for providing or obtaining necessary support and resources to enable PRPD and the University College of Criminal Justice ("UCCJ") to fulfill their obligations under this Agreement.

289.    The Commonwealth of Puerto Rico, by and through its officials, agents, employees, and successors, pledges to uphold its citizens' rights, privileges, or immunities secured or protected by the laws of the United States.

290.    This Agreement may not be used as an acknowledgement, agreement, admission, or statement by the Commonwealth of Puerto Rico, PRPD, or any of their respective officers or employees, that they have engaged in any unconstitutional, illegal, or otherwise improper conduct.  Similarly, this Agreement is not, nor shall be construed, as an acknowledgment, agreement, admission, statement, or evidence of liability under any federal, state, or municipal law including, but not limited to, 42 U.S.C. § 14141 in any other proceedings.

**P.    Court Jurisdiction, Modification of the Agreement, and Enforcement**

291.    The Parties shall ask the Court to approve this Agreement and enter an Order of Dismissal pursuant to Fed. R. Civ. P. 41(a)(2), dismissing the case and retaining jurisdiction to enforce this Agreement in accordance with its own terms and applicable law.  Accordingly, this Agreement shall become effective upon the entry of the Court's Order of Dismissal.

292.    Except where otherwise specifically indicated, PRPD shall implement the provisions of this Agreement in accordance with the Action Plans developed in consultation with the TCA and incorporated into this Agreement by reference.

293.    To ensure that the provisions of this Agreement are properly and timely implemented, the Court shall retain jurisdiction to enforce this Agreement until such time as the Commonwealth of Puerto Rico and PRPD have achieved full and effective compliance with this Agreement and maintained such compliance for no less than two consecutive years. At all times, PRPD shall bear the burden of demonstrating full and effective compliance with this Agreement. Full and effective compliance requires either sustained compliance with all requirements of this Agreement, or sustained and continuing improvement in constitutional policing, as demonstrated pursuant to the Agreement's outcome measures.

294.    The United States acknowledges the good faith of the Commonwealth of Puerto Rico and PRPD in trying to address the remedial measures that are needed to promote police integrity and ensure constitutional policing in Puerto Rico. The United States, however, reserves its right to seek enforcement of the provisions of this Agreement if it determines that PRPD has failed to comply fully with any provision of this Agreement. Prior to pursuing any remedy with the Court, DOJ agrees to give written notice of the failure to PRPD. PRPD shall have 60 days from receipt of such notice to cure the failure. During the 60-day period, the Parties shall meet and confer to resolve any disputes regarding the failure or to otherwise explore a joint resolution. The TCA shall assist the Parties in reaching a mutually-agreeable resolution to the compliance failure or issue, including by facilitating conference meetings and providing relevant factual assessments.

295.    Puerto Rico and DOJ may jointly stipulate to make changes, modifications, and amendments to this Agreement, which shall be effective, absent further action from the Court, 30 days after a joint motion has been filed with the Court. Such changes, modifications, and amendments to this Agreement shall be encouraged when the Parties agree, or where the

reviews, assessments, and/or audits of the TCA demonstrate that the Agreement provision as drafted is not furthering the purpose of the Agreement or that there is a preferable alternative that will achieve the same purpose. Where the Parties or the TCA are uncertain whether a change to the Agreement is advisable, the Parties may agree to suspend the current Agreement requirement for a time period agreed upon at the outset of the suspension. During this suspension, the Parties may agree to temporarily implement an alternative requirement. The TCA shall assess whether the suspension of the requirement, and the implementation of any alternative provision, is as or more effective at achieving the purpose as was the original/current Agreement requirement and the Parties shall consider this assessment in determining whether to jointly stipulate to make the suggested change, modification, or amendment.

296.    The Parties agree to defend the provisions of this Agreement. The Parties shall notify each other of any court or administrative challenge to this Agreement. In the event any provision of this Agreement is challenged in any Commonwealth court, removal to a federal court shall be sought by the Parties.

297.    PRPD agrees to promptly notify DOJ if any term of this Agreement becomes subject to collective bargaining consultation and to consult with DOJ in a timely manner regarding the position the Commonwealth of Puerto Rico takes in any collective bargaining consultation connected with this Agreement.

