UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>PLAINTIFF,<br><br>- against -<br><br>COMMONWEALTH OF PUERTO RICO AND PUERTO RICO POLICE DEPARTMENT.<br><br>DEFENDANTS. | CIVIL ACTION NO.:<br>12-2039 (GAG)<br><br>**BRIEF OF THE AMERICAN CIVIL LIBERTIES UNION AS** *AMICUS CURIAE* |

On December 30, 2012, this Court issued an order (the "Order") in the above-captioned case, inviting bona fide governmental or private entities, including civil rights organizations, to submit an amicus brief on or before April 1, 2013 expressing support of or opposition to the proposed consent decree (the "Consent Decree") filed by the U.S. Department of Justice in its suit against the Puerto Rico Police Department (the "PRPD"). *Amicus curiae* the American Civil Liberties Union (the "ACLU") believes that the Consent Decree contains essential provisions that would require the PRPD to create and implement key use-of-force policies, adopt much-needed basic management systems to record and investigate civilian complaints and monitor officer behavior, implement necessary training, and correct abuses by holding officers accountable for constitutional violations. The ACLU believes that only the force of law, embodied by the Consent Decree, will compel the PRPD to carry out a comprehensive reform process that corrects the department's rampant misconduct, and therefore supports the entry of the Consent Decree.[1] The ACLU further submits that the Consent Decree can be strengthened

---

[1] The ACLU is a nationwide, nonprofit, nonpartisan organization with more than 500,000 members dedicated to the principles of liberty and equality embodied in the Constitution and this nation's civil-rights laws. The American Civil Liberties Union of Puerto Rico was founded in 2001, and is the ACLU's affiliate in Puerto Rico. Since its founding in 1920, the ACLU and its affiliates have been involved in numerous cases around the country challenging the use of excessive force by law enforcement officers. Since 2004, the ACLU of Puerto Rico has documented and litigated numerous cases of police abuse in Puerto Rico, including excessive use of force, discriminatory policing, and unlawful arrests, and has been documenting PRPD suppression of First Amendment

by the addition of certain provisions identified by the ACLU in the course of its own investigation of the PRPD's unconstitutional practices.

I.   **THE PRPD'S ON-GOING FAILURE TO IMPLEMENT REFORMS**

For well over two decades, numerous independent non-profit organizations have recorded and published first-hand accounts of excessive use of force and other civil rights violations by the PRPD. Even a five-month investigation launched by the PRPD itself has identified significant problems: an external evaluating committee convened by the PRPD Superintendent published a report in 2007 (the "Report of the External Evaluating Committee") concluding that PRPD units such as the Tactical Operations Units regularly use excessive force and commit other civil rights violations. The committee also exposed the systematic failure of the investigatory and disciplinary mechanisms in place to prevent and redress such violations. Yet when faced with hard evidence of these civil rights violations, the PRPD tried to sweep the problem under the rug and failed to undertake any of the much-needed reforms recommended by the External Evaluating Committee.

On September 5, 2011, following an extensive investigation of the PRPD initiated over three years earlier, the U.S. Department of Justice (the "DOJ") published a findings letter (the "DOJ Report") detailing the PRPD's "pattern and practice" of police abuse in violation of the United States Constitution. The DOJ Report is attached hereto as Exhibit A to the Declaration of Josué Gonzalez-Ortiz ("J. Gonzalez-Ortiz Decl.") in Support of the ACLU's *Amicus* Brief. Chief among its findings, the DOJ found that the PRPD had not just deprived residents of Puerto Rico of their rights under the U.S. Constitution, but had done so on a regular and widespread basis. The report concluded that the PRPD's routine civil rights violations would not abate

---

rights since 2009. Between March and September 2011, the ACLU conducted fact-finding research in Puerto Rico to further document allegations of police brutality and other police abuse over a five-year period from 2007 to 2011. The ACLU and the ACLU of Puerto Rico have continued monitoring incidents, policies, and practices to date.

unless a federal court stepped in to provide the structure, transparency, and accountability needed to achieve sustainable reform.

