**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>COMMONWEALTH OF PUERTO RICO and<br>PUERTO RICO POLICE DEPARTMENT.<br><br>　　　　　　　　Defendants. | Civil No. 12-2039 (GAG) |

**JOINT MOTION FOR CONDITIONAL DISMISSAL AND
ENTRY OF AGREEMENT AS AN ORDER**

　　COME NOW jointly Plaintiff, United States of America, and Defendants, Commonwealth of Puerto Rico, et al., and, having entered into the attached Agreement for the Sustainable Reform of the Puerto Rico Police Department ("Agreement"), respectfully move this Court for an Order conditionally dismissing the instant action and approving the Agreement, pursuant to Fed. R. Civ. P. 41(a)(2). As set forth in Paragraphs 292 and 294 of the Agreement, the Parties respectfully request that the Court retain jurisdiction over the Agreement for the purpose of enforcing its terms until Defendants have achieved full and effective compliance with the Agreement  Through the Agreement, the parties seek to implement comprehensive systemic reforms of the Puerto Rico Police Department ("PRPD") to fully address the United States' claims under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 ("Section 14141"), and resolve this litigation.

　　The United States' Amended Complaint alleges that Defendants engaged in a pattern or practice of unconstitutional and unlawful activity in violation of the First Amendment, the Fourth Amendment, the Fourteenth Amendment, and Section 14141. *See* Amended Complaint, Dkt. No.

10.  Defendants deny the existence of any past or current pattern or practice of unconstitutional conduct by Defendants or their agents, including PRPD and its officers.  The Agreement addresses the necessary changes to policies, procedures, training, internal and external oversight, disciplinary systems, and information and data integrity mechanisms to ensure the delivery of effective and constitutional police services that protect and guarantee the civil rights of all residents of Puerto Rico.

## DISCUSSION

The Parties request that the attached Agreement be approved and entered as an Order of the Court.  The First Circuit has recognized a "clear policy in favor of encouraging settlements" in complex cases.  *Durrett v. Housing Authority of Providence*, 896 F.2d 600, 604 (1st Cir.1990).  General support for settlements is to be given particular deference where, as here, a government actor committed to the protection of the public interest has worked to construct the proposed settlement.  *See F.T.C. v. Standard Financial Management Corp.*, 830 F.2d 404, 408 (1st Cir. 1987) (holding that the district court must exercise some deference to the agency's determination that settlement is appropriate).  In assessing whether to approve a proposed settlement, courts must ensure that "parties have validly consented; that reasonable notice has been given [to] possible objectors; that the settlement is fair, adequate, and reasonable; that the proposed decree will not violate the Constitution, a statute or other authority; [and] that it is consistent with the objectives of Congress; and, if third parties will be affected, it will not be unreasonably or legally impermissible as to them."  *Durrett*, 896 F.2d at 604; *see also Conservation Law Found. v. Franklin*, 989 F.2d 54, 58 (1st Cir. 1993) (holding that consent decrees must bear the imprimatur of a judicial judgment that is fair, adequate, reasonable, and consistent with the objectives of Congress).  The attached Agreement satisfies all of these requirements.

A.  Parties Have Consented to the Agreement.

The Parties have validly consented to the attached Agreement.  Following extensive negotiations with former Governor Luis Fortuño's administration, the Parties filed an initial version of the Agreement on December 21, 2012.  Ex. A, Dkt. No. 2.  Simultaneously, the Parties requested a stay of proceedings to provide Puerto Rico's incoming administration an opportunity to review the proposed agreement and, if necessary, negotiate modifications to the same.  Dkt. No. 2.  This Court granted the stay and the Parties promptly re-engaged in arm's length, good faith negotiations to finalize the comprehensive Agreement.  The Parties reviewed the proposed agreement in detail and considered the necessity and practical requirements of each term and proposed modification.  These discussions included two informal status conferences with the Court, on March 20 and April 11, 2013, as well as numerous in-person and telephone conferences between the Parties.  The attached Agreement is the product of these discussions with the former and current Puerto Rico administrations, and is supported by the fully informed and valid consent of both parties.

