IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>     v.<br><br>COMMONWEALTH OF PUERTO RICO and the<br>PUERTO RICO POLICE DEPARTMENT,<br><br>              Defendants. | No. 3:12-cv-2039 (GAG) |

## <u>AGREEMENT FOR THE SUSTAINABLE REFORM OF THE PUERTO RICO POLICE DEPARTMENT</u>

## TABLE OF CONTENTS

I.      **INTRODUCTION** ............................................................................ 1

II.     **DEFINITIONS** ............................................................................... 4

III.    **PROFESSIONALIZATION** ........................................................... 15

      A.   Staffing and Community Policing ............................................. 15
      B.   Promotions .................................................................................. 15
      C.   Commander Corps ..................................................................... 17

IV.    **USE OF FORCE:  INTERNAL CONTROLS AND ACCOUNTABILITY** ......... 17

      A.   General Use of Force ................................................................. 17
      B.   Specialized Tactical Units ......................................................... 18
      C.   Crowd Control and Incident Management ................................. 19
      D.   Force Reporting ......................................................................... 20
      E.   Force Review, Investigations, and Analysis ............................. 21
      F.   Supervisory and FRB Reviews ................................................. 22
      G.   FIU Investigations and Force Reviews by SFRB ..................... 23
      H.   Use of Force Training ............................................................... 25
      I.   Responding to Behavioral/Mental Health Crisis ...................... 28

V.      **SEARCHES AND SEIZURES:  INTERNAL CONTROLS AND ACCOUNTABILITY** ........................................................................ 29

      A.   Stops, Searches, and Seizures Generally .................................. 29
      B.   Investigatory Stops and Searches .............................................. 29
      C.   Arrests ........................................................................................ 31
      D.   Searches ...................................................................................... 34
      E.   Training on Stops, Searches, and Seizures ............................... 34

VI.    **EQUAL PROTECTION AND NON-DISCRIMINATION** ................... 36

      A.   General Provisions ..................................................................... 37
      B.   Discriminatory Policing ............................................................ 38
      C.   Sexual Assault and Domestic Violence ................................... 40

VII.   **RECRUITMENT, SELECTION, AND HIRING** ............................... 41

      A.   Recruitment Plan ....................................................................... 42
      B.   Hiring Reforms ......................................................................... 42

VIII.   **POLICIES AND PROCEDURES** .................................................... 43

IX.    **TRAINING** ................................................................................ 45

      A.   Pre-Service Education and Training .......................................... 46
      B.   Field Training Program .............................................................. 47
      C.   In-Service Training .................................................................... 48
      D.   Training Records ........................................................................ 49

X.      **SUPERVISION AND MANAGEMENT** ........................................... 49

      A.   Duties of Supervisors ................................................................ 50
      B.   Supervisor Training ................................................................... 51
      C.   Performance Evaluation ............................................................ 52

D.   Early Identification System ........................................................... 53
E.   Internal Audits and Interagency Feedback ................................... 55

XI.   **CIVILIAN COMPLAINTS, INTERNAL INVESTIGATIONS, AND DISCIPLINE** ........................................................................................ 57

A.   Civilian Complaints ....................................................................... 57
B.   Internal Investigations .................................................................. 58
C.   Complaint Intake, Classification, Assignment, and Tracking ........ 59
D.   Investigation of Complaints .......................................................... 61
E.   Staffing, Selection, and Training Requirements .......................... 65
F.   Preventing Retaliation .................................................................. 66
G.   Discipline ...................................................................................... 66
H.   Officer Assistance and Support .................................................... 67

XII.   **COMMUNITY ENGAGEMENT AND PUBLIC INFORMATION** .......... 67

A.   Community Oriented Policing ........................................................ 68
B.   Community Interaction Councils ................................................... 68
C.   Public Information ......................................................................... 70

XIII.   **INFORMATION SYSTEMS AND TECHNOLOGY** ............................... 71

XIV.   **IMPLEMENTATION, COMPLIANCE ASSESSMENT, AND ENFORCEMENT** ...................................................................................... 72

A.   Technical Compliance Advisor ...................................................... 72
B.   Review and Implementation of Policies, Procedures, and Programs ... 73
C.   Development, Implementation, and Assessment of Action Plans .... 74
D.   Comprehensive Surveys and Compliance Reviews ...................... 79
E.   Outcome Assessments .................................................................. 80
F.   Compliance Assessment Review and Methodology ...................... 83
G.   Comprehensive Reassessment ..................................................... 84
H.   TCA Reports .................................................................................. 85
I.   Communication Between the TCA and Parties ............................. 87
J.   TCA Recommendations and Technical Assistance ....................... 88
K.   Public Statements, Testimony, Records, and Conflicts of Interest .... 88
L.   PRPD's Reports and Self-Assessments ........................................ 90
M.   Access and Confidentiality ........................................................... 90
N.   Selection and Compensation of the TCA ...................................... 92
O.   General Provisions ........................................................................ 95
P.   Court Jurisdiction, Modification of the Agreement, and Enforcement ... 98
Q.   Termination of the Agreement ...................................................... 100

**AGREEMENT FOR THE SUSTAINABLE REFORM OF THE
PUERTO RICO POLICE DEPARTMENT**

## I.  INTRODUCTION

1.     The Commonwealth of Puerto Rico and the United States are committed to vigorous and constitutional law enforcement.  The Parties jointly enter into this Agreement to ensure that the Puerto Rico Police Department ("PRPD") delivers policing services in a manner that upholds civil rights guaranteed by the Constitution and laws of the United States and the Commonwealth of Puerto Rico.  This Agreement is also intended to promote public safety by providing PRPD officers with the tools, guidance, and resources that they need to fight crime effectively.  The Parties recognize that public safety, constitutional policing, and the community's trust in its police force are interdependent.  The full and sustained implementation of this Agreement will protect public safety, guarantee individual civil rights, and increase public confidence in the police.

2.     This Agreement is the result of extensive cooperation and consultation between PRPD and the Department of Justice ("DOJ") and builds on reform initiatives begun by PRPD. The Parties recognize that the modernization and professionalization of PRPD are important priorities and have agreed on comprehensive reforms to accomplish these objectives.  This Agreement will serve as a platform for other collaborative efforts between the Parties to enhance PRPD's law enforcement capabilities, increase public safety, and provide PRPD officers with the skills, training, and resources they need to fight crime successfully and to adhere to the highest constitutional policing standards.

3.     As set forth in further detail below, the Parties have worked together and identified measures to enhance each of the following areas:  (1) Professionalization; (2) Use of Force; (3) Searches and Seizures; (4) Equal Protection and Non-Discrimination; (5) Recruitment,

1

Selection, and Hiring; (6) Policies and Procedures; (7) Training; (8) Supervision and

Management; (9) Civilian Complaints, Internal Investigations, and Discipline; (10) Community

Engagement and Public Information; and (11) Information Systems and Technology.  To carry

out these reforms, PRPD will develop Actions Plans in each of these substantive areas.  These

Action Plans will set forth in detail the steps agreed upon to execute and implement the reforms

and achieve the desired outcomes in each area.  These reforms will require the implementation of

policies, practices, training, documentation, internal review, continuous improvement, and

oversight.

      4.      To ensure public accountability, this Agreement requires the collection and public

dissemination of information regarding the reform efforts and their results.  It is critical to

strengthen the community's trust in PRPD that there be timely and reliable public information

about PRPD's progress and accomplishments under these reforms.

      5.      In 2008, DOJ initiated an investigation of PRPD of an alleged pattern or practice

of use of excessive force, unconstitutional searches and seizures, and discriminatory policing.

DOJ conducted the investigation pursuant to the Violent Crime Control and Law Enforcement

Act of 1994, 42 U.S.C. § 14141, and the anti-discrimination provisions of the Omnibus Crime

Control and Safe Streets Act, 42 U.S.C. § 3789d.  PRPD welcomed the investigation and pledged

cooperation, and has worked in partnership with DOJ to establish the reforms in this Agreement.

      6.      As part of its investigation, DOJ and its police practices consultants conducted a

detailed fact-finding review with the assistance and full cooperation of PRPD, including tours of

police areas; interviews with PRPD officers, supervisors, command staff, Commonwealth

officials, members of the public, and other stakeholders; review of many thousands of

documents, including policies and procedures, incident reports, internal investigation files,

2

civilian complaint records, external audit reports, and legislative materials; and ride-alongs with officers and supervisors.  PRPD's Superintendent and high-level officials met personally with DOJ representatives and consultants on multiple occasions and pledged their full support and cooperation.

7.      In response to the concerns raised by DOJ and in recognition of the need to modernize and professionalize its operations, PRPD undertook its own internal reform efforts, with the assistance of well-regarded police consultants.  These efforts culminated in the issuance in March 2011 of PRPD's own internal reform plan:  the Blueprint for Excellence ("the Blueprint").  The reforms in the Blueprint include the development and implementation of new policies regarding use of force and a wide range of other substantive areas; the training of all appropriate officers in the new use of force policies through a new training program based on the "train-the-trainer concept;" the adoption of a reformed disciplinary system; the improvement of citizen complaint procedures; the strengthening of community outreach efforts through Citizen Interaction Committees; and a staffing review to improve supervisor to officer ratios.  A critical component of the Blueprint was the establishment of select precincts as "Zones of Excellence," where best practices would be implemented first and then spread to PRPD at large.  As of this date, one such Zone of Excellence has been established in the Bayamón Oeste region.

8.      In September 2011, DOJ issued a written report of its investigative findings ("Report").  The Report sets forth DOJ's findings related to use of force; use of force to suppress the exercise of First Amendment rights; and searches and seizures.  The Report identifies several additional areas of serious concern such as discriminatory policing and the investigation of sex crimes and incidents of domestic violence.  The Report also identifies systemic deficiencies in PRPD's policies and procedures; the conduct of specialized units; pre-service and in-service

3

training; supervision; the intake, investigation, and adjudication of misconduct complaints; crime and corruption by officers; promotions; risk management; external oversight and accountability; and community engagement. The Report concludes that PRPD suffers from a number of deep-rooted problems that have existed for many years that need to be addressed in a systemic manner.

9.      While PRPD did not agree with all of the findings and conclusions in the Report, following the issuance of the Report and throughout 2012, the Parties met to share their ideas and proposals for modernizing and professionalizing PRPD and discussed the numerous reforms already underway at PRPD. Once the newly-elected Commonwealth administration took office in January 2013, that administration familiarized itself with the Agreement and continued negotiations to finalize this Agreement. The Agreement is the product of a serious cooperative effort built upon the Parties' mutual commitment to constitutional and effective law enforcement. This Agreement expands on PRPD's reform efforts to date.

10.     The reforms in this Agreement are intended to protect public safety, promote constitutional policing, and build the community's trust. The Parties enter into this Agreement to accomplish these critical objectives and ensure that PRPD guarantees all residents of Puerto Rico the benefits of vigorous and constitutional law enforcement.

## II.      DEFINITIONS

11.     The following terms, definitions, and abbreviations shall apply to this Agreement:

a)      "PRPD" means the Puerto Rico Police Department and its agents, officers, supervisors, and employees (both sworn and unsworn).

b)      "Commonwealth of Puerto Rico" means the Government of Puerto Rico, any agencies thereof, and its officials, officers, and employees.

4

c)    "UCCJ" means the University College of Criminal Justice, including its
agents, officers, and employees.

d)    "DOJ" means the United States Department of Justice's Civil Rights
Division and its agents and employees.

e)    "Action Plan" means a plan developed by PRPD with the approval of the
Technical Compliance Advisor ("TCA") and DOJ that contains temporal
benchmarks and detailed action steps designed to achieve desired
outcomes within generally accepted professional standards.

f)    "Appointment Date" means the date when the Court enters an order
approving the Parties' selection of the TCA or when the Court enters an
order appointing a TCA among candidates submitted by the Parties,
consistent with Paragraphs 271-272.

g)    "Arrest" means a seizure of greater scope or duration than an investigatory
stop or detention.  An arrest is lawful when supported by probable cause.

h)    "Auditable form" means a discrete and verifiable record of the relevant
information maintained separately and independently of other forms
maintained by PRPD, for the purpose of internal or external review and/or
performance improvement.

i)    "Boilerplate" means language that is stock and/or formulaic and fails to
attest to the unique facts of an incident.

j)    "Chemical agent" means a chemical compound that irritates the eyes to
cause tears and pain. The term includes any form of chemical irritant used
by PRPD as a weapon, including Oleoresion Capiscum spray.

k)      "Civilian Employee" means any non-sworn personnel employed by
        PRPD, on either a temporary or permanent basis, in either a paid or unpaid
        capacity.

l)      "CIT" stands for Crisis Intervention Team.

m)      "Community-oriented policing" is a policing philosophy that promotes
        and relies on collaborative partnerships between a law enforcement
        agency and the individuals and organizations it serves to develop solutions
        to problems, increase trust in police, and improve the effectiveness of
        policing efforts.

n)      "Complainant" means any person, including a PRPD officer or employee,
        who makes a complaint against PRPD or an officer or employee of PRPD.

o)      "Complaint" means any complaint or allegation from any source regarding
        PRPD services, policy or procedure, claims for damages (that allege
        officer misconduct), or misconduct by PRPD officers or civilian
        employees.  Complaints may be about the service provided by PRPD
        officers or employees ("service complaints"), misconduct complaints, or
        both.  A "misconduct complaint" means any allegation of improper
        conduct by an officer or other PRPD employee, whether the complaint
        alleges corruption or other criminal misconduct; a violation of law; or a
        violation of PRPD policy or procedure.  PRPD shall document and
        evaluate expressions of dissatisfaction regarding the service provided by
        PRPD officers or employees to determine whether these complaints

6

include allegations of misconduct and are therefore misconduct complaints, or are purely service complaints.

p)  "Consensual Field Interview" includes questioning for the purpose of eliciting facts or information.  An interview is distinguished from an investigatory stop, investigatory detention, or other custodial interview because the interviewee is free to leave at any time.

q)  "Critical firearm discharge" means each discharge of a firearm by a PRPD officer with the exception of range and training discharges.

r)  "Demographic Category" means age, race, color, ethnicity, national origin, religion, gender, disability, sexual orientation, gender identity or expression, socioeconomic status, or political ideology or affiliation.

s)  "Discipline" or "Disciplinary Action" means a personnel action for violation of an established law, regulation, rule, or PRPD policy, including, but not limited to, an admonishment, written reprimand, suspension, demotion, or dismissal.

t)  "Discriminatory Policing" means selective enforcement or non-enforcement of the law, including the selecting or rejecting of particular policing tactics or strategies, based on membership in a demographic category specified in this Agreement.

u)  "ECW" means electronic control weapon, a weapon designed primarily to discharge electrical charges into a subject in order to cause involuntary muscle contractions that will override the subject's voluntary motor response.  TASERS are an example of an ECW.

7

v) "Effective Date" means the date the Court enters an order approving this Agreement, consistent with Paragraph 292.

w) "EIS" stands for Early Intervention System.

x) "Exigent circumstances" means unanticipated and unavoidable emergencies in which a reasonable person would believe that imminent bodily harm to a person or persons or the destruction of evidence is likely.

y) "Firearm" means a pistol, revolver, shotgun, carbine or machine gun, as well as any instrument capable of discharging a bullet or shot.

z) "FIU" stands for the Force Investigation Unit.

aa) "FRB" stands for Force Review Board.

bb) "Full and Effective Compliance" means sustained compliance with all substantive provisions of this Agreement and sustained and continuing improvement in PRPD policing.  The substantive provisions of this Agreement are all provisions contained in Sections III through XIII.

cc) "Gender identity" means a person's internal sense of feeling male or female.  "Gender expression" is the way in which an individual manifests or expresses their gender identity, including but not limited to appearance and manner.

dd) "Implement" or "implementation" means the development or putting into place of a policy or procedure, including the appropriate training of all relevant personnel, and the consistent and verified performance of that policy or procedure.

ee) "Including" means "including, but not limited to."

8

ff)   "Investigatory stop" or "investigatory detention" means a temporary restraint where the subject of the stop or detention is not free to leave.  An investigatory stop or detention is lawful when supported by reasonable suspicion and narrowly tailored in scope and duration to the reasons supporting the seizure.  An investigatory stop or detention may be a pedestrian, vehicle, or bicycle stop.  Stops and detentions conducted as part of a lawful vehicle checkpoint are not investigatory stops or detentions for purposes of this Agreement.

gg)   "Less-lethal force" means a force application not intended or expected to cause death or serious injury and which is commonly understood to have less potential for causing death or serious injury than conventional, more lethal police tactics.  Nonetheless, use of less-lethal force can result in death or serious injury.

hh)   "Less-lethal weapon" means any apprehension or restraint tool that, when used as designed and intended, is less likely to cause death or serious injury than a conventional lethal weapon (e.g., firearm).  Nonetheless, use of a less-lethal weapon may result in death or serious injury.

ii)   "Lethal force" means any use of force likely to cause death or serious physical injury, including the use of a firearm, neck hold, or strike to the head, neck, or throat with a hard object, including a fist.

jj)   "LGBTT" stands for Lesbian, Gay, Bisexual, Transgender, and Transsexual, as commonly used in Puerto Rico.

kk)  "Neck hold" refers to one of the following types of holds:  (1) bar-arm control hold:  a hold that inhibits breathing by compression of the airway in the neck;  (2) carotid restraint hold:  a hold that inhibits blood flow by compression of the blood vessels in the neck; or (3) a lateral vascular neck constraint.  A neck hold shall be considered lethal force.

ll)  "NIBRS" stands for National Incident-Based Reporting System.

mm)  "Non-punitive corrective action" refers to action other than discipline taken by a PRPD supervisor to enable or encourage a PRPD employee to modify or improve his or her performance.  It may include:  oral or written counseling; training; increased field supervision for a specified period; mandatory professional assistance; referral to Behavioral Science Services or to the Employee Assistance Program; a change of an officer's partner; or a reassignment or transfer.

nn)  "Police officer" or "officer" means any law enforcement officers employed by PRPD, including cadets, undercover agents, supervisors, and commanding officers.

oo)  "Policy" means written regulations or directives issued by PRPD describing the duties, functions, and obligations of PRPD officers and/or employees, including General and Special Orders issued by the Superintendent.

pp)  "PRDOJ" stands for the Puerto Rico Department of Justice.

qq)  "PRPD unit" means any designated organization of officers within PRPD, including specialized, tactical, and investigatory units.

