```
1            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF PUERTO RICO
2

3    :_____:

4      UNITED STATES OF AMERICA,          :

5                      Plaintiff,         :   CIVIL NO: 12-CV-2039

6              vs.                        :

7      COMMONWEALTH OF PUERTO RICO,       :
       et al.,
8                      Defendants.        :
     :_____:
9
             TRANSCRIPT OF STATUS CONFERENCE - TCA APPOINTMENT
10                         HELD BEFORE
                 THE HONORABLE GUSTAVO A. GELPÍ
11     JOSÉ V. TOLEDO U.S. COURTHOUSE, OLD SAN JUAN, PUERTO RICO
           WEDNESDAY, OCTOBER 30, 2013, BEGINNING AT 5:42 P.M.
12   :_____:

13
     A P P E A R A N C E S:
14
                       US DEPARTMENT OF JUSTICE
15                     CIVIL DIVISION
                       BY LUIS E. SAUCEDO, ESQUIRE
16                     300 N. Los Angeles Street
                       Federal Building, Suite 7516
17                     Los Angeles, California 90012
                       For the Plaintiff
18
                       US DEPARTMENT OF JUSTICE
19                     CIVIL RIGHTS DIVISION
                       BY SERGIO PÉREZ, ESQUIRE
20                     601 D St., NW, Suite 5923A
                       Washington, DC 20004
21                     For the Plaintiff

22

23

24

25
```

```
1    APPEARANCES CONTINUED:

2                    DEPARTMENT OF JUSTICE
                     COMMONWEALTH OF PUERTO RICO
3                    BY GERARDO A. De-JESUS-ANNONI, ESQUIRE
                     P.O. Box 9020192
4                    San Juan, Puerto Rico 00902
                     For Commonwealth of Puerto Rico and
5                    Puerto Rico Police Department

6    ALSO PRESENT:
                     Ada I. López, Courtroom Deputy Clerk
7                    Gilberto Marxuach
                     Superintendent Héctor Pesquera
8                    Attorney General Luis Sánchez-Betances

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURTROOM DEPUTY:  All rise.

2          (The Court enters the room.)

3          THE COURT:  Please be seated and good

4   afternoon to everybody.  Let's call the case for

5   status conference.

6          THE COURTROOM DEPUTY:  Calling civil case

7   12-02039.  United States of America versus

8   Commonwealth of Puerto Rico, Puerto Rico Police

9   Department for status conference.

10         On behalf of the government, Attorneys Luis

11  E. Saucedo, Sergio Pérez.  On behalf of the

12  defendant -- of the plaintiff, Attorneys Gerardo

13  De-Jesus-Annoni, Luis Sánchez.

14         THE COURT:  Betances.  And I think we called

15  everybody.  Gilberto Marxuach.  And I will also note

16  that the police superintendent of Puerto Rico Héctor

17  Pesquera is here, as well as U.S. Marshal Juan Mattos

18  from the District of New Jersey who right now is

19  visiting us, but I will explain for the record later.

20         Now, I just want to note for the record that

21  the government did file a motion this afternoon

22  advising that the United States and the Commonwealth

23  of Puerto Rico had selected the technical compliance

24  advisor and that was U.S. Marshal Juan Mattos from

25  the District of New Jersey.  And I will note Mattos

1    in this case is spelled with two Ts, even though he

2    just explained to me that that was a mistake.  When

3    his dad moved to the U.S. mainland, he wrote the name

4    with two Ts and that's why he was born with the two

5    Ts.

6            Now, I know I'm wearing a bow tie and I just

7    want to note for the record it's -- I know

8    Mr. Sánchez-Betances, the attorney general, wears a

9    bow tie; so because he was coming here I did wear a

10   bow tie.  And Judge Casellas also wears a bow tie.

11   It took me about 30 or 40 minutes to tie it this

12   morning using YouTube but finally I got it straight

13   by myself.  So, I think I will be wearing more bow

14   ties.

15           So, having put that little humor aside, I

16   just want to note that again we met for just half

17   hour in chambers.  I met Mr. Mattos.  The parties --

18   I saw his resumé earlier today.  I am going to

19   approve his selection by the parties; there's no

20   reason why I should not approve that selection.  I

21   think he will be an excellent technical compliance

22   advisor.  I think his resumé speaks for itself and

23   it's made part of the record.  And I do note that he

24   has experience at the New Jersey state level.  He

25   also worked when the State of New Jersey was

1    undergoing a similar process of police reform and he

2    worked in that reform.  He was no longer part of the

3    State Police, he was working as part of the reform

4    team; so, he does have that experience.  And I will

5    note, New Jersey is the only other U.S. jurisdiction

6    or the only state that has a statewide police reform.

