Appendix I

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

--------------------------

No. 13-2079/No. 13-2306

## UNITED STATES

Plaintiff-Appellee

### JORGE DIAZ-CASTRO

Movant-Appellant

v.

## COMMONWEALTH OF PUERTO RICO; PUERTO RICO POLICE DEPARTMENT

Defendants-Appellees

--------------------------

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION, PENDING *CERTIORARI*, AND/OR
## AN EMERGENCY TEMPORARY RESTRAINING ORDER (T.R.O.)

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**I.     INTRODUCTION:**

1.      I, Jorge Díaz Castro, as a concerned lobbyist for Defendant PRPD, as proposed

Intervening Defendant in case No. 3:12-cv-2039 at the Honorable United States District

Court for Puerto Rico; and as PRO SE Appellant in the instant appeal(s); respectfully

move that this Court grant such preliminary declaratory and injunctive relief as is

requested in the "Motion for Preliminary Injunction, Pending *Certiorai*, and/or an

Emergency Temporary Restraining Order (T.R.O.)," which is being filed simultaneously

with the instant memorandum of law; with an accompanying proposed order.  This

motion may be seen as a reconsideration of a previous motion for preliminary injunction.

Continued...

I - 1

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306**
Page No. 2.

## II.    FACTUAL, STATUTORY AND PROCEDURAL BACKGROUND OF THE CASE:

2.      The Honorable U.S. District Court conditionally dismissed case No. 3:12-cv-2039

with a Judgment on July 18th, 2013 (Docket No. 61).  Movant filed a "Notice of Motion

and Motion for Leave to Intervene Under FRCP No. 24," with an accompanying

"Memorandum of Law" on August 2nd, 2013 (Docket No. 63), which was summarily

denied.  Movant would like to incorporate from the memorandum paragraphs No. 1

through 30.  (The motion and memorandum of law are included as exhibits.)

3.      Movant filed a "Motion for Leave to Appeal Denial of Motion for Leave to

Intervene *In Forma Pauperis*" on August 12th, 2013 (Docket No. 68), granted on August

13th, 2013 (Docket No. 69); and which was interpreted as a Notice of Appeal.

Subsequently, U.S.C.A. case No. 13-2079 was generated on September 3rd, 2013

(Docket No. 73).

4.      Movant filed a "Notice of Appeal" on October 7th, 2013 (Docket No. 76); U.S.C.A.

case No. 13-2306 was subsequently generated on October 21st, 2013 (Docket No. 80).

5.      Movant filed a "Motion for Preliminary Declaratory and Injunctive Relief, *pendente*

*lite*," with an accompanying memorandum of law in support thereof, on December 2nd,

2013 (Docket No. 99), at the Honorable U.S. District Court for Puerto Rico, which was

summarily denied on December 5th, 2013 (Docket No. 100), as required by Fed. R. App.

P. No. 8(a)(2)(A)(ii).  (The motion and accompanying memorandum were filed as

exhibits to my "Notice of Motion Filed …" on December 6th, 2013.)

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 3.

6.      Movant filed a "Motion for Preliminary Injunction, *pendente lite*, and/or an

Emergency Temporary Restraining Order (T.R.O.)," which on December 9th, 2013, and

amended/corrected the next day; and a "Motion Requesting a Hearing for a Preliminary

Injunction, *pendente lite*," filed on December 11, 2013. Movant was not able to file the

corresponding memorandum of law in support thereof before Judgment was entered in

the instant appeal(s) on January 17th,2014 by a Panel composed of the Honorable Chief

Judge Lynch, and the Honorable Circuit Judges Torruella and Kayatta.

7.      Movant filed an "En Banc Petition for a Writ of *Mandamus*" on February 2th,

2014; and an "Emergency Supplementary Motion to Accompany En Banc Petition for a

Writ of *Mandamus*; to Request the Right to Be Heard in Oral Argument" on February

28th, 2014. Movant also filed a "Petition for Rehearing, and/or Rehearing En Banc" on

March 3rd, 2014; according to Fed. R. App. P. No. 40(a)(1)(A), within 45 (forty-five) days

after entry of Judgment; since the United States is a party.

8.      An Order denying rehearing, the petition for a writ of *mandamus*, and the motion

for oral argument, was issued on March 12th, 2014 by the Honorable First Circuit Court

of Appeals. Movant Filed a "Motion for Stay of Mandate" on March 19th, 2014, within

seven (7) days of the Order. Movant had also filed a "Motion Requesting Clarification of

Judgment" on March 11th, 2013. The corresponding memoranda of law were filed on

April 4th, 2014; after an extension of term granted by the Honorable Clerk of the First

Circuit Court of Appeals, Ms. Margaret Carter. The motions have not yet been decided.

Continued...

I-3

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 4.

9.      Movant´s economic situation has not changed substantially; and is one of the

reasons Movant is seeking an Injunction without posting a bond.  Movant intends to file

a Petition of *Certiorari* to the Honorable United States Supreme Court.

10.     This motion is made on the grounds that:  (a) my appeal will be considered

favorably, upon its merits; (b) I, and numerous PRPD police officers, will suffer

irreparable harm if this Preliminary Injunction/Emergency T.R.O. is denied; (c) the effect

upon plaintiff USDOJ and/or co-defendants Commonwealth of Puerto Rico and PRPD

will be minimal, if the Preliminary Injunction/Emergency T.R.O. is granted; and is greatly

outweighed by the harm to be suffered by me, and numerous PRPD police officers, if

this Preliminary Injunction/Emergency T.R.O. is denied; (d) this Preliminary Injunction/

Emergency T.R.O. will serve the public interest; and (e) there is no other adequate

remedy at law that is readily available.

11.     The primary "… purpose of a temporary restraining order is to preserve an

existing situation in status quo until the court has an opportunity to pass upon the merits

of the demand for a preliminary injunction." <u>Pan American World Airways, Inc. v. Flight

Eng'rs' Int'l Assoc.</u>, 306 F.2d 840, 842 (2d Cir. 1962).

12.     Although Fed. R. Civ. P. 65(b) sets a 10-day limit on the life of a TRO issued ex

parte, *if notice is duly given, a TRO may be extended until such time as an evidentiary*

*hearing may be held to determine if a preliminary injunction may be issued; and this*

*would be the relief we would be seeking immediately, upon filing of this memorandum*.

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
No. 13-2079/No. 13-2306
Page No. 5.

13.     The specific relief being sought is to suspend the implementation of the

Settlement Agreement (Docket No. 60), and naming a Technical Compliance Advisor

(T.C.A.); *pendente lite*, until such time as my appeal(s) is (are) resolved.

14.     Because granting this Preliminary Injunction/Emergency Temporary Restraining

Order (T.R.O.) will incur no expenses for either plaintiff USDOJ and/or co-defendants

Commonwealth of Puerto Rico and the PRPD; and because *in forma pauperis* status

was granted at the U.S. District Court for Puerto Rico; no bond should be required, as

would otherwise be; as specified in FRCP 65(c).

15.     Rule 56.3(b) of the Rules of Civil Procedure for the General Court of Justice of

the Commonwealth of Puerto Rico states that preliminary relief may be granted without

the posting of a bond in cases where the petitioner has been certified *in forma pauperis*

(an indigent litigant); and upon judgment of the court, judgment may turn academic if

preliminary relief is not granted.  Although there is no equivalent rule for preliminary

relief in the FRCP, this rule may be construed as applying to preliminary declaratory and

injunctive relief, as specified in FRCP 65.

16.     Rule 57.4 of the Rules of Civil Procedure for the General Court of Justice of the

Commonwealth of Puerto Rico states that a functionary of the Commonwealth of Puerto

Rico, acting in his/her official capacity, is not required to post a bond when requesting a

preliminary injunction/temporary restraining order (T.R.O.).  There is an equivalent

specification of this exemption in FRCP 65(c) for officers of the United States.

Continued…



IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 6.

