**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff;<br><br>          v.<br><br>COMMONWEALTH OF PUERTO RICO, et al.,<br><br>                              Defendants. | No. 12-cv-2039 (GAG) |

**UNITED STATES' SUPPLEMENT TO THE FIRST SIX-MONTH REPORT OF THE
TECHNICAL COMPLIANCE ADVISOR, JUNE 6 – DECEMBER 6, 2014**

COMES NOW, Plaintiff, United States of America, through the undersigned, and submits the following supplement to the "Six-Month Report of the Technical Compliance Advisor, June 6 – December 6, 2014," (Six-Month Report) filed on February 9, 2015.  Dkt. #203.  We thank the Technical Compliance Advisor (TCA) for his efforts and the first Six-Month Report.   The purpose of this filing is to assist the Court in assessing compliance, aide the Parties in resolving barriers to implementation, and to provide greater transparency to the people who rely on the services of the Puerto Rico Police Department (PRPD) by providing additional information and context.  We also make recommendations for future reports that we believe would more effectively address the state of compliance and identify subjects that the Parties need to address. We look forward to working with the TCA in his monitoring efforts and the preparation of the next periodic report.

## I.     <u>Background</u>

The Parties agreed to comprehensive reforms in this case to ensure that PRPD delivers constitutional, effective policing services that promote public safety and foster greater trust between the public and PRPD.  The Agreement requires a complete review and update of

PRPD's policies and practices in areas covered by the Agreement, as well as the implementation of effective management systems that will ensure the sustainability of critical reforms.  PRPD is the largest and most complex law enforcement agency currently undergoing this transformation under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, which authorizes the Department of Justice to seek injunctive and declaratory relief to eliminate a pattern or practice of police misconduct.  The Parties carefully crafted the Agreement to meet the significant challenges facing PRPD and to ensure that it receives the support and resources it needs over the long term to accomplish the Parties' mutual goals under the Agreement.

The Agreement requires a significant undertaking and investment in PRPD, calling for new systems of internal accountability, increased transparency, the modernization of current systems, and ongoing engagement with the community and other stakeholders.  To ensure that PRPD is in the best possible position to succeed under the Agreement, the Parties agreed to a unique capacity-building period for the first four years of the Agreement.  The capacity-building period permits the Commonwealth to put in place a solid foundation of essential policies, regulations, training, staffing, oversight, technology, and relationships with stakeholders that are critical to the implementation and sustainability of reforms.  The Commonwealth agreed to develop "action plans" that set forth the steps that PRPD will take to implement and achieve compliance with the Agreement during the capacity-building period.  These detailed steps will be incorporated into the Agreement and will become binding terms once they are approved by the Parties, the TCA, and the Court.  Agreement ¶ 238.

The Parties also agreed to select a TCA to assess and report whether the provisions of the Agreement have been implemented and whether implementation is resulting in constitutional and effective policing, professional treatment of individuals, and increased community trust of

PRPD.  *Id.*  ¶ 225.  The TCA is not authorized to direct the Commonwealth; he is empowered

with only the duties and authority outlined in the Agreement and is subject to the supervision and

orders of the Court.  *See id.* ¶ 226.  The TCA is also charged with assisting the Parties to resolve

disputes, providing appropriate technical assistance, and utilizing the semi-annual reports as the

primary means of communicating his compliance assessments to the Parties and the public.  *See,*

*e.g., id.* ¶¶ 230, 236, 250, 255, 256.

The timing for the implementation of many of the substantive provisions of the

Agreement, including the development of action plans, began with the appointment of the TCA

on June 6, 2014.  To assist the TCA in his review of current conditions, the Commonwealth

completed two progress reports in August and December, 2014.  Dkt. #159, 196.  The Six-Month

Report is the first semi-annual report submitted by the TCA under Paragraph 250 of the

Agreement.  Dkt. #203.  Paragraph 250 provides that the TCA will file written, public reports

every six months for the first four years of the Agreement that include, in general terms, the

following information:  (a) a description of the TCA's work; (b) a listing of each detailed step

and timeframe in the Commonwealth's action plans and an assessment of the Commonwealth's

progress; (c) the methodology and specific findings of each review conducted;

(d) recommendations to achieve compliance; and (e) a projection of the work to be completed

during the upcoming reporting period and any anticipated challenges or concerns related to the

implementation of the Agreement.  Agreement ¶ 250.

