INTAKE DROP BOX
RECEIVED & FILED

# IN THE UNITED STATES SUPREME COURT

2015 APR -8 PM 2 4...

-------------------------

CLERK
U.S. DISTRICT COURT

**No.**

## UNITED STATES

### Plaintiff-Appellee

### JORGE DIAZ-CASTRO

### Petitioner-Appellant

### v.

## COMMONWEALTH OF PUERTO RICO; PUERTO RICO POLICE DEPARTMENT

### Defendant-Appellees

-------------------------

## ON PETITION FOR A WRIT OF CERTIORARI
## TO THE HONORABLE FIRST CIRCUIT COURT OF APPEALS

-------------------------

## AMENDED PETITION FOR A WRIT OF CERTIORARI

-------------------------

**COUNSEL OF RECORD:**

**FOR THE UNITED STATES:**

1.  Mr. Donald B. Verrilli, Jr.
    Solicitor General of the United States
    Department of Justice
    950 Pennsylvania Ave., N. W., Room 5614,
    Washington, DC 20530-0001

**PETITIONER IS CURRENTLY APPEARING PRO SE:**

1.  Mr. Jorge Díaz-Castro
    P.O. Box #9021288
    San Juan, P.R.  00902-1288

**IN THE UNITED STATES SUPREME COURT**
~~AMENDED PETITION FOR A WRIT OF CERTIORARI/No.~~

**QUESTIONS PRESENTED:**

1.  Whether a duly registered lobbyist for a state's legislative assembly[1] has a proprietary interest in a duly approved state law, as a result of his/her lobbying; so that standing to present a claim relating to it may be asserted in federal court, under Article III of the Constitution of the United States, U.S. Const. Art. III.

2.  Whether the enforcement section of the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, is either vague and/or overbroad.

3.  Whether the Commonwealth of Puerto Rico can settle a complaint filed under 42 U.S.C. § 14141, without prior approval of its Legislative Assembly; if such an agreement is going to require a substantial amount of funding from the Commonwealth---and should be part of its General Budget.

Continued...

---

[1]  Or, in the instant case, the Commonwealth of Puerto Rico.

**IN THE UNITED STATES SUPREME COURT**
~~AMENDED PETITION FOR A WRIT OF CERTIORARI/No.~~
**Page ii.**

**TABLE OF CONTENTS:**

QUESTIONS PRESENTED.................................................................... i

TABLE OF CONTENTS..................................................................... ii

TABLE OF AUTHORITIES................................................................. iv

PETITION FOR A WRIT OF CERTIORARI.......................................... 1

OPINIONS BELOW........................................................................... 1

JURISDICTION................................................................................. 2

CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED........... 2

    A.    Federal jurisdiction................................................... 2

    B.    State jurisdiction (for the Commonwealth of Puerto Rico)...... 3

STATEMENT OF THE CASE............................................................. 4

    A.    Statutory Background............................................... 4

    B.    Factual and Procedural Background......................... 7

REASONS FOR ALLOWANCE OF THE WRIT...................................... 9

    A.    The occurrence of a split circuit............................. 9

    B.    Petitioner believes he has standing; and should be allowed to intervene.............................................. 10

    C.    42 U.S.C. § 14141 is unconstitutionally vague........ 19

    D.    42 U.S.C. § 14141 is unconstitutionally overbroad.................. 23

    E.    The settlement agreement should be approved by the Legislative Assembly for the Commonwealth of Puerto Rico. 26

Continued...

**IN THE UNITED STATES SUPREME COURT**
**AMENDED PETITION FOR A WRIT OF CERTIORARI/No.**
**Page iii.**

F.    Irreparable harm is occurring to Petitioner; and
      to PRPD police officers............................................................. 30

CONCLUSION AND SUMMARY........................................................ 38

PRAYER FOR RELIEF........................................................................ 38

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.

Page No. iv.

**TABLE OF AUTHORITIES:**

**Constitutions:**

U.S. Const., Art. III...................................................................... 11,12

U.S. Const., Art. VI, § 2................................................................ 30

U.S. Const., amend. I.................................................................... 18,24

U.S. Const., amend. V................................................................... 33,38, 39

U.S. Const., amend. X.................................................................... 3,29

U.S. Const., amend. XI................................................................... 3,28

U.S. Const., amend. XIV................................................................. 22,33, 38,39

Const. P.R., Art. II, § 4................................................................ 18

Const. P.R., Art. VI, § 6............................................................... 3,27

**Cases:**

**Federal jurisdiction:**

Bennett v. Spear, 520 U.S. 154, 162 (1997)................................... 11

Broadrick v. Oklahoma, 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973).... 23,25

Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 105 S. Ct. 2794, 86 L. Ed. 2d 394 (1985)................................................ 24

Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S. Ct. 932, 17 L. Ed. 2d 814 (1967)................................ 15

Chisholm v. Georgia, 2 U.S. 419, 1 L. Ed. 440 (1793)..................... 28

Clarke v. Sec. Indus. Ass'n, 479 U.S. 388, 400 n.16 (1987)............. 12

Continued...

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. v.

TABLE OF AUTHORITIES (cont.):

Commonwealth v. Rizzo, 530 F.2d 501, 504 (3rd Cir.), *cert. denied*, 426 U.S. 921,
       96 S. Ct. 2628, 49 L. Ed. 2d 375 (1976)…………………………………… 10

Culbreath v. Dukakis, 630 F.2d 15 (1st Cir. 1980)…………………………… 10

Devlin v. Scardaletti, 536 U.S. 1, 122 S. Ct.2005, 153 L. Ed. 2d 27 (2002)………… 15

Donaldson v. United States, 400 U.S. 517, 91 S. Ct. 534, 27 L. Ed. 2d 580
       (1971)………………………………………………………………… 14

Eastern Raildroad Presidents Conference v. Noerr Motor Freight, Inc.,
       365 U.S. 127 (1961)………………………………………………… 18

Ex parte Young, 209 U.S. 123 (1908)…………………………………………… 34

Grayned v. City of Rockford, 408 U.S. 104, 108-09, 33 L. Ed. 2d 222,
       92 S. Ct. 2294 (1972)……………………………………………… 23

Grutter v. Bollinger, 188 F.3d 394, 397-98 (6th Cir. 1999)………………………… 10

Hans v. Louisiana, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890)……………… 28

Int'l Ass'n of Firefighters of Saint Louis v. City of Ferguson, 283 F.3d 969,
       973-74 (8th Cir. 2002)……………………………………………… 12

Int'l Paper Co. v. Town of Jay, ME., 887 F.2d 338 (1st Cir. 1989)………………… 16

Ionian Shipping Co. v. British Law Ins. Co., 426 F.2d 186 (2nd Cir. 1970)………… 10

Kartell v. Blue Shield of Massachusetts, Inc., 687 F.2d 543 (1982)………………… 10

McDonald v. Smith, 472 U.S. 479 (1985)………………………………………… 18

Mass. School of Law at Andover, Inc. v. United States, 326 U.S. App. D.C. 175,
       118 F.3d 776 (D.C. Cir. 1997)……………………………………… 10

Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789,
       104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984)………………………… 26

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. vi.

**TABLE OF AUTHORITIES (cont.):**

Moosehead Sanitary Dist. v. S.G. Phillips Corp., 610 F.2d 49 (1st Cir. 1979)...... 10,16

Mova Pharm. Corp. v. Shalala, 140 F.3d 1060 (D.C. Cir. 1998)....................... 10

New York v. United States, 505 U.S. 144, 112 S. Ct. 2408, 120 L. Ed. 2d 120
    (1992)............................................................................. 29

Printz v. United States, 521 U.S. 898, 117 S. Ct. 2365, 138 L. Ed. 2d 914.......... 29

Ramírez v. Puerto Rico Fire Services, 715 F.2d 694 (1st Cir. 1983).................. 28

Smith v. Goguen, 415 U.S. 566, 572-73, 94 S. Ct.1242, 39 L. Ed. 2d 605 (1974).. 23

Thornhill v. Alabama, 310 U.S. 88, 60 S. Ct. 736, 84 L. Ed. 1093 (1940)............. 24

United Mine Workers of America v. Pennington, 381 U.S. 657 (1965)............... 19

United States v. City of Los Angeles, 288 F.3d 391 (9th Cir. 2002).................... 14

United States v. Mazurie, 419 U.S. 544, 550, 42 L. Ed. 2d 706,
    95 S. Ct. 710 (1975)................................................................ 23

United States v. Mississippi, 380 U.S. 128,85 S. Ct. 808,13 L. Ed. 2d 717
    (1965)............................................................................. 29

United States v. Puerto Rico, 922 F. Supp. 2d 185 (2013)............................ 1,20
                                                                                     26

Weiser v. White, 505 F.2d 912, 916-17 (5th Cir.), cert. denied, 421 U.S. 993,
    44 L. Ed. 2d 482, 95 S. Ct. 1998 (1975)......................................... 10

**State jurisdiction (for the Commonwealth of Puerto Rico):**

F.M. Production, Inc., v. Corporación para la Difusión Pública,Case No. KLAN
    2012-0629, from the Honorable Puerto Rico Court of Appeals................ 30

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. vii.

TABLE OF AUTHORITIES (cont.):

**Statutes and Rules:**

**Federal jurisdiction:**

The Brady Handgun Violence Prevention Act of 1993,
      18 U.S.C. §§ 921-922, P.L. 103-59, 107 Stat. 1536 (1993)..................... 29

The Lobbying Disclosure Act of 1995,2 U.S.C.A. §§ 1601 – 1612,
      P.L. 104-65, 109 Stat. 691 (1995)................................................... 18

The Honest Leadership and Open Government Act of 2007,
      2 U.S.C. § 1601 *et seq.*, P.L. 110-81, 121 Stat. 735 (2007).................... 18

The Sherman Act, 15 U.S.C. §§ 1 - 7, P.L. 107 – 272, 26 Stat. 209 (1890).......... 18

18 U.S.C. § 922(q)................................................................................ 29

28 U.S.C. § 1254(1)............................................................................... 2

Violent Crime Control and Law Enforcement Act of 1994, at 42 U.S.C. § 14141,
      Pub. L. 103-322, 108 Stat. 1796 (1994)............................................ 2,4,12
      13,16
      19,21
      23,24
      25,26
      29,30
      31,34
      39

Fed. R. Civ. P. No. 24(a).......................................................................... 4,13

Fed. R. Civ. P. No. 24(b).......................................................................... 4,16

Sup. Ct. R. No. 10(a).............................................................................. 11,15

Sup. Ct. R. No. 10(c).............................................................................. 15,17
      19,23
      26,30

Continued...

