# SIX-MONTH REPORT OF THE TECHNICAL COMPLIANCE ADVISOR DECEMBER 7, 2014 – JUNE 7, 2015

*Office of the Technical Compliance Advisor to the Agreement for the Sustainable Reform of the Puerto Rico Police Department*

TCA Second Semi-Annual Report                                    2015

# Table of Contents

Table of Contents                                                                           1

A Message from the TCA                                                             2

TCA Reports under the Agreement                                              4

Introduction                                                                                   5

The "Agreement"                                                                          7

The Role of the PRPD Reform Unit                                              8

PRPD's Second Status Report                                                     9

PRPD's Action Plans and TCA Comments                                 11

Review of Policies                                                                        14

Review of Training                                                                        15

TCA Activities and Community Engagements                            18

Significant Events                                                                        19

Identified Challenges to Implementation and Compliance         20

Projected Activities: The Next Six Months                                 25

Appendix: TCA Activities and Community Engagements           33

Appendix: TCA List of Resources Shared                                 40

# A Message from the Technical Compliance Advisor

This Report, submitted pursuant to Paragraphs 250 and 252 of the Agreement for the Sustainable Reform of the Puerto Rico Police Department ("Agreement"), summarizes the work conducted by the Technical Compliance Advisor ("TCA") of the Puerto Rico Police Department ("PRPD"), for the six-month period ending on June 7, 2015.

On June 10, 2015, a draft Report was submitted to the Parties, the PRPD and the Commonwealth of Puerto Rico as well as the United States Department of Justice ("USDOJ").  The Parties submitted comments and recommendations which have been taken into consideration.  The TCA has a dual role during this capacity building period: compliance and advisement.  The first and central role is to assess and report on the implementation of the Reform, and its results, including obstacles that the TCA may be confront in discharging his duties.  The second and equally important role is to provide technical advice to the PRPD.  During the last six months, the TCA's team of highly qualified professionals and seasoned subject matter experts continued to work closely with the PRPD in the same spirit of collaboration and assistance that was documented in the First Six-Month Report.  In the last six months, the TCA, jointly with the PRPD and USDOJ reviewed 28 general orders, and other manuals, policies, procedures, protocols, programs, and forms consistent with Paragraph 229 of the Agreement.  The TCA has also worked hand in hand with the PRPD and USDOJ in the elaboration of first four key Action Plans ("Plans").  The TCA applauds the serious and dedicated efforts of PRPD concerning the production of these Actions Plans.

While it is important for the TCA to assist PRPD in building its operational capacity through the development of Plans, policies, and procedures, the Agreement's capacity building period provides a unique opportunity for the PRPD to develop a culture of meaningful self-evaluation, public accountability and community engagement.   In the last six months, the TCA has observed first-hand the improved capacity of the PRPD to develop by itself these Plans, policies, and protocols.

The TCA has also provided assistance to the PRPD in key training matters, including the strengthening of the Field Training Officer ("FTO") Program; a program, which has already shown significant value to the overall process of the Reform.  We commend the PRPD for taking on this important program at a very accelerated pace to conform to the requirements for oversight and training of the new police officers who graduated in class #223.

In the last six months, the TCA has continued to aggressively assist in the process of restoring community trust in the PRPD.  Of course, this process needs time.  There are, however, two key factors that can help to accelerate it.  The first is the adoption and implementation of new policies and training by the PRPD that brings together the principles of constitutional, professional, and community policing. The second is for the PRPD to engage in active listening and personal engagement with the community.  The TCA continues to work tirelessly to support the PRPD's training while ensuring that the PRPD directly hears from the communities.  During the time period of this report, the TCA has channeled to the PRPD pertinent concerns of community stakeholders in the development of training, policies, and Plans. Presently, key community stakeholders are now receiving PRPD's draft policies for comment and recommendations. This new protocol directly supports the Agreement as it provides an important venue for community involvement and creates trust among the community and police.

Although there was substantial progress, one major challenge is in the area of Information Technology, an area where the PRPD is yet to develop a comprehensive strategy and Plan.  This report provides a current baseline of where the PRPD is on Information Technology at this stage of the capacity building process.  This is an area where the incorporation of a subject matter expert in the TCA's office should better support the PRPD. Given chronic infrastructure and technology needs throughout the PRPD, the TCA recognizes that overcoming these barriers is to require concerted and sustained effort, together with proper oversight, in order to ensure that the PRPD's investments facilitate full and timely implementation of the Agreement following the capacity building period.  We will work closely with the PRPD so required resources and training are properly identified and properly addressed in their remaining Plans.  The incorporation of an IT representative in the PRPD's Reform Office is very much welcomed.

Finally, the TCA continues to be fully committed to this process.  The progress made by the PRPD is noted throughout the Report, in particular, the TCA recognizes three major accomplishments: the graduation of the first class of new cadets under the Agreement, the significant steps taken in the implementation of the Field Training Officer ("FTO") program, and the significant community engagement undertaken by the PRPD.


Colonel (ret.) Arnaldo Claudio
Technical Compliance Advisor

# TCA Reports under the Agreement

*Paragraph 250 of the Agreement:*

"During the first four years, from the Appointment Date, the TCA shall file with the Court, written public reports every six months that shall include:

a) a description of the work conducted by the TCA;

b) a listing of each detailed step in the Action Plans and its timeframe indicating whether the timeframe has been met, and whether the Commonwealth of Puerto Rico is making satisfactory progress toward implementation of the Agreement by rating PRPD in full, partial, or non-compliance steps in the Action Plan;

c) the methodology and specific findings for each review conducted, where appropriate, and redacted as necessary for privacy concerns. An un-redacted version shall be filed under seal with the Court and provided to the Parties. The underlying data for each audit or review shall not be publicly available, but shall be retained by the TCA and provided to either or both Parties upon request;

d) for any detailed steps that were reviewed and found not to have been fully implemented in practice, the TCA's recommendations regarding necessary steps to achieve compliance; and

e) a projection of the work to be completed during the upcoming reporting period and any anticipated challenges or concerns related to implementation of the Agreement."

*Paragraph 252 of the Agreement:*

"The TCA shall provide a copy of the six-month reports to the Parties in draft form within 15 days after the end of the reporting period.  The Parties shall have fifteen calendar days upon receipt of the draft report to allow the Parties to informally comment on the draft report.  The TCA shall consider the Parties' responses and make appropriate changes, if any, and shall file the final report with the Court within 45 days of the end of the review period.  DOJ and PRPD may file responses to the TCA's final report within 30 days."

# Introduction

This is the Second Six-month Report ("Report") of the Technical Compliance Advisor ("TCA").  The purpose of this Report is to measure the progress made by the Police of Puerto Rico ("PRPD") in meeting the requirements outlined in the Agreement for the Sustainable Reform of the Puerto Rico Police Department ("Agreement") in the period covering from December 7, 2014 through June 7, 2015.  Pursuant to the Agreement, it is the responsibility of the TCA to review systematically policies, procedures, programs, protocols, and systems of the PRPD and to measure the nature and extent of PRPD's accomplishments toward the goal of constitutional policing, transparency, and public trust.

Throughout this Report, the TCA discusses findings, assessments, and personal observations made in the last six months.  The TCA also analyzes the PRPD's Second Status Report that documents the PRPD's accomplishments from December 1, 2014, through May 31, 2015.  Where appropriate, the TCA will comment on the similarities and differences of both findings.  Given that there are eleven focus areas in the Agreement, the TCA will comment on the progress, if any, on each area as well as make recommendations for improvement wherever the TCA identified gaps in policy and practice or provided technical advice either in verbal recommendations or "best practices" written models.  In some instances, there are findings and recommendations that have affected more than one focus area and, consequently, are repeated and placed in context.

This Agreement differs from other Agreements or Consent Decrees with other police departments in the United States in that the TCA and his Core Team are required to devote their efforts in assisting the PRPD to develop policies, procedures, and Action Plans ("Plans") before the monitoring process starts on June 6, 2018.  This period is known as the "capacity building period" and it affords the TCA the opportunity to examine every aspect of how the PRPD police the people of Puerto Rico consistent with Agreement.  The four years of capacity building demand strategic planning, resource allocation, implementation, and program evaluation necessary to place the PRPD on a path toward greater modernization and professionalization.  As a result, the role of the TCA is to guide and assist PRPD in a manner that allows the PRPD to take ownership of its own transformation.

Consequently, when the TCA comments on the PRPD's handling of crowd control, or wishes to review operational orders on specific search and seizure operations, or challenges a Special Operations Unit on how they should address recalcitrant protesters, it is always intended to promote the creation and strengthening of organizational systems to modernize and professionalize policing in Puerto Rico so the PRPD can address chronic infrastructure, personnel, and technology needs.

Conversely, the TCA departs from his assistance role whenever he understands that the PRPD displays problematic conduct toward the community, or internally, which could result in violation of civil or constitutional rights.  In these situations, the TCA will immediately notify the PRPD Reform Unit as established by the working protocol. Additionally, the TCA remains steadfast in his role and commitment to follow-up and ensure investigations are timely concluded and adjudicated by the PRPD. During this reporting period, the TCA informed the PRPD of at least two possible civil rights allegations, which the PRPD are now investigating.

A major hallmark of the TCA is his outreach efforts.  Each month, the TCA visits community stakeholders and converses about the Reform process and how the PRPD is executing and meeting their requirements.  This is an important role for the TCA, as public knowledge of the Reform is paramount to its success.  In the near future and in accordance with Paragraph 241 of the Agreement, the TCA will conduct several community and internal police surveys.  These surveys will provide significant data as to perceptions of the police and the PRPD as an organization.

Presently, there are still certain members of the community who do not feel comfortable in communicating directly with the PRPD and consequently, the TCA has become a conduit to transfer community concerns, and in some instances misconduct allegations, to the PRPD.  The long-term vision for all is to foster closer community/PRPD interactions, but for the time being the transparency and interaction with the community by the TCA is required to establish and maintain community trust.  Current events involving turmoil in major cities in the United States and their police departments hasten to conclude that there is a greater need of community interaction between the people and the police.  The TCA's role often serves as the bridge to establish meaningful mutually beneficial associations and a viable way to mend fractured relationships as a result of negative police-citizen encounters.  Here, the TCA acknowledges the meaningful community engagement strategy of the PRPD in the last six months.

