UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff;<br><br>  v.<br><br>COMMONWEALTH OF PUERTO RICO, et al.,<br><br>    Defendants. | No. 12-cv-2039 (GAG) |

**JOINT RESPONSE TO THE SIX-MONTH REPORT OF THE
TECHNICAL COMPLIANCE ADVISOR, DECEMBER 7, 2014 – JUNE 7, 2015**

COME NOW, Plaintiff, United States of America, and Defendants, Commonwealth of Puerto Rico, et al. (Commonwealth), through the undersigned, and respectfully submit the following joint response to the "Six-Month Report of the Technical Compliance Advisor, December 7, 2014 – June 7, 2015," (Six-Month Report) filed on July 10, 2015. Dkt. #245. The Parties appreciate the considerable effort of the Technical Compliance Advisor (TCA) and his team of subject-matter experts during the review period. The Parties submit this Response to assist the TCA in promoting systemic reform during the current capacity-building phase of the case through his semiannual implementation assessments and reports. This Response is also intended to clarify the purpose of the capacity-building phase to assist the TCA in crafting an appropriate monitoring methodology that will be the subject of upcoming reports.

### I. BACKGROUND

The United States described the capacity-building period in its response to the TCA's First Six-Month Report. Pl.'s Supplement to the First Six-Month Rep. of the Technical Compliance Advisor, June 6-December 6, 2014 at 1-4, Dkt. #212. In sum, the Parties recognized the significant need to professionalize and modernize the Puerto Rico Police Department (PRPD)

to ensure that the civil rights reforms in the Agreement for the Sustainable Reform of the Puerto Rico Police Department (Agreement) were achievable and sustainable.  *See* Agreement ¶¶ 2-4, Dkt. #57-1.  To that end, the Parties agreed to incorporate a unique capacity-building period during the first four years of the Agreement to permit PRPD to improve and update its management and operating systems and structures.  *See id.* ¶ 237 ("The Action Plans shall address resources, funding, staffing, technology, capacity, and other infrastructure and budgetary needs to place PRPD in a position to implement each of the Agreement's provisions . . . within four years from the Appointment Date and in accordance with the implementation schedules set forth in the Action Plans.")  The Parties also agreed to Action Plans that would be developed by the Commonwealth for each of the eleven substantive sections of the Agreement and would serve as blueprints for PRPD's activities during the capacity-building period.  *See id.* ¶ 234.  Once approved by the Parties, the TCA, and the Court, the Action Plans would be filed with the Court and incorporated into the Agreement as court-enforceable terms.  *Id.* ¶ 238.  The TCA is charged with evaluating PRPD's compliance with the Agreement by assessing PRPD's progress against its Action Plans during the capacity-building period.  *Id.* ¶ 240.

       PRPD developed its first four Action Plans during the review period covered by the Six-Month Report.  PRPD submitted these plans to the TCA and the United States on May 7, 2015.  In a letter dated May 14, 2015, the TCA found that the Action Plans met the requirements of the Agreement and indicated that he would approve the Action Plans after PRPD addressed the United States' comments.  Letter from TCA to PRPD of 5/14/15, attached hereto as Ex. A.  On June 16, 2015, the TCA sent a follow-up letter indicating that he had completed his final review of the first four Action Plans and reiterating that the Action Plans met the Agreement's requirements.  Letter from TCA to PRPD of 6/16/15, attached hereto as Ex. B.  The TCA also

provided additional comments related mostly to procedural issues concerning the revision of policies. *See id.* The Parties and the TCA participated in several telephone conferences to discuss the United States' comments on the Action Plans in July and August 2015.

On June 10, 2015, after the TCA's first letter finding that the first set of Action Plans satisfied the Agreement, the TCA submitted a draft of the Six-Month Report to the Parties for review and comment. In the draft report, the TCA raised several concerns stemming from his review of specific incidents and units within PRPD, such as the Maritime Unit, the Drug Division, and the Canine Unit. *See* Six-Month Rep. at 19-21. In some cases, the TCA outlined a series of recommendations to address his concerns.

