separation from other governmental units or court systems.

An intern may not engage in the practice of law under Canon 4D. Thus, the Committee has advised that a judicial intern should not be permitted to perform legal or paralegal work at a law firm, as the performance of legal tasks for lawyers is treated as practicing law, in violation of Canon 4D. Also, an internship that is concurrent with providing assistance to a pro bono legal non-profit organization is permissible under Canon 4D(3) if it does not present an appearance of impropriety, does not take place while on duty or in chambers, does not interfere with the intern's service to the court, is uncompensated, does not involve appearing in any court or administrative agency, does not involve a matter of public controversy, does not involve an issue likely to come before the court, and does not involve litigation against the federal, state, or local government. *See* Employee's Code, Canon 4D.

March 2014

Committee on Codes of Conduct
Advisory Opinion No. 112

Use of Electronic Social Media by Judges and Judicial Employees

This opinion provides the Committee's guidance on an array of ethical issues that may arise from the use of social media by judges and judicial employees, particularly members of a judge's personal staff. This guidance is intended to supplement information the Committee developed in 2011 to assist courts with the development of guidelines on the use of social media by judicial employees. *See* Resource Packet for Developing Guidelines on Use of Social Media for Judicial Employees. The Committee noted in the Resource Packet that "[t]he Code of Conduct for Judicial Employees applies to all online activities, including social media. The advent of social media does not broaden ethical restrictions; rather, the existing Code extends to the use of social media." The Committee also recognizes that electronic social media may provide valuable new tools for the courts, and that some courts have begun to use social media for official court purposes. This opinion is not intended to discourage the official use of social media by the courts in a manner that does not otherwise raise ethics concerns. Nor is this opinion intended to supplant any social media policy enacted within each judge's chambers which may govern that specific judge's internal chambers' operation. If an individual judge's personal chambers' policy is stricter than that set forth below, the individual judge's policy should prevail.

I. Ethical Implications of Social Media

The use of social media by judges and judicial employees raises several ethical considerations, including: (1) confidentiality; (2) avoiding impropriety in all conduct; (3) not lending the prestige of the office; (4) not detracting from the dignity of the court or reflecting adversely on the court; (5) not demonstrating special access to the court or favoritism; (6) not commenting on pending matters; (7) remaining within restrictions on fundraising; (8) not engaging in prohibited political activity; and (9) avoiding association with certain social issues that may be litigated or with organizations that frequently litigate. These considerations implicate Canons 2, 3D, 4A, and 5 of the Code of Conduct for Judicial Employees, and Canons 2, 3A(6), 4, and 5 of the Code of Conduct for United States Judges. The Committee recognizes that due to the ever-broadening variety of social media forums and technologies available, different types of social media will implicate different Canons and to varying degrees. For that reason, many of the proscriptions set forth in this opinion, like those set forth in the Employees' and Judges' Code, are cast in general terms. The Committee's advice is to be construed to further the objective of "[a]n independent and honorable judiciary." Canon 1.

Social media include an array of different communication tools that can mimic interpersonal communication on the one hand, and act as a news broadcast to a larger audience on the other. For example, some social media sites can serve primarily as communication tools to connect families, friends, and colleagues and provide for sharing private and direct messages, posting of photos, comments, and articles in a tight-knit community limited by the user's security preferences. The same media, however, can serve to broadcast to a broader audience with fewer restrictions. Similarly, some social media sites can serve as semi-private communication media depending on how they are used, or can instantly serve as a connection to a large audience. Aside from social communication sites, users also have access to others' sites where they may comment on everything from the posting of a photograph, to a legal or political argument, or to the quality of a meal at a restaurant. This type of media can implicate other concerns since the user is now validating or endorsing the image, person, product, or service. Finally, there are media where the user is personally publishing commentary in the form of blogs. The Committee recognizes that the Canons cover all aspects of communication, whatever form they may take, and therefore offers general advice that can be applied to the specific mode. In short, although the format may change, the considerations regarding impropriety, confidentiality, appearance of impropriety and security remain the same.

