# SIX-MONTH REPORT OF THE TECHNICAL COMPLIANCE ADVISOR JUNE 8, 2015 – DECEMBER 8, 2015

*Office of the Technical Compliance Advisor to the Agreement for the Sustainable Reform of the Puerto Rico Police Department*

| TCA Third Semi-Annual Report | 2015 |
|---|---|

# Table of Contents

| | |
|---|---|
| Table of Contents | 1 |
| A Message from the TCA | 2 |
| TCA Reports under the Agreement | 4 |
| Introduction | 5 |
| **Section I** | |
| PRPD Status Report | 7 |
| The Work of the TCA | 10 |
| **Section II** | |
| PRPD Action Plans | 16 |
| **Section III** | |
| Promotions | 30 |
| Canine | 31 |
| Mounted Division | 34 |
| Police Academy | 35 |
| Executive Hearings at the Women's Advocate Office | 37 |
| Drug Division | 38 |
| Information Systems | 39 |
| Second Public Hearing | 42 |
| Projected Activities | 51 |
| Appendixes | 52 |

# A Message from the Technical Compliance Advisor

This Report, submitted pursuant to Paragraphs 250 and 252 of the Agreement for the Sustainable Reform of the Puerto Rico Police Department ("Agreement"), summarizes the work conducted by the Technical Compliance Advisor ("TCA") for the Puerto Rico Police Department ("PRPD"), for the six-month period ending on December 8, 2015.

First and foremost, I want to acknowledge the work and dedication of the members of the PRPD's Office of the Reform. In the last six months, they have continued to work closely with the United States Department of Justice and my team in the same spirit of collaboration and assistance documented in earlier reports. There are plenty of tangible work products and ample and concrete developments to document and be proud of during this reporting period.

As a team, the Reform Office, the Parties and the Office of the TCA have worked tirelessly in the development of many policies in all different areas of the Reform. Similarly, we have all worked hand-in-hand in delivering the first four Action Plans and the submission of the next four plans. I want to applaud the tremendous progress of the PRPD in completing the production of the first four Actions Plans and coming close to effecting the production of the other succeeding four Action Plans.

Similarly, I want to take this opportunity to acknowledge the leadership and supporting staff of the PRPD. They have been driving the Reform forward through the roadmap set by the Agreement. The factor explaining the progress made during the past six months by the PRPD in terms of capacity building is the unremitting involvement of the PRPD's leadership in the day to day implementation of the Agreement. In recent months, I have met regularly with many PRPD leaders, including several times with the Superintendent, to address all matters relevant to the implementation of the Agreement and its obstacles. In these meetings I observed first-hand their personal involvement in all aspects of the Reform. As a team, PRPD meets on a weekly basis to assess the progress being made in all eleven focus areas. This commitment has made possible the important accomplishments documented in this Report by addressing head-on the challenges facing the Department these days. This commitment is now more evident and visible than at any other point in time since my appointment as the TCA.

| TCA Third Semi-Annual Report | 2015 |

I want to take this opportunity to thank those who participated in the Second Public Hearing, directly or indirectly. Jointly we continue to be fully committed to this process of community-centered Reform and to the need of incorporating the input of the community in all the phases of the Agreement. The TCA encourages the PRPD and the community to continue to find sustainable and productive sources to complete the PRPD's capacity, defining jointly the idea of community based policing and actively participating in the PRPD's journey to fight crime from a perspective of respect for civil rights and the transparency of proceedings.

Finally, I want to thank United States District Court Judge Gustavo Gelpí for his leadership, guidance, and vision. I communicate frequently with Judge Gelpí and his mentoring is much appreciated. He thought it was important to underscore the transparency of the Agreement and has opened the doors of the Courthouse to the Parties and the community so they can find a place where they can communicate effectively about the best way to move forward. He has assigned me and my team a significant task and we are committed to carry it out to the best of our abilities.

Colonel (ret.) Arnaldo Claudio
Technical Compliance Advisor

# TCA Reports under the Agreement

*Paragraph 250 of the Agreement:*

"During the first four years, from the Appointment Date, the TCA shall file with the Court, written public reports every six months that shall include:

a) a description of the work conducted by the TCA;

b) a listing of each detailed step in the Action Plans and its timeframe indicating whether the timeframe has been met, and whether the Commonwealth of Puerto Rico is making satisfactory progress toward implementation of the Agreement by rating PRPD in full, partial, or non-compliance steps in the Action Plan;

c) the methodology and specific findings for each review conducted, where appropriate, and redacted as necessary for privacy concerns. An un-redacted version shall be filed under seal with the Court and provided to the Parties. The underlying data for each audit or review shall not be publicly available, but shall be retained by the TCA and provided to either or both Parties upon request;

d) for any detailed steps that were reviewed and found not to have been fully implemented in practice, the TCA's recommendations regarding necessary steps to achieve compliance; and

e) a projection of the work to be completed during the upcoming reporting period and any anticipated challenges or concerns related to implementation of the Agreement."

*Paragraph 252 of the Agreement:*

"The TCA shall provide a copy of the six-month reports to the Parties in draft form within 15 days after the end of the reporting period. The Parties shall have fifteen calendar days upon receipt of the draft report to allow the Parties to informally comment on the draft report. The TCA shall consider the Parties' responses and make appropriate changes, if any, and shall file the final report with the Court within 45 days of the end of the review period. DOJ and PRPD may file responses to the TCA's final report within 30 days."

# Introduction

This is the Third Six-month Report ("Report") of the Technical Compliance Advisor ("TCA"). The purpose of this Report is to measure the progress made by the Puerto Rico Police Department ("PRPD") in meeting the requirements outlined in the Agreement, hereinafter, "the Agreement," for the Sustainable Reform of the Puerto Rico Police Department for the period from June 8, 2015 through December 8, 2015. Pursuant to the Agreement, it is the responsibility of the TCA to systematically review Action Plans, policies, procedures, programs, protocols, training, and systems of the PRPD and to measure the nature and extent of the PRPD's accomplishments toward the goals of constitutional policing, transparency, and public trust.

This Report consists of three major sections. In the first section, the Report comments on the PRPD's Third Status Report documenting the PRPD's accomplishments and progress made from May 31, 2015 through November 30, 2015. Consistent with Paragraph 250(a), this section of the Report also discusses the work conducted by the TCA in the last six months, from June 8, 2015 through December 8, 2015. It includes the work of the TCA in reviewing policies and procedures and in the implementation of surveys, as required by Paragraph 241.

In its second section, the Report focuses on the eleven areas of the Agreement, each requiring an individual Action Plan that delineates how and when PRPD will meet the objectives of the Agreement. This is consistent with the requirements of Paragraph 250, subsections (b) through (d). In August, the TCA and the USDOJ approved four Action Plans: _Use of Force; Searches and Seizures; Equal Protection and Non-Discrimination; and, Civilian Complaints, Internal Investigations, and Discipline._ In September, the PRPD submitted drafts for four additional Action Plans: _Professionalization; Recruitment; Supervision; and Community Engagement._ The TCA, jointly with the United States Department of Justice ("USDOJ"), made recommendations to these drafts and met with the PRPD in November. By the time of publication of this Report, the PRPD has submitted new drafts adopting many of the recommendations made by the TCA and the USDOJ. As of December, there are three outstanding Action Plans: _Policies and Procedures; Training; and Information Systems and Technology_.

Action Plans are a step-by-step approach of how PRPD will operationally implement the requirements of the Agreement. For the four Action Plans being implemented in the last three months, the TCA has begun the process of examining whether the timeframes are being met and, more importantly, on measuring the progress being made on each area.

This Agreement differs from other Agreements or Consent Decrees with other police departments in the United States in that it contains a "capacity building" period.   During this period, the TCA will only measure progress of the PRPD in the implementation of said Action Plans.  These Action Plans set forth what the PRPD intends to accomplish within a specified period. They incorporate policy and procedures that PRPD creates that are consistent with the terms of each of the eleven focus areas of the Agreement. The actual monitoring process of the Agreement will start on June 6, 2018.

The "capacity building period" affords the TCA the opportunity to observe every aspect of how the PRPD polices the people of Puerto Rico in a manner that is consistent with Agreement.   The initial four years of capacity building demand strategic planning, resource allocation, implementation, and program evaluation necessary to place the PRPD on a path toward greater modernization and professionalization.  As a result, the role of the TCA is to primarily guide and provide technical assistance to the PRPD in a manner that allows the PRPD to take ownership of its own transformation by ensuring their policies and practices adhere to the requirements of the Agreement.  Also, within this period of capacity building, the TCA provides the PRPD with the metrics and methodology that the TCA uses to measure progress and compliance with the detailed steps and timeframes in the Action Plans.  This enables the PRPD and the TCA to interact in the process of measuring how progress is evaluated.  The methodology is included in the appendixes.

In the third section, as required by Paragraph 250(e), the Report makes recommendations for improvement wherever the TCA identifies gaps in policy and practice in connection to the implementation of present or future Action Plans. The TCA makes recommendations regarding any anticipated challenges or concerns related to implementation of the Agreement.  This section of the Report also includes a projection of the work to be completed during the upcoming reporting period.  It concludes with a summary of the Second Public Hearing and the challenges and possible solutions discussed during this crucial event.

# Section I

## The PRPD Status Report

In compliance with Paragraph 261 of the Agreement, the PRPD submitted its Third Status Report ("Status Report") assessing progress for each of the eleven focus areas, steps towards implementation of the Agreement, and a response to prior concerns raised by the TCA.  The PRPD Status Report documents the overall progress made by the PRPD for the period covering May 31, 2015 to November 30, 2015.

The Status Report shows the specific steps being taken by the PRPD towards achieving reforms as well as the environment of collaboration that has emerged between the PRPD, the USDOJ, the Commonwealth of Puerto Rico Department of Justice ("PRDOJ"), and the TCA.  The PRPD Report describes that, as part of the collaboration efforts with the TCA and the USDOJ, the PRPD submitted and the TCA and the USDOJ approved the first set of Action Plans (*Use of Force; Searches and Seizures; Equal Protection; and Civilian Complaints*) and completed the review of 36 policies.

After reading the Status Report, the TCA highlights the accomplishments of the PRPD in the area of *Citizen Complaints and Internal Investigations and Discipline,* which the USDOJ characterized as "seriously deficient" just four years ago in their investigative report.  One of the main complaints of the USDOJ was the dissuasive nature of the reporting process that in practice required civilians to appear before an officer and provide sworn testimony.  With the restructuring of the Deputy Superintendence of Professional Responsibility and the creation of an *Administrative Order for the Public Information Program on Complaints and Recognitions,* the PRPD's current intake process for reporting misconduct reflects a marked improvement although it has yet to resolve the USDOJ objections concerning several of the policies and regulations governing this process. At present, members of the public can allege inappropriate or unprofessional conduct against members of the PRPD by mail, telephone, internet, or face-to-face contact, 24 hours a day, 365 days a year.  The TCA and his subject matter expert on complaint tracking and internal affairs concurred that the PRPD has taken important steps in adopting the concept of "all information from all sources at any time" when it comes to addressing the professionalism of its officers.

The PRPD has also taken key steps in implementing the notion that transparency must guide the department in the process of informing the public and officers of pending allegations of misconduct and investigations initiated and completed by the PRPD.  In the

Status Report, the detail in which the PRPD describes the type and number of misconduct allegations received was consistent with the PRPD's desire to enter a new era of accountability. Both quantitatively and qualitatively, the PRPD did not attempt to mask or assuage any concerns when it came to reporting misconduct allegations. They articulated the various classifications of allegations, their frequency, and provided a geographic delineation by area and results where they conducted random drug testing of their officers; again a model of transparency within the law enforcement community. The TCA recommends that this commitment to transparency continues to broaden and that additional information about administrative complaints be included in subsequent status reports.

The Status Report also describes other important initiatives. To demonstrate PRPD's commitment to police professionalism and to ensure that the public awareness is heightened, in recent months the PRPD engaged in a public educational campaign, "La Policía escucha tu voz" (*PRPD Listens to your Voice*). The TCA agrees that using the media to inform the public on how to initiate complaints and commendations of the PRPD officers is yet another example of the PRPD's desire and initiative to be responsible to the people it serves, as recommended by the USDOJ. During the next reporting period the TCA will be able to provide a more comprehensive evaluation of this process.

The TCA's judgement rests not solely on the claims in the Status Report. On-site observation at the Zone of Excellence of the *Las Piedras* district, confirmed public availability of complaint forms both in the vestibule of the precinct as well as in patrol vehicles. The Commander was well versed in the complaint process, received training, and transmitted that training to his staff. The TCA also noted this in the discussion regarding the Action Plan on Administrative Complaints in the second Section of this Report. Core Team members have also confirmed many of the facts stated in the PRPD Status Report through direct observation and these are depicted in the tables below highlighting Action Plan progress.

The TCA found impressive the accomplishment of completing training for officers in the PRPD's federal task forces. This is consistent with the requirements of Paragraph 237(a). On average, more than 95% of the officers assigned to the Task Forces have been trained in use of force techniques with various types of weaponry. The PRPD's Police Academy has also provided "train the trainer" instruction on the new use of force policy, and the TCA anticipates that a significant number of officers will receive the required training. The TCA and his team continue to foster a close working relationship with the Director of the Police Academy and this has generated a beneficial exchange of relevant literature and ideas.

The TCA also fully recognizes the important achievement consisting in the creation of the Citizen Interaction Committees ("CICs") of members of the community that have joined this endeavor in all thirteen areas and the Central Committee. This amalgam of 174 community members drawn from 13 diverse geographical areas in Puerto Rico is the first step in opening and consolidating a continuous dialogue with the community in matters of mutual concern. With transparency as its main feature, the CIC has piloted a new appreciation and understanding of the importance of community involvement in policing.

Also, the TCA commends the fifteen open meetings conducted by the Area Commanders thus far. These meetings have attracted close to 4,000 community participants, who had the opportunity to be heard and raise their concerns. These gatherings also provide the police with an opportunity to offer their perspectives to the community. For example, the TCA attended the open meeting in *Corozal*, in the Bayamon Area, and experienced first-hand that these open meetings will play an integral part in the process of reforming the PRPD.

The TCA further commends the PRPD for completing the evaluation and promotion testing process for the ranks of Sergeant, First and Second Lieutenants, and Captain. This task was accomplished with outstanding professionalism reflecting the commitment and dedication of the PRPD. Further comments on this process will be addressed further along this report on pages 33 to 34.

The TCA submits a selected number of recommendations for the next status report. First, the TCA recommends that the PRPD continues to expand the practice of linking PRPD activities and accomplishments to the steps and activities detailed in the Action plans. Second, the TCA recommends the PRPD to further elaborate on the progress made in the Zones of Excellence. This particular status report has primarily limited its analysis of the Zones of Excellence to the numerical progress in training and acquisition of equipment.

