implementation of the Agreement. This section additionally includes a projection of the work to be completed during the upcoming reporting period. It concludes with a summary of the Third Public Hearing and the challenges and possible solutions discussed during this crucial element of the Reform process.

# Section I

## The Fourth PRPD Status Report

On May 31, 2016, the PRPD submitted its Fourth Status Report assessing progress for each of the eleven (11) focus areas, steps towards implementation of the Agreement, and a response to prior concerns raised by the TCA. The Status Report documents the overall progress made by the PRPD for the period covering December 1, 2015, through May 15, 2016. Paragraph 261 requires that the Commonwealth "file with the Court sealed and unsealed versions of the status report, with a copy to the TCA and DOJ, no later than 15 days before the end of the period under review." Although the filing with the Court was submitted after the deadline, it should be noted that the Commonwealth has complied with the filing requirement.

Except for the substantial progress made by the Reform Unit and the Police Academy in the drafting of very polished policies and training modules, the Status Report does not document the steps taken by the PRPD in building capacity during the last six months. The Status Report describes assorted actions but neglects to provide an explanation of how these actions have enhanced PRPD's capacity, or how the PRPD uses its resources towards meeting the requirements of the Agreement and the Action Plans. It is unclear the inclusion of certain information when the subject is Information Systems and Technology or another area of compliance, and the relevance of certain activities or purchases. For example, the acquisition of items like walkie-talkies and computers does not show the link between the acquisition, the purpose of said acquisitions, and how they are pertinent to compliance with the Agreement. The Status Report must connect the reported action or activity to its purpose and how it meets the demands of the capacity building phase. During various organized site visits, the TCA, and his team observed the need for hand-held radios and other forms of communication devices and properly informed the Reform unit in our reports. However, nowhere in the Status Report, there is any information of the operational distribution of, nor the impact of the purchased

communication devices, nor the impact on the capacity of PRPD to operate more efficiently.

In the discussion of open meetings between the PRPD and the community, the input received from participants of the meeting is not addressed. It does not convey the fact that the relationship between the PRPD and the community it serves is a reciprocal one. It is important for the PRPD to inform the community of how the community's input changes the policies and operations of the PRPD, or at least provide an explanation of why PRPD made no change. This action is particularly important in the context of the Agreement. The PRPD cannot act as if there is no Agreement in place requiring the PRPD to alter the manner in which it must interact with the community. Also, it is important to note that the average group participation is of approximately 50 persons, which gives the impression of little synchronization between the community and police, or perhaps ineffective communication protocols. Also, the TCA recommends a tracking mechanism in which issues presented by the community are introduced in a lessons learned type of program. The purpose of such program is to document and track issues that inform the police-community relations creating a basic repository of issues of mutual concern. The information obtained by PRPD can be utilized to establish a more efficient communication with the community about the issues presented and subsequent solutions. This program or mechanism will give the PRPD a better sense of how communities are reacting to both the Reform process and the PRPD's community engagement programs. Also, the TCA recommends the use of extensive social media and other communication tools to enhance community participation in open, public meetings.

The Status Report addresses ethics training by the PRPD. However, the TCA must note that the reported training consists of a visual presentation that only addresses the issue of personal finances, leaving aside the primary topic of police ethics. The Status Report does not indicate the impact, or intended impact, of the training on the attendants. Therefore, the TCA recommends that any ethics training should be commensurate with the best practices on ethics training for police in the United States. This training should include but not be limited to: Code of Conduct, Professional Conduct, Contracts, Rules of Law and Ethical Behavior, Integrity, Forms of Corruption, Rewards and The Use of Internal Affairs Units in the reporting of Ethical Violations. The TCA does note that this training was not provided under the auspices of the PRPD Training Academy, but was sponsored by the Commonwealth of Puerto Rico. Though all training is a learning experience, the TCA wants to ensure that this training does not become a substitute for the type of ethical training which is required and envisioned under the Agreement.

During the last six months, one of the most important operational issues has been the reorganization of the Division in charge of drugs, narcotics, vice, and control of illegal weapons. However, the Status Report make absolutely no reference to this important

topic. The TCA submits this is a very significant omission. As previously informed, this matter will be fully addressed further in this report.

Once again the PRPD publicizes and discusses troubling statistics without context or internal audit. This deficiency is an issue that the TCA has mentioned in prior reviews of the PRPD Status Report. We found little consistency between the numbers obtained by the TCA and those presented in the Status Report. For example, in the PRPD Report, Aibonito registers 0 uses of force, but 18 uses of force were reported to the TCA by the Area Commander himself during a PRPD open meeting in Coamo. Similarly, there is no discussion of the substantial increase in the number of use of force cases reported in 2015 versus the number reported in 2014.

At this point, the TCA has serious concerns about the ability of the PRPD to report and, more importantly, to audit its statistics. There is a great concern that these problems in auditing and reporting statistical information will continue after the adoption of NIBRS. Further comments and recommendations of the TCA on NIBRS will be addressed later on in this Report.

It is certainly disquieting that the table informing about cases of domestic violence (as in the prior report) shows that there were cases reported but no convictions. (The table refers to "convicted PRPD members.") The TCA recommended that the PRPD provides both information about complaints, as well as information about outcomes of DV investigations and discipline. More importantly, the Status Report does not address the persistent problem of domestic violence and its relationship to issues of mental health in light of the numerous recent cases. The TCA expressly points out the case at the Ponce Police Headquarters, where on December 28th, 2015, there was the unfortunate killing of three police officers by an on-duty police officer who had just been recently rearmed. The issue of mental health will be further discussed in this Report.

The Status Report also fails to *show* the specific steps being taken by the PRPD towards building capacity, as well as additional steps that must be taken to engage the community. The Status Report documents that, as part of the collaboration efforts with the TCA and the USDOJ, the PRPD successfully submitted for approval the second set of Action Plans (which consisted of Plans on *Professionalization; Recruitment, Selection and Hiring; Supervision and Management; and Community Engagement and Public Information*) and the review of more than 40 policies and training modules. The TCA commends the effort and the established protocol of Action Plan and policy development.

The PRPD has effectively argued its case regarding the progress being made in the area of training. The Auxiliary Superintendence of Education and Training, created by the Superintendent to delegate his responsibility to provide training, has developed courses

| TCA Fourth Semi-Annual Report | 2016 |
|---|---|

in accordance with Paragraphs 119 and 120. The TCA has promptly reviewed the syllabi for the on-going semester and commends the Academy's promptness in the matter.

In March 2016, the TCA attended the graduation of the second class of cadets under the Reform. Although the TCA praises this accomplishment, there is a great concern over the composition of the graduating class: more than 95 percent of the graduates in the last two graduating classes were municipal police, not PRPD cadets. **At the two-year mark in this process of capacity building, the expectations were to see more PRPD cadets being trained under the requirements of the Agreement. In discussion with the Superintendent of the Police Department, the TCA learned that there was no funding assigned for a new Police Academy class in the Fiscal Year 2017 PRPD budget. The TCA understands that there are monetary issues; however, he recommends prioritizing recruitment and training versus promotions and transfers. Allocating budget funds to promote members of the PRPD without a staffing study determining the real current needs of the agency points to the fact that these hard decisions must be made by setting priorities consistent with the Agreement. At this rate, and with an aging police force PRPD will face an unbalanced force challenged of performing its operational responsibilities with respect to manpower resources.**

## A Description of the Work Conducted by the TCA: Paragraph 250(a)

During this reporting period, one of the central tasks of the TCA has been to provide technical assistance while reviewing a considerable number of policies and training documents drafted and implemented by the PRPD. The process of reviewing policies and training materials follows the schedule agreed by the Parties and set by the Action Plans presented by the PRPD in compliance with Paragraphs 234 and 237. For this reporting period, the Parties and the TCA successfully reviewed over 40 general orders, special orders, administrative orders, regulations, and complementary forms. Also, the TCA reviewed more than 35 training documents. (See Appendix #1).