UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**Plaintiffs,**<br><br>v.<br><br>**COMMONWEALTH OF PUERTO RICO, et. al.**<br><br>**Defendants.** | **CIVIL NO. 12-2039 (GAG)** |

**GOVERNMENT OF PUERTO RICO RESPONSE TO THE SIX-MONTH REPORT OF THE TECHNICAL COMPLIANCE ADVISOR, JUNE 10, 2016 - DECEMBER 9, 2016**

**TO THE HONORABLE COURT:**

**COME NOW** the COMMONWEALTH OF PUERTO RICO and the PUERTO RICO POLICE DEPARTMENT, through the undersigned counsel, and respectfully submits the following response to the "Six-Month Report of the Technical Compliance Advisor, June 10, 2016 - December 9, 2016," ("Fifth Six-Month Report") filed on January 13, 2017. Dkt. #464.

### I. BACKGROUND

The Agreement for the Sustainable Reform of the Puerto Rico Police Department, Dkt. #60 ("Agreement"), calls for the Puerto Rico Police Department ("PRPD") to implement among the most sweeping reforms a law enforcement agency has undertaken pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141. The PRPD will adopt dozens of new policies, provide training for new recruits and thousands of current officers, and implement reporting and

accountability systems that will reinforce constitutional policing practices, equal protection for all, and public safety.

The Agreement requires a unique four-year capacity-building period that permits the Commonwealth of Puerto Rico and PRPD to build a solid foundation of policies, regulations, training, staffing measures, technology, and accountability mechanisms to place PRPD in a position to successfully implement the terms of the Agreement in all police areas. Pursuant to the Agreement, the Commonwealth and PRPD draft "action plans" setting forth the steps that PRPD will take to lay this foundation. Agreement ¶ 234. PRPD begins implementing the Action Plans upon their approval by the TCA. *Id.* ¶ 236.

The TCA is tasked with assessing PRPD's implementation of the Agreement and providing technical assistance, where appropriate. *See id.* ¶¶ 225, 255. The TCA files semiannual reports that serve as the primary means of communicating his assessments to the Court, the Parties and the public. *See id.* ¶ 250. For the first four (4) years of the Agreement, the TCA's reports must include (a) a description of the TCA's work; (b) a listing of each detailed step and timeframe in the Commonwealth's Action Plans and an assessment of the Commonwealth's progress; (c) the methodology and specific findings of each review conducted; (d) recommendations to achieve compliance; and (e) a projection of the work to be completed during the upcoming reporting period and any anticipated challenges or concerns related to the implementation of the Agreement. *Id.* ¶ 250. The TCA filed his Fifth Six-Month Report on January 13, 2017. (*See* Docket No. 464)

## II. DISCUSSION

A. <u>Facility's at Police Academy</u>

The TCA point out in its Report that it has noticed deterioration in the physical structure of the facilities of the Police Academy. The TCA had already called attention to similar situations in its First Semi-Annual Report and the PRPD made the corresponding reparations. However, at this moment the Police Academy needs additional repairs and the physical problem of the structure demands from the PRPD a prompt and effective response to take care of this instrument of work. According to the TCA Report, the problem is directly related to the Office of Management and Budget in awarding contracts for repairs. The TCA recommends that the Academy maintain sufficient funds to properly handle all maintenance requirements. As the TCA rightly points out in its report, it is aware of the unprecedented fiscal problems facing Puerto Rico and how this affects the reform efforts of the PRPD. (*See* Docket 464, p.5, ¶4) Although it refers particularly to the area of information and technology, it is important to note that this crisis affects all areas of the Reform of the PRPD including, among other things, the maintenance of the structures and the necessary resources to carry out the personnel study of the Agency. That being said, the PRPD will continue to identify funds to continue the implementation of its reform efforts.

B. <u>Recruitment</u>

The TCA recommends identifying funds in this year's fiscal year 2017 for a new recruiting class for the Police Academy. The PRPD understands that the recruitment for a new class of Police Academy must await the results of the Personnel and Resources

Study to ensure that staffing decisions are made in accordance with the PRPD's operational needs. As the TCA points out in its Report, this study is the cornerstone of the reform of the area of professionalization and the basis for the plan for identifying the need for personnel and resources rooted in the Principles of community policing. (*See* Docket No. 464, p.5)

C. <u>Staffing and Resources Study</u>

In regards to compliance with paragraph 13 of the Agreement, the PRPD recognizes that there have been delays in carrying out the Personnel and Resources Study. This study will determine the needs of the Agency's in regards to personnel and resources. In two and a half years the PRPD has not yet advanced enough to obtain the results that are needed to begin adjusting the PRPD based on the needs that the study would reflect. This study will determine, among other things, how many police officers PRPD needs, the areas they should be assigned, and the resources and technology needed to be trained. The newly appointed Superintendent, will promptly address this issue, and will hold meetings to carry out the attainment of an external audit company that will perform this type of analysis.

In relation to the indication of non-compliance with the date of June 2016, it is meritorious to clarify that by acknowledgment of the Parties in this case, that the deadline had been extended to December 2016, and this is reflected in the approved version of the Professionalization Action Plan. The Parties recognized the ambitiousness of this type of study that has not been implemented in any other jurisdiction. It was pointed out in the Action Plan that this study was going to be done gradually because of the current fiscal problem, and the fact that this study was going to

require the outsourcing of an external company that has the specialized knowledge to carry out this type of study. Therefore, the Parties agreed that they would extend the original date contained in the draft Action Plan and that in December 2016 the PRPD would submit a Work Plan detailing how this study would be carried out. On December 30, 2016, the PRPD complied with said deadline.

D. Drugs and Narcotics Division

The PRPD understands that, with regards to the restructuring of the Bureau of Drugs and Narcotics, there has been progress given that the General Order of this Bureau was approved by the TCA and signed by the past Superintendent. The signature of the policy constituted an affirmative action of the Agency towards establishing a uniform criterion of selection and stability of the personnel in the Bureau of Drugs and Narcotics. Moreover, another progress related to the restructuring of the Bureau of Drugs and Narcotics, is the administration of a diagnostic test of physical fitness and a development of training on the subject of corruption.

E. Budget

The TCA points out that it is aware of the unprecedented fiscal problems facing Puerto Rico and how this affects the reform efforts of the PRPD. (*See* Docket No.464, p.5) Although it refers specifically to the area of information and technology, it is important to note that this crisis affects all areas of the Reform of the PRPD including, among others, the maintenance of the structures and resources necessary to carry out the study for personnel and resources of the PRPD.

Regarding the identification of funds for the development of the study of people and resources, it should be noted that the TCA provided the PRPD with technical

assistance in the drafting of the federal proposal, and after submitting the proposal, the PRPD was not selected. That said, the PRPD will continue to identify funds and compete in the granting of federal proposals in order to continue compliance with reform efforts.

F. <u>Domestic Violence</u>

The TCA's Report makes reference to some concerns about how the PRPD is reporting its cases of domestic violence. Specifically, that the cases of agents that incurred in this type of crime were reported, but that it failed to include the sentences of those cases. It is necessary to clarify that the Bureau of Anti-Discrimination Affairs of the PRPD conducts administrative investigations to recommend sanctions, but does not raise specific data regarding the outcome of this type of crime. Since these are separate proceedings and the judgments are handed down by the Courts following the filing of criminal charges, the PRPD has no jurisdiction over this particular issue.

G. <u>Policy Development Protocol</u>

The PRPD presented a draft protocol that seeks to accomodate the provisions of Paragraph 229 of the Agreement to the terms currently leading to the development and approval of policies and procedures in compliance with the provisions of the Agreement and the Action Plans. Promptly, the Parties will be formally submitting their proposal to the Court.

H. <u>Extension of the Capacity Development Period</u>

Given that the development of the Action Plans have taken a period of more than two years of work in cooperation between the Parties and the TCA, and that the existence of significant delays in some areas, the TCA recommends that the Parties

renegotiate an extension of the Capacity Building period for at least one year. The PRPD appreciates the recognition of the TCA and agrees with its findings. Therefore, a request for an extension of the capacity building period will be made in due time.

I. <u>Employee Assistance and Support Program (PAAE)</u>

It is meritorious to clarify that the Employee Assistance and Support Program has been in the PRPD for several years and has continued to offer services to employees and their families on an uninterrupted basis. Compliance with this Program is monitored by AMMSSCA through the issuance of compliance certifications (which we shared with the TCA). Now, what did not exist was an Administrative Order that regulated it, so PRPD had to develop it in collaboration with the TCA and USDOJ. One of the objectives of the program is the implementation of initiatives of prevention. As the PRPD hold in previous meetings, these initiatives have been redesigned and the PRPD has extended them through the proposal of regionalization of services.

J. <u>Amendments Law 53-1996</u>

The development of a Bill to amend Law 53 is an activity contained in the Policy and Procedure Action Plan whose delivery date was set for March 2017. However, the PRPD submitted a first draft of amendments, particularly directed to promotions by merit. It was discussed on several occasions with the TCA and the USDOJ. At all times we established that the presentation of these amendments to the legislature was a matter that was not within the jurisdiction of the PRPD and was a prerogative that the Executive Branch had, since the special session was convened by the Executive Branch. Nonetheless, we reiterate our total commitment to continue working on the draft, now considering the recommendations of the new Authority.

K. <u>Mounted Unit</u>

The PRPD acknowledges and appreciates the training recommendations made by the TCA for the members of the PRPD of the Mounted Unit. To that end, the Police Academy initiated conversations with experts and became aware that there are physical fitness requirements in order to be able to participate in the training. In consideration of the expenditure of public funds implied by this initiative, the Police Academy developed a diagnostic test of physical fitness. This in order to establish the minimum standards with which the personnel attached to the mounted unit must comply. This initiative will be completed with the drafting of a General Order that will regulate the composition and processes of the Mounted Unit.

L. <u>Self-Assessment Visits from the Reform Office</u>

The PRPD has taken the initiative to assign senior officers to participate in the self-assessment visits. The purpose of this new proposal is to receive input regarding the identification of challenges that may well result in the incorporation of significant changes in the PRPD.

M. <u>Consent Agreement in Unpaid Overtime Case</u>

The TCA in its Semi-Annual Report includes particulars about the contents of a settlement agreement related to the case *Thomas E. Perez and Puerto Rico Police Department and Commonwealth of Puerto Rico, et al., USDC-PR, Case No. 16-2849* (GAG). The PRPD considers that this issue should not be part of the Report. Since, it may well have the potential to create confusion with the Reform Agreement.

N. <u>Incidents of Alleged Corruption and Civil Rights Violations</u>

The TCA's Fifth Report highlights incidents of allege corruption and violations of civil rights that have been portray in the news and that these incidents reflect a pattern of an organization still in disarray. (*See* Docket No. 464, p.5). In this regard, it is necessary to clarify several aspects, namely: the PRPD strongly rejects the arbitrary, illegal and discriminatory actions in any scope of action, either by PRPD members or civilian personnel of the Agency. The PRPD has been emphatic on establishing a public policy of zero tolerance of civil rights violations, and promotes the equal protection of the law in any type of intervention performed by PRPD members.

Moreover, the TCA's Fifth report goes on to mention that "*the history of the narcotics, vice, and firearms investigations by the PRPD is replete with allegations of corruption, misconduct, and civil rights violations. Episodes of this history have been recurrent in past years with highly publicized stories of corruption*." (*See* Docket No. 464, p.31). However, the TCA's Report fails to provide details as to what highly publicize incidents of corruption the report is discussing. In order to avoid misrepresentation and have a fair assessment of the PRPD during the period in which is being evaluated, it is important that the TCA's report does not make reference to incidents that have occurred outside of the evaluating period. Also, it would be unfair to draw attention to recent incidents of civil rights violation without any specificity of the allege incidents. The PRPD acknowledges the TCA's good faith intent in its recommendation to improve. For all these reasons, the PRPD respectfully urges the TCA or any other interested party, to present any information that could direct us

9

towards any evidence that reflects illegal, unfair or discriminatory actions, in order for the PRPD to initiate the appropriate investigative process.

### III. Conclusion

The Government of Puerto Rico and the PRPD submits this response with the purpose to clarify the TCA's reporting during this important capacity building period. As mentioned before by the United States Department of Justice, these reports describe the Government of Puerto Rico's efforts to lay a solid foundation of policies, training, infrastructure, technology, and staffing in order to successfully implement the extensive reforms required by the Agreement in all police areas in Puerto Rico. By addressing the Government of Puerto Rico's concerns, the TCA will provide a more complete and reliable assessment of the Government of Puerto Rico and PRPD's compliance and will assist the Court, the Parties, and the public in understanding the Government of Puerto Rico's use of this unique capacity-building period offered by the Agreement.

**WHEREFORE**, it is respectfully requested from this Honorable Court to take notice of the above stated.

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to all attorneys of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on February 13, 2017.

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

**WANDYMAR BURGOS VARGAS**
Acting Deputy Secretary in Charge of Litigation and

Acting Director of Federal Litigation Division
Department of Justice

**S/JOEL TORRES ORTIZ**
**Joel Torres Ortiz**
U.S.D.C. NO. 302311
Federal Litigation Division
Department of Justice

P.O. Box 9020192
San Juan, P.R., 00902-0192
Tel. (787) 721-2900, ext. 2647,2650,2624,2606
Fax (787) 723-9188
joeltorres@justicia.pr.gov