298.    The Commonwealth of Puerto Rico and PRPD shall require compliance with this Agreement by all of its agencies, departments, officials, employees, and their respective assigns and successors.

**Q.**   **Termination of the Agreement**

299.   Ten years after the Effective Date, either Party may seek to terminate this Agreement.  In the case of termination sought by the Commonwealth of Puerto Rico, prior to filing a motion to terminate, PRPD agrees to notify DOJ in writing when PRPD has determined that it is in full and effective compliance with this Agreement and that such compliance has been maintained for no less than two consecutive years.  Thereafter, the Parties shall promptly confer as to the status of compliance.  If, after a reasonable period of consultation and the completion of any audit or evaluation that DOJ or the TCA may wish to undertake, including tours of PRPD, UCCJ, and other facilities related to the implementation of this Agreement, document review, and interviews with any appropriate personnel, the Parties cannot resolve any compliance issues, PRPD may file a motion to terminate this Agreement.  If PRPD moves for termination of this Agreement, DOJ will have an adequate time after the receipt of PRPD's motion to object to the motion.  If DOJ makes an objection, the Court shall hold a hearing on the motion and the burden shall be on PRPD as the moving party to demonstrate that it is in full and effective compliance with this Agreement and has maintained such compliance for at least two consecutive years.

300.   "Full and Effective Compliance" shall be defined to require sustained compliance with all requirements of this Agreement, or sustained and continuing improvement in constitutional policing, as demonstrated pursuant to the Agreement's outcome measures.

# INDEX

accountability ...................................... 30, 40
Action Plan.............................................. 5
age................................................ 7, 33, 43
area containment ....................................... 28
arrest.................................................. 5
arrests ........ 21, 28, 32, 34, 36, 37, 39, 41, 86
assembly................................................ 21
auditable form .......................................... 5
audits ............................... 49, 76, 78, 84, 104
batons ................................................. 19, 28
biannual report .......................................... 94
bias ........................................ 40, 41, 43, 44
Board.................................... 8, 14, 23, 25, 27
boilerplate ................... 5, 22, 30, 33, 36, 40
booking .................................................. 35
cadets ............................................ 11, 29, 47
canine.................................................... 13
canines................................................. 19, 48
chemical agent .......................................... 5
chemical agents ....................................... 19, 28
Chloroacetophenone ................................ 20
CIT ........................................... 6, 31, 85
civil service ............................................ 48
Civilian Complaints ............................... 62
civilian employee....................................... 6
color .............................................. 7, 33, 40, 43
commanding officers ............................... 11
community-oriented policing...................... 6
complainant.............................................. 6
complaint................................................. 6
Complaint ............................................. 63
complaints .. 6, 35, 41, 43, 58, 62, 64, 66, 85, 87
conflict .................................... 28, 43, 56, 94
corrective action... 10, 30, 34, 35, 36, 40, 56, 58, 63, 70
corruption................................................. 6
Court  78, 90, 91, 92, 93, 94, 97, 98, 99, 100, 102, 103, 104, 105
CPA..................................................... 96, 99
crime ....................................... 40, 41, 58, 74
crime prevention ....................................... 32

criminal  6, 12, 14, 16, 24, 25, 26, 30, 35, 36, 40, 49, 50, 58, 62, 66, 67, 68, 70, 96
crisis intervention................................ 28, 32
Critical firearm discharge .......................... 7
critical firearm discharges......................... 13
crowd .............................................. 21, 22
crowd control ............................................ 21
curricula ................................................. 54
de-escalate................................................ 19
de-escalation ............................................ 28
Defendants 77, 78, 93, 94, 95, 96, 97, 98, 99, 103, 104, 105
deficiencies ............................. 23, 26, 34, 35
demographic category................................. 7
demonstration................................ 21, 22, 48
detention..................... 5, 7, 9, 12, 30, 32, 33
disability.................................... 7, 13, 40, 43
discipline........................... 10, 30, 40, 50, 64
Discipline ................................................ 7
discriminatory policing ................... 8, 41, 74
disengagement........................................... 28
DOJ 5, 76, 80, 83, 93, 94, 95, 96, 97, 98, 99, 104, 105
domestic violence................... 44, 45, 49, 87
ECW................................................. 8, 16
ECWs............................................. 19, 28, 85
EIS............................................. 8, 56, 58, 59
equal protection............................. 40, 41, 43
ethnicity.................................... 7, 33, 40, 43
exigent circumstances ..................... 8, 16, 26
FBI ..................................................... 42
Field operations........................................ 48
firearm............... 7, 10, 13, 14, 15, 20, 28, 29
Firearm................................................... 8
firearms ............................ 19, 20, 28, 29, 49
FIU ................... 8, 23, 24, 25, 26, 27, 29, 49
Fourth Amendment ................................... 38
FRB ....................................... 8, 23, 25, 26, 36
full and effective compliance..................... 8
Full and Effective Compliance .............. 105
gender.................................. 7, 33, 40, 43, 44
gender identity ................................ 7, 40, 43
handcuffing ........................................ 15, 16

Hate Crimes Statistics ................................ 42
**Hiring** ...................................................... 47
hotline ...................................................... 45
impact weapons ......................................... 19
Implement .................................................. 9
implementation  9, 15, 59, 76, 77, 78, 79, 84, 90, 92, 93, 97, 99, 104
In-Custody Death Reviews ....................... 49
injuries............................................ 16, 24, 58
injury ............................... 9, 10, 13, 22, 35, 39
in-service training ................................ 49, 72
internal investigation................................. 33
**Internal Investigations** ........................... 62
investigatory stop ........................................ 9
juveniles .................................................... 31
less-lethal force .......................................... 9
less-lethal weapon .................................... 10
lesson plans .............................................. 54
lethal force ......................................... 10, 19
**Management** ........................................... 21
medical.............................. 27, 30, 35, 39, 47
mental health........................... 28, 31, 32, 72
mental illnesses ......................................... 28
national origin ........................... 7, 33, 40, 43
NCIC ....................................................... 77
neck hold .................................................. 10
NIBRS .............................................. 10, 41
officer 6, 7, 11, 12, 13, 14, 15, 16, 21, 24, 25, 26, 29, 33, 36, 37, 38, 41, 49, 50, 56, 57, 63, 67, 68, 69, 72, 76, 86
Oleoresion Capiscum ................................. 5
parallel................................................ 49, 66
Parties. 77, 78, 80, 90, 91, 92, 93, 94, 97, 98, 99, 100, 104, 105
patrol ............................................ 14, 31, 48
**Policies** ................................................... 78
policy.. 6, 7, 9, 19, 20, 21, 22, 23, 24, 25, 27, 30, 32, 33, 36, 37, 39, 40, 41, 42, 48, 49, 50, 55, 68, 76, 84, 85, 91
polygraph .................................................. 47
practices ............................ 38, 47, 56, 72, 97
PRDOJ .................. 11, 24, 25, 26, 37, 44, 96
probable cause............... 5, 11, 34, 36, 39, 86
procedure........................................... 6, 9, 48
**Procedures** .............................................. 78
promotion ............................................ 13, 41

PRPD 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 47, 48, 49, 50, 54, 55, 57, 58, 59, 63, 64, 65, 66, 67, 68, 70, 72, 74, 75, 76, 77, 78, 79, 80, 83, 84, 87, 91, 92, 96, 99
psychological ............................................ 47
**Public Information** ........................... 75, 76
public safety.............................................. 68
Puerto Rico. 4, 11, 15, 39, 44, 78, 83, 84, 94, 103
qualifications................................. 13, 17, 98
race ...................................... 7, 33, 40, 43
reasonable force ........................................ 11
reasonable suspicion ................................. 12
Recruitment............................................... 49
Reform Implementation Unit.................... 79
Region ...................................................... 12
religion ................................ 7, 40, 43
risk management ....................................... 56
RIU....................................................... 79, 83
SARA ....................................................... 12
satisfaction survey..................................... 87
searches 32, 33, 34, 37, 38, 39, 40, 41, 43, 85
seizure ...................................................... 12
Seizure...................................................... 85
**seizures** ........................................... 32, 38
**Selection** ........................................... 70, 97
selection device......................................... 13
serious use of force ................................... 13
Serious Use of Force Investigations ......... 49
Service firearm.......................................... 14
Sex Crimes Investigation Unit ................. 45
sexual assault ................................. 44, 45, 87
sexual orientation ........................... 7, 40, 43
SFRB.............................. 14, 23, 25, 26, 27
significant injury ....................................... 13
socioeconomic status ................................. 7
SPR .... 14, 23, 24, 26, 33, 37, 49, 63, 64, 65, 66, 67
stakeholders.............................................. 44
stop data ............................................. 33, 58
stops ........................... 32, 34, 38, 39, 41, 43
STU ....................................... 14, 20, 21, 85
superintendent .......................................... 14

Superintendent 11, 14, 23, 26, 27, 67, 75, 77, 80

supervisor .......................... 14, 15, 24, 25, 55

Supervisor's Investigation Report............. 15

supervisors . 4, 11, 22, 23, 25, 29, 39, 55, 57, 63, 77

supervisory investigation .......................... 14

surveillance ............................................. 28

survey................................................. 83, 84

TCA 5, 15, 17, 33, 76, 77, 78, 80, 83, 84, 87, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 103, 104, 105

technical assistance ............................. 93, 99

terminate ................................................. 105

termination .............................................. 105

threat assessment................................. 28, 29

training ... 7, 9, 11, 14, 20, 28, 29, 30, 31, 32, 33, 36, 39, 40, 41, 49, 54, 56, 59, 69, 78, 91

Training..... 15, 27, 38, 49, 51, 53, 54, 55, 70

trends............................................. 23, 34, 87

UCCJ.................................................... 5, 49

UCR ......................................................... 15

undercover agents ..................................... 11

United States ..................... 5, 19, 32, 40, 103

use of force10, 15, 16, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 30, 36, 44, 49, 74, 77, 85, 95

Use of Force Report.................................. 16

Use of Force Report.................................. 22

Use of Force Reporting................ 22, 23, 49

Use of Force Reports .......................... 23, 24

warrant .............................. 21, 37, 38, 59, 96

FOR THE UNITED STATES                    FOR THE COMMONWEALTH OF PUERTO RICO

December 21, 2012                        December 21, 2012


_____                  _____
THOMAS E. PEREZ                          LUIS G. FORTUÑO
Assistant Attorney General               Governor
Civil Rights Division

ROY L. AUSTIN, JR.                       FOR THE PUERTO RICO POLICE DEPARTMENT
Deputy Assistant Attorney General
Civil Rights Division                    December 21, 2012

JONATHAN M. SMITH
Chief                                    _____
Special Litigation Section               HÉCTOR M. PESQUERA
                                         Superintendent
LUIS E. SAUCEDO
Acting Deputy Chief
Special Litigation Section

SAMANTHA K. TREPEL
SERGIO PEREZ
Trial Attorneys
Special Litigation Section



SO ORDERED, this ___th day of _____, 20__.


                                         _____

                                         UNITED STATES DISTRICT JUDGE

102

FOR THE UNITED STATES                    FOR THE COMMONWEALTH OF PUERTO RICO

December 21, 2012                        December 21, 2012

_____
THOMAS E. PEREZ                          LUIS G. FORTUÑO
Assistant Attorney General               Governor
Civil Rights Division

                                         FOR THE PUERTO RICO POLICE DEPARTMENT
ROY L. AUSTIN, JR.
Deputy Assistant Attorney General        December 21, 2012
Civil Rights Division


JONATHAN M. SMITH
Chief                                    HÉCTOR M. PESQUERA
Special Litigation Section               Superintendent


LUIS E. SAUCEDO
Acting Deputy Chief
Special Litigation Section


SAMANTHA K. TREPEL
SERGIO PEREZ
Trial Attorneys
Special Litigation Section



SO ORDERED, this ___th day of _____, 20__.



                              _____
                                   UNITED STATES DISTRICT JUDGE