Having conducted its own six-month investigation and having issued a preliminary report before the DOJ Report, the ACLU issued its own comprehensive report documenting systematic civil rights violations by the PRPD ("the ACLU Report," attached as Exhibit B to J. Gonzalez-Ortiz Decl.) in June 2012. The ACLU Report detailed many of the same significant constitutional violations identified in the DOJ Report and concluded that the PRPD is in a state of disrepair. Among other evidence of civil rights abuses, the ACLU Report documented the PRPD's unjustified use of lethal force, excessive use of force and other abuse against protesters, lack of enforcement of domestic violence laws, and police brutality against low-income, black, and Dominican communities.

Though the government of Puerto Rico responded to the DOJ Report by issuing a plan outlining proposed reforms, the PRPD has yet to undertake meaningful and sustainable reforms to address all of the deficiencies identified by the DOJ and the ACLU. Even as it fails to implement the DOJ's recommendations, the PRPD has claimed that no court oversight is required to ensure the PRPD adopts the full panoply of reforms that are needed to bring the PRPD into compliance with the U.S. Constitution. Despite repeated calls for reform, the PRPD continues to operate in much the same manner as it has for decades. None of the last five Superintendents has taken any significant steps to reform Puerto Rico's police force. Meanwhile, the PRPD's virtually nonexistent oversight, poor training, and inadequate disciplinary measures to hold accountable officers who have used excessive force, as well as its continued disregard of civilian complaints of police abuse, its failure to police crimes of

3

domestic violence, and its use of excessive force against protesters, are anathema to the most basic and well-settled principles of the U.S. Constitution.

Without this Court's intervention, meaningful reform within the PRPD will never happen. Consequently, the ACLU respectfully submits that the Consent Decree should be entered, and further submits that the Consent Decree can and will be strengthened by the addition of certain other provisions identified by the ACLU as a result of its investigation of the PRPD's unconstitutional practices.

## II. FACTUAL BACKGROUND

### A. The Puerto Rico Police Department

The PRPD is the second-largest police department in the United States. In fact, with a ratio of just under five police officers for every 1,000 residents of Puerto Rico, the number of PRPD police officers per capita is more than twice the average for jurisdictions with a population of 250,000 or higher. (DOJ Report at 12.) Today, as violent crime statistics continue to rise in Puerto Rico, there can be no doubt that the PRPD performs an essential public function. But although the PRPD's main goal is to fight crime, the department has been paralyzed for decades by a culture of violence and corruption.

For example, the PRPD has a long, well-known, and sordid record of targeting political dissenters dating back to at least the mid-1930s when PRPD police officers killed almost two dozen nationalists in two incidents known as the Ponce and Río Piedras Massacres. (ACLU Report at 26.) The Ponce Massacre of 1937 prompted the ongoing presence of the ACLU in Puerto Rico. Arthur Garfield Hays, of the ACLU, together with prominent Puerto Rican citizens, led an independent investigation and concluded that the police conduct constituted flagrant

violations of citizens' fundamental rights. The Hays Commission marked the first effort to document police brutality in Puerto Rico under United States sovereignty.

Decades later, in 1987, journalists uncovered that the police intelligence division had maintained dossiers on no fewer than 135,000 pro-independence supporters for more than three decades. (*Id*.) The dossiers, or "carpetas," revealed the PRPD's use of surveillance and other tactics to harass pro-independence activists and supporters.

More recently, the PRPD has seen a marked uptick in corruption, domestic violence, and other serious crime at the hands of police officers. The DOJ has indicated that more PRPD officers are involved in crime than in any other law enforcement agency in the United States. (DOJ Report at 14.) Indeed, from 2005-2010 more than 1,700 PRPD police officers were arrested for crimes such as assault, theft, domestic violence, drug trafficking, and even murder. (DOJ Report at 14-16.) The NYPD, which is twice as large, reported just 607 police officer arrests in a comparable five-year period. (ACLU Report at 26.) And in 2010, as part of its largest police corruption operation to date, the FBI arrested 61 PRPD officers and has since arrested more. (ACLU Report at 26.)

### B. Documented Cases of Police Abuse and Constitutional Violations

Based on the ACLU's comprehensive six-month investigation of PRPD policing practices and eight years of work by the ACLU of Puerto Rico documenting cases of police brutality, the ACLU has documented systemic constitutional violations by the PRPD, including: (1) the unjustified use of lethal force, (2) excessive force against low-income, Black, and Dominican communities, (3) excessive force against protesters to suppress freedom of speech and expression, (4) the failure to police crimes of domestic violence and sexual assault, and (5) failure to discipline officers and investigate abuses.

#### *1.* <u>Unjustified Use of Lethal Force</u>

Since 2007, PRPD officers have fatally shot, beaten, or Tasered unarmed men, the mentally ill, individuals who posed no threat to officers or bystanders, and individuals who could have been restrained with less force. (ACLU Report at 31.) The ACLU documented 28 cases in which PRPD officers are reported to have killed civilians between 2007 and 2011. In a significant number of these cases, the PRPD's use of force was unjustified, avoidable, and not necessary to protect the life of an officer or civilian. Three of these cases involved the use of lethal force against individuals with mental illness who perhaps could have been restrained through the use of non-lethal force. Four of the cases the ACLU documented involved the killing of teenagers ranging in age from 14 to 19. (ACLU Report at 31.) According to statistics from the Puerto Rico Department of Justice (the "PR DOJ"), PRPD officers killed 21 people in 2010 and 2011 alone. (*Id*.) The per capita rate of fatal police shootings by the PRPD in 2010 was approximately three times higher than by the New York City Police Department.

2. Police Brutality Against Low-Income, Black, and Dominican Communities

The PRPD regularly uses excessive force when carrying out routine patrols and checkpoints in low-income, Black, and Dominican neighborhoods. (ACLU Report at 49.) PRPD statistics show that civilians filed at least 1,768 complaints against PRPD police officers for excessive force from 2004 to August 2010. (*Id*.) During encounters with civilians in these communities, PRPD officers routinely use excessive force, including: shooting with firearms, beating with batons, kicking, punching, throwing victims on the ground or against walls, and locking victims in chokeholds. (*Id*.) In the cases documented by the ACLU, police inflicted injuries including a broken jaw, cracked or lost teeth, bone fractures, internal bleeding, severe

6

contusions, abrasions, lacerations, organ damage, organ failure, traumatic brain injury, paralysis, brain death, and death. (*Id*.)

Notably, the victims involved in these incidents were not resisting arrest or were already restrained, unarmed, and posed little harm to officers or bystanders at the time of the officers' use of force. (*Id*.) In some cases the police did not even arrest the victims after assaulting them, instead leaving them bleeding or otherwise injured on the street. (*Id*.)

### 3. Excessive Force Against Protesters to Suppress Freedom of Speech and Expression

The PRPD also systematically uses excessive force against protesters to suppress their First Amendment rights. The ACLU and DOJ have documented the use of excessive force against protesters at the Puerto Rico Capitol Building, at the Sheraton Hotel in San Juan, outside the Governor's mansion; at the Government Development Bank, and on the University of Puerto Rico Río Piedras campus (the "UPR"). (*See* ACLU Report at 71-100.) Since at least early 2009, the PRPD has routinely deployed multiple tactical units that have employed tear gas, pepper spray, rubber bullets, painful pressure point techniques, batons, baseless mass arrests, and other forms of force and intimidation to prevent peaceful protesters from exercising their First Amendment rights to freedom of speech and expression. The PRPD's use of unreasonable force at demonstrations has had a chilling effect on university students, labor union members, and others, who are afraid to participate in demonstrations for fear that they will be subjected to unnecessary force.

On June 27, 2012, on behalf of the Consejo General de Estudiantes del Recinto de Río Piedras de la Universidad de Puerto Rico (the "General Student Council") and the Federación Central de Trabajadores, Local 481, UFCW (the "FCT"), the ACLU brought suit against the

PRPD Superintendent, challenging the PRPD's pattern and practice of using excessive force against both organizations and other demonstrators in violation of their First Amendment right to freedom of speech and expression, as well as their Fourth Amendment right to be free form unreasonable searches and seizures. The lawsuit is currently pending, and the PRPD has failed to implement effective reforms to protect protesters' constitutional rights. A brief summary of a few of these incidents is below.

### *Strikes at the University of Puerto Rico, Río Piedras*

The UPR was the center stage for a number of the constitutional violations that the ACLU recorded. For several weeks in 2010, in response to a student strike, the PRPD Riot Squad seized control of the main campus gates and shut off the water and electricity within the UPR. (ACLU Report at 90-91.) The Riot Squad blocked parents, professors, union members and other supporters from entering the campus, and on some occasions blocked these supporters from passing anything—even food and water—to students whom the police had barricaded inside. (*Id.*) The PRPD's actions created a health and safety risk for students who remained inside the campus. (*Id.*) Throughout multiple strikes at the UPR, the Riot Squad used force and chemical irritants against protesters, preventing students and union members alike from exercising their First Amendment rights. (*Id.*) In addition, the PRPD used arrests without cause to intimidate students. On the morning of January 12, 2011, for example, a group of eight to ten students was violently arrested for handing out leaflets about the strike in some of the university's classrooms. (ACLU Report at 95.) Not surprisingly, the PRPD never filed charges against the students they forcibly arrested without cause. (ACLU Report at 96.)

*Protest at the Sheraton Hotel*

Students and other peaceful protesters, including union members, were also beaten and deprived of their First and Fourth Amendment rights at the Sheraton Hotel on May 20, 2010, during a fundraising event that was part of the New Progressive Party of Puerto Rico's convention and at which Governor Fortuño was a guest. (ACLU Report at 83-86.) The Riot Squad indiscriminately began to beat, push, and pepper-spray students and other protesters in the lobby of the hotel. (*Id.*) Outside, standing near each of the hotel's doors, PRPD officers blocked the exits and struck students with their batons as they attempted to exit the lobby. (*Id.*) In one of the most severe shows of force, several police officers wrestled Jose "Osito" Perez, a UPR student, to the ground, while at least two officers climbed on top of him, forcing his face to the ground, kicking Mr. Perez in the groin and repeatedly tasering him after he had already been incapacitated by the PRPD. (*Id.*)

*Protests at the Capitol of Puerto Rico*

Likewise protesters at the Capitol of Puerto Rico were subjected to tear gas, painful (and sometimes dangerous) pressure point techniques. These pressure point techniques included digging fingers deep underneath students' ears and above their jaws and then forcibly lifting and dragging the students by exerting extreme pressure on these points. (ACLU Report at 97.) In addition, protesters were also pelted with rubber bullets during protests at the Capitol of Puerto Rico. (ACLU Report at 73-80.) Photographic and video evidence captures the PRPD's disproportionate use of force at this protest, including a picture of an officer brandishing at gun at the unarmed protesters. (ACLU Report at 80.)

*4.* <u>Failure to Police Crimes of Domestic Violence and Sexual Assault</u>

The PRPD routinely fails to investigate complaints of domestic violence and sexual assault, and does not enforce existing protective orders that have been entered in cases of domestic abuse. (ACLU Report at 103.) As a result, Puerto Rico has the highest per capita rate in the world of women over 14 who are killed by their partners or former partners. (*Id*.) From 2007 to 2011 more than 105 women were killed by their intimate partner. (*Id*.) Los Angeles, a city that has roughly the same population as Puerto Rico, reported 5 domestic-violence related deaths in 2011, while Puerto Rico reported that 30 women were killed by their intimate partner that same year. (*Id*.)

The PRPD is plainly not doing enough to prevent and redress domestic violence. This is perhaps not surprising: the former Superintendent of the PRPD, Diaz Colón, stated during his confirmation hearing that intimate partner homicides were best addressed by an agency other than the PRPD. (ACLU Report at 113.) Nor is the PRPD coordinating with prosecutors in case development as needed. As a result, a significantly high percentage of domestic violence incidents that are filed with the police do not result in convictions. (ACLU Report at 114.) Of the 21, 000 or so domestic violence incidents reported to the police in 2003, only 19 percent resulted in charges and just 12.3 percent resulted in conviction. (*Id*.)

*5.* <u>Failure to Discipline Officers and Investigate Abuses, and Lack of Oversight and Training</u>

The ACLU's research identified numerous institutional failings of the PRPD that contribute to the systemic abuses committed by its officers. The PRPD's disciplinary, investigatory, and reporting systems in place utterly fail to address, and therefore prevent, police abuses. (ACLU Report 119-31.) These systems virtually guarantee impunity. Instead of

deterring abuses by holding abusive officers accountable, the PRPD allows officers to escape punishment or any other consequences, rearming and returning them to active duty, often to repeat their offenses. (ACLU REport at 125.) Citizen complaints of brutality languish for years without resolution, and the PRPD fails to adequately investigate allegations of police misconduct. (ACLU Report at 121.) The PRPD rubber-stamps the use of force, covers up abuse by its officers, and encourages a code of silence. The PRPD fails to record, report, review, and analyze incidents including officers' use of force, officer-involved shootings, and other critical incidents such as discharge of a firearm. (ACLU Report at 130.)

Officers also receive patently inadequate training and insufficient supervision. (ACLU Report at 138.) The PRPD fails to provide critical guidance to its personnel on how to discharge their duties in compliance with constitutional and human rights standards. Moreover, there is no effective independent oversight or review of the PRPD's policies and practices.

### III. THE CONSENT DECREE SATISFIES MOST OF THE RECOMMENDATIONS THAT THE ACLU IDENTIFIED IN ITS REPORT

The ACLU is confident that the Consent Decree addresses the majority of the reforms recommended in the ACLU Report that are needed in order for the PRPD to comply with the requirements of the U.S. Constitution. Nonetheless, there are a few specific provisions of the Consent Decree that should be strengthened in order to better ensure PRPD reform.

#### A. The ACLU's Recommendations

Based on the ACLU of Puerto Rico's eight years of work recording and litigating allegations of police brutality and the ACLU's comprehensive six-month investigation of PRPD policing practices, which included interviews with numerous victims of police abuse, Commonwealth legislators, high-ranking officers of the PRPD, advisors to then-Governor

Fortuño, local advocates working to combat police abuse, union leaders, and UPR student leaders, the ACLU recommended that the PRPD:

- Develop, revise, and implement clear, comprehensive, and objective policies on the use of force, such that the policies also require methods to avoid or minimize the use of force required. The use of force policies should also make clear that while initial use of force might be justified, the continued use of force can become excessive while perfecting an arrest. The use of force policy should also require PRPD officers to seek immediate medical help for civilians whom they have injured as a result of use of force. (ACLU Report at 151.)

- Develop and implement an official policy governing the treatment of protesters that meets U.S. Constitutional standards, trains PRPD officers to follow the policy, and provides adequate supervision and enforcement of the same. To enable the success of the official police, the PRPD should further create a system to enable all current policies to be easily located and understood by the police and the public. (ACLU Report at 152.)

- Eliminate barriers to filing civilian complaints by reforming the intake system, allowing anonymous and third-party complaints, providing complainants with written and regular updates, creating a process to appeal the closing of an investigation, and conducting outreach efforts with communities to provide guidance on how to file complaints. (ACLU Report at 153.)

- Develop and fully implement comprehensive procedures for investigating allegations of police abuse and excessive use of force promptly, thoroughly, and impartially. These procedures should require that the PRPD should initiate investigations even when a complaint has not been filed if information has come to light through media reports or other means. In addition, the ACLU recommended internal investigations should involve concurrent administrative and criminal processes. (ACLU Report at 154.)

- Create and fully implement a use of force reporting system that documents all uses of force by the PRPD. The PRPD should also develop a system to review all use of force reports in a timely manner to determine whether the use of force complied with the requirements under the U.S. Constitution. (ACLU Report at 154.)

- Develop and implement detailed disciplinary procedures that are fair and expeditious and which will impose effective sanctions when proper. The procedures should be detailed enough to include information about when a police officer is to be relieved of duty and when his or her weapon is to be removed. The procedures should be enforced systematically, and the PRPD should reform the internal disciplinary system to conduct regular reviews of disciplinary records to flag repeat offenses. (ACLU Report at 155.)

- Track and publically report statistics on the use of force by the PRPD, investigations started and completed, and disciplinary actions taken. (ACLU Report at 157.)

- Ensure that PRPD officers receive adequate, periodic, and ongoing training on the use of force, responding to domestic violence calls, on civilian complaints protocols, on the

treatment of persons with medical conditions, and on the treatment of protesters, as well as Constitutional requirements under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution. (ACLU Report at 157.) This includes ongoing, periodic training on the prohibition of discrimination based on racial and ethnic bias, stereotyping, and discrimination based on national origin. Ensure supervisors receive adequate, periodic, and ongoing training on flagging repetitive behavior, creating accountability, identifying high-risk or abusive officers, and on enforcing appropriate disciplinary measures. (ACLU Report at 158.)Institutionalize reform by addressing head-on deep-rooted cultural attitudes among supervisors and the rank-and-file, including by confronting police officers' behaviors, attitudes, and beliefs regarding policing. (ACLU Report at 159.)

The ACLU believes that the recommendations cited above are essential to bring the PRPD into compliance with the U.S. Constitution.

### B. The Consent Decree Satisfies the Concerns Raised by the ACLU in its Report

In short, the ACLU believes that only the force of law, embodied by the court-enforceable Consent Decree, will compel the PRPD to undergo meaningful and lasting reform. The management systems, policies, and procedures required by the Consent Decree are essential to address the systematic constitutional violations documented by the ACLU and the DOJ. And only the Consent Decree will impose the structure for a multi-year, comprehensive reform plan that will bring about change in a police force that for too long has violated citizens' civil rights.

*First*, the Consent Decree is comprehensive and detailed with regard to substance and procedure, as this Court itself has noted. (*See* Order Requiring Parties to Address Fiscal Resources of the PRPD, Docket No. 15, at 1.) In particular, the Consent Decree indentifies measures to enhance more than ten different areas of concern, including but not limited to hiring practices, use of force in general, stops, searches and seizures, equal protection and non-discrimination, training, supervision and management, handling civilian complaints, internal investigations, and discipline. (Docket No. 2-1 ¶ 8.) For example, with respect to a use of force policy, the Consent Decree requires the PRPD to develop a comprehensive use of force policy that comports with the U.S. Constitution, and further requires the PRPD to adopt a policy that

specifically addresses the use of lethal force, firearms, canines, chemical agents, less lethal ammunitions, batons and impact weapons. (Docket No. 2-1 ¶ 23-24) Likewise, with respect to investigations relating to excessive use of force allegations, the Consent Decree details the procedure through which the Force Investigations Unit (the "FIU") shall receive reports in writing, investigate all serious uses of force, coordinate with the Puerto Rico Department of Justice when appropriate, and provides a timeline to complete the entire investigation. (Docket No. 2-1 ¶¶ 48-52.) These provisions of the Consent Decree mirror and build upon the ACLU's recommendations regarding (1) the need to adopt a use of force policy that complies with the U.S. Constitution, and (2) the need to create a use of force reporting system. Other provisions of the Consent Decree are similarly comprehensive and detail procedures that will reform the PRPD and address the ACLU's recommendations and concerns.

***Second***, the Consent Decree, if approved, will require the PRPD to respect the basic requirements of the First, Fourth, and Fourteenth Amendments of the U.S. Constitution. To that end, the Consent Decree provisions call for the creation and implementation of policies that prohibit the use of unreasonable force, enable officers to rely on the use of non-force techniques, use force only when necessary, and deescalate the use of force at the earliest possible moment. (*See* Docket No. 2-1 ¶ 22.)

Critically, the Consent Decree does not allow the PRPD to hide behind written policies without enforcing them, instead requiring the PRPD to provide pre-service and ongoing in-service training, and to hold officers accountable when they fail to adhere to PRPD policies. (*See* Docket No. 2-1 ¶¶ 117-122.) Nor is the required training limited to use of force: the Consent Decree further provides that the PRPD must train its officers on responding to persons with behavioral and mental problems (Docket No. 2-1 ¶ 56), the appropriate legal standard to

perform stops, searches, and seizures, (Docket No. 2-1 ¶¶ 78-79), and equal protection and non-discrimination, including best practices for using unbiased policing techniques in the field. (Docket No. 2-1 ¶¶ 90-91.)

The Consent Decree also requires the PRPD to adopt equal protection and non-discrimination policies that address the ACLU's concerns and recommendations concerning bias and discriminatory policing against Dominican immigrants and Black Puerto Ricans. (Docket No. 2-1 ¶¶ 80-89.) The detailed equal protection provisions of the Consent Decree will promote police services that are equitable, respectful, and free of unlawful bias in a manner that supports broad community engagement and effective crime prevention. (*See* Docket No. 2-1 ¶¶ 80-89, 91-92.)

The Consent Decree also contains essential provisions to overhaul the investigatory, disciplinary, and reporting systems in place that utterly fail to address and prevent police abuses. (*See* Docket No. 2-1 ¶¶ 159-200.) At present, the disciplinary and other accountability systems fail to meaningfully punish officers for misconduct; the investigatory system fails to effectively examine use of force and allegations of police misconduct; and the reporting system fails to collect and track data that could be used to correct these grave issues. The Consent Decree addresses each of these critical failures by creating new and comprehensive procedures for reviewing, investigating, and analyzing use of force incidents, arrests, and searches thoroughly and in a timely manner. (*Id.*) It also contains detailed and much-needed provisions for the recording and investigation of civilian complaints, internal investigations, and discipline of officers. (*Id.*) It contains essential provisions regarding investigations where there is alleged criminal conduct by officers. (*Id.*) Lastly, it contains comprehensive and excellent provisions for the creation and implementation of a much-needed early identification system to flag problem officers, track repeat offenders within the force, and recommend disciplinary and non-

disciplinary intervention. (*Id.*) The ACLU believes that each of these provisions is essential to developing and maintaining a complaint investigation mechanism that will live up to the standards required under the U.S. Constitution.

***Third***, and finally, the Consent Decree contains a detailed timeline for implementation of reforms and is enforceable through continued court supervision (Docket No. 2-1 ¶ 291), both of which are necessary elements to achieve meaningful PRPD reform. It is clear that without court enforcement and monitoring of provisions that have the force and effect of federal law, the PRPD will not reform itself. This Court needs to maintain—as provided for under the Consent Decree—jurisdiction over the matter and monitor the PRPD's compliance with the Consent Decree's requirements. Only then can there be any assurance that the PRPD will faithfully comply with the U.S. Constitution.

### C. Areas of the Consent Decree that Should Be Strengthened

The ACLU fully supports the Consent Decree, and it respectfully submits that there are a few provisions that should be strengthened to advance the purpose of 42 U.S.C. §14141, namely, to end "a pattern and practice of conduct by law enforcement officers ... that deprives persons of rights privileges or immunities secured or protected by the Constitution...."

***First***, the agreement should include enhanced provisions for independent community oversight of the PRPD. Civil rights organizations and other civil society organizations are often the first resort for victims who have been targeted by the police, and should play a critical role in the oversight of the PRPD's implementation of the agreement.

***Second***, although the Consent Decree addresses crowd control, it fails to include a provision addressing the *training* of police officers on the new crowd control policies, interactions with protesters, the handling of public demonstrations, and constitutional rights to speech and assembly. Nor does the Consent Decree require the PRPD to devise policies that address when it shall be

appropriate for the commander on-scene to approve crowd dispersal techniques or what techniques should be allowed under what circumstances. The use of pressure-point compliance techniques is also not explicitly addressed in the Consent Decree, despite the fact that police officers have repeatedly applied these painful and questionable techniques hundreds of times on pacific protesters. Such provisions are necessary in order to prevent the use of excessive force against protesters and to ensure that PRPD officers respect Puerto Ricans' First Amendment right to freedom of speech and expression in the future.

## IV. CONCLUSION

For the reasons stated above *Amicus curiae* the ACLU supports the proposed Consent Decree filed by the U.S. Department of Justice in this case.

Dated: **April 1, 2013**

__/s/ _Nora Vargas Acosta___
**Nora Vargas-Acosta**
**USDC-PR 201206**
First Federal, Suite 1004
1056 Ave. Muñoz Rivera
San Juan, Puerto Rico 00927
Telephone: (787) 751-7485
E-mail: nvargasacosta@onelinkpr.net

and

__/s/ _Josué González-Ortiz___
**Josué González-Ortiz**
**USDC-PR 221808**

**William Ramírez-Hernández***
American Civil Liberties Union
of Puerto Rico
Union Plaza, Suite 1105
416 Avenida Ponce de Léon
San Juan, Puerto Rico 00918
Telephone: (787) 753-8493
E-mail: jgonzalez-ortiz@aclu.org

*Attorneys for Amicus Curiae the American Civil Liberties Union*

**Marjorie Press Lindblom***
**Maura M. Klugman***
**Leopoldo J. Yanez***
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022–4611
Telephone: (212) 446–4800
Facsimile: (212) 446–4900
E-mail: marjorie.lindblom@kirkland.com
E-mail: maura.klugman@kirkland.com
E-mail: leopoldo.yanez@kirkland.com

**Ben Wizner***
AMERICAN CIVIL LIBERTIES UNION
125 Broad Street, 18th Floor
New York, New York 10004
Telephone: (212) 549 - 2500
Facsimile: (212) 549-2654
E-mail: bwizner@aclu.org

* *not admitted to this District*