B.  Reasonable Notice was Provided to Possible Objectors.

Possible objectors received reasonable notice of this matter through press coverage, postings on the Department of Justice's public website, and Orders of this Court.  On December 30, 2012, the Court issued an Order inviting any bona fide governmental or private entity to submit *amicus curiae* briefs by April 1, 2013.  Dkt. No. 7.  Several briefs were submitted and considered by the Court, and two *amici* – the American Civil Liberties Union and Gregoria Igartua – were provided the opportunity to argue their positions to the Court.  Dkt. No. 36.  The court ordered that the oral arguments delivered by the *amici* on April 11, 2013, be made part of the record in this case.  Dkt. No. 40.

      C.  <u>The Agreement Is Fundamentally Fair, Adequate, and Reasonable.</u>

Whether or not an agreement is fair, adequate, and reasonable depends on the character of negotiations that led to the creation of an agreement and whether or not that agreement bears the mark of justice. *United States v. Comunidades Unidas Contra La Contaminación*, 204 F.3d 275, 281 (1st Cir. 2000) (finding that an agreement between the United States and a private company was fair due to the existence of an "arm's length, good faith bargaining record"); *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 87 (lst Cir. 1990) (holding that consent decree must embody "concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible"). However, a court's assessment of settlements must strike a fine balance, and it "'must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case.'" *Communidades Unidas*, 204 F.3d at 281 (citing *United States v. Hooker Chemicals and Plastics Corp.*, 540 F. Supp. 1067 (W.D.N.Y. 1982), *aff'd*, 749 F.2d 968 (2d Cir. 1984)).

The negotiations between the Parties in this instance satisfy the standard set by the First Circuit, which rests on an assessment of whether there exists any evidence that negotiations were not carried out in good faith between equitably empowered parties. *Id.* Consistent with these requirements, the Parties negotiated the Agreement vigorously over a year, with the assistance of subject matter experts independently retained by both parties and, as described above, the Court. Once the newly-elected Commonwealth administration took office, that administration familiarized itself with the Agreement and continued negotiations over five additional months.

The result of the negotiations between the Parties further satisfies the requirements of justice and fairness. In determining the adequacy of an agreement reached through settlement,

courts have assessed the substance of the agreement itself. *Id.* (relying on the plethora of compliance requirements, qualitative standards, and ongoing monitoring and reporting devices incorporated in the decree" as emblems of adequacy); *see also United States v. District of Columbia*, 933 F. Supp. 42, 50-51 (D.D.C. 1996) (approval of an agreement which contained provisions requiring short and long term equipment improvements, detailed reform schedules, and reporting requirements, among other terms).

The attached Agreement is tailored to the unique needs of PRPD and provides concrete measures to ensure that PRPD provides effective and constitutional police services to the people of Puerto Rico. The Agreement includes a robust and fully developed compliance scheme that includes internal auditing and self-reporting by PRPD, external oversight by a Technical Compliance Advisor ("TCA"), structured feedback and strategic partnerships with Civilian Interaction Committees and other criminal justice agencies, and ongoing review by the Department of Justice. The Agreement provides outcome measures and performance indicators that emphasize even-handed and equitable treatment by police, rather than focusing simply on the development of policies and procedures, to measure the effectiveness of reforms. The Agreement promotes greater transparency and accountability, and assists the Parties and the community in determining whether the Agreement is resulting in more constitutional policing and community participation , by providing for the collection and public dissemination of information about PRPD's practices. The Agreement itself marks a first step towards robust community participation, as it incorporates the input of a broad array of community groups and individuals, including rank-and-file PRPD officers, with whom the Parties met and solicited ideas for reform. Under the Agreement, officers will develop the skills and knowledge, as well as receive the support they need, to provide effective and constitutional policing through: equal

opportunity, comprehensive pre-service and in-service training, protection against retaliation, periodic performance evaluations, early intervention from supervisors that includes non-punitive and learning-based options, career development, and wellness programs.

The Agreement also provides unprecedented flexibility to assist PRPD in meeting the complex challenges it faces to modernize and ensure the sustainability of reforms. A capacity-building period during the initial stage of implementation allows PRPD to conduct a coordinated and structured overhaul of its administrative and operating structures, information systems, and personnel management processes, while requiring the completion of foundational reform tasks, such as developing policies and training officers.  Action plans, reviewed and approved by the TCA and the Department of Justice, allow PRPD to self-direct its efforts during the capacity-building period by detailing necessary action steps, allocating essential resources, and drawing on local and external expertise to meet established benchmarks in the Agreement.  The action plans are filed with the Court and incorporated as part of the Agreement to provide for appropriate oversight and accountability.  Accordingly, as a comprehensive and detailed blueprint for sustainable reform, the Parties agree that the Agreement bears the mark of fairness and offers the best path forward for PRPD.

      D.  <u>The Agreement Furthers the Objectives of Section 14141.</u>

The attached Agreement is in harmony with the Congressional objectives that led to the enactment of Section 14141.  Congress enacted Section 14141 to forbid law enforcement officers from engaging in a pattern or practice "that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States." 42 U.S.C. § 14141.  It contains no limitation on the nature of the constitutional or federal rights that it protects.  Where a pattern or practice of constitutional or statutory violations exists, Congress granted the

Department of Justice the authority to sue state and local governments and their police departments to correct the underlying policies and practices that lead to the misconduct.  H.R. Rep. No. 102-242, pt. 1, at 137.

Here, the Agreement's substantive provisions relate directly to the policies, procedures, training, and oversight that the United States alleges cause or contribute to the pattern or practice of unconstitutional and unlawful activities by PRPD officers in violation of the First, Fourth, and Fourteenth Amendments.  In the United States' Amended Complaint, the United States alleges that these patterns or practices are evidenced by a number of specific incidents, as well as longstanding institutional failures by PRPD. *See* Amended Complaint, Dkt. No. 10.  In the Agreement, the Parties negotiated and agreed upon revisions to PRPD policies, procedures, and practices to address the allegations in the United States' Amended Complaint and thus further the purpose of Section 14141 of protecting the civil rights of all residents of Puerto Rico.

The Agreement is tailored to the alleged deficiencies identified by the United States in the Department of Justice's September 7, 2011 Report and those identified by PRPD as part of its own self-reform efforts.  Accordingly, it is consistent with and furthers the objectives of Section 14141 because it embodies the agreement of the Commonwealth of Puerto Rico to protect individuals' civil rights and eliminate police misconduct.  The Parties have agreed to the implementation of extensive reforms will transform PRPD into a contemporary law enforcement agency in critical areas such as recruitment, selection and hiring of PRPD officers; use of force; searches and seizures, equal protection; training; use and deployment of specialized tactical units; crowd control; response to gender-based violence, including sexual assaults and domestic violence; civilian complaints and internal investigations; and data and information systems

integrity.  The Agreement also creates mechanisms to increase transparency and community involvement in the oversight of PRPD functions and reforms.

      E.  <u>Implementing the Agreement Is Necessary To Achieve Critical Reforms.</u>

Finally, approval and entry of the Agreement is appropriate here because voluntary compliance is more likely to conserve public resources and accomplish the statutory goals of Section 14141, than orders imposed at the end of protracted litigation.  *See* Fed. R. Civ. P. 16(b) advisory committee's note ("Since it obviously eases crowded court dockets and results in savings to the litigants and the judicial system, settlement should be facilitated at as early a stage of the litigation as possible."); *Kirkland v. New York State Dep't of Correctional Services*, 711 F.2d 1117, 1128 n.14 (2d Cir. 1983) (explaining that in the Title VII context, settlements "may produce more favorable results for protected groups than would more sweeping judicial orders that could engender opposition and resistance"); *United States v. City of Jackson, Miss.*, 519 F.2d 1147, 1152 n.9 (5th Cir. 1975) ("Because of the consensual nature of the decree, voluntary compliance is rendered more likely . . . .  At the same time, the parties . . . minimize costly litigation and adverse publicity and avoid the collateral effects of adjudicated guilt.").  Indeed, "the value of voluntary compliance is doubly important when it is a public employer that acts, both because of the example its voluntary assumption of responsibility sets and because the remediation of governmental discrimination is of unique importance."  *Wygant v. Jackson Bd. of Educ.*, 476 U.S. 267, 290 (1986) (O'Connor, J., concurring).

Here, the Agreement provides an opportunity to continue the Parties' considerable efforts to reform PRPD.  To date, the United States has conducted a thorough investigation that identified deficiencies in PRPD's policies and procedures with the full cooperation of the Commonwealth; the Commonwealth has begun to institute its own reform initiatives; and the

Parties jointly negotiated a comprehensive agreement to address those deficiencies, build upon these reform initiatives, and resolve this litigation.

The Parties agree that the measures contained in the Agreement will enhance PRPD officers' ability to provide effective and constitutional policing, will promote transparency and accountability between PRPD and the community, and will increase public confidence in PRPD. As a result, the Agreement will improve relationships with various constituencies in Puerto Rico and facilitate effective community policing by PRPD. Settling this dispute without protracted litigation thus allows the Commonwealth, the United States, and PRPD to achieve one of their primary goals: ensuring effective and constitutional policing for the Commonwealth of Puerto Rico. This undertaking will enjoy far broader support as part of the negotiated Agreement than as one ordered by the Court after litigation.

## **CONCLUSION**

The attached Agreement represents a compromise created through in-depth and collaborative negotiations between experienced and sophisticated litigants, aided on both sides by subject matter experts, and with an eye towards the Parties' shared goals of reform. The Agreement benefits from the views expressed by the *amici* and furthers the joint objectives of the Parties, as well as the intent of Congress in enacting Section 14141. For those reasons and others described herein, the Parties request that this Court enter the Agreement, including the provisions and terms that create obligations for the Parties to comply with the Agreement, as an Order of the Court and that it retain jurisdiction over its enforcement after the conditional dismissal of the action.

Respectfully submitted:

| FOR PLAINTIFF UNITED STATES: | FOR COMMONWEALTH DEFENDANTS: |
|---|---|
| THOMAS E. PEREZ<br>Assistant Attorney General | LUIS SÁNCHEZ BETANCES<br>Secretary of Justice |
| ROY L. AUSTIN, JR.<br>Deputy Assistant Attorney General<br>Civil Rights Division | MARTA ELISA GONZALEZ YGLESIAS<br>Deputy Secretary of Justice<br>For Litigation |
| JONATHAN M. SMITH<br>Chief | *S/ CARLOS A. DEL VALLE CRUZ*<br>CARLOS A. DEL VALLE CRUZ<br>USDC-PR # 130604 |
| *S/ LUIS E. SAUCEDO*<br>LUIS E. SAUCEDO (G01613)<br>Acting Deputy Chief | cdelvalle@justicia.pr.gov<br><br>*S/ GERARDO DE JESUS ANNONI*<br>GERARDO DE JESUS ANNONI |
| *S/ SERGIO PEREZ*<br>SERGIO PEREZ<br>ZAZY I. LÓPEZ<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Rights Division<br>Special Litigation Section<br>950 Pennsylvania Avenue, NW<br>Washington, DC  20530<br>Tel:   (202) 598-0482<br>Fax:  (202) 514-4883<br>luis.e.saucedo@usdoj.gov | USDC-PR # 212209<br> gdejesus@justicia.pr.gov<br>Legal Counsel<br>P.R. Department of Justice<br>P.O. Box 9020192<br>San Juan, PR 00902-0192<br>Tel:  (787) 721-7700, ext. 2105<br>Fax. (787) 722-4440<br>Attorneys for Defendants |
| Attorneys for Plaintiff | |

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Joint Motion For Entry of Agreement was filed electronically on this 17th day of July 2013, with the Clerk of Court using the CM/ECF System, which will provide notice of such filing to all registered parties.

*S/ LUIS E. SAUCEDO*
LUIS E. SAUCEDO (G01613)
Acting Deputy Chief


*S/ SERGIO PEREZ*
SERGIO PEREZ
ZAZY I. LÓPEZ
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC  20530
Tel:   (202) 598-0482
Fax:  (202) 514-4883
luis.e.saucedo@usdoj.gov