10

rr)     "Probable cause" means reasonably trustworthy facts and circumstances that, within the totality of the circumstances, lead an officer to reasonably believe that an individual has committed, is committing, or is about to commit an offense.

ss)     "Reasonable force" means that force which an ordinary, prudent, and reasonable officer placed in the same position with the same knowledge would find to be reasonable.  In determining whether the force used by a police officer in effectuating an arrest was reasonable under the circumstances, factors to be considered are:  (1) the known character of the arrestee; (2) the risks and dangers faced by the officers and third parties; (3) the nature of the offense involved; (4) the chance of the arrestee's escape if the particular means are not employed; (5) the existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officers as compared to the arrestee; and (7) the exigency of the moment.  Force that is not "reasonable" is "unreasonable."

tt)     "Reasonable suspicion" means articulable facts that, within the totality of the circumstances, lead an officer to reasonably suspect that criminal activity has been or is about to be committed.

uu)     "Region" means one of the police service areas of PRPD located throughout the Commonwealth of Puerto Rico that is led through the chain of command by a Regional Commander and that is subdivided into precincts and stations.

11

vv)  "SARA" stands for Scanning, Analysis, Response, and Assessment approach.

ww)  "Seizure" or "detention" means any restriction on the liberty interest of an individual.  A seizure occurs when an officer's words or actions convey to a reasonable person that he or she is not free to leave.

xx)  "Selection device" means any examination, test, requirement, or criterion used to evaluate a person's qualifications for employment, assignment to a specialized unit, or promotion.

yy)  "Serious injury" means an injury that causes death or substantial risk of death; permanent harm to health; disfigurement or permanent loss or impairment of function to any organ of the body; or requires treatment above first aid level of care at a health care facility.

zz)  "Serious use of force" means:  (1) all uses of force by a PRPD officer resulting in a serious injury, including a broken bone or an injury requiring hospitalization; (2) all critical firearm discharges; (3)  all head, neck, and throat strikes; (4) all neck holds; (5) all uses of force by a PRPD officer resulting in a loss of consciousness; (6) all canine bites of humans resulting in serious injury or hospitalization; and (7) any strike, blow, or kick against a handcuffed or restrained subject that results in serious injury.

aaa)  "Service firearm" means any firearm issued to sworn personnel by PRPD.

bbb)  "SFRB" stands for Superintendent's Force Review Board.

ccc)  "Shall" means that the provision imposes a mandatory duty.

12

ddd)   "SPR" stands for the PRPD Superintendency of Professional

Responsibility or any other successor unit within PRPD that conducts

internal investigations of PRPD officers and employees.

eee)   "STU" means Specialized Tactical Unit, a temporary or permanent

organization of officers within PRPD whose operational objectives are

focused on a specific law enforcement purpose beyond general patrol or

criminal investigations and that require enhanced training on police

tactics, strategies, or techniques.  STUs include the Special Operations

Unit, Tactical Operations Unit, and Special Weapons and Tactics units.

fff)   "Superintendent" means the Superintendent of PRPD.

ggg)   "Supervisor" means a sworn PRPD employee at the rank of sergeant or

above (or anyone acting in those capacities) and non-sworn personnel with

oversight responsibility for other officers.

hhh)   "Supervisory investigation" means an investigation of a civilian complaint

conducted by a subject officer's supervisor or higher level official within

the officer's chain-of-command.  A supervisory investigation is not a

supervisory review, which is triggered when an officer reports a use of

force, investigatory stop, search, or seizure.

iii)   "Supervisor's Review Report" means a written report documenting a

supervisory review of use of force.

jjj)   "TCA" means "Technical Compliance Advisor," a person or team of

people, including any employee, agent, or independent contractor of the

TCA, who shall be selected to review, assess, and report on the

Commonwealth of Puerto Rico's implementation of this Agreement.

kkk)   "Training" shall refer to all training required by this Agreement.  Training

shall comport with generally accepted policing practices and include

adult-learning methods that incorporate role-playing scenarios and

interactive exercises, as well as traditional lecture formats.  Training shall

also include testing and/or writings that indicate that the officer

comprehends the material taught.

lll)   "UCR" stands for Uniform Crime Reporting.

mmm) "Use of force" means any physical coercion used to effect, influence, or

persuade an individual to comply with an order from an officer above

unresisted handcuffing, including unholstering a firearm and acquiring a

target.

nnn)   "Use of force indicating apparent criminal conduct by an officer" means

that force which a reasonable and trained supervisor would conclude could

result in criminal charges due to the apparent circumstances of the use of

force, such as the level of the force used as compared to the resistance

encountered or discrepancies in the use of force as described by the officer

and the use of force as evidenced by any resulting injuries, witness

statements, or other evidence.  It includes, but is not limited to, all strikes,

blows, kicks, ECW applications, or other similar uses of force against a

handcuffed subject, absent exigent circumstances.

ooo)   "Use of Force Report" means a written report documenting all force above

un-resisted handcuffing.

### III.   PROFESSIONALIZATION

12.   PRPD shall develop processes and mechanisms that promote professional, ethical, and respectful policing services to effectively address Puerto Rico's public safety challenges; consistently and uniformly apply constitutional police practices; build public confidence; and strengthen its institutional structures.  PRPD shall promote continuous performance improvement among all PRPD personnel that regularly identifies problems or challenges, assesses causal or contributing factors, and takes reasonable measures to achieve performance expectations in areas related to this Agreement.

### A.   Staffing and Community Policing

13.   PRPD shall assess the appropriate number of sworn and civilian personnel to perform the different department functions necessary to fulfill its mission.  To do so, PRPD shall conduct a staffing allocation and resource study.  The study shall form the basis for a staffing and resource allocation plan that is consistent with community-oriented policing principles and supports the systematic use of partnerships and problem-solving techniques.  To foster community-oriented policing, the plan shall consider deployment practices that offer officers opportunities to serve the communities in which they reside.

### B.   Promotions

14.   PRPD's promotion practices shall be merit-based and comply with equal opportunity employment principles.

15.   PRPD shall publish detailed job descriptions for each rank among sworn personnel, specifying the duties, responsibilities, and minimum qualifications for each position.

15

PRPD shall develop the job descriptions in consultation with the TCA based on generally accepted policing practices.

16.     PRPD shall ensure that its supervisor selection process is lawful, fair, and consistent with generally accepted policing practices and anti-discrimination laws.  PRPD shall develop objective selection criteria to ensure promotions are based on knowledge, skills, and abilities that are required to perform supervisory and management duties successfully in core substantive areas.  PRPD shall provide clear guidance on promotional criteria, and prioritize effective, ethical, and community-oriented policing as criteria for promotion.  These criteria should account for experience, civil rights and discipline record, training, and skills.

17.     PRPD shall utilize competitive written examinations as a component of the selection process to award promotions through the rank of Captain.  Written promotion examinations shall conform to generally-accepted professional standards for test validity and security and be designed to evaluate qualifications that are job related and consistent with business necessity.  PRPD shall develop these examinations in consultation with the TCA based on generally accepted policing practices and in compliance with anti-discrimination laws.

18.     All appointments to ranks above Captain shall be based on objective criteria that account for the knowledge, skills, and abilities to perform core management, supervisory, and leadership duties.

19.     PRPD shall establish procedures that govern the removal of officers from consideration for promotion for disciplinary action related to serious misconduct.

20.     PRPD shall establish specific criteria for the promotion of officers in direct supervisory roles.  Officers in supervisory roles shall not be rendered ineligible for promotion based solely on the number of civilian complaints filed against officers under their supervision.

16

The nature and type of civilian complaints, particularly those complaints that are investigated and substantiated by evidence, shall also be weighed when considering an officer for promotion. Promotions of officers with pending investigations or disciplinary action in a matter alleging serious misconduct shall be held in abeyance until the investigation or disciplinary action is resolved.

## C.      **Commander Corps**

21.     PRPD shall provide a developmental career path for officers aspiring to the command ranks that emphasizes leadership, ethics, community-oriented policing, educational achievement, and constitutional policing.

## IV.     **USE OF FORCE:  INTERNAL CONTROLS AND ACCOUNTABILITY**

22.     PRPD officers shall use force in accordance with the rights, privileges, and immunities secured or protected by the Constitution or laws of the United States and the Commonwealth of Puerto Rico, and shall prohibit the use of unreasonable force.  PRPD shall develop policies and procedures that enable officers to rely primarily on non-force techniques to effectively police; use force only when necessary; and de-escalate the use of force at the earliest possible moment.

## A.      **General Use of Force**

23.     PRPD shall develop a comprehensive and agency-wide use of force policy that complies with applicable law and comports with generally accepted policing practices.  The comprehensive use of force policy shall categorize all reportable uses of force into multiple levels, grouped by degree of seriousness, and shall include all force techniques, technologies, and weapons, both lethal and less-lethal, that are available to PRPD officers, including officers assigned to specialized tactical units.  The comprehensive use of force policy shall clearly define

17

and describe each force level option and the circumstances under which each force level is appropriate. The highest level of force described by the policy shall include all serious uses of force, as defined in this Agreement.

24.     PRPD shall develop comprehensive and agency-wide policies that comply with applicable law and comport with generally accepted policing practices concerning the use of: (a) lethal force; (b) firearms; (c) canines; (d) ECWs; (e) chemical agents; (f) less lethal munitions; (g) batons and impact weapons; and (h) any other force technology, weapon, or implement authorized by PRPD during the life of this Agreement. PRPD shall also develop a policy on sharing information with the public regarding serious uses of force and the dissemination of information to family members of civilians involved in a use of force incident.

25.     PRPD shall continue to prohibit the use of Chloroacetophenone (commonly referred to as "CN gas").

26.     PRPD shall maintain an accurate, current list of officers who successfully qualify with their regulation firearm, including any other firearm that officers are authorized to use or carry. Officers who fail to re-qualify shall be relieved of police powers and immediately relinquish all firearms, including personal firearms. Those officers who fail to re-qualify after remedial training within a reasonable time shall be subject to disciplinary action.

**B.     Specialized Tactical Units**

27.     PRPD shall develop policies on the use of force by members of specialized tactical units ("STUs"). This policy shall be consistent with PRPD's agency-wide use of force policy.

28.     PRPD shall prohibit STUs from conducting general patrol and policing functions. PRPD may temporarily reassign individual members of STUs to general patrol and policing functions, as necessary.

29.     PRPD shall develop eligibility criteria and selection devices for assignment to STUs that emphasize demonstrated capacity to carry out the mission of STU in a constitutional manner.  Officers assigned to STUs who are unable to maintain eligibility shall be removed from STUs.  Assignments to STUs shall be for a determined period, as specified by PRPD policy, unless there are extenuating circumstances that justify an extended assignment.

30.     PRPD shall require STUs to document in writing all law enforcement activities to include operational plans and after-action reports prepared in consistent formats for all call-outs and deployments.  Supervisors shall review the law enforcement activities of STUs periodically to ensure compliance with applicable laws and PRPD policies and procedures.

31.     PRPD shall track the number of STU deployments, the reason for each activation and deployment of STU, the legal authority, including type of warrant, if any, for each activation and deployment of STU, and the result of each activation and deployment of STU, including:  (a) the approximate location of the STU deployment; (b) the number of arrests made; (c) the type of evidence or property seized; (d) whether a forcible entry was made; (e) whether force was used by an STU member or other officer; and (f) whether a person was injured or killed by an STU member.

**C.     Crowd Control and Incident Management**

32.     PRPD shall develop crowd control and incident management policies that comply with applicable law and comport with generally accepted policing practices.

33.     The incident management policy shall provide that a ranking officer or other higher-level PRPD official at the scene of a mass demonstration, civil disturbance, or other crowd situation assume command and control and provide approval prior to deploying force as a crowd dispersal technique.

34.     The crowd control policy shall require the use of crowd control techniques and tactics that respect protected speech and the right to lawful assembly.

35.     PRPD policy shall require the assessment of law enforcement activities following each response to a mass demonstration, civil disturbance, or other crowd situation to ensure compliance with applicable laws and PRPD policies and procedures.

**D.     <u>Force Reporting</u>**

36.     PRPD shall develop a Use of Force Reporting Policy and Use of Force Report Form that comply with applicable law and comport with generally accepted policing practices. The Use of Force Reporting Policy will require officers to notify their immediate supervisor following any use of force, prisoner injury, or allegation of excessive force.  In cases involving a serious use of force, notification will be within one hour, absent exigent circumstances.

37.     The Use of Force Reporting Policy shall require all officers to report any use of force in writing in a Use of Force Report Form before the end of the shift.  The Use of Force Report shall include:  (a) a detailed account of the incident from the officer's perspective; (b) the reason for the initial police presence; (c) a specific description of the acts that led to the use of force, including the subject(s)' behavior; (d) the level of resistance encountered; and (e) a description of every type of force used.  The Use of Force Reporting Policy shall explicitly prohibit the use of boilerplate or conclusory language in all reports documenting use of force.

Failure to report a use of force or prisoner injury by a PRPD officer shall subject an officer, including supervisors and commanders, to disciplinary action.

38.     PRPD policy shall require officers to request medical services immediately when an individual is injured or complains of injury following a use of force.  The policy shall also require officers who transport a civilian to a medical facility for treatment to take the safest and most direct route to the medical facility.  The policy shall further require that officers notify the communications command center of the starting and ending mileage on the transporting vehicle.

39.     PRPD's Use of Force Reporting Policy shall require that officers submit copies of Use of Force Reports to their immediate supervisor and to SPR for tracking and analysis.  SPR shall maintain master copies of these reports in a central location.

**E.      Force Review, Investigations, and Analysis**

40.     PRPD policy shall specify that the conduct of all force reviews and investigations comply with applicable law and comport with generally accepted policing practices.  All force reviews and investigations shall, to the extent reasonably possible, determine whether the officers' conduct was justified and within PRPD policy.

41.     PRPD shall be responsible for maintaining a reliable and accurate tracking system on all officers' use of force; all force reviews carried out by supervisors; all force investigations carried out by Force Investigation Units ("FIU"); and all force reviews conducted by Force Review Boards ("FRB") and the Superintendent's Force Review Board ("SFRB").  At least annually, PRPD shall analyze data on officers' use of force to determine significant trends, identify and correct deficiencies revealed by this analysis, and document its findings in a public report.

42.     The quality of force reviews, force investigations, and investigation reviews shall be taken into account in the performance evaluations of the officers performing such investigations and reviews.

**F.     Supervisory and FRB Reviews**

43.     A supervisor shall respond to the scene of a serious use of force or allegation of excessive force involving an officer under his/her command upon notification of the incident.

44.     The supervisor shall conduct a supervisory review of all uses of force, prisoner injuries, or allegations of excessive force, except those incidents involving a serious use of force or force indicating apparent criminal conduct by an officer, which shall be investigated by FIU, SPR, and/or PRDOJ.  No supervisor who was involved in the incident, including by participating in, ordering, or authorizing the force being investigated, shall be responsible for the review of the incident.

45.     Supervisors shall complete use of force reviews within 5 business days of receiving the officer's use of force report.  The reviewing supervisor shall:  (a) determine whether the use of force was consistent with PRPD policy and/or raises any policy or operational concerns; (b) review all Use of Force Reports and ensure that all reports include the information required by this Agreement and PRPD policy; (c) document each use of force review promptly using a Supervisor's Force Review Report; and (d) consider whether there are non-punitive corrective actions or training needs.  A higher ranking officer within the investigating supervisor's chain-of-command shall review the Supervisor's Force Review Report for completeness and conformance with PRPD policy.  The reviewing officer shall evaluate the investigating supervisor's conclusions and document whether the reviewing officer concurs,

disagrees (with an explanation of the disagreement and the alternate conclusion), or defers until further investigation is completed.

46.     A Force Review Board shall evaluate supervisory reviews, including Supervisor's Force Review Reports and reviewing officers' determinations.  FRBs shall be composed of command staff from varying assignments.  PRPD policies shall specify the conduct and requirements of FRB proceedings to ensure thorough, timely, and objective reviews.  PRPD policy shall establish objective criteria that identify the force levels below serious uses of force that shall be reviewed by FRBs.  FRBs shall review supervisory review for completeness, evidentiary support, and compliance with PRPD policy.  FRB shall document each FRB proceeding, which shall include findings and recommendations to the regional commander.  FRB may also return force reviews to supervisors for additional review, as necessary, to ensure thorough and complete reviews.  Copies of all Force Review Reports and underlying documents shall be submitted to SPR for tracking and analysis.

47.     Whenever a reviewing supervisor, FRB, or other reviewing officer finds evidence of a use of force indicating apparent misconduct or apparent criminal conduct by an officer, he or she shall immediately notify his or her supervisor for referral to the appropriate investigating unit or the PRDOJ.  The Superintendent shall be notified of the referral.

**G.     FIU Investigations and Force Reviews by SFRB**

48.     PRPD shall ensure that all serious uses of force and allegations of excessive force are investigated fully and fairly by individuals with appropriate expertise, independence, and investigative skills to ensure that uses of force that are contrary to law or policy are identified and appropriately resolved and that policy or operational deficiencies related to the use of force are identified and corrected.  To this end, PRPD shall create FIUs to conduct investigations of

23

serious uses of force, uses of force indicating apparent criminal conduct by an officer, uses of force by PRPD personnel of a rank higher than sergeant, or uses of force reassigned to FIU by the Superintendent, his or her designee, SPR, or FRB. PRPD policies shall specify the membership requirements, conduct of investigations, and operational procedures of FIUs.

49.     A supervisor responding to a serious use of force or allegation of excessive force shall immediately notify FIU. FIU shall respond to the scene and commence an investigation. FIU may decline to respond to the scene following consultation and approval by the FIU supervisor. Declinations shall be documented in writing.

50.     FIU shall immediately notify and consult with PRDOJ regarding any use of force indicating apparent criminal conduct by an officer. If PRDOJ indicates that it may proceed criminally, or PRPD requests a criminal prosecution, any compelled interview of the subject officers shall be delayed until after consultation with PRDOJ or expressly permitted by the Superintendent. No other part of the investigation shall be held in abeyance unless specifically authorized by the Superintendent in consultation with PRDOJ.

51.     FIU shall complete its administrative use of force investigation within 45 days of the use of force, absent exceptional circumstances. At the conclusion of each use of force investigation, FIU shall prepare a report on the investigation and shall forward the report to SFRB for review and to SPR for tracking and analysis.

52.     The Superintendent's Force Review Board shall evaluate all FIU investigations, including FIU reports and determinations. SFRB shall be composed of senior command staff from varying units. PRPD policies shall specify the conduct and requirements of SFRB proceedings to ensure thorough, timely, and objective reviews. SFRB shall review each FIU investigation for completeness, evidentiary support, and compliance with PRPD policy. SFRB

shall document each force review proceeding, which shall include findings and

recommendations, to the Superintendent.  SFRB may also return force investigations to FIU for

additional investigation, as necessary, to ensure thorough and complete investigations.  Copies of

all Force Review Reports completed by SFRB and underlying documents shall be submitted to

SPR for tracking and analysis.

**H.**     **Use of Force Training**

    53.     PRPD shall train all PRPD officers on PRPD's use of force policies.  Thereafter,

PRPD shall provide all PRPD officers with use of force training at least every two years for the

first four years of this Agreement, and annually thereafter.  PRPD shall also provide training on

use of force as necessary, based on developments in applicable law and PRPD policy.  At least

annually, PRPD shall assess all use of force policies and training.  PRPD's use of force training

program shall include the following topics:

    a)    legal standards for reasonable force;

    b)    PRPD's use of force policy;

    c)    reporting use of force, requesting medical service, and preserving

        evidence;

    d)    scenario-based training and interactive exercises that illustrate proper use

        of force decision-making;

    e)    the proper deployment and use of all weapons or technologies, including

        firearms, batons, chemical agents, and ECWs;

    f)    threat assessment and de-escalation techniques that encourage officers to

        make arrests without using force, and instruction that disengagement, area

        containment, surveillance, waiting out a subject, summoning

reinforcements, calling in specialized units, or delaying arrest may be the appropriate response to a situation, even when the use of force would be legally justified;

g)   crisis intervention and interacting with people with mental illnesses, including instruction by mental health practitioners and an emphasis on de-escalation strategies;

h)   factors to consider in initiating or continuing a foot pursuit; and

i)   appropriate training on conflict management.

54.   PRPD shall provide an appropriate firearm training program that:

a)   requires officers to complete and satisfactorily pass firearm training and qualify on each firearm the officer is required or authorized to carry on an annual basis;

b)   requires cadets, officers in probationary periods, and officers who return from unarmed status or extended leave to complete and satisfactorily pass firearm training and qualify on each firearm the officer is required or authorized to carry before such personnel are permitted to carry and use firearms;

c)   incorporates night training, stress training (i.e., training in using a firearm after undergoing physical exertion), and proper use of force decision-making training, including continuous threat assessment techniques, in the annual in-service training program;

    d)      ensures that firearm instructors critically observe students and provide corrective instruction regarding deficient firearm techniques and failure to utilize safe gun handling procedures at all times; and

    e)      requires comprehensive testing that shows complete understanding of rules, regulations, and skills regarding firearm use.

55.     PRPD shall train all supervisors, FIU members, and command officers on PRPD's use of force policies.  Thereafter, PRPD shall provide all supervisors, FIU members, and command officers with training on use of force, force investigations, and force investigation reviews at least annually and, as necessary, based on developments in applicable law and PRPD policy.  PRPD's use of force training for supervisors, FIU members, and command officers shall include the following topics:

    a)      requesting medical services and determining the appropriate use of force reporting levels;

    b)      identifying and interviewing involved officers, witness personnel, subjects upon whom force was used, and civilian witnesses;

    c)      ensuring proper collection of evidence;

    d)      reviewing use of force and supplemental reports for completeness, accuracy, and quality, including recognizing boilerplate language and document discrepancies;

    e)      assessing the legality and appropriateness of a detention and subsequent arrest;

    f)      legal standards governing the use of reasonable force, including legal standards and requirements for criminal accountability, administrative

27

accountability, and performance improvement related to tactics, training,

equipment, and policy sufficiency;

g)    recommending and administering proper discipline and non-punitive

corrective action related to use of force; and

h)    report writing.

I.    **Responding to Behavioral/Mental Health Crisis**

56.    PRPD shall develop policies and procedures to improve its response to

individuals in behavioral or mental health crisis, and to minimize the use of unnecessary force

against such individuals.  To achieve this outcome, PRPD shall, in addition to providing all

officers with basic training on responding to persons in behavioral or mental health crisis,

implement and train a comprehensive first responder Crisis Intervention Team ("CIT") to

develop and maintain specially-trained CIT officers.  The CIT shall incorporate the following

requirements:

a)    The CIT shall develop policies and procedures for the transfer of custody

or voluntary referral of individuals between PRPD, receiving facilities,

and local mental health and social service agencies.

b)    The CIT policies and procedures shall require that whenever officers

encounter juveniles in mental health crisis that officers refer them to

appropriate mental health services located in the community.

c)    The CIT officers shall be assigned to field operations units and maintain

their standard patrol duties, except when called to respond to potential

behavioral or mental health crisis events where the officers may be

required to respond outside of their assigned patrol district.

28

57.     PRPD shall train PRPD field operations unit officers in the CIT program and shall ensure that CIT-trained officers are assigned to each shift in each police region.  PRPD shall provide crisis intervention training to all dispatchers to enable them to identify calls for service that involve behavioral or mental health crisis events.

## V.     SEARCHES AND SEIZURES:  INTERNAL CONTROLS AND ACCOUNTABILITY

58.     PRPD shall ensure that all investigatory stops, searches, and arrests are conducted in accordance with the rights, privileges, or immunities secured or protected by the Constitution and laws of the United States and the Commonwealth of Puerto Rico.  PRPD shall ensure that investigatory stops, searches, and arrests are conducted as part of effective crime prevention strategies that are consistent with community priorities for enforcement.

### A.     Stops, Searches, and Seizures Generally

59.     PRPD shall develop policies and procedures that comply with applicable law and comport with generally accepted policing practices on stops, searches, and arrests; provide training; ensure consistent supervision; and hold officers accountable for complying with applicable law and policy.  PRPD policies shall define all terms clearly and provide guidance on the facts and circumstances that should be considered in initiating, conducting, terminating, and expanding an investigatory stop, detention, or search.

### B.     Investigatory Stops and Searches

60.     PRPD shall develop an Investigatory Stops and Searches Reporting Policy and a system to collect data on all investigatory stops and searches, whether or not they result in an arrest or issuance of a citation.  PRPD's stop data collection system shall be subject to the review and approval of the TCA, and shall require officers to document the following:  (a) the date, time, location, and duration of the stop and/or search; (b) the reason for the stop and/or search;

29

(c) the subject's apparent race, color, ethnicity or national origin, gender, and age; (d) whether any contraband or evidence was seized, and the nature of the contraband or evidence; and (e) the disposition of the stop, including whether a citation was issued or an arrest made. PRPD shall require that officers submit written reports regarding investigatory stops and searches to their supervisor by end of shift for review. A copy of these reports shall be forwarded to SPR and the Reform Unit for tracking and analysis.

61.     PRPD's Investigatory Stops and Searches Reporting Policy shall explicitly prohibit the use of boilerplate or conclusory language in all reports. PRPD policies shall also expressly prohibit officers from knowingly using or relying on information known to be materially false or incorrect in effectuating an investigatory stop or detention.

62.     A supervisor shall review each report on Investigatory Stops and Searches to determine whether the stop or search was within PRPD policy and this Agreement. For any investigatory stop or search deemed to be outside of PRPD policy or this Agreement, the supervisor shall determine if the stop or search: (a) should result in an internal investigation by SPR; (b) indicates a need for additional training, counseling, or any other non-punitive corrective measure for the involved officer; and (c) suggests the need for revising or reformulating agency policy, strategy, tactics, or training. The supervisor shall document on an auditable form those investigatory stops and searches that are unsupported by reasonable suspicion; are in violation of PRPD policy or this Agreement; or that indicate a need for corrective action or review of agency policy, strategy, tactics, or training. The quality of these supervisory reviews shall be taken into account in the supervisor's performance evaluations.

63.     A command-level officer or official shall review, in writing, all supervisory auditable forms related to investigatory stops and detentions. The commander's review shall be

completed within three business days of receiving the document reporting the event.  The

commander shall evaluate the corrective action and recommendations in the supervisor's written

report and ensure that all appropriate corrective action is taken, including referring the incident

for administrative or criminal investigation.

64.     At least annually, PRPD shall analyze investigatory stop and search data to

determine significant trends, identify and correct deficiencies revealed by this analysis, and

document its findings in a public report.

## C.     Arrests

65.     PRPD shall revise its policies on arrests to ensure that they comply with

applicable law and comport with generally accepted policing practices.

66.     PRPD shall require that officers notify the communications command center and

a supervisor immediately after an arrest, or as soon as practicable.  For felony arrests, or an arrest

for obstructing or resisting an officer, PRPD shall require a field supervisor to respond to the

scene of the incident and approve the officer's arrest determination, based on the existence of

probable cause.  If an officer's arrest determination is insufficient, or otherwise unjustified, the

supervisor may, if necessary, interview the subject.  The supervisor shall take appropriate action

to address violations or deficiencies in an officer's arrest determination, including releasing the

subject, recommending non-punitive corrective action for the involved officer, or referring the

incident for administrative or criminal investigation.  If a supervisor is unavailable to respond to

the scene or there are exigent circumstances, the officer shall notify his or her immediate

supervisor over a recorded channel of the elements of probable cause for the felony arrest or

arrest for obstructing or resisting an officer.  If the officer's immediate supervisor is unavailable,

31

the officer shall notify any field supervisor over a recorded channel of the elements of probable cause for the felony arrest or arrest for obstructing or resisting an officer.

67.     When transporting an arrestee, officers shall take the safest and most direct route to the booking location.  PRPD policy shall require that officers notify the communications command center of the starting and ending mileage on the transporting vehicle, as well as the gender, race, ethnicity, national origin, and apparent age of the arrestee.  The officer shall complete all written arrest forms and booking recommendations at the time an arrestee is presented at any PRPD precinct, station, or specialized unit for booking.

68.     At the time of presentment at a PRPD precinct, station, or specialized unit, a watch commander or supervisor shall visually inspect each detainee or arrestee for injury, interview the detainee or arrestee for complaints of pain, and ensure that the detainee or arrestee receives medical attention from an appropriate medical provider, as necessary.

69.     PRPD shall require that all booking recommendations be personally reviewed and approved in writing in an auditable form by a supervisor as to appropriateness, legality, and conformance with PRPD policies within 12 hours of the arrest, absent exceptional circumstances. Supervisors shall also examine arrest reports and forms related to the arrest for boilerplate or conclusory language, inconsistent information, lack of articulation of the legal basis for the action, or other indicia that the information in the reports or forms is not authentic or correct. Supervisors shall evaluate each incident in which a person is arrested for interfering with a police officer, resisting arrest, assault on a police officer, or other similar charge to determine whether the incident raises any issue or concern regarding the basis for the arrest or implications on training, policies, or tactics.

70.     As part of the supervisory review, the supervisor shall document on an auditable form those arrests that are unsupported by probable cause, are in violation of PRPD policy or this Agreement, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or training.  The quality of these supervisory reviews shall be taken into account in the supervisor's performance evaluations.

71.     A command-level officer or official shall review, in writing, all auditable forms related to arrests.  The commander's review shall be completed within seven days of receiving the document reporting the event.  The commander shall evaluate the corrective action and recommendations in the supervisor's written report and ensure that all appropriate corrective action is taken.  Whenever a reviewing supervisor or command-level officer finds evidence of an arrest indicating apparent misconduct or apparent criminal conduct by an officer, he or she shall immediately notify his or her supervisor for referral to the appropriate investigating unit or the PRDOJ.  The Superintendent shall be notified of the referral.

72.     PRPD shall require officers to provide written receipts to individuals whenever property is seized from the individuals.  PRPD shall establish procedures that are based on generally accepted policing practices to ensure that all seized property is properly stored and returned, as appropriate.

73.     PRPD shall develop a protocol to seek formal feedback from the prosecutor's office, the public defender's office, and Commonwealth judges on a regular basis regarding the quality of PRPD investigations, arrests, court testimony, and indicia of misconduct and to make operational and policy changes based upon this feedback.  In addition, PRPD shall refer to SPR for investigation any information regarding specific incidents of possible officer misconduct received through this protocol.

**D.**     **Searches**

74.     PRPD shall revise its policies on searches to ensure that they comply with

applicable law and comport with generally accepted policing practices.  PRPD policies shall

define all terms clearly and specify procedures for executing search warrants and warrantless

searches, including handling, recording, and taking custody of seized property or evidence.

75.     PRPD shall require that a supervisor review and approve in writing each request

for a search or arrest warrant, including each affidavit or declaration before it is filed by an

officer in support of a warrant application, for appropriateness, legality, and conformance with

PRPD policy.

76.     PRPD shall track each search warrant, the case file where a copy of such warrant

is maintained, the officer who applied for the warrant, and each supervisor who reviewed the

application for a search warrant.

77.     PRPD shall require officers to obtain and document consent from an individual

who consents to a voluntary search of his/her person or vehicle when the search is conducted as

part of a routine pedestrian or vehicle stop, unless a non-consensual search is otherwise legally

permissible.

**E.**     **Training on Stops, Searches, and Seizures**

78.     PRPD shall train all PRPD officers on PRPD's stop, search, and seizure policies.

Thereafter, PRPD shall provide all PRPD officers with training at least every two years for the

first four years of this Agreement, and annually thereafter.  PRPD shall also provide training on

stops, searches, and seizures as necessary, based on developments in applicable law and PRPD

policy.  PRPD shall coordinate and review all policies and training on stops, searches, and

seizures to ensure quality, consistency, and compliance with the Constitution and laws of the

34

United States and the Commonwealth of Puerto Rico, this Agreement, and PRPD policy.  PRPD shall conduct regular subsequent reviews of this training at least annually, and report its findings.  PRPD's training program shall include the following topics:

a)   PRPD policies and requirements in this Agreement regarding stops, searches, and seizures;

b)   the Fourth Amendment and related law;

c)   examples of scenarios faced by PRPD officers and interactive exercises that illustrate proper police practices, methods, and tactics in conducting consensual field interviews, investigatory stops, consent and non-consent searches, and arrests.  These training scenarios shall address the difference between various police contacts by the scope and level of police intrusion; between probable cause, reasonable suspicion and mere speculation; and voluntary consent from mere acquiescence to police authority; and

d)   comprehensive testing that shows complete understanding of rules and regulations.

79.   PRPD shall train all supervisors and command officers on PRPD's stop, search, and seizure policies.  Thereafter, PRPD shall provide all supervisors and command officers with training on reviewing subordinates' stops, searches, and seizures at least annually and, as necessary, based on developments in applicable law and PRPD policy.  PRPD shall coordinate and review all policies and training on stops, searches, and seizures to ensure quality, consistency, and compliance with the Constitution and laws of the United States and the Commonwealth of Puerto Rico, this Agreement, and PRPD policy.  PRPD shall conduct regular subsequent reviews of this training at least annually, and report its findings.  PRPD's training on

35

stops, searches, and seizures for supervisors and command officers shall include the following topics:

   a)   requesting medical services and questioning detainees and arrestees for pain or injury;

   b)   report writing, including reviewing reports on stops, searches, and seizures for completeness, accuracy, and quality, including recognizing boilerplate language and how to document discrepancies;

   c)   assessing the legality and appropriateness of a stop, search, or seizure;

   d)   legal standards governing searches and seizures, including legal standards and requirements for criminal accountability, administrative accountability, and performance improvement related to tactics, training, equipment, and policy sufficiency; and

   e)   recommending and administering proper discipline and non-punitive corrective action related to searches and seizures.

## VI.   EQUAL PROTECTION AND NON-DISCRIMINATION

80.   PRPD shall ensure that police services are delivered equitably, respectfully, and free of unlawful bias, in a manner that promotes broad community engagement and supports effective crime prevention.  In conducting its activities, PRPD shall ensure that members of the public receive equal protection of the law, without bias based on race, color, ethnicity, national origin, religion, gender, disability, sexual orientation, gender identity, gender expression, or political ideology or affiliation, and in accordance with the rights, privileges, or immunities secured or protected by the Constitution and laws of the United States and the Commonwealth of Puerto Rico.

A.     **General Provisions**

81.     PRPD shall develop policies and procedures that comply with applicable law and comport with generally accepted policing practices on bias-free policing; provide training as described in this Agreement; ensure consistent supervision; and hold officers accountable for complying with applicable law and policy.

82.     PRPD shall revise its complaint classification policies to effectively capture and track civilian complaints alleging discriminatory policing, even if the complainant does not specifically label the misconduct as such.

83.     PRPD shall revise all documentation produced in relation to officer and civilian interactions, including documentation related to arrests, traffic stops, investigatory stops and detentions, searches, property seizures, and civilian complaints, so that it permits officers to accurately record the demographic information of all involved persons, including alleged subjects and victims.

84.     PRPD shall incorporate concrete requirements regarding bias-free policing and equal protection into its hiring, promotion, and performance assessment processes, including giving significant weight to an individual's documented history of bias-free policing.  PRPD will comply with the non-discrimination requirements of Title VII of the Civil Rights Act of 1964, as amended.

85.     PRPD shall use the National Incident Based Reporting System ("NIBRS") to collect and report crime data.

86.     PRPD shall collect accurate and reliable data on hate crimes on an ongoing basis and shall submit the data to the Federal Bureau of Investigation ("FBI") for analysis and

publication in the FBI's Hate Crimes Statistics report in accordance with FBI submission requirements.

**B.     Discriminatory Policing**

87.     PRPD shall apply and administer all programs, initiatives, and activities without discriminating on the basis of race, color, ethnicity, national origin, religion, gender, disability, sexual orientation, gender identity, gender expression, or political ideology or affiliation.  PRPD shall develop policies and practices to prohibit selective enforcement or non-enforcement of the law based on these characteristics.  These policies and practices shall comply with applicable law and comport with generally accepted policing practice.

88.     PRPD shall develop policies to provide all individuals within the Commonwealth with police services in a non-discriminatory fashion in order to build and preserve trust among community members and more effectively prevent and solve crime.  As part of these efforts, PRPD shall seek the assistance of community advocates in widely disseminating to the public its written policies on immigration-related laws.

89.     PRPD shall develop a specific policy to guide officers' interactions with transgender or transsexual individuals that addresses gender identification, gender expression, transportation, processing, housing, and medical treatment.

90.     PRPD shall provide all PRPD officers with training on biased-free policing at least every two years for the first four years of this Agreement, and annually thereafter.  PRPD shall also provide training on biased-free policing as necessary, based on developments in applicable law and PRPD policy.  PRPD's training program shall include the following topics:

a)     PRPD policies and requirements in this Agreement regarding biased-free policing;

b)      community perspectives of discriminatory policing;

c)      constitutional and other legal requirements related to equal protection and unlawful discrimination;

d)      the protection of civil rights as a central part of the police mission;

e)      arbitrary classifications and stereotyping based on age, race, color, ethnicity, national origin, religion, gender, disability, sexual orientation, gender identity, gender expression and political ideology or affiliation;

f)      interacting with diverse populations, including persons who are homeless and economically disadvantaged;

g)      identification of key decision points where prohibited discrimination can take effect at both the incident and operational planning levels;

h)      methods, strategies, and techniques to reduce misunderstanding, conflict, and complaints due to perceived bias or discrimination, including community-oriented policing strategies; and

i)      comprehensive testing that shows complete understanding of rules and regulations.

91.    PRPD shall assess its operational programs, initiatives, and activities at least every two years to ensure that they are applied or administered in a manner that guarantees equal protection.  As part of its assessment, PRPD shall specifically include an assessment of use of force, motor vehicle and pedestrian stops, arrests, and deployment of STUs.  PRPD shall also assess its operations and tactics as part of regulatory inspections, assistance to regulatory agencies, and covert vice activities.  PRPD shall base its assessment of programs, initiatives, and activities on accurate, complete, and reliable data, including data contained in the EIS, stop and

detention data, use of force analyses, and operational planning and after action reports.  PRPD shall make this assessment publicly available.

92.     Within five  business days, PRPD shall prepare and provide to PRDOJ and the Puerto Rico Department of the Family the preliminary investigation report prepared in response to each allegation of abuse and mistreatment originating in secure juvenile correctional facilities. Such allegations include physical and mental abuse, juvenile on juvenile assaults, staff on juvenile abuse, and excessive use of force by staff.

**C.     Sexual Assault and Domestic Violence**

93.     PRPD shall respond to and investigate reports of sexual assault and domestic violence professionally, effectively, and in a manner free of gender-based bias.  PRPD shall appropriately classify and investigate reports of sexual assault and domestic violence, collaborate closely with community stakeholders, and apply a victim-centered approach at every stage of its response.  PRPD shall develop policies and procedures on responding to sexual assault and domestic violence, including incidents involving PRPD officers, that comply with applicable law and comport with generally accepted policing practices.

94.     PRPD's sexual assault policies and procedures shall provide clear and detailed guidelines for each stage of PRPD's response to a reported sexual assault, including (a) dispatch response; (b) initial officer response; (c) initial and follow-up victim interviews; and (d) on-scene and follow-up investigation.  These protocols shall be based on recognized models and guidelines on forensic examinations, such as, for example, the National Protocol for Sexual Assault Medical Forensic Examinations issued by DOJ's Office of Violence Against Women.

95.     PRPD shall re-assess and revise, where needed, its classification protocols for crimes involving sexual assaults.  PRPD shall track all reports of felony sexual assault based on the UCR definitions.

96.     PRPD shall ensure that its Sex Crimes Investigation Unit is accessible through a hotline that is staffed 24-hours a day with trained responders.

97.     PRPD shall track  dispositions of sexual assault investigations, including arrests, whether the prosecutor charged the suspect, and whether a conviction resulted.  PRPD shall also track sexual assaults by gender and incidents in which more than one participant is arrested. PRPD shall report this data as part of its annual report.

98.     PRPD's domestic violence policies and procedures shall clearly delineate the duties of all PRPD officers and staff and provide clear and detailed guidelines for each stage of PRPD's response to a report of domestic violence.

99.     PRPD shall implement measures to respond to reports of domestic violence and sexual assault involving PRPD officers, including disarming officers and assessing their fitness for duty.

100.    PRPD shall track dispositions of domestic violence investigations, including arrests, whether the prosecutor charged the suspect, and whether a conviction resulted.  PRPD shall also track domestic violence arrests by gender and incidents in which more than one participant is arrested.  PRPD shall report this data as part of its annual report.

## VII.   RECRUITMENT, SELECTION, AND HIRING

101.    PRPD shall develop a comprehensive recruitment and hiring program that successfully attracts and hires qualified individuals.  PRPD shall develop a recruitment policy

and program that establishes clear guidance and objectives for recruiting police officers and clearly and transparently allocates responsibilities for recruitment efforts.

**A.      Recruitment Plan**

102.      PRPD shall develop a recruitment plan that includes clear goals, objectives, and action steps for attracting qualified applicants from a broad cross-section of the community. PRPD's recruitment plan shall establish and clearly identify the goals of PRPD's recruitment efforts and the duties of officers and staff implementing the plan.

103.      The recruitment plan shall include specific strategies for attracting a diverse pool of applicants including members of groups that have been historically underrepresented in PRPD.  A "Recruitment Officer" will be responsible for the development of the plan, together with a working group that includes officers from diverse backgrounds.  The working group will also consult with community stakeholders to receive recommended strategies to attract a diverse pool of applicants.  The plan will include both outreach to the general population and targeted outreach to populations currently underrepresented on the PRPD force including, but not limited to, women and the Dominican population, through media outlets, universities, community colleges, advocacy groups, and other community groups that serve or are likely to reach such populations.  The "Recruitment Officer" and his or her staff, as determined by the Superintendent, will be responsible for the implementation of the plan.

**B.      Hiring Reforms**

104.      PRPD shall develop an objective system to select recruits to enter into UCCJ. The system will establish minimum standards for recruiting and an objective process for selection that employs reliable and valid selection devices that comport with generally accepted policing practice and anti-discrimination laws.

105.    PRPD shall establish and publish qualifications for sworn personnel that are consistent with generally accepted policing practice.  PRPD shall continue to require a two-year post-secondary degree, or its equivalent, as part of the requirements for sworn personnel.

106.    PRPD shall require all candidates for sworn personnel positions to undergo a psychological, medical, and polygraph examination to assess their fitness for employment with PRPD.

107.    PRPD shall assess and revise its policies and practices to ensure thorough, objective, and timely background investigations of candidates for sworn personnel positions based on generally accepted policing practice.  PRPD's suitability determination shall include an assessment of a candidate's credit history, criminal history, employment history, use and abuse of controlled substances, and ability to work with diverse communities and act without impermissible bias.  Favorable suitability determinations shall expire six months after the determination.

108.    PRPD and the UCCJ shall revise and implement policies and practices related to hiring to ensure that PRPD recruits and cadets do not qualify for civil service employment protections until their aptitude and abilities are properly assessed.

## VIII.    POLICIES AND PROCEDURES

109.    Policies and procedures shall reflect and express PRPD's core values and priorities, and provide clear guidance to ensure that officers and civilian employees lawfully, effectively, and ethically serve the community.  PRPD shall develop comprehensive and agency-wide policies and procedures to ensure consistency with, and full implementation of, each requirement of this Agreement.  These policies and procedures shall define terms clearly, comply with applicable law, and comport with generally accepted policing practice.  PRPD shall apply

policies uniformly and hold officers accountable for complying with policies and advancing PRPD's core values and priorities.

110.    PRPD shall develop and publish a department-wide policy and procedure manual that will include all policies, procedures, and regulations governing all administrative and operational aspects of PRPD.  The manual shall be organized by subject-matter and indexed for reference.

111.    PRPD's unit-wide policies and procedures shall be collected in unit-level policy and procedure manuals.  PRPD shall develop unit-level policy and procedure manuals for, at a minimum, the following PRPD units or functions:

   a)    Field operations, including patrol, special and tactical operations, field support, special weapons and tactics, canines, supervision task forces, and mass demonstration or event policing;

   b)    SPR, including case and records management, administrative investigations, confidential investigations, parallel criminal and administrative investigations, FIU investigations, audits, and officer drug testing;

   c)    Use of Force Reporting, Investigation, and Review, including both Supervisory and Serious Use of Force Investigations and Review; and In-Custody Death Reviews;

   d)    Criminal investigations, including sub-units assigned to investigate homicides, sexual assaults, domestic violence, narcotics, vice, and illegal firearms; and

e)      Recruitment and Training, including training provided by UCCJ and in-

service training.

112.    PRPD shall review each newly developed policy after it is issued and revise the

policy as necessary to ensure that it provides effective guidance to PRPD personnel.

113.    PRPD shall review each policy or procedure created or revised pursuant to this

Agreement on an annual basis for the first three years from the Appointment Date or upon notice

of a policy deficiency, and biannually thereafter.  PRPD will develop a schedule for the biannual

review.  PRPD shall make revisions as necessary to ensure that policies and procedures remain

consistent with this Agreement, generally accepted policing practice, and current law.  All PRPD

policies, including but not limited to those created pursuant to this Agreement, shall be posted

online and otherwise made publicly available in a timely manner.  Reasonable exceptions shall

apply to policies and procedures that are law enforcement sensitive.

114.    Within a reasonable period of time, PRPD shall ensure that all relevant PRPD

personnel have received, read, and been trained on all new or amended policies or procedures as

necessary to fulfill their role as required by policies and procedures, including the obligation to

report any policy or procedure violation.

115.    PRPD shall document that each relevant PRPD officer or other employee has

received, read, and been trained appropriately regarding PRPD's policies and procedures.

116.    PRPD shall advise all officers that taking police action in violation of PRPD

policy may subject officers to discipline, possible criminal prosecution, and/or civil liability.

## IX.    TRAINING

117.    PRPD shall ensure that every PRPD officer and employee receives effective and

comprehensive training that ensures they understand their responsibilities, the scope of their

authority, and PRPD policy, and are able to fulfill these responsibilities and police effectively. Qualified trainers and instructors shall deliver instruction through generally accepted methods and techniques that are approved by UCCJ and are designed to achieve clear and articulated learning objectives. Trainers and instructors shall utilize generally accepted evaluation methods approved by UCCJ to assess proficiency and competency.

A.      **Pre-Service Education and Training**

118.    UCCJ shall provide pre-service education and training to candidates for sworn personnel positions in PRPD in accordance with its enabling statute and regulations. To the extent that UCCJ will confer Associate or equivalent degrees recognized by nationally or regionally accredited institutions of higher learning in the continental United States, UCCJ shall maintain its license in good standing from the Puerto Rico Council on Education and attain full accreditation from the Middle States Association of Colleges and Schools within two years of the decision to confer such degrees.

119.    Once candidates meet all educational requirements and eligibility criteria, UCCJ shall establish and provide a pre-service training program for PRPD cadets consisting of at least 900 hours of instruction that comports with generally accepted policing practice with respect to quality and content, and that reflects the requirements of this Agreement.

120.    PRPD and UCCJ shall review and revise its pre-service training curriculum to ensure quality, consistency, and compliance with applicable law, PRPD policy, and this Agreement. PRPD and UCCJ shall conduct regular subsequent reviews, at least semi-annually, and submit their findings and recommendations in written reports to the Superintendent.

121.    PRPD and UCCJ shall develop an appropriate training plan and standards including, but not limited to, establishing appropriate passing criteria, attendance, and

46

participation requirements, and valid evaluation methods, to ensure that cadets and officers attain necessary knowledge, skills, and competencies to implement all requirements in this Agreement. PRPD and UCCJ shall conduct regular needs assessments to ensure that training related to the implementation of this Agreement is responsive to the knowledge, skills, and abilities of the cadets and officers being trained.

122.    PRPD and UCCJ shall select and train qualified officer and academic instructors and shall ensure that only mandated objectives and approved lesson plans are taught by instructors.  Instructors shall engage students in meaningful dialogue, role playing, and test taking, as appropriate, regarding particular scenarios, preferably taken from actual incidents involving PRPD officers, with the goal of educating students regarding the legal and tactical issues raised by the scenarios.

**B.**      **Field Training Program**

123.    PRPD shall develop a field training program that consists of at least 800 hours and that comports with generally accepted policing practice with respect to quality and content, and that reflects the substantive requirements of this Agreement.

124.    PRPD's policies and procedures on field training shall delineate the criteria and methodology for selecting Field Training Officers ("FTOs").  PRPD shall permit only qualified officers to serve as FTOs.  To determine qualifications, PRPD shall consider officer experience, disciplinary history, and demonstrated leadership skills, among other factors.  PRPD shall strive to assemble FTOs that represent a broad cross-section of the community.

125.    PRPD shall ensure that all FTOs receive training in the following areas: management and supervision; community-oriented policing; effective problem solving techniques; and field communication, among others.  FTOs shall be required to maintain, and

47

demonstrate on a regular basis, their proficiency in managing recruits and subordinates, practicing community-oriented policing, and solving problems effectively.

126.    PRPD shall ensure that recruits in the field training program are trained in a variety of geographic areas within Puerto Rico; in a variety of shifts; and with several FTOs.

127.    PRPD shall develop a program to assess FTO performance using appropriate evaluation tools.  PRPD shall review and evaluate the performance of FTOs, with re-certification dependent on strong prior performance and feedback from other staff.  Any recommendation from a FTO to terminate a trainee during their field training program shall be reviewed and evaluated by the chain of command.

128.    PRPD shall create a mechanism for recruits to provide confidential feedback regarding the quality of their field training and their FTO, including the extent to which their field training was consistent with what they learned, and suggestions for changes to training based upon their experience in the FTO program.

**C.    In-Service Training**

129.    PRPD shall establish a mandatory annual in-service training program that consists of at least 40 hours and that comports with generally accepted policing practice with respect to quality and content, and that reflects the requirements of this Agreement.

130.    PRPD shall create in-service training tracks for the following groups, including, but not limited to, command staff; lieutenants and sergeants; detectives; narcotics and vice investigators; specialized units; and professional responsibility investigators.

131.    PRPD shall identify critical in-service training topic areas based on an analysis of factors that include but are not limited to officer safety issues, community concerns, use-of-force statistics, internal affairs statistics, court decisions, research reflecting the latest law enforcement

trends, individual precinct needs, and input from members at all levels of the Department, the Superintendent's Citizens' Interaction Committee ("CIC") and members of the community.

132.    PRPD shall develop a comprehensive training program to supplement the 40-hour formal in-service training that is delivered at the beginning of shifts or tours of duty for all officers.  Training may include special topics selected by UCCJ and precinct or unit Commanders that address constitutional policing, officer safety, readiness, community concerns, or departmental procedural matters.

**D.**     **Training Records**

133.    PRPD shall electronically maintain complete and accurate records of current curricula, lesson plans, and other training materials in a central, commonly-accessible, and organized file system.

134.    PRPD shall track, maintain, and report detailed, real-time training records and statistics.  PRPD shall develop an electronic database to create and maintain records for each recruit and each sworn and unsworn member of the PRPD, including a standard electronic training record and electronic copies of certificates and other materials.  The training records shall include the following information:  the course description and duration, curriculum, location of training, and name of instructor.  PRPD will provide the Superintendent with annual reports, or more often as needed, on training attendance and testing results.

## X.    SUPERVISION AND MANAGEMENT

135.    PRPD shall ensure that an adequate number of qualified first-line supervisors are deployed in the field to allow supervisors to provide close and effective supervision to each officer under the supervisor's direct command, to provide officers with the direction and guidance necessary to improve and develop as police officers, and to identify, correct, and

prevent misconduct.  PRPD shall develop policies for supervision that set out clear requirements for supervisors and are consistent with generally accepted policing practices.

A.    **Duties of Supervisors**

136.    All operational field officers shall be assigned to a single, consistent, and clearly identified supervisor.  Supervisors shall be assigned to and shall substantially work the same days and hours as the officers they are assigned to supervise, absent exceptional circumstances. Scheduled leave (such as vacation time), unscheduled leave (such as sick leave due to illness or injury) and other routine absences (such as court appearances and training obligations) shall not be deemed noncompliance with this provision.

137.    First-line field supervisors shall be assigned to supervise no more than ten officers for the first five years of this Agreement.  After considering the results of the staffing study required by Paragraph 13 and whether the first-line supervisors are meeting all of the supervisory requirements of this Agreement at the current officer to supervisor ratios, the TCA and the Parties shall determine whether to lower the number of officers supervised by each first-line field supervisor.  On-duty field supervisors shall be available throughout their shift to respond to the field to provide supervision to officers under their direct command and, as needed, to provide supervisory assistance to other units.

138.    PRPD shall develop a program to ensure consistent field supervision when assigned supervisors are absent or otherwise unavailable for their tour of duty.

139.    Precinct and unit commanders shall closely and effectively supervise the officers under their command.

140.    All PRPD commanders and supervisors shall ensure that all supervisors and officers under their command comply with PRPD policy, Commonwealth of Puerto Rico and federal law, and the requirements of this Agreement.

**B.      Supervisor Training**

141.    Each supervisor shall receive mandatory management, supervisory, leadership, and command accountability training, tailored to each level of supervision and command, of no fewer than 40 hours in duration, prior to assuming supervisory responsibilities.  Each supervisor shall receive no fewer than 40 hours of in-service training annually thereafter.

142.    All current PRPD supervisors shall receive the supervisor training developed pursuant to this Agreement within 18 months after it is developed and first implemented.

143.    The supervisory training program shall include, but not be limited to, instruction in the following topics:

   a)     techniques for effectively guiding and directing officers and promoting effective and ethical police practices;

   b)     de-escalating conflict;

   c)     evaluation of written reports;

   d)     investigating officer uses of force;

   e)     responding to and investigating allegations of officer misconduct;

   f)     risk assessment and risk management;

   g)     evaluating officer performance;

   h)     appropriate disciplinary sanctions and non-punitive corrective action; and

   i)     using EIS to facilitate close and effective supervision.

144.    Officers appointed to the rank of Lieutenant Colonel, Colonel, commanding officer to a PRPD superintendency or unit, and any other supervisors must receive Equal Employment Opportunity ("EEO") training on PRPD's policies and federal and Commonwealth anti-discrimination laws.  This training shall include protocols for supervisors to follow in the event they are made aware of complaints involving discrimination and/or harassment.  The training shall also include instruction on PRPD policies prohibiting retaliation against any individual opposing the alleged discrimination or harassment and/or participating in a proceeding or investigation of discrimination or harassment.  Supervisors receiving the EEO training shall be evaluated in part based on their knowledge and implementation of the policies, guidance, and laws covered in that training.

**C.**    **Performance Evaluation**

145.    PRPD shall develop and implement a specific system to accurately evaluate the qualifications and performance of all PRPD officers in areas that include, but are not limited to, constitutional policing, integrity, community policing, and critical police functions on both an ongoing and annual basis.  PRPD shall develop objective criteria to assess whether officers meet minimum qualifications and performance standards, including officers in inactive status, where appropriate.  The evaluation system shall provide for appropriate remedial or disciplinary action.

146.    As part of this system, PRPD shall establish a formalized system documenting annual performance evaluations of each officer by the officer's direct supervisor.  PRPD shall hold supervisors accountable for completing timely, accurate, and complete performance evaluations of their subordinates.

**D.      Early Identification System**

147.      PRPD shall develop, implement, and maintain an early identification system ("EIS") to support the effective supervision and management of PRPD officers and employees, including the identification of and response to problematic behaviors as early as possible.  PRPD shall regularly use EIS data to promote ethical and professional police practices; to manage risk and liability; and to evaluate the performance of PRPD employees across all ranks, units, shifts, commands, and organization components.

148.      The EIS shall include a computerized relational database which shall be used to collect, maintain, integrate, and retrieve detailed data department-wide and for each officer regarding:

      a)      all uses of force;

      b)      injuries to and deaths of persons in custody;

      c)      all complaints and their dispositions;

      d)      data compiled under the stop data collection mechanism;

      e)      all criminal proceedings initiated, as well as all civil or administrative claims filed, that bear upon an officer's performance or fitness including, but not limited to, domestic violence and protective orders;

      f)      all judicial proceedings involving domestic violence, protective orders, and any other judicial proceedings which may be related to an officer's performance;

      g)      all instances in which PRPD is informed by a prosecuting authority that a declination to prosecute any crime was based, in whole or in part, upon concerns about the credibility of a PRPD employee or that a motion to

53

suppress evidence was granted on the grounds of a constitutional violation

by a PRPD employee;

h)  all disciplinary action taken against employees;

i)  all non-punitive corrective action required of employees;

j)  all awards and commendations received by employees;

k)  training history for each employee; and

l)  identifying information for each PRPD officer and employee and;

m)  demographic data for each civilian involved in a use of force or search and

seizure incident sufficient to assess bias.

149.    PRPD shall establish a unit to develop, implement, and maintain the EIS with

sufficient resources to facilitate data input and provide training and assistance to EIS users.

150.    PRPD shall maintain necessary equipment, in sufficient amount and in good

working order, to permit appropriate personnel, including supervisors and commanders, ready

and secure access to the EIS system to allow for timely input and review of EIS data.

151.    PRPD shall develop a protocol for using the EIS and information obtained from it.

The protocol for using the EIS shall address data storage, data retrieval, reporting, data analysis,

pattern identification, supervisory use, supervisory/departmental intervention, documentation and

audits, access to the system, and confidentiality of personally identifiable information.  The

protocol shall also require unit supervisors to periodically review EIS data for officers under

their command, including upon transfer between PRPD units or regions.

152.    PRPD shall maintain all personally identifiable information about officers and

employees included in the EIS for at least five years following their separation from the agency.

Information necessary for aggregate statistical analysis shall be maintained indefinitely in the

EIS.  On an ongoing basis, PRPD will enter information into the EIS in a timely, accurate, and complete manner, and shall maintain the data in a secure and confidential manner.

153.    Following the initial implementation of the EIS, and as experience and the availability of new technology may warrant, PRPD may propose to add, subtract, or modify data tables and fields, modify the list of documents scanned or electronically attached, and add, subtract, or modify standardized reports and queries.  PRPD will submit all such proposals for review and approval as set forth in Paragraph 229.

**E.    Internal Audits and Interagency Feedback**

154.    As part of PRPD's continuous improvement efforts and to ensure compliance with this Agreement, PRPD shall establish an auditing system that identifies operational deficiencies, analyzes causal and contributing factors, and implements effective remedial action. To effectuate the system, PRPD shall develop and implement auditing protocols that are based on generally accepted policing practices.  The protocols shall provide the audited unit an opportunity to respond to preliminary findings and recommendations, as appropriate, to foster a culture of accountability and continuous improvement among all PRPD units and personnel.

155.    PRPD shall develop a protocol for conducting operational audits related to the material terms of this Agreement.  The protocol shall establish a regular and fixed schedule to ensure that such audits occur with sufficient frequency and cover all PRPD units and Command Areas.  Audits shall assess, where appropriate, operational consistency among similar units throughout PRPD to ensure that all geographic areas are provided with appropriate levels of service delivery.  PRPD shall summarize in an annual report the conclusions and recommendations of audits conducted during the time period covered by the report.

156.    PRPD auditors shall issue a report to the Superintendent on the result of each audit.  The Superintendent will review each audit for appropriate policy, disciplinary, and/or non-punitive corrective action.  The commander of each precinct or specialized unit shall review all audit reports regarding employees under their command and, if appropriate, shall take non-punitive corrective action or disciplinary action.

157.    PRPD shall develop and implement a plan for organizing and executing regular, targeted, and random integrity audits.  The integrity audits will be used to identify and investigate officers engaging in misconduct including, but not limited to, unlawful stops, searches, seizures (including false arrests), excessive uses of force, potential criminal behavior, racial or ethnic profiling, and bias against lesbian, gay, bisexual, and transgendered persons, or any other form of misconduct.  These operations shall also seek to identify officers who discourage the filing of a complaint, fail to report misconduct or complaints, or otherwise undermine PRPD's integrity and accountability systems.  SPR shall have the oversight responsibility within PRPD for these operations.  SPR shall use relevant EIS data and other relevant information in selecting targets for integrity audits.

158.    PRPD shall establish an executive-level liaison committee consisting of high-level command officers of the PRPD who communicate, on at least a quarterly basis, with representatives of federal and local criminal justice components in all regions in Puerto Rico, including judicial courts, prosecutors, the University College, and municipal police departments. The committee shall seek mutual feedback and information on improving Puerto Rico's criminal justice system, including performance issues or concerns related to PRPD, its officers, employees, or units.  All PRPD high-level commanders who participate in the executive-level

56

liaison committee shall ensure that all allegations of misconduct or potential criminal activity are referred to SPR and/or PRDOJ for investigation, as appropriate.

## XI.   CIVILIAN COMPLAINTS, INTERNAL INVESTIGATIONS, AND DISCIPLINE

159.    PRPD shall ensure that all allegations of officer misconduct are received and are fully and fairly investigated; that all investigative findings are supported by a preponderance of the evidence; and that all officers who commit misconduct are held accountable pursuant to a disciplinary system that is fair and consistent.  PRPD shall develop policies and practices for the intake, investigation, and adjudication of misconduct complaints against PRPD officers.  These policies and practices shall comply with applicable law and comport with generally accepted policing practices, and shall include the requirements set out below.

**A.   Civilian Complaints**

160.    PRPD will develop and implement a program to inform persons that they may make complaints regarding the performance of any officer.

161.    Pre-printed complaint forms shall not include any language that can be construed as discouraging civilians from submitting complaints, including warnings regarding potential criminal prosecution for false or untrue complaints.  PRPD shall require all officers to carry complaint forms in their official vehicles at all times or on their person, if feasible.

162.    PRPD shall make complaint forms and informational materials, including brochures and posters, available at all police facilities and on the PRPD website.  Information shall be posted in Spanish and English.  PRPD shall post and maintain a permanent placard describing the external complaint process at appropriate government buildings where public services are provided.  The placard shall include relevant contact information, such as telephone numbers, email addresses, and websites.  PRPD shall also post and maintain a placard explaining

57

an individual's right to be free from involuntary searches and seizures and thus to decline consent to voluntary searches.

**B.**      **Internal Investigations**

163.    PRPD shall require that all officers and employees report misconduct, including apparent, alleged, or perceived misconduct, by another PRPD officer or employee to a supervisor or directly to SPR for review and investigation.  Where apparent misconduct is reported to a supervisor, the supervisor shall immediately document and report this information to SPR. Failure to report or document apparent or alleged misconduct or criminal behavior shall be grounds for discipline, up to and including termination of employment.  The presumptive discipline for a failure to report apparent or alleged misconduct or criminal behavior shall be commensurate to the presumptive discipline for the underlying apparent or alleged conduct not reported.

164.    PRPD shall develop protocols requiring supervisors to investigate and take appropriate disciplinary or non-punitive corrective action when the supervisor becomes aware of minor misconduct or policy infractions by an officer that do not merit an SPR notification.  The incident of misconduct and the supervisor's response shall be reported to SPR within five business days for SPR's review.  Where the officer disputes the misconduct allegation, the allegation shall be referred to SPR for investigation.

165.    The results of unit investigations, be they minor misconduct allegations, policy infractions, or SPR referrals, shall each be referred to and evaluated by unit commanders for underlying problems including supervisory, training, or other deficiencies.  Unit evaluations shall be sent to SPR for further assessment of trends and potential deficiencies in tactics or training, among other considerations.

C.   **Complaint Intake, Classification, Assignment, and Tracking**

166.   PRPD shall train all officers in how to properly handle complaint intake.

167.   The refusal to accept a misconduct complaint, discouraging the filing of a misconduct complaint, or providing false or misleading information about filing a misconduct complaint, shall be grounds for discipline.

168.   PRPD shall accept all misconduct complaints, including anonymous and third-party complaints, for review and investigation.  Complaints may be made in writing or verbally, in person or by mail, telephone (or TDD), facsimile, electronic mail, or any other appropriate electronic means.

169.   PRPD will establish a protocol that provides procedures to be followed when an individual objects to an officer's conduct.  The protocol shall provide that, absent exceptional circumstances, the officer will inform the individual of his or her right to make a complaint and shall provide the complaint form and the officer's name and identification number.  If the individual indicates that he or she would like to make a complaint on the scene, the officer shall immediately inform his or her supervisor, who shall immediately respond to the scene and initiate the complaint process.  In the absence of the officer's immediate supervisor, any supervisor may respond to the scene.  All misconduct complaints received outside of SPR shall be forwarded to SPR before the end of the shift in which they were received.

170.   PRPD shall develop a system to ensure that allegations of officer misconduct made during criminal prosecutions or civil lawsuits are identified and assessed for further investigation.  Any decision to decline an investigation shall be documented.

171.   SPR shall maintain a centralized numbering and tracking system for all misconduct complaints.  Upon the receipt of a complaint, SPR shall promptly assign a unique

numerical identifier to the complaint, which shall be provided to the complainant as soon as practicable.

172.    Where a supervisor receives a misconduct complaint in the field alleging that misconduct has occurred, other than those incidents covered by Paragraph 44 of this Agreement, the supervisor shall gather all relevant information and evidence and  provide these to SPR.  All complaints should be referred to SPR by the end of tour of duty, absent exceptional circumstances.

173.    Within five business days of the receipt of a misconduct complaint, SPR shall determine whether the complaint will be assigned to a supervisor for a Supervisory Investigation, retained by SPR for investigation, and whether it will be investigated criminally by PRPD, PRDOJ, or both.

174.    PRPD shall develop a complaint classification protocol that is allegation-based rather than outcome-based to guide SPR in determining where a complaint should be assigned.

175.    A misconduct complaint investigation may not be conducted by any supervisor who used force during the incident; whose conduct led to the injury to a person; who authorized the conduct that led to the reported incident or complaint; who was on the scene at the time of the incident leading to the allegation of misconduct; or by any officer or supervisor who has a conflict of interest as defined by PRPD policy.

176.    PRPD's centralized numbering and tracking system shall maintain accurate and reliable data regarding the number, nature, and status of all misconduct complaints, from initial intake to final disposition, including investigation timeliness and notification to the complainant of the interim status and final disposition of the investigation.  This system shall be used for periodic assessment of compliance with PRPD policies and procedures and this Agreement.

**D.**     **Investigation of Complaints**

177.    PRPD shall ensure that policies and procedures regarding the investigation of complaints clearly establish that complaints are adjudicated on the basis of the preponderance of the evidence.  This standard should be clearly delineated in policies and procedures and accompanied by extensive examples to ensure proper application by investigators.

178.    PRPD shall investigate all misconduct complaints and document the investigation and its findings and conclusions in writing.  PRPD shall develop and implement a policy that specifies those complaints that may be resolved via administrative closing or informal resolution. Administrative closing shall be used for minor policy violations that do not constitute a pattern of misconduct, duplicate allegations, or allegations that even if true would not constitute misconduct, among others.

179.    PRPD shall ensure that all administrative investigations conducted by SPR shall be completed within 90 days of the receipt of the complaint, including assignment, investigation, review, and final approval.  The SPR commander is authorized to grant additional 30 day extensions, for up to 90 additional days in the aggregate, for justifiable circumstances, which shall be documented in writing.  For purposes of these extensions, workload shall not constitute justification for extensions.  Where an allegation is sustained, PRPD shall have 30 days to determine and notify the officer of the appropriate discipline.  The appropriate discipline shall be imposed as soon as practicable, consistent with PRPD's disciplinary procedures.  All administrative investigations shall be subject to appropriate tolling periods as necessary to conduct a parallel criminal investigation or as provided by law.

180.    PRPD shall ensure that investigations of officer misconduct are thorough and the findings are consistent with the facts.

181.    PRPD shall require officers to cooperate with administrative investigations, including appearing for an interview when requested by a PRPD or Commonwealth investigator and providing all requested documents and evidence.  Supervisors shall be notified when an officer under their supervision is summoned as part of an administrative investigation and shall facilitate the officer's appearance, unless such notification would compromise the integrity of the investigation.

182.    The subject officer of an administrative investigation shall not be compelled to provide a statement to administrative investigators where there is a potential criminal investigation or prosecution of the officer until the remainder of the investigation has been completed, and after the administrative investigators have consulted with the prosecutor's office and the SPR commander, except where the taking of such a statement is authorized by the Superintendent after consulting with the prosecutor's office.

183.    Where there is no potential criminal investigation or prosecution of the subject officer, SPR investigators shall not warn the subject officer that he or she has a right not to provide a statement that may be self-incriminating.

184.    If at any time during complaint intake or investigation the investigator determines that there may have been criminal conduct on the part of any officer or employee, the investigator shall immediately notify the SPR commander.  The SPR commander shall immediately notify the Superintendent and shall consult with the prosecutor's office regarding the initiation of a criminal investigation.  Where an allegation is investigated criminally, SPR shall continue with the administrative investigation of the allegation, except that it may delay or decline to conduct an interview of the subject officer(s) or other witnesses until completion of

the criminal investigation unless, after consultation with the prosecutor's office and PRPD Superintendent, such interviews are deemed appropriate.

185.     PRPD, PRDOJ, and the prosecutor's office shall develop protocols to ensure that the criminal and administrative investigations are kept appropriately separate after a subject officer has provided a compelled statement.  Nothing in this Agreement or PRPD policy shall hamper an officer's obligation to provide a public safety statement regarding a work related incident or activity.

186.     In each investigation, PRPD shall consider all relevant evidence, including circumstantial, direct, and physical evidence.  There will be no automatic preference for an officer's statement over a non-officer's statement, nor will PRPD disregard a witness' statement merely because the witness has some connection to the complainant or because of any criminal history.  PRPD shall make efforts to resolve material inconsistencies between witness statements.

187.     A misconduct investigation shall not be closed simply because the complaint is withdrawn or the alleged victim is unwilling or unable to provide additional information beyond the initial complaint, or because the complainant pled guilty or was found guilty of an offense.

188.     The misconduct investigator shall explicitly identify and recommend one of the following dispositions for each allegation of misconduct in an administrative investigation:

  a)     "Unfounded," where the investigation determines by clear and convincing evidence that the alleged misconduct did not occur or did not involve the subject officer;

  b)     "Sustained," where the investigation determines, by a preponderance of the evidence, that the alleged misconduct did occur;

    c)    "Not Sustained," where the investigation is unable to determine, by a

        preponderance of the evidence, whether the alleged misconduct occurred;

        or

    d)    "Exonerated," where the investigation determines by clear and convincing

        evidence that the alleged conduct did occur but did not violate PRPD

        policies, procedures, or training.

189.    The unit commander of the investigating supervisor shall review the supervisor's recommended disposition and accept, reject, or modify it.  The unit commander shall document rejected or modified recommendations from supervisors in writing.  Supervisory investigation reports and all related documentation and evidence shall be provided to SPR immediately upon completion of the investigation, but no later than within three business days.  SPR shall review disposition recommendations made by unit commanders to ensure that investigative standards are met.  SPR shall retain misconduct investigation reports and related records.

190.    The SPR commander shall review the investigator's recommended disposition and accept, reject, or modify it.  The SPR commander shall document rejected or modified recommendations from investigators in writing.  The Superintendent, or his or her designee(s), shall review the SPR commander's recommended disposition and accept, reject, or modify it. The Superintendent, or his or her designee(s), shall document rejected or modified recommendations from SPR.

191.    In addition to determining whether the officer committed the alleged misconduct, administrative investigations shall assess and document whether:  (a) the action was in compliance with training and legal standards; (b) the use of different procedures should or could have been employed to achieve a potentially better outcome; (c) the incident indicates a need for

additional training, counseling or other non-punitive corrective action; and (d) the incident suggests that PRPD should revise its policies, strategies, tactics, or training. This information shall be shared with the relevant commander(s).

192.    Each misconduct complainant will be notified in writing regarding the initiation of an investigation, the final disposition of the investigation, any disciplinary or non-punitive action taken, and the right to seek further review of the final disposition under applicable law. If an investigation goes beyond the 90 day limit, the complainant will be notified that an extension has been granted. PRPD shall establish procedures for complainants dissatisfied with the outcome to discuss their concerns with SPR commanders.

193.    SPR shall retain all misconduct investigation records for at least five years after the officer's separation from the agency. This obligation shall apply to records regarding officers' credibility that come to the attention of SPR and that may be subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.

**E.    Staffing, Selection, and Training Requirements**

194.    PRPD shall ensure that a sufficient number of well-trained staff are assigned and available to thoroughly complete and review misconduct investigations in a timely manner and in accordance with the requirements of this Agreement. PRPD further shall ensure it provides sufficient resources and equipment to conduct adequate criminal and administrative misconduct investigations.

195.    PRPD shall establish a term of duty of up to three years for SPR officers and supervisors who conduct investigations and may reappoint an officer to successive terms of duty if that officer has demonstrated effective performance based on an appropriate annual performance evaluation.

196.   All SPR personnel conducting officer misconduct investigations shall receive at least 40 hours of initial training in conducting officer misconduct investigations and shall receive additional in-service training each year.

**F.      Preventing Retaliation**

197.   PRPD policy shall expressly prohibit all forms of retaliation, whether subtle or direct, including discouragement, intimidation, coercion, duty-station reassignment, or adverse action, against any person, civilian or officer, who reports misconduct, makes a misconduct complaint, or cooperates with an investigation of misconduct.  Retaliation shall be considered a serious policy violation and shall subject an officer to serious disciplinary action, up to and including termination.

**G.      Discipline**

198.   PRPD shall ensure that discipline for sustained allegations of misconduct is fair, consistent, based on the nature of the allegation, and that mitigating and aggravating factors are set out and applied consistently.  Discipline shall be based on objective criteria and shall not depend on or be influenced by rank or external considerations.

199.   PRPD shall establish a disciplinary matrix for reviewing sustained findings and assessing the appropriate level of discipline to facilitate consistency in the imposition of discipline.  All disciplinary decisions shall be documented, including the rationale behind any decision to deviate from the level of discipline set out in the disciplinary procedures.

200.   PRPD shall review its drug testing program on an ongoing basis to ensure that pre-service testing for new officers and random testing for existing officers is reliable and valid. The program shall be designed to detect use of banned or illegal substances, including steroids.

### H.    Officer Assistance and Support

201.    PRPD shall provide officers and employees with a range of non-punitive supports and services to address and correct problem behavior, as part of PRPD's disciplinary and performance improvement systems.  These supports and services shall include a comprehensive range of mental health services that include, but are not limited to:  readily accessible confidential counseling services; critical incident debriefings and crisis counseling; mental health evaluations; and stress management training that comport with generally accepted practices.

202.    PRPD shall train management and supervisory personnel in officer support services protocols to ensure wide availability and use of officer support services.

203.    PRPD shall involve mental health professionals in developing and providing in-service training on mental health stressors related to law enforcement and the mental health services available to officers and their families.

204.    PRPD shall ensure that any mental health counseling services provided to PRPD employees remain confidential as consistent with generally accepted practices in the field of mental health care.

### XII.    COMMUNITY ENGAGEMENT AND PUBLIC INFORMATION

205.    PRPD shall create robust community relationships and engage constructively with the community to ensure collaborative problem-solving, ethical and bias-free policing, and more effective crime prevention.  PRPD shall integrate community and problem oriented policing principles into its management, policies and procedures, recruitment, training, personnel evaluations, tactics, deployment of resources, and systems of accountability.  PRPD shall engage the public in the reform process through the dissemination of public information on a regular basis.

**A.**   **Community Oriented Policing**

206.   PRPD shall reassess its staffing allocation and personnel deployment to ensure that they support community policing and problem-solving goals.  PRPD shall employ a Scanning, Analysis, Response, and Assessment ("SARA") model to structure its problem-solving approach.

207.   PRPD shall continue to conduct outreach to a broad cross-section of community stakeholders to establish extensive problem-solving partnerships and develop cooperative strategies that build mutual respect and trusting relationships.

208.   PRPD shall develop and implement mechanisms to measure its community partnerships and problem-solving strategies and assess their effectiveness.  PRPD shall prepare a publicly available report on at least an annual basis that details its community partnerships, meetings, and problem-solving activities, including specific problems addressed and steps taken by PRPD and the community toward their resolution.  The report also shall identify obstacles faced and recommendations for future improvement.

**B.**   **Community Interaction Councils**

209.   PRPD shall continue to maintain Community Interaction Councils ("CICs") jointly with community representatives to facilitate regular communication and cooperation between PRPD and community leaders at the local level.  CICs shall meet, at a minimum, every three months.

210.   In conjunction with community representatives, PRPD shall develop a mechanism to select the members of CICs, which shall include a representative cross section of community members and PRPD officers.

211.    PRPD shall allocate sufficient resources and authority to ensure that CICs possess the means, staffing, access, training, and mandate necessary to fulfill their mission and the requirements of this Agreement.  The operating budget shall be revisited on an annual basis in consultation with the CICs.

212.    PRPD shall work closely with CICs to develop a comprehensive community policing approach that collaboratively identifies and implements strategies to address crime and safety issues.  In order to foster this collaboration, PRPD shall share appropriate information and documents with CICs, provided adequate safeguards are taken not to disclose confidential or otherwise law enforcement sensitive information.  PRPD shall seek CIC assistance, counsel, recommendations, or participation in areas including:

a)    reviewing and assessing the propriety and effectiveness of law enforcement priorities and related community policing strategies, materials, and training;

b)    reviewing and assessing the propriety and effectiveness of PRPD policies on matters such as discriminatory policing, search and seizure, use of force, the civilian complaint process, and victim services;

c)    reviewing and assessing concerns or recommendations about specific PRPD policing tactics and initiatives;

d)    providing information to the community and conveying feedback from the community to PRPD;

e)    advising the Superintendent on recruiting a qualified, diverse workforce; and

69

     f)      advising the Superintendent on ways to provide data and information,

including information about PRPD's compliance with this Agreement, to

the public in a transparent and public-friendly format, to the greatest

extent allowable by law.

213.    CICs shall memorialize their recommendations in an annual public report that shall be available in PRPD facilities and on the official web pages of the Commonwealth of Puerto Rico and PRPD.  The report shall include appropriate safeguards not to disclose confidential or otherwise law enforcement sensitive information and to protect sensitive personal or private information.

**C.**    **<u>Public Information</u>**

214.    PRPD shall develop a Community Outreach and Public Information program in each of the former thirteen police regions or in other operational subdivisions with comparable geographic coverage.

215.    The Community Outreach and Public Information program shall require at least bi-annual open meetings for the first two years of this Agreement.  During the meetings, PRPD officers from the police region and/or the Reform Unit shall inform the public about the requirements of this Agreement, PRPD's progress meeting these requirements, and address areas of community concern.  At least one week before such meetings, PRPD shall widely publicize the meetings using print media, the Internet, and public service announcements on television or radio.

216.    The Community Outreach and Public Information meetings shall, with appropriate safeguards to protect sensitive information, include summaries of all audits and reports completed pursuant to this Agreement and any policy changes made and other significant

70

action taken as a result of this Agreement.  The meetings shall also include public education on an individual's right to decline consent to voluntary searches, consistent with Paragraph 77 of this Agreement.

217.    PRPD shall maintain and publicly disseminate accurate and updated crime statistics, including those related to hate crimes, on a monthly basis.

## XIII.    INFORMATION SYSTEMS AND TECHNOLOGY

218.    PRPD shall establish information systems and utilize technology to support the implementation of this Agreement in an efficient and effective manner.

219.    PRPD shall collect and maintain all data and records necessary to:  (a) document implementation of and compliance with this Agreement, including assisting the TCA's outcome assessments and the data collection and reporting required by this Agreement; (b) perform ongoing performance improvement activities in each of the areas addressed by this Agreement; (c) facilitate and ensure transparency and wide public access to information related to PRPD decision making and activities, as permitted by law; and (d) promote officer and civilian safety.

220.    PRPD shall develop protocols for collecting, analyzing, and reporting the information required by this Agreement.  These protocols shall be developed and implemented in coordination with the TCA and shall be approved by the DOJ prior to implementation.

221.    PRPD shall develop and maintain an automated record management system and electronic files as part of the Action Plans developed for each subsection above.

222.    PRPD shall provide each supervisor with handheld recording devices and require that supervisors use these devices to record complainant and witness statements taken as part of use of force or misconduct complaint investigations.

223.    All officers shall have access to National Crime Information Center ("NCIC") data for valid law enforcement purposes only.  PRPD shall develop a protocol for the handling and use of NCIC data.

224.    Nothing in this Agreement shall be construed as prohibiting PRPD from contracting services related to technology and data collection, entry, and analysis.

## XIV.    IMPLEMENTATION, COMPLIANCE ASSESSMENT, AND ENFORCEMENT

### A.    Technical Compliance Advisor

225.    The Parties shall select a Technical Compliance Advisor ("TCA") to assess and report whether the provisions of this Agreement have been implemented, and whether this implementation is resulting in constitutional and effective policing, professional treatment of individuals, and increased community trust of PRPD.

226.    The TCA shall only have the duties, responsibilities, and authority conferred by this Agreement.  The TCA shall not, and is not intended to, replace or assume the role and duties of PRPD, including the Superintendent, UCCJ, or any other agency official of the Commonwealth of Puerto Rico.  The TCA shall be subject to the supervision and orders of the Court, consistent with this Agreement, the Court's dismissal order, and applicable law.

227.    In order to assess and report on PRPD's implementation of this Agreement and whether implementation is having the intended beneficial impact on policing and community trust in Puerto Rico, the TCA shall conduct the reviews specified in this Agreement; shall review PRPD policies, training material, protocols, and programs developed and implemented pursuant to this Agreement; and conduct such additional audits, reviews, and assessments as the TCA or the Parties deem appropriate, or the Court, consistent with this Agreement and the dismissal order.

228.    The TCA shall ensure that the TCA has sufficient language proficiency to engage critically in Spanish, both orally and with Spanish-language documents without requiring translation of the conversation or the document.  The TCA may obtain sufficient language proficiency through members of the TCA's team, including the TCA's agents, contractors, or employees.  In choosing a TCA, the Parties shall consider the Spanish language proficiency of TCA candidates themselves (as distinguished from the Spanish language proficiency obtained through the TCA's team) to be a significant positive qualification to perform as the TCA under this Agreement.

**B.**    **Review and Implementation of Policies, Procedures, and Programs**

229.    Consistent with this Agreement, PRPD shall submit all new and revised policies, procedures, action plans, programs, protocols, forms, systems, and mechanisms required by this Agreement to the TCA and DOJ for review and comment.  PRPD shall have complied with this obligation when it has delivered to the TCA and DOJ its final drafts for review in the Spanish language.  PRPD shall be under no obligation to submit its deliverables in the English language.  DOJ shall have 15 days to complete its review and submit comments, if any, to PRPD and the TCA.  The TCA may grant DOJ a reasonable extension.  If DOJ does not submit any comments within the 15-day period or within the extension period granted by the TCA, DOJ shall be deemed not to object to the PRPD submission.  The TCA shall complete its review and approval within 30 days of PRPD's submission.  If the TCA or DOJ object to the proposed new or revised policy, procedure, plan, program, protocol, form, system, or mechanism, it shall note the objection in writing to all Parties within its respective review period.  If neither the TCA nor DOJ object or offer comments to the new or revised policy, procedure, plan, program, protocol,

form, system, or mechanism, PRPD agrees to implement it within 45 days of it being provided to DOJ and the TCA.

230.    PRPD shall have 15 days to resolve any objections to the new or revised policies, procedures, plans, programs, protocols, systems, or mechanisms implementing the specified provisions.  If, after this 15-day period has run, DOJ maintains its objection, then the TCA shall have an additional 15 days to resolve the objection.  If either party disagrees with the TCA's resolution of the objection, either Party may ask the Court to resolve the matter.  The TCA shall determine whether in some instances an additional amount of time is necessary to ensure full and proper review of policies.  Factors to consider in making this determination include:  1) complexity of the policy; 2) extent of disagreement regarding policy; 3) number of policies provided simultaneously; and, 4) extraordinary circumstances delaying review by DOJ or the TCA.  In determining whether these factors warrant additional time for review, the TCA shall fully consider the importance of prompt implementation of policies, and shall allow additional time for policy review only where it is clear that additional time is necessary to ensure full and proper review.  Any extension to the above timelines by the TCA shall also toll PRPD's deadline for policy implementation.

C.    **Development, Implementation, and Assessment of Action Plans**

231.    PRPD shall hire and retain qualified employees, or reassign qualified current PRPD employees, to strengthen PRPD's Reform Unit, which shall be an interdisciplinary and multi-rank unit with the skills and abilities necessary to plan for and facilitate implementation of this Agreement.  The Reform Unit shall serve as the source of reform within PRPD, and PRPD shall ensure that members of the Reform Unit receive all necessary training and resources to successfully complete their tasks.  This unit also shall serve as the liaison between the Parties,

the TCA, and the CICs, and will assist with PRPD's implementation of and compliance with this Agreement.

232.   At a minimum, the Reform Unit will coordinate PRPD's compliance and implementation activities; facilitate the provision of data, documents, materials, and access to Commonwealth of Puerto Rico and PRPD officials or employees to the TCA, CICs, and DOJ, as needed, in accordance with the terms of this Agreement; ensure that all data, documents and records are maintained as provided in this Agreement; and assist in assigning implementation and compliance related tasks to PRPD personnel, as directed by the Superintendent or his or her designee.

233.   The Reform Unit shall include at least one PRPD supervisor who reports directly to the Superintendent.  PRPD shall inform the TCA and DOJ of any changes to Reform Unit staff, including suspensions, reassignments, and dismissals of personnel.  The Superintendent may designate PRPD personnel, including members of the Reform Unit, and external resources, which are in his professional judgment critical to the successful implementation of this Agreement and the comprehensive reform of PRPD.  The Commonwealth and PRPD shall make their best efforts to retain such personnel and resources to ensure continuity of effort and successful implementation.

234.   PRPD, with assistance from the Reform Unit, shall be responsible for drafting Action Plans that shall set forth the detailed steps PRPD will take to implement and achieve compliance with each of the Agreement's provisions in Sections III through XIII.

235.   The Action Plans shall include reasonable and achievable timeframes for completing and implementing each detailed step.  At a minimum, each action plan will:  identify each policy and procedure change required; the dates by which these changes will be drafted for

submission to the TCA and DOJ; the date for preparation of training curricula, modules, or plans; a schedule for training (by precinct, zone, rank, or other appropriate categorization); a schedule for the implementation of policies and procedures in the field; the budgetary allocations and funding sources to execute the tasks in the Action Plan; and the date(s) by which compliance data will begin to be collected and the requirement shall be ready for compliance review by the TCA.

236.    Within 15 days of submission by PRPD, the TCA and DOJ will review the Action Plans to ensure that they specify actions necessary to comply with all applicable substantive provisions of the Agreement, and that timelines, implementation plans and budgetary allocations and funding sources are reasonable, achievable, and prioritized to promote efficiency.  DOJ shall have 15 days to complete its review and submit comments, if any, to PRPD and the TCA.  If DOJ does not submit any comments or request a reasonable extension, then DOJ shall be deemed not to object to the Action Plan.  The TCA shall complete its review and approval within 45 days of PRPD's submission.  Upon approval by the TCA, the Action Plan shall be implemented immediately according to the schedule set forth in the Action Plan.  The TCA will provide PRPD with feedback and technical assistance as necessary to achieve these outcomes.  The TCA and DOJ will not unreasonably withhold approval.  Any dispute shall be resolved consistent with Paragraph 229.

237.    PRPD shall submit its Action Plans to the TCA and DOJ for review and approval on a rolling basis and shall cover, at a minimum, the four years of the Agreement from the Appointment Date.  PRPD shall submit the first set of Action Plans no later than 90 days from the Appointment Date or 60 days after the Commonwealth's FY2013-14 budget is enacted, whichever occurs later.  The Action Plans shall address resources, funding, staffing, technology,

capacity, and other infrastructure and budgetary needs to place PRPD in a position to implement each of the Agreement's provisions in Sections III through XIII within four years from the Appointment Date and in accordance with the implementation schedules set forth in the Action Plans. The Action Plans shall provide specific steps to achieve the following interim milestones during the first three years of the Agreement:

a) PRPD shall create, revise, or adopt provisional policies and procedures on use of force, searches and seizures, equal protection, and ethics that are consistent with this Agreement and generally accepted policing practices, and shall provide sufficient training on these policies and procedures, to all PRPD officers assigned to, or engaged in, joint operations with federal law enforcement agencies in Puerto Rico within 365 days of the Appointment Date. To achieve this milestone, PRPD may contract with qualified external providers to ensure that relevant PRPD officers have the requisite guidance, training, and capacity to provide policing services in an effective and constitutional manner. Nothing in this provision is intended to alter, modify, or substitute any inter-governmental agreement or federal program requirement concerning joint task forces or joint law enforcement operations.

b) PRPD will complete all policies required by paragraphs 22-72, 74-100, 159-200, 205-217, and 270 no later than 18 month from the Appointment Date. PRPD will train 50 percent of relevant officers on those policies no later than 18 months from the date the policies are approved by the TCA.

> PRPD shall train all relevant officers no later than 30 months from the date the policies are approved by the TCA.

    c)    PRPD will complete all policies required by provisions 13-21, 73, 101-108, 145-158, 201-204, and 218-224 no later than 24 months from the Appointment Date.  PRPD will train 50 percent of relevant officers on those policies no later than 18 months from the date the policies are approved by the TCA.  PRPD shall train all relevant officers no later than 30 months from the date the policies are approved by the TCA.

238.    Once the Action Plans are approved, the Parties will submit them to the Court as addendums to this Agreement.  Upon submission to the Court, the Parties shall treat the Action Plans as fully incorporated, enforceable terms in this Agreement, unless the Court instructs otherwise.  Once approved, the Action Plans will be deemed incorporated into this Agreement.  PRPD will make the Action Plans publicly available.

239.    Should PRPD need to modify any of the timeframes set forth in the Action Plans, PRPD shall explain to the TCA, in writing, why such modification is necessary.  For good cause, which may include budgetary or funding limitations, the TCA may extend any timeframe by up to four months.  However, the TCA shall not extend the initial timeframe by more than four months without the approval of DOJ.  DOJ shall not unreasonably withhold approval.  Any modification to an Action Plan, including extensions approved by the TCA and DOJ, shall be filed with the Court for approval.  Extensions submitted to the court shall be effective, absent further action from the Court, 30 days after submission to the court.  Disputes on approval for extensions may be submitted to the Court for resolution.  The Parties agree that should PRPD need to extend the time for completing an Action Plan beyond the time frame originally

contemplated in the approved Action Plan for operational or budgetary reasons, such an extension shall be permitted upon agreement of the Parties and the TCA or upon leave of Court.

240.    During the first four years from the Appointment Date, the TCA shall evaluate PRPD's compliance with this Agreement by assessing PRPD's progress against its Action Plans. The TCA shall assess whether PRPD has met the timeline for each detailed step specified in the Action Plans, and whether PRPD is in full, partial, or noncompliance with the detailed steps. The TCA shall conduct the first progress assessment six months from the Appointment Date, and every six months thereafter.

**D.    Comprehensive Surveys and Compliance Reviews**

241.    In order to assess PRPD's overall compliance with and the effectiveness of this Agreement, the TCA shall conduct a reliable, comprehensive survey of members of the Puerto Rico community regarding their experiences with and perceptions of PRPD once during the first three years of this Agreement and annually thereafter.  The community survey should be statistically valid, based on a sound methodology, and conducted by an independent entity.  This community survey shall include measures to ensure input from individuals of each demographic category.  The survey shall also assess the number and variety of community partnerships with PRPD and the depth and effectiveness of those partnerships.  In particular, the survey shall:

a)    include interviews with a random sample of residents of Puerto Rico, PRPD officers, and detainees arrested by PRPD within the past week;

b)    ensure the anonymity of all interview participants; and

c)    survey participants regarding community-police relations; PRPD's integrity, effectiveness, and service; and how it treats members of different demographic groups.

242.    Four years after the Appointment Date and in accordance with the provisions of the approved Action Plans, the TCA shall begin to regularly conduct compliance reviews to assess PRPD's compliance with each of the Agreement provisions in Sections III through XIII. The TCA shall assess and report whether PRPD has, for each Agreement requirement:  (a) incorporated the requirement into an implemented policy; (b) trained all relevant personnel in the requirement and policy; and (c) fully implemented in practice.  These compliance reviews shall contain both quantitative elements as necessary for reliability and comprehensiveness.

**E.**    **Outcome Assessments**

243.    In addition to the compliance reviews, the TCA shall conduct qualitative and quantitative outcome assessments to measure whether the implementation of this Agreement has resulted in constitutional policing.  These outcome assessments shall include collection and analysis of the following outcome data trends and patterns:

  a)    Use of Force Reforms

  1)    rate of force used overall and by force type, geographic area, type of arrest, and demographic category;

  2)    rate of force complaints overall and by disposition, force type, geographic area, type of arrest, and demographic category;

  3)    number of officers who frequently or repeatedly use force, or have more than one instance of force found to violate policy;

  4)    uses of force found to violate policy overall and by force type, geographic area, type of arrest, and demographic category;

  5)    number and rate of use of force administrative investigations which are returned for further investigation or for completeness;

80

6)    rate of STU deployments for routine patrol or general policing; and

7)    rate of CIT use.

b)    Stop, Search, and Seizure Reforms

1)    number of civilian complaints regarding stop, searches, and seizures overall and by disposition, geographic area, type of stop or seizure, and demographic category;

2)    the number and rate of searches which result in a finding of contraband or evidence seized, overall and broken down by geographic area, type of arrest, and demographic category;

3)    the number and rate of arrests for which there is documented reasonable suspicion for the stop and probable cause for the arrest, overall and broken down by geographic area, type of arrest, and demographic category;

4)    the number and rate of arrests which are not prosecuted, overall and broken down by geographic area, type of arrest, demographic category, and reason for declination of prosecution, if available; and

5)    demographic and geographic data related to arrests and citations for conduct-based allegations, including citations and arrests for disorderly conduct, obstruction of justice, assault on a police officer, and failure to obey a lawful order.

81

c)    Equal Protection, Non-Discrimination, and Community Engagement

    1)    civilian complaints regarding police services related to discrimination, domestic violence or sexual assault, including by their disposition, geographic area, and demographic category;

    2)    rate of accurately classified reports of hate crimes, sexual assault, and domestic violence;

    3)    clearance rate of hate crimes, sexual assault, and domestic violence cases, overall and by clearance type; and

    4)    a satisfaction survey of representatives from the community, including rape crisis advocates, service providers, and/or legal providers, regarding PRPD services related to equal protection, sexual assault, and domestic violence, that is drafted by PRPD and the TCA and is statistically valid, based on a sound methodology, and conducted by an independent entity. ,

d)    Civilian Complaints, Internal Investigations, and Discipline

    1)    investigation timeliness;

    2)    notification to complainant of initiation, status, and final disposition of investigation;

    3)    number of misconduct complaints, with a qualitative assessment of whether any increase or decrease appears related to access to the complaint process, and assessment of where and when complaints are coming from, by geographic area and shift; and

4)    number of officers who are subjects of repeated misconduct complaints, or have repeated instances of sustained misconduct complaints.

244.    These outcome assessments shall include collection of data relevant to and analysis of the outcome measures set out in the above sections, including an analysis of patterns and trends, as well as any additional assessments the TCA deems necessary for measuring the Commonwealth of Puerto Rico's implementation of this Agreement.

**F.**    **Compliance Assessment Review and Methodology**

245.    Within 90 days of assuming duties as the TCA, the TCA shall develop a plan for conducting the above compliance reviews and outcome assessments, and shall submit this plan to the Parties for review and approval.  This plan shall:

a)    clearly delineate the requirements of the Agreement to be assessed for compliance, indicating which requirements will be assessed together;

b)    set out a schedule for conducting a compliance review of each requirement of this Agreement, beginning after the fourth year from the Appointment Date in accordance with the approved Action Plans for each requirement, and annually after the first compliance review for each requirement; and

c)    set out a schedule for conducting outcome assessments for each outcome measure at least annually, with the first assessment occurring no later than five years from the Appointment Date.

246.    Within 120 days of assuming duties as TCA, the TCA shall review and recommend any changes to the outcome measures detailed in Section XIV.E, above, that the TCA deems useful in assessing whether implementation of the Agreement is resulting in

constitutional policing.  The Parties shall adopt any recommendations upon which they agree and submit necessary modifications to this Agreement to the Court for approval.  If the Parties disagree about whether to adopt a particular outcome measure, the Party seeking adoption may seek Court resolution.

247.    Where the TCA recommends and the Parties agree, the TCA may refrain from conducting a compliance review of a requirement previously found to be in compliance by the TCA pursuant to review, or where an outcome assessment indicates that the outcome intended by the requirement has been achieved.

248.    At least 90 days prior to the initiation of any outcome assessment or compliance review, the TCA shall submit a proposed methodology for the review or assessment to the Parties.  The Parties shall submit any comments or concerns regarding the proposed methodology to the TCA within 45 days of the proposed date of the review or assessment.  The TCA shall modify the methodology as necessary to address any concerns or shall inform the Parties in writing of the reasons it is not modifying its proposed methodology.  Any unresolved disputes involving the TCA's methodology may be submitted to the Court for resolution.

## G.    Comprehensive Reassessment

249.    Six years after the Appointment Date, the TCA shall conduct a comprehensive outcome assessment and review of requirements to determine whether and to what extent the outcomes intended by this Agreement have been achieved, and whether any modifications to the Agreement are necessary for continued achievement in light of changed circumstances or unanticipated impact (or lack of impact) of a requirement.  This assessment also shall address areas of greatest achievement and the requirements that appear to have contributed to this success, as well as areas of greatest concern, including strategies for accelerating full and

84

effective compliance. Based upon this comprehensive assessment, the TCA shall recommend modifications to the Agreement that are necessary to achieve and sustain intended outcomes. Where the Parties agree with the TCA's recommendations, the Parties shall stipulate to modify the Agreement accordingly. This provision in no way diminishes the Parties' ability to stipulate to modifications to this Agreement as set out in Paragraph 296, below. Nothing in this assessment shall empower the TCA to unilaterally modify the terms of this Agreement.

**H.** **TCA Reports**

250. During the first four years from the Appointment Date, the TCA shall file with the Court, every six months, written, public reports that shall include:

  a) a description of the work conducted by the TCA;

  b) a listing of each detailed step in the Action Plans and its timeframe indicating whether the timeframe has been met, and whether the Commonwealth of Puerto Rico is making satisfactory progress toward implementation of the Agreement by rating PRPD in full, partial, or noncompliance with steps in the Action Plan;

  c) the methodology and specific findings for each review conducted, where appropriate, and redacted as necessary for privacy concerns. An unredacted version shall be filed under seal with the Court and provided to the Parties. The underlying data for each audit or review shall be not be publicly available, but shall be retained by the TCA and provided to either or both Parties upon request;

d) for any detailed steps that were reviewed and found not to have been fully implemented in practice, the TCA's recommendations regarding necessary steps to achieve compliance; and

e) a projection of the work to be completed during the upcoming reporting period and any anticipated challenges or concerns related to implementation of the Agreement.

251. Fifty-four months after the Appointment Date and in accordance with the provisions of the approved Action Plans, the TCA shall file with the Court, every six months, written, public reports that shall include:

a) a description of the work conducted by the TCA;

b) a listing of each Agreement requirement indicating which requirements have been: (1) incorporated into implemented policy; (2) the subject of sufficient training for all relevant PRPD officers and employees; (3) reviewed or audited by the TCA to determine whether they have been fully implemented in practice, including the date of the review or audit; and (4) found by the TCA to have been fully implemented in practice;

c) the methodology and specific findings for each audit or review conducted, redacted as necessary for privacy concerns. An unredacted version shall be filed under seal with the Court and provided to the Parties. The underlying data for each audit or review shall be not be publicly available, but shall be retained by the TCA and provided to either or both Parties upon request;

d)    for any requirements that were reviewed and found not to have been fully implemented in practice, the TCA's recommendations regarding necessary steps to achieve compliance;

e)    the methodology and specific findings for each outcome assessment conducted; an unredacted version shall be filed under seal with the Court and provided to the Parties.  The underlying data for each audit or review shall be not be publicly available, but shall be retained by the TCA and provided to either or both Parties upon request;

f)    qualitative status updates on PRPD's progress in achieving the desired outcomes for each area covered by the Agreement – noting issues of concern or particular achievement; and

g)    a projection of the work to be completed during the upcoming reporting period and any anticipated challenges or concerns related to implementation of the Agreement.

252.    The TCA shall provide a copy of the six-month reports to the Parties in draft form within 15 days after the end of the reporting period.  The Parties shall have  fifteen calendar days upon receipt of the draft report to allow the Parties to informally comment on the draft reports. The TCA shall consider the Parties' responses and make appropriate changes, if any, and shall file the final report with the Court within 45 days of the end of the review period.  DOJ and PRPD may file responses to the TCA's final report within 30 days.

I.    **Communication Between the TCA and Parties**

253.    The TCA shall maintain regular contact with the Parties in order to ensure effective and timely communication regarding the status of implementation of and compliance

with this Agreement.  To facilitate this communication, the TCA shall conduct a monthly conference that shall include participation by the Reform Unit and DOJ.

254.    The TCA shall meet, as he or she in good faith deems necessary, with community stakeholders, which may include, without limitation, representatives of civic and community organizations, minority communities, LGBTT communities, student groups, labor groups, and civil rights and women's advocacy groups, to explain the TCA's reports, to inform the public about the Agreement implementation process, to hear community perspectives of police interactions and/or seek input relevant to the reform requirements of this Agreement.  The Parties may recommend and encourage the TCA to meet and seek the input of particular community groups with respect to specific reforms required by this Agreement.  Nothing in this paragraph shall limit the ability of the TCA to meet independently with community stakeholders or other individuals regarding this Agreement, consistent with Section XIV.K of this Agreement.

**J.**      **TCA Recommendations and Technical Assistance**

255.    In addition to recommendations set out in the TCA's six-month reports, at the request of DOJ or PRPD, based on the TCA's reviews, the TCA may make recommendations to the Parties regarding measures necessary to ensure timely, full, and effective implementation of this Agreement.  Such recommendations may include technical assistance or a recommendation to change, modify, or amend a provision of the Agreement.

**K.**      **Public Statements, Testimony, Records, and Conflicts of Interest**

256.    Except as required or authorized by the terms of this Agreement or the Parties acting together, neither the TCA, including, for the purposes of this paragraph, any agent, employee, or independent contractor thereof, shall make any public statements, outside of unsealed documents filed with the Court, or issue findings with regard to any act or omission of

88

the Commonwealth of Puerto Rico, or its agencies, departments, officials or employees; or disclose non-public information provided to the TCA pursuant to the Agreement. Any press statement made by the TCA regarding its employment or compliance assessment activities under this Agreement must first be approved by DOJ and PRPD.

257.    The TCA and/or any agent, employee, or independent contractor of the TCA, may testify as to their observations, findings, and recommendations before the Court with jurisdiction over this matter, but the TCA shall not testify in any other litigation or proceeding with regard to any act or omission of the Commonwealth of Puerto Rico or any of its agencies, departments, officials or employees related to this Agreement or regarding any matter or subject that the TCA may know of as a result of his or her performance under this Agreement. The requirements of this paragraph shall continue to apply to the TCA and any agent, employee, or independent contractor of the TCA after his/her appointment has ended for any reason, or after this Agreement terminates. This paragraph does not apply to any proceeding before a court related to performance of contracts or subcontracts for the compliance assessment of this Agreement.

258.    Unless such conflict is waived by the Parties, the TCA shall not accept employment or provide consulting services that would present a conflict of interest with the TCA's responsibilities under this Agreement, including being retained (on a paid or unpaid basis) by any current or future litigant or claimant, or such litigant's or claimant's attorney, in connection with a claim or suit against the Commonwealth of Puerto Rico, or its agencies, departments, officials or employees.

259.    The TCA is not a state or local agency, or an agent thereof, and accordingly the records maintained by the TCA shall not be deemed public records subject to public inspection.

260.     The TCA shall not be liable for any claim, lawsuit, or demand arising out of the TCA's performance pursuant to this Agreement.

**L.     PRPD's Reports and Self-Assessments**

261.     Beginning with the TCA's first six-month report, PRPD shall file with the Court sealed and unsealed versions of a status report, with a copy to the TCA and DOJ, no later than 15 days before the end of the period under review.  PRPD's report shall delineate the steps taken by PRPD during the review period to implement this Agreement and PRPD's assessment of the status of its progress and any response to concerns raised in prior TCA reports.

**M.     Access and Confidentiality**

262.     To facilitate its work, the TCA may conduct on-site visits and assessments without prior notice to PRPD and UCCJ.  The TCA shall have access to all necessary individuals, facilities, and documents, which shall include access to Agreement-related meetings and reviews such as critical incident reviews, use of force review board meetings, and disciplinary hearings.

263.     PRPD shall ensure that the TCA shall have full and direct access to all PRPD and UCCJ staff, employees, and facilities that the TCA reasonably deems necessary to carry out the duties assigned to the TCA by this Agreement.  The TCA shall communicate and cooperate with PRPD and UCCJ to access staff, employees, and facilities in a reasonable manner that, consistent with the TCA's responsibilities, minimizes interference with daily operations.

264.     PRPD and UCCJ shall ensure that the TCA has full and direct access to all PRPD and UCCJ's documents and data that the TCA reasonably deems necessary to carry out the duties assigned to the TCA by this Agreement, except any documents or data protected by the attorney-client privilege.  Should PRPD or UCCJ decline to provide the TCA access to

90

documents or data based on attorney-client privilege, PRPD or UCCJ shall inform the TCA and

DOJ that it is withholding documents or data on that basis and shall provide the TCA and DOJ

with a log describing the documents or data.

265.   To the extent necessary to ensure the proper implementation of this Agreement,

DOJ and its consultative experts and agents shall have full and direct access to all PRPD and

UCCJ's staff, employees, facilities, documents, and data.  DOJ and its consultative experts and

agents shall cooperate with PRPD and UCCJ to access involved personnel, facilities, and

documents in a reasonable manner that, consistent with DOJ's responsibilities to enforce this

Agreement, minimizes interference with daily operations.  Should PRPD or UCCJ decline to

provide DOJ with access to documents or data based on attorney-client privilege, PRPD and

UCCJ shall inform DOJ that it is withholding documents or data on this basis and shall provide

DOJ with a log describing the documents or data.

266.   PRPD and UCCJ shall facilitate access by the TCA and DOJ to other documents

and data of the Commonwealth of Puerto Rico and its agencies in possession or in control of

PRPD or UCCJ that are reasonably related to the implementation of this Agreement.

267.   The TCA and DOJ shall provide PRPD and UCCJ with reasonable notice of a

request for copies of documents.  Upon such request, PRPD and UCCJ shall provide in a timely

manner copies (electronic, where readily available) of the requested documents to the requestor,

unless PRPD can show that the requestor is not entitled to access to the documents under this

Agreement.

268.   The TCA shall have reasonable access to all documents in criminal investigation

files that have been closed by PRPD and PRDOJ, consistent with applicable law.  PRPD shall

facilitate this access.  The TCA shall also have reasonable access to all arrest reports, warrants,

and warrant applications whether or not contained in open criminal investigation files, consistent with applicable law.  Where practicable, arrest reports, warrants, and warrant applications shall be obtained from sources other than open criminal investigation files.

269.     The TCA and DOJ shall maintain confidential all non-public information provided by PRPD, UCCJ, or any other agency of the Commonwealth of Puerto Rico, pursuant to this Agreement.  Other than as expressly provided in this Agreement, this Agreement shall not be deemed a waiver of any privilege or right PRPD, UCCJ, or any other agency of the Commonwealth of Puerto Rico may assert, including those recognized at common law or created by statute, rule, or regulation, against any other person or entity with respect to the disclosure of any document.

270.     PRPD and UCCJ shall ensure that all personally-identifiable information collected and maintained as part of this Agreement is adequately protected from disclosure, consistent with federal and Commonwealth law, generally accepted privacy standards, and this Agreement.

**N.**     **Selection and Compensation of the TCA**

271.     Within 60 days from the Effective Date, the Parties shall together select an independent TCA, acceptable to both, who shall assess and report on PRPD's implementation of this Agreement.  The selection of the TCA shall be pursuant to a method jointly established by the Parties, and will not be governed by any formal or legal procurement requirements.

272.     If the Parties are unable to agree on a TCA or an alternative method of selection within 60 days of the Effective Date, each Party shall submit the names of three candidates with experience as law enforcement practices or compliance assessment experts, along with resumes

and cost proposals, to the Court, and the Court shall select a TCA from among the qualified candidates.

273.     PRPD shall bear all reasonable fees and costs of the TCA.  In selecting the TCA and his/her team, DOJ and the Commonwealth of Puerto Rico recognize the importance of ensuring that the fees and costs borne by Puerto Rico are reasonable, and accordingly fees and costs shall be one factor considered in selecting the TCA.  In the event that any dispute arises regarding the reasonableness or payment of the TCA's fees and costs, PRPD, DOJ, and the TCA shall attempt to resolve the dispute cooperatively prior to seeking the assistance of the Court.

274.     PRPD shall provide the TCA with permanent office space and reasonable office support such as office furniture, telephones, access to fax and the Internet, secure document storage, and photocopying.

275.     The TCA, at any time after his or her initial selection, will hire or employ or contract with such additional persons or entities as are reasonably necessary to perform the tasks assigned to the TCA by this Agreement.  Any person or entity hired or otherwise retained by the TCA to assist in furthering any provisions of this Agreement shall be subject to the provisions of this Agreement, and entitled to the same access to PRPD staff, employees, facilities, documents, and data as the TCA.  The TCA shall notify the Commonwealth of Puerto Rico and DOJ in writing when the TCA has selected such additional persons or entities.  The notice shall identify and describe the qualifications of the person or entity to be hired or employed and the compliance assessment to be performed.  The Parties shall have an opportunity to interview the prospective hiree and request additional information about the prospective hiree's background and experience, including references and a list of recent consulting or compliance assessment work.

276.    A hiree, including the TCA, shall not be retained unless he or she has entered into an agreement with the Parties committing to notify them of any conflicts of interest, or appearance thereof, that arise in the course of his or her work pursuant to this Agreement.

277.    If the Parties agree to the TCA's proposal, the TCA shall be authorized to hire or employ such additional persons or entities.  PRPD and DOJ have ten business days to disagree with the proposal in writing.  PRPD and DOJ will not unreasonably withhold approval, as the Parties acknowledge that a compliance review team will be necessary to meet the responsibilities and obligations placed on the TCA by this Agreement.  If the Commonwealth of Puerto Rico, PRPD, and DOJ are unable to reach agreement within ten business days of receiving notice of the disagreement, the Court shall resolve the dispute.

278.    In the event that full and effective implementation of this Agreement requires technical assistance beyond the scope of the TCA's contract between the Commonwealth of Puerto Rico, PRPD, and DOJ, the TCA shall, in writing, inform PRPD of the need for technical assistance and its relation to implementation of the Agreement.  If PRPD agrees that the technical assistance identified by the TCA is necessary, PRPD shall arrange for the prompt initiation of the recommended technical assistance by the TCA, his or her agent or independent contractor, or a separate individual or entity.  Any such technical assistance shall be provided at the Commonwealth of Puerto Rico's expense.  This provision shall not prevent the Commonwealth of Puerto Rico from procuring, at its own expense, technical assistance independent from that requested by the TCA.

279.    Should any of the Parties to this Agreement determine that the TCA's individual members, agents, employees, or independent contractors have exceeded their authority or failed to satisfactorily perform the duties required by this Agreement, the Party may petition the Court

94

for such relief as the Court deems appropriate, including replacement of the TCA, and/or any individual members, agents, employees, or independent contractors.

## O.    General Provisions

280.    This Agreement is effectuated pursuant to the authority granted to DOJ under Section 14141. Puerto Rico and DOJ shall publish this Agreement in English and Spanish in electronic format in a manner that is accessible to the public, including without limitation, on their respective official websites.  All court filings by the Parties, including reports required by Paragraph 261, shall be filed in the English language, pursuant to the District Court's Local Rules.

281.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1345.  Venue is proper in the District of Puerto Rico pursuant to 28 U.S.C. § 1391, because Defendants are located in and the claims arose in the District of Puerto Rico.

282.    The Parties enter into this Agreement jointly for the purpose of avoiding the burdens of litigation and to support vigorous and constitutional law enforcement.  This Agreement serves the public interest because the reforms set forth herein will protect public safety, promote constitutional policing practices, and strengthen community trust, while at the same time avoiding the diversion of federal and Commonwealth resources to adversarial actions.

283.    The Parties agree that they are not required to preserve information and materials, otherwise than under generally applicable law, because it is not reasonably foreseeable or anticipated that there will be litigation between the Parties related to the matters covered by this Agreement.

284.    This Agreement shall not and is not intended to compromise the lawful authority of PRPD officers to use reasonable and necessary force, effect arrests and investigatory stops,

95

conduct searches and seizures, or otherwise fulfill their law enforcement obligations in a manner consistent with the requirements of the Constitutions and laws of the United States and the Commonwealth of Puerto Rico. The Superintendent continues to have operational and administrative control of PRPD in accordance with PRPD's enabling statute and regulations, and the Constitutions and laws of the United States and the Commonwealth of Puerto Rico. Nothing in this Agreement shall diminish the Superintendent's operational and administrative authority over PRPD, which shall be exercised in accordance with the law and generally accepted professional and legal standards.

285.     This Agreement shall constitute the entire integrated agreement of the Parties. No prior drafts or prior or contemporaneous communications, oral or written other than DOJ's September 2011 Report, shall be relevant or admissible for purposes of determining the meaning of any provisions herein in any litigation or any other proceeding.

286.     This Agreement is binding on all Parties hereto, by and through their officials, agents, employees, and successors. If the Commonwealth of Puerto Rico establishes or reorganizes a government agency or entity whose function includes overseeing, regulating, accrediting, investigating, training, or reviewing the operations of PRPD, any aspect thereof, or of its officers, the Commonwealth of Puerto Rico agrees to ensure that these functions and entities are consistent with the terms of this Agreement and shall incorporate, to the extent possible under applicable law, the terms of this Agreement into the oversight, regulatory, accreditation, investigation, training, or review functions of the government agency or entity as necessary to ensure full implementation of this Agreement.

287.     This Agreement is enforceable only by the Parties. No person or entity is intended to be a third-party beneficiary of the provisions of this Agreement for purposes of any

civil, criminal, or administrative action, and accordingly, no person or entity may assert any claim or right as a beneficiary or protected class under this Agreement or otherwise.

288.    This Agreement is not intended to impair or expand the right of any person or entity to seek relief against the Commonwealth of Puerto Rico, or any officer or employee thereof, for their conduct or the conduct of PRPD officers; accordingly, it does not alter legal standards governing any such claims by any third parties, including those arising from Commonwealth of Puerto Rico or federal law.  This Agreement does not expand, nor will it be construed to expand, access to any Commonwealth of Puerto Rico, PRPD, or DOJ documents, except as provided by this Agreement, by persons or entities other than DOJ, Commonwealth of Puerto Rico, and the TCA.

289.    The Commonwealth of Puerto Rico is responsible for providing or obtaining necessary support and resources to enable PRPD and UCCJ to fulfill their obligations under this Agreement.  If the Commonwealth of Puerto Rico is unable to secure adequate funding sources, whether state or federal, to comply with its obligations under this Agreement within the compliance timeframes stipulated in this Agreement, including extensions of Action Plans approved by the TCA pursuant to Paragraph 239, Puerto Rico may submit to the court proper documentation of its fiscal situation and request that the court modify any applicable compliance time frame.

290.    The Commonwealth of Puerto Rico, by and through its officials, agents, employees, and successors, pledges to uphold its citizens' rights, privileges, or immunities secured or protected by the laws of the United States.

291.    This Agreement may not be used as an acknowledgement, agreement, admission, or statement by the Commonwealth of Puerto Rico, PRPD, or any of their respective officers or

employees, that they have engaged in any unconstitutional, illegal, or otherwise improper conduct.  Similarly, this Agreement is not, nor shall be construed, as an acknowledgment, agreement, admission, statement, or evidence of liability under any federal, state, or municipal law including, but not limited to, 42 U.S.C. § 14141 in any other proceedings.

**P.      Court Jurisdiction, Modification of the Agreement, and Enforcement**

292.    The Parties shall ask the Court to approve this Agreement and enter an Order of Dismissal pursuant to Fed. R. Civ. P. 41(a)(2), dismissing the case and retaining jurisdiction to enforce this Agreement in accordance with its own terms and applicable law.  Accordingly, this Agreement shall become effective upon the entry of the Court's Order of Dismissal.

293.    Except where otherwise specifically indicated, PRPD shall implement the provisions of this Agreement in accordance with the Action Plans developed in consultation with the TCA and incorporated into this Agreement by reference.

294.    To ensure that the provisions of this Agreement are properly and timely implemented, the Court shall retain jurisdiction to enforce this Agreement until such time as the Commonwealth of Puerto Rico and PRPD have achieved full and effective compliance with this Agreement and maintained such compliance for no less than two consecutive years.  At all times, PRPD shall bear the burden of demonstrating full and effective compliance with this Agreement. Full and effective compliance requires either sustained compliance with all requirements of this Agreement, or sustained and continuing improvement in constitutional policing, as demonstrated pursuant to the Agreement's outcome measures.

295.    The United States acknowledges the good faith of the Commonwealth of Puerto Rico and PRPD in trying to address the remedial measures that are needed to promote police integrity and ensure constitutional policing in Puerto Rico.  The United States, however, reserves

its right to seek enforcement of the provisions of this Agreement if it determines that PRPD has failed to comply fully with any provision of this Agreement. Prior to pursuing any remedy with the Court, DOJ agrees to give written notice of the failure to PRPD. PRPD shall have 60 days from receipt of such notice to cure the failure. During the 60-day period, the Parties shall meet and confer to resolve any disputes regarding the failure or to otherwise explore a joint resolution. The TCA shall assist the Parties in reaching a mutually-agreeable resolution to the compliance failure or issue, including by facilitating conference meetings and providing relevant factual assessments.

296.    Puerto Rico and DOJ may jointly stipulate to make changes, modifications, and amendments to this Agreement, which shall be effective, absent further action from the Court, 30 days after a joint motion has been filed with the Court. Such changes, modifications, and amendments to this Agreement shall be encouraged when the Parties agree, or where the reviews, assessments, and/or audits of the TCA demonstrate, that the Agreement provision as drafted is not furthering the purpose of the Agreement or that there is a preferable alternative that will achieve the same purpose, or that there are budgetary or operational considerations that require modification of time frames in the Agreement. Where the Parties or the TCA are uncertain whether a change to the Agreement is advisable, the Parties may agree to suspend the current Agreement requirement for a time period agreed upon at the outset of the suspension. During this suspension, the Parties may agree to temporarily implement an alternative requirement. The TCA shall assess whether the suspension of the requirement, and the implementation of any alternative provision, is as or more effective at achieving the purpose as was the original/current Agreement requirement and the Parties shall consider this assessment in

determining whether to jointly stipulate to make the suggested change, modification, or amendment.

297.    The Parties agree to defend the provisions of this Agreement.  The Parties shall notify each other of any court or administrative challenge to this Agreement.  In the event any provision of this Agreement is challenged in any Commonwealth court, removal to a federal court shall be sought by the Parties.

298.    PRPD agrees to promptly notify DOJ if any term of this Agreement becomes subject to collective bargaining consultation and to consult with DOJ in a timely manner regarding the position the Commonwealth of Puerto Rico takes in any collective bargaining consultation connected with this Agreement.

299.    The Commonwealth of Puerto Rico and PRPD shall require compliance with this Agreement by all of its agencies, departments, officials, employees, and their respective assigns and successors.

**Q.    <u>Termination of the Agreement</u>**

300.    Ten years after the Effective Date, either Party may seek to terminate this Agreement.  In the case of termination sought by the Commonwealth of Puerto Rico, prior to filing a motion to terminate, PRPD agrees to notify DOJ in writing when PRPD has determined that it is in full and effective compliance with this Agreement and that such compliance has been maintained for no less than two consecutive years.  Thereafter, the Parties shall promptly confer as to the status of compliance.  If, after a reasonable period of consultation and the completion of any audit or evaluation that DOJ or the TCA may wish to undertake, including tours of PRPD, UCCJ, and other facilities related to the implementation of this Agreement, document review, and interviews with any appropriate personnel, the Parties cannot resolve any compliance issues,

100

PRPD may file a motion to terminate this Agreement.  If PRPD moves for termination of this Agreement, DOJ will have an adequate time after the receipt of PRPD's motion to object to the motion.  If DOJ makes an objection, the Court shall hold a hearing on the motion and the burden shall be on PRPD as the moving party to demonstrate that it is in full and effective compliance with this Agreement and has maintained such compliance for at least two consecutive years.

301.    "Full and Effective Compliance" shall be defined to require sustained compliance with all requirements of this Agreement, or sustained and continuing improvement in constitutional policing, as demonstrated pursuant to the Agreement's outcome measures.

/

/

/

/

/

/

/

/

/

/

/

/

/

/

/

For the UNITED STATES OF AMERICA


ERIC H. HOLDER, JR.
Attorney General


TONY WEST
Acting Associate Attorney General


THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

ROY L. AUSTIN, JR.
Deputy Assistant Attorney General
Civil Rights Division

JONATHAN M. SMITH
Chief
LUIS E. SAUCEDO
Acting Deputy Chief
SERGIO PEREZ
ZAZY I. LÓPEZ
Trial Attorneys
Civil Rights Division
Special Litigation Section


July 17, 2013

FOR THE COMMONWEALTH OF PUERTO RICO

_____
ALEJANDRO GARCIA PADILLA
Governor
Commonwealth of Puerto Rico

_____
LUIS SANCHEZ BETANCES
Secretary of Justice
Commonwealth of Puerto Rico

_____
GILBERTO J. MARXUACH TORROS
Counsel for the Puerto Rico Department of Justice

_____
GERARDO DE JESUS ANNONI
Counsel for the Puerto Rico Department of Justice

_____
CARLOS A. DEL VALLE CRUZ
Counsel for the Puerto Rico Department of Justice

In San Juan, Puerto Rico, this July 17, 2013

SO ORDERED, this 17th day of July, 2013.

_____
U.S.D.J.
UNITED STATES DISTRICT JUDGE

103