7    The Virgin Islands had one but obviously the

8    population of the Virgin Islands doesn't compare to

9    that of Puerto Rico.  It's probably -- it's a minute

10   police force.  So, not that the U.S. Virgin Islands

11   doesn't count but we need a bigger jurisdiction to

12   compare, and I think Marshal Mattos has that

13   experience.

14          So, having said that, I would like to hear

15   from the attorneys on behalf of the United States

16   first, you're the plaintiffs, and then on behalf of

17   the Commonwealth of Puerto Rico.

18          I will note also, I know the members of the

19   media are here and they would all love to interview

20   Mr. Mattos, Marshal Mattos, unfortunately Marshall

21   Mattos is following instructions from the marshal

22   service from his supervisor; and until he no longer

23   works for the marshal service, he is not allowed to

24   give any statements to anyone because he's still a

25   U.S. marshal.  So on his behalf, and I wish he could

1    today, but I know the press would like to interview

2    him, you can see him, and he'll be back here after

3    December, God willing, and once he no longer works

4    for the U.S. marshal service, he's going to be the

5    technical compliance advisor, the Court has no

6    problem.  And he has informed me that he will be glad

7    to meet with all the members of the media personally

8    in a more engaging fashion.

9            So having said that, let me hear from

10   counsel for the government and then I'll hear from

11   counsel for the Commonwealth.

12           MR. SAUCEDO:  Yes, Your Honor.  Luis Saucedo

13   for the United States.  Your Honor, as you mentioned,

14   we were advised by the Department of Justice that

15   Marshal Mattos would be restricted from speaking to

16   the press before he officially separates from the

17   Department of Justice.  We, working within those

18   parameters, thought that it was important and

19   critical for Marshal Mattos to begin to meet some of

20   the stakeholders that have worked to bring reform

21   issues to light, to provide information as part of

22   our investigation, and who stand to assist and to

23   work with us in helping reform the police department.

24           In that capacity, Your Honor, we have been

25   able to meet this week with various civil rights

1   groups, including the ACLU.  We were able to meet

2   with -- we have scheduled to meet with police

3   affinity groups this week.  We have also met with

4   representatives of the reform unit at the police

5   department.  So, Your Honor, we have taken advantage

6   of this week and Mr. Marshal Mattos' visit this week

7   to be able to meet and begin to introduce him to the

8   stakeholders.

9        And we look forward to working with them and

10   to continue to work with Marshal Mattos in his

11   capacity as the TCA who will be assisting the parties

12   in bringing about the much needed reforms that we've

13   worked hard to negotiate and that we believe will

14   bring long-lasting and sustainable reform to the

15   police department of Puerto Rico.

16        THE COURT:  Okay.  Thank you.  And I just

17   want to note also for the record, as part of the

18   agreement reached by the parties, the TCA -- and we

19   had input from the ACLU.  The TCA will be meeting not

20   only with the ACLU but with other community groups

21   and other civil rights groups.  So I know nobody's

22   representing these groups right now at this point,

23   but obviously once formally in his position, he will

24   be meeting and receiving input from those various

25   groups; and I know that's very valuable and that will

1    be part of this.

2           And that group also includes the media at

3    some point not only for interviews but also I know

4    the police reform will ultimately benefit how the

5    media can cover a lot of things because I know in the

6    past there's been some issues at some point.  So,

7    obviously that's going to be very beneficial to

8    everybody.

9           Let me then hear from Attorney General

10   Sánchez-Betances or co-counsel or --

11          ATTORNEY GENERAL SÁNCHEZ-BETANCES:  May it

12   please the Court, Your Honor.

13          THE COURT:  You don't get to come here too

14   much so take all the time you want because I know you

15   made your living in a courtroom and you loved it.

16          ATTORNEY GENERAL SÁNCHEZ-BETANCES:  I

17   appreciate that very much, Your Honor.

18          Today is another important day in the

19   process of the reform of the police department.  We

20   worked hard, very hard, from the beginning of our

21   administration in January to complete the

22   negotiations on the agreement for the reform of the

23   police department -- a matter that had been

24   successfully agreed by Brother Counsel Gilberto

25   Marxuach prior to our joining the government and he

1    has continued doing it.  This is the second step.

2    The first step was the conclusion of the negotiation

3    and the final of the agreement.  Mr. Marxuach worked

4    very hard in that matter also together with Brother

5    Counsel Gerardo De-Jesus.  And now is the second step

6    which is the selection of the technical compliance

7    advisor.

8            I'm very proud of having submit the name of

9    Mr. Mattos as the ideal candidate of this.

10   Mr. Mattos is, we can say, a success story of a

11   Puerto Rican in the United States.  He worked through

12   the ranks starting as a State Trooper in New Jersey

13   State Police, and he became the second highest office

14   in that police department.  The first Hispanic to

15   attain that recognition or that achievement.  After

16   having terminated his work as -- in the police

17   department almost 40 years, he was appointed by

18   President Obama as U.S. marshal for the district of

19   New Jersey, the post he occupies now.

20           We are certainly looking forward to have his

21   experience and know-how and cultural attachment to

22   our dear island.  I must say that he has expressed

23   many times that he's Boricua and he feels very proud

24   of being a Boricua --

25           THE COURT:  As they say, "*Yo soy de aquí*

1 *como el coquí.*"

2    ATTORNEY GENERAL SÁNCHEZ-BETANCES:  Exactly.

3    THE COURT:  I'm sure he would say that if

4 they would allow him to say it.

5    ATTORNEY GENERAL SÁNCHEZ-BETANCES:  In that

6 sense, Your Honor, we think the parameters of the

7 agreement we have chosen an excellent candidate that

8 will help us achieve all the goals that the agreement

9 has stated in terms of having a professionalized

10 police department and complying with all the

11 constitutional requirements and the laws applicable

12 to it.

13    I must also recognize, Your Honor, the

14 contributions of Mr. Héctor Pesquera, our

15 superintendent of police, who has worked also very

16 hard in this process and has made all his efforts to

17 achieve this important treasure in the development of

18 a professional police department in Puerto Rico.  We

19 are very grateful that he has worked in spite of

20 continuing with us this administration -- he was

21 appointed by the previous administration.  So we are

22 very grateful also of his work in joining and making

23 this a success, as we understand it is.

24    As the Court has noted in its order, we are

25 going to have the benefit of his -- Mr. Mattos,

1    Marshal Mattos, as a TCA upon his termination with

2    the U.S. marshal services.  And at that point or

3    before that time, as the order states, the terms and

4    conditions of his engagement, including the

5    compensation terms and everything will be duly then

6    submitted at that time; because at this stage we have

7    not -- and this is something I want to note for the

8    record -- and this is one of the characteristics of

9    Mr. Mattos.  Although we have spoken with him on his

10   duties and the role as the TCA, we have not, neither

11   him or us or the Federal Government, has spoken at

12   all on his financial compensation.  This is a matter

13   that --

14          THE COURT:  And obviously it was waiting my

15   approval of your selection so then you can go to Step

16   B.

17          ATTORNEY GENERAL SÁNCHEZ-BETANCES:  Of

18   course.  So, for the disbelief of some people on this

19   island, we have not even spoken about that matter

20   which is, I think, a highlight characteristics of

21   Mr. Mattos.  He has always been a public servant and

22   he will continue to be a public servant as a TCA.

23   And I'm sure that we will reach an agreement

24   satisfactory to every party.  We have parameters from

25   other jurisdictions where monitors have been

1    retained.  We have had monitors here in Puerto Rico

2    in other cases also.  So, although he's a technical

3    compliance advisor and not a monitor and much less a

4    trustee or anything of that sort, we have the

5    parameters of which to fix the compensation and the

6    terms.  This is not the first time that he has --

7            THE COURT:  Well, he worked in a similar

8    case, but he was in New Jersey when it happened.  So

9    everybody can get some ideas.

10           ATTORNEY GENERAL SÁNCHEZ-BETANCES:  He has

11   the experience because he has worked as a police

12   officer through two consent decrees.  And as I

13   explained the other time, he was not part of the

14   problem; he was part of the solution.  That's why we

15   chose to select him as the TCA in this case.

16           So, we are looking forward definitely to

17   continue with the reform of the police department --

18   a thing that has already been started under the

19   leadership of Mr. Pesquera -- and to begin on this

20   new era, if we wish to call it that way, as to a

21   professional and constitutionally solid police

22   department in Puerto Rico which will definitely be

23   the best arm to fight against crime in our beloved

24   island.

25           Thank you, Your Honor.

1            THE COURT:  Thank you.

2            I just also want to note -- add to what

3      Attorney Sánchez-Betances has stated.  Mr. Mattos, as

4      U.S. marshal, he was confirmed by the senate of the

5      United States.  Not only presidential nominee, he's

6      an appointee, but he's also been confirmed by the

7      senate.  And those senate confirmations, having gone

8      through one of those, are very tedious.  He underwent

9      a top secret, you know, that type of level background

10     check.  So we're not talking about somebody who we

11     have -- you know, his life is an open book.  And he

12     went through the senate, through the FBI background

13     check, he's been thoroughly investigated.  And

14     obviously that gives, I think, more confidence to the

15     whole process.

16            Also, I do want to note -- and this is more

17     for the members of the media -- but I did speak to

18     him, he's fully bilingual.  He knows about Puerto

19     Rico even though he lives in the U.S. mainland.  He

20     has a lot of contact with his family and with the

21     folks in Puerto Rico; so, he does know the

22     idiosyncrasies of the island.  And I think that's

23     something that's an asset.  When I had spoken

24     previously with counsel for the parties I had always

25     stated, you know, I'm sure there's a hundred people

1    out there who could qualify in principle but if we

2    bring somebody from Nebraska who doesn't speak

3    Spanish, who's never been in Puerto Rico, you know,

4    can't communicate directly with the people -- again,

5    I'm not saying there was anybody from Nebraska but

6    it's just an example -- it would be very hard to

7    start, you know, this reform moving along.  So, I

8    think this is going to be an asset.  I think the

9    parties have found a perfect candidate.  And, again,

10   this has been a candidate -- it's not the United

11   States who said, this is the candidate, it's not by

12   Puerto Rico, it's a mutually agreeable candidate.

13           Mr. Marxuach or --

14           ATTORNEY GENERAL SÁNCHEZ-BETANCES:  May it

15   please the Court, Your Honor.

16           THE COURT:  Yes.

17           ATTORNEY GENERAL SÁNCHEZ-BETANCES:  Just one

18   thing that, I think, it should be stated for the

19   record.  The selection of Mr. Mattos is the product

20   of agreeing by both parties.  This is not --

21           THE COURT:  Mutual consent.

22           ATTORNEY GENERAL SÁNCHEZ-BETANCES:  Yes.

23   And this is not any kind of imposition.  Quite the

24   contrary.  I must state that the -- a proposal to

25   have him as the TCA came from me.  It is the

1   candidate that was proposed by the Commonwealth of

2   Puerto Rico.  We have reviewed -- there were many

3   names discussed and --

4                THE COURT:  Okay.  So that's also

5   interesting to know that initially you were given the

6   name and you proposed it and then the parties were

7   able to --

8                ATTORNEY GENERAL SÁNCHEZ-BETANCES:  That's

9   correct, Your Honor.  This is something that came --

10               THE COURT:  Even though he works as a U.S.

11   marshal, it wasn't the United States Government who

12   initially came up with him --

13               ATTORNEY GENERAL SÁNCHEZ-BETANCES:  Exactly.

14               THE COURT:  -- it was the Puerto Rico

15   government who identified him.

16               ATTORNEY GENERAL SÁNCHEZ-BETANCES:  This is

17   not something that came or was imposed or recommended

18   by the plaintiffs.  This is an appointment or a

19   recommendation made particularly by me.  After having

20   viewed different candidates and having discussed

21   other candidates, we proposed as the TCA to the

22   government, to the U.S. government, and they went

23   through their own process.  Then last week, and only

24   last week, we agreed on that.  I went to Washington

25   to meet and interview with the whole -- all the

1    pertinent persons.

2            And immediately after having reached that

3    understanding, we mad a conference call with Your

4    Honor and to let him know of our selection, then you

5    issued the minutes an order.  And we were

6    particularly interested that the people of Puerto

7    Rico would know as soon as possible the appointment

8    of the selection of Mr. Mattos.

9            So, that's why the process began this week

10   immediately.  I mean, we're talking on Wednesday it

11   was when the conference call was made and the

12   arrangement for flying -- he just flew in yesterday.

13   We met with the officers at the Fortaleza, the

14   interim governor, he has met with the stakeholders

15   and different community groups.  He has met with the

16   police superintendent and the officers in the police

17   department.  So, this has happened very fast.

18           And I understand the worries or the queries

19   of the people in Puerto Rico, but this -- the process

20   that is being followed at this stage is meeting and

21   letting the judge and the Court know of his selection

22   so that it will be approved.  And then we'll take it

23   from there, and then he can make his arrangement as

24   resigning from his post and assuming the leadership

25   of the TCA.  And then, we'll engage him and contract

1   with him pursuant to the agreement.

2        THE COURT:  Exactly.  And let me just ask

3   you.  I guess this may be a question that is obvious,

4   but I assume that our governor is aware of Mr. Mattos

5   and, even though he has not met him, you fully

6   informed him and he's in full agreement with all of

7   this; correct?

8        ATTORNEY GENERAL SÁNCHEZ-BETANCES:  Yes,

9   Your Honor.

10        THE COURT:  I just want to make that clear.

11   And I'm sure we all know the answer but I just wanted

12   to --

13        ATTORNEY GENERAL SÁNCHEZ-BETANCES:

14   Yesterday he met the interim governor and the chief

15   of staff and the superintendent.  So -- well, because

16   of the situation of his duties as U.S. marshal, we

17   couldn't -- he was not able to meet with the press

18   *pero* obviously once this process has concluded he

19   will be an open book, as all of us are.

20        THE COURT:  Okay.  Mr. Marxuach or

21   Mr. De-Jesus anything else?

22        MR. De-JESUS-ANNONI:  Nothing to add, Your

23   Honor.  Thank you.

24        THE COURT:  Mr. Marxuach?

25        MR. MARXUACH:  No, Your Honor.

1          THE COURT:  So I've issued an order

2    approving the selection of the U.S. marshall.  I will

3    read it for the record.  I have some copies here,

4    which I know the members of the media here.  As a

5    matter of fact, let me pass it along, have my law

6    clerk do it -- or Mr. Colón will do it.  There's some

7    copies there, if anybody needs an extra copy.  So the

8    order reads as follows:

9          "United States Marshal Juan Mattos" -- two

10   Ts -- "has been jointly selected by the Governments

11   of the Commonwealth of Puerto Rico and the United

12   States to act as the Technical Compliance Advisor,

13   the TCA, as per the terms of the agreement approved

14   by the Court on July 17, 2013."

15         And that's at Docket No. 60.  There was an

16   order I issued before, I made a mistake, I put

17   August 17th.  There's an amended order, that's why it

18   got amended, it was just that typo.

19         "Accordingly, Marshal Mattos' selection is

20   hereby approved by the Court.  Upon his resignation

21   as U.S. Marshal, his appointment shall become

22   effective on or after December 1, 2013."

23         And I say "on or after," I assume he's going

24   to resign before that but if for any reason if

25   anything happens that he shall have a to remain as

1    marshal two weeks, a month, then once he resigns, the

2    appointment will be effective.

3            Now, "The terms and conditions of his

4    engagement as TCA shall be determined in accordance

5    with the Agreement."  Which is again at Docket

6    No. 60.

7            Now, and this is also in the order, "Due to

8    the high public importance of the instant matter, the

9    Court hereby notes the following:  The TCA responds

10    to the Court and his specific role is to assist and

11    recommend the Commonwealth of Puerto Rico and the

12    United States how to effectively comply with the

13    terms of the Sustainable Reform of the Puerto Rico

14    Police Department Agreement.

15            "The TCA," and I emphasize, "is not the

16    chief nor supervisor of the Commonwealth of Puerto

17    Rico."

18            Mr. Pesquera, you're aware of that; correct?

19            SUPERINTENDENT PESQUERA:  Yes, sir.

20            THE COURT:  "And the TCA's role is not to

21    manage the day-to-day affairs of the Commonwealth of

22    Puerto Rico.  Said role exclusively lies within the

23    current superintendent Héctor Pesquera who responds

24    only to the governor of Puerto Rico."

25            Mr. Pesquera, you're in agreement with that

1    as well; correct?

2              SUPERINTENDENT PESQUERA:  Yes, sir.

3              THE COURT:  Okay.  Now, the T -- and I want

4    to say this because it's important so nobody's

5    confused.  This is -- Marshal Mattos will not be

6    micromanaging the affairs of the Police of Puerto

7    Rico.  If there's a police operative, if there's

8    anything, that's outside of the parameters of the

9    Reform; he will not be involved.  He's not going to

10   be there on a day-to-day basis telling Mr. Pesquera,

11   You've got to do this or you've got to do that.  No.

12   That is Mr. Pesquera's sole and exclusive

13   prerogative, and I want that to be very clear.

14             Now, "The TCA, thus, in no way will

15   interfere, nor intervene, with the constitutionally

16   constituted Government of Puerto Rico and its

17   nondelegable obligation of promoting the peace,

18   safety and public welfare of the populace."

19             Now, I also want to recall that in this case

20   the role of the Court, my role as a judge, "...is not

21   the traditional one of adjudicating and resolving

22   disputes.  Rather," the Court -- I'm the judge

23   here -- along with the TCA are going to "...act as

24   facilitators for the Commonwealth and the United

25   States Government to work hand in hand in reforming

1    Puerto Rico's police department."  And that is the

2    scope of the order.

3            So, that being said, I have nothing else to

4    add.  I know it's been a very, very busy week for the

5    Attorney General here and I know also for the

6    governor and the Commonwealth of Puerto Rico.  On

7    Monday and Tuesday you had the milk case before Judge

8    Domínguez which hopefully has been resolved as well

9    and, you know, obviously today I'm approving the

10   selection of the TCA and the week is not over yet.

11   So, I hope to maybe by tomorrow or Friday hear some

12   other good news.

13           I worked at the Justice Department for four

14   years.  I have to say as an attorney it was the best

15   four years I spent.  So I'm always proud and happy

16   when the Department of Justice settles cases or, you

17   know, brings good news to the public, because I have

18   a lot of faith in that agency and its secretary.

19           Having said that, court is adjourned.  And,

20   again, unfortunately Mr. Mattos cannot meet with the

21   press at this time.  He will do so once he's here

22   officially as the TCA, and I guarantee all the

23   members of the media, you will have an opportunity to

24   meet him, to know about his background, to interview

25   him throughout the years.  I know he will be here.

1   This is not a six-month thing; this is a -- it's like

2   at least like Star Trek, it's a five-year mission.

3   This is probably, you know, hopefully less than ten

4   years, more than five.  But you're going to see a lot

5   of him and you'll have time to meet him.

6           And I know Mr. Pesquera and Attorney

7   Sánchez-Betances will be here so you can ask them all

8   the questions.  And I'll be glad if any particular

9   members of the media wants to ask me anything.  I

10  normally don't do this, but since this is a unique

11  case, it's not being litigated.  I will also be glad

12  for a few minutes to meet with anybody, should you

13  want to meet with me.

14          Having, said that court is adjourned, and

15  you have the copies of the orders.  Thank you very

16  much.  Court is adjourned.

17          (Status Conference concluded at 6:06 p.m.)

18                          ---

19

20

21

22

23

24

25

1    UNITED STATES DISTRICT COURT    )

2              OF                    )ss.

3       PUERTO RICO                  )

4

5

6

7                         CERTIFICATE

8

9

10          I, EVILYS E. BRATHWAITE, hereby certify that

11   the proceedings and evidence are contained fully and

12   accurately, to the best of my ability, in the notes

13   recorded stenographically by me, at the status

14   conference in the above matter; and that the

15   foregoing is a true and accurate transcript of the

16   same.

17

18                         /s/ Evilys E. Brathwaite

19                    EVILYS E. BRATHWAITE, RPR
                     Official Court Reporter
20                    United States District Court
                     Federal Building, Room 200
21                    San Juan, Puerto Rico 00918
                     787-772-3377
22

23

24

25