17.     Although Movant is not officially employed by the Commonwealth of Puerto Rico

(nor otherwise), Movant is attempting to vindicate the rights of PRPD police officers

under the judicial doctrine of *Jus Tertii*, as it applies in the Federal jurisdiction.  Although

a preliminary injunction, and/or an emergency temporary restraining order (T.R.O.)

would protect both Movant and numerous PRPD police officers; in terms of its economic

effect, PRPD police officers would be substantially more protected than Movant.

**III.     STANDARDS FOR GRANTING A PRELINARY INJUNCTION AND/OR T.R.O.:**

18.     The primary purpose for granting a preliminary injunction motion is "to preserve

the relative positions of the parties until a trial on the merits can be held."  *See* Brown v.

Chote, 411 U.S. 452, 456 (1973).  No trial on the merits has taken place; neither at the

level of the Honourable U.S. District Court for Puerto Rico; nor was Movant granted the

opportunity to file an Appellate Brief at the Honorable First Circuit Court of Appeals.

19.     A preliminary injunction is often granted to preserve the *status quo*; to preserve a

court's ability to grant a meaningful decision; and to minimize the risk of error.  Lea B.

Vaughn, *A Need for Clarity: Toward a New Standard for Preliminary Injunction*, 68 OR.

L. REV. 839, n. 15, at 849 (1989) (discussing the various prevailing standards).

20.     In Brown v. Chote, *Id.* at 456, the United States Supreme Court provided two

factors that a district court should consider in determining whether to issue a preliminary

injunction: (1) the movant's "possibilities of success on the merits," and (2) "the

possibility that irreparable injury would have resulted, absent interlocutory relief." *Id.*

Continued…

I-6

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No.13-2306**
Page No. 7.

21.     When the issues involve the government, as in the instant appeal, the Court has

also considered the public interest.  Weinberger v. Romero-Barcelo, 456 U.S. 305, 312-

13 (1982); *see also* United States v. Oakland Cannabis Buyers' Coop., 532 U.S. 483,

496 (2001).  More to the point, the Honorable United States Supreme Court has also

considered the interests of non-parties to the litigation in granting a Preliminary

Injunction, when the public interest is at stake:

> …the court may in the public interest withhold relief until a final
> determination of the rights of the parties, though the postponement may be
> burdensome to the plaintiff. Yakus v. United States, 321 U.S. 414, 440 (1944)

The Court has been consistent in considering "public consequences" in cases involving

the government.  Weinberger v. Romero-Barcelo, *Id.* at 312.

22.     At the level of the Court of Appeals, the standard for review of a Preliminary

Injunction at the level of the District Court is abuse of discretion.  Thornburg v. Am. Coll.

of Obstetricians & Gynecologists, 476 U.S. 747, 757 (1986), *overruled on other grounds*

*by* Planned Parenthood v. Casey, 505 U.S. 833, 870 (1992).  Different circuits have

different standards for granting a Preliminary Injunction; this distinction has been

considered by the U.S. Supreme Court when reviewing a District Court's decision.  *See*

Doran v. Salem Inn, Inc., 422 U.S. 922, 932 (1975).

23.     The Honorable First Circuit Court of Appeals traditionally utilizes a four part test,

in which each part must be considered in deciding whether to grant or deny a request

for preliminary injunctive relief; but with emphasis on the issue of success on the merits.

Continued…



IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 8.

24.    As concerns the instant request:

    The considerations are: (1) whether the applicant has made a strong
    showing of success on the merits; (2) whether the applicant will be
    irreparably harmed absent injunctive relief; (3) whether issuance of the
    stay will injure other parties; and (4) where the public interest lies. Hilton v.
    Braunskill, 481 U.S. 770, 776-77, 95 L. Ed. 2d 724, 107 S. Ct. 2113 (1987)
    (quoted in Acevedo-Garcia v. Vera-Monroig, 296 F. 3d 13, n. 3 at 16 (1st
    Cir. 2002)).

In particular, "[t]he [*sine qua non*] of this four part inquiry is likelihood of success on the

merits: if the moving party cannot demonstrate that he is likely to succeed in his quest,

the remaining factors become matters of idle curiosity." New Comm. Wireless Servs.,

Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002). Thus, the issue of success on the

merits is usually given paramount importance in granting the request at the Honourable

First Circuit; and when a showing of severe irreparable harm is made, the request may

traditionally be denied if success on the merits cannot be ascertained.

25.    However, we should remember that in a government case, the public interest

should also be strongly considered, along with success on the merits.  Weinberger v.

Romero-Barcelo, *supra.* at 312.  Thus, in the instant appeal, a deficiency in considering

the likelihood of success on the merits may be outweighed by considering the public

interest; and, as seen in paragraph No. 16, above, a request may be made successfully

by a non-party to the original litigation; but should not detract from considering the

irreparable harm which would befall me and numerous PRPD police officers if the

request is denied; which, in economic terms, is pre-eminent in the instant request.

Continued…



IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 9.

26.      An additional consideration we have not mentioned yet in granting a Preliminary

Injunction Pending *Certiorai* is whether Movant has another adequate remedy at law:

> [T]he bases for injunctive relief are irreparable injury and inadequacy of
> legal remedies.  In each case, a court must balance the competing claims
> of injury and must consider the effect on each party of the granting or
> withholding of the requested relief.  Amoco Production Co. v. Village of
> Gambell, Alaska, 480 U.S. 531, 542 (1987).

This factor will be particularly important when considering, later on, why PRPD police

officers were not given adequate opportunity to object to the Settlement Agreement

(Docket No. 57).  In addition, even if the Petition for *Certiorari* were to be scheduled

expeditiously, PRPD police officers, and the public at large, would suffer irreparable

harm for which no adequate remedy at law exists.

IV.      REVIEW OF THE STANDARDS:

a.       Intervenor's "Motion for Leave to Intervene" will succeed, upon its merits.

27.      The purpose of FRCP 24(a)(2) is to avoid a rash of lawsuits on related questions

"by involving as many apparently concerned persons as is compatible with efficiency

and due process."  Coalition of Arizona/New Mexico Counties v. Department of the

Interior, 100 F.3d 837, 841 (10th Circuit 1996) (citing decisions by three Courts of

Appeals). Therefore, "[t]he need to settle claims among a disparate group of affected

persons militates in favor of intervention."  Jansen v. City of Cincinnati, 904 F.2d 336,

340 (6th Circuit 1990).  In light of FRCP 24(a)(2) and its goals, courts have granted

motions to intervene as of right under this rule when the following four criteria are met:

Continued…

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 10.

(a) the motion is timely; (b) the applicant has a significant legal interest in the subject matter of the pending litigation; (c) the disposition of the action may impair or impede the applicant's ability to protect their interest; and (c) the existing parties cannot adequately protect the applicant's interests.

28.     Movant filed a "Notice of Motion and Motion for Leave to Intervene Under FRCP No. 24," with an accompanying "Memorandum of Law in Support of Motion to Intervene" on August 2nd, 2013 (Docket No. 63), which was summarily denied.  Movant would like to incorporate from the memorandum Section III-A, which discusses the merits of the request to intervene as of right.  (The motion and memorandum of law are hereby included as exhibits.)

29.     In incorporating the argument for granting intervention as of right, discussed in Section III-A (*see above*) Movant would like to stress the element of *timeliness* in making the request.  Although I did not file a motion to intervene until *after* Judgment, *this delay will not injure or place an undue burden upon the original parties to the case; the most important factor in determining timeliness*.  See McDonald v. E.J. Lavino Co., 430 F.2d 1065, 1073 (5th Cir. 1970) ("In fact, this may well be the *only* significant consideration when the proposed intervenor seeks intervention of right.").

30.     In addition to meeting the requirements for intervention as of right, Movant meets those establishing a basis for a discretionary grant of permissive intervention. Rule 24(b)(1) provides that a court may grant intervention if the applicant's claim: Continued...



IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 11.

"(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action have a question of law or fact in common." FRCP 24(b)(1).  In addition, in utilizing its discretion, a court should consider whether intervention will "unduly delay or prejudice the adjudication of the rights of the original parties."  FRCP 24(b)(3); <u>Purnell v. Akron</u>, 925 F.2d 941, 950, 951 (6th Cir. 1991).

31.     Movant filed a "Notice of Motion and Motion for Leave to Intervene Under FRCP No. 24," with an accompanying "Memorandum of Law in Support of Motion to Intervene" on August 2nd, 2013 (Docket No. 63), which was summarily denied.  Movant would like to incorporate from the memorandum Section III-B, which discusses the merits of the request to intervene by permission of the court.  (The motion and memorandum of law are hereby included as exhibits.)

32.     In Section III-B (*see above*), in discussing the merits of permissive intervention, Movant raised defenses that have numerous questions of law and fact in common with the main action; and their intervention will not unduly delay or prejudice the adjudication of the rights of the original parties. Therefore, permissive intervention is appropriate.

33.     Based upon the discussion presented in Section III in its entirety (*see above*), Movant would claim a greater than 50% probability that the appeal will succeed on its merits.  Moreover, the U.S. District Court for Puerto Rico has shown considerable abuse of discretion in summarily denying the request.  *An emergency temporary restraining order (T.R.O.) should thus issue upon the filing of the instant memorandum.*

Continued…

I-11

IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 12.

**b.      Intervenor, and numerous PRPD police officers, will suffer irreparable harm**

**if preliminary injunctive relief is not granted.**

34.      I filed a "Motion for Preliminary Declaratory and Injunctive Relief, *pendente lite*,"

with an accompanying memorandum of law in support thereof, on December 2nd, 2013

(Docket No. 99), which was summarily denied on December 5th, 2013 (Docket No. 100).

(The motion and accompanying memorandum were filed as exhibits to my "Notice of

Motion Filed at the U.S. District Court for Puerto Rico" on December 6th, 2013.)

35.      Movant would like to incorporate Section II-2, which discusses the issue of

irreparable harm; mostly in terms of irreparable harm to numerous PRPD police officers

if the preliminary injunctive relief requested is not granted.  Movant would like to

discuss, first, the issue of irreparable harm to numerous PRPD police officers, since this

issue falls within the public interest; and then, the irreparable harm which will befall him

unless preliminary injunctive relief is granted; a private concern, except as the issues

touch upon his role as lobbyist for the PRPD, when they become, once again, public.

36.      In Federal courts, the doctrine of *Jus Tertii is* a doctrine of exception; not

generally and usually granted (*see* Section II-2 above).  A party thus seeking third-party

standing in Federal courts must make two additional showings.  First, whether the party

asserting the right has a "close" relationship with the person who possesses the right.

Powers v. Ohio, 499 U.S. 400, 411, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991). Second,

whether there is a "hindrance" to the possessor's ability to protect his own interests.  *Id.*

Continued...



IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 13.

37.      Thus, "a litigant will be permitted to raise a third party's rights only when three

criteria are met:  [(a)] the third party has suffered a constitutional injury in fact, [(b)] the

litigant enjoys a close relationship with the third party, and [(c)] an obstacle exists to the

third party assertion of his or her own rights. *See* Powers v. Ohio, 499 U.S. 400, 410-11,

111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991) (citing Craig, 429 U.S. at 190)." (cited in IMS

Health Inc. v. Ayotte, 550 F.3d 42, 49 (1st Cir. 2008).)  Let us examine these criteria:

**i.      PRPD police officers have suffered a constitutional injury in fact.**

38.      It should be evident that numerous PRPD police officers have suffered a

constitutional injury.  More than five (5) years have passed since  Act No. 173 of

December 3, 2007, P.R. Laws An. Tit. 25 § 3111 (2010), and Act No. 128 of July 23,

2008, P.R. Laws An. Tit. 25 § 3104 (2010), were approved.  There is no showing of just

cause as to why the salary raise provided by Act No. 173 of 2007 has not been fully

implemented; nor as to why a Federal Social Security *referendum* provided by Act No.

128 of 2008 has not taken place. (More than *one hundred million dollars* is owed to

PRPD police officers for withheld raises; and *two hundred million dollars* would have

been paid to Federal Social Security if the *referendum* had succeeded:  *one hundred*

*million* by the PRPD; and an additional *one hundred million* by PRPD police officers.)

39.      The failure to implement these two acts violates the right to due process and to

equal protection of the law(s); of both the United States Constitution, U.S. Const.; and

the Constitution of the Commonwealth of Puerto Rico, P.R. Const.

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 14.

40.      In Puerto Rico, constitutional due process protections originate from:  (a) the Fifth

Amendment to the U.S. Constitution, which states, in relevant part, that "… [n]o person

shall… be deprived of life, liberty, or property, without due process of law…," U.S.

Const. amend. V; (b) the Fourteenth Amendment to the U.S. Constitution, which states,

in relevant part, "… nor shall any State deprive any person of life, liberty, or property,

without due process of law…," U.S. Const. amend. XIV; and (c) Article II, § 7 of the

Constitution for the Commonwealth of Puerto Rico, which states, in relevant part, that

"…[n]o person shall be deprived of his liberty or property without due process of law…,"

P.R. Const. Art. II, § 7.

41.      In Puerto Rico, constitutional equal protections of the law(s) originate from:  (a)

the Fourteenth Amendment to the U.S. Constitution, which states, in relevant part, that

"…[no state shall] deny to any person within its jurisdiction the equal protection of the

laws…," U.S. Const. amend. XIV; and (b) Article II,  § 7 of the Constitution for the

Commonwealth of Puerto Rico, which states, in relevant part, that "…[n]o person in

Puerto Rico shall be denied the equal protection of the laws…," P.R. Const. Art. II, § 7.

42.      Act No. 173 of December 3, 2007, P.R. Laws An. Tit. 25 § 3111 (2010), provided

for a $200 (two hundred dollar) monthly salary increase for PRPD police officers, to be

implemented in two parts:  (a) a $100 (one hundred dollar) monthly salary increase to

be effective January 1, 2008, which was granted; and (b) a second $100 (one hundred

dollar) monthly salary increase to be effective January 1, 2009, which was not granted.

Continued…

I-14

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 15.

43.    Movant first makes a due process claim, in that these actions violate the

Fourteenth amendment, in its procedural aspect:

> A viable procedural due process claim must demonstrate a "deprivation by
> state action of a constitutionally protected interest in 'life, liberty, or
> property' . . . *without due process of law*." Lowe v. Scott, 959 F.2d 323,
> 340 (1st Cir. 1992) (quoting Zinermon v. Burch, 494 U.S. 113, 125, 108 L.
> Ed. 2d 100, 110 S. Ct. 975 (1990)) (internal quotation marks omitted).
> Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 32 (1st Cir. 1996).

44.    The Honorable First Circuit has clarified this standard in a labor dispute:

> In Board of Regents v. Roth, 408 U.S. 564, 33 L. Ed. 2d 548 , 92 S. Ct.
> 2701 (1972), the Supreme Court held that the "requirements of due
> process apply only to the deprivation of interests encompassed by the
> Fourteenth Amendment's protection of liberty and property." *Id.* at 569. In
> Roth, the Court outlined in general terms the attributes of the "property"
> interests subject to the constraints of the Due Process Clause:

> *To have a property interest in a benefit, a person clearly must have more*
> *than an abstract need or desire for it. He must have more than a unilateral*
> *expectation of it. He must, instead, have a legitimate claim of entitlement*
> *to it* [emphasis added]. *Id.* at 577.

> According to the Court, property interests are not defined by the
> Constitution. "Rather, they are created and their dimensions are defined
> by existing rules or understandings that stem from an independent source
> *such as state law* [emphasis added]...." *Id.* See also Cleveland Bd. of
> Educ. v. Loudermill, 470 U.S. 532, 538, 84 L. Ed. 2d 494 , 105 S. Ct. 1487
> (1985); Chongris v. Board of Appeals, 811 F.2d 36, 43 (1st Cir.), cert.
> denied, 483 U.S. 1021, 97 L. Ed. 2d 765 , 107 S. Ct. 3266 (1987). Lowe
> v. Scott, 959 F.2d 323, 334 (1st Cir. 1992).

45.    In regards to the failure to implement the second $100 (one hundred dollar)

salary raise on January 1, 2009, it is clear that we are considering *an entitlement*

*conferred by statute, which has been denied without the due process requirement*:

Continued...



IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 16.

> In <u>Perry v. Sindermann</u>, 408 U.S. 593, 601 (1972), the Court said that a
> "person's interest in a benefit is a 'property' interest for due process
> purposes if there are… rules or mutually explicit understandings [e.g., Act
> No. 173 of 2007] that support his claim of entitlement to the benefit and
> that he may invoke at a hearing." <u>Bishop v. Wood</u>, 426 U.S. 341, 344 n. 6
> (1976).

46.     The Fourteenth amendment to the U.S. Constitution requires states to provide

equal protection of the laws to all persons within a state's jurisdiction.  U.S. Const.

amend. XIV.  On a constitutional equal protection claim, a successful plaintiff must prove

both that he was treated differently than others who were similarly situated and that the

difference in treatment was based on an impermissible consideration, or that no rational

basis exists for the difference; i.e., that there was intent to and/or actual discrimination:

> … as we held in <u>Everlasting Development Corp. v. Sol Luis Descartes</u>, 1st
> Cir., 1951, 192 F.2d 1, 7, *certiorari denied*, 1952, 342 U.S. 954, 72 S.Ct.
> 626, 96 L.Ed. 709: 'There must be a purposeful discrimination against one
> person and in favor of another person in like case, with no rational basis
> for a differentiation between the two.' <u>Marquez v. Aviles</u>, 252 F.2d 715,
> 717 (1st Cir. 1958).

47.     Salary raises for public employees are statutory in Puerto Rico:  e.g., Acts No. 27

and 28, both of July 20th, 2005, established the basic salary for private and public

nurses, respectively; Act No. 109 of June 11th, 2008, established the basic salary for

teachers in the Puerto Rico Department of Education; in effect providing salary raises to

these professionals, and were duly granted.  (Copies of these acts are hereby included

as exhibits.)  Yet, Act No. 173 of December 3, 2007, P.R. Laws An. Tit. 25 § 3111 (2010),

which is equivalent, is still not fully implemented; without a showing of just cause.

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 17.

48.     In addition, case No. KAC 2007-4170 at the San Juan Court of First Instance at

the General Court of Justice of the Commonwealth of Puerto Rico was filed on May 8th,

2007 by the F.U.P.O. ("Frente Unido de Policías Organizados," or "United Front of

Organized Police Officers") against the Commonwealth of Puerto Rico and/or the

PRPD; and shortly thereafter, C.O.N.A.P.O.L. ("Concilio Nacional de Policías," or

"National Council of Police Officers") joined the litigation as co-plaintiff.  In the complaint,

both F.U.P.O. and C.O.N.A.P.O.L. (both police associations) claim that the

Commonwealth has not completely and adequately implemented Act No. 227 of August

23rd, 2004, which amends Act No. 53 of June 10, 1996, the "Salary Increase for the

Members of the Puerto Rico Police Ranking System Act."  (Both acts are hereby

included as exhibits.)  This failure to comply on the part of the Commonwealth and the

PRPD is a violation of the constitutional due process and equal protection of the laws

rights of PRPD police officers, as stipulated in both the United States Constitution, U.S.

Const.; and the Constitution of the Commonwealth of Puerto Rico, P.R. Const.; and the

amended complaint petitions for relief accordingly.  This case is particularly worrisome,

in that it shows that the Commonwealth is not safeguarding the public interest, in

regards to the PRPD.  Although the case is still open, after almost seven (7) years, it is

not being litigated (plaintiffs hope to settle the case); *yet, the constitutional violation of*

*the rights of PRPD police officers persists on a month-to month basis; and no relief has*

*yet been granted, nor even a tentative date stipulated to, in which it may be granted.*

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 18.

49.     On December 16, 2013, Movant filed a "Motion for Leave to File a Motion to Intervene" in case No. KAC 2007-4170, to bring forth a claim in regards to Act. No. 173 of December 3, 2007, P.R. Laws An. Tit. 25 § 3111 (2010), under the doctrine of *Jus Tertii*; but the Honourable Judge presiding the case, Carlos Carrasquillo Soto, denied the request on December 20th, 2013.  Movant is considering an appeal.

50.     Let us consider now the failure of the Commonwealth of Puerto Rico in carrying out a Federal Social Security *referendum* for PRPD police officers, as required by Act No. 128 of July 23, 2008, P.R. Laws An. Tit. 25 § 3104 (2010).  If we consider that, if this *referendum* were successful, PRPD police officers would then receive Federal Social Security benefits; we might erroneously conclude that these benefits granted by statute would be an expectation (not an entitlement), in terms of constitutional due process.

51.     However, if we consider Federal Social Security benefits in a broader context, we will note that PRPD police officers already have most of the benefits to be conferred, albeit emanating from a different source.  Very generally, the Federal Social Security system offers those covered by it three important benefits:  (a) disability benefits; (b) medical benefits (when disabled and/or retired); and (c) a pension.

52.     Disability benefits are granted to public employees of the Commonwealth of Puerto Rico (including PRPD police officers) via the Puerto Rico State Insurance Fund; and Federal Social Security disability benefits would be supplementary, but not necessarily substitutive, for PRPD police officers.

Continued…



IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 19.

53.     Medical benefits for current PRPD police officers are granted via the
Commonwealth´s managed health medical insurance program, "Mi Salud," formally
"Reforma."  Retired PRPD police officers are eligible for continued coverage, upon
application; and Medicare coverage (as provided by Federal Social Security) would be
once again supplementary, but not necessarily substitutive, for PRPD police officers.

54.     The situation with a pension for PRPD police officers is markedly different,
however.  Through the approval of Act No. 305 of September 24, 1999, a new benefits
structure was implemented, based on fixed contributions instead of a structure based on
fixed benefits, for those employees who entered the system after January 1st, 2000.
The new system is more like a 401(k)-type plan, in which workers must make their own
contributions.  Moreover, once a retired employee exhausts his/her contributions, the
retired employee may be left without a pension benefit from the Commonwealth.  Thus,
younger PRPD police officers have a greatly diminished prospect of receiving an
adequate benefit upon retirement, since PRPD police officers are not currently part of
the Federal Social Security system.  For employees of the Commonwealth of Puerto
Rico, a pension is an entitlement, not a mere expectation; and this diminished prospect
raises the constitutional protections of due process and equal protection of the laws.

55.     Since we are dealing with the failure of the Commonwealth to hold a *referendum*,
even a limited-purpose *referendum* (for a labor benefit); it may also be argued that this
failure is a violation of the Federal constitutional right of free speech.

Continued…

I-19

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079**
Page No. 20.

56.     The Federal due process protection which originates from the Fourteenth

Amendment to the U.S. Constitution, states, in relevant part, "… nor shall any State

deprive any person of life, liberty, or property, without due process of law…," U.S. Const.

amend. XIV.  Act No. 128 of July 23, 2008, P.R. Laws An. Tit. 25 § 3104 (2010), has not

been repealed; but PRPD police officers have not been able to hold a social security

*referendum* without a showing of just cause, a clear violation of due process.

57.     The Federal equal protection of the laws protection which originates from the

Fourteenth Amendment to the U.S. Constitution, states, in relevant part, that "…[no

state shall] deny to any person within its jurisdiction the equal protection of the laws...,"

U.S. Const. amend. XIV.  The Commonwealth has clearly violated this constitutional

right of PRPD police officers; firefighters in Puerto Rico successfully held a *referendum*

where they decided to become part of the Federal Social Security system; and yet,

PRPD police officers have not, without a showing of just cause.

58.     There is an additional exception to the doctrine of *Jus Tertii*, that would be

pertinent to consider at this point:

> The [third] exception is available in First Amendment cases involving laws
> that have been so broadly drafted as to create a chilling effect that inhibits
> third parties from engaging in constitutionally protected speech. In cases
> where this "overbreadth" doctrine is invoked, a plaintiff may have standing
> to bring claims on behalf of those individuals whose rights have been
> chilled by the allegedly overbroad statute. Munson, 467 U.S. at 956-57,
> 104 S. Ct. at 2847; Members of City Council v. Taxpayers for Vincent, 466
> U.S. 789, 798-99, 104 S. Ct. 2118, 2125, 80 L. Ed. 2d 772 (1984)  See
> Cartagena v. Calderon, 150 F. Supp. 2d 338, 345 (e.g. Puerto Rico 2001).

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 21.

59.     Currently, PRPD police officers are prohibited from participating in political acts while in uniform, and/or to assemble.  Some interpret this prohibition as emanating from the Constitution for the Commonwealth of Puerto Rico:  "Persons may join with each other and organize freely for any lawful purpose, *except in military or quasi-military organizations [such as the PRPD]* [emphasis added]."  P.R. Const., Art. II, § 6.

60.     Many PRPD police officers interpret this prohibition in an overly broad manner, and refrain almost totally from expressing their political ideas, and/or participating in political events, in their role as private citizens.  Fear of reprisals and/or problems in the workplace hinder PRPD police officers in expressing their concerns, and making legal requests to the Government of the Commonwealth of Puerto Rico.

**ii.      The litigant enjoys a close relationship with the third party.**

61.     The close relationship, of course, is based upon my role as lobbyist for the PRPD in the Legislative Assembly for the Commonwealth of Puerto Rico.  In particular, I would like to comment briefly on what motivated me to lobby for the PRPD; and it was, actually, the failure of the first two *referendums* for Social Security benefits for PRPD police officers.  It is my opinion that the problem stems from the requirements to receive a Federal Social Security pension upon retirement.  In order to qualify for a pension, a worker must have earned forty (40) credits.  A credit is granted every trimester that a worker is employed, and making contributions.  Thus, a minimum of ten (10) years of contributions is needed to receive a pension; but they need not be continuous.

Continued...

I-21

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 22.

62.     For instance, let us consider (hypothetically) how a PRPD police officer with less than ten (10) years of service left to reach mandatory retirement would vote in a Federal Social Security *referendum*.  Unless the police officer had worked elsewhere and made previous contributions, if he (or she) were to begin making contributions now, he would not automatically be eligible for a pension; until he reaches forty (40) credits.  He (or she) would probably vote against Federal Social Security in the *referendum*, to avoid making payments which will not confer to him any benefit upon retirement.

63.     Thus, Movant believes it is necessary to separate older and younger PRPD police officers in a *referendum*, so that only those who might potentially benefit be granted the opportunity to vote.  Unfortunately, although Movant tried to propose this amendment when lobbying for the *referendum* with the Honourable Senator José Luis Dalmau, PDP at large, and now Vice-President of the Senate of Puerto Rico; my comments were not taken into consideration when drafting the bill.  Movant believes this exclusion of older PRPD police officers may be successfully brought about by considering recent amendments to the Commonwealth's retirement system; which establish a different retirement system, and hence a different inclusion group, for those PRPD police officers who began serving after January 1, 2000.  *These should be the first officers eligible to vote in the referendum, and it should be thus specified in an amendment.  Otherwise, even if the referendum were to be held immediately under favorable conditions, it would not be successful.*

Continued…

I-22

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 23.

64.     Movant should stress at this point that the irreparable harm to be suffered by

PRPD police officers in the Settlement Agreement (Docket No. 57) is not stayed is not

abstract and generalized; but, actually, is quite specific and concrete.  (Movant also

asserts that not having the Legislative Assembly for the Commonwealth of Puerto Rico

may be a violation of the Constitution of the Commonwealth of Puerto Rico, as Movant

detailed in the "Motion Requesting Interjurisdictional Certification" filed on April 7th,

2014, at the Honorable United States District Court for Puerto Rico. ) However, the

Commonwealth has first to acknowledge these constitutional violations of the rights of

PRPD police officers in the Settlement Agreement (Docket No. 57); and this is the

reason Movant is attempting to become an official party of the case being appealed.

**iii.      An obstacle exists to having PRPD police officers assert their own rights.**

65.     Fear of reprisals is a constant fact of life for PRPD police officers.  For instance,

to give a concrete example, on February 28th, 2013, the Hon. Alejandro García Padilla,

Governor of Puerto Rico, signed Executive Order No. 14, whereby he halted the

payment of sick days in excess for employees of the Commonwealth; but in the press

gave special emphasis to PRPD police officers.  This executive order is clearly a

reprisal for the continued claims for salary raises being presented on behalf of PRPD

police officers in case KAC 2007-4170; and, more generally, as a warning to PRPD

police officers not to object to the Settlement Agreement (Docket No. 60); nor to attempt

to intervene in case No. 3:12-cv-2039, the case hereby being appealed.

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 24.

66.     This brought about a lowering of morale among PRPD police officers, and many

began taking sick days.  The situation reached a crescent in April of 2013, when the

Honorable Alejandro García Padilla, Governor of Puerto Rico, visited various police

precincts, concerned about their absenteeism; and then stated that any PRPD police

officer suspected of falsely calling in sick, and/or bringing a false medical excuse, would

be subject to polygraph testing.  This claim was based upon the authority conferred by

Regulation(s) No. 6507 and 7410 of August 20th, 2002; both of which establish, in (their

respective) section(s) M, that the state may require polygraph testing of PRPD police

officers.  Polygraph testing was initially halted by a court order from state court; and now

it appears that although the Commonwealth *may* pursue polygraph testing, it has

decided, for now, to obviate this alternative, of its own accord.

67.     Having briefly considered the requirements for *Jus Tertii* standing for PRPD

police officers, with special emphasis on the irreparable harms they will suffer if the

preliminary injunctive relief requested is not granted; Movant would like now to consider

the irreparable harm he will suffer if the preliminary injunctive relief is not granted.

68.     Although Movant is relating these events in his personal capacity, most of them

were motivated as a direct result of his role as lobbyist for the PRPD; with the express

purpose of hindering him in any attempt to validate the rights of PRPD police officers,

according to those statues Movant helped enact, as lobbyist.  My main concern,

however, is not retribution but perhaps, some form of relief.

Continued…

I-24

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 25.

69.     Movant is also concerned about the acts he lobbied for, as affecting PRPD police

officers; which should have been one of the first concerns of the Settlement Agreement

(Docket No. 60)*; most of which, however, were not even considered*.  To further that

end, Movant is prepared to settle his claim(s) against the Commonwealth of Puerto

Rico; *once we agree that I may become an official party, and may attempt to vindicate*

*the rights of PRPD police officers, in case No. 3:12-cv-2039*.  I would then consider

asking the Honourable Court to appoint an attorney, so that no confusion lingers as to

my role as PRO SE litigant.

70.     Nevertheless, Movant will try to present succinctly those situations which have

occurred to him, as a result of and in reprisal for his role as lobbyist for the PRPD.  In

fact, so much damage has been done to Movant, personally, that it would be very

difficult, if not impossible, for Movant to begin a separate process to vindicate his rights,

and/or the rights of PRPD police officers.  *Indeed, seeking at this point to commence an*

*additional legal process in Federal court would be unduly burdensome; and would*

*effectively diminish Movant´s opportunities to obtain some form of relief.*

71.     To begin Movant´s story chronologically, Movant will relate first the events that

led me to become homeless.  Movant´s mother, María Luisa Castro Rodriguez, a

psychiatrist, passed away on December 3rd, 2002, after battling cancer for seven years.

Movant was living in New York; but in November of 2002, he visited her, upon her

request.  After she died, Movant moved in with a friend of hers, Ms. Otilia Muñiz Moya.

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 26.

72.     Since Movant had been unable to find a job, Ms. Muñiz Moya allowed me the use

of a separate bedroom at her house at #60 Francisco Colon Brunet Street, in Río

Piedras; where Movant lived uneventfully for a number of years.  Although Movant was

not able to pay Ms. Muñiz Moya rent, Movant helped her with many chores, for which he

received no pay.  There was a verbal contract to that effect, which we entered into

shortly after I moved in.

73.     Towards the beginning of 2004, Movant became interested in the Legislative

Assembly of Puerto Rico, and began lobbying for the PRPD.  In particular, *Movant was*

*surprised that, early in 2006, PRPD police officers were unsuccessful in converting to*

*the Federal Social Security system; this had been their second referendum.  Movant´s*

*surprise stemmed from the fact that he thought that all regular employees were required*

*by law to make contributions to Federal Social Security.  In Puerto Rico, not only PRPD*

*police officers, but teachers for the Puerto Rico Department of Education, and judges*

*for the Commonwealth of Puerto Rico, are also not currently making contributions.*

74.     Movant began learning about the state legislative process, and towards August of

2006, began writing to legislators about the issue of the PRPD and the Federal Social

Security; in particular, to the Hon. Senator Jose Luis Dalmau, PDP at large, sponsor of

the bill that became Act No. 128 of July 23, 2008, P.R. Laws An. Tit. 25 § 3104 (2010).

75.     Then, after the bill was approved, and became an act, Movant began suddenly to

experience difficulties with his landlady, Ms. Otilia Muñiz Moya.

Continued…



IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 27.

76.     Toward August of 2009, we had a discussion, after which Ms. Otilia Muñiz Moya

proceeded to change the locks on the bedroom Movant was using, in effect illegally

locking him out.  Movant asked the Community Law Office of the Inter American School

of Law for legal help, and they filed case No. KPE 2009-3273 at the San Juan Court of

First Instance of the General Court of Justice of the Commonwealth of Puerto Rico.

Movant prevailed in the case, and Ms. Otilia Muñiz Moya was ordered to re-instate me

to the use of the bedroom, after the Sentence issued on September 8th, 2009.  Movant

had sought temporary housing with a friend, Ms. Luz Muñoz, who lived nearby in Río

Piedras.  Ms. Muñoz is from Santo Domingo, and she used to be a caretaker for

Movant´s mother, before she passed away.  The conditions at her home were crowded,

because she had many relatives living with her at the time.  Movant would try to get in

after ten p.m.; and leave early in the morning.

77.     After Movant learned that he had prevailed in the injunction, but before Movant

could physically regain the use of the property, in September 5th, 2009, Movant was the

victim of a hit-and-run driver whose car impacted me in the right knee.  Movant is still

awaiting treatment by the Puerto Rico Automobile Accident Compensation

Administration (henceforth, the A.A.C.A.).  Movant currently has difficulty walking.

78.     On information and belief, both the illegal lockout by Ms. Otilia Muñiz Moya and

the negligence of the Puerto Rico Automobile Accident Compensation Administration

(henceforth, A.A.C.A.) are a violation of my First Amendment rights; of my Federal due

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 28.

process rights; and of my Federal right to equal protection of the laws. Similar

protections arise from the Constitution of the Commonwealth of Puerto Rico,

Const. P.R. Abrogating my role as lobbyist for the PRPD was the objective.

79.     Immediately after Movant regained possession of the bedroom, Ms. Otilia

Muñiz Moya initiated eviction proceedings, in case No. KPE 2009-3852 at the

San Juan Court of First Instance for the General Court of Jusice of the

Commonwealth of Puerto Rico. The house Ms. Otilia Muñiz Moya lives in is in

land owned by the City of San Juan; hence, the titularity of the property was in

question. Although Movant tried to raise this defense, a Sentence of eviction

was issued against him. In addition, the eviction occurred without the presence

of either an official of the Department of the Family and/or the Department of

Housing, although Movant is handicapped, his only source of support came from

food stamps; and he had been denied a PRO BONO attorney.

80.     This was contrary to what was stipulated in Act No. 129 of September

27th, 2007. (I am hereby enclosing a copy of this act, which was subsequently

amended, as an exhibit.):

> No eviction of any family of proven financial insolvency shall be carried
> out unless an official of the Department of the Family and of the
> Department of Housing … is present at the time the eviction is to take
> place. Said official shall see to the physical and emotional safety of the
> evicted family. The Marshall of the Court shall coordinate the presence of
> said official with the office of the agency closest to the location where the
> eviction is to take place. Act No. 129 of September 27[th], 2007, Art. 632.

Continued…



IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 29.

81.     The eviction occurred in late July of 2010.  Movant was suddenly homeless, and

handicapped.  Also, Movant was not notified in a timely manner as to the date the

eviction was to be executed; and, as a result, most of his personal property got lost,

stolen, and/or damaged in the process; since my landlady refused to halt the eviction,

even though the terms set forth in Art. No. 632 of Act No. 129 of September 27th, 2007

were not followed.

82.     This was the first time Movant became homeless in Puerto Rico.  Before the

legal process had ended, however, I had applied to and had been accepted to the

University of Puerto Rico School of Law, at which I began studying in August of 2010.

This was a time of turmoil at the University of Puerto Rico, with a prominent student

strike that began almost at the same time Movant began law school.

83.     On information and belief, the events that occurred shortly after I began studying

law at the University of Puerto Rico (henceforth, the U.P.R.) School of Law also had the

purpose of abrogating my role as lobbyist for the PRPD at the Legislative Assembly of

Puerto Rico.  Movant thought that a successful lobbyist must know the law as a lawyer;

and must, indeed, be prepared to go to court if necessary, as Movant is doing.

84.     First, in September, Movant received a letter from the Associate Dean of Student

Affairs, Adí G. Martínez Román, Esq., stating that my admission had been suspended,

because an official transcript had not arrived.  After the transcript arrived, then Dean Dr.

Roberto Aponte Toro renewed my admission; but I had lost more than a month of class.

Continued…

I-29

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 30.

85.     Movant subsequently asked for and received an incomplete in all of his courses. However, Movant had a problem completing my financial aid application before the semester ended.  Based upon the academic norms prevalent at the time, incomplete courses were to be counted as matriculated courses; and, because Movant had been granted reasonable accommodation by Office of Handicapped Persons at the Río Piedras campus of the U.P.R.; Movant asked to be considered as registered for class.

86.     The problems, which began at the School of Law, continued at the Torre del Norte University Housing.  Mr. Isaac Alvarado, Director of Torre del Norte, began in January of 2011 to ask for payment of the previous semester; and to question Movant´s status as a regular, full-time student; and hence, eligibility for student housing.

87.     Movant appealed to the Associate Dean of Students (in charge of student housing), Prof. José A. Nieves Cartagena; to the Dean of Students, Dra. Edna Charriez Cordero; and then to the then Chancellor, Dra. Ana R. Guadalupe; who issued a decision without holding an administrative hearing, as required.  Subsequently, Movant appealed to both the President of the U.P.R., Dr. Miguel Muñoz; and to the President of its Board of Governors; Prof. Luis Berríos Amadeo; whose decision was signed by its Executive Secretary, Prof. Luis M. Villaronga.  Both also denied my appeal without holding a hearing.  Section 6.10 of the "Norms Regarding Administrative Appellative Processes at the U.P.R., Certification No. 138, 1981-82" stipulate that appeals to a Chancellor require an administrative hearing.

Continued…

I-30

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 31.

88.     Movant filed a writ of *mandamus* at the San Juan Court of First Instance for the

Court of General Justice of the Commonwealth of Puerto Rico, case No. KPE 2012-

1356.  The case was consolidated with case No. KPE 2012-1792, were a similar writ of

*mandamus* from the Puerto Rico Court of Appeals was filed, case No. KLRA 2012-0367;

and subsequently transferred to the San Juan Court of First Instance.

89.     In the writ of *mandamus* at case KPE 2012-1356, Movant asked that a hearing

be held administratively, as required by the norms of the U.P.R..  In the writ of

*mandamus* at case KPE 2012-1792, Movant asked that Rafael Texidor, Esq., the new

Student Ombudsman for the Río Piedras campus of the U.P.R. intercede for me with the

new Dean of the U.P.R. School of Law, Prof. Vivian Neptune; and that Prof. Hernán

Rosado Carpena permit me to review the records of a case he handled, in which the

Río Piedras campus cancelled a six (6) credit statistics course I had attempted at the

Faculty of Business Administration; and which held up my registration for the U.P.R.

School of Law.  The case(s) was (were) dismissed for failure to ask for an adequate

remedy at law.  I filed appeal No. KLCE 2012-1144 at the Puerto Rico Court of Appeals.

The appeal was dismissed for lack of jurisdiction.

90.     However, in none of the legal processes, either at the administrative level, or at

the level of the state court, was Movant ever granted the opportunity of a hearing, as

was stipulated in the academic norms of the U.P.R.; and as an essential part of

established procedural due process requirements, as we will see next.

Continued…

I-31

IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 32.

91.     On information and belief, Movant was the victim of political discrimination; which

infringed upon my right to free speech, as protected by the First Amendment to the

United States Constitution.  U.S. Const., amend I.  This has been recognized as a

protected right for a Federal claim of a procedural due process violation, as protected by

the Fourteenth Amendment to the United States Constitution.  U.S. Const., amend. XIV.

Thus, the failure to hold any kind of hearing is also a procedural due process violation,

as well as a First Amendment violation, insofar as the political discrimination infringed

upon my right to free speech.  It particularly infringed upon my right to be heard:

> This Court consistently has held that some form of hearing is required
> before an individual is finally deprived of a property interest.  Wolff v.
> McDonnell, 418 U.S. 539, 557-558 (1974).  See, e.g., Phillips v.
> Commissioner, 283 U.S. 589, 596-597 (1931).  See also Dent v. West
> Virginia, 129 U.S. 114, 124-125 (1889). The "right to be heard before
> being condemned to suffer grievous loss of any kind, even though it may
> not involve the stigma and hardships of a criminal conviction, is a principle
> basic to our society." Joint Anti-Fascist Comm. v. McGrath, 341 U.S. 123,
> 168 (1951) (Frankfurter, J., concurring).  The fundamental requirement of
> due process is the opportunity to be heard "at a meaningful time and in a
> meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552 (1965). See
> Grannis v. Ordean, 234 U.S. 385, 394 (1914).  Mathews v. Eldridge, 424
> U.S. 319, 333, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976).

92.     Before the end of these processes, Movant had been locked out of his room in

Torre del Norte on June 10, 2011; all of Movant's possessions still in the room.  Movant

chose not to pursue *Certiorari* review of appeal No. KLCE 2012-1144.  Movant was

again, homeless.  Movant had also, effectively, been denied the opportunity to study

law; and in fear and danger for his life, being homeless.

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 33.

93.      On information and belief, the actions undertaken by personnel of the Housing

Division of the University of Puerto Rico at Río Piedras were actions under color of state

law by Commonwealth of Puerto Rico agents, to dissuade me from enforcing the tenets

set forth by Act No. 173 of December 3, 2007, 25 LPRA § 3111 (2010); and Act No. 128

of 2008, 25 LPRA § 3104 (2010).

94.      On information and belief, an amendment is necessary to ACT NO. 128 OF

2008, 25 LPRA § 3104 (2010), if any Federal Social Security *referendum* by the PRPD

is to be successful.  Towards that end, I attempted, on three (3) separate occasions, to

apply to the *Jorge Luis Alberto Ramos Comas* Legislative Internship.

95.      On information and belief, the reason Movant was not deliberately chosen in any

of these instances as a legislative intern is that the personnel and the legislators of the

Commission were acting under color of state law as Commonwealth of Puerto Rico

agents, in denying my application and my claim of disability, to dissuade Movant from

enforcing the tenets set forth by Act No. 173 of December 3, 2007, 25 LPRA § 3111

(2010); and Act No. 128 of 2008, 25 LPRA § 3104 (2010).

96.      Movant filed a petition for a writ of *mandamus* at the San Juan Court of First

Instance for the Court of General Justice of the Commonwealth of Puerto Rico, case

No. KPE 2012-1347; which  was dismissed for failure to ask for an adequate remedy at

law.  Movant had asked the Honorable Court to expedite my acceptance to the *Jorge*

*Alberto Ramos Comas* Legislative Internship; based upon Movant's disability.

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 34.

97.     Movant filed appeal No. KLAN 2013-0002 at the Puerto Rico Court of Appeals; which was dismissed for lack of jurisdiction.  Movant was left without means to amend the *referendum,* and its implementation.

98.     Before exhausting the patience of this Honorable First Circuit Court of Appeals, Movant would like to mention that Movanthas suffered numerous reprisals, on the part of the Department of the Family; Movant will recount a rather significant one.

99.     Movant filed an application for a grant from the Program of Legislative Donations ("Programa de Donativos Legislativos").  One of the requisites is an endorsement from the Office of Informatics and Planning of the Department of the Family.  Even though Movant requested the endorsement in May of 2013, it was not until late December, 2013 that Ms. Olga Colón Padilla, *liaison* to the Program of Legislative Donations responded to my request, denying it.  On information and belief, Ms. Olga Colón Padilla was negligent, *taking more than seven (7) months to answer my request*.

100.    On information and belief, those actions undertaken by personnel of the Office of Informatics and Planning of the Department of the Family were actions under color of state law by Commonwealth of Puerto Rico agents, to dissuade me from enforcing the tenets set forth by Act No. 173 of December 3, 2007, 25 LPRA § 3111 (2010); and Act No. 128 of 2008, 25 LPRA § 3104 (2010).

101.    On information and belief, the actions described in the preceding paragraphs 70 to 94, inclusive, can also be interpreted as discrimination because of a disability.

Continued…

I-34

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 35.

102.    Because of my disability, an action can be brought against personnel of the Commission for the Legislative Internship *Jorge Alberto Ramos Comas*, the U.P.R., and/or the Department of the Family, pursuant to the American with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq.; Section 504 of the Federal Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §§ 701 et seq.; Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. §§ 2000d et seq.; and 42 U.S.C. § 1983 ("Section 1983"), alleging violations to the First, Fifth, and Fourteenth Amendments to the United States Constitution, U.S. Const., amend. I, amend. V, amend. XIV; in regards to due process and equal protection of the laws.

103.    Movant may also bring state claims alleging violations of Puerto Rico Law 115 of December 20, 1991 ("Law 115"), P.R. Laws Ann. tit 29, §194(a); Puerto Rico Law 44 of July 2, 1985 ("Law 44"), P.R. Laws Ann. tit. 1, 501 §§ et seq.; and Articles 1801 and 1802 of the Civil Code of Puerto Rico ("Articles 1801 and 1802"), P.R. Laws Ann. tit. 31, §§ 5140-5140. *See* "Motion to Intervene" and "Memorandum of Law" in support thereof.

**c.    The damage to Plaintiff United States and to co-Defendants Commonwealth of Puerto Rico and the PRPD will be minimal, if any; and is greatly outweighed by the irreparable harm Appellant, and numerous PRPD police officers, will suffer if preliminary injunctive relief is not granted.**

104.    On information and belief, Plaintiff and co-Defendants cannot claim that the PRPD persists in the alleged pattern of violation of civil rights.

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 36.

105.    The Civil Rights Division of the U.S.D.O.J. brought forth the complaint against the Commonwealth of Puerto Rico and the PRPD for an alleged pattern of violation of civil rights, claiming jurisdiction for the Complaint under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, and sought declaratory and injunctive re-lief under 42 U.S.C. § 14141(b).

106.    On information and belief, there have been no recent incidents in the news that would show a continuation of the alleged pattern of violation of civil rights on the part of PRPD police officers.  *On the contrary, what we have seen is a continued pattern of violation of the civil rights of PRPD police officers, in terms of their labor rights, from the Commonwealth of Puerto Rico.  They could not effectively object to the agreement; and hence, the Commonwealth eliminated their pay for accrued sick days.*

107.    From a practical point of view, temporarily suspending the agreement would mean, first, that neither the Commonwealth nor the United States would incur in any expenses, *until the financial obligations to PRPD police officers were stipulated within.*

108.    We have discussed at some length the irreparable harm that is befalling PRPD police officers, in terms of economic hardship; *please consider that the moneys owed to them are considerable, in the hundreds of millions of dollars.*

109.    However, the irreparable harm is not only monetary.  *Why, out of all the public employees of the Commonwealth, are PRPD police officers singled out for this blatant disregard for the labor benefits conferred to them by state statute, and none others?*
Continued…

I-36

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 37.

110.    This situation in also a mockery of their purported authority, *in blatant disregard for the respect an officer of the law and an agent of the public order merits; and as such, clearly deserving of severe punitive damages, if a Federal case were to be litigated against the Commonwealth of Puerto Rico*.  This is perhaps the most obvious reason why the Commonwealth has tried by all means possible at its disposal to discourage PRPD police officers from intervening in case No. 3:12-cv-2039 at the U.S. District Court for Puerto Rico; *because this is the first defense they should have raised*.  How is it possible that Plaintiff United States and co-Defendants Commonwealth of Puerto Rico expect PRPD police officers to behave exemplarily, *while their labor rights are continuously and blatantly being violated right and left, not to mention the perceived level of authority and respect that is left to them when they have to fulfill their duties as agents of the public order?*

111.    Movant does not condone, and/or in any way approve, or promote either unwarranted use of force and/or abuse of authority on the part of *any* PRPD police officer.  *Nevertheless, it is very easy and very convenient to criticize PRPD police officers; sometimes, Movant almost believes it is a national pastime.*  When, however, does Movant read in the press of the abuses that are constantly being committed against them, *in terms of their labor rights?*  Very rarely.  *Are they allowed to form a union, and/or negotiate a collective bargaining agreement?*  No.  *Has anyone voiced such concerns publicly?*  No; PRPD police offices are always a convenient scapegoat.

Continued...



IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 38.

112.   The Honorable Gustavo A. Gelpí has already recognized, in the published

Opinion for this case, the economic crisis which has befallen the Commonwealth of

Puerto Rico retirement system:

> It is no secret that the Commonwealth's fiscal capacity has been in a dire
> crisis for the past decade. The last three Governors, Anibal Acevedo Vila
> (2005-2008), Luis G. Fortuño (2009-2012), and now Alejandro Garcia-
> Padilla (2013-present), have all recognized the precarious condition of the
> Commonwealth's coffers. In Consejo de Salud Playa Ponce v. Rullan, 593
> F. Supp. 2d 386, 388 n.3 (D.P.R. 2008), the undersigned [the Hon.
> Gustavo A. Gelpí] noted the Commonwealth's dire financial state and the
> difficult consequence of having to comply with federal monetary
> mandates. At present, the Commonwealth government's retirement
> system is on the verge of collapse, and in December of last year, its bonds
> were downgraded to just one notch above junk bond status. With its
> borrowing power presently in limbo, and a fiscal crisis on its hands, the
> government may find itself in a Catch-22.  USA v. Puerto Rico, 922 F.
> Supp. 2d 185, 186 (2013).

113.   Our worst fear is that the Commonwealth, in complying with the Settlement

Agreement (Docket No. 60), will forget and/or be unable to meet its financial

responsibilities towards PRPD police officers; and perhaps even towards other public

employees of the Commonwealth.  This concern is pertinent, and it is warranted, given

case No. KAC 2007-4170 at the San Juan Court of First Instance; and given recent

developments in various Commonwealth retirement systems, which we will see later.

114.   In regards to Movant, personally, on information and belief, it would be unduly

burdensome at this point to begin a separate legal procedure, seeking relief for me

and/or PRPD police officers and would effectively limit my expectations for relief.

Continued…



IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT
MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.
No. 13-2079/No. 13-2306
Page No. 39.

### d.    The public interest is in favor of preliminary injunctive relief, as requested.

115.    On information and belief, the public interest is not being adequately represented

by the Commonwealth of Puerto Rico; which, in addition to being a crucial issue when

deciding whether to grant preliminary injunctive relief, is also relevant when considering

the merits of the motion to intervene:

> Presumption that government adequately represents public.  There is a
> presumption that the government, when it is a litigant, will adequately
> represent the interests of the public generally.  A would-be intervenor can
> overcome the presumption by showing that its interests are different from
> those of the public generally.  The intervenor may not rely on theoretical
> conflicts but instead must point to specific interests that the government
> will not adequately represent.  (footnotes omitted).  Federal Rules of Civil
> Procedure:  Rules and Commentary.  By Stephen S. Gensler.  Thomson
> Reuters Westlaw, Volume 1, 2013, p. 508.

Many people in Puerto Rico are concerned about what will happen once the Settlement

Agreement (Docket No. 60) is implemented.  There is a very important public issue

concerning the agreement, which merits special consideration; the budget, which has

not been made public heretofore, contrary to the public interest:

> The agreement, the consideration of which the Court has stayed until April
> 15, 2013 (see Docket No. 5), however, does not include a proposed
> budget for the several measures the Commonwealth must take to
> implement the directives contained therein. This is a crucial element for
> the Court as it considers whether to accept the agreement. What is the
> projected short-term and long-term cost of implementing this agreement?
> More so, the agreement is silent as to whether the Commonwealth will
> bear the entire cost of overhauling its police department, or whether the
> United States will assist in whole or in part, by way of federal executive
> grants, programs or otherwise.  USA v. Puerto Rico, 922 F. Supp. 2d 185
> (2013).

Continued…



**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 40.

116.    In Movant´s "Motion Requesting Information from the Record," and in the

"Motion Requesting Clarification of Order," Movant requested the Honorable U.S.

District Court for Puerto Rico make the budget part of the record.  Movant

reiterated this concern in the "Motion for Interjurisdictional Certification" filed on

April 7th, 2014, at the District Court; and in the "En Banc Petition for a Writ of

*Mandamus*" filed in the Honorable First Circuit Court of Appeals.

**e.      For many of the issues presented, there is no other adequate remedy at**

**law, even if the Petition for a Writ of Certiorari was expedited.**

117.    Movant contends that the PRPD is being subject to various reprisals for which

there is no adequate remedy at law, as detailed in the "Motion for Intrajurisdictional

Certification" filed on April 7th, 2014 at the Honorable U.S. District Court for Puerto Rico.

Particularly worrisome if the situation that has developed with the W-2 retention slips of

PRPD police officers who worked overtime; which will not be ready by April 15th, 2014.

**V.      CONCLUSION:**

**FOR ALL THE REASONS STATED ABOVE,** Movant respectfully requests that

the requested preliminary relief be granted, as set forth herein.


**WHEREFORE,** Jorge Díaz Castro, as PRO SE Appellant in the instant appeal(s);

respectfully requests that the Honourable Court grant such declaratory and injunctive

relief as it may consider appropriate.

Continued…

**IN THE UNITED STATES DISTRICT COURT OF APPEALS FOR THE FIRST CIRCUIT**
**MEMORANDUM OF LAW FOR A PRELIMINARY INJUNCTION AND/OR A T.R.O.**
**No. 13-2079/No. 13-2306**
Page No. 41.

**RESPECTFULLY SUBMITTED** in San Juan, Puerto Rico, on April 9th, 2014.


s/ Jorge Díaz Castro
Jorge Díaz Castro
PRO SE
P.O. Box #9021288
San Juan, P.R.  00902-1288
Email:  transcripciones@mail.com

I-41