As explained by the TCA in the Six-Month Report, the Parties and the TCA agreed to

extend the period for the submission of draft action plans by PRPD until May 2015.  Six-Month

Rep. at 18.  Accordingly, the TCA was unable to address Paragraph 250(b), which requires an

assessment of the steps outlined in PRPD's action plans.   In lieu of this requirement, the United

States recommended that the TCA provide an assessment of current conditions, operations, and capabilities of PRPD, based on his own independent assessment.  *See* Letter from DOJ to TCA of Jan. 18, 2015, at 1, attached hereto as Exhibit A.  The United States submitted additional comments in response to the draft Six-Month Report, including suggestions for providing a more thorough discussion of concerns raised by the TCA.  *See id.*

## II.   <u>Discussion</u>

### A.   **We Urge that the Next Reports Focus on PRPD's Progress Toward Reform**

Among the most critical functions of the TCA is to independently measure the progress of reforms, identify barriers to success, and make recommendations to the Parties and the Court as to strategies to overcome those barriers.  This begins with a thorough assessment of implementation as measured by the technical obligations imposed by the Agreement.  The Parties, Court and community need to know whether the terms are being implemented and whether they are having the effect intended by the Parties.  Agreement ¶ 225.  The Six-Month Report gives significant emphasis to the activities undertaken by the TCA, but could include greater analysis of PRPD's efforts and progress.  The Report contains limited discussion of PRPD's implementation efforts and compliance initiatives.

The fullest discussion of current conditions and PRPD's performance appears on pages 23-26 of the Six-Month Report concerning the challenges at the Police Academy.  However, the Six-Month Report omits significant context that would be useful in understanding the challenges facing the Police Academy.  For instance, during the reporting period, the Police Academy transitioned from a quasi-independent educational institution, the University College of Criminal Justice, to a division within PRPD -- one of the most significant structural changes in the training of PRPD officers in decades.  PRPD also notified the TCA that the former University College of Criminal Justice was inoperative for a number of years, which resulted in the deterioration of

facilities and other contracting problems, in its comments on the draft Six-Month Report.  In light the problems reported at the Police Academy, we requested that the TCA discuss its review of the Academy's transition and provide an assessment of remedial measures taken by the Commonwealth to address these problems in our comments on the draft Six-Month Report.  Ex. A at 9.  Among the challenges in the transition was a payment dispute with Police Academy instructors that resulted in a group of instructors discontinuing their contractual relationship with PRPD.  Six-Month Rep.at 23.  The report mentions the dispute, but fails to describe the steps taken by PRPD to resolve the situation or assess the effectiveness of those measures.

Beyond brief references to PRPD's progress reports, the Six-Month Report does not evaluate critical initiatives undertaken by the Commonwealth to determine whether they are consistent with the Agreement and the extent to which they have effectively implemented its terms.  For example:

- The Agreement and PRPD's progress reports discuss the Zones of Excellence, which are PRPD precincts that PRPD has selected to initiate reforms and pilot-test compliance initiatives.  Agreement ¶ 7; Defs.' First Status Rep. at 6, Dkt. #196.  The Zones of Excellence allow PRPD to implement reforms in a manageable scale during the capacity-building period.  For example, PRPD reports that it has trained officers on updated use of force policies, assigned new vehicles to improve supervision, expanded less lethal force options, and conducted community outreach in furtherance of Paragraphs 23, 24, 53, 139, 205, and 237 of the Agreement.  Defs.' First Status Rep. at 6-9.  The Six Month Report does not assess the effectiveness of the implementation of these measures.

- PRPD reports that instructors on use of force have been certified and that new Force Investigation Unit members and other officers have been trained on updated use of force

policies in furtherance of Paragraphs 53, 54, 55 and 117 of the Agreement. *Id.* at 15-17. The Six Month Report does not evaluate – or even mention – these critical requirements.

- PRPD reports that it audited all police areas for public information on civilian complaints, the completion of timely complaint investigations, and notice to complainants pursuant to Paragraphs 160, 179, and 192 of the Agreement. *Id.* at 33. The Six Month Report does not assess the effectiveness of PRPD's undertaking.

- The Six-Month Report describes the TCA's engagement with community groups, but provides minimal attention to PRPD's efforts to engage with the community regarding the Agreement. *See e.g., id.* at 37-38.

The failure to identify and evaluate the Commonwealth's compliance actions deprives the Parties and the Court of the opportunity to address any challemges being faced by PRPD in the implementation of the Agreement.   It further undermines the transparency that the Agreement promises to the people of Puerto Rico.  This perception was evident in comments shared by the American Civil Liberties Union of Puerto Rico during a status conference in February 2015.

We recommend that future monitoring reports provide a more complete discussion of the Commonwealth's implementation efforts, including an independent assessment of these efforts, to ensure that a balanced examination of the Commonwealth's progress is presented to the Parties, the Court, and the public.  We recognize that the completion of action plans in the coming months will facilitate this task going forward.

**B.     The Next Reports Should Prioritize the TCA's Recommendations and Plans**

It would be useful if the TCA's semi-annual reports highlight the most significant and current challenges facing PRPD in the implementation of the Agreement, and present a coherent vision for how to address these concerns in the TCA's recommendations and work plan for

subsequent review periods.  The current Six-Month Report provides a detailed list of projected activities for the next six months and offers some recommendations for improvement.  However, the list of activities does not appear to reflect the most pressing needs facing PRPD or other critical benchmarks, such as the completion of draft action plans in May 2015.  The list also does not address ongoing community engagement to assist PRPD in forging collaborative relationships with diverse community groups and stakeholders to strengthen PRPD's implementation activities.

At a minimum, the projected monitoring activities should reflect and prioritize the most significant barriers to compliance identified by the Commonwealth and the TCA.  For example, the Six-Month Report identifies fiscal constraints, a lack of clarity on policies that apply to federal task force members, and problems in paying Police Academy instructors as significant hurdles to compliance.  Six-Month Rep. at 21-26.  There is little correlation between these identified barriers and the projected activities in the Six-Month Report.  Except for the discussion concerning the Police Academy, the TCA does not identify the paragraphs of the Agreement that are implicated, nor the ways in which these barriers stand in the way of compliance.

The TCA could improve on the recommendations and anticipated activities provided in the next Six-Month Report by taking some or all of the following measures:

- Review and assess the information gathered by the TCA as part of his monitoring activities and develop recommendations concerning compliance.  For instance, the Six-Month Report features a long list of specific individuals and organizations with whom the TCA reports holding meetings.  Six-Month Rep. at 21-22, 31-39.  We recognize the importance of engaging with a broad cross-section of the Puerto Rico community and

7

commend the TCA for devoting significant attention to this activity.  However, the Six-Month Report provides little insight or discussion of the issues and concerns raised in these meetings, or recommendations to address these concerns during subsequent review periods.

- Discuss how enforcement orders issued by the Court will assist the TCA and the Parties in achieving compliance.  For example, the Court issued an enforcement order at the TCA's urging concerning the transfer of personnel.  Am. Order of 7/2/14, Dkt. #143. The TCA could discuss the basis for seeking the order, the results of the Commonwealth's compliance with the order, and ways that the Commonwealth can improve its performance.

- Discuss resources, training, or other assistance that may be available through the TCA Office or other entity to assist PRPD in the implementation of reforms.  The Six-Month Report offers an opportunity to identify external assistance provided to PRPD and additional assistance that may be available prospectively.

### III.    Conclusion

The United States recognizes the significant responsibility involved in providing thorough, independent, and timely compliance reports to the Court, the Parties, and the public. The responsibility is even more challenging given the size of PRPD and the complexity of its law enforcement mission.  The United States' commends the Commonwealth, the TCA and his expert team, and the individuals and community groups who participated in this important undertaking.  This supplement is intended to assist the TCA in meeting these obligations in a manner that will promote continued progress and collaboration among the Parties and other stakeholders in furtherance of constitutional policing in Puerto Rico.

WHEREFORE, the United States respectfully requests that the Court take notice of the

above.

Respectfully submitted, this 13th day of March, 2015,

VANITA GUPTA
Acting Assistant Attorney General


JONATHAN M. SMITH
Chief

*s/ LUIS E. SAUCEDO*
LUIS E. SAUCEDO (G01613)
Counselor to the Chief
ZAZY LOPEZ
BRIAN BUEHLER
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC  20530
Tel:   (202) 598-0482
Fax:  (202) 514-4883
luis.e.saucedo@usdoj.gov

Attorneys for Plaintiff

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that the foregoing was filed electronically on this 13th day of March 2015, with the Clerk of Court using the CM/ECF System, which will provide notice of such filing to all registered parties.

*s/Luis E. Saucedo*
*LUIS E. SAUCEDO*
Counselor to the Chief
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC  20530
Tel:   (202) 598-0482
Fax:  (202) 514-4883
luis.e.saucedo@usdoj.gov