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. viii.

TABLE OF AUTHORITIES (cont.):

**State jurisdiction (for the Commonwealth of Puerto Rico):**

Act No. 258 of July 30, 1974.......................................................... 3,14, 18

Act No. 53 of June 10, 1996, P.R. Laws An. Tit. 25 § 1001 *et seq.* (2010)........... 37

Act No. 173 of December 3, 2007, P.R. Laws An. Tit. 25 § 3111 (2010)............. 1,6,27

Joint Resolution No. 52 of July 17, 2008....................................... 6,7

Act No. 128 of July 23, 2008, P.R. Laws An. Tit. 25 § 3104 (2010).................... 1,6,7 27

Act No. 70 of July 2, 2010.......................................................... 39

Senate Administrative Order No. 2005-16........................................ 3,14

House of Representatives Administrative Order No. 2013-4............................ 3,14

**Other Sources of Authority:**

Anthony G. Amsterdam, Note, The Void-For-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67 (1960)................................................. 19

Background Briefing Paper (June 3, 2010), Available at http://web.law. Columbia.edu/sites/default/microsites/contact-Economic-organization/files/1-Pattern_or_Practice_Background_Paper.pdf............................................ 4,5

Yaniré Batista Orama, Cabildeo: ¿Derecho constitucional o subterfugio para la corrupción?, 42 Rev. D.P. 47 (2003)................................................ 17

Joshua M. Chanin, Implementing § 14141 "Pattern or Practice" Reform: Evidence from Four Police Departments, *available at* http://pmranet.org/ conferences/OSU2009/ papers/Chanin..................................................... 5,6

Justin P. Gunter, Note, Dual Standards for Third-Party Intervenors: Distinguishing Between Public-Law and Private-Law Intervention, 66 Vand. L. Rev. 645 (2013)....................................................................... 35

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. ix.

TABLE OF AUTHORITIES (cont.):

Marc E. Isserles, <u>Overcoming Overbreadth:  Facial Challenges and the Valid Rule Requirement</u>, 48 Am. U. L. Rev. 359 (1998)..................................... 26

Lewis Sargentich, Note, <u>The First Amendment Overbreadth Doctrine</u>, 83 Harv. L. Rev. 844 (1970)........................................................................ 24

Michael E. Solimini, <u>Congress, *Ex parte Young*, and the Fate of the Three-Judge District Court</u>, 70 U. Pitt. L. Rev. 101 (2008)............................... 35

Philip Weinberg, Editor-in-Chief, <u>MacMillan Compendium: The Supreme Court</u> "Overbreadth" 536 (1999)............................................ 25

IN THE UNITED STATES SUPREME COURT
~~AMENDED PETITION FOR A WRIT OF CERTIORARI/No.~~
Page No. 1.

## I.    PETITION FOR A WRIT OF CERTIORARI:

Petitioner Jorge Díaz Castro, as Proposed Intervening Defendant in case 3:12-CV-2039, <u>United States v. Puerto Rico</u>, 922 F. Supp. 2d 185 (2013) (App. C) at the Honorable United States District Court for Puerto Rico; and as Appellant in U.S.C.A. No. 13-2079 and 13-2306 at the Honorable First Circuit Court of Appeals; hereby presents three questions for a Writ of Certiorari before this Honorable Supreme Court of the United States.  The complaint in the district court was filed by the United States Department of Justice (henceforth, USDOJ), for an alleged "pattern or practice" of police misconduct by members of the Puerto Rico Police Department (henceforth, PRPD). Petitioner, as a duly registered lobbyist at the Honorable Legislative Assembly for the Commonwealth of Puerto Rico, attempted to intervene to uphold two acts petitioner lobbied for on behalf of the PRPD; but which have not yet been fully implemented:  (1) Act No. 173 of December 3, 2007, P.R. Laws An. Tit. 25 § 3111 (2010) (App. I1); (2) Act No. 128 of July 23, 2008, P.R. Laws An. Tit. 25 § 3104 (2010) (App. I2).

## II.    OPINIONS BELOW:

The Judgment (App. A) of the Court of Appeals affirming the district court's denial (Docket No. 67) of Petitioner's motion to intervene (Docket No. 66) is unreported; the Court of Appeals' Order (App. B) denying an en Banc Petition for Mandamus; and a Panel Rehearing and/or Rehearing en Banc, is also unreported.

The opinion of the United States District Court for Puerto Rico in case 3:12-CV-2039, <u>United States v. Puerto Rico</u>, is reported at 922 F.Supp.2d 185 (2013).  (App. C.) Continued...

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 2.

III.     **JURISDICTION:**

On January 17, 2014, the Honorable First Circuit Court of Appeals issued

Judgment (App. A); whereby appeal(s) U.S.C.A. No. 13-2079 and 13-2306 were

dismissed on the merits, for failure to present a substantial question.  Petitioner then

filed:  (1) an "En Banc  Petition for a Writ of *Mandamus*" on February 27, 2014; (2) an

"Emergency Supplementary Motion … to Request the Right to Be Heard in Oral

Argument" on February 28, 2014; and (3) a timely "Petition for Panel Rehearing, and/or

Rehearing En Banc" on March 3, 2014.  All were denied on March 13, 2014.  (App. B.)

A mandate issued on April 14, 2014.

On June 2, 2014, Petitioner filed an "Application for Extension of Time to File a

Petition for a Writ of Certiorari" by U.S.P.S. Priority Mail to the Honorable Supreme

Court of the United States, to the attention of the Honorable Justice Stephen Breyer.

On June 13, 2014, the Honorable Justice Stephen Breyer granted Application 13A-

1220, extending the time to file to August 10, 2014.  (App. D.)

The jurisdiction of this Court is timely invoked under 28 U.S.C. § 1254(1).

IV.     **CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED:**

A.     **Federal jurisdiction:**

The enforcement section of the Violent Crime Control and Law Enforcement Act

of 1994, 42 U.S.C. § 14141 – Cause of action, is reproduced at App. K.  This is the only

federal statute in the original complaint under which Petitioner is seeking intervention.

Continued...

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 3.

The Tenth Amendment and the Eleventh Amendment to the United States

Constitution, U.S. Const., amend. X, amend. XI, are invoked in section VI, subsection F;

when discussing the third question presented for certiorari review.

**B.      State jurisdiction (for the Commonwealth of Puerto Rico):**

Article VI, section 6 of the Constitution of the Commonwealth of Puerto Rico,

Const. P.R., Art. VI, § 6, is invoked to discuss the third question presented for review:

> Article VI.  General Provisions.
> § 6.  Failure to Make Appropriations.
> If at the end of any fiscal year the appropriations necessary for the
> ordinary operating expenses of the government and for the payment of
> interest on and amortization of the public debt for the ensuing fiscal year
> shall not have been made, the several sums appropriated in the last
> appropriation acts for the objects and purposes therein specified, so far as
> the same may be applicable, shall continue in effect item by item, and the
> Governor shall authorize the payments necessary for such purposes until
> corresponding appropriations are made.
> Const. P.R., Art. VI, § 6.

Petitioner is basing his claim for intervention on his successful lobbying at the

Honorable Legislative Assembly for the Commonwealth of Puerto Rico for two acts

granting labor benefits for PRPD police officers.  (App. I.)

Act No. 258 of July 30, 1974 permits the Legislative Assembly of the

Commonwealth of Puerto Rico to promulgate its own rules and by-laws.  The Senate[2]

and the House of Representatives[3] have issued administrative orders to regulate the

practice of lobbying, and to establish a register thereof, in each legislative body.

Continued…

---

[2] Administrative Order No. 2005-16.
[3] Administrative Order No. 2013-4.

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 4.

V.     STATEMENT OF THE CASE:

A.     Statutory Background:

1.     Federal jurisdiction:

Petitioner sought to intervene under FRCP No. 24(a) & (b); in a case filed by the USDOJ against the Commonwealth of Puerto Rico and the PRPD, for a "pattern or practice" of civil rights violations under the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, Pub. L. 103-322, 108 Stat. 1796 (1994) (App. K).

42 U.S.C. § 14141(a) states that it should be "unlawful for any governmental authority, or any agent thereof" to "engage in a pattern or practice of conduct" that "deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States."  42 U.S.C. § 14141(a).  (App. K.)

In such cases, "the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice."  42 U.S.C. § 14141(b).  (App. K.)

On June 21, 2010, the USDOJ held a roundtable discussion to assess 42 U.S.C. § 14141 litigation strategy.  The "Background Briefing Paper" (App. F) published by the USDOJ prior to this meeting summarizes the strategy current to its publication date. The consensus, albeit cautious, is that this litigation strategy by the Special Litigation Section (henceforth, SPL) of the USDOJ has been successful in correcting the "pattern or practice" of civil rights violations.

Continued…

IN THE UNITED STATES SUPREME COURT
~~AMENDED PETITION FOR A WRIT OF CERTIORARI/No.~~
Page No. 5.

This "Background Briefing Paper" (App. F) also included an analysis of the settlement agreements in three jurisdictions: (1) Pittsburgh, PA; (2) Cincinnati, OH; and (3) Los Angeles, CA (App. F, at F-3 to F-5).

Joshua M. Chanin's Implementing § 14141 "Pattern or Practice" Reform: Evidence from Four Police Departments (App. E), *available at* http://pmranet.org/ conferences/OSU2009/ papers/Chanin, Joshua_M._Implementing_Section_14141_ Pattern_or_Practice_Reform-Evidence_from_Four_Police_Departments.pdf, is a somewhat more critical and detailed overview of 42 U.S.C. § 14141 litigation strategy, although it predates the USDOJ's "Background Briefing Paper" (App. F).

Chanin (App. E) also reviews implementation of 42 U.S.C. § 14141 litigation strategy in the jurisdictions of Pittsburgh, PA and Cincinnati, OH; but adds the jurisdictions of Washington, D.C., and Prince George's County, MD.

Chanin details three guidelines common to all settlement agreements: (1) adjustment of each police department's use of force policy; (2) the establishment of a computerized database "Early Warning System" to monitor police officers within each police department; and (3) the establishment of a model citizen complaint process conforming to a rigorous set of standards. (App. E, at E-11 to E-14.) Furthermore, strict timelines are set for these guidelines; and an independent monitor is selected to review compliance with the agreement. (App. E, at E-14 to E-15.) Chanin then presents a model for evaluation of 42 U.S.C. § 14141 litigation strategy. (App. E, at E-17.) Continued...

**IN THE UNITED STATES SUPREME COURT**
~~AMENDED PETITION FOR A WRIT OF CERTIORARI/No.~~
**Page No. 6.**

After a thorough discussion of these jurisdictions, Chanin concludes his report by

stating a *caveat* against the figure of the independent monitor in Detroit, Michigan:

> Beyond the quarterly report filing requirement, there is no accountability
> structure in place to ensure that the monitors themselves are performing
> as expected.  The recent experience in Detroit, where the independent
> monitor was caught having an extramarital affair with the mayor and has
> been accused of lying about her fees and expense reports to the tune of
> millions of dollars (Elrick et al., 2009), illustrates the extent of damage a
> monitor may cause.  Further, there are no mechanisms in place under the
> current arrangement to prevent a rogue monitor intent on padding his or
> her pockets from setting an unattainable standard and forcing an
> extension of the original settlement termination date.  (App. E, at E-37.)

Chanin (App. E) is the only significant critical voice of 42 U.S.C. § 14141

litigation strategy encountered in the literature.

**2.      State Jurisdiction (for the Commonwealth of Puerto Rico):**

As a registered lobbyist for the PRPD at the Legislative Assembly for the

Commonwealth of Puerto Rico, Petitioner was responsible for the approval and/or

implementation of three Acts:  (1) Act No. 173 of December 3, 2007, P.R. Laws An. Tit.

25 § 3111 (2010); (2) Act No. 128 of July 23, 2008, P.R. Laws An. Tit. 25 § 3104 (2010);

and (3) Joint Resolution No. 52 of July 17, 2008 (not codified; and, unfortunately, not

heretofore translated).  (See App. I.)  Only Joint Resolution No. 52 of July 17, 2008 has

been heretofore fully implemented.

Act No. 173 of December 3, 2007, P.R. Laws An. Tit.25 § 3111 (2010) (App. I1),

provided for a monthly two hundred dollar ($200.00) salary increase for PRPD police

officers; to be awarded in two one hundred dollar ($100.00) increments.

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 7.

The first increment was awarded on January 1, 2008; as stipulated.  The second increment to be awarded on January 1, 2009, has not been, heretofore, honored. (Petitioner is also attempting to intervene in case KAC2007-04170 brought forth by two PRPD police associations against the Commonwealth of Puerto Rico and the PRPD in the San Juan Court of First Instance; in relation to distinct but related salary claims on behalf of PRPD police officers.)

Act No. 128 of July 23, 2008, P.R. Laws An. Tit.25 § 3104 (2010) (App. I2), provided for holding a limited-purpose *referendum*; so that PRPD police officers could decide whether to join the Federal Social Security system no later than one hundred and twenty (120) days after its approval.  This *referendum* has not been carried out.

Joint Resolution No. 52 of July 17, 2008 provided for the construction of a monument to honor PRPD police officers fallen in the line of duty.  The monument was inaugurated on February 24, 2011.

**B.    Factual and Procedural Background:**

**1    At the Honorable United States District Court for Puerto Rico:**

The case at the district court was conditionally dismissed upon signing of a Settlement Agreement (Docket No. 57) on July 17, 2013.  Judgment was entered on July 18, 2013 (Docket No. 61).  Full compliance with the two acts Petitioner lobbied for, but which have not been heretofore duly implemented, should have been included in the Settlement Agreement (Docket No. 57), due to the amount of funding involved.

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 8.

Non-compliance with these statutes may be the basis for a counter-claim on the part of PRPD police officers.  Upon a summary denial (Docket No. 67) on August 7, 2013, of Petitioner's motion to intervene (Docket No. 66) filed on August 5, 2013, Petitioner filed appeal(s) U.S.C.A. No. 13-2079 and 13-2306 (Docket No.'s 68 and 76); on August 12, 2013, and on October 7, 2013, at the First Circuit Court of Appeals.

After stating in his Orders dated November 8 and November 18, 2013 (Docket No.'s 91 and 94, respectively) that all in court proceedings would be transcribed for the record, in his Order dated November 26, 2013 (Docket No. 96), the Honorable Presiding Judge, Gustavo A. Gelpí, reversed himself, and denied access to information that was requested, from the record.  Petitioner was thus unable to file a timely Appellate Brief.

2.      **At the Honorable First Circuit Court of Appeals:**

On December 20, 2013, the USDOJ filed a joint motion to dismiss and a response to Petitioner's preliminary injunction.  Petitioner then filed:  (1) a preliminary response to the joint motion to dismiss in U.S.C.A. No. 13-2306, on January 3, 2014; (2) a preliminary response to the motion to dismiss and a preliminary reply to the response; both in U.S.C.A. No. 13-2079, on January 12, 2014.

On January 17, 2014, a panel composed by the Honorable Chief Judge Lynch, and the Honorable Circuit Judges Torruella and Kayatta issued Judgment (App. A); whereby appeal(s) U.S.C.A. No. 13-2079 and 13-2306 were dismissed on the merits, for failure to present a substantial question.

Continued…

IN THE UNITED STATES SUPREME COURT
~~AMENDED PETITION FOR A WRIT OF CERTIORARI/No.~~
Page No. 9.

     Petitioner then filed:  (1) an "En Banc  Petition for a Writ of Mandamus" on February 27, 2014; (2) a motion requesting oral argument for such a writ on February 28, 2014; and (3) a timely "Petition for Panel Rehearing, and/or Rehearing En Banc" on March 3, 2014.  They were all denied on March 13, 2014. (App. B.)  A mandate issued on April 14, 2014, at the First Circuit Court of Appeals.

**3.**     **At the Honorable Supreme Court of the United States:**

     On June 2, 2014, Petitioner filed an "Application for Extension of Time to File a Petition for a Writ of Certiorari" by U.S.P.S. Priority Mail to the Honorable Supreme Court of the United States, to the attention of the Honorable Justice Stephen G. Breyer. On June 13, 2014, the Honorable Stephen G. Breyer granted Application No. 13A-1220, extending the time to file to August 10, 2014.  (App. D.)

     Subsequently, Petitioner filed a "Motion for Appointment of Counsel" (Docket No. 135) at the United States District Court for the District of Puerto Rico on June 24, 2014; denied (Docket No. 136) on June 25, 2014.  Petitioner is filing a similar motion at this Honorable Court, so the Honorable Court may assign appropriate counsel.

**VI.**     **REASONS FOR ALLOWANCE OF THE WRIT:**

**A.**     **The occurrence of a split circuit.**

     In the first notice for leave to appeal filed at the district court (Docket No. 68), Petitioner stated that if a district court's ruling on a motion to intervene as of right is based on questions of law, it is reviewed *de novo*; to the extent that it is based on Continued...

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 10.

questions of fact, it is reviewed for abuse of discretion.  <u>Mova Pharm. Corp. v. Shalala</u>,

140 F.3d 1060 (D.C. Cir. 1998).  See also <u>Mass. School of Law at Andover, Inc. v.</u>

<u>United States</u>, 326 U.S. App. D.C. 175, 118 F.3d 776, 779-80 (D.C. Cir. 1997).  The

denial of a motion to intervene by permission may be reviewed for abuse of discretion.

See <u>Grutter v. Bollinger</u>, 188 F.3d 394, 397-98 (6th Cir. 1999).

> Different circuits treat denial of a motion to intervene as of right differently:
>
> Rule 24(a): Compare <u>Weiser v. White</u>, 505 F.2d 912, 916-17 (5th Cir.),
> *cert. denied*, 421 U.S. 993, 44 L. Ed. 2d 482, 95 S. Ct. 1998 (1975) (party
> can appeal denial of motion to intervene under Rule 24(a) only if he was in
> fact improperly denied intervention---appealability turns on merits of the
> intervention claim), with <u>Commonwealth v. Rizzo</u>, 530 F.2d 501, 504 (3rd
> Cir.), *cert. denied*, 426 U.S. 921, 96 S. Ct. 2628, 49 L. Ed. 2d 375 (1976),
> and <u>Ionian Shipping Co. v. British Law Ins. Co.</u>, 426 F.2d 186, 188-89 (2nd
> Cir. 1970) (denial of motion to intervene is appealable as an appeal from a
> final order regardless of ultimate merits).  <u>Kartell v. Blue Shield of</u>
> <u>Massachusetts, Inc.</u>, 687 F.2d 543, 548 n. 9 (1982) (citations omitted).
>
> What is the holding on this issue at the First Circuit Court of Appeals?:
>
> The First Circuit has treated denials of motions to intervene of right as
> final, appealable orders [regardless of ultimate merits of movant's claim].
> See, e.g., <u>Culbreath v. Dukakis</u>, 630 F.2d 15 (1st Cir. 1980);  <u>Moosehead</u>
> <u>Sanitary Dist. v. S.G. Phillips Corp.</u>, 610 F.2d 49 (1st Cir. 1979).  <u>Kartell v.</u>
> <u>Blue Shield of Massachusetts, Inc.</u>, 687 F.2d 543, 548 n. 9 (1982).

> In the First, Second, and Third Circuits, appealability is distinct from the merits of

the intervention claim; whereas in the Fifth Circuit, appealability depends directly upon

the merits of the claim.

> Although the dismissal of Petitioner's appeal(s) at the First Circuit Court of

Appeals was not based upon lack of subject matter jurisdiction (i.e., the appealability of

Continued...

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 11.

the denial of Petitioner's motion to intervene was not questioned) this is an issue that this Honorable Court could resolve uniformly for all circuit courts, and decide a circuit split.  This is often a compelling reason for the Honorable Supreme Court to grant a petition for a writ of certiorari.  Sup. Ct. R. No. 10(a).

**B.      Petitioner believes he has standing; and should be allowed to intervene.**

Standing is a plaintiff's right to assert a claim in court.  In federal court, standing involves constitutional limitations on federal-court jurisdiction as well as prudential limits on the exercise of that jurisdiction.  Bennett v. Spear, 520 U.S. 154, 162 (1997).

To satisfy constitutional standing, which is required by Article III's limit on federal-court jurisdiction to cases or controversies, U.S. Const., Art. III; plaintiffs must demonstrate:  (1) that they have suffered an injury in fact; (2) that the injury is fairly traceable to the defendant's conduct; and (3) that a favorable decision will redress the injury.  *Id.*  In addition to these immutable requirements, federal courts have adhered to "a set of prudential principles that bear on the question of standing."  *Id.*

Petitioner claims that the Commonwealth's failure to duly implement the acts Petitioner lobbied for (App. I), in collusion with the PRPD, has brought about loss of income, and injured Petitioner's professional reputation as a lobbyist; besides injuring PRPD police officers.  This conduct is traceable to the Commonwealth, and an order from the Honorable Court to duly implement these acts (App. I), as well as to award appropriate damages, would redress the injury.

Continued…

**IN THE UNITED STATES SUPREME COURT**
~~AMENDED PETITION FOR A WRIT OF CERTIORARI/No.~~
Page No. 12.

Prudential limits are concerned with the proper role of courts in a democratic society. *Id.* No single rule governs every issue of prudential standing. See <u>Clarke v. Sec. Indus. Ass'n</u>, 479 U.S. 388, 400 n.16 (1987). Several considerations are typically invoked: (1) litigants may not assert the rights of third parties; (2) courts should refrain from adjudicating matters of wide public significance which amount to generalized grievances; and (3) litigants must demonstrate that their asserted interests are arguably within the zone of interests intended to be protected by the statute, rule, or constitutional provision upon which the claim is based. <u>Int'l Ass'n of Firefighters of Saint Louis v. City of Ferguson</u>, 283 F.3d 969, 973-74 (8th Cir. 2002).

In relation to these prudential limits, Petitioner would claim, first, that even though he is trying to redress injuries done to PRPD police officers via the judicial doctrine of *jus tertii*, Petitioner does not have to rely on these injuries to assert standing on his own. Secondly, although these are matters of high public importance, Petitioner's claims are not generalized grievances. They are directly related to and a result of his efforts as lobbyist for the PRPD. Thirdly, when reviewing intervention, Petitioner will discuss the zone of interest of 42 U.S.C. § 14141 (App. K); and how it relates to Petitioner's claim.

The Judgment (App. A) of the circuit court erroneously states that Petitioner has not suffered "an injury in fact." (App. A, at A-2.) This requirement is mentioned as the first requirement to bring an action on behalf of a third party, i.e., *jus tertii*; but it is also the first constitutional requirement for standing. U.S. Const., Art. III.

Continued...

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 13.

It would be instructive now to consider the distinction between standing, and

intervention; since having standing does not guarantee being granted intervention.

Petitioner moved for both intervention as of right, and for permissive intervention.

1.      **Intervention as of right:**

Fed. R. Civ. P. No. 24(a)(2) states, in relevant part:

Rule 24.Intervention.

(a) Intervention of Right.  On timely motion, the court must permit anyone
to intervene who:…(2) claims an interest relating to the property or
transaction that is the subject of the action, and is so situated that
disposing of the action may as a practical matter impair or impede the
movant's ability to protect its interest, unless existing parties adequately
represent that interest.  Fed. R. Civ. P. No. 24(a)(2).

The Judgment (App. A) issued by the circuit court states:  "Neither the complaint

nor the agreement for the Sustainable Reform of the Puerto Rico Police Department

directly concerns the subject of the legislation for which Diaz-Castro claims to have

lobbied." (App. A, at A-2.)  Petitioner respectfully differs.

The two acts which Petitioner lobbied for (App. I) represent labor benefits for

PRPD police officers.  Both the Commonwealth of Puerto Rico and the PRPD have

been negligent in not honoring these statutory benefits; and this negligence may have

contributed significantly to the perceived "pattern or practice" of civil rights violations.

In this respect, when examining a federal statute, such as 42 U.S.C. § 14141

(App. K), courts are expected to interpret whether a plaintiff's asserted interest falls

within the zone of interest protected by the statute in question.

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 14.

42 U.S.C. § 14141, the enforcement *proviso* of the Violent Crime Control and

Law Enforcement Act of 1994, was enacted to grant jurisdiction to the USDOJ to file

complaints against local police departments in federal court.  This legislation was a

direct response to the unrest that occurred in Los Angeles after the LAPD was taped

beating Rodney King (App. E, at E-8).  An interest that may be used as a counterclaim,

and would help correct the situation, would fall within the zone of interest of the statute;

especially if the statute was enacted to engage in litigation reform.  The two acts (App. I)

which Petitioner lobbied for then clearly relate to the subject of the action brought forth

by the USDOJ.  What must be shown is that this interest is a "significant protectable

interest."  See Donaldson v. United States, 400 U.S. 517, 531, 91 S. Ct. 534, 542, 27 L.

Ed. 2d 580 (1971).  Various circuits interpret this differently.  For the Ninth Circuit, an

interest is "significantly protectable" if protected by a statute or rule; and there is a clear,

unambiguous relationship between the legally protectable interest and the plaintiff's

claim.  United States v. City of Los Angeles, 288 F.3d 391, 398 (9th Cir., 2002).[4]

The right to establish rules to regulate the operations of the Senate and/or the

House of Representatives of the Commonwealth of Puerto Rico was established in Act

No. 258 of July 30, 1974.  Subsequently, both the Senate and the House of

Representatives have established separate registers for lobbyists at each respective

body, by issuing appropriate administrative orders to such effect.[5]

Continued…

---

[4] This requirement is the source of another circuit split; see instant Pet., section VI, subsection F.
[5] See n.2, n.3, *supra*.

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 15.

In addition to loss of earnings, and injuries to Petitioner's professional reputation as a lobbyist for PRPD police officers, Petitioner has suffered other reprisals.  His health has been affected; and he has had to interrupt his studies at the University of Puerto Rico School of Law.  Disposing of the complaint without considering his claim would limit Petitioner's ability to protect his interests; an additional requirement for intervention as of right.  (App. A, at A-1 to A-2.)

A minimal showing of inadequacy is sufficient to assert that no existing party adequately represents Petitioner's claim.  Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 87 S. Ct. 932,17 L. Ed. 2d 814 (1967).  This showing is satisfied by noting that the two acts Petitioner lobbied for were not mentioned in the Settlement Agreement (Docket No. 57); and is another requirement for intervention as of right.  (App. A, at A-1 to A-2.)

Timeliness is also required for intervention.  (App. A, at A-1 to A-2.)  In Devlin v. Scardaletti, 536 U.S. 1, 122 S. Ct.2005,153 L. Ed. 2d 27 (2002), the Honorable Court reversed and remanded a case where an unnamed class member had objected in a timely manner to a settlement agreement.  Petitioner had attempted to intervene as Amicus Curiae in a timely manner.  (See Docket No.'s 29 and 30; filed April 1, 2013.)

Besides being a circuit split, according to Sup. Ct. R. No. 10(a); the circuit court has decided an important federal question in a way that is in conflict with a relevant Court decision, as per Sup. Ct. R. No. 10(c); additional reasons for granting review. Continued...

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 16.

2.      **Permissive Intervention.**

Fed. R. Civ. P. No. 24(b)(1) states, in relevant part:

Rule 24. Intervention.

b.  Permissive intervention.

1.  In General.  On timely motion, the court may permit anyone to intervene who: …(b) has a claim or defense that shares with the main action a common question of law or fact.  Fed. R. Civ. P. No. 24(b)(1).

There are two general requirements for permissive intervention:  (1) a timely motion; and (2) a common question of law and fact between the movant's claim and the main action.  There is an additional jurisdictional requirement:  "permissive intervention ordinarily must be supported by independent jurisdictional grounds."  Moosehead Sanitary District v. S.G. Phillips Corp., 610 F.2d 49, 52 n. 5 (1st Cir.1979), quoted in Int'l Paper Co. v. Town of Jay, ME., 887 F.2d 338, 346 (1st Cir. 1989).

We have already reviewed the issue of an independent ground for jurisdiction, and the issue of timeliness.  What remains to establish is a common question of law and fact between Petitioner's claim for intervention and the original complaint.  Consider the zone of interest of 42 U.S.C. § 14141, enacted to correct a "pattern or practice" of civil rights violations by "appropriate equitable and declaratory relief."  (App. K.)  This is achieved by entering into a settlement agreement[6] that outlines guidelines police departments have to fulfill.  (See App. E, App. F, and App. G.)  This may call for substantial funding from the Commonwealth of Puerto Rico.

Continued…

---

[6] Of the seventeen complaints filed by the USDOJ, only three are being actively litigated.  (App. G.)

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 17.

Due to the Commonwealth´s fiscal crisis, the Settlement Agreement (Docket No. 57) should be placed in its General Budget; after the acts Petitioner lobbied for (App. I) are included therein. The failure to do so strongly suggests collusion between co-defendants PRPD, the Commonwealth of Puerto Rico, and Plaintiff USDOJ; whereby the USDOJ implements the Settlement Agreement (Docket No. 57) effortlessly, while the PRPD and the Commonwealth are exempt from complying with approved statutory benefits for PRPD police officers.[7] This collusion should not be allowed to continue.

This is an important question of federal law to be settled by this Honorable Court; according to Sup. Ct. R. No. 10(c); and another reason to grant the petition.

3.      **A proprietary interest in acts Petitioner lobbied for.[8]**

Petitioner's lobbying efforts on behalf of the PRPD began in 2006, after PRPD police officers failed to achieve *quorum* by a scant margin in the last Social Security *referendum* they held, on March of 2006. Petitioner had no previous training in the law.

Lobbying may be defined as any type of communication with members of the executive and/or legislative branches of a government body, with the purpose of proposing, amending, and/or repealing specific legislation. Lobbying may also impact executive orders; and rules and regulations of executive agencies.

Continued…

---

[7] Case KAC2007-04170, filed at the San Juan Court of First Instance, for withheld salary raises for PRPD police officers, has been active for over seven years. Although the case is not actively being litigated, no settlement agreement has been stipulated, and no payment to PRPD police officers has occurred, as of this writing. This case is further suggestive of collusion; and clearly shows negligence on the part of the PRPD and the Commonwealth of Puerto Rico.

[8] See Yaniré Batista Orama, Cabildeo: ¿Derecho constitucional o subterfugio para la corrupción?, 42 Rev. D.P. 47 (2003).

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 18.

This practice is regulated in the federal jurisdiction by the Lobbying Disclosure Act of 1995, 2 U.S.C.A. § 1601 – 1612, P.L. 104-65, 109 Stat. 691(1995);[9] which was substantially amended by the Honest Leadership and Open Government Act of 2007, U.S.C. § 1601 *et seq.*, P.L. 110-81, 121 Stat. 735 (2007).  The Constitution of the United States of America,[10] as well as the Constitution of the Commonwealth of Puerto Rico[11] protect the freedom of expression; and the right to ask the government to redress an injury---the cornerstone of a democratic society.  In the Commonwealth of Puerto Rico, lobbying at the Legislative Assembly is regulated at the level of an administrative order; permitted by Act No. 258 of July 30, 1974.

This Honorable Court established that to assure the proper functioning of a system of elected representatives, these representatives should be informed of the needs of the population at large; and that the Sherman Act, 15 U.S.C. §§ 1 - 7, P.L. 107 – 272, 26 Stat. 209 (1890), did not apply to lobbying, because it was enacted to regulate corporate activity; not political activity.  Eastern Raildroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961).  However, the Honorable Court established that a person may not defame another in the process of redressing an injury; nor incur in extortion, money laundering, and/or corruption.  McDonald v. Smith, 472 U.S. 479 (1985).  Petitioner has not heretofore engaged in unethical, immoral, and/or illegal activities to further his professional lobbying efforts.

Continued...

---

[9] However, it does not apply to Petitioner's lobbying efforts at the Commonwealth of Puerto Rico.
[10] U.S. Const., amend I.
[11] Const. P.R., Art. II, § 4.

IN THE UNITED STATES SUPREME COURT
~~AMENDED PETITION FOR A WRIT OF CERTIORARI/No.~~
Page No. 19.

The Honorable Court then established that joint efforts to influence elected representatives do not violate anti-monopolistic regulations, as long as these efforts do not involve illegal practices such as bribes, and/or selling influences. United Mine Workers of America v. Pennington, 381 U.S. 657 (1965).

Lobbying is a libertarian interest protected by the United States Constitution. The question is whether a lobbyist has an additional, proprietary interest in a state act that was lobbied for; in addition to the libertarian interest; so that standing may be asserted. This issue is particularly important if the statute in question has not been implemented.

This is an important question of federal law to be settled by this Court; in accordance with Sup. Ct. R. No. 10(c); and an additional reason to grant review.

C.     **42 U.S.C. § 14141 is unconstitutionally vague.**[12]

A claim of unconstitutional vagueness is usually related to a deficiency in due process, and occurs when a statute is not clearly and explicitly stated; i.e., if it contains a factual and/or textual error that makes it difficult to interpret by an average person. In this respect, 42 U.S.C. § 14141(b) states, in relevant part:

> (b) Civil Action by Attorney General.
> Whenever the Attorney General has reasonable cause to believe that a violation *of paragraph 1*(emphasis added) has occurred, the Attorney General... may in a civil action obtain appropriate equitable and declaratory relief.... 42 U.S.C. § 14141(b).  (App. K.)

The problem, however, is that there is a section (a); but no paragraph 1.

Continued...

---

[12] See Anthony G. Amsterdam, Note, The Void-For-Vagueness Doctrine in the Supreme Court, 109 U. Pa. L. Rev. 67 (1960).

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 20.

It could be argued that the reference to a paragraph 1 that is not contained in the statute, as stipulated, may be easily interpreted as referring to a section (a) that is, without undue loss of meaning; thus reducing an error in the text to a referential discrepancy.  Nevertheless, the presence of even the smallest mistake in a statute, as duly approved, is strongly suggestive of carelessness on the part of the legislative and the executive branches involved (with all due respect).  It seems as if they were in a haste to correct a difficult situation; and the repercussions of said statute may not have been completely considered.[13]

The question is whether this mistake, and/or discrepancy, in and of itself, renders the statute unconstitutionally vague.  Petitioner would first compare and contrast the instant case as it originates at the district court:  United States v. Puerto Rico, *supra*, Case No. 3:12-cv-02039-GAG (App. C); with a similar case in Oregon, through an unpublished opinion and order:  United States v. City of Portland, OR; Case No. 3:12-cv-02265-SI (App. H).

In Puerto Rico, no additional party was allowed to intervene.  In Oregon, the Portland Police Association (henceforth, the PPA) was granted intervention; and the Albina Ministerial Alliance Coalition for Justice and Police Reform (henceforth, the AMA Coalition) was granted enhanced *Amicus Curiae* status.

Continued…

---

[13] This legislative approach is from the specific, to the general; but Petitioner questions, in honesty and good faith, whether this is the correct legislative approach.  The recent events at Ferguson, MO (App. J-13) raise serious doubts that 42 U.S.C. § 14141 litigation strategy, as is being currently implemented, can effectively curtail issues of impropriety on the part of police departments; and should be, perhaps, more closely examined by the Court.

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 21.

Petitioner would like to consider whether such difference in procedural treatment, in and of itself, could be considered an abuse of discretion on the part of the district court in Puerto Rico.  Petitioner begins by noting that the district court in Puerto Rico issued an order (Docket No. 7) on December 30, 2012, setting a deadline of April 1, 2013, for *Amicus Curiae* briefs.

From the outset, the district court in Puerto Rico does not contemplate that any party would conceivably have a right, and/or would be permitted to intervene; not police associations, and apparently not individuals, *per se*; only entities, as *Amicus Curiae*:

> Any bona fide governmental or private entity (i.e. State, Commonwealth or U.S. territory or subdivision thereof, police union or association, civil rights organization, etc.), duly represented by counsel that is admitted to this court, is hereby invited to file an amicus brief on or before April 1, 2013. This deadline is firm.  (Docket No. 7, ¶ 2.)

On December 21, 2012, the district court in Oregon issued an order requiring any person that wished to intervene to file a motion no later than January 8, 2013; and any party opposing such motion to file an opposition no later than January 22, 2013.  (App. H, at H-3.)  On December 8, 2012, the PPA had already filed its motion to intervene (App. H, at H-2); the AMA Coalition filed its motion to intervene on January 8, 2013. The district court in Oregon granted the PPA and denied the AMA Coalition on intervention for remedy purposes; deferred ruling on both for liability purposes; but granted the AMA Coalition enhanced *Amicus Curiae* status for remedy purposes.  (App. H, at H-3.)  Both complaints were filed under 42 U.S.C. § 14141.  (App. K.)

Continued...

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 22.

The district court for Puerto Rico granted *Amicus Curiae* status only to the American Civil Liberties Union, which initiated an investigation that eventually led to the complaint being filed; and to Gregorio Iguarta de la Rosa, Esq. Both of these *Amici* filed briefs that were distinctly supportive of the district court's effort; but would not allow nor suggest the smallest alteration to the proceedings, as they were being held. In contrast, the district court in Oregon, however, held a required Fairness Hearing, which allowed modifications to the proposed settlement agreement. This difference in procedural history is strongly suggestive of a violation of procedural due process and equal protection of the law clauses for Petitioner, and for PRPD police officers, under the Fourteenth Amendment to the United States Constitution. U.S. Const, Amend XIV.

Furthermore, and perhaps, more to the point, Petitioner questions why the expectation of a settlement agreement is not mentioned explicitly in the statute; nor are there any additional procedural safeguards, such as guidelines for drafting settlements; when this expectation is the procedure followed by the SPL? We now examine the doctrine of unconstitutional vagueness.

The doctrine of unconstitutional vagueness is usually considered for criminal cases. However, Petitioner considers that the issues contained therein may be applied to the instant case. A statute may be considered void for vagueness if it does not specify clearly what procedures are to be followed when enforcing it, so that the result is usually an arbitrary application.

Continued...

IN THE UNITED STATES SUPREME COURT
~~AMENDED PETITION FOR A WRIT OF CERTIORARI/No.~~
Page No. 23.

This Honorable Court has stated that a void for vagueness statute "...
impermissibly delegates basic policy matters to policemen, judges, and juries for
resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary
and discriminatory application." <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108-09,
33L. Ed. 2d 222, 92 S. Ct. 2294 (1972); <u>Smith v. Goguen</u>, 415 U.S. 566, 572-73, 94 S.
Ct.1242, 39 L. Ed. 2d 605 (1974).

The general rule is that constitutional challenges of vagueness must be based on
a statute's application to the particular case. <u>United States v. Mazurie</u>, 419 U.S. 544,
550, 42 L. Ed. 2d 706, 95 S. Ct. 710 (1975); <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 37
L. Ed. 2d 830, 93 S. Ct. 2908 (1973).  After comparing the procedural history of the
case in Puerto Rico, with a similar case in Oregon (App. H), Petitioner contends that the
district court in Puerto Rico is not allowing intervention of *any* party in the complaint; in
an arbitrary and ad hoc application of the statute; strongly suggestive of bias and
discrimination to Petitioner, to PRPD police officers, and to any potential intervenor.

If we were to construe the need for a *prima facie* claim of unconstitutional
vagueness, 42 U.S.C. § 14141 (App. K), as it stands, lends itself very easily to arbitrary
interpretations.  Such an argument is, perhaps, outside the scope of this Petition; but is
an important question of federal law that should be settled by this court; in accordance
with Sup. Ct. R. No. 10(c); and another reason to grant the petition.[14]

Continued...

---

[14]  The shooting of Michael Brown on August 9th, 2014, in Ferguson, MO, is not the only recent death involving the
police.  On August 11th, 2014, Ezel Ford was shot and killed by the LAPD in South Los Angeles.

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 24.

D.    42 U.S.C. § 14141 is unconstitutionally overbroad.[15]

An statute, as drafted or interpreted, may be considered overbroad if it prohibits constitutionally protected behavior.  Arguments of unconstitutionality because of overbreadth address not only a litigant's behavior, but that of hypothetical third parties not present before the court.  In Thornhill v. Alabama, 310 U.S. 88,60 S. Ct. 736,84 L. Ed. 1093 (1940), the Honorable Court first established this exception, in what has been designated as the overbreadth doctrine.  In Thornhill v. Alabama, Id., this Honorable Court invalidated a statute on its face; because it violated the First Amendment.  U.S. Const., amend. I.

In Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 105 S. Ct. 2794, 86 L. Ed. 2d 394(1985), however, the Honorable Court invalidated only those portions of the statute in question considered constitutionally overbroad, and allowed those portions deemed to be constitutional to continue in effect.  Apparently, the Honorable Court is moving away from a prima facie approach to overbreadth challenges, and considering more cases for partial invalidation only.

An important right protected by the First Amendment to the United States Constitution, U.S. Const., amend. I, is freedom of the press.  The recently named Technical Compliance Advisor (henceforth, T.C.A.), Mr. Arnaldo Claudio, has been prohibited from making statements to the press unless cleared by the district court.[16]

Continued...

---

[15] See Lewis Sargentich, Note, The First Amendment Overbreadth Doctrine, 83 Harv. L. Rev. 844 (1970).
[16] See Docket No. 122, joint motion requesting appointment of T.C.A., filed on June 4th, 2014; and No. 123, Order granting appointment, filed on June 5th, 2014.

IN THE UNITED STATES SUPREME COURT
~~AMENDED PETITION FOR A WRIT OF CERTIORARI/No.~~
Page No. 25.

However, there are also other instances when a civil statute may be considered overbroad.  These instances usually involve claims of unconstitutional vagueness, also:

> Overbreadth:  Overbreadth differs from vagueness in that the constitutional defect is a law's excessive reach, not its lack of clarity; yet the defects are related.  Philip Weinberg, Editor-in-Chief, <u>MacMillan Compendium:  The Supreme Court</u> 536 (1999).

In <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973), the Honorable Court further refined this doctrine through the concept of substantial overbreadth, that imposed strict requirements to grant an overbreadth challenge of unconstitutionality, *prima facie*; but alternatively allowing partial invalidation.  This approach was limited to laws addressing behavior, not regulating expression.

The instant case, besides being void for vagueness, may also be seen as being overbroad, especially as it interprets 42 U.S.C. § 14141 (App. K).  The district court, with full avowal of the parties in collusion, has ruled distinctly not consistent with previous rulings, a clear violation of *stare decisis*:  i.e., if a member of a class affected by a settlement agreement is not permitted to object, this is a violation of constitutional due process and equal protection of the law.  The statute may be considered overbroad because it was interpreted too broadly, in ways it was not originally meant to be.

Petitioner recognizes that the overbreadth doctrine can be, in and of itself, quite complex; and the question of whether to make a facial challenge of overbreadth to the constitutionality of 42 U.S.C. § 14141 (App. K), or as applied to the particulars of the instant case, even more so.

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 26.

To further complicate the issue, there are arguably two types of overbreadth facial challenges to a statute:

> Facial challenges can take at least two qualitatively distinct forms. First, a facial challenge may be asserted as an "overbreadth facial challenge," which predicates facial invalidity on some aggregate number of unconstitutional applications on an otherwise valid rule of law. Second, and quite distinctly, a facial challenge may be asserted as a "valid rule facial challenge," which predicates facial invalidity on a constitutional defect inhering in the terms of the statute itself, independent of the statute's application to particular cases (quotations and citations omitted). Marc E. Isserles, <u>Overcoming Overbreadth:  Facial Challenges and the Valid Rule Requirement</u>, 48 Am. U. L. Rev. 359 (1998).

Petitioner would thus rather ask the Honorable Court if there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment[, and/or other constitutional] protections of parties not before the Court for it to be facially challenged on overbreadth grounds." <u>Members of City Council of Los Angeles v. Taxpayers for Vincent</u>, 466 U.S. 789, 801,104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984).

This is an important question of federal law to be settled by this court; according to Sup. Ct. R. No. 10(c).  Another reason to grant review is the wave of violence that is sweeping police departments;[17] to gage the efficacy of 42 U.S.C. § 14141 (App. K).

E.    The Settlement Agreement (Docket No. 57) should be approved
      by the Legislative Assembly of the Commonwealth of Puerto Rico.

In <u>United States v. Puerto Rico</u>, *supra*, at 187, the district court "...highly encourages the parties to promptly provide copies of this Order to the Presidents of the Commonwealth Senate and House of Representatives."

Continued...

----

[17] See n. 13, n. 14, *supra*.

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 27.

With the current fiscal crisis, it will be difficult to comply with both the terms of the Settlement Agreement (Docket No. 57) and the acts Petitioner lobbied for (App. I). Nevertheless, Petitioner is also attempting to intervene in case KAC 2007-04170 at the Court of First Instance for the Commonwealth of Puerto Rico.  This is a case filed by two police associations:  (1) "Frente Unido de Policías Organizados," or "United Front of Organized Police Officers" (henceforth, "F.U.P.O."); and  (2) "Concilio Nacional de Policías," or "National Council of Police Officers" (henceforth, "Conapol"); against the Commonwealth of Puerto Rico and the PRPD, for withheld salary raises for PRPD police officers.  Petitioner is attempting to include a claim, as lobbyist for the PRPD, for full compliance with Act No. 173 of December 3, 2007, P.R. Laws An. Tit. 25 § 3111 (2010) (App. I1); and is considering including a claim for compliance with Act No. 128 of July 23, 2008, P.R. Laws An. Tit.25 § 3104 (2010) (App. I2).

After including these claims in the Settlement Agreement (Docket No. 57), the agreement itself should be included in the General Budget, for approval of the Legislative Assembly of the Commonwealth of Puerto Rico.  Otherwise, these acts may never be fully enacted.  This is perhaps the most important reason for granting Petitioner's intervention request.  Article VI, section 6 of the Constitution of the Commonwealth of Puerto Rico,  Const. P.R., Art. VI, § 6, implies that a significant expense of the Commonwealth must be included in the General Budget, or in a special appropriation bill.  (See instant Pet., at 3.)

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 28.

Petitioner notes that this issue involves a federal complaint by the United States against Puerto Rico under a federal statute, and its dismissal through a settlement agreement between the United States and Puerto Rico.  The question may be divided into two distinct inquiries:  (1) can the United States file such a complaint, with the expectation that it will not be litigated; and (2) can the Commonwealth enter into such an agreement, to provide either monetary and/or other equitable relief, without approval of its Legislative Assembly.

The first of these inquiries seems to relate to the Eleventh Amendment to the United States Constitution, U.S. Const., Amend.  XI, which states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.  U.S. Const., Amend. XI.

The Eleventh Amendment was ratified in 1795 as a response to the Honorable Court's decision in Chisholm v. Georgia, 2 U.S. 419, 1 L. Ed. 440 (1793), where a private citizen sued the state of Georgia; to enjoin private citizens to sue a state.  In Hans v. Louisiana, 134 U.S. 1, 10 S. Ct. 504, 33 L. Ed. 842 (1890), the Honorable Court held that the Eleventh Amendment reaffirms that states possess sovereign immunity, and are immune to suit in federal court from private citizens.

In Ramírez v. Puerto Rico Fire Services, 715 F.2d 694 (1st Cir. 1983) the First Circuit Court of Appeals held that Puerto Rico should be treated as a state for Eleventh Amendment purposes.

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 29.

The United States, however, may present a claim against a state in federal court; as done in <u>United States v. Mississippi</u>, 380 U.S. 128, 85 S. Ct. 808, 13 L. Ed. 2d 717 (1965). In this case, the State of Mississippi, three Election Commissioners, and six county voting registrars were charged with racial discrimination in negro voter registration.

The Tenth Amendment to the United States Constitution, U.S. Const, Amend. X, has been used for claims of unconstitutionality. It states:

The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people. U.S. Const., Amend. X.

In <u>New York v. United States</u>, 505 U.S. 144, 112 S. Ct. 2408, 120 L. Ed. 2d 120 (1992); in an opinion by the Honorable Retired Justice Sandra Day O'Connor, the Honorable Court struck down a section of a gun control statute, 18 U.S.C. § 922(q), as unconstitutional under the Commerce Clause of the Tenth Amendment, U.S. Const., Amend. X; and in <u>Printz v. United States</u>, 521 U.S. 898, 117 S. Ct. 2365, 138 L. Ed. 2d 914; in an opinion by the Honorable Justice Antonin Scalia, the Honorable Court invalidated certain interim provisions of the Brady Handgun Violence Prevention Act, for violating the Tenth Amendment, U.S. Const., Amend. X. Although sparingly used, the Commerce Clause could be used to invalidate 42 U.S.C. § 14141 (App. K), either on its face, or partially; if the statute was forcing the Commonwealth to comply with federal regulations.

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 30.

The second inquiry; whether a significant expense of the Commonwealth must be approved in the General Budget, or in a special appropriations bill; has hardly been examined in the courts for the Commonwealth of Puerto Rico. F.M. Production, Inc., v. Corporación para la Difusión Pública, Case No. KLAN 2012-0629, from the Honorable Puerto Rico Court of Appeals, is an appeal of Case No. KAC 2001-8649 (505); in which a private company, F.M. Production, Inc., sued the Corporation for Public Broadcasting, for infringement of contract. The Court of Appeals upheld the San Juan Court of First Instance; in that since the corporation's budget was reduced, it was justified in rescinding a contract.

The ultimate interpreter of a state's constitution is the state's court of last resort. In the instant case, the second inquiry may be certified to the Honorable Supreme Court of the Commonwealth of Puerto Rico. However, this issue involves an interpretation of Article VI, section 2, of the Constitution of the United States as "the supreme law of the land" (the Supremacy Clause). U.S. Const., Art. VI, § 2.

This is an important question of federal law that should be settled by this Honorable Court; in accordance with Sup. Ct. R. No. 10(c).

**F.**     **Irreparable harm is occurring to Petitioner; and to PRPD police officers.**

Because of 42 U.S.C. § 14141's (App. K) vagueness and overbreadth, the district court refused Petitioner's claim for intervention; and allowed irreparable harm to occur to Petitioner; and to PRPD police officers.

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 31.

Petitioner has suffered irreparable harm in the form of economic damages, for loss of income and damage to Petitioner's professional reputation; in addition to other reprisals, which would make it unduly burdensome for Petitioner to pursue a separate case. In addition, Petitioner claims, via the judicial doctrine of *jus tertii*, that PRPD police officers are also suffering irreparable harm in the form of economic damages, and loss of authority as agents of the public order. Particularly relevant is the student strike that took place at the University of Puerto Rico from May 2010 until February of 2011.

There are two additional issues related to these claims of irreparable harm. The first issue is whether private individuals may be allowed to present a counter and/or a cross claim in federal court if allowed to intervene; and whether private individuals should be allowed to intervene in public suits of this nature; and specifically, in 42 U.S.C. § 14141 (App. K) complaints. Petitioner will proceed to examine these issues briefly, as they relate to the instant Petition.

1.  **Irreparable harm to Petitioner.**

Because of the public nature of this complaint, Petitioner would defer a more complete discussion of the irreparable harms he has suffered in his role as a registered lobbyist for PRPD police officers, with two exceptions. The first exception is that these irreparable harms have been extensive, and would make it unduly burdensome for Petitioner to begin a separate complaint, if denied intervention. The second exception is that these irreparable harms are directly linked to his role as lobbyist for the PRPD.

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 32.

2.      **Irreparable harm to PRPD police officers.**

Without entering into the merits of Petitioner's *jus tertii* claim for PRPD police

officers, Petitioner would like to briefly examine these damages; and, to expedite this

discussion, has gathered a series of newspaper articles, in Appendix J.[18]  (App. J.)

Many valid legal claims of PRPD police officers are still unattended.  (App. J, at

J-1 to J-9.)  Many of these claims relate to unpaid salary raises.  Case No. KAC 2007-

04170 at the San Juan Court of First Instance, presents salary claims that are distinct

from the claim for implementation of Act No. 173 of December 3, 2007, P.R. Laws An.

Tit. 25 § 3111 (2010).  Although the case has been active for more than seven (7)

years, no monies have been paid to date to PRPD police officers.  This was the main

reason for the demonstration that took place on July 2, 2014.  (App. J, at J-3 to J-5, J-7,

and J-8.)  Payment of these claims should be included in the Settlement Agreement

(Docket No. 57).

More than six (6) years have passed since  Act No. 173 of December 3, 2007,

P.R. Laws An. Tit. 25 § 3111 (2010) (App. I1), and Act No. 128 of July 23, 2008, P.R.

Laws An. Tit. 25 § 3104 (2010) (App. I2), were approved.  There is no showing of just

cause as to why the salary raise provided by Act No. 173 of 2007 has not been fully

implemented; nor as to why the Federal Social Security *referendum* provided by Act No.

128 of 2008 has not taken place.

Continued…

---

[18] Although most of these articles are in Spanish, the Honorable Court may order any of them translated, under Sup. Ct. R. No. 31.  Petitioner would like to assure the Honorable Court, in honesty and good faith, however, that his rendition of the contents of the stories is true, and accurate, to the best of his knowledge.

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 33.

The failure to implement these two acts violates the right to due process and to equal protection of the law(s) of PRPD police officers. Constitutional due process protections originate from:  (1) the Fifth Amendment to the U.S. Constitution, which states, in relevant part, that "... [n]o person shall... be deprived of life, liberty, or property, without due process of law...," U.S. Const. amend. V; and (2) the Fourteenth Amendment to the U.S. Constitution, which states, in relevant part, "... nor shall any State deprive any person of life, liberty, or property, without due process of law...," U.S. Const. amend. XIV.

Constitutional equal protections of the law(s) originate from the Fourteenth Amendment to the U.S. Constitution, which states, in relevant part, that "...[no state shall] deny to any person within its jurisdiction the equal protection of the laws...," U.S. Const. amend. XIV.

More than three hundred million dollars is owed to PRPD police officers for withheld raises; and at least two hundred million dollars would have been paid to the Federal Social Security system if the *referendum* had succeeded:  one hundred million by the PRPD; and an additional one hundred million by PRPD police officers.

However, economic harm is not the only damage to PRPD police officers. There is a perceived loss of authority towards PRPD police officers both from the economic damages; and due to the fact that no party has been allowed to intervene, to mitigate the damages PRPD police officers are suffering.

Continued...

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 34.

During the past six months, many violent incidents have befallen agents of the public order in Puerto Rico, especially PRPD police officers.  PRPD police officers Valerie Ortíz and José Rosario were shot on June 3, 2014, during a robbery attempt at J.F. Montalvo in Dorado, Puerto Rico.  Shown in Appendix J-1 is a group of PRPD police officers donating blood for them.  (App. J, at J-1.)  José Marrero Cartagena, a San Juan Municipal Police officer, was shot on July 16, 2014; while intervening with two individuals caught stealing electricity cables for their copper.  (App. J, at J-10.)  On August 6, 2014, PRPD police officer Juan Carlos Hernández Reillo was hit by a Ford Explorer driven by Rosa Robles Veliga, driving under the influence of alcohol, resulting with fractures on both legs.  (App. J, at J-11 and J-12.)  On August 19, 2014, PRPD undercover agents Geniel Amaro Fantauzzi and Julio C. Mundo Feliciano were shot while on an operative at the April 1 Housing Project in Las Piedras, Puerto Rico.  (App. J, at J-14 to J-19).  Geniel Amaro Fantauzzi passed away on August 25, 2014.[19]

The way the district court has handled the case, because of 42 U.S.C. § 14141's (App. K) vagueness and overbreadth, has brought about a perceived loss of authority and low morale among PRPD police officers; which may be the reason for the increased number of violent incidents involving them as victims.  Although this is a subjective value judgment, and anecdotal in nature, it is stated in honesty and good faith.

Continued…

_____

[19] These are not the only violent incidents involving PRPD police officers as victims.  On April 10th, 2014, PRPD agent Marieli Morales Santiago died; after a mysterious car accident on April 4th, 2014.  On March 10th, 2014, PRPD agent Joaquín Correa Ortega was wounded while working undercover; and subsequently died.

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 35.

This is occurring because the case is being handled in a unilateral manner, with no opportunity for PRPD police officers to object to any of the proceedings. In addition, the district court has failed to recognize the disparity that exists between the salaries paid to PRPD police officers, and salaries paid to police officers in other jurisdictions of the United States. Appendix J shows a graph comparing starting salaries of two hundred and sixty-five (265) police agencies in Florida. (App. J, at J-20.)

3.      **Cross claim by Petitioner and/or PRPD police officers.**[20]

Since private persons are not permitted to present a claim against states in federal court, we question whether Petitioner and/or PRPD police officers could present a cross claim against the Commonwealth, if allowed to intervene. In Ex parte Young, 209 U.S. 123 (1908), the Honorable Court held that when an individual, who ordinarily is an agent of the state, is acting unconstitutionally, he ceases then to be an agent of the state, and an injunction can be presented in federal court to the individual, enjoining him/her from continuing such acts. This approach may be used to seek relief.

4.      **Participation by private parties in public law complaints.**[21]

The mechanism of intervention was introduced in the federal court system so that unrepresented parties may participate in a suit that affects them. The standards for granting intervention may vary, however, when considering a public versus a private

Continued...

_____

[20] See Michael E. Solimini, Congress, Ex parte Young, and the Fate of the Three-Judge District Court, 70 U. Pitt. L. Rev. 101 (2008).
[21] See Justin P. Gunter, Note, Dual Standards for Third-Party Intervenors: Distinguishing Between Public-Law and Private-Law Intervention, 66 Vand. L. Rev. 645 (2013).

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 36.

suit: "[I]n public-law litigation, third parties have a far greater justification for entering the proceedings."[22]  Thurs, standards of intervention for public law suits should be more flexible than for private suits.

There are two standards for intervention which have not been yet carefully examined by the Honorable Court, and which are the source of circuit splits.[23]  The first of these is the question of what constitutes a sufficient interest for intervention;[24] and the second whether the interests of the proposed intervenor are adequately represented by the existing parties.[25]

In order to examine these two standards as they apply to the instant case, Petitioner would note that his interest is distinct from the general public.  Petitioner's interest as lobbyist for the Legislative Assembly of the Commonwealth of Puerto Rico affects Petitioner, personally; and via the judicial doctrine of *jus tertii*, PRPD police officers.  In this respect, this interest should be held to be sufficient, legally protectable; and not adequately represented by existing parties; as has been discussed in previous sections of the instant Petition.

Petitioner would like to mention that a case was presented by Petitioner for discrimination because of a handicap, in the selection for the *Jorge Alberto Ramos Comas* Legislative Internship, at the courts for the Commonwealth of Puerto Rico.  Continued...

---

[22] *Id.,* at 647.
[23] *Id.,* at 661.
[24] *Id.,* at 664.
[25] *Id.,* at 669.

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 37.

If allowed to intervene, Petitioner would perhaps be able to present this claim as a cross claim, and participate in this internship. Petitioner has some ideas that would help improve the economic crisis of the Commonwealth.[26] For instance, none of the existing hydroelectric power plants are being operated by the Puerto Rico Power Authority; one of the biggest spenders in the Commonwealth, because of the oil (bought at increasingly higher prices) that is burned to produce electricity.

Thus, if allowed to intervene as lobbyist for the Commonwealth of Puerto Rico, Petitioner, as a legislative *liaision*, would be able to contribute positively to enforcing the terms of the Settlement Agreement (Docket No. 57).[27] Petitioner is also in contact with existing police associations; especially with Mr. Diego Figueroa Torres, President of "F.U.P.O.," and an important leader in the PRPD labor movement. Mr. Diego Figueroa Torres is also responsible for organizing the existing police associations in Puerto Rico under a supra entity denominated "Policías en Acción Concertada," or "Police Officers in Concerted Action" (henceforth, "P.A.C.").[28]

Numerous rules and regulations recently enacted within the PRPD should be examined for constitutional violations to the rights of PRPD police officers. Continued…

---

[26] Act No. 123 of August 3rd, 2014, which establishes the Authority for Integrated Transport; an entity that is supposed to encompass the Urban Train, the Metropolitan Bus Authority, and the Authority for Marine Transport; is an example of the Commonwealth's dire economic situation. Shortly after this bill was approved, bus fares were increased; as well as the fare for the Urban Train.
[27] Puerto Rico was designated in 1994 as a High Intensity Drug Trafficking Area (HIDTA). Whereas Congress periodically assigns special appropriations in support of the efforts to combat drug trafficking, PRPD police officer salaries are among the lowest in the United States. Petitioner would also attempt to bring the salaries of PRPD police officers to the national average in a comparable jurisdiction; e.g., in Florida. (See App. J-20.)
[28] The "P.A.C." is composed of eight PRPD police associations. (See App. J, at J2, J3, and J5.)

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 38.

For instance, the reorganization of the PRPD, which took place upon enactment of Act No. 53 of June 10, 1996, P.R. Laws An. Tit. 25 § 1001 *et seq.* (and subsequent repeal of Act No. 26 of August 22, 1974); briefly summarized, has rendered most proceedings against PRPD police officers summary proceedings, without the requirement of an administrative hearing; in a clear violation of the due process and equal protection of the law clauses; as protected by the Fifth and the Fourteenth Amendment to the United States Constitution; U.S. Const., amend. V, amend. XIV.

Lastly, there are two important administrative issues that Petitioner considers should have been included in the Settlement Agreement (Docket No. 57), but were not. The first issue relates to the reported statistics for type I crimes, which are constantly being critized for lack of uniformity and regularity. A methodology for reporting type I crimes should be developed, and implemented. The second issue relates to an incident that occurred recently, when employees of the Commonwealth's "Centro de Servicios al Conductor," or "Center of Services for Drivers" (henceforth, "C.E.S.C.O.") were caught erasing traffic violations issued by PRPD police officers. Petitioner believes an independent system should be in place to verify that traffic tickets are paid. Both issues should be addressed when addressing the establishment of a complaint process within the PRPD; the last requirement of the Settlement Agreement (Docket No. 57).

If Petitioner were to try to summarize the irreparable damages to PRPD police officers, and further, to explain the rationale thereof; Petitioner would propose that they Continued...

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 39.

originate from the fact that 42 U.S.C. § 14141 (App. K) is totally unilateral; and makes no *proviso* for the opinions and/or objections that individual police officers may have to the complaint.  This is particularly important in Puerto Rico, due principally to the dire economic situation that the Commonwealth is undergoing.  For instance, the payments that PRPD police officers were to have received in September of 2014 for case KAC 2007-04170 went to retired PRPD police officers under Act No. 70 of July 2, 2010.

This is another example of what Petitioner visualizes as a "pattern or practice" of reprisals that PRPD police officers have to endure whenever they are forced to ask for a legal remedy so that their labor rights are not violated.  Indeed, Petitioner contends that, instead of being the exception, this has become the *de facto* rule.  PRPD police officers should be allowed to refute the "pattern or practice" allegation of civil rights violations contained in the original complaint with a "pattern of practice" cross claim of the numerous instances when the Commonwealth has violated their labor rights, in a constitutional violation of due process and equal protection of the laws; as protected by the Fifth and the Fourteenth Amendment to the United States Constitution; U.S. Const., amend. V, amend. XIV.

Petitioner would propose that a complaint filed under 42 U.S.C. § 14141 (App. K) should provide additional procedural  due process and equal protection of the law protections for the police officers involved.  These protections may take the form of, first, a series of surveys to PRPD police officers in the instant case.

Continued…

IN THE UNITED STATES SUPREME COURT
AMENDED PETITION FOR A WRIT OF CERTIORARI/No.
Page No. 40.

An additional protection would be to change from a Technical Compliance Advisor, to a Committee of all the parties involved to oversee enforcement of the agreement.  Otherwise, both the United States and the Commonwealth of Puerto Rico may end up spending an inordinate amount of funds; but see very little improvement.

These are important questions of federal law that should be settled by this Honorable Court; in accordance with Sup. Ct. R. No. 10(c).

## VI.    CONCLUSION AND SUMMARY:

**FOR ALL THE REASONS STATED ABOVE,** Movant requests that the Honorable Supreme Court of the United States grant certiorari review in the instant petition.

## VII.    PRAYER FOR RELIEF:[29]

**WHEREFORE,** Jorge Díaz-Castro hereby respectfully petitions this Honorable Supreme Court of the United States to grant the instant Petition for a Writ of Certiorari.

**RESPECTFULLY SUBMITTED,** in San Juan, P.R., on October 29, 2014.

Jorge Díaz-Castro, PRO SE
P.O. Box #9021288
San Juan, P.R.  00902-1288
Email:  transcripciones@mail.com

---

[29] Before ending the instant Petition, Petitioner would like to mention three cases that have troubled him ever since the case at the district court was filed:  (1) the case of Pablo Casellas Toro and of (2) Roberto Quiñonez Rivera, both of which have been convicted for murder; and (3) the case of Hilton Cordero Rosario, convicted for various charges related to child pornography.  Pablo Casellas Toro is the son of the Hon. Salvador E. Casellas, a retired Judge from the First Circuit Court of Appeals; Roberto Quiñonez Rivera is a former PRPD police officer; and Hilton Cordero Rosario is the former Police Commissioner of the San Juan Municipal Police.  For reasons that perhaps fall out of the scope of the instant Petition, Petitioner believes that various constitutional rights have been violated in their cases; and, without going into the merits of this argument, would speculate that this has happened because of 42 U.S.C. § 14141's vagueness and overbreadth.  If the Petition is granted, Petitioner is accompanying a motion for appointment of counsel; so that a qualified attorney may present this argument in a more coherent manner; and suggest alternative solutions.

## IN THE UNITED STATES SUPREME COURT

---------------------------------

No.

### UNITED STATES

**Plaintiff-Appellee**

### JORGE DIAZ-CASTRO

**Petitioner-Appellant**

v.

### COMMONWEALTH OF PUERTO RICO; PUERTO RICO POLICE DEPARTMENT

**Defendant-Appellees**

---------------------------------

### ON APPLICATION FOR A WRIT OF CERTIORARI
### TO THE HONORABLE FIRST CIRCUIT COURT OF APPEALS

---------------------------------

### CERTIFICATE OF SERVICE

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Petitioner hereby certifies that a copy of the instant petition shall be mailed on or before October 31, 2014, to Mr. Donald B. Verrilli, Jr., Esq, the Solicitor General of the United States, Room 5614, U.S. Department of Justice, 950 Pennsylvania Ave., N. W., Washington, DC 20530-0001, pursuant to Sup. Ct. R. No. 29 (3) &(4)(a).

Jorge Díaz-Castro, PRO SE
P.O. Box #9021288
San Juan, P.R. 00902-1288
Email: transcripciones@mail.com

No.

**UNITED STATES**

**Plaintiff-Appellee**

**JORGE DIAZ-CASTRO**

**Petitioner-Appellant**

**v.**

**COMMONWEALTH OF PUERTO RICO; PUERTO RICO POLICE DEPARTMENT**

**Defendant-Appellees**

-------------------------

**ON PETITION FOR A WRIT OF CERTIORARI
TO THE HONORABLE FIRST CIRCUIT COURT OF APPEALS**

-------------------------

**ADDENDUM TO CERTIFICATE OF SERVICE
FOR ELECTRONIC FILERS (CM/ECF FILERS)**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Petitioner hereby certifies that a copy of the instant Petition shall be filed, along

with a notice of filing, with the Honorable U.S. Court of Appeals for the First Circuit, and

with the Honorable U.S. District Court for Puerto Rico, on or before October 31, 2014;

and that the official parties and/or their counsel of record registered as ECF filers will be

served by the CM/ECF system, pursuant to Sup. Ct. R. No. 23(3).

Jorge Díaz-Castro, PRO SE
P.O. Box #9021288
San Juan, P.R.  00902-1288
Email:  transcripciones@mail.com