The TCA is also pleased to add another subject matter expert in information technology ("IT") and data systems analyses to his Core Team.  This new addition to the group of current subject matter experts brings a wide array of IT experience spanning corporate, defense, intelligence, and law enforcement communities.  Though IT reform in and of itself is one of the eleven focus areas of the Agreement, virtually every aspect of the "reformed Police Department of Puerto Rico" will be impacted by technology.  Whether it is analyzing crime data, examining the nature and extent of calls for service, reviewing personnel databases for trends in problematic behavior, or constructing the required "Early Intervention System," technology and data driven programs are at the core of any claim of a reformed police department as they distance themselves from manual compilation of data.

Finally, the TCA anticipates in the near future the creation of a dedicated TCA website where community and police can directly communicate with the TCA, which will also include the capacity for contact with the TCA to be so encrypted as to permit for anonymous communication.  The TCA also welcomes to his team of experts, former Chief Justice of the Puerto Rico Supreme Court, Federico Hernandez Denton, whose legal acumen and experience will continue to serve the people of Puerto Rico through analysis and commentary in the TCA's function and reports.

# The Agreement

As discussed in the first TCA Six-Month Report, the Agreement consists of eleven focus areas describing a blueprint for a systematic and complete reform on the following issues: Professionalization; Use of Force; Searches and Seizures; Equal Protection and Non-Discrimination; Recruitment, Selection and Hiring; Policies and Procedures; Training; Supervision and Management; Civilian Complaints, Internal Investigations, and Discipline; Community Engagement and Public Information; and Information Systems and Technology.  Realizing the enormity of this endeavor, additional time was placed into the Agreement, that is, four years of capacity building, to afford the PRPD to receive technical advice and develop the policies and metrics that would enable them to meet the individualized tasks of the Agreement.  This "capacity building" allotment of time, which has not been included in any other known negotiated agreement or consent decree, with any other police department in the United States, is an acknowledgement of the uniqueness of the situation in Puerto Rico, as noted above, but also a recognition of the magnitude of the transformational challenge that lies ahead.  To ensure progress, the Agreement requires the PRPD to demonstrate specific and incremental phases on

their accomplishments in the form of Action Plans.  The PRPD must develop these Plans with the approval of the TCA and the United States Department of Justice ("USDOJ"), as an integral step in a collaborative reform that should establish timely benchmarks and a descriptive process on achieving specific requirements under the Agreement.  The PRPD is required to submit Plans in all eleven focus areas on a continued "rolling basis."

The Agreement also directs the PRPD to submit scheduled reports on the status of its progress in meeting the terms within the corresponding schedules of the Agreement. Similarly, the TCA shall submit semiannual reports detailing the PRPD's progress as well as any recommendations based upon the TCA's reviews.  Provisions were also included in the Agreement for a mutual exchange of ideas and comments, with the U.S. District Court as the final arbiter for any issue that could not be resolved among the Parties.  Finally, the Agreement requires the TCA not only report on its findings to the Court for the past six months, but also provide a projection of what the TCA intends to accomplish in the next six-month period.

## PRPD's Reform Unit

The Reform Unit continues to be under the direction of Lieutenant Colonel Clementina Vega, who reports directly to the Superintendent.  Lieutenant Colonel Vega supervises thirty-nine employees, two fewer employees than in the previous reporting period, who are police officers, attorneys, and members of the administrative staff.  This unit currently performs the integral role of assisting in the drafting of policy and related Plans. The Reform Unit compiles information and has provided two reports on the status of the PRPD's Agreement implementation efforts.  They submitted the last Status Report on May 18, 2015.

On April 15, 2015, the Superintendent signed General Order Chapter 100, Section 111, entitled 'Creation of the Functional Organization of the Reform Office."  This policy defines and places the Reform Office as a primary unit within the organizational structure of the PRPD, responding directly to the Superintendent.

|

# PRPD's Second Status Report

In compliance with Paragraph 261 of the Agreement, the PRPD submitted its Second Status Report ("PRPD Report") assessing progress for each of the eleven areas of compliance.  The PRPD Report documents the reform progress for the period covering December 1, 2014 through May 31, 2015.

The Second Status Report shows the specific steps being taken by the PRPD towards achieving reforms as well as the environment of collaboration that has emerged between the PRPD, the USDOJ, the Commonwealth of Puerto Rico Department of Justice ("PRDOJ"), and the TCA.  The PRPD Report describes that, as part of the collaboration efforts with the TCA and the USDOJ, th,e PRPD was able to successfully submit four Plans and complete several new policies.

On June 1, 2015 the TCA met with the PRPD's Reform Unit concerning the PRPD Report.  Some areas of concern are discussed below:

First, there was a discrepancy in the use of force data reported in the PRPD Second Status Report from the data reported previously in other documents, though both submissions were for calendar year 2014.  In 2015, the TCA made a request for data, to include data on use of force incidents for 2014.  The purpose of that request was to create a baseline of aggregate data in various performance indicators to which future similar data could be compared.  That data significantly differed from the data reflected in a table on page 7 of the PRPD Report.  These discrepancies were documented both at the police area level as well as in the aggregate.  To be specific, the aggregate data initially reported to the TCA by the PRPD was of 512 incidents while the PRPD Report reflected 378 incidents.  The TCA attributed the variance to several possibilities (e.g., reporting error, IT data collection issues or human error) and discussed the matter with the Reform Unit.

Furthermore, there were apparent statistical anomalies such as the fact that the area of Guayama reported zero use of force incidents, on both data responses, which seems an apparent error either in data compilation or in data reporting. Now that the TCA has identified a possible reporting issue, the TCA will review the PRPD's reporting

methodology so we can assist the PRPD in the development of systems as required by Agreement and ensure that Plans pertinent to this particular issue are addressed.

Second, the Status Report reflected numerous instances where the PRPD provided or attended training of the TCA was not afforded the opportunity to review or comment. After a discussion of paragraphs 227 and 229 of the Agreement with the PRPD Reform Unit representatives and USDOJ, all new and revised training will be sent to the TCA for review and comment before *any* training is provided or received.

Paragraph 237 (a) of the Agreement requires the PRPD to provide sufficient training on policies and procedures to all PRPD officers assigned to joint operations with federal law enforcement agencies. In this area of training, it is important to highlight that the PRPD is partially compliant in that many officers have yet to be trained.  The Superintendent is aware of this discrepancy and is correcting it.  The TCA will continue to work with the Academy to ensure the training plans are properly addressed and implemented.

Regarding an analysis of the eleven specific compliance areas, the TCA has examined all compliance area analyses and found that certain information could have benefited from additional context or clarification.  Thus, for example, in the compliance area of Professionalization, the PRPD Report states that the Superintendent signed the "Code of Ethics for PRPD Members on April 23, 2015 as part of the activities related to police ethics.  However, this policy has not yet been approved in its final form by the TCA, in accordance with the requirements of the Agreement.  Similarly, the PRPD Report states that training on police ethics was offered to the Reform Office on April 22, 2015. The TCA will review the training provided as well as the future calendar of all training and ensure it meets with the Agreement requirements.

In a similar fashion, the PRPD Report states that the PRPD's Superintendent and the Executive Director of the Office of Government Ethics have reached a Collaborative Agreement between the two agencies to promote the exchange of opportunities for training, technical assistance and other support activities for PRPD employees in furtherance of the Agreement.  The TCA will review the Collaborative Agreement for consistency with the Agreement, but does not anticipate such retrospective training reviews as *all* training will be sent to the TCA for review and comment *before* being provided.  The TCA also notes that there is a qualitative difference between government ethics and police ethics and that it is training in the latter that is required the Agreement.

The PRPD Report refers to the significant reduction in the number of administrative complaints pending legal evaluation and pending investigation. However, there is not a single reference to the disposition and outcomes of those investigations. There is a reasonable concern that the closing of approximately 5,000 cases pending legal review in one year requires a high trade-off between equity and efficiency. Accordingly, the TCA will inquire for clearer articulation on the closing decisions made in those cases.

# PRPD's Action Plans

For each of the eleven focus areas, as reported in the TCA's First Six-month Report, the Agreement sets forth specific timelines on when the Plans are to be submitted for approval. It also mandates a stepped approach on how and when the PRPD is to comply with the goals of the Agreement. These Plans describe temporal benchmarks and detailed steps agreed upon to execute and implement the required reforms and to achieve the desired outcomes in each substantive area. Paragraphs 231 through 240 discuss in detail the development, implementation, and assessment of these Plans. The Plans are to examine policies and any required revisions, mandatory training, budgetary requirements, and a schedule for when specific policies are to become field operational.

In compliance with Paragraph 250 (b), (c), and (d) of the Agreement, the TCA Six-Month Report is to address whether the PRPD is meeting the timeframe set forth in the Plans and making satisfactory progress toward implementation of the Agreement by rating the PRPD in full, partial, or noncompliance with each detailed step in the Plans. The Report should also discuss the specific findings and methodology for each review. Finally, the Report should also include the TCA's recommendations regarding necessary steps to achieve compliance for any detailed steps that were found not to have been fully implemented.

This Report cannot address whether the PRPD is making satisfactory progress by rating each detailed step in the Plans until the Plans are in effect. No Plans were in effect during the time period of this Report. However, this Report can address the satisfactory progress the PRPD is making in the drafting of the Plans, which at this point are pending review and approval by the Superintendent and is expected on July 13, 2015. Thereafter, a final review will be conducted by USDOJ and the TCA for approval. On June 24, 2015, the Parties agreed to file the Plans as they are approved. The Parties

also discussed that amendments to filed Plans should only occur when necessary to ensure consistency with other Plans and compliance with the Agreement, as additional Plans are approved.

For the reasons reported in the First TCA Six-month Report, the TCA did not approve the originally submitted Plans.  In accordance with Paragraph 255 of the Agreement, there was a meeting on November 20, 2014 to address the concerns that the TCA and the USDOJ had on the Plans submitted by the PRPD.  The consensus among the Parties and the TCA was to modify the Agreement through a letter or Memorandum of Understanding.  This new arrangement did not curtail the PRPD from continuing to work and submit Plans.

The TCA, USDOJ and PRPD met on four different occasions, in person or by telephone, to address issues as they were identified.  For example, in the meetings, the TCA and USDOJ identified problems the PRPD had drafting policies in an expedient manner.  There was also constant communications among the Parties and the TCA in the production of several drafts, which was necessary to properly define the objectives to be attained in each area for policy development, training, and implementation.

The Parties and the TCA worked together on four Plans: Use of Force, Searches and Seizures, Equal Protection and Non-Discrimination, and Civilian Complaints, Internal Investigations and Discipline.  The PRPD postponed the development of the Plan on Professionalization.  These Plans were submitted on May 7, 2015.  The submission met the deadline set by the Agreement modification of November 20, 2014.

The TCA made three specific recommendations to the PRPD applicable to all future Plan submissions.  First, the PRPD, USDOJ and PRPD should continue to work collaboratively in the drafting of the remaining seven Plans.  It was clear that the various meetings, discussions, and interim reviews between USDOJ, PRPD and the TCA prior to the submission of these Plans created a better work product.  The TCA also recommended developing a workable schedule for the prompt delivery of the remaining Plans.

Second, the TCA strongly encouraged the PRPD to address the remaining seven Plans' issues regarding resources, funding, staffing, and technology that the USDOJ and the TCA identified. In particular, the Action Plan on Supervision and Management should address the new demands that the Agreement brings upon supervisors and upon the

PRPD to effectively train and evaluate supervisory staff.  The TCA also noted that it was important to address those issues in the Plan on Professionalization.  In discussion of prior Plans, there were underlying concerns how supervisors will be able to address the additional duties and training specified in the Plans.

During these meetings, the TCA also recommended that the PRPD provide additional information for the Plans on Professionalization in terms of budget, human resources, materials and information technology equipment necessary for the implementation of the proposed activities.  The TCA recommended PRPD to add a section describing the most recent departmental developments on Professionalization and to summarize the most relevant studies, documents and reports already conducted or collected.   In particular, the TCA recommended the following two actions: (a) a ranked summary of the most relevant information gathered by the PRPD in the area of Professionalization; and, (b) an analysis of information that reports on barriers and the most important informational gaps that may limit the PRPD's ability to collect quantitative and qualitative information.

The TCA also recommended that, although the submitted Plans have outlined with great clarity the expected developments in the area of policy and training, concrete references to technology, infrastructure, administrative and operational needs required more specificity in order to strengthen the PRPD's capacity-building efforts in the next four years.  The TCA strongly encouraged the PRPD to effectively and expeditiously expand its technological capacity and infrastructure and begin work on this important integrating Plan.  During this reporting period, TCA added a new team member to provide technical assistance and support concerning the area of Information Technology (IT).  The new member is conducting a comprehensive IT assessment of the PRPD's capabilities.

Also, the subsequent Plans must continue to identify further obstacles to compliance, how the PRPD expects to address these roadblocks, and the role that experts may have in developing innovative solutions to overcome barriers and operational problems.

Third, the TCA recommended that, although the current four Plans under review should be approved after reviewing USDOJ comments, they must be reviewed one more time once all eleven Plans are completed.  At that point, PRPD, USDOJ and the TCA shall meet to make sure that all Plans read as a consistent, coherent and synchronized

document identifying potential conflicts or inconsistencies and making substantial edits when needed.

By finding that all four Plans were reasonable, achievable and prioritized, the TCA has found that the PRPD has reached a level of strategic competency that will be very important in the implementation of the Reform.  But, strategy is just one of the four key elements in the organization of a police department.   During the period of capacity building, the PRPD must also work in developing its operational, tactical, and contingency competencies.

# Review of Policies and Procedures

The model for advice that the TCA follows during this capacity building period is not one that merely reviews a written policy and procedure then makes corrections without the benefit of feedback; it is considerably more comprehensive.  The TCA and his Core Team sit side-by-side with the various specialists in the PRPD Reform Office and review the particulars of each policy before it is submitted to the TCA for review.  More than just offering verbal comments and suggestions, the TCA provides "best practices" written examples of policies and procedures.

The TCA does realize that this is a synergistic relationship with the PRPD and that models that may be appropriate for other police departments may not exactly imprint for the PRPD.  Whether it is variances in Puerto Rico law or differences in rules of criminal procedure (e.g. prohibiting Terry stops), or the difficulty in applying model policies to the PRPD, directly communicating with the PRPD is an integral part of creating and fine tuning constructive police policy. For this particular matter the TCA also utilizes in great depth its constitutional lawyers as part of the overall strategy for policy review.

At the end of this reporting period, the TCA in coordination with USDOJ have worked in the review of a code of ethics, eleven general orders, one administrative order, one special order, two rules, three regulations, and seven PRPD forms.  They are listed in Appendix number one.  For 2015, the Parties and the TCA have agreed to review 35 policies.  By the end of the process in June 2016, the PRPD is to submit a total of 128 policies for review by the TCA.

The TCA would like to acknowledge the great effort made by the PRPD in producing new and revised policies.  There is no question that the PRPD is successfully building its operational capacity through the development of these policies and procedures,

# Review of Training

ACADEMY

The TCA believes the PRPD Police Academy's primary role is to provide the foundational piece of training at all levels.  Therefore, the Academy must be a firmly built foundation with proper materials – i.e. policy, procedures and directives; standards; assessment tools; centralized training records; core curricula; appropriate equipment, use of technology; and quality instructors.  All of these enhancements directly affect the structural integrity and success of the entire PRPD.  For this reason, in the last six months, one Core Team member was fully assigned to training and Academy matters. In collaboration with other Core Team members, Academy staff, and USDOJ representatives, provided extensive resources for model samples of curricula, lesson plans, codes of conduct, performance forms, and evaluation samples. The TCA team member was involved in every aspect of curriculum development, training, planning, and resource assessment.  Thus, for example, the TCA and his Core Team met with Academy staff to evaluate the training for tactical units, including equipment, analysis of the relating General Order, training materials, crowd control scenarios and curriculum development.  A list of all resources provided to the PRPD during this period is included in Appendix 2.

The TCA also wants to congratulate the first police graduation class under the reform Agreement. The class consisted of 308 graduates, 33% of whom were female and six municipal officers.  The graduation was held at the Convention Center and in attendance was Governor Alejandro Garcia-Padilla, who addressed the class of Puerto Rico's vision of a reformed police department.  The President of the Senate, Eduardo Bhatia-Gautier, drew a resounding applause when he announced that the Puerto Rico Police would prospectively be eligible for Social Security benefits.

| TCA Second Semi-Annual Report | 2015 |
|---|---|

FTO PROGRAM

The TCA Team visited four different police stations in Carolina, Canovanas, Bayamon, and San Juan to review the status of the FTO (Field Training Officer) Program.  The TCA considers the FTO program vital to the Reform process and, perhaps, the most important component associated with community policing.  The FTO Coordinator ensures recruits adhere to the FTO Manual, properly record their time, and also ensures that the recruits are rotated every two, instead of four weeks.  The Coordinator relies on the training received in the FTO program in completing his tasks and responsibilities.  Any deficiency with a recruit is quickly addressed and remediated.

In Canovanas, the TCA noted that recruit activities were properly documented and archived, and recruits were provided with related operational instructional materials to ensure their success.  An important observation of the TCA was that each recruit was provided a copy of the Agreement, which emphasized PRPD's commitment to reform and how each recruit must contribute.  The TCA also recommended that FTO records be maintained in a central location by Human Resources and become part of the officer's permanent record. In San Juan, FTO Coordinators commented the FTO program has resulted in additional paperwork.  Nonetheless, the program is well accepted by management and recruits. In Bayamon North, officers are in the second phase of the program and each recruit has an individual mentor.  At Bayamon South, there were eight recruits and eight FTOs.  Overall, both recruits and mentors are pleased with the program, and at the two different locations, some FTOs are Sergeants.

In Bayamon Sur, and San Juan, the TCA jointly with USDOJ found discrepancies with the numeric rating system done by several of the mentors in that some daily evaluation forms were identical day to day.  The mentors had rated a recruit as a Number 3, which is the highest score provided in the evaluation. However, indicated there was a problem regarding the recruit's understanding of the "use of force," which is an important part of the evaluation.  There were also duplications by other mentors showing that the recruit had a good rating but provided little documentation to justify the numeric rating.

The TCA continues to recommend the strengthening of the FTO Program.  The PRPD's FTO program should develop a strong professional cadre of new officers who successfully and appropriately apply their knowledge and skills to the intricacies and complexities of their new job demands, while maintaining officer safety.  In the last six

months, the TCA has discussed the following proposals regarding the FTO program with the PRPD's Academy director and her staff; some are yet to be implemented:

- PRPD needs to develop formal criteria for selecting FTO's.
- Design a PRPD FTO program to require recruits to work with multiple FTO's during the FTO phases.
- PRPD should create a formal route by which FTOs provide curriculum feedback.
- Frequent tests and recruit/instructor feedback are evaluated. Early identification of recruits who are not keeping pace for remedial intervention is critical.
- Develop a plan to jointly manage the FTO program by the academy staff and managers in the patrol function to allow for feedback and input during this transitional phase of the recruits training.
- Identify pay incentives for being a FTO.
- Develop a philosophy and a Manual for the FTO program. The Manual should include the measuring instruments under which both the recruits and the FTOs will be evaluated. The Manual should define the phases of the FTO Program.
- The FTO Program should respond to the Academy.  The graduation of the recruits should be after they complete the FTO program, which should include reinforcement training after they complete the program. The program should also include a feedback process after the recruits receive their reinforcement training.
- The FTOs should be part of the recruitment process of the cadets.
- Define geographical areas for the FTO program.
- FTO Phase Critique forms should be submitted directly to the FTO Coordinator and not to the recruit officers' supervisor. New officers are likely to be reluctant to submit negative comments about a senior member of the squad directly to their mutual supervisor.

In short, the FTO Program represents another positive step in capacity building by the PRPD.  This is a great program and the TCA would like to encourage the PRPD to implement it beyond the new cadets so the FTO is part of retraining all officers, not just recruits.   The latter can be better described as a "mentorship or intervention" program that can use by all supervisors throughout PRPD.

# TCA Activities and Community Engagements

One of the salient attributes of the reform is the ability to actively engage the members of the community.  In the last six months, the TCA conducted many substantial and significant community engagements providing the opportunity for the TCA and his team to bring closer community stakeholders and the PRPD.  A complete listing of all community members that have met with the TCA to voice their concerns is appended to this document.

The TCA met with representatives of the ACLU, Civil Rights Commission, Community Interaction Groups, Department of Housing and Urban Development, Homeless and LGBTQ communities, Security Councils, and the Women's Rights Advocates. The director of the homeless shelter, *Fondita de Jesus*, addressed the cadets as part of the new curriculum under the Agreement.

Public Hearing

During this reporting period the Honorable Judge Gustavo Gelpi for United States District Court of Puerto Rico held a public hearing at the United States District Courthouse in San Juan.  The hearing underscored the desire of all Parties and the TCA to keep the public informed on the reform progress as well as demonstrate a continued desire for transparency as the police of Puerto Rico engage in an improved transformation process.  The public heard from the newly appointed Governor's representative, the Secretary of Justice, the Superintendent, the Academy Director, the USDOJ, and the TCA who outlined PRPD's accomplishments and continued challenges. The hearing received substantial media coverage and public attention.

The next meeting is scheduled for October 22-23, 2015 in Ponce where the public will hear from stakeholders on their understanding and expectations of the Agreement and their experiences with the police department.

# Significant Events

The frequency of meetings between the TCA and the community has increased, and along with it, communities have voiced their concerns to the TCA.  Even members of the PRPD have increasingly provided the TCA with honest commentary on certain conditions within the PRPD.  The intent of this section is not to reiterate what has been previously reported to the PRPD through official channels, but to make public, through this report, information that has come directly to the TCA, and to demonstrate that the TCA is ever vigilant that inequities perpetrated against the public or police officers are properly reported to PRPD and investigated.  Hence, the TCA will continue to serve as a _conduit_ for those who believe that the TCA's intercession will ensure that the PRPD remain accountable and transparent. This section of the TCA's semiannual report will remain constant and remind the public and the police of the TCA's continued commitment to serve as their "eyes, ears, and voice."

During this reporting period a PRPD unit with the assistance of officers from other units conducted a drug operation targeting several public housing locations. As a result of these operations, there were several allegations of misconduct and violations of civil and constitutional rights and that operational procedures were not followed. When this information was brought to the attention of the TCA, he initiated several requests to PRPD for a general status report and a copy of the operational orders to follow-up with PRPD. The TCA received three different versions of the same operational plan, all using the same plan identification number, dates, and all three were signed and approved by the same supervisors.  All plans were different and gave the impression that they had been altered to deceive the TCA. A copy of all three different operational plans was provided to USDOJ; the PRPD also had copies.  The TCA brought this matter to the attention of the Reform Unit and the PRPD is now conducting an investigation as is the Federal Bureau of Investigations ("FBI") and the Puerto Rico Department of Justice's Bureau of Investigations, or Negociado de Investigaciones Speciales ("NIE").  The TCA learned of other possible violations in several other areas and all were summarily reported to the Reform Unit. The TCA will continue to follow these incidents and is personally concerned with these types of events.

Though the TCA cannot provide additional information while the above investigations are pending, he can report his observations and recommendations, which encompass

public information in the form of General Orders, or other training issues. The TCA reviewed the Operational Plan used for this operation and found multiple deficiencies.

The TCA understands the seriousness and sensitivity of conducting drug operations in areas of public housing.  Regarding the manner in which this operation was conducted, it definitely tends to have a negative lasting effect on police and community relations, resulting in the residents feeling as if the police are more of an occupying force than a police department in tune with the needs of the community. The TCA submits that in this instance it appears as if there was a failure on the part of the PRPD to properly plan, prepare, and conduct this operation.

The TCA made preliminary recommendations to the PRPD during several meetings, which included all area supervisors, the unit commander and a Deputy Superintendent. Additionally, the TCA provided three examples of best practices for operational orders. Some recommendations included the following:

- A Work Plan should be prepared to specifically identify why, how, when, and where the operation will be conducted. The Plan should state specifically when a certain number of buyers are to be arrested, then Unit will move to arrest the seller/s, thus putting an end to that specific operation, and moving to the next target.
- The Operational Plan should have a list of potential resources needed to conduct a successful operation. For example, in this case, at least the following units should have been notified and on standby: Canine Unit, Medical Services, SWAT, Aviation Unit, and community affairs officer and/or public information officer.

A more comprehensive list was provided to PRPD and any deficiencies will be remediated in forthcoming Plans.

# Identified Challenges to Implementation and Compliance

Consistent with Paragraph 250 (d) and (e), the TCA discusses challenges and concerns related to the implementation of the Agreement as well as any necessary steps that the

| TCA Second Semi-Annual Report | 2015 |
|---|---|

TCA found not to have been fully implemented in practice.

Canine (K-9) and Maritime Units

The TCA made visits to the PRPD's K-9 and Maritime Units.   In the course of these visits, the TCA found significant operational and administrative shortcomings regarding training, shortage of equipment, and operational matters that are directly associated with the terms of the Agreement.  The TCA reported these matters to the PRPD.  These TCA's observations and recommendations related to the Agreement will be also addressed in the context of PRPD's Plans in order to ensure proper follow up and remedial action during the capacity building period.  The incorporation of these findings in the Plans will ensure that PRPD focuses on these issues and the TCA reports can follow-up on the implementation of remedial actions.  The TCA has recommended the PRPD ensure proper storage of chemical substances and chain-of-custody issues are addressed adequately by the PRPD's Action Plan on Searches and Seizures.

Zones of Excellence

The TCA visited the Bayamon Oeste, Las Piedras, and Utuado Zones of Excellence ("ZOE") during this reporting period.  The TCA received comments reflecting that there were some areas of deficiency.  Specifically, one commander said not all officers were trained in the basic principles of community policing.

In Bayamon the TCA was pleased to learn that training on civil and constitutional rights is being conducted onsite by supervisors during roll call through Police Academy Bulletins. The precinct meets with the Community Interaction Committees ("CICs") and Consejos Comunitarios de Seguridad ("CCS") regularly.  During a discussion, USDOJ mentioned to the commander that there is a large Asian community somewhere in Bayamon that is encountering problems of being targeted by criminals.   The TCA received these allegations from a community advocate regarding this issue during several meeting with members of the ACLU.  Members of the TCA team have also been present in several meetings in which advocates for the Chinese community raised similar public safety concerns. Now that that PRPD has the information we anticipate PRPD to address the concern.

At Las Piedras, the TCA witnessed an improvement in presenting new polices to newly transferred personnel to the ZOEs.  There are three established community groups with whom they meet monthly.  Current staffing levels did not diminish.  However, there were significant information technology and transportation issues for an established ZOE.  The visit to Utuado was conducted by the TCA's technology expert and will be further discussed below in the technology section.  The TCA will continue to focus on the ZOEs as models for improvement with a particular emphasis on technology.

Body Cameras

During this reporting period, USDOJ informed the TCA and the PRPD of a multi-million dollar grant solicitation from the United States Department of Justice.  Members of the Core Team, familiar with the grant process were willing to offer their assistance to the PRPD in applying for funding. Additionally, another Core Team member was a presenter on June 8, 2015, at a conference in Las Vegas for the Institute of Prevention of In-Custody Deaths of the efficacy of video evidence in investigations to include body worn cameras. Initially the TCA was informed that the PRPD had a dedicated unit for such grants indicating that the PRPD had no intention to accept the assistance of the TCA in this area.  Subsequently, the TCA learned that the PRPD had decided not to apply for the funding because the PRPD believed that there was not adequate time to complete the solicitation.  The TCA was informed that the PRPD would likely apply for this grant next year.

The TCA clearly believes that this was an unwise choice decided without even discussing with the TCA about the opportunity of submitting a timely application.  There are neither guarantees that the funding would be available next year nor that body cameras would remain a priority focus.  The TCA submits that the PRPD should be attentive for all opportunities for external funding, especially ones in which the TCA can provide assistance.  Additionally, Puerto Rico is under an Agreement with USDOJ for, among other issues, civil rights violations.  The current thinking among experts and practitioners is that there can be fewer of these types of incidents with the implementation of body worn cameras.

According to a survey by the federal Bureau of Justice Statistics (BJS) July 7, 2015, "about one-third of all local police departments used body-worn cameras for at least some officers in 2013." In a 2014 COPS Report, "Implementing a Body-Worn Camera, Recommendations and Lessons Learn, Body-Worn Camera Results for Mesa (Arizona) Police Department," established that nearly three times more complaints against officers without cameras were filed eight months after camera deployment; 40 percent fewer total complaints for officers with cameras during a pilot program and 75 percent fewer use of force complaints for officers with cameras were reported during the pilot program. The latter results show positive and encouraging facts which should be seriously considered when making choices regarding these types of grant opportunities. Finally, The President's Task Force on 21st Century Policing in its Final Report "recommended law enforcement agencies should review and consider Bureau of Justice Assistance Body Worn Camera Toolkit to assist in implementing BWCs."

Information Technology

The initial Information Technology (IT) assessment was completed between May 25 and May 29 with the arrival of TCA's IT Subject Matter Expert.  Over the course of the assessment, meetings were held with key individuals from PRPD's Office of the Chief Information Officer (CIO) and the Reform Unit.  Site visits were conducted at the Utuado and Bayamon Zones of Excellence ("ZOEs"), PRPD Headquarters, and the Training Academy.  A demonstration of the Computer Assisted Dispatch (CAD) system and CAD Mobile were conducted while visiting the Utuado ZOE. While at Bayamon it was obvious that the operational tempo and use and deployment of information technology were dissimilar to that of Utuado.  While not an issue, the sharing of tactics and IT experience is unlikely given resource challenges.  Overall, the assessment and collaboration with members of the PRPD proved useful.  During the meeting at Headquarters with the Chief Information Officer, an IT Strategic Plan and other relevant documents identified strategies and plans for implementation and further development of needed IT. However, artifacts were not available but will be provided through the Reform Unit for later analysis.  At the completion of the assessment, a planning date for the next scheduled site visit for continuing the assessment was targeted for the week of August 10, 2015.  Further details of the initial assessment areas are as follows:

During the May 26, 2015, meeting at Headquarters with the PRPD CIO and a member of the Reform Unit, several topics were covered, among them the budgeting process, staffing, skill levels and functions, discretionary purchase ceilings, uncertain

permanency of the CIO position, the establishment of the first strategic plan, requirements/needs process, field IT, bandwidth, contractors, resource availability, governance, leadership support, and the intended mission impact of CAD.

On May 27, 2015, a site visit was made to the Utuado Police Station.  A review of CAD and its use in Utuado was done in the context of the operational concept for policing in the Utuado Precinct.  The Sergeant leading the demonstration of the CAD System was experienced and passionate about his work, which was notable in light of the resource restrictions.  Remarks about the positive benefits of CAD included improvements in "time to respond" and collection of crime data.  Longer term gains should include file and case management tracking, 911 integration, and the overall effectiveness of achieving vehicle fuel savings, as they relate to being able to send information over CAD and the network versus returning to the station and filing handwritten reports. Obstacles limiting progress and a broader rollout of CAD included the lack of equipment (base mounting units) and new vehicles although we were told that acquisitions are under way.  During this site visit, the "future" benefits of the CAD system were discussed in the context of its potential functionality through its embedded GPS and facilitated communications.  There is also opportunity in its use as a communications method as it relates to data collection and GIS mapping of complaints.

On May 28, 2015, a site visit to Bayamon was conducted highlighting similar perspectives and advantages of CAD identified in Utuado.  Also cited was CAD's potential to improve situational awareness of officers in the field along with improvements in communication.  The need for CAD units and vehicles for continuing implementation of CAD was stressed.  CAD operations in the precinct station were placed with radio communications for "better focus and fewer distractions."

Overarching both ZOE visits were the challenges of training and retaining experience for CAD and technology deployments.  In Bayamon all agents had e-mail accounts but it was unclear what the use rate was. Only one computer was available in the Bayamon training room. Other detractors included PRDOJ control of NCIC access and accounts, which necessitates contact with Headquarters for NCIC data, thereby limiting real time situational awareness of agents in the field. There was a stated sentiment among the officers, that with more information and technology, coupled with local ability to acquire intelligence information from systems like NCIC, the agents could achieve higher levels of situational awareness enabling them to police better and establish better relationships with citizens.

On May 29, 2015, a site visit was made to the Training Academy.  There was a dialogue with the Director of the Academy that proved to be very useful and insightful regarding her vision for the use of IT and data in the curriculum development, process, methods, and practices improvement.  Noted were issues with the consolidation of Academy IT services and networks with Headquarters, which has led to the loss of the Academy's Internet independence. Later that same day, the CIO stated that the Academy would regain its ability to get to the Internet.  It should be noted that, favorably affecting the Academy, its two IT agents have longevity in their jobs extending to 9 and 11 years. This continuity has been beneficial to the Academy's ability to continue its initiatives and maintain its equipment.  Regarding improvements, telephone exchanges have been upgraded, a server room was in operation and collocated with the IT agents, audio and visual equipment was added to the conference room in the cafeteria.  Wireless service was made available in the library and is expected to be extended throughout the campus. Drawbacks are that agents in the field cannot "reach back" to the Academy for training.  Bandwidth will eventually become an issue if the Academy is to grow its capabilities and portfolio of tools and applications.

The Academy appears to be a fertile opportunity as a laboratory for evolving technology on behalf of PRPD but the lack of resources constrains its ability.  More significantly, in the eyes of the Academy, it is the management and supervisory control of the Academy's activities by Headquarters that constrains its ability to evolve, search the Internet, gather practices, and gain experience.

In summary, during the initial assessment, given the allotment of time, there was no substantive dialog regarding development of systems to be used by PRPD supervision and leadership to assess or ensure compliance with the Agreement, or to transform police methods.  This will be a future focus area during an IT assessment visit in August.  Overall, the PRPD is hindered by a dramatic shortage of IT personnel and resources. There are only seven members in the Office of the CIO.  The dearth of professional IT subject matter experts is limiting to the CIO's efforts to transform IT use and functionality.  Essentially, the current staff is dedicated to operations and maintenance.  The CIO has had to assume the duties of middle management, program management and upper management/supervision, which is detrimental to his efficiency and effectiveness as an IT strategist.  Additionally, potential for IT staff and agents to be reassigned or forced to resign, as well as the temporary nature of the CIO's assignment, threatens the IT organization's ability to persist and ensure continuity.  It was suggested repeatedly that the CIO's underappreciated role does not provide him with executive bearing to make decisions and campaign for funds.  Additionally, the political nature of

the CIO's assignment indicates that his longevity and continuity in the position is unlikely.  Given these circumstances, it suspected that there is a low probability that the PRPD will be able to maintain the pace necessary to comply with the Agreement.

# Projected Activities: The Next Six Months

Consistent with Paragraph 250 (e), the TCA provides a projection of the work to be completed during the upcoming six-month reporting period from to June 8, 2015 to December 8, 2015

<u>USE OF FORCE: INTERNAL CONTROLS AND ACCOUNTABILITY</u>

- The TCA and his Core Team will complete the task of interviewing members of the PPR Reform Unit to determine the current nature and extent of the Use of Force (UOF) reporting process, and any issues that may surface as a result of the new UOF policy. (Paragraphs 36-40, Force Reporting)
- The TCA will continue to review UOF report forms [PPR-854] to ensure proper procedures are being followed and the forms are being properly filled out.  The TCA will continue to review specific UOF reports involving police shootings, and interview the Force Investigation Unit (FIU), and Force Review Board (FRB) on these specific incidents. (Paragraphs 36-40, Force Reporting; Paragraph 41, Force Review)
- The TCA will complete the task of interviewing supervisors who have reviewed UOF forms for their perspective, input, and effectiveness of the entire supervisory review process. (Paragraphs 43-45, Supervisory and FRB Reviews; Paragraph 135, Supervision and Management)
- The TCA will complete the task of interviewing members of the FIUs. (Paragraphs 48-52, FIU Investigation and Force Reviews by SFRB)
- The TCA will complete the task of interviewing members of the FRBs for their insight, and opinions, on the entire UOF process. (Paragraphs 48-52, FIU Investigation and Force Reviews by SFRB)
- The TCA will conduct random ride-a-longs. (Paragraphs 262-264, Access and Confidentiality)
- The TCA will request to respond and observe actual UOF crime scenes, if available, to see how UOF incidents are handled and processed. (Paragraph 40,

Force Review, Investigations and Analysis; Paragraph 48, FIU Investigations and Force Reviews by SFRB; Paragraph 262-264, Access and Confidentiality)
- The TCA will observe training on firearms use and target shooting exercises at the Police Academy. (Paragraph 53, Use of Force Training; Paragraph 262-264, Access and Confidentiality)

SEARCH AND SEIZURES: INTERNAL CONTROLS AND ACCOUNTABILITY

- The TCA will review incidents and administration material of search and seizures policy and related forms to ensure proper procedures are followed. (Paragraph 229, Review and Implementation of Policies, Procedures and Programs)
- The TCA will finalize the "Boletín de Adiestramiento para las Detenciones Investigativas o Entrevistas de Campo." Review process (Paragraph 229, Review and Implementation of Policies, Procedures and Programs)

TRAINING

- The TCA will complete the task of interviewing the PRPD Reform Unit individual responsible for training to determine current issues and confirm the timetable for delivery of training policy.    (Paragraph 117, Training)
- The TCA will continue to conduct on-site visits of the Academy and will interview the Academy Director and her staff to review curriculum, instructor qualifications and selection process, Academy's procedures for mandated training, testing, and retention qualification.  Where there is no written relating documentation, the TCA will assist and advise the Academy Director in drafting the appropriate relating language. (Paragraph 118-122, Pre-service Education and Training; Paragraphs 133-134, Training Records; Paragraph 262-264, Access and Confidentiality)
- The TCA will continue to review the current courses being offered at the Academy and will ensure PPR training  meets appropriate policing standards regarding objectives, methodology, and evaluation of training to ensure they are meeting desired outcomes.  The TCA will also review planned courses to ensure they are meeting the above requirements.  This review will apply to training that is outsourced to either public or private entities.  (Paragraph 118-122, Pre-service Education and Training; Paragraphs 133-134, Training Records)
- The TCA will conduct another survey of the Academy's infrastructure and equipment in order to ensure training resources are the most current to facilitate the learning process

- During on-site visits at the Academy, the TCA will continue to review the process and current training mechanism to assure attendance for specific instructional classes.  The TCA will advise the Director on procedures to ensure that there is proper follow-up for officers who have not attended required instructional courses.  The TCA will provide technical assistance to the Director on record retention, attendance, documentation, and supervisory review. (Paragraph 133-134, Training Records)
- The TCA will continue to review the Field Training Officer (FTO) program process and practices to blend transition between academy and field, i.e. - selection of FTO's, FTO Train the Trainers program, compensation and evaluation and documentation process of recruits and Veto's. (Paragraph 123-128, Field Training Program)

## CIVILIAN COMPLAINTS, INTERNAL INVESTIGATIONS, AND DISCIPLINE

- The TCA will continue to interview the PRPD Reform Unit individual responsible for complaint tracking and internal investigations to determine current issues and confirm the timetable for delivery of relating policy.  (Paragraph 159, Civilian Complaints, Internal Investigations and Discipline)
- The TCA will continue to visit various police facilities, to include police stations in the ZOEs, and review the equipment on hand to safeguard internal investigations material, ensure informational materials are visible to the public in Spanish and English, and review the protocols used at the command level in investigating allegations of misconduct. Examine vehicles to ensure they contain complaint forms. (Paragraph 160, Civilian Complaints; Paragraph 163, Internal Investigations; Paragraphs 262-264, Access and Confidentiality)
- The TCA will continue to interview commanders concerning the challenges they face in implementing the Agreement for this focus area.  (Paragraph 159, Civilian Complaints, Internal Investigations and Discipline; Paragraph 135, Supervision and Management; Paragraph 190)
- The TCA will continue to review all the auditable forms relating to complaint tracking and internal investigations to ensure they contain all the necessary fields and variables that will be used to measure compliance. (Paragraphs 166-176, Complaint Intake, Classification, Assignment and Tracking)
- The TCA will validate that the complaint Hotline number and Website are fully operational and contain clear information on the procedure for filing a complaint. TCA will access the complaint Website and ensure that all links are operational, specifically the administrative complaint link.
- The TCA will continue to examine training records to determine which officers have been trained on complaint intake.  (Paragraph 162, Complaint Intake)

TCA Second Semi-Annual Report                                  **2015**

- The TCA will continue to meet with representatives of the prosecutor, public defender, and other court offices, to review the protocol for reporting allegations of misconduct as well as cases where evidence has been suppressed, or there were questions of candor in PRPD testimony, or filing of a Civil complaint in a court of law that have been lodged. (Paragraphs 170, 184, Complaint Intake, Investigation of Complaints)
- The TCA will continue to review the current numbering system used to track complaints and inform complainants. (Paragraphs 166-176, Complaint Tracking)


PROFESSIONALIZATION

- The TCA will continue to review in-service ethics curriculum to conform to the Agreement. (Paragraph 12, Professionalization)
- The TCA will continue to review the current written examinations, used as part of the selection process to award promotions through the rank of Captain. (Paragraph 14, Promotions)


COMMUNITY ENGAGEMENT AND PUBLIC INFORMATION

- The TCA will continue to attend meetings of the State Board of the Community Safety Councils ("Junta Estatal de los Consejos Comunitarios de Seguridad") (Paragraph 205, Community Engagement and Public Information; Paragraph 209, Community Interaction Councils)
- The TCA will continue to reach to different communities to look at their participation in crime prevention, the role of the police in the community, among others community policing aspects. (Paragraph 205, Community Engagement and Public Information)
- The TCA will interview two regional directors of the Community Relations Division ("División de Relaciones con la Comunidad") to identify actions taken to create robust community relationships and engage constructively with the community in order to ensure collaborative problem-solving, ethical and bias-free policing, and more effective crime prevention.  (Paragraph 205, Community Engagement and Public Information)
- The TCA will complete the task of interviewing the liaison officers of the PRP with the Officer of the Ombudsman to determine which services are offered, including processes to follow up on complaints filed by citizens, among other aspects. (Paragraph 205, Community Engagement and Public Information)

- The TCA will continue to meet with different Community Interaction Councils' Boards of Directors to determine the scope of the activities conducted with community representatives to facilitate regular communication and cooperation between PRPD and community leaders at the local level. (Paragraph 209, Community Interaction Councils)

COMPREHENSIVE SURVEYS AND COMPLIANCE REVIEWS

- The TCA will continue to work with the Graduate School of Public Administration of the University of Puerto Rico and other entities in the preparation of a survey of the members of the community regarding the experiences with and the perception of PPR. (Paragraph 241, Comprehensive Surveys and Compliance Reviews)

EQUAL PROTECTION AND NON-DISCRIMINATION

- The TCA will review the domestic violence policy and related forms to ensure proper procedures are followed.  The TCA will compare the policy to best practices and will conduct research on model policies nationwide. (Paragraph 80, Equal Protection and Non-Discrimination; Paragraphs 109-116, Policies and Procedures)
- The TCA will continue to review policy and training on bias-free policing, recruitment, promotions and testing. To that end, the TCA will request and analyze documentation from PPR on current quantitative data gathered for recruitment, promotion, and testing. (Paragraph 80, Equal Protection and Non-Discrimination; Paragraphs 102-103, Recruitment Plan; Paragraphs 104, 107, Hiring Reforms)
- The TCA will continue to analyze documentation from PPR on current qualitative and quantitative data gathered on domestic violence. (Paragraph 93, 98-100, Sexual Assault and Domestic Violence)
- The TCA will continue to analyze internal and institutional reports on domestic violence.  (Paragraph 93, 98-100, Sexual Assault and Domestic Violence)
- The TCA will continue to interview police, prosecutors and other key government personnel to understand how domestic violence cases are handled and evaluated.  (Paragraph 93, 98-100, Sexual Assault and Domestic Violence)

NOTE ON METHODOLOGY

Under Paragraph 243 of the Agreement, the TCA has the authority to conduct qualitative and quantitative outcome assessments.  Paragraph 245 of the Agreement further clarifies that the TCA has the responsibility to develop an ongoing plan and methodology for conducting compliance reviews and outcome assessments. Furthermore, Paragraph 248 mandates that "at least 90 days prior to the initiation of any outcome assessment or compliance review, the TCA shall submit a proposed methodology for the review or assessment to the parties."  In compliance with these Paragraphs, the TCA has submitted the proposed methodology to the PRPD.

In conducting his organizational assessment of PPR's capacity building initiatives, the TCA will use a combination of qualitative and quantitative data collection methods. When determining the scale and scope of an organizational assessment, decisions are made about the capacities, core issues and points of entry to be included in the assessment.  What also needs to be established is how these capacities will actually be assessed. This assessment is to be conducted through a variety of qualitative data gathering methods:

1. Documentary Research and Desk Review:

The TCA will review documentation. This documentation will include internal and external institutional reports, correspondence, organization and staffing charts, personnel records, administrative reports, MOUs and other agreements, planning documents, needs assessments, monitoring and evaluation reports, and financial records as needed.

2. Organizational self-assessment or internal questionnaire.

The TCA will provide, if needed, a structured questionnaire for the PRPD self-assessment in the areas identified in the process.

3. Interviewing Key Personnel:

The TCA will interview key people and the PRPD personnel who will be able to provide information about the programs and initiatives.  The best method to collect primary source data is the interviewing of key interviewees.  Unlike an organizational self-assessment report or questionnaire, organizational capacity assessment generates its basic assumptions based on face-to-face, one-on-one targeted interviews. Instead of using a structured questionnaire framework, where interviewers read the questions exactly as they appear on the survey questionnaire and the choice of answers to the

questions is often fixed in advance, the TCA will put special emphasis on semi-structured questions.

This method offers flexibility to probe for details, allowing new questions to be brought up during the interview as a result of what the interviewee says. It is a conversation with a purpose.  To obtain a balanced view, different perspectives should be gathered. This may imply collecting input from people at various levels of an organization, e.g., managerial, supervisory, and technical personnel at central level and field, persons in charge of personnel planning, recruitment, and training. It may also imply collecting information from an organization's partners (their counterparts in organizations with which it interacts, for instance, DEA, FBI, PRDOJ, government prosecutors, and other government agencies). The ability to identify and gain access to key people with access to information and to extract accurate information from them is intuitive process that requires skills and sensitivity.

4. Focus Group Discussions:

Aside from in-depth interviews other qualitative method that the TCA will use as needed are focus group discussions. Focus group process can take advantage of interactions within the group to stimulate participants to exchange of information and generate new material. Talking to staff or other stakeholders of an institution in group provides an opportunity to elicit information or check impressions gained by face-to-face interviews


5.   Site Visits and observation:

The TCA will use site visits and observation to gain additional information. Observations can expose information not otherwise obtained or validate information gained by other means. Observation of physical assets of an institution is a way to assess an institution's stock (for example, inventory, equipment, facilities, and so forth). Observation of the behavior of staff is much more difficult, especially if the time available is short, but can provide important insight.

Quantitative data collection methods

The TCA will use the expertise of the members of the Core Team familiar with statistical techniques and data analysis to develop complex analysis where statistical significance is emphasized.  Although simple analysis procedures are usually sufficient, results must be generalizable.  The TCA will focus on measures or central tendency, variability, comparison of groups, and relationships between variables.

# Appendix 1: TCA Activities and Community Engagements (Detailed List)

***Meetings with the Parties***

- In accordance with Paragraph 253 of the Agreement, the TCA has conducted six monthly meetings with the Parties during the period of this report addressing ongoing matters as well as new business.  Also, on a regular basis, the TCA has maintained continuous written and telephone communications with the Parties in order to ensure effective and timely response to matters concerning the implementation of the Agreement.

- Assistance and participation in Status Conference (Case No. 12-20139) held on February 20, 2015.

- Assistance and participation in First Public Hearing (Case No. 12-20139) held on April 16, 2015.

- The TCA has maintained constant communication with the Honorable Gustavo Gelpí, Judge for the United States District Court of Puerto Rico, for issues or situations that have required his intervention.

- The TCA has conducted more than 20 meetings with different police officers, which have voluntarily requested to be heard to attend specific claims and/or complaints that these officers had against the PRPD because of alleged violations of their administrative due process.

- The TCA submitted for the review of the Parties, the TCA's budget proposal for fiscal year 2015-2016.

***Meetings and activities in accordance with Paragraph 254 of the Agreement***

Meetings with Puerto Rico Government's Officers:

| TCA Second Semi-Annual Report | 2015 |
|---|---|

- Hon. David E. Bernier Rivera, Secretary of State (December, 2014)

Meetings with Former Governors of Puerto Rico:

- Former Governor Rafael Hernández Colón (May, 2015)

Meetings with Federal Government Officers:

- Meeting with High Intensity Drug Tracing Areas (HIDTA) Agent (December, 2014)
- Meeting with U.S. Immigration and Customs Enforcement (ICE) Special Agent in Charge and Agent (December, 2014)
- TCA and Core Team meeting with Federal Bureau of Investigation (FBI) agency's representatives (February, 2015)
- TCA and Core Team meeting with Drug Enforcement Administration (DEA) agency's representatives (February, 2015)

Meetings with Senators and Representatives of Legislature of Puerto Rico and related office:

- Hon. Jaime R. Perelló Borrás, Speaker of the House of Representative of Puerto Rico (March, 2015)
- Carlos Ruíz, Esq., and Pierre Vivoni, Esq., legal advisors for President of the Senate of Puerto Rico (April, 2015)
- Georgina Candal Segurola, Esq., Puerto Rico Civil Rights Commission (January, 2015)
- Carlos Del Valle Cruz, Esq., Puerto Rico Civil Rights Commission (January, 2015)
- Georgina Candal Segurola, Esq., and Carlos Del Valle Cruz, Esq., Puerto Rico Civil Rights Commission (April, 2015)

Meetings with Representatives of Executive Agencies:

- Iván Díaz Carrasquillo, Esq., Office of the Individuals with Disabilities Rights' Advocate (January, 2015)
- Wanda Vázquez, Esq., Office of the Women Rights' Advocate  (January, 2015)

- Bureau of Special Investigations of the PRDOJ ("*Negociado de Investigaciones Especiales*" - NIE) (February, 2015)
- Heriberto Luna, Information and Technology Division of PRDOJ (March, 2015)
- Grace Santana, Director of Infrastructure Financing Authority (known for its initials in Spanish as AFI) (March, 2015)

Meetings with Mayors and/or Municipal Security Commissioners:

- Hon. Victor Emeric, Mayor of Vieques and Roberto González, Security Commissioner (December, 2014)
- Ángel Martínez, Bayamón Municipality Security Commissioner (March, 2015)
- TCA visit to Bayamón Municipal Headquarters with AFI's Director, Grace Santana, regarding virtual training and/or simulator facilities. (April, 2015)
- Hon. María Eloisa "Mayita" Meléndez Altieri, Mayor of Ponce (May, 2015)
- Hon. Víctor M. Ortiz Díaz, Mayor of Gurabo, with Col. Miranda, Col. Ramirez from the PRPD and Hilda Ortíz from HUD (April, 2015)

Meetings with Puerto Rico Police Reform Unit:

- Regular meetings and communications with Lieutenant Colonel Clementina Vega, Director of the Puerto Rico Police Reform Office, and other personnel of the PRPD.
- Monthly meetings with the Police Reform Unit designated personnel for the review, analysis and comments on the Action Plans presented by the PRPD.
- Numerous meetings, conference calls and documents' presentation with review of the policies of the PRPD with the Reform Unit's professionals and/or with the USDOJ and PRDOJ for the analysis, discussions and technical support to the final drafts of following Generals Orders:

  o General Order 600-601: Rules for the use of force by members of the police of Puerto Rico
  o General Order 600-605: General Order of Report and investigation of incidents of use of force by members of the Police of Puerto Rico
  o General Order 600-602: Use and Management of the Electronic Device
  o General Order 600-603: Use and management of Impact Weapons
  o Rules and Procedures for the Use, Possession, Maintenance, Change, Occupation, Reassignment and Disposal of Weapons of Regulation of the PRPD
  o General Order 600-604: Use and Management of Chemical Agents

- o General Order 600-612: Puerto Rico Police Authority to Carry Out Searches and Seizures
- o General Order 600-614: Puerto Rico Police Authority to Carry Out Arrests and Citations
- o PRDD Forms No. 853: Plan to Carry Out Arrests/Detentions and Searches/Seizures (Spanish)
- o PRDD Forms No. 877: Supplemental Report (Spanish)
- o PRDD Forms No. 879: Consent Form to a Search (Spanish and English)
- o PRDD Forms No. 880: Report of Arrest/Apprehension With or Without Order (Spanish)
- o PRDD Forms No.126: Inventory of Occupied Property (Spanish and English)
- o PRDD Forms No. 47: Citations (Spanish and English)
- o PRDD Forms No. 264: Form of Warnings for Suspicious Persons in Care before doing or beginning again an Interrogation (Spanish and English)
- o Operational Manual for Field Training Officers
- o Administrative Order 2015-1-IV: Administrative order of vehicular intervention (Traffic Stops)
- o General Order 111: General Order for Creation and Functional Organization of the PRPD Reform Office
- o General Order for the Establishment of Review Boards of Incidents of Use of Force
- o Code of Ethics
- o General Order 800-801: Community Interactions Committees
- o Rules to Carry Out Voluntary Interviews and Policy on the Investigative Detention of Police of Puerto Rico
- o Revision of Regulation No. 6508: Regulation to Establish Public Policy and Procedure for Filing Complaints of Sexual Harassment in the Police of Puerto Rico
- o Creation of the Regulation for the Establishment of Police Practices Free of Discrimination, Harassment and Retaliation from the Police of Puerto Rico
- o Internal Regulations for the Prevention of Harassment, Discrimination and Retaliation from the Police of Puerto Rico
- o Review of Special Order 2010-5: Public Policy on Non-Discrimination and Protection of Civil Rights and to Establish the Procedure to Address Complaints of Crimes Motivated by Prejudice
- o Amendment to the General Order 2010-14: Creation of the Auxiliary Superintendence of Professional Responsibility

- • TCA Core Team meeting with Domestic Violence Division

representatives(March, 2015)
- TCA Core Team meeting with Reform Office's Community Interaction Area representatives (March, 2015)
- TCA Core Team meeting with Reform Office's Public Information Area representatives (March, 2015)
- Conference call with Robert Warshaw, PRPD Consultant (April, 2015)

Meetings with Puerto Rico Police Department representatives:

- Meeting with Puerto Rico Joint Forces of Rapid Action's officials (known by its Spanish initials as FURA) (December, 2014)
- Meeting with Colonel Héctor Agosto Rodríguez, Ponce Area Headquarters (February, 2015)
- TCA's active participation in the PRPD's Board of Examinations for Promotion
- Several visits to the Police Academy and meetings with Col. Hernández de Fraley and her staff.


Visits and meetings to Police Regional Headquarters and Police Stations:

- TCA attended to graduation for Colonels at the Police Academy. (January, 2015)
- TCA and Core Team attended to the first graduation cadets under the PRPD Reform Agreement. (March, 2015)
- TCA and Core Team visit to FURA's Marine Unit (January, 2015; May, 2015)
- TCA and Core Team visit to Humacao Police Station (January, 2015)
- TCA and Core Team visit to Bayamón Oeste Zone of Excellence (March, 2015; May, 2015)
- TCA and Core Team visit to Canine Unit in Bayamón (April, 2015; May, 2015)
- TCA and Core Team visit to Las Piedras Zone of Excellence (April, 2015)
- TCA and Core Team visit to the following Field Training Officer Programs: San Juan, Carolina, and Bayamón Areas (May, 2015)


Meetings and communications with representatives of the following Puerto Rico Police's associations and others workers' union:

- Ismael Rivera, Police Association (January, 2015)
- Ismael Rivera and Jorge Velázquez , Police Association (February, 2015)
- Jorge Tirado, President of Firefighter's Union (February, 2015)

Meetings and activities of the Community Interaction Council ("*Consejo de Interacción Ciudadana*")

- Meeting with the Central Council's President, Luis Romero Font (December, 2014)

Meetings and activities of the Community Safety Council ("*Consejos Comunitarios de Seguridad*"):

- Meeting with Mrs. Iza Rodriguez, Spokesperson of the Community Safety Council in Bayamón Area (December, 2014)
- Meeting with Naranjito Cedro Arriba Community Safety Council (January, 2015; May, 2015)
- TCA assisted to the Community Safety Council Assembly in Caguas (March, 2015)
- TCA assisted to the Counselor Swearing Act in Ponce (March, 2015)

Meetings with Community Leaders and other interaction community's activities:

- Meeting with Tati Escobar and María Nieves, South Regional Director for the Office of Advocate for Individuals with Disabilities (December, 2014)
- Meeting with Cecilia La Luz from "*Centro Comunitario LGBTT*", Transgender Group, PRPD Reform Office representative and Commander José Juan García, PRPD Drugs Division's Director and his staff. (March, 2015; May, 2015)

Meetings with citizens who have been victims of civil rights violations by the Police of Puerto Rico:

- Meetings and/or telephones calls with the Superintendent José L. Caldero López regarding police civil rights' abuses
- Meetings and/or telephones calls with Esq. William Ramirez from American Civil Liberties Union (ACLU) regarding police civil rights' abuses
- Meeting with Dr. Rafael A. Torruella and Pedro Colón from "*Intercambios Puerto Rico*", regarding complaints of police agents' interventions with the needle exchange population in Fajardo (May, 2015)
- Telephone conversations with the parents of the victim of police brutality (May, 2015)

| TCA Second Semi-Annual Report | 2015 |
|---|---|

<u>Other Meetings with Stakeholders</u>:

- University of Puerto Rico's Public Administration Graduate School representatives, Dr. Richard Blanco Peck and Israel Tirado, for discussion of Paragraph 241 (December, 2014; February, 2015, March, 2015)
- TCA participated in radio interview (January, 2015)
- Celia Galán from APNI ("*Asociación de Padres de Niños con Impedimentos*") (January, 2015)
- Elena Pagán, Community Representative from Santa Rita Public Housing (January, 2015)
- William Ramírez, Esq. ACLU (February, 2015)
- TCA and Core Team meeting with Chuck Gruver, Federal Monitor to the US Virgin Islands Police Case (February, 2015)
- Dr. Richard Blanco Peck, University of Puerto Rico Public Administration Graduate School for the discussion and analysis of Paragraph 241 of the Agreement. (February, 2015; March, 2015; April, 2015)
- ACLU, "*Comité Comunitario*" and USDOJ (February, 2015)
- Dr. Gerardo Perfecto Rivera, University of Puerto Rico Social Science Faculty's Director (March, 2015)
- Emily Ramos in representation of the "*Hernandad de Agentes Retirados de la Policia de Puerto Rico*" (March, 2015)
- Heriberto Sepúlveda, Esq. and Teresita Rodríguez, Commission of Investigation, Prosecution and Appeal ("*Comisión de Investigación, Procesamiento y Apelación*" / CIPA) (March, 2015)
- Dr. Carlos Pérez Fernández, Dominican Republic Vice-Consul (March, 2015)
- Jorge Benítez Nazario and Miguel Méndez from "Mi Opinión Cuenta" for the discussion and analysis of Paragraph 241 of the Agreement. (April, 2015)
- TCA coordinated and facilitated a meeting between William Ramírez, Esq., and Josue González, Esq., of ACLU with Lieutenant Colonel Clementina Vega and Commander Alba Díaz from the PRPD. (April, 2015)
- Miguel Rivera, Roberto Vizcarrondo, Ramón Rodríguez, and Lourdes Vizcarrondo of Dewey University (May, 2015)

TCA Second Semi-Annual Report                                    2015

# Appendix 2: List of Resources Shared (Detailed List)

| DATE SENT | NAME OF DOCUMENT | COMMENT |
|---|---|---|
| Jun 3, 2015 | BEST PRACTICES OPERATIONAL PLANS | TCA CORE Team Member forwarded best practices operational plans |
| Jun 3, 2015 | CRITICAL INCIDENT PAPER AND MODEL POLICY, INCIDENT COMMAND MODEL POLICY | TCA CORE Team Member forwarded IACP Critical Incident Paper, Critical Incident Model Policy and Incident Command Model Policy |
| Jun 3, 2015 | PIO HANDBOOK | TCA CORE Team Member forwarded a basic manual & reference for Public information officers in emergency service agencies |
| Jun 2, 2015 | DOMESTIC VIOLENCE FORMS | TCA CORE Team Member forwarded samples of forms used with domestic violence victims |
| Jun 2, 2015 | SERGEANTS PROMOTIONAL PROCESS | TCA CORE Team Member forwarded Sergeant's Oral Board Questions and Response expectations |
| Jun 2, 2015 | Anti Bias Policing | TCA CORE Team Member forwarded student guide for Hate/Bias crime investigation |
| Jun 2, 2015 | SEGS-Patrol | TCA CORE Team Member forwarded standardized evaluation guidelines for Patrol |
| Jun 2, 2015 | DOR | TCA CORE Team Member forwarded FTO  Daily Observation report form for FTO mentors |
| Jun 2, 2015 | FTA DOR NEW | TCA CORE Team Member forwarded Field Training & Evaluation Program Daily Observation Report |
| May 31, 2015 | Baltimore Police Union Contract | TCA CORE Team Member forwarded Impediments of Accountability by Professor Samuel Walker |
| May 31, 2015 | Arizona POST Model 4 hour lesson plan-Police and the Community | TCA CORE Team Member forwarded Arizona POST Model 4 hour lesson plan-Police and the Community |

OFFICE OF THE TECHNICAL COMPLIANCE ADVISOR                    40

TCA Second Semi-Annual Report | 2015

| May 23, 2015 | POLICE PARAMEDICS:  "The Emergence of the Tactically Trained Medic", "IACP-Medical Care @ Street Level-Patrol Officer's Role in Life Saving Measures", "Salina Police Department Excited Delirium Policy", "IACP Emergency Trauma Care" | TCA CORE Team Member forwarded information on medically trained police officers to Coronel Fraley reference Academy Training |
|---|---|---|
| May 21, 2015 | EPSO INTERNAL  AFFAIRS MANUAL | TCA CORE Team Member forwarded sample of police manual reference Internal Affairs |
| May 14, 2015 | IACP BICYCLE PATROL MODEL POLICY & IACP BICYCLE PATROL ISSUES PAPER | TCA CORE Team Member forwarded information reference Bicycle Patrol to Coronel Fraley. Also referred Ana Novis as Spanish/English trainer for Academy |
| May 13, 2015 | Red Rocks Community College Police Academy rules, The Jefferson County/Lakewood PD Recruit Orientation Manual, POST evaluation materials. | TCA CORE Team Member forwarded information on three police academies and POST to Coronel Fraley three police academies and POST reference confidentiality and rules. |
| May 11, 2015 | Lakewood PD rifle  training | TCA CORE Team Member forwarded information on firearms long rifles to Coronel Fraley reference Academy Training |
| Apr 29, 2015 | Lakewood PD range training firearms | TCA CORE Team Member forwarded information on firearms range training to Coronel Fraley reference Academy Training |
| Apr 23, 2015 | ORGANIZATIONAL ANALYSIS | TCA CORE Team Member forwarded questions for organizational analysis to Coronel Fraley reference ideas for internal survey. |
| Apr 22, 2015 | ETHICAL ASSESSMENT | TCA CORE Team Member forwarded information concerning ethical assessment to Coronel Fraley ref Academy class |
| Apr 22, 2015 | ETHICAL ROLEPLAYING | TCA CORE Team Member forwarded information concerning ethical role playing scenarios to Coronel Fraley ref Academy class |
| Apr 22, 2015 | OBSERVED POLICE BEHAVIOR SURVEY | TCA CORE Team Member forwarded survey ref police behavior to  Coronel Fraley |

OFFICE OF THE TECHNICAL COMPLIANCE ADVISOR

| Apr 20, 2015 | CHILDREN & TRAUMA SPANISH BROCHURE | TCA CORE Team Member forwarded Spanish language brochure from Rose Andom Center |
|---|---|---|
| Apr 20, 2015 | DOMESTIC VIOLENCE SPANISH BROCHURE | TCA CORE Team Member forwarded Spanish language brochure from Rose Andom Center |
| Apr 20, 2015 | TRAUMA SPANISH BROCHURE | TCA CORE Team Member forwarded Spanish language brochure from Rose Andom Center |
| Apr 20, 2015 | VAU SPANISH BROCHURE | TCA CORE Team Member forwarded Spanish language brochure from Rose Andom Center |
| Apr 20, 2015 | YOUR RIGHTS SPANISH BROCHURE | TCA CORE Team Member forwarded Spanish language brochure from Rose Andom Center |
| Apr 20, 2015 | ROSE ANDOM CENTER | TCA CORE Team Member forwarded Spanish language brochure about Rose Andom Center |
| Apr 14, 2015 | HUMAN TRAFFICKING FACTS & INFORMATION | TCA CORE Team Member forwarded facts reference Human Trafficking to Coronel Fraley |
| Apr 14, 2015 | POLICE OFFICER STANDARDS & TRAINING SPANISH PPT | TCA CORE Team Member forwarded PowerPoint in Spanish reference Standards & Training |
| Apr 13, 2015 | 2013 COLORADO POST MANUAL | TCA CORE Team Member forwarded 2013 POST with references to programs and train the trainer |
| Apr 11, 2015 | DWI SPANISH.ENGLISH | TCA CORE Team Member forwarded Spanish/English DWI scenario |
| Apr 11, 2015 | SPANISH SIL FLYER | TCA CORE Team Member forwarded sample flyer for seminar on family members of victims of sexual assault. |
| Apr 8, 2015 | BEYOND FERGUSON SLIDE SHOW-IMPROVING POLICE | TCA CORE Team Member forwarded information concerning situation in Ferguson MO |
| Apr 7, 2015 | ICITAP PROGRAM STRATEGY ALAINZA/ICITAP PARTNERSHIP FOR CHANGE | TCA CORE Team Member forwarded ICITAP Spanish/English partnership for change |
| Apr 3, 2015 | INTERVIEW QUESTIONS | TCA CORE Team Member forwarded sample of survey used by EPSO |

TCA Second Semi-Annual Report                                    2015

| Apr 1, 2015 | CITIZEN SURVEY | TCA CORE Team Member forwarded sample of citizen survey used by Lakewood PD |
|---|---|---|
| Feb 24, 2015 | FTO MANUAL | TCA CORE Team Member forwarded Lakewood PD FTO manual reference train the trainer |
| Feb 23, 2015 | CIRT PROCEDURES | TCA CORE Team Member forwarded to Xiomara for use by the PRPD & possibly for joint operations with the Municipal Police. |
| Feb 18, 2015 | MPDC FIT PROGRAM | TCA CORE Team Member forwarded information from MPDC Force Investigation Team on Use of Force to Xiomara as requested |
| Feb 16, 2015 | COMMUNITY ENGAGEMENT WEBINAR | TCA CORE Team Member forwarded information about a Webinar on Community Engagement in High-Violence Neighborhoods |
| Feb 11, 2015 | MILITARY AND POLICE | TCA CORE Team Member forwarded article "Creating a Culture for Leading and Performing in the Extreme" |
| Jan 14, 2015 | IACP NATIONAL POLICY SUMMIT ON COMMUNITY-POLICE RELATIONS | TCA CORE Team Member forwarded "IACP National Policy Summit on Community-Police Relations: Advancing a Culture of Cohesion and Community Trust" to Colonels |
| Jan 13, 2015 | NYC CCRB CHOKEHOLD REPORT | TCA CORE Team Member forwarded report on chokeholds |
| Jan 12, 2015 | ADA AND LAW ENFORCEMENT | TCA CORE Team Member forwarded Americans with Disabilities Act information on the ADA, hiring, & communicating with the deaf or hard of hearing, |
| Dec 19, 2014 | TASER POLICIES - LAPD, INDEPENDENCE MO & MODEL POLICY | TCA CORE Team Member forwarded Taser model policy information |
| Dec 17, 2014 | IACP CONDUCTING STAKEOUTS | TCA CORE Team Member forwarded IACP Model policy reference stakeouts to Coronel Fraley as requested |
| Dec 17, 2014 | ELECTRONIC CONTROLLED WEAPONS MODEL POLICY | TCA CORE Team Member forwarded IACP Model policy reference Electronic weapons to Coronel Fraley as requested |

TCA Second Semi-Annual Report | 2015

| Dec 17, 2014 | MOTOR VEHICLE STOPS MODEL POLICE | TCA CORE Team Member forwarded IACP Model policy reference Motor Vehicle Stops to Coronel Fraley as requested |
| --- | --- | --- |