The Parties submitted comments on the TCA's draft Six-Month Report and requested that the TCA provide his findings and observations in the context of the Action Plans. In its comments, the United States urged the TCA to submit comments on the Action Plans to address the systemic issues raised by the specific incidents : "The TCA's observations and recommendations related to the Agreement should be addressed in the context of PRPD's action plans in order to ensure proper follow up and remedial action during the capacity building period." Letter from USDOJ to TCA of 7/6/15 at 4, attached hereto as Ex. C. PRPD submitted similar comments in a June 25, 2015 letter to the TCA: "Any technical assistance by the TCA should bear on the Action Plans that are being developed. Any recommendations by the TCA on operational issues of the PRPD will be treated as such." Letter from PRDOJ to TCA of 6/25/15 at 4, attached hereto as Ex. D. On July 2, 2015, the TCA's Office replied to PRPD's comments stating that it was using the capacity-building period to "shield" itself from "all unethical and unprofessional conduct." *See* Letter from TCA to PRDOJ of 7/2/15 at 5, attached hereto as Ex. E.

The Six-Month Report includes a brief discussion of the monitoring methodology that the TCA plans to employ during the capacity-building period. Six-Month Rep. at 30-32. The methodology will be the basis for upcoming monitoring reports. The TCA elaborated on the methodology in a document submitted to the Parties on August 6, 2015, which the Parties discussed at length during the TCA's site visit on August 13, 2015.

The Parties each notified the TCA of the necessity for an extension of time to file responses to the Six-Month Report. The extension was prompted by the fuller monitoring methodology that was provided to the Parties on August 6 and discussed during the August 13 monitoring visit, together with confirmation from the TCA that he had no additional substantive comments on the Action Plans. The TCA agreed to the extension and indicated that he had briefed the Court on the Parties' request. On August 13, 2015, the Parties applied jointly for the extension by way of motion on August 13, 2015. Dkt. #250. The Court denied the Parties' extension, and directed them to file comments in restricted public viewing and send copies to the TCA by August 17, 2015 at 12:00 p.m. Dkt. #251.

## II.  DISCUSSION

The Action Plans required by the Agreement will embody PRPD's commitments on critical operating and management systems and structures that are necessary to effectively implement the Agreement's reforms. These systems and structures include an integrated communication system to assist patrol officers in carrying out their reporting obligations in the field, a record management system to improve the tracking and handling of civilian complaints and internal investigations, and staffing studies to provide for the effective deployment of agency personnel. Because the Action Plans serve as both PRPD's obligations during the capacity-building phase and a roadmap for success, omitting critical suggestions from the Action Plans

leaves PRPD without both structure and guidance as it prepares for the compliance phase of the Agreement

Because the Action Plans were under development during the review period, there was an opportunity for the TCA to contribute the findings and observations from his Six-Month Report to the elaboration of the Action Plans. These contributions would have ensured that the Action Plans benefited from the valuable insights gained by the TCA's team of subject-matter experts during their on-site assessments over the last year and would have ensured that the Action Plans were as complete as possible. The Parties' urged the TCA to make these contributions in their informal comments on the draft Six-Month Report. However, the TCA offered only minimal substantive comments to the first four Action Plans on use of force, searches and seizures, equal protection, and civilian complaints and investigations before finding that the Action Plans satisfied all of the requirements in the Agreement. The Parties reiterate their request that the TCA contribute his substantive insights regarding systemic needs that should be addressed during the capacity-building period as PRPD completes its remaining seven Action Plans.

> A. **The TCA Should Assist the Parties in Developing Action Plans Through his Monitoring Reports.**

The Action Plans required by the Agreement serve an important purpose during the capacity-building period. The Action Plans provide the scope and breadth of remedial action that will be taken by PRPD under the Agreement, and, correspondingly, the scope and breadth of the TCA's monitoring activities and reports. Limiting the TCA's focus in this manner is not only required by the terms of the Agreement, it is necessary to ensure that the TCA's efforts do not become overly diffuse and thus ineffective, and that the TCA's legitimacy with PRPD and the public—legitimacy critical to the TCA's success—is not compromised.

Paragraph 240 of the Agreement provides that:

5

> During the first four years from the Appointment Date, the TCA shall evaluate PRPD's compliance with the Agreement by assessing PRPD's progress against its Action Plans. The TCA shall assess whether PRPD has met the timeline for each detailed step specified in the Action Plans, and whether PRPD is in full, partial, or noncompliance with the detailed steps. The TCA shall conduct the first progress assessment six months from the Appointment Date, and every six months thereafter.

Agreement ¶ 240. The Agreement also provides, at Paragraph 250, that the TCA's reports during the first four years of the Agreement will assess whether the Action Plans' timeframes have been met and whether the Commonwealth is "making satisfactory progress toward implementation of the Agreement by rating PRPD in full, partial, or noncompliance with steps in the Action Plans." Agreement ¶ 250(b).

While the development of the first four Action Plans during the review period was collaborative between the Parties and the TCA, the Parties believe that the TCA missed an opportunity to offer substantive comments on the Action Plans based on the findings and observations in the Six-Month Report. The Second Six-Month Report focuses too little on the systemic changes needed at PRPD, instead highlighting discreet incidents of alleged misconduct and the TCA Office's own daily tasks.

For example, the Six-Month Report discusses a specific incident involving PRPD's Drug Division and specific site visits to the Canine and Maritime Units. Six-Month Rep. at 19-21. Specifically, the TCA raised specific concerns related to operational planning by the Drug Division. *Id.* at 19-20. The TCA also indicated that he observed "significant operational and administrative shortcomings regarding training, shortage of equipment, and operational matters that are directly associated with the terms of the Agreement" concerning the Canine and Maritime Units. *Id.* at 21. The TCA further stated that he shared these concerns with PRPD to ensure they were addressed in the Action Plans. However, during the Parties' discussions

6

regarding the first four Action Plans in July and August 2015, the TCA indicated that he did not have substantive comments on the Action Plans.  The Parties urge that the TCA's upcoming report contribute to the development of the remaining seven Action Plans by offering substantive comments on systemic reforms that are needed to place PRPD in the best possible position to comply with the Agreement at the conclusion of the capacity-building period.

> **B.    The Monitoring Methodology in the Six-Month Report Misconstrues the Compliance Assessments Required by the Agreement.**

The monitoring methodology outlined in the Six-Month Report on pages 30-32 misconstrues the series of reviews and assessments that are required by the Agreement.  The fuller description of the TCA's methodology for the capacity-building period, shared with the Parties on August 6, 2015 and discussed during the TCA's on-site visit on August 13, 2015 was similarly flawed.

In the Six-Month Report, the TCA cites to Paragraphs 243 and 245, which apply to compliance reviews and outcome assessments that begin *after* the end of the capacity-building period in June 2018.  Six-Month Rep. at 31.  Specifically, Paragraph 243 provides:  "In addition to the compliance reviews, the TCA shall conduct qualitative and quantitative outcome assessments to measure whether the *implementation of this Agreement* has resulted in constitutional policing."  Agreement ¶ 243 (emphasis added).  Paragraph 243 refers to the compliance reviews required under Paragraph 242, which begin four years after the Appointment Date.  Paragraph 245 requires that the TCA set out a schedule for conducting compliance reviews and outcome assessments that begin after the fourth and fifth years of the Agreement, respectively.  *Id.* ¶ 245.  Accordingly, the activities described in the monitoring methodology, such as utilizing internal questionnaires, interviews, focus groups, and quantitative data

collection methods are tailored to an evaluation of PRPD after it has implemented its Action Plans following the capacity-building period.

The monitoring methodology that is developed by the TCA for the capacity-building period should instead draw from Paragraph 236, 240, and 250.  Paragraph 236 requires that the TCA "provide PRPD with feedback and technical assistance as necessary" to develop and implement the Action Plans.  *Id.* ¶ 236.  Paragraph 240, cited above, requires that the TCA assess PRPD's progress against its Action Plans.  *Id.* ¶ 240.  Paragraph 250 sets forth the TCA's reporting obligations during the capacity-building period, which focuses on the implementation of Action Plans.  *Id.* ¶ 250(b). The methodology in the Six-Month Report and in the August 6, 2015 submission to the Parties does not discuss Paragraph 236 or 240.

The Parties are currently reviewing the TCA's monitoring methodology to ensure that it complies with the Agreement and meets the needs of the capacity-building period.  PRPD submitted initial comments on August 14, 2015, and the United States' comments are forthcoming.  The Parties anticipate that with the appropriate foundation based on the applicable provisions of the Agreement, the TCA's monitoring methodology can provide the Parties, the Court, and the public with the necessary information to determine whether PRPD is making satisfactory progress during the capacity-building period.

### III.  CONCLUSION

The Parties appreciate the TCA's efforts on the Six-Month Report.  The Parties urge the TCA to focus upcoming monitoring reports and methodologies on the unique capacity-building period in this case and the appropriate provisions of the Agreement.  Doing so will assist PRPD in crafting Action Plans that will ensure that critical systemic improvements are made during this initial phase of implementation.  The TCA's efforts on the Action Plans will also promote

sustainable reform, public accountability, and ongoing collaboration among the Parties and the TCA, which are essential to achieving the goals of the Agreement.

WHEREFORE, the United States respectfully requests that the Court take notice of the above.

Respectfully submitted, this 17th day of August, 2015,

| FOR PLAINTIFF UNITED STATES: | FOR DEFENDANTS COMMONWEALTH OF PUERTO RICO, ET AL.: |
|---|---|
| VANITA GUPTA<br>Principal Deputy Assistant Attorney General<br>Civil Rights Division | CESAR MIRANDA<br>Secretary of Justice |
| JUDITH PRESTON<br>Acting Chief | S/ BEATRIZ ANNEXY GUEVARA<br>BEATRIZ ANNEXY GUEVARA<br>USDC-PR # 217505 |
| CHRISTY LOPEZ<br>Deputy Chief | Special Assistant to the Secretary<br>P.R. Department of Justice<br>P.O. Box 9020192 |
| S/ BRIAN BUEHLER<br>LUIS E. SAUCEDO<br>Counselor to the Chief<br>ZAZY LOPEZ<br>BRIAN BUEHLER<br>USDC-PR # G01813<br>Trial Attorneys<br>U.S. Department of Justice<br>Civil Rights Division<br>Special Litigation Section<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>Tel:  (202) 353-1100<br>Fax:  (202) 514-4883<br>brian.buehler@usdoj.gov | San Juan, PR 00902-0192<br>Tel:  (787) 721-7700, ext. 2105<br>Fax: (787) 722-4440<br>bannexy@justicia.pr.gov<br><br>Attorneys for Defendants |
| Attorneys for Plaintiff | |

**CERTIFICATE OF SERVICE**

  I hereby certify that the foregoing was filed electronically on this 17th day of August 2015, with the Clerk of Court using the CM/ECF System, which will provide notice of such filing to all registered parties.

            *s/Brian Buehler*
            BRIAN BUEHLER
            Trial Attorney
            U.S. Department of Justice
            Civil Rights Division
            Special Litigation Section
            950 Pennsylvania Avenue, NW
            Washington, DC  20530
            Tel:   (202) 353-1100
            Fax:  (202) 514-4883
            Email:  brian.buehler@usdoj.gov

            Attorney for Plaintiff