II. Appearance of Impropriety

Canon 2 of the Employees' Code provides: "A judicial employee should not engage in any activities that would put into question the propriety of the judicial employee's conduct in carrying out the duties of the office." Similarly, Canon 2 of the Judges' Code states that "a judge should avoid impropriety and the appearance of impropriety in all activities." The Codes forbid judges and judicial employees from using, or appearing to use, the prestige of the office to advance the private interests of others. Canon 2 therefore is implicated when an employee or judge engages in the use of social media while also listing his or her affiliation with the court. For example, the Committee has advised that a law clerk who chooses to maintain a blog should remove all references to the clerk's employment. The Committee concluded that such reference would implicate Canon 2 concerning the use of the prestige of the office and the appearance of impropriety. The same can be true for a judge if she is using the prestige of the office in some manner in social media that could be viewed as advancing the private interest of another. For example, if the judge is using the media to support a particular establishment known to be frequented by lawyers near the courthouse, and the judge identifies herself as the supporter, the judge has used her office to aid that establishment's success. Similarly, if a judge comments on a blog that supports a particular cause or individual, the judge may be deemed as endorsing that position or individual. The Committee therefore cautions judges to analyze the post, comment, or blog in order to take into account the Canons that prohibit the judge from endorsing political views, engaging in dialogue that demeans the prestige of the office, commenting on issues that may arise before the court, or sending the impression that another has unique access to the Court.

## III. Improper Communications with Lawyers or Others

Another example of social media activity that raises concerns under Canon 2 is the exchange of frequent messages, "wall posts," or "tweets" between a judge or judicial employee and a "friend" on a social network who is also counsel in a case pending before the court. In the Committee's view, social media exchanges need not directly concern litigation to raise an appearance of impropriety issue; rather, any frequent interaction between a judge or judicial employee and a lawyer who appears before the court may "put into question the propriety of the judicial employee's conduct in carrying out the duties of the office." Employees' Code, Canon 2. With respect to judges, communication of this nature may "convey or permit others to convey the impression that they are in a special position to influence the judge." Judges' Code, Canon 2B. A similar concern arises where a judge or judicial employee uses social media to comment--favorably or unfavorably--about the competence of a particular law firm or attorney. Of course, any comment or exchange between an attorney and the judge must also be scrutinized so as not to constitute an ex parte communication. At all times, the Court must be screening for potential conflicts with those she communicates with on social media, and the Canon 3C provisions which govern recusal situations may be implicated and may require analysis.

The connection with a litigant need not be so direct and obvious to raise ethics concerns. The same Canon 2 concern arises, for example, when a judge or judicial employee demonstrates on a social media site a comparatively weak but obvious affiliation with an organization that frequently litigates before the court (i.e., identifying oneself as a "fan" of an organization), or where a judge or judicial employee circulates a fundraising appeal to a large group of social network site "friends" that includes individuals who practice before the court.

## IV. Extrajudicial Activities

Circumstances such as those described above also implicate Canon 4 of both the Employees' and Judges' Codes, which govern participation in outside activities. Canon 4 of the Employees' Code provides that "[i]n engaging in outside activities, a judicial employee should avoid the risk of conflict with official duties, should avoid the appearance of impropriety, and should comply with disclosure requirements." Canon 4 of the Judges' Code states that a judge should not participate in extrajudicial activities that detract from the dignity of the judge's office, interfere with the performance of the judge's official duties, reflect adversely on the judge's impartiality, or lead to frequent disqualification. Invoking Canon 4 of the Employees' Code, the Committee has advised that maintaining a blog that expresses opinions on topics that are both politically sensitive and currently active, and which could potentially come before the employee's own court, conflicts with Canon 4. Such opinions have the potential to reflect poorly upon the judiciary by suggesting that cases may not be impartially considered or decided. This advice would also apply to judges' use of social media. A judge would be permitted to discuss and exchange ideas about outside activities that would not pose any conflict with official duties, (e.g., gardening, sports, cooking), yet the judge must always consider whether those outside activities invoke a potentially debatable issue that might present itself to the court, or an issue that involves a political position.

## V. Identification of the Judge or Judicial Employee

Canons 2 and 4 are also implicated when a judge or judicial employee identifies himself as such on a social networking site. Through self-description or the use of a court email address, for example, the judge or employee highlights his affiliation with the federal judiciary in a manner that may lend the court's prestige. This issue has previously been presented to the Committee, and it is the Committee's view that judicial employees should, at the very least, be restricted from identifying themselves with a specific judge. *See* Resource Packet, at 23 (describing a policy allowing judicial employees to identify themselves as an employee of the federal courts generally, without specifying which court or judge, as the "least restrictive" of several suggested recommendations). The Committee also advises against any use of a judge's or judicial employee's court email address to engage in social media or professional social networking. The court employee or judge should consult the court's policies on permitted and prohibited use of court email, and the court's guidance on the employee's conduct while using a court email server and court email address. Similarly, the court email address should not be used for forwarding "chain letter type" correspondences, the solicitation of donations, the posting of property for sale or rent, or the operation of a business enterprise. *See Guide to Judiciary Policy*, Vol. 15, § 525.50 ("Inappropriate personal use of government-owned equipment includes ... using equipment for commercial activities or in support of commercial activities or in support of outside employment or business activity...." This policy also prohibits use of the email system for "fund-raising activity, endorsing any product or service, participating in any lobbying activity, or engaging in any partisan political activity.")

## VI. Dignity of the Court

Furthermore, Canon 4A of the Employees' Code provides that "[a] judicial employee's activities outside of official duties should not detract from the dignity of the court, interfere with the performance of official duties, or adversely reflect on the operation and dignity of the court or office the judicial employee serves." Certain uses of social media raise concerns under Canon 4A that are not within the ambit of Canon 2. For example, a judge or judicial employee may detract from the dignity of the court by posting inappropriate photos, videos, or comments on a social networking site. The Committee advises that all judges and judicial employees behave in a manner that avoids bringing embarrassment upon the court. Due to the ubiquitous nature of information transmitted through the use of social media, judges and employees should assume that virtually all communication through social media can be saved, electronically re-transmitted to others without the judge's or employee's knowledge or permission, or made available later for public consumption.

## VII. Confidentiality

Canon 3D of the Employees' Code provides in relevant part that a "judicial employee should avoid making public comment on the merits of a pending or impending action ...." Canon 3D further states that a judicial employee "should never disclose any confidential information received in the course of official duties except as required in performance of such duties, nor should a judicial employee employ such information for personal gain." Canon 3A(6) of the Judges' Code provides that "[a] judge should not make public comment on the merits of a matter pending or impending in any court." Canon 4D(5) of the Judges' Code provides that "a judge should not disclose or use nonpublic information acquired in a judicial capacity for any purpose unrelated to the judge's official duties." Most social media forums provide at least one--and often several--tools to communicate instantaneously with anywhere from a few to thousands of individuals. Any posting on a social networking site that, for example, broadly hints at the likely outcome in a pending case, divulges confidential case processing procedures, or reveals non-public information about the status of jury deliberations violates Canon 3D. Such communications need not be case-specific to implicate Canon 3; even commenting vaguely

on a legal issue without directly mentioning a particular case may raise confidentiality concerns and impropriety concerns. Thus the Committee advises that in all online activities involving social media, the employee may not reveal any confidential, sensitive, or non-public information obtained through the court. The Committee further advises that judicial employees who are on the judge's personal staff refrain from participating in any social media that relate to a matter likely to result in litigation or to any organization that frequently litigates in court. Lastly, the Committee reminds that former judicial employees should also observe the same restrictions on disclosure of confidential information that apply to a current judicial employee, except as modified by the appointing authority.

## VIII. Political Activity

Canon 5 of the Employees' Code specifically addresses political activity: "A judicial employee should refrain from inappropriate political activity." Similarly, Canon 5 of the Judges' Code states that a "judge should not ... publicly endorse or oppose a candidate for public office" or "engage in any other political activity." Judges' Code, Canon 5A(2), 5(C). In the social media context, judges and judicial employees should avoid any activity that affiliates the judge or employee to any degree with political activity. This includes but is not limited to posting materials in support of or endorsing a candidate or issue, "liking" or becoming a "fan" of a political candidate or movement, circulating an online invitation for a partisan political event (regardless of whether the judge/employee plans to attend him/herself), and posting pictures on a social networking profile that affiliates the employee or judge with a political party or partisan political candidate. The Committee reminds that while Canon 5B of the Employees' Code permits certain nonpartisan political activity for some judicial employees, the Codes specify that all judges, members of judges' personal staffs, and high-level court officers must refrain from all political activity.

## IX. Conclusion

In light of the reality that users of social media can control what they post but often lack control over what others post, judges and judicial employees should regularly screen the social media websites they participate in to ensure nothing is posted that may raise questions about the propriety of the employee's conduct, suggest the presence of a conflict of interest, detract from the dignity of the court, or, depending upon the status of the judicial employee, suggest an improper political affiliation. We also note that the use of social media also raises significant security and privacy concerns for courts and court employees that must be considered by judges and judicial employees to ensure the safety and privacy of the court.

While the purpose of this opinion is to provide guidance with respect to ethical issues arising from the use of social media by judges and judicial employees, the Committee also notes that social media technology is subject to rapid change, which may lead to new or different ethics concerns. Each form of media and each factual situation involved may implicate numerous ethical Canons and may vary significantly depending on the unique factual scenario presented in this rapidly changing area of communication. There is no "Fone size fits all" approach to the ethical issues that may be presented. Judges and judicial employees who have questions related to the ethical use of social media may request informal advice from a Committee member or a confidential advisory opinion from the Committee.

### Notes for Advisory Opinion No. 112

[1] The Code of Conduct for Judicial Employees ("the Employees' Code") defines a member of a judge's personal staff as "a judge's secretary, a judge's law clerk, and a courtroom deputy clerk or court reporter whose assignment with a particular judge is reasonably perceived as being comparable to a member of the judge's personal staff." The term judicial employee also covers interns, externs, and other court volunteers.

March 2014

---

Committee on Codes of Conduct
Advisory Opinion No. 113

## Ethical Obligations for Recall-Eligible Magistrate and Bankruptcy Judges

Bankruptcy and magistrate judges who have retired or are considering doing so have several options to consider, depending on whether they continue to hear cases on recall status, practice law, or engage in pursuits outside the court system other than the practice of law. A retired judge's choice of status impacts whether that judge remains subject to both the Code of Conduct for United States Judges and the limitations on outside earned income. This advisory opinion sets out the options available to retired judges, as well as the effect of each on the retired judge's ethical obligations.

### I. Judges serving on recall status

Retired judges may be recalled to service in accordance with regulations promulgated by the Judicial Conference under 28 U.S.C. § 155(b) (for bankruptcy judges) or § 636(h) (for magistrate judges). A circuit judicial council may recall a retired judge, but only with the judge's consent.

Retired bankruptcy judges recalled to serve, and almost all retired magistrate judges recalled to serve (the exceptions are described in Section IV below), are subject to the provisions of 28 U.S.C. §§ 153(b) and 632(a) and the Code of Conduct in the same manner as active judges. See Guide to Judiciary Policy (Guide), Vol. 3, §§ 920.25, 1020.25, 1120.60, and 1220.60; Code of Conduct for United States Judges (Guide, Vol. 2A, Ch. 2), Compliance with the Code of Conduct. These judges are also subject to limitations on outside earned income. See 5 U.S.C. App. § 501(a)(1); Guide, Vol. 2C, §§ 1020.20(b) and 1020.25(a). Recalled magistrate and bankruptcy judges do not qualify for an exemption from the outside earned income limitations for approved teaching. See 28 U.S.C. §§ 371(b) and 372(a); 5 U.S.C. App. § 502(b); Guide, Vol. 2C, § 1020.25(b)(7).

### II. Judges eligible for recall status but not serving

Judges eligible for recall status but not serving are subject to the portions of the Code applicable to part-time judges. Compliance with the Code of Conduct ¶ C. Retired bankruptcy and magistrate judges who are eligible for recall to judicial service should review the Code of Conduct carefully, continue to follow the many parts