Third, the TCA recommends the PRPD to provide additional information to validate the numbers included in the status reports. Thus, for example, although the Status Report includes the number of complaints received, it does not reflect disposition information. The TCA suggests that disposition information is just as relevant as the reporting on complaint filing data. Similarly, it would have been pertinent to inform the penalties associated with the three reported positive cases in controlled substances testing.

Another example of the need to put statistical information in proper context is the information on domestic violence. Paragraph 100 requires the PRPD to track domestic violence cases and the Status Report includes the relevant statistical data. However, these statistics raise significant concerns that require further analysis. On Page 40, the

Status Report states that the PRPD received 216 domestic violence administrative complaints in 2015, from January through November 15, 2015. This was the third most frequent alleged misconduct after neglect/bias/incompetence and immoral conduct. Additionally, at page 25, the Status Report highlights statistical information on the results of the PRPD investigations of domestic violence from January through November 15, 2015. The statistical table shows that the PRPD received 128 complaints (which is a different number from that shown on Page 40, because one table measures complaint filings and the other table investigations), arrested 51 members of the PRPD, and filed 19 cases with the prosecutors resulting in zero PRPD members being convicted. In a vacuum, these numbers call for an explanation. This explanation is particularly important because, during this reporting period, the PRPD has submitted new policies for the investigation of domestic violence incidents involving members of the PRPD. A score of zero convictions implies that cases that were pending trial before a judge ended in acquittals or were dismissed at the conclusion of government's case because they were missing an element of the crime charged or the evidence presented was insufficient to obtain a conviction even when considering the case "in the light most favorable to the government (Rule 135 Puerto Rico Rules of Criminal Procedure) or the case could have been dismissed pursuant to Rule 64, Puerto Rico Rules of Criminal Procedure because the government failed repeatedly to be ready for trial pursuant to the time constraints of the aforesaid Rule.

There are two other areas that the TCA recommends the PRPD addresses in greater detail in future reports. First, the status report should articulate more explicitly the progress in training in the area of "Civil Rights." This being a progress report, it is important for the PRPD to set a baseline from which to measure and compare progress. Second, the Status Report is lacking a comment regarding the effect and/or contribution that the Public Hearings held by the United States District Court had on the PRPD. The TCA recommends a more developed explanation of how the aforesaid hearings may have affected the PRPD, advanced the calls for the PRPD to make decisions in critical areas, and how the PRPD plans to respond to the claims of the community.

# A Description of the Work Conducted by the TCA: Paragraph 250(a)

One of the central tasks of the TCA in this time period has been to provide technical assistance and review a considerable number of policies drafted and implemented by the PRPD. The process of reviewing policies has followed the schedule set by the first four Action Plans (*Use of Force; Searches and Seizures; Equal Protection; and Civilian*

| TCA Third Semi-Annual Report | 2015 |
|---|---|

*Complaints*) presented by the Puerto Rico Police in compliance with Paragraph 234 of the Agreement.

Each month, the TCA and his Core Team have met with representatives of the PRPD and the USDOJ to conduct in person work sessions to discuss recommendations about how to improve the submitted PRPD policies. Prior to each meeting, the PRPD submitted to the TCA and the USDOJ the policies that were subject to review. The policies were then reviewed as required by Paragraph 235 of the Agreement. It should be noted that the PRPD's Division of Policies and Procedures of the Reform Office has worked diligently during this period in the development of new policies and/ or the review of existing policies that were consistent with the provisions of the Agreement.

Similarly, the TCA submitted for the consideration of the PRPD, recommendations for the development and/or review of policies impacting special units within the department. Recommendations from the TCA included changes to the policies and procedures of the Tactical Operations Division, Canine Unit, Marine Unit, and the Mounted Unit. This approach has resulted in a paradigm shift where the PRPD examines all practices and policies from the point of view of the requirements of the Agreement, as well as from the perspective of current best practices.

The purpose of the interactive and collaborative process is to stress the importance of reviewing practice and policies that may have an impact in the implementation of the Agreement, even as they are not specifically mentioned in the document. If the challenges that these units experience from an operational and policy perspective are not addressed, misinformation can eventually cause them to breach the demands of the Agreement.

In addition to reviewing practices and policies from an operational and policy perspective, the TCA reviews all policies from the perspective of their impact on civil rights and liberties. The TCA's team of constitutional attorneys has expressed their satisfaction with the process and the results obtained in the preparation, discussion, and final submissions of policies and Action Plans where they were able to incorporate best practices ingrained with the pertinent legal and constitutional requirements. The dual objective is to protect the rights of citizens while ensuring the security of police operations.

The work of the constitutional attorneys is also intended to reflect their concern for the dignity, integrity, and professionalization of the police force. The main goal continues to be the creation of directives accord to modern trends of legal thinking on civil and constitutional rights that will reinforce the faith of the community in the reform and restore the confidence of citizens in the members of the PRPD.

TCA Third Semi-Annual Report    2015

After evaluating several survey proposals, the TCA hired Dr. Richard Blanco Peck. Dr. Blanco Peck is a Professor at the Graduate School of Public Administration of the University of Puerto Rico and was selected for two reasons: his solid academic credentials and his practical experience in the field. In addition, his proposal was the most economically viable. As part of the recruitment processes, the Parties had the opportunity to examine Dr. Blanco Peck's credentials, assessing his proposal for professional services and a plan of activities that he presented for the consideration of the TCA.

Dr. Blanco Peck's team consists of a staff of 20 highly qualified professionals, including several with doctorate and master's degrees, as well as graduate students. Ten members of the team will serve as interviewers. One member of team will be the project manager coordinating all aspects related to the selection, training, and preparation of all interviewers.

During the process, the Parties have participated and have been involved in the development of the questionnaires and in the selection of variables to be included in the survey. These are some of the more relevant activities:

1.      USDOJ presented for the consideration of the TCA documents related to the survey held in New Orleans. The questionnaires used in that jurisdiction served as the basis for the construction of the three questionnaires that will be used in Puerto Rico; namely: (a) residents of Puerto Rico, (b) members of the PRPD, and (c) detainees arrested by the PRPD;
2.      These questionnaires were adapted to the requirements of the Agreement, as well as to the idiosyncrasies of Puerto Rico and the characteristics of the individuals to be surveyed;
3.      The Parties, and in particular the representatives of Police of Puerto Rico, have participated in the review process of the questionnaires to residents and members of the PRPD. They have submitted their observations and recommendations for consideration by the TCA. This process will be replicated with the questionnaire directed to persons arrested, which is under construction.
4.      The questionnaires have also been examined by the TCA Core Team.
5.      The Parties have taken part in the revision of the selection of indicators and variables to be evaluated.
6       The TCA, in coordination with Dr. Blanco Peck has arranged to make a presentation to the Police Superintendent that will take place the last week of March, 2016.

| TCA Third Semi-Annual Report | 2015 |

The TCA has kept the Parties consistently informed of the progress of the work in the implementation of the surveys through the meetings required by Paragraph 253, meetings with Dr. Blanco Peck, and/or via electronic communications related to this process.

Presently, and as part of the activities of the First Phase, the questionnaire for the survey of the Residents of Puerto Rico was issued.  This survey was carried out between August 14, 2015 and October 3, 2015.

The questionnaire consisted of total of 41 questions covering the following topics: (a) demographic questions; (b) questions about citizen satisfaction with the PRPD, in recent relations and interventions; (c) questions about citizen satisfaction with the PRPD (in general terms); (d) questions related to citizen's perception of the judicial process and reliability of the PRPD; and (e) questions about the perception of the people on how the PRPD treats members of minority groups.

The questionnaire directed to residents of Puerto Rico was validated through the "Cronbach's Alpha System," with the following results: "Our Cronbach's alpha is 0.85, which indicates a high level of internal consistency for our scales with this specific sample of N=80." It is noted that, the "Cronbach's Alfa" of the questionnaire for residents, obtained a result of 0.85 with demographic questions, and 0.88 without the demographic questions. Therefore, the questionnaire used is a highly reliable one.

The methodology applied was given through surveys for adults (18 years or older). A stratified random sample of the population of 78 municipalities of Puerto Rico was used with three random and stratified modules: (1) telephone numbers selected systematically from telephone directories by geographic area, (2) cellular phones' numbers selected systematically from the 78 municipalities, and (3) random visits by pollsters to persons in several areas of Puerto Rico.

In summary, this random and stratified survey was prepared and implemented by means of an investigation designed by sampling of telephone (land lines), cellular telephones, and personal interviews. There was a margin of error of 2.5 % (of the 78 municipalities of Puerto Rico). The rate of response was of approximately sixty percent (60 %).

As part of the methodology used, a list of land lines phones and cell phones were selected at random, to interview the adult population (18 years or older) of Puerto Rico, using area codes of each municipality and a database of more than 17,000 cell phones. Personal interviews were conducted visiting municipalities with a team of 20 interviewers selecting residential areas of difficult access. This interview system is known as multimodal, and it yields positive results in scientific surveys, considering changes in population and emerging technologies of the 21st century.

Dr. Blanco Peck is identifying and analyzing the early findings related to the demographic variables of this scientific research. He has not yet reached final conclusions related to the survey of the residents of Puerto Rico. Given this situation, the TCA will provide additional information as findings are provided by Dr. Blanco Peck.

As part of the works of the Second Phase, Dr. Blanco Peck, along with his work team, is carrying out the survey directed to the members of the Police of Puerto Rico. Dr. Blanco Peck is currently developing a questionnaire for persons arrested and the same will be reported in the TCA's next report.

The survey of the PRPD began on November 15, and is expected to be completed on or about mid-January 2016. This 30 item questionnaire consists of: (a) demographic questions, (b) questions related to police work and their environment, (c) questions related to the managers and supervisors, (d) questions related to management systems and resources, and (e) questions related to the community.

The survey will be a representative sample of the PRPD, with a margin of error of three to five percent (3-5 %). These questionnaires are being completed through interviews (person to person) in the thirteen (13) PRPD Areas.

Presently, the third questionnaire for persons arrested by PRPD is being developed and is to be conducted the first quarter of 2016, before which the Parties will comment and submit recommendations.

Pursuant to the Work Plan submitted for the execution of activities to comply with Paragraph 241 of the Agreement, the TCA will submit a final report with the analysis of data obtained from the three (3) surveys (residents of Puerto Rico, members of the PPRD and people arrested) by the end of May 2016.

The final report and its conclusions will be presented to the Superintendent, the Director of the Police Reform Office, staff personnel selected by the Superintendent and the Parties prior to its publication. The final report of the surveys will be part of the next "TCA Six Month Report," in June 2016.

# Section II

## PRPD's Action Plans: Paragraph 250(b) through 250(d)

As reported in the TCA's First Six-month Report, for each of the eleven focus areas, the Agreement sets forth specific timelines on when Action Plans are to be submitted for approval. It also mandates a stepped approach on how and when the PRPD is to comply with the mandates set forth in the Agreement. The Action Plans describe temporal benchmarks and detailed steps agreed upon to execute and implement the required reforms and to achieve the desired outcomes in each substantive area. Paragraphs 231 through 240 discuss in detail their development, implementation, and assessment. The Action Plans are to examine policies and any required revisions, mandatory training, resources, staffing, budgetary requirements, and a schedule for when specific policies are to become field operational.

In compliance with Paragraph 250 (b), (c), and (d) of the Agreement, the TCA Six-Month Report is to address whether the PRPD is in compliance and meeting the timeframe set forth in the Action Plans and making satisfactory progress toward implementation of the Agreement by rating the PRPD in full, partial, or non-compliance with steps in the Action Plans. The Report should also discuss the specific findings and methodology for each review. Finally, the Report should also include the TCA's recommendations detailing the necessary steps to achieve compliance for any detailed steps that were found not to have been fully implemented.

During this period, there were four Action Plans in effect: _Use of Force; Searches and Seizures; Equal Protection and Non-Discrimination; Civilian Complaints, Internal Investigations, and Discipline._ These plans were sent on May 7, 2015 to the TCA and to the USDOJ for review and approval. The TCA and the USDOJ issued suggestions and comments, which were reviewed and accepted by the PRPD. The revised versions of the plans were sent on July 13, 2015 to the TCA and the USDOJ. Additional suggestions were received, and on August 7, 2015 the final revised versions were resubmitted. On August 27, 2015 these four Action Plans were approved by the TCA and the DOJ. In September, the TCA submitted his methodology for evaluation of the aforesaid Plans.

For measurement purposes, the TCA notes that the PRPD provided their Action Plan activities in the form of a table that contained which Paragraphs of the Agreement were impacted as well as a due date for deliverables. Keeping in mind these timelines, the TCA has started to conduct interviews, review documents, and conduct site visits to

determine the nature and extent of the PRPD's progress with that particular Action Plan and report his findings in a similar table. The TCA comments for Action Plans will cover all activities up to December 8, 2015, as established by the timelines in PRPD timetables. The TCA will measure timeframes and steps. When measuring timeframes, the question will be whether the timeframe has been met and the PRPD is "in compliance" or "noncompliance." When measuring steps, the question is whether the PRPD is making satisfactory progress towards the steps indicated in the Plans. Progress will also be measured by rating the PRPD in full, partial, or noncompliance with the steps.

## TCA REVIEW OF PRPD ACTION PLAN ON ADMINISTRATIVE COMPLAINTS

| Administrative Complaints | Create an administrative order informing the public the process to file misconduct complaints against PRPD to include the creation of brochures and posters |
|---|---|
| Activity | 1.1 |
| Due Date | June 2015 |
| Progress | An administrative order was approved by the Superintendent on October 14, 2015. |
| Finding | Full Compliance |

| Administrative Complaints | Revise a memorandum of understanding between PRPD and PRDOJ concerning responsibilities for criminal and administrative investigations |
|---|---|
| Activity | 1.2 |
| Due Date | August 2015 |
| Progress | Communication with the Reform Unit reflected a Memorandum of Understanding (MOU) was forwarded to PRDOJ and PRPD is awaiting a response. PRPD has met its obligation. |
| Finding | Full Compliance |

| Administrative Complaints | Develop a procedure outlining an employee's responsibility to testify in a criminal proceeding |
|---|---|
| Activity | 1.3 |

TCA Third Semi-Annual Report | 2015

| Due Date | September 2015 |
|---|---|
| Progress | A memorandum was sent to PRDOJ outlining a protocol for employees. PRPD has met its obligation. |
| Finding | Full Compliance |

| Administrative Complaints | Revise Public Regulation, Rule 6506 concerning the processing of administrative complaints and adopt a new regulation outlining new mechanisms for receiving, processing, and providing final dispositions for all administrative complaints |
|---|---|
| Activity | 1.4 |
| Due Date | October 2015 |
| Progress | Communication with the Reform Unit reflected that the regulation is pending approval in accordance with uniform code of administrative procedures. PRPD has met its obligation |
| Finding | Full Compliance |

# TCA REVIEW OF PRPD ACTION PLAN ON USE OF FORCE

I.   Policies and Procedures

| Use and Management of Impact Weapons | Revise General Order Chapter 600, Section 603, Use and Management of Impact Weapons |
|---|---|
| Activity | 1.1 |
| Due Date | January 2015 |
| Progress | Approved by the Superintendent on January 31, 2015. |
| Finding | Full Compliance |

| TCA Third Semi-Annual Report | 2015 |
| --- | --- |

| Use and Management of Chemical Agents | Revise General Order Chapter 600, Section 604, Use and Management of Chemical Agents. |
| --- | --- |
| Activity | 1.2 |
| Due Date | March 2015 |
| Progress | Approved by the Superintendent on March 27, 2015. |
| Findings | Full Compliance |

| Review Boards to Evaluate Incidents of Use of Force by PRPD members | Develop a General Order creating Review Boards to Evaluate Incidents of Use of Force by PRPD members |
| --- | --- |
| Activity | 1.3 |
| Due Date | July 2015 |
| Progress | Approved by the Superintendent on July 16, 2015. |
| Findings | Full Compliance |

| Use and Management of Regulation Firearm | Revise General Order 2004-3 Policies and Procedures for Use, Possession, Maintenance, Change, Occupation, Re-Assignment and disposal of Police Regulation Weapons. General Order to be identified as Use and Management of Regulation Firearm. |
| --- | --- |
| Activity | 1.4 |
| Due Date | June 2015 |

TCA Third Semi-Annual Report | 2015

| Progress | Approved by the Superintendent on June 1, 2015. |
| Findings | Full Compliance |

| Use and Management of Electronic Control Device | Revise General Order Chapter 600, Section 602 Use and Management of Electronic Control Device. |
|---|---|
| Activity | 1.5 |
| Due Date | April 2015 |
| Progress | Approved by the Superintendent on April 10, 2015. |
| Findings | Full Compliance |

| Use of Force | Revise General Order Chapter 600, Section 601, rules for the use of force by members of PRPD to incorporate recommendations by DOJ and TCA |
|---|---|
| Activity | 1.6 |
| Due Date | June 2015 |
| Progress | Approved by the Superintendent June 2015. |
| Findings | Full Compliance |

| Reporting and Investigating Use of Force Incidents by PRPD Members | Revise General Order Chapter 600, Section 605, Reporting and Investigating Use of Force incidents by PRPD Members. |
|---|---|
| Activity | 1.7 |
| Due Date | June 2015 |

TCA Third Semi-Annual Report | 2015

| Progress | Approved by the Superintendent on June 1, 2015. |
| Findings | Full Compliance |

| Creation of Force Investigating Unit (FIU) | Develop General Order Chapter 100 Section 113 Creation of Force Investigating Unit (FIU). |
|---|---|
| Activity | 1.8 |
| Due Date | June 2015 |
| Location | Zones of Excellence |
| Findings | Full Compliance |

| Reorganization of the Tactical Operations Division (DOT). | Revised General Order 73-4 Mobilization of Tactical Operations Unit. This order will include eligibility requirements to remain in the specialized units, as well as the recruitment and selection process. It also includes the requirement to document the activities concerning mobilization and or activation, as well as after action reporting. |
|---|---|
| Activity | 1.9 |
| Due Date | July 2015 |
| Progress | Approved by the Superintendent on December 2015 |
| Findings | Full Compliance |

| Reorganization of the Division of Special Weapons and Tactics (SWAT). | Develop a General Order Chapter 100, Section 11, The Reorganization of the Division of Special Weapons and Tactics This order will include eligibility requirements to remain in the specialized units, as well as the recruitment and selection process. It also includes the requirement to |
|---|---|

|  | document the activities concerning mobilization and or activation, as well as after action reporting. |
|---|---|
| Activity | 1.10 |
| Due Date | August 2015 |
| Progress | Approved by the Superintendent in November 2015. |
| Findings | Full Compliance |

| Procedure for the Use of Intermediate and Specialized Weapons (less than lethal). | Develop General Order Chapter 600, Section 620, Procedure for the Use of Intermediate and Specialized Weapons (less than lethal). |
|---|---|
| Activity | 1.11 |
| Due Date | August 2015 |
| Progress | Approved by the Superintendent December 2015. |
| Findings | Full Compliance |

| Crowd Control and Management | Develop General Order Chapter 600, Section 6, Crowd Control and Management |
|---|---|
| Activity | 1.12 |
| Due Date | September 2015 |
| Progress | PRPD has prepared General Order Chapter 600, Section 6, Management and Crowd Control The TCA Core Team has reviewed the policy and provided PRPD with observations and recommendations. On Wednesday, November 18, 2015 the TCA Core Team met with PRPD Reform Unit and USDOJ at PRPD HQ to discuss the recommendations. This policy has not been finalized. |

| TCA Third Semi-Annual Report | 2015 |
|---|---|

| Findings | Partial Compliance |
|---|---|

| Foot Pursuits | Revise General Order, Chapter 600, Section 607, on Foot Pursuits. |
|---|---|
| Activity | 1.13 |
| Due Date | November 2015 |
| Progress | TCA reviewed policy submitted by PRPD and returned with recommendations in December 2015 |
| Findings | Partial Compliance |

| Management of Vehicles in Cases of Emergency and Police Pursuits | Revise General Order 600, Section 609, on Management of Vehicles in Cases of Emergency Police Pursuits. |
|---|---|
| Activity | 1.14 |
| Due Date | November 2015 |
| Progress | PRPD Reform Unit submitted to TCA for review their preliminary policy on Management of Vehicles in Cases of Emergency and Police Pursuits, General Order 600, Section 609, on November 30, 2015. The TCA Core Team reviewed the policy and offer observations and recommendations on December 6, 2015. |
| Findings | Partial Compliance |

| Standards and Procedures for the Implementation and Control for Use of Patrol Dogs (K-9) | Protocol Regulating Use of K-9 for Patrol |
|---|---|
| Activity | 1.15 |
| Due Date | March 2016 (at the request of the Superintendent, the policy was moved to be looked at in November 2015.) |
| Progress | PRPD submitted General Order, Chapter 100, Section 11, Standards and Procedures for the Implementation and Control for Use of Patrol Dogs. In December, the TCA Core Team has reviewed the policy and provided comments and observations. |
| Findings | Partial Compliance |

## III. Force Review and Investigation:

| Use of Force reviews within five business days | Supervisors must complete the reviews and investigation of use of force within five working days in accordance with General Order Chapter 600, Section 605- Reporting and Investigation Incidents of Use of Force by PRPD members. |
|---|---|
| Activity | 1.1 |
| Due Date | Not applicable |
| Progress | TCA reviewed UOF reports (PPR-854). In some instance officers were using outdated report forms (PPR-854). Reform Unit notified and corrected the situation

A significant number of reports were not properly classified by level based on the narratives.

In some instance supervisor's review was not completed within the five (5) days. |

TCA Third Semi-Annual Report | 2015

| | In some instance reports were prepared when injury to subject was not as a result of officer using force to make arrest.<br><br>Commanding Officers of the Zone of Excellence were generally well versed in the Use of Force Policy and protocol regarding reporting and investigating incidents. |
|---|---|
| Findings | Partial Compliance |

## IV. Force Training

| Impact Weapons Training | Revise the training module for impact weapons. |
|---|---|
| Activity | 1.1 |
| Due Date | September 2015 |
| Progress | Approved training November 2015 |
| Findings | Full Compliance |

| Training on Chemical Agents | Develop a training module for chemical agents |
|---|---|
| Activity | 1.2 |
| Due Date | November 2015 |
| Progress | Approved training module. |
| Findings | Full Compliance |

TCA Third Semi-Annual Report | 2015

| Training for FRB and SFRB | Develop a module for training of Force Review Board and Superintendent Force Review Board members. |
|---|---|
| Activity | 1.3 |
| Due Date | December 2015 |
| Progress | Approved training module. |
| Findings | Full compliance |

| Training on firearms | Revise training in the Use and Management of Regulation of Firearms. |
|---|---|
| Activity | 1.4 |
| Due Date | November 2015 |
| Progress | Training module approved. |
| Findings | Full Compliance |

| Training on ECW's-Tasers | Revise a training module for ECWS (Tasers). |
|---|---|
| Activity | 1.5 |
| Due Date | September 2015 |
| Progress | Training module approved. |
| Findings | Full Compliance |

TCA Third Semi-Annual Report | 2015

| Training on the use of force rules and investigation | Revise a training module for Use of Force rules and investigations. |
|---|---|
| Activity | 1.6 |
| Due Date | November 2015 |
| Progress | Approved training module. |
| Findings | Full Compliance |

# TCA REVIEW OF PRPD ACTION PLAN ON SEARCH AND SEIZURE

I. Policies and Procedures:

| General Order 600, Section 612- Search and Seizure | PRPD will revise GO 600-612, Search and Seizure |
|---|---|
| Activity | 1.2 |
| Due Date | August 2015 |
| Progress | Approved by Superintendent November 2015. |
| Findings | Full Compliance |

II. Data Gathering and Reporting.

| Ensure that all officers document all consents to search | Once GO 600-612 has been approved with all recommendations from the TCA and USDOJ, PRPD will ensure that all officers comply with documenting all consents to search persons and/or vehicles. |
|---|---|
| Activity | 1.2 |
| Due Date | August 2015 |

TCA Third Semi-Annual Report | 2015

| Progress | PRPD has created Form PPR-879 Consent to Search, and the TCA has reviewed and approved this form. GO 600-612 was last reviewed and approved by the TCA on October 30, 2015. The TCA will monitor compliance with Action Plan deadlines. The TCA will also monitor the impact that the implementation PPR-879 will have on the deadline. The TCA has visited Zones of Excellence in Bayamon West, Quebradillas, and Utuado, as well as Arecibo's CIC. There was no reported Cc III. Review and Investigation: Cases of consent to search. The TCA will visit other Zones of Excellence and Specialized Units. |
|---|---|
| Findings | Partial Compliance |

## III. Training and Implementation:

| Review Training on General Order 600, Section 615, Arrests and Summons | Review the training on GO 600-615, Arrests and Summons |
|---|---|
| Activity | 1.1 |
| Due Date | September 26, 2015 |
| Progress | Training module was approved |
| Findings | Full Compliance |

## TCA REVIEW OF PRPD ACTION PLAN ON EQUAL PROTECTION

I.    Objectives in the Development of Policies and Procedures:

| Develop General | Creation of a General Order |
|---|---|

TCA Third Semi-Annual Report                          2015

| Order | |
|---|---|
| Activity | 1.6 |
| Due Date | March 31, 2015 |
| Progress | Approved by Superintendent September 2015 |
| Findings | Full Compliance |

| Revise General Order | General Order 2007-1 On Investigating Sexual Assault and abuse of minors. |
|---|---|
| Activity | 1.9 |
| Due Date | September 2015 |
| Progress | Submitted and reviewed; To be approved |
| Findings | Partial Compliance |

| Develop General Order | Develop Administrative Order on Interaction with Transgender and Transexual persons |
|---|---|
| Activity | 1.11 |
| Due Date | September 2015 |
| Progress | Approved by Superintendent December 2015 |
| Compliance Rating/Comments | Full Compliance |

# Section III

## Anticipated Challenges and Projected Activities: Paragraph 205(e)

## Promotions

In compliance with Paragraph 17 of the Agreement,

> "PRPD shall utilize competitive written examinations as a component of the selection process to award promotions through the rank of Captain. Written promotion examinations shall conform to generally-accepted professional standards for test validity and security and be designed to evaluate qualifications that are job related and consistent with business necessity. PRPD shall develop these examinations in consultation with the TCA based on generally accepted policing practices and in compliance with anti-discrimination laws."

During the reporting period, the Superintendent appointed a Board of Examinations for Promotions ("Board"). The TCA promptly named one of his Constitutional Lawyers as a liaison between the TCA and the Board.

Since its appointment, the Board has met almost weekly to prepare and administer competitive written examinations for the ranks of Sergeant, Second Lieutenant, First Lieutenant, and Captain. Its purpose is to fill vacancies identified by the Human Resources Division, and ensure the proper supervisor to officer span of control as required by the Agreement. This ratio may later be adjusted based on the findings of a scheduled staffing study, which the PRPD considers a high priority.

The PRPD published a profile of the responsibilities and qualifications for all ranks. The Board also determined which laws would be covered in each examination and published a relating document for public review.

| TCA Third Semi-Annual Report | 2015 |

Successful applicants who passed the exam are also required to pass special courses at the PRPD Police Academy. They are also expected to be free of disqualifying administrative complaints.

In November 2015, the Board administered examinations for Sergeant, First Lieutenant, and Captain under very strict security measures to guarantee the confidentiality of each exam. Of the 1,431 members of the PRPD who took the Sergeant's exam, 196 passed (13.7%); for First Lieutenant 68 of 206 passed (33%); and for Captain, 81 of 153 were successful (53%). An examination for 2nd Lieutenant was administered on December 5, 2015. Of the 978 applicants, 517 passed the test (53%).

As previously noted, the TCA congratulates the PRPD for making a significant effort in completing this task. The TCA also wants to congratulate those who passed the examinations for their forthcoming promotions. The TCA envisions certain challenges ahead, which are worth mentioning. To date, the PRPD has not completed the staffing allocation and resource study required by Paragraph 13. The Agreement requires the PRPD to assess the appropriate number of sworn personnel to perform the different departmental functions and it is possible that the lack of a completed study will provide uncertainty on the allocation and distribution of these new supervisors. Thus, the number of Second Lieutenants is likely to surpass the ratio normally recommended by best practices, although this is difficult to determine without the study being completed. Another actual challenge is the current fiscal situation of the Commonwealth, which may preclude future promotions.

# Reorganization of the K-9 Division

In the TCA's Second Report for the period from December 7, 2014, through June 7, 2015, the TCA raised concerns about the lack of attention to the Canine Division by the PRPD. The TCA learned about this situation as a result of a visit that the TCA made to the Canine Division in the South Section in Ponce on May 12, 2015. Under the Agreement, canine bites are defined as a "serious use of force" (Paragraph 11(zz)) and their role is addressed in two sections of the Agreement. Paragraph 24 states that the PRPD shall develop a comprehensive and agency-wide policy for the use of force, in particular use of force involving canines (See Paragraph 24(c)). Furthermore, Paragraph 111 states that the PRPD shall develop multi-level policy and procedures manuals for, at a minimum, the various units or function, in particular the canine unit (See Paragraph 111(a)). There was, however, no specific actions addressing the Canine Unit in the various Action Plans.

TCA Third Semi-Annual Report                    | 2015

The PRPD took notice of certain perceived concerns of the TCA and assertively reacted by meeting their terms. This response was made public on October 29, 2015 (Docket No. 271). In addition, the PRPD submitted a new Canine Policy for review and approval to the TCA and the USDOJ on September 30, 2015. Once approved, this General Order is intended to establish the organizational structure of the Canine Division and delineate its administrative and operational duties, including the patrol dogs' protocol, according to applicable laws and the best police practices.

The ongoing reorganization of the K-9 Division is a success story and a perfect example of collaboration between the PRPD and the TCA during the period of capacity building. It is also a great example of the ability of the TCA to provide technical assistance to the Department during this particular phase of the Agreement. The dual role of the canines as patrol dogs and being able to perform other additional functions, such as bomb sniffing dogs, is extraordinarily important to address the role that canines play both on use of force and search and seizure issues.

As reported in the TCA's Second Report, ending on June 7, 2015, the TCA noted significant operational and administrative shortcomings regarding training, equipment, and other logistical matters that directly affected the operational readiness of the K-9 Unit. Since that report, the TCA has seen a notable improvement in the overall readiness of the unit. Four important accomplishments during the last six months have been: (1) the certification of the Commanding Officer of the K-9 Division as a kennel master, (2) the purchase and deployment of new K-9 patrols, and (3) the requisition of the explosive detection dogs training material and 4) a new training and certification program focus on the new established policies.

Under Paragraph 255 of the Agreement, the TCA can assist PRPD by providing technical assistance to achieve the outcomes delineated in the Agreement. Toward that end, the TCA and his Core Team conducted on-site visits, provided current empirical literature, and made suggestions and policy recommendations to enhance the K-9 program. As noted, this collaborative interaction resulted in the PRPD creating policy reflecting the maintenance of a current log that contains the following information on each handler:

- Training
- Certification
- Awards
- Bite memos
- Recall memos
- Veterinary records

Additionally, the TCA made other recommendations:

- The use of canines to support security measures for the protection of VIP's.
- The merger of orders pertaining to the "K-9 Unit" and the "Use of Patrol Dogs" into one General Order entitled "The Reorganization of the K-9 Division."
- The use of the IACP Law Enforcement Policy Center procedure on K-9s that stresses the importance of the description and outlines selection criteria for K-9 handlers.

Finally, concerning the deployment of a canine, a General Order now requires the following information:

- Date, time and location of the deployment.
- The probable cause that caused the officer to contact the suspect.
- The factors that lead the officer to believe that the suspect was dangerous.
- The tactics employed by the officer.
- The name of the supervisor who approved the deployment.
- Whether a search or deployment announcement was given and the language used.
- Time elapsed between the announcement and deployment, and between deployment and contact.
- Estimated duration of the contact.
- Any commands given to the canine.
- Elapsed time between the canine contact and the officer's arrival at the scene of the contact.
- Actions taken by the officer upon arrival at the scene of the contact.
- Any voluntary and spontaneous statements made by the suspect.
- Manner in which the canine held the suspect, so that any prior injuries are not attributed to the encounter.
- Any photographs taken of injuries to the suspect, aid rendered in response to those injuries, location where treatment was received and who administered the treatment.
- The names of all involved officers, supervisors and witnesses.
- Copies of any witness/witnesses statements.
- Any other information deemed important by the canine supervisor.

The TCA, hand-in-hand with PRPD, will continue to support the Canine Division to ensure that new developments in best practices are part of the reorganization of the Division.

The recommendation of the TCA is that the PRPD continues to promote the valuable role that the Canine Division plays in law enforcement while investing in training resources.

# The Mounted Unit

After several meetings between the Commander for Field Operations and the TCA concerning certification issues and the lack of training in the Mounted Unit, and at the Commander's request, the TCA conducted a readiness technical assistance assessment regarding the status of the Mounted Unit.  In July, the TCA focused his technical assistance on two central issues: policy and training.

The most significant developments in this area are in training.  During this reporting period, the PRPD has reached a training agreement with Sergeant Michelle Pearson, President and Director of the Mounted Police Training Academy.  The Academy is a satellite school of the Southern Police Institute at the University of Louisville in Kentucky. Sergeant Pearson is a professional mounted police trainer and will come to Puerto Rico in May 2016 in order to train, evaluate, and certify members of the PRPD Mounted Unit. In anticipation of the training, the members of the Mounted Unit are undergoing a complete and thorough physical fitness evaluation.

The PRPD has arranged for the training of 30 officers, as well as 6 officers to be Certified Mounted Instructors.  For those first 30 officers, the training will consist of the following areas:

- Basic to Intermediate Mounted Police Equitation (Horsemanship)
- Equine Anatomy and Psychology
- Selection of the Police Horse
- Best Equipment and Uses
- Bit and Saddle Fitting
- Basic and Tactical Formations/Crowd Control
- Flag Protocol
- Sensory and Obstacle Training Techniques
- Defensive Tactics and Arrest Procedures
- VIP Security
- Search and Rescue Techniques
- Mounted Firearms Techniques

There will be a written exam with this course, and students will receive a certification from the University of Louisville upon completion of the course.  Sergeant Pearson will assess the riders' level during the class and if she feels they are ready for advanced instruction, she will increase the level of sensory and obstacle training, and provide instruction on civil disorder (riots), decision-making responses, and civil unrest equipment for horse and rider.

The six police officers who will receive their Mounted Instructor Certification will receive additional instruction on:

- Training Liability and Record-Keeping
- Instructor Techniques
- Adult Learning
- Public Speaking

The TCA congratulates PRPD for these great advancements and will continue to provide technical assistance as required by PRPD.

# The PRPD Police Academy

During this reporting period, the TCA has had multiple in-depth discussions with the Academy Director on training and Action Plans. The TCA and the Core Team have attended training sessions at the Academy and training ranges.  Attendance at training sessions included but was not limited to firearms, K-9 units, the mounted police unit, less than lethal weapons, specialized units training, such as DOT and SWAT, swimming and drown proofing training and formal FTO. In addition to making suggestions and providing literature used by major police departments in the United States, the TCA reviewed training files for curricula relating to regular and expandable baton, night operations qualification for pistol and rifle. The TCA also examined instructor credentials, student attendance records, and other certifications required for training. The TCA notes the Academy has made noticeable progress over the past six months with improved syllabi, training materials, and record keeping.  Culture change starts at the Academy level and positive steps have been observed by the TCA.

The Academy in coordination with GRUCORPO, Commission of Civil Rights-Puerto Rico Chapter, Fondita de Jesus, and subject matter experts within the PRPD, implemented a new and revised curriculum, which was used for the most recent class of police cadets, (Class 224).  This new cohort of future police officers started in August 2015 and is

TCA Third Semi-Annual Report | 2015

scheduled to graduate in March 2016. This class consists of 110 cadets, 107 cadets from various municipalities (Municipal Police) and three cadets from the PRPD.

Additionally, a team from the Puerto Rico Army Reserve and National Guard spent two weeks at the Academy in July 2015 teaching, coaching, and mentoring recruits. The training focused on drill and ceremony, standards of conduct, remedial and corrective training, room inspections, and counseling. The training was well received by Class 224, and based on the TCA's observation there is a new "esprit de corps."

As part of the Academy improvement, year-long teaching contracts were approved to ensure continuity of operations and reduce the administrative overhead of preparing contracts for every semester. The funding comes not from the Reform, but from a special Academy account established under Law 112-2014, which contains funding generated from reimbursable services such as training to the municipal police. This is yet another example of the long-term sustainability that the Puerto Rico Police Academy is pursuing to operate beyond the ten years of the Agreement.

On a very positive note, for the first time in the last decade, the PRPD will have weapon's qualification at four ranges (Isla de Cabra, Gurabo, Cabo Rojo, and Arecibo). Additionally, PRPD negotiated a rental contract for two private ranges in Moca and Guayama to decrease the travelling of police officers to a range to qualify in Aguadilla (Moca), and Guayama (Gurabo) and Ponce (Cabo Rojo). This particular training provides important opportunities for PRPD to continue improving on policies regarding the use of lethal weapons and proper escalation of force within the use of force policies.

In order to comply with Paragraph 118 of the Agreement, PRPD submitted to the Puerto Rico Council on Higher Education a request for institutional closure in accordance with Chapter II of the "Reglamento Para Licenciamiento de Instituciones de Educacion Superior en Puerto Rico Numero 8265 de 2012.

One challenge that remains, which the TCA notes, is that there is no centralized computer program that documents statistics concerning the number and frequency of training. The lack of a program also makes it difficult to identify those who are trained. These records are currently maintained using spreadsheets, which in addition to being overly burdensome to maintain, are susceptible to error, loss, and destruction. The TCA has recommended to the PRPD to find a workable solution to this problem. In particular, the TCA recommends that PRPD specifically addresses this issue through the Action Plan on Information Systems and Technology.

# Executive Hearings at the Women's Advocate Office (OPM in Spanish)

During the months of September and October, the TCA attended (as an observer) the Women's Advocate Executive Hearings, which were conducted by attorney Wanda Vazquez Garced.[1]  The purpose of the hearings was to investigate and understand the prevalence of discrimination against female police officers within the PRPD. The Superintendent of Police, José Caldero, supported this effort extending an open call to female police officers to attend the hearings.  The Superintendent instructed that this information be circulated to all members of the PRPD through memorandum and electronic mail communications in an effort to promote open access to the complaints regarding discriminatory practices and to discourage any type of misconduct in compliance with the requirements of Paragraphs 80, 93, and 99 of the Agreement.  By the end of the reporting period, more than 20 female officers attended the Executive Hearings or communicated with the OPM directly.[2]  In complying with cautionary measures regarding cases pending adjudication the TCA makes no reference to named victims or alleged violators.

Under the Agreement there are several mandates of the PRPD regarding Equal Opportunity and Non-Discrimination.[3]  Specifically, Paragraph 84 states: *"PRPD shall incorporate concrete requirements regarding bias-free policing and equal protection into its hiring, promotion, and performance assessment processes, including giving significant weight to an individual's documented history of bias-free policing. PRPD will comply with the non-discrimination requirements of Title VII of the Civil Rights Act of 1964, as amended."*

This also affects two other focus areas of the Agreement, *Supervision and Management*[4] and *Civilian Complaints, Internal Investigations and Discipline.*[5]

During the Executive Hearings, neither the OPM nor the TCA went into the merits of the initial complaints submitted to the PRPD, all of which are still pending resolution.  The focus of the hearings was to examine the complaint process as well as protocols

[1] "Women's Advocate Office Act", Act No. 20 of April 11, 2001, as amended.
[2] Information provided by the OPM and published in local newspapers.
[3] Section VI, Paragraphs 80-100 of the Agreement for the Sustainable Reform of the Puerto Rico Police Department.
[4] Paragraphs 135-158.
[5] Paragraphs 159-204.

regarding allegations of sexual harassment and/or discrimination in PRPD, especially when women were the complainants

The TCA heard a recurring theme from women who testified. Retaliation manifested in the form of unwarranted transfers, "lost paperwork," and lack of confidentiality in the complaint process. These recurrent themes permeated their testimony. Officers who testified felt they were being pressured to withdraw their complaints, and all had counter complaints filed against them after they initiated the process. Though their allegations are still pending, they informed the OPM that when they became the object of a counter-complaint, these retaliatory complaints were quickly resolved.

During their testimony, the lack of knowledge of the Agreement was evident. One officer explained that she was unaware that she could file a PPR 111 (Administrative Complaint Form) against a fellow police officer. Participants claimed that their complaints have been pending resolution for more than 90 days and in most cases, they are not informed of their case status as required by the Agreement. Based on these claims, the Superintendent has directed an investigation into these allegations. The TCA will continue to work hand in hand with the Reform Unit to strengthen the work relationship between the PRPD and the OPM in order for these issues to be resolved in accordance with the Agreement.  The TCA specifically recommends that this issue receives a more in depth attention in the immediate future and that the PRPD and the OPM develop a more stringent protocol on this issue and persevere on extensive collaboration.

# Reorganization of the Drug, Vice, and Illegal Firearms Division

Subsequent to the arrest on September 2015, of ten PRPD officers based on an Indictment issued by a federal Grand Jury of this District for narcotic and corrupt activities violations, the Superintendent announced the total reorganization of the Drug, Vice, and Illegal Firearms Division.  In prior TCA reports, the TCA was critical of the operational readiness and protocols of this unit.  It is, indeed, unfortunate that such scandals oftentimes trigger reform, but it now appears that the PRPD is genuinely committed to initiating this change in collaboration with the TCA and the USDOJ.  The TCA has provided literature, written suggestions, and recommendations in order to enhance this reorganization.  The TCA has also attended meetings and discussions to provide input. The TCA recognizes that the opprobrious conduct of those officers arrested erodes public trust.  However, as the Superintendent wrestles with these critical issues, the TCA offers

his Core Team and legal advisors to assist him in any way possible to meet his goals and vision of restoring public trust in the police. The TCA praises the actions of the Superintendent in this collaborative effort.

In particular, the TCA recommends that the PRPD should generate additional resources to fight internal corruption, reorganize internal controls, and create a basic baseline from which to measure progress moving forward.

# Information Technology

During this reporting period, the TCA's Information Technology subject matter expert observed operations in the PRPD Headquarters, the PRPD Training Academy and the Utuado, Bayamon, and Vega Alta police areas. The TCA acknowledges that the IT Action Plan has not yet been generated, however, matters related to IT are very important since they impact other approved and on-going Action Plans. The IT expert spoke to key personnel concerning information technology. Through observation and communication, he was able to review progress at the cited police facilities with regard to ongoing implementation of technology; and to assess the likelihood that the efforts of the Office of the CIO regarding systems development, operational implementation of support & IT services, as well as transformation, are sustainable. These efforts include assessing overarching senior leadership involvement or "buy in" in the activities and processes of CIO efforts needed to meet compliance goals beyond fundamental IT operations.

*Operational Implementation of Technology:*

Since initial observations in May 2015 of deployed technology at the police areas of Bayamon and Utuado, it is clear that continuing progress is being achieved to install CAD (computer aided dispatch) systems. CAD is used to send police officers to various locations in response to public calls for service. Desktop computers have also been added and CAD deployment and training continues. However, longer term objectives regarding Full Operational Capability (its definition and success criteria) in the Zones of Excellence or at an Island-wide level have not yet been quantified in that an overarching plan regarding CAD (and other technology) including milestones and objectives has not yet been available for review. Receipt of a plan and subsequent review should be completed at future meetings if and when PRPD is able to present and explain specific details, targets and metrics. Review of formalized management, project and implementation planning is the only sure way to gauge feasibility and accomplishment against cost and schedule controls letting alone technical performance. Without

ultimately declaring program objectives, risk and performance cannot be judged with regard to satisfaction of the requirements of the Agreement.

Concerning the Police Academy, installation of campus Wi-Fi was evident as was furthering technology enhancements throughout the campus. Classrooms, workstations and capacity had clearly been improved.

Finally, an impromptu or "unstructured" review of the CIO's data and processing architecture was conducted in October at PRPD HQ. The logic has merit and forms a basic topology for computing and data management viable for supporting continuing reform and transformation. Further review and analysis in detail with the CIO is expected.

The observed status of installed technology during a spot check at a site visit in August 2015 to the Vega Alta precinct, a precinct perceived to be indicative of other precincts apart from the Zones of Excellence, was operationally disconcerting. The inadequate number of functional and up to date desktops as well as un-auditability of functional radio communication sets was troubling. This police facility and others similarly lacking what is considered essential and adequate IT and communications, must be addressed.

Regarding long-term progress, although the Zones of Excellence continue to gain viable specific long-term planning, migration is not yet evident across the board. Deployment of technology systems and cultural change during the capacity building phase of the Agreement remains unclear and is potentially at risk. Furthermore, it appears that technology deployment in the Zones of Excellence is out-pacing the addition of technology in other areas. Continuing CAD deployments in the Zones of Excellence, while progressive and necessary, should not be in the critical path of non-Zone of Excellence police facilities receiving essential levels of radios and desktops for policing.

Finally, review of the number of staff and agents available to the CIO must be increased proportionally to accomplish change and mitigate risk to the transformation. In every example of functional service, be it development, communications or field support, shortages of trained and qualified IT staff is evident.

Multiple meetings have been completed with PRPD HQ personnel, namely the CIO, the Reform Lead officer, and staff from IT, the Operations Center, Communications and the Fusion Center.

Compliance with the Agreement as supported by management and planning practices in the area of IT is complicated in that separate from technology objectives, reform success may require revision or establishment of governance, practices and processes existing or otherwise. Therefore, the situation promotes added risk. Examples include non-

technology specific initiatives such as record keeping, analytics of training completed, access to the National Incident Based Reporting System, and supervisory management and monitoring systems as identified in the Agreement.  Review of governance practice is critical to assess the likelihood of the PRPD's compliance with the Agreement to develop supervisory and management systems that can be used to track reform progress. Reference is specifically directed to Paragraph 219 which provides as follows:

> "PRPD shall collect and maintain all data and records necessary to: (a) document implementation of and compliance with this agreement, including assisting the TCA's outcome assessments and the data collection required by this agreement."

Therefore, key to understanding how IT will integrate and support the successful accomplishment of the above, the IT Action Plan, which is not yet completed, will be critical to gaining a broader view of how this will be accomplished. Until then, understanding has been gleaned from review of General Orders and Action Plans available thus far.  PRPD did provide their CIO Strategic Plan as well as other documents and materials, which have been reviewed and incorporated into these conclusions.

The TCA submits that progress is being made.  However, without clear goals, plans, metrics, thresholds and schedules, it is not possible to estimate the rate or sustainability of the transformation and IT contributions to it.  Detailed plans and strategies must be made available as soon as practical.

Resources are essential.  It can be assessed that the number of currently available staff to the CIO is substantially inadequate to operate, maintain and ultimately transform technology and communications simultaneously and at a national level.  The PRPD CIO will require additional subject matter experts support not available within the PRPD in order to plan and execute for success.

Finally, critical to successful accomplishment of reform is the ability to plan and execute specific tasks and to ascertain the resources needed to implement the intended objective. A plan that details scope, tasks, resources and required outcomes is essential to being able to monitor PRPD's Information Technology Operational and Transformational performance.   That said, very recently the TCA IT Monitor reached a common understanding with the PRPD CIO that the IT Action Plan is the most significant document to being able to lead change and monitor performance.  It was also agreed that the IT Action Plan must be comprehensive due to the other ten Action Plans reliance on IT support or enablement in some form for their individual success.  Understanding this is essential for the PRPD Leadership in that investment in IT and resources is crucial to overall transformation and to satisfy many of the mandates of the Decree.  Therefore, the TCA will focus on the quality, breadth and the capability to execute the IT Action Plan and

its alignment and traceability to the Decree, General Orders, TCA's monitoring and summary reports.

# Second Public Hearing

During this reporting period, the Honorable Gustavo A. Gelpí, the United States District Judge, for the District of Puerto Rico, held a public hearing at the United States District Courthouse in Ponce. This was the Second Public Hearing on the Sustainable Reform of the Police of Puerto Rico organized by Judge Gelpí. The Hearing took place on October 22 and 23, 2015, with a varied participation of police officials, community groups, community leaders and influential personalities.

Although there are transcripts of the Second Public Hearing and the PRPD Status Report makes a quick reference to the significance of the hearing, the TCA strongly believes that the hearing aired significant community sentiments and concerns that must be identified and addressed. The synopses of testimonies offered in this Report do not purport to be the official minutes of the hearing but rather a summary of those challenges and concerns that is perceived from the lens of the TCA and may have an impact on the Reform. Transcripts of the proceedings may be requested from the Court. The TCA has endeavored to withhold any personal opinions in the summary of the aforesaid presentations.

The hearing underscored the desire of the Parties and the TCA to keep the public informed on the reform progress as well as demonstrate a continued desire for transparency as the Puerto Rico Police Department engages in an improved transformation process.

The public heard from Honorable Rafael Hernández Colón, former Governor of the Commonwealth of Puerto Rico, who spoke of his experiences as Governor of Puerto Rico during three terms and how he dealt with the difficulties that arose within the PRPD due to the antagonism between political parties and individuals representing other political interests because of the police practice then known as "carpeteo." He emphasized how important it is for the police to protect all citizens and residents of Puerto Rico and learn from past mistakes that differentiating sectors of the Puerto Rico community based on unfounded discriminatory viewpoints is wrong. Perhaps one of the most significant parts of his message was an uplifting closing remark in which he stated that the Puerto Rico

Police Department shall be able to achieve a successful reform and overcome past discriminatory attitudes.

Thereafter, Honorable Dr. María Meléndez Altieri, Mayor of Ponce, addressed the Court. She spoke of the importance of cooperation between the Puerto Rico Police Department and the Ponce Municipal Police and how successful certain programs adopted from the Reform have been implemented within the Municipal Police. Furthermore, these programs could also be successful if implemented in other regions within Puerto Rico. In addition, the Honorable Mayor suggested that a centralized payment structure could alleviate certain difficulties in the cost of training at the Police Academy.

Mrs. Georgina Candal, Esq., President of the Civil Rights Commission, was the next speaker to address the District Court. She presented a clip from a documentary that depicted acts of police brutality and other audio bites of testimony from homosexual and transsexual individuals. She stressed how two communities in particular were the more severely affected: the Dominican community living in Puerto Rico and the transsexual community. She spoke of specific examples of how members of these communities are treated by members of the PRPD. Attorney Candal emphasized the importance of education and preparation to remedy the issues affecting these communities.

Professor Fernando Torres Martínez, Esq., and Professor Octavio J. Capó Pérez, Esq., two distinguished faculty members of the Pontifical Catholic University School of Law (PUCPR), also addressed the Court. Professor Octavio J. Capó spoke of his experience as a former prosecutor, and how important it is for the police, prosecutors, and others involved in criminal justice to collaborate in improving the system. He stressed the importance of doing police work correctly, by detailing incidents and reporting wrongdoing. He also discussed how negligent police work can lead to erroneous acquittals and how corruption may free the guilty.

Professor Fernando Torres reminded those present that corruption and the undue use of force by the police have been documented since the beginning of the sovereignty of the United States. He gave examples of how the appearance of police corruption can result from common incidents, as functionaries of the public order that due to lack of capacity building and varying interest, with the pretext of combating crime, violate the rights of humanity, up to episodes from our history in which criminal acts have been imputed against high ranking members of the PRPD.

He added that police corruption cases and civil rights violations appear on different levels, that is, in routine interventions and situations, that although unexceptional, they defraud us. As recently as September 29, 2015, he continued to comment, agents from the Federal Bureau of Investigations arrested ten police officers charged with violations of the

RICO Act, Civil Rights violations, extortion, conspiracy to distribute controlled substances and some of them for lying to federal authorities.

Professor Torres rhetorically asked how it was possible that these types of public officers could occupy the highest ranks within the police department. He added that despite these unfavorable cases occurring with more frequency than we could wish, the PRPD is composed of hundreds of men and women who put their lives at risk daily to protect our society and assure public safety. He cited examples of distinguished police members, including Superintendent Jose Caldero Lopez, who after a prolific and exemplary career as a police officer, abandoned retirement to direct the police force.

In regards to the training the new cadets receive from the PRPD, he stated that already there have been changes directed towards complying with specific stipulations. Professor Torres narrated that the previous semester he received a call from one of the Commissioners from the Civil Rights Committee, who invited him to teach a course at the Police Academy. There was a collaborative arrangement between the Civil Rights Commission and the PRPD to provide docent resources in the training of the cadets in the Police Academy in regards to guaranteed protections and the rights of citizens. He stressed how important it is for those who teach to focus on the right against self-incrimination and the right to privacy.

Professor Torres added that this goes beyond mere training; high-ranking officers need to know about the norms, and the consequences of infringing or violating the constitutional precepts. He continued to stress the importance that the Reform be a sustainable one. The reforms must be an acceptable because it is in accord with the rights of all citizens and residents of Puerto Rico. In conclusion, Professor Torres emphasized that in the PUCPR Law School and other non-governmental entities, there are many resources that can contribute to the success of a genuinely sustainable reform of the PRPD and can serve to guarantee the transparency that the Honorable Court has provided in this judicial process.

Colonel Héctor Agosto Rodríguez, the Ponce Area Police Commander gave a presentation where he stressed all of the achievements successfully attained by the police and how important it is to gather accurate statistics to demonstrate the progress that is being made. His hope is that once he retires he will leave the police department on the right path.

Colonel Clementina Vega Rosario, who is the officer in charge of the PRPD Reform Unit, addressed the Court, answered many of the questions directed to her and addressed concerns that previous deponents had listed. She highlighted the progress the Reform has made and pointed out that there is still a long road ahead. Superintendent Jose

Caldero, who was present both days of the public hearing, spoke about the importance of women in the police force, and emphasized the competency and commitment of Colonel Clementina Vega Rosario.

On the second day of the hearing the Court heard from Commonwealth's Women's Advocate, Wanda Vásquez Garced, Esq. who stated that between 2014 and 2015, her office received various referrals from female police officers who were victims of sexual and/or employment harassment whose fear of informing what had happened to them in their outpost was evident. These officers feared reprisals and acknowledged a hostile work  environment. She detailed various cases in which the female police agents testified in hearings held between September 16 and October 1, 2015, and spoke of the extremely appalling, inexcusable, and heartbreaking situations they had experienced because they were victims of sexual harassment, domestic violence, workplace harassment, and discrimination.

Advocate Vázquez Garced emphasized that despite submitting complaints against their supervisors, these complaints were not addressed. On the contrary, the supervisors proceeded to submit complaints against the victims and these complaints were promptly investigated. Many of the victims were disarmed and/or transferred as a form of reprisal. The handling and processing of their administrative complaints in all of the cases brought forward for hearings in the OPM were deficient, incomplete, inconclusive and even today all of the concerned female police officers indicate that they had no confidence or hope in a process that fails to include the basic guarantees of due process of law. They claim the process has been converted into tortuous scenarios where the investigations were redirected against them.  In the aforementioned instances the supervisors against whom complaints were brought filed counter complaints against the victims and in many cases there were transfers that did not meet the directives of the General Orders and the Agreement.

Women's Advocate Vazquez Garced also emphasized that they interviewed components of the Auxiliary Superintendence of Professional Responsibility and the Legal Division, who indicated the need for a restructuring of the process of filing and investigating complaints. The impression was of a process that is bureaucratic, quite slow and in some cases misinformed about the consequences of lingering and allowing too much time to pass.

Counsel Wanda Vazquez Garced, herself a former prosecutor, proposed submitting police personnel to obligatory training on domestic violence, sexual harassment, work harassment, and discrimination. Additionally, she emphasized that complaints related to these areas should go directly to the Auxiliary Superintendence of Professional Responsibility, not via a chain of command, to guarantee confidentiality. She further

stated that there were 1,800 complaints submitted to the attention of the Legal Division of the Police Department that have not been adjudicated.

Mrs. Tatty Escobar commenced her participation narrating an unfortunate negative experience that members of the Committee of Community Interaction of the PRPD experienced in their swearing in ceremony on Wednesday October 21, 2015. Disabled persons who were sworn in were segregated. It should be noted at this juncture that at the end of the public hearing, Superintendent Jose Caldero publicly apologized for the record to Mrs. Escobar. She stressed the importance of the aforesaid concern in this regard to policemen and in particular to all of the high ranking officers.

Mrs. Tatty Escobar continued by elaborating on the importance of thorough training in how and when to intervene in schools and emphasized the importance of differentiating when it is a matter that should be dealt with administratively and when the police should intervene. Additionally, she spoke of the how essential it is that the police know how to adequately deal with patients with mental disabilities and deaf persons. She articulated on how unfortunate it is that the Police Headquarters is not accessible to persons with certain disabilities due to physical obstacles and emphasized that the rights of disabled persons should be respected.

Counsel William Ramírez, Executive Director of the American Civil Liberties Union (ACLU) addressed the Court. He began his presentation with a brief history of the ACLU's beginnings in Puerto Rico. The ACLU arrived in Puerto Rico in 1937 to investigate the Ponce Massacre. It was within the ACLU's report that the term Ponce Massacre was coined for the first time. They investigated the status of civil rights during that time period in Puerto Rico and exposed the importance of educating the population about their rights in their native language. Mr. Ramirez congratulated the Court for conducting the public hearing in the Spanish language, thereby promoting the inclusion of all Puerto Ricans.

He addressed the importance of civilian oversight of law enforcement. Regardless of the attempts to achieve civilian oversight via the legislative branch, once it was brought before the Civil Liberties and Community Outreach Committee of the Legislature, despite it being intrinsically related to those specific topics, the legislation was not moved forward because the police opposed it.

Attorney Ramirez continued, stating that the legislative route is not an alternative to incorporate civilian oversight and that an Executive Order would also have little chance of succeeding since the Governor's office would unlikely attempt to implement a measure against police interests. The other alternative would be a Voter's Initiative; however, this does not exist in Puerto Rico. Miami and New Orleans have created civilian oversight via Voters Initiative.

The only possibility for implementing civilian oversight in Puerto Rico, according to Mr. Ramirez, is by amending the Agreement between the Federal Government and the Puerto Rico Police Department and by mutually agreeing to include the creation of the mechanism of civilian oversight.

Ramirez commented, "perhaps, it is a measure that cannot be insisted upon given that the Reform is implemented in an agreement, and not a judicial opinion." In the most recent "agreements" to reform their respective police departments, Cleveland, Seattle, Newark, and Albuquerque, all included within their agreements Civilian Oversight in addition to, and separately from, the TCA.  Counsel Ramirez argued that "Civilian Oversight," had it been included in the Reform of the PRPD, could have been crafted to work parallel with the TCA and with the Reform Unit of PRPD.

The executive director of the ACLU emphasized that the proposal was not a comment on whether the Reform was working or not.  His hope is that civilian oversight will work on a parallel level with the TCA and the Reform, not to replace, but to assist the TCA, and continue to exist even after the completion of the Reform process to assure that the progress achieved via the Reform continues to benefit Puerto Rico.

The implementation of civilian oversight in Puerto Rico would not be the exception or a novel initiative, according to Ramirez, given that in almost all the jurisdictions where a Reform process has been initiated it exists in either an Agreement or a Consent Decree format.

Puerto Rico is one of the few jurisdictions lacking civilian oversight, even though it needs it.  Ramirez added that there are no laws that assure transparency and access to information in Puerto Rico that are equivalent to the Sunshine Laws of the different states or the FOIA process instituted by the federal government. His concern was that "after the Reform process is finalized, there will be no access to information regarding the functioning of the police department," which he considers as another reason why civilian oversight is needed. He further added that in Canada, despite the fact that the United States is considered the leader in civilian oversight, there is not a single jurisdiction without civilian oversight.

In another portion of his testimony, Ramirez utilized as an example the case of Jorge Polaco Jiménez, a 27-year-old black man who died in 2007, "at the hands of the local police." Allegedly, he was left to die in the street and one of the police officers threw a gun next to the victim to make the murder seem justifiable. Ramirez further narrated that once the young man was dead, the police arrived at the scene and proceeded to"clean it."

According to Counsel Ramirez, since the year 2007 no one has investigated the case, neither the FBI nor the PRPD. Just like in the United States, here in Puerto Rico, "Black Lives Matter." Ramirez made a promise to the young man's mother that he would not leave his position until that murder is solved. He emphasized the atrocity committed by showing a picture of the young man. This, Ramirez emphasized, is just one of the unfortunate examples of why civilian oversight is needed. The victim's mother still does not know what happened to her son. Ramirez went on to point out that yet another infamous case, the Caceres case, which happened around the time Jorge Polaco Jiménez was murdered, was solved because people nearby had cell phone cameras and documented the incident, exemplifying why civilian oversight is needed.

Attorney Ramirez further stated that the way the police handles incidents in the town of Loíza is unfortunately different from the way things are handled in other locations. There is a great deal of racism against black Puerto Ricans, stated Ramirez, adding that unfortunately racism against that sector of the community oftentimes is ignored. He added that unfortunately the police tend not to investigate certain cases. There needs to be an investigative process that is the same for everyone, regardless of a person's race or economic status. In addition, Ramirez commented on the fact that the PRPD is so large that it is difficult for those in charge of investigating misconduct to be aware of the missteps of all of its members.

Thereafter, Mr. Roberto Pérez Santoni better known as "Papo Christian," a community leader, addressed the Court. He commenced his presentation by saying that initially he felt somehow hesitant and afraid of appearing in federal court, but once he saw Judge Gelpi he felt comfortable and free. The judge responded with "we are neither "el Cuco" nor extraterrestrials."  He then expressed that the Agreement is Puerto Rico's project as a whole and a transformative process. He added that he was glad they involved the federal government in this because there are conducts that need to be modified, because there are murderous police officers. He reminded those present that he has lived in the public housing unit, known as Manuel A. Perez since he was two years old and that he used to be afraid of the police because he saw when they would hurt his neighbors. The vast majority of the residents of public housing projects are stigmatized and are categorized as the reasons behind all of the ills that have befallen Puerto Rico. The police take the people who run the drug rings, but not the ones that have money to go and give the drugs to others for them to keep selling. He criticized the police for at times thinking they are judges, prosecutors, lawyers, and hangmen. He also spoke of the "suricrato," the name of the recent operation that resulted in the arrest of ten police officers. He questioned where the supervisors of the policemen were of those involved in the unlawful activity when they were committing those offenses. In addition, he stated that the Reform

requires a strengthening of the bonds between the community and the police, and that reestablishing trust between them is necessary.

Honorable Franklin Grullon, Consul of the Dominican Republic in Puerto Rico addressed the Court. He stated that there has been a substantial improvement in the treatment of the Dominican community by the police after the Reform in 2013. He told the audience about how Dominicans were represented in jokes as poor and dumb, and their women as only capable of working behind a bar. In many institutions, he explained, they would profile them as guilty, suspicious, or irresponsible. Fortunately, he added, that has been changing in Puerto Rican society. Dominicans have opened doors and have won the appreciation and respect of many, including the Police of Puerto Rico. Notwithstanding, he continued, they shall remain vigilant to assure that the advances made are consolidated and continued and that they would firmly denounce through channels any act or action that violates their constitutional rights. Additionally, he recognized the efforts the governments of Puerto Rico and the United States have made to reform the police with the objective of it being modern, efficient, honest, and friendly.

He noted that he was aware that the police Reform is a long and complex process that should culminate in a model police department, and in a new model of community police. On this road, they should join forces to achieve that objective. We all want a modern, efficient, honest, and friendly police department, he added.

Judge Gelpí pointed out that one of the federal magistrates, Silvia Carreño Coll, was born in the Dominican Republic, and that one of the TCA's subject matter experts is Dominican.

Next, on behalf of GRUCORPO, Mr. Josué González (of the ACLU) addressed the Court. The Communitarian Work Group in Regards to the Police Reform (GRUCORPO) is a group whose work is composed of individuals and organizations based in the community who provide services to interested parties (stakeholders) and have become part of this effort to promote effective and independent community participation, transparency, and the rendering of accounts during the implementation stage of the Agreement. These individuals are persons from the community that have directly suffered abuse from police officers, and from their negligence in conducting investigations, or have provided services to victims of police abuse. From their point of view, and based on their experience in the field, they are capable of providing a unique perspective on important aspects of police practices on the operative level.

Bearing in mind the culture of violence that is still prevalent within the PRPD, this workgroup firmly believes that effective community participation is necessary to achieve positive and permanent transformations within the PRPD. As the Department of Justice of the United States currently states, the stipulations in the Agreement aspire to establish

| TCA Third Semi-Annual Report | 2015 |

solid relationships with the community and therefore promote collaboration in the resolution of problems, police practices free from discrimination, and the effective prevention of crime. The measures include: community integration and the adoption of police practices directed towards the resolution of problems in regards to supervision, procedures, recruitment, training, personnel evaluation, police tactics, and the distribution of resources; the development of programs that promote community involvement and programs to convey information to inform residents on the progress the PRPD has made in the Reform and address community concerns; and to publicize precise and actualized crime statistics.

Counsel Gonzalez continued to say that each organization and individual that participates in this effort hopes that the PRPD is transformed into a Department that upholds law and order for the people, institutionally founded on the principles of community police, that works under strict principles of human and civil rights. This workgroup initially was organized through the American Civil Liberties Union (ACLU) of Puerto Rico, who on their own, involved stakeholders, individuals, leaders and different community organizations and invited them to collaborate independently in the Reform process.

Between August and December 2014, the ACLU of Puerto Rico organized various meetings with the community and various key functionaries of the Reform, including the TCA, prosecutors from the United States Department of Justice, the Superintendent of the PRPD, the Director of the Police Academy, Dr. Michelle Hernández and the Office of the Police Reform, led by Colonel Clementina Vega Rosario.

After long discussions with the representatives of the Reform Unit, important channels of communication have been established, largely in part thanks to the assistance provided by the TCA. Even though there are profound disagreements in terms of visions and opinions in regards to certain aspects of the Reform, the dialogue has promoted an ambience of collaboration with the Office of the Reform and the Academy.

GRUCORPO has made suggestions and comments on general orders relating to arrest, searches and seizures, domestic violence, use of force, and other areas of concern in police operations. They also have had various meetings with the TCA, the U.S. Department of Justice, the Superintendent, and the Reform Unit. Mr. Gonzales was most concerned with use of force and believed PRPD has not yet achieved solid policies that could guide the discretion of the police officers in the use of force. He explained that they believe that any proposed protocol should strictly guide and limit the discretion of the police functionaries. For example, he said the neck restraint technique used by PRPD was unnecessary and dangerous. He observed that despite this technique being mentioned in the Agreement, nothing requires its adoption. He added that the proposed general order that regulates the Tactical Operations Unit should clearly establish that said

division should not be activated to suppress protected activities under the First Amendment.

Mr. Gonzalez went on to establish that the only detentions that should be permitted under the laws of Puerto Rico should be those based on probable cause of the commission of a crime. He asserted that "experience dictates that investigatory detentions in other jurisdictions have been used for racial discrimination and have provoked incidents of police abuse." Additionally, the use of appropriate terms should be adjusted to the constitutional rights of the suspect. He argued that certain key definitions should be more clearly and articulately explained in the policies, which refer to clearly established constitutional principles.

The protocols in place for gender violence were also discussed, it was suggested that these policies should establish a clear criteria in order to adequately classify the crimes of domestic violence and sexual aggression; they should procure the collaborations and coordination of support groups for gender violence victims; protocols should be adjusted in order to comply with the federal statutes and regulations, and special attention should be given to incidents of gender violence committed by police officers.

# Projected Activities: The Next Six Months

Consistent with Paragraph 250 (e), the TCA will continue to work in the upcoming six-months on providing technical assistance and review for the policies that the PRPD will submit in subsequent months.  The TCA will continue to provide support to the Police Academy while emphasizing more comprehensive IT technical assistance.  In addition, the TCA will work with the PRPD in the review of the pending and outstanding Action Plans.  For the Action Plans in effect, the TCA has attached the compliance methodology to measure the progress made in the four Action Plans.  (See Appendix 3) This methodology includes all relevant timeframes and steps to be taken in measuring the PRPD progress towards implementation.

Consistent with past practices, the TCA will continue to provide the PRPD and the USDOJ a monthly agenda of activities.  The TCA recognizes that more than a year has elapsed since he and his Core Team have been in Puerto Rico assisting PRPD in the transformation process. As with any such endeavor, there are challenges, learning curves, personality adjustments, and competing visions that have to be addressed to create a seamless process toward reform. The TCA believes significant strides have been achieved on how he and his team now collaborate with the Reform Unit, the PRPD, the

command staff, and the community stakeholders. There is a more open line of communication among all those who want to ensure the success of the Reform and the PRPD. The TCA realizes that acceptance of the Reform by the public and the police will increase as the image of reliability and transparency of the process sets in.  As he and the PRPD wrestle with a host of issues affecting policies, programs, and systems, and as the public is better informed about issues affecting the police, the TCA is confident that new meaningful relationships will be formed to assist the Parties, while at the same time existing affiliations will be strengthened.

# Appendix 1: Review of Policies, June through December 2015

| Policy | Submission Date | Status |
|---|---|---|
| PRPD Internal Regulation for the Prevention of Discrimination, Harassment, Sexual Misconduct and Retaliation | JUNE/2015 | 2nd Revision: SEPT/2015<br><br>3rd Revision: DEC/2015 |
| PRPD Regulation for the Establishment of Police Practice Free of Discrimination, Harassment, Sexual Misconduct and Retaliation | JUNE/2015 | 2nd Revision: SEPT/2015 |
| General Order for the Reorganization of the Auxiliary Superintendence in Professional Responsibility (SARP) | JUNE/2015 | 2nd Revision: SEPT/2015<br><br>3rd Revision: DEC/2015 |
| | AUGUST/2015 | 2nd Revision: SEPT/2015 |

TCA Third Semi-Annual Report | 2015

| | | |
|---|---|---|
| General Order Functions and Responsibilities of the Domestic Violence Specialized Division | | 3rd Revision: NOV/2015 |
| Administrative Order Investigation of Domestic Violence Incidents | AUGUST/2015 | 2nd Revision: SEPT/2015<br><br>3rd Revision: NOV/2015 |
| Administrative Order on Domestic Violence Incidents Applying to PRPD Employees | AUGUST/2015 | 2nd Revision: SEPT/2015<br><br>3rd Revision: NOV/2015 |
| General Order on Creation of the Division of Investigation of Use of Force Incidents (FIU) | AUGUST/2015 | 2nd Revision: SEPT/2015<br><br>Approved: SEPT/2015 |
| Form: PRPD-854: Use of Force Report | AUGUST/2015 | 2nd Revision: SEPT/2015<br><br>Approved: SEPT/2015 |
| Form: Delivery Log for PRPD-854 Use of Force Report | AUGUST/2015 | 2nd Revision: SEPT/2015<br><br>Approved: SEPT/2015 |
| | AUGUST/2015 | |

TCA Third Semi-Annual Report | 2015

| | | |
|---|---|---|
| Form: PRPD Investigation of Use of Force Field Report | | 2nd Revision: SEPT/2015<br><br>Approved: SEPT/2015 |
| Form: Preliminary Notification of Use of Force Incident | AUGUST/2015 | 2nd Revision: SEPT/2015<br><br>Approved: SEPT/2015 |
| Administrative Order on Creation of the Public Information Program of Complaints and Commendations | AUGUST/2015 | 2nd Revision: SEPT/2015<br><br>Approved: OCT/2015 |
| Form: PRPD-926 Logbooks Receipt for Form PRP-111 and PRP-888 | AUGUST/2015 | 2nd Revision: SEPT/2015<br><br>Approved: OCT/2015 |
| Form: PRP-927, 9/2015: Complaints and Commendations Registry | AUGUST/2015 | 2nd Revision: SEPT/2015<br><br>Approved: OCT/2015 |
| Form: PRP-111, Rev. 9/2015: Administrative Complaints Form | AUGUST/2015 | 2nd Revision: SEPT/2015<br><br>Approved: OCT/2015 |
| | AUGUST/2015 | 2nd Revision: SEPT/2015 |

TCA Third Semi-Annual Report | 2015

| | | |
|---|---|---|
| Form: PRP-111A, Rev. 9-2015: Administrative Complaints Form (Digital Version) | | Approved: OCT/2015 |
| Form: PRP-888, Rev. 9-2015: Commendation Form | AUGUST/2015 | 2nd Revision: SEPT/2015<br><br>Approved: OCT/2015 |
| Form: PRP-888A, Rev. 9-2015: Commendation Form (Digital Version) | AUGUST/2015 | 2nd Revision: SEPT/2015<br><br>Approved: OCT/2015 |
| General Order on Use, Distribution, Archiving and Final Disposition of Crime Incidents NIBRS | SEPTEMBER/2015 | 2nd Revision: OCT/2015<br><br>Approved: NOV/205 |
| General Order 600-612: PRPD Authority to Carry Out Searches and Seizures | SEPTEMBER/2015 | 1st Annual Revision<br><br>Approved: NOV/2015 |
| General Order on Reorganization of Weapons and Special Tactics Division (SWAT) | SEPTEMBER/2015 | 2nd Revision: OCT/2015<br><br>Approved: NOV/2015 |

TCA Third Semi-Annual Report | 2015

| | | Revision: DEC/2015 After TCA approval, the General Order was submitted to the TCA for the review of minor changes. TCA approved it again |
|---|---|---|
| General Order 100-112: Reorganization of the Tactical Operations Division | SEPTEMBER/2015 | 2nd Revision: OCT/2015<br><br>Approved: NOV/2015<br><br>Revision: DEC/2015 After TCA approval, the General Order was submitted to the TCA for the review of minor changes. TCA approved it again. |
| General Order on Reorganization of the Canine Division | OCTOBER/2015 | 2nd Revision: DEC/2015 |
| Rules and Procedures for the Implementation and Regulation of the Use of Patrol Dogs | OCTOBER/2015 | 2nd Revision: DEC/2015 |

| | | |
|---|---|---|
| Administrative Order on Intervention on Sexual Offense Incidents Applying to PRP Employees | OCTOBER/2015 | 2nd Revision: DEC/2015 |
| General Order on Functional Reorganization and Structuring of the Sexual Offenses and Child Abuse Division | OCTOBER/2015 | 2nd Revision: DEC/2015 |
| General Order on Investigation of Sexual Violence Incidents | OCTOBER/2015 | 2nd Revision: DEC/2015 |
| General Order 600-620 Rules and Procedures for the Use of Intermediate Weapons (Less lethal Weapons) | NOVEMBER/2015 | 2nd Revision: DEC/2015 |
| General Order 600-6 Management and Crowd Control | NOVEMBER/2015 | 2nd Revision: DEC/2015 |
| General Order of Intervention with Transgender and Transsexual Persons | NOVEMBER/2015 | 2nd Revision: DEC/2015<br><br>Approved two days after finishing the period corresponding to this report (December 9, 2015) |
| Form: PRP 174, Rev. 10/2015: Constitutional and Civil Unrest Reports | NOVEMBER/2015 | 2nd Revision: DEC/2015 |
| Regulation of Receipt, Processing and Adjudication of Administrative Complaints Against PRPD Employees | NOVEMBER/2015 | |

TCA Third Semi-Annual Report | 2015

| | | |
|---|---|---|
| Form: PRP-937, Nov/2015: Form to Attend the Orientation Phone Line for Sexual Offence Victims | DECEMBER/2015 | |
| Form: K-9 (Canine) Equipment/Team Deployment | DECEMBER/2015 | |
| General Order on Emergency Driving and Police Pursuits | DECEMBER/2015 | |

# Appendix 2: TCA Activities and Community Engagements (Detailed List)

### I. Meetings Required Under the Agreement:

During the reporting period, the TCA conducted monthly meetings with the Parties, in accordance with Paragraph 253 of the Agreement. The TCA is in constant communication, both by phone and/or email, with the Parties, in particular the PRPD's Reform Unit.

Also, the TCA stays in communication with the Honorable Judge Gelpí. The TCA, his staff, and the Core Team met with Judge Gelpí in August and in October.

Throughout this period, the TCA conducted more than 25 meetings with different sworn members of the PRPD.

### II.    Meetings, engagements and activities in accordance with Paragraph 254 of the Agreement:

The Agreement, in Paragraph 254, specifically states: "The TCA shall meet, as he or she in good faith deems necessary, with community stakeholders, which may include, without limitation, representatives of civic and community organizations, minority communities,

TCA Third Semi-Annual Report | 2015

LGBTT communities, student groups, labor groups, and civil rights and women's advocacy groups, to explain the TCA's reports, to inform the public about the Agreement implementation process, to hear community perspectives of police interaction and/or seek input relevant to the reform requirements of this Agreement."

In discharging the responsibilities as the TCA, and the requirements of Paragraph 254 of the Agreement, the TCA held several meetings during the reporting period to include known political figures in the Commonwealth of Puerto Rico. Our discussions included the implementation of the Sustainable Reform of the Police of Puerto Rico, the TCA's reports, the Academy/training, policy development, and overall progress of PRPD. There were no discussions beyond the Agreement and the progress of PRPD in meeting their obligations under the Agreement. Furthermore, there were no political discussions at any of the meetings.

Meetings with Puerto Rico Government Officials

- Hon. David Bernier Rivera, Secretary of State of the Commonwealth of Puerto Rico (August 2015)
- Hon. Pedro Pierluisi, Puerto Rico Resident Commissioner of the Commonwealth of Puerto Rico (July 2015)
- Maritere Rivera Corujo, Esq., Special Representative of Puerto Rico's Governor before the Court, Sustainable Reform of the Puerto Rico Police Department (August 2015)
- Former governor Rafael Hernández Colón (July 2015)

Meetings with Federal Government Officials:

- Carlos Cases, Special Agent in Charge, Federal Bureau of Investigation (FBI), PR Office (September & October 2015).
- Antonio Cordova, Regional Director, Department of Housing and Urban Development (HUD), (June & December 2015).

Meetings with Senators and House Representatives:

- Hon. Jaime R. Perelló Borrás, Speaker of the House of Representatives of the Commonwealth of Puerto Rico (July 2015)

Meetings with Executive Agencies:

TCA Third Semi-Annual Report | 2015

- Wanda Vázquez Garced, Esq., Puerto Rico's Women's Advocate (July 2015)
- Special Investigations Bureau (Negociado de Investigaciones Especiales-NIE) (August 2015)
- Grace Santana, Esq., Director of the Authority for the Financing of Infrastructure (Autoridad para el Financiamiento de la Infraestructura- AFI) (September 2015)
- Iris Miriam Ruiz, Puerto Rico's Ombudswoman (August 2015)
- Meeting with the Personnel Public Service Commission (September 2015)
- Participation, as observers, in the Executive Hearings of the Office of the Women's Advocate (August & September 2015)
- Georgina Candal, Esq., Director of the P.R. Civil Rights Commission (October 2015)
- Georgina Candal, Esq., and Carlos Del Valle Cruz, Esq., from the P.R. Civil Rights Commission (August 2015)

Meetings with Mayors and/or Municipal Police Commissioners:

- Ángel Martínez, Bayamón Municipal Police Commissioner (September 2015)
- Hon. María Eloisa "Mayita" Meléndez Altieri, Mayor of Ponce (July & September 2015)
- Hon. Javier Carrasquillo, Mayor of Cidra (September & November 2015)
- Hon. Victor M Ortiz Díaz, Mayor of Gurabo (September 2015)
- Hon. Miguel A Lopez, Mayor of Las Piedras (September 2015)
- Guillermo Calixto, San Juan Municipal Police Commissioner (October 2015)

Meetings with Puerto Rico Police Department Personnel:

- Colonel Héctor Agosto Rodríguez, Ponce Area Headquarters (August & October 2015).
- Colonel Michelle Hernández de Fraley and her staff, Police Academy (various meetings)
- Meeting with the Deputy Superintendence of Professional Responsibility, known by its Spanish acronym SARP (October 2015).
- "Night Out" in San Juan and Caguas, (August 2015).
- Open meeting for the Humacao Area "Agreement for the Sustainable Reform of the PRPD" presentation, Las Piedras (September 2015)
- Open meeting for the Bayamon Area "Agreement for the Sustainable Reform of the PRPD" presentation, Corozal (November 2015)

Visits to Police Regional Headquarters and Police Stations:

- Bayamón Oeste, Zone of Excellence (August & September 2015)
- Canine Unit in Bayamón (June 2015)
- Las Piedras, Zone of Excellence (October 2015)
- Police Shooting Range at Isla de Cabras (June 2015)
- Police Shooting Range at Gurabo, (October 2015)
- Quebradillas, Zone of Excellence (September 2015)
  Utuado, Zone of Excellence, (September 2015)
- Guanica Police Station and Area of Mayaguez Police Headquarters (July 2015)

**Meetings and communications with representatives of the following Puerto Rico Police Department's associations and other workers' union:**

- Police Association of Puerto Rico (Asociación de Policías de Puerto Rico) (July & October 2015)
- Association of Organized Police Officers (*Asociación de Policías Organizados*, or APO) (October, 2015).
- United Front of Organized Police (*Frente Unido de Policias Organizados*, or FUPO) (August 2015)
- Corporation of Police and Safety (*Corporacion Organizada de Policias y Seguridad*, or COPS) (September 2015)

**Meetings and activities with the Community Interaction Committees (Comité de Interacción Ciudadana)**

- Central Community Interaction Committee Swearing-In Ceremony at the Puerto Rico Capitol Building in San Juan (October 2015)

**Meetings and activities of the Community Safety Council (Consejos Comunitarios de Seguridad):**

- Naranjito, Cedro Arriba Community Safety Council (July, 2015)
- Villalba Community Safety Council (July, 2015)

**Meetings with Stakeholders and Special Events:**

- Persons with Disabilities Advocate's Office (October, 2014)
- "*Centro Comunitario LGBTT*", Transgender Group (October 2015)

| TCA Third Semi-Annual Report | 2015 |
|---|---|

- ACLU (August, October, November 2015).
- Dr. Carlos Pérez Fernández, Dominican Republic Vice-Consul (October 2015)
- Grucorpo-Grupo Comunitario de Trabajo de la Reforma de la Policía (June 2015)
- Espacios Abiertos (August & November 2015)
- Members of the Dominican community (November 2015)
- Public Housing Community Leaders (September, November, December 2015)
- Participation in the "No mas balas al aire" march (December 2015)
- Public Housing Presentation sponsored by the Department of Housing and Urban Development (HUD) in Caguas (December 2015)

# Appendix 3: List of Resources Shared (Detailed List)

| DATE SENT | NAME OF DOCUMENT | COMMENT |
|---|---|---|
| June 6, 2015 | Job description police agent | TCA CORE Team Member forwarded example of job description for a police agent |
| June 6, 2015 | Job description police sergeant | TCA CORE Team Member forwarded example of job description for a police sergeant |
| June 6, 2015 | Job description police commander | TCA CORE Team Member forwarded example of job description for a police commander |

TCA Third Semi-Annual Report | 2015

| June 6, 2015 | Job description police Chief | TCA CORE Team Member forwarded example of job description for a police Chief |
|---|---|---|
| June 22, 2015 | Las Vegas Metropolitan Police Department's Body Worn Camera policy | TCA CORE Team Member forwarded body worn camera policy from the Las Vegas Police Department |
| June 6, 2015 | Sergeant's promotional process-oral boards | TCA CORE Team Member forwarded example of oral boards for the Sergeant's promotional process |
| June 16, 2015 | Setting an Agenda to Address Race in Policing | TCA CORE Team Member forwarded an article on addressing race in policing |
| June 6, 2015 | Denver police department operations manual | TCA CORE Team Member forwarded the Operations manual for the Denver Police Department |
| June 16, 2015 | Bad Cops: It's Time They Improve or Leave: A Veteran Police Chiefs Speaks to Today's Police | TCA CORE Team Member forwarded an article reference improving police |
| June 24, 2015 | June 2015 Police Chief-Diversity, Bias and Impartial Policing | TCA CORE Team Member forwarded article about diversity, bias and impartial policing |
| June 24, 2015 | Agency 360 Fisher PD Case Study | TCA CORE Team Member forwarded a study on crowd control |

TCA Third Semi-Annual Report | 2015

| June 24, 2015 | Lakewood Police Department Policy and Procedure Chemical Agents | TCA CORE Team Member forwarded example of procedure for use of chemical agents for crowd control |
|---|---|---|
| June 25, 2015 | Lakewood Police Department Policy and Procedure Civil Disobedience | TCA CORE Team Member forwarded example of procedure for dealing with civil disobedience |
| June 26, 2015 | Lakewood Police Department Policy and Procedure Mass Arrest Reports | TCA CORE Team Member forwarded example of policy and procedures for mass arrest reports |
| June 27, 2015 | Lakewood Police Department Policy and Procedure Field Processing Mass Arrests | TCA CORE Team Member forwarded example of policy and procedures for field processing of mass arrests |
| June 28, 2015 | Lakewood Police Department Policy and Procedure Mass Arrests | TCA CORE Team Member forwarded example of policy and procedures for dealing with mass arrests |
| June 29, 2015 | Lakewood Police Department Policy and Procedure Riots | TCA CORE Team Member forwarded example of policy and procedures for dealing with riots |
| June 30, 2015 | Lakewood Police Department Policy and Procedure Mutual Aid | TCA CORE Team Member forwarded example of policy and procedures for providing mutual aid during events |
| July 1, 2015 | Lakewood Police Department Policy and Procedure Planning for Special Events | TCA CORE Team Member forwarded example of policy and procedures |

TCA Third Semi-Annual Report | 2015

| | | | |
|---|---|---|---|
| | | | concerning planning for special events |
| July 1, 2015 | EL PASO COUNTY SHERIFF'S OFFICE POLICY AND PROCEDURE MANUAL for the use and deployment of the Mounted Police Horse Unit. | | TCA CORE Team Member forwarded example of policy and procedure for the use and deployment of a Mounted Police Horse Unit |
| July 15, 2015 | Ferguson Commission complete list of calls to action proposed | | TCA CORE Team Member forwarded a list of calls to action proposed by the Ferguson Commission reference crowd control during events |
| July 22, 2015 | Planning for demonstrations | | TCA CORE Team Member forwarded sample of procedures for planning for demonstrations |
| July 23, 2015 | Sample MOU and a planning checklist for special event Bedfordshire police | | TCA CORE Team Member forwarded a sample MOU and planning  checklist for special events |
| July 23, 2015 | Police Management of Mass Demonstrations-Identifying Issues and Successful Approaches, Police Executive Research Forum | | TCA CORE Team Member forwarded an article by PERF concerning police management of mass demonstrations |
| July 23, 2015 | Ferguson Proposed Rules of Engagement | | TCA CORE Team Member forwarded the Ferguson, MO proposed rules of engagement for |

| | | handling demonstrations |
|---|---|---|
| July 23, 2015 | HMIC (2011) The rules of engagement: A review of the August 2011 disorders in England | TCA CORE Team Member forwarded a review of how events were handled & how the rules of engagement worked during a disorder in England |
| July 23, 2015 | Seattle Police After Action Plan | TCA CORE Team Member forwarded an example of an after action plan from the Seattle police |
| July 23, 2015 | Ferguson Police Neighborhood Policing Plan | TCA CORE Team Member forwarded the Neighborhood policing plan for Ferguson, MO |
| July 23, 2015 | INTERNATIONAL ASSOCIATION OF CHIEFS OF POLICE National Policy Summit on Community Police Relations: Advancing a Culture of Cohesion and Community Trust 01/2015 | TCA CORE Team Member forwarded the IACP paper from the Summit on Community Police Relations |
| July 23, 2015 | Neighborhood Policing Overview Ferguson | TCA CORE Team Member forwarded Ferguson Police Department's overview of Neighborhood Policing |
| July 27, 2015 | Lexington Leadership Case Study Manual | TCA CORE Team Member forwarded Leadership Case Study from Lexington KY |
| July 27, 2015 | How Police Can Partner with Researchers to Build Trust National Institute of Justice | TCA CORE Team Member forwarded NIJ article on how |

| | | police can partner with researchers to build trust |
|---|---|---|
| August 5, 2015 | Use of Force Questions for Court | TCA CORE Team Member forwarded sample of Use of Force questions for Court |
| August 10, 2015 | Internal Affairs Policy | TCA CORE Team Member forwarded a sample Internal Affairs Policy |
| August 11, 2015 | Internal Affairs Procedure in Spanish | TCA CORE Team Member forwarded a sample Internal Affairs Policy in Spanish |
| August 11, 2015 | Internal Affairs Investigations A Guide for the Investigator | TCA CORE Team Member forwarded a guide for Internal Affairs Investigators |
| August 11, 2015 | Internal Affairs Power Point | TCA CORE Team Member forwarded a training power point about Internal Affairs |
| August 12, 2015 | IACP Computer Aided Dispatch systems http://www.iacptechnology.org/technologies/Communications/cad.html | TCA CORE Team Member forwarded a link to IACP concerning CAD dispatch systems |
| August 14, 2015 | Let's Get This: Community-Oriented Policing is the Only Way to Police a Democracy! by improving police | TCA CORE Team Member forwarded an article on community policing |
| August 16, 2015 | IACP Domestic Violence by Police Officers Model Policy | TCA CORE Team Member forwarded the IACP model policy on Domestic Violence |
| August 16, 2015 | IACP Domestic Violence by Police Officers Model Policy paper | TCA CORE Team Member forwarded the IACP paper supporting their |

| | | |
|---|---|---|
| | | model policy on Domestic Violence |
| August 18, 2015 | "Re-Engineering Training on Police Use of Force," the latest in PERF's Critical Issues in Policing Series. The report is available online by clicking here: http://www.policeforum.org/assets/reengineeringtraining.pdf. | TCA CORE Team Member forwarded a link to PERFs paper on training on police use of force |
| August 20, 2015 | Mail-in Postage Paid Complaint Form | TCA CORE Team Member forwarded sample mail-in complaint form per request from LTC Vega |
| August 20, 2015 | Civilian Complaint Form Spanish/English from Lawrence Police Department | TCA CORE Team Member forwarded sample complaint form per request from LTC Vega |
| August 21, 2015 | Complaint Form in Spanish from Albuquerque NM police department | TCA CORE Team Member forwarded sample complaint form per request from LTC Vega |
| August 21, 2015 | Citizen Complaint Brochure in Spanish from Columbus OH | TCA CORE Team Member forwarded sample complaint brochure per request from LTC Vega |
| August 21, 2015 | Personnel Complaint form in Spanish from Bakersfield CA | TCA CORE Team Member forwarded sample complaint form per request from LTC Vega |
| August 21, 2015 | LA Police Department Complaint of Employee Misconduct | TCA CORE Team Member forwarded sample complaint form per request from LTC Vega |
| August 21, 2015 | D.C. Complaint Form in Spanish | TCA CORE Team Member forwarded sample complaint |

| | | |
|---|---|---|
| | | form per request from LTC Vega |
| August 21, 2015 | D.C. Complaint Brochure in Spanish | TCA CORE Team Member forwarded sample complaint brochure per request from LTC Vega |
| August 21, 2015 | Orlando Citizen Complain Form in Spanish | TCA CORE Team Member forwarded sample complaint brochure per request from LTC Vega |
| August 21, 2015 | Stamford citizen complaint form in Spanish | TCA CORE Team Member forwarded sample complaint brochure per request from LTC Vega |
| August 24, 2015 | Investigatory Stop & Protective Pat Down Settlement Agreement | TCA CORE Team Member forwarded settlement agreement from Chicago ACLU |
| September 3, 2015 | Spanish Critical Incident Report with Interview section | TCA CORE Team Member forwarded sample critical incident report |
| September 4, 2015 | Record Violence and Displacement Echoes El Salvador's War Zone Past from insightcrime.org | TCA CORE Team Member forwarded link to article concerning violence in El Salvador |
| September 10, 2015 | Handling Interactions with Transgender Individual-D.C. Metropolitan Police | TCA CORE Team Member forwarded transgender policy and procedural guidelines from the D.C. Metro Police |
| September 10, 2015 | San Francisco Police Department Standards for Interaction with Transgender Communities: Name Usage | TCA CORE Team Member forwarded transgender policy and procedural |

TCA Third Semi-Annual Report                                    2015

| | | guidelines from the San Francisco Police Department |
|---|---|---|
| September 10, 2015 | San Francisco Police Department General Rules of Conduct | TCA CORE Team Member forwarded general rules of conduct guidelines from the San Francisco Police Department |
| September 10, 2015 | NYPD Policy regarding Gender Identity | TCA CORE Team Member forwarded general rules of conduct guidelines concerning Gender Identity from the New York City Police Department |
| September 10, 2015 | San Francisco Police Department Discrimination and Harassment | TCA CORE Team Member forwarded general rules of conduct guidelines from the San Francisco Police Department |
| September 11, 2015 | IACP Small Unmanned Aircraft Systems | TCA CORE Team Member forwarded an IACP Concept and Issues paper concerning Drones |
| September 11, 2015 | IACP Small Unmanned Aircraft Systems Model Policy | TCA CORE Team Member forwarded an IACP Model Policy concerning Drones |
| September 16, 2015 | Field Training and Evaluation Program FTA critique Lakewood Police Department | TCA CORE Team Member forwarded the Field Training and Evaluation Program FTA critique Lakewood Police Department as requested |

TCA Third Semi-Annual Report                    2015

| | | |
|---|---|---|
| September 22, 2015 | IACP Canines Model Policy | TCA CORE Team Member forwarded IACP Canines Model Policy |
| September 22, 2015 | IACP Canines Model Policy Paper | TCA CORE Team Member forwarded IACP Paper supporting the Canines Model Policy |
| September 22, 2015 | El Paso County Sheriff's Office K-9 Policy | TCA CORE Team Member forwarded information on K-9 policy, procedure and management |
| September 23, 2015 | POST Law Enforcement K-9 Guidelines | TCA CORE Team Member forwarded information on K-9 policy, procedure and management |
| September 23, 2015 | K-9 policy State of New Jersey | TCA CORE Team Member forwarded information on K-9 policy, procedure and management |
| September 23, 2015 | Implementation and Effective Management of a Canine Program within a Police Department E.M.U. School of Police Staff and Command | TCA CORE Team Member forwarded information on K-9 policy, procedure and management |
| September 23, 2015 | UNITED I.S.D. POLICE DEPARTMENT Standard Operating Procedures Security K-9 Handler Unit | TCA CORE Team Member forwarded information on K-9 policy, procedure and management |
| September 23, 2015 | Large Department K-9 Procedures | TCA CORE Team Member forwarded information on K-9 policy, procedure and management |
| September 23, 2015 | K-9 Audit system http://k9auditsystem.com | TCA CORE Team Member forwarded information on K-9 |

TCA Third Semi-Annual Report | 2015

| | | policy, procedure and management |
|---|---|---|
| September 25, 2015 | One Breath: The Importance of Recognizing Agonal & Other Breathing Problems User-level program "http://ipicdtc.com/courses/one-breath/ | TCA CORE Team Member forwarded info about training on Agonal & other breathing problems to Colonel Fraley |
| September 27, 2015 | Denver Crisis Intervention Training Schedule and Curriculum | TCA CORE Team Member forwarded information and schedule for crisis intervention training at Denver Police Department |
| September 28, 2015 | Police & Security News Body Worn Cameras-Rebuilding Public Trust through Organizational Culture | TCA CORE Team Member forwarded article on body worn cameras |
| October 6, 2015 | Report of After Action Investigation Review and Report | TCA CORE Team Member forwarded after action report for use in academy for lessons learned to Colonel Fraley |
| October 6, 2015 | Info on webinar about De-escalating techniques for domestic violence calls | TCA CORE Team Member forwarded Info on webinar about De-escalating techniques for domestic violence calls to Colonel Fraley |
| October 8, 2015 | IACP Recruitment http://www.theiacp.org/Recruitment | TCA CORE Team Member forwarded link to IACP Recruitment Information and Resources |
| October 8, 2015 | Virtual Ride Along link from Discoverpolicing.org | TCA CORE Team Member forwarded Virtual ride along |

TCA Third Semi-Annual Report                                    2015

| | | video reference recruitment |
|---|---|---|
| October 13, 2015 | Constitutional Policing as a Cornerstone of Community Policing PERF | TCA CORE Team Member forwarded PERF article on community policing |
| October 13, 2015 | Henderson Police Department Patrol Field Training and Evaluation Program | TCA CORE Team Member forwarded example of Field Training and Evaluation program for sergeants |
| October 13, 2015 | Henderson Police Department Sergeant Field Training and Evaluation Program | TCA CORE Team Member forwarded example of Field Training and Evaluation program for patrol |
| October 13, 2015 | Henderson Police Department Standardized Evaluation Guidelines | TCA CORE Team Member forwarded example of standardized evaluation guidelines |
| October 21, 2015 | Assaults on Officers at Domestic Violence Calls by Robert Johnson Legal Liability & Risk Management Institute | TCA CORE Team Member forwarded article about assaults on officers at domestic violence calls |
| October 22, 2015 | Complete Training Regimen for Mounted Unit | TCA CORE Team Member forwarded the Mounted Unit Training Regimen from the Lexington KY PD |
| October 22, 2015 | West Metro Drug Task Force Policy & Procedure Manual | TCA CORE Team Member forwarded a Policy & Procedure manual for the West Metro Drug Task Force in Denver CO |

TCA Third Semi-Annual Report | 2015

| | | |
|---|---|---|
| October 25, 2015 | Photos of K-9 Armor | TCA CORE Team Member forwarded information references armor designed for K-9s |
| October 28, 2015 | Lakewood Police Department Policy and Procedure for Arrests of Foreign Nationals | TCA CORE Team Member forwarded example of Policy and Procedure for Arrests of Foreign Nationals |
| October 29, 2015 | IACP Training Key 634 Immigration Enforcement | TCA CORE Team Member forwarded IACP training article on Immigration enforcement |
| November 2, 2015 | IACP Conducting Stake-outs Paper | TCA CORE Team Member forwarded information reference drugs and narcotics unit |
| November 2, 2015 | IACP Conducting Stake-outs model Policy | TCA CORE Team Member forwarded information reference drugs and narcotics unit |
| November 2, 2015 | IACP Confidential Fund Paper | TCA CORE Team Member forwarded information reference drugs and narcotics unit |
| November 2, 2015 | IACP Confidential Fund Model Policy | TCA CORE Team Member forwarded information reference drugs and narcotics unit |
| November 2, 2015 | IACP Confidential Informants Paper | TCA CORE Team Member forwarded information reference drugs and narcotics unit |
| November 2, 2015 | IACP Confidential Informants Model Policy | TCA CORE Team Member forwarded information |

TCA Third Semi-Annual Report | 2015

| | | reference drugs and narcotics unit |
|---|---|---|
| November 4, 2015 | Interaction with Special Populations PowerPoint | TCA CORE Team Member forwarded a power point about police interaction with special populations to Colonel Fraley for academy |
| November 4, 2015 | Risk Assessment, Behavioral Emergencies, and Response to Emotionally Disturbed Individuals power point | TCA CORE Team Member forwarded a power point about risk assessment to Colonel Fraley for academy |
| November 4, 2015 | The President's Task Force on 21st Century Policing Implementation Guide | TCA CORE Team Member forwarded 21st Century Policing Implementation Guide reference community policing, partnerships, transparency and disapproval of combat policing uniforms |
| November 4, 2015 | Taser X26PECD User Manual | TCA CORE Team Member forwarded the user manual for the Taser X26 PECD |
| November 4, 2015 | Taser CEW Certification Course Syllabus | TCA CORE Team Member forwarded the Syllabus for a Taser Certification Course |
| November 4, 2015 | Taser X2 ECD User Manual | TCA CORE Team Member forwarded the user manual for the Taser X2 |

TCA Third Semi-Annual Report                                    2015

| November 4, 2015 | Taser X2CEW User Guide | TCA CORE Team Member forwarded the user guide for the Taser X2CEW |
|---|---|---|
| November 4, 2015 | Taser X26P user course PowerPoint | TCA COE Team Member forwarded a PowerPoint I for the Taser X26 P User Course |
| November 5, 2015 | Lakewood Colorado Police Department Police Agent Physical Ability Examination - Candidate Study Guide | TCA COE Team Member forwarded a Physical Ability Examination Study Guide from Lakewood Colorado PD |
| November 5, 2015 | Lakewood Colorado Police Department Police Agent Physical Ability Examination - Administration Guide | TCA COE Team Member forwarded a Physical Ability Administration Guide from Lakewood Colorado PD |
| November 6, 2015 | Denver Police Department Crowd Control Manual | TCA CORE Team Member forwarded a crowd control manual from Denver PD |
| November 8, 2015 | IACP Alzheimer's Paper | TCA CORE Team Member forwarded IACP paper on policy dealing with those with Alzheimer's to Colonel Fraley for future courses |
| November 8, 2015 | IACP Alzheimer's Model Policy | TCA CORE Team Member forwarded IACP model policy for dealing with those with Alzheimer's to Colonel Fraley for future courses |

OFFICE OF THE TECHNICAL COMPLIANCE ADVISOR

TCA Third Semi-Annual Report                    2015

| November 8, 2015 | IACP Mental Illness Paper | TCA CORE Team Member forwarded IACP paper on policy dealing with those with Mental Illness to Colonel Fraley for future courses |
|---|---|---|
| November 8, 2015 | IACP Mental Illness Policy | TCA CORE Team Member forwarded IACP model policy for dealing with those with Mental Illness to Colonel Fraley for future courses |
| November 11, 2015 | Bedfordshire Police MOU Agreement | TCA CORE Team Member forwarded samples of MOUs reference demonstrations to Judge Denton |
| November 11, 2015 | Ferguson, MO agreement | TCA CORE Team Member forwarded samples of MOUs reference demonstrations to Judge Denton |
| November 11, 2015 | Police Management of Mass Demonstrations-Identifying Issues and Successful Approaches, Police Executive Research Forum | TCA CORE Team Member forwarded samples of MOU and planning checklist for special events to Judge Denton |

# Appendix 4: Methodology to Review Action Plans