Estado Libre Asociado de Puerto Rico
**Comisión de Derechos Civiles**



May 22, 2017.

Apartado 192338
San Juan, PR 00919-2338
787.764.8686 | TTY: 787.765.9360
Fax: 787.250.1756
www.cdc.pr.gov

# FIFTH PRESENTATION OF THE PUERTO RICO CIVIL RIGHTS COMMISSION TO THE UNITED DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

## UNITED STATES OF AMERICA v. GOVERNMENT OF PUERTO RICO

### CASE NO. 12-2039 (GAG)

I Introduction

The Civil Rights Commission addresses the court's Order dated May 9th, 2017, which states that the Commission shall depose on recent changes that may impact the Police Reform Agreement, as well as the capacity building established in the Agreement in three main issues:

\*\*Puerto Rico Civil Rights Commission's position regarding the impact of Act 20-2017

\*\*Puerto Rico Civil Rights Commission's position regarding Attorney General Session's views about federal police reform consent decrees

\*\* Puerto Rico Civil Rights Commission's position regarding the capacity building stage

II Puerto Rico Civil Rights Commission's position regarding the impact of Act 20-2017

It is extremely worrisome if Law 20-2017 was not previously discussed with the U.S. Department of Justice, because it is clear that the law encompasses changes in several areas of the Police Reform Agreement that by Agreement 296 and 297 should be negotiated by the parties.

The title of Act 20-2017 states as its goals to improve savings and efficiency, as well as to comply with the requirements of the Reform Agreement and to

1

access federal funding. The accomplishment of said goals are uncertain, specifically that any savings will be achieved because the law creates a new hierarchy as well as new structures, such as a Secretary, an Auxiliary Secretary, an Executive Security Commission, the Center for Training and Development of Public Security and a Management of Security Information Office, among others, that will require new expenses.

Article 1.03 states the responsibilities of the Department of Public Security, are among others, to reorganize, modernize and reform the security instruments. The Police becomes a mere bureau of police under the direct supervision, that cannot be delegated, of the Public Security Secretary, through Article 2.01.

The authority to supervise and administer the Department, according to Article 1.04 will be delegated from the Governor to the Secretary. It is clear that the authority hierarchy, administration and supervision of the Department and of security rests on the Secretary, as well as under the Auxiliary Secretary of Administration, to whom duties may be assigned, Article 1.05.

Among the duties of the Secretary is the administration of the Police Bureau`s budget , the rules and procedures of the Department and its services, the establishment and implementation of  public policy, in conjunction with the Governor, of state and national security and criminal investigation, Article 1.05 (l), (n), (q),Article 1.20(Regulations).This is clearly in conflict with several of the Agreements such as 12, 22, 23, 24, 27, 32, 36, 37, 59, 60, 65, 81,88,109-116,which state that  procedures and public policy in regard to training, use of force, control of masses  and incident management, detentions and arrests ,equal protection and no discrimination, as well as others will be done by the Police.

All property that was formerly owned by the Police is now the property of the Department and the only property that cannot be used for other purposes than what it was determined by law or its original purpose are the ones acquired with federal funds, Article 1.08.This article jeopardizes the equipment recently acquired by the Police pursuant to the Reform.

Article 1.09 transfers all the authority, duties and power of the former agencies, including those of the Police to the Public Security Secretary.

Article 1.11 creates the Center for Training and Development of Public Security, under the supervision of the Secretary and centralizes all training, virtually abolishing the Police Academy, which has been the backbone of the Police Reform, Part IX Training of the Police Reform Agreement, 53, 90, 117-134. It is enlightening that the sole reference to the Reform in this article is a lukewarm sub article(c) which states that the Center will assist in complying with the Police Reform Agreement.

There are no assurances that the timetable established for the compliance with the Police Reform Agreement will be met. The Civil Rights Commission has repeatedly conveyed our concern that the capacity building will not be achieved by the four years' timetable. As a matter of fact in the last hearing the Police was already stating the need for more time. The restructuring of the training and the elimination of the Police Academy imposes further risks on the compliance with the schedule and impairs the progress of the Reform.

Article 1.13 creates the Executive Security Committee of Puerto Rico that among its duties will establish the guidelines for the evaluation and placement of new and existing personnel, assist on designing and implementing new regulations, training and evaluation of personnel.

Article 1.15 establishes the Security Information Management Office which will be in charge of the communication systems and manage the information of the Police, including but not limited to, the registry of firearms, the integrated criminal register RCI, Sistema DAVID.

Article 2.02 creates the Police Commissioner, who under the supervision and authority of the Public Security Secretary, will be in charge of the" daily operation" of the Police Bureau; not responsible for public policy or the budget, which is fundamental for compliance with the Police Reform. Part VI Equal Protection and No Discrimination, A. General Matters, Agreement 81 development of antidiscrimination procedures and policies, Part VIII Policy and Procedures, 109-116.

The Police Commissioner will be accountable for complying with the Police Reform, although the law strips the Commissioner of the authority to enact public policy and the budget to carry it on. With the Secretary's consent and in compliance with the Reform, the Police Commissioner will establish

regulations for promotions, Article 2.04. The Commissioner will also be responsible for monthly reports about reported crime and the rate of crime solving.

Article 9.03 states that previous heads of agencies will be the successor in rank of the Bureau.

Article 9.04 keeps in effect all previously established rules, regulations and procedures of the agencies, now renamed bureau, unless made void by the Secretary, amended or abolished.

III Puerto Rico Civil Rights Commission position regarding Attorney General Session's views about federal police reform consent decrees

The Commission will first make the disclaimer that we are not stating a position as an attorney for either party in this case, so we are not pretending to know all the internal legal issues that can arise in this matter. We also clarify that we are not taking in account several comments that are published in the media made by the Attorney General in regard to consent decrees, but only commenting an official Memorandum of March 31, 2017 in regard to "Supporting Federal, State, Local and Tribal Enforcement" by Attorney General Session.

This Memorandum states that the federal government is aware that the duty to provide public safety, protect civil rights and enforce the best practices in policing is a task that cannot be achieved alone. That this is foremost, the job of the state, local and tribal law enforcement.

The Memorandum pledges that the Department of Justice will promote a peace and law abiding society where the civil rights of every person will be protected and valued. Among the duties of the Department the document recognizes the importance of promoting public respect for their work, as well as the protection and respect of the civil rights of the public, accountability and the gathering and analysis of reliable statistics on crime.

All of these issues are included in the Police Reform Agreement, such as Part VI Equal Protection and No Discrimination practices and procedures about a fair and nondiscriminatory treatment to all, Part VIII Policies and Procedures to guarantee equal protection, Part X Supervision and Administration for a well-trained police force not only on the tools that they can use, but also how to prevent the abuse against the citizens it aims to

protect, as well as the training and duties of the supervisor, including antidiscrimination policies, detraction of conflict, investigation and risk evaluation among others. In regard to public respect for the police work, the Police Reform Agreement, Part XI Administrative Complaints, Internal Investigations and Discipline aims at providing the public with procedures to complain about police conduct and assurances against reprisals, Part XII Community Interaction and Public Information aims at accomplishing a solid and effective police interaction with the community and education about the Reform. Part XIII Information System and Technology will provide recollection, analysis and data about the Reform metrics.

Parts III Professionalization, Part IV Use of Force, Part V Search and Seizure are the sections of the Reform Agreement directed to implement the security tools and to regulate its uses that are goals included in the Attorney General`s Memorandum as public safety and protection, accountability and collaboration between local and federal law enforcement in investigations and public security.

As stated in the Memorandum it is the local law enforcement agency that is primarily responsible for the protection of public security and the civil rights.

IV Puerto Rico Civil Rights Commission position regarding the capacity building

The Commission has stated in all our previous presentations that the Police Reform stage of capacity building is woefully behind its four year goal. The Police has repeatedly retortorted that there is a four years period, but we are now very close to the end of it and it is apparent that they will not be able to comply.

To review what has been the Commission`s position in regard to the capacity building the principal areas are:

A) The need of training in regard to the rights of immigrants and the LBTQI community, all four previous presentations have documented this, specifically our Third Presentation on September 1, 2016, Part II a) and b).

B) Lack of retraining of the upper echelon of the police force and the restructure of the Drugs, Vice and Firearms Division, Third Presentation, September 1, 2016 Part II c) and Fourth Presentation, February 24, 2017.

C) The control of masses and the right to protest as part of the freedom of expression and association, Third Presentation, September 1,2016,Part II d) and Fourth Presentation ,February 24,2017,lack of supervision and the need to prioritize.

D) The right of the functionally challenged and mentally ill. Third Presentation, September 1, 2016, Part II h).

E) Lack of reliable statistics, Third Presentation, September 1, 2016, Part II e) and Fourth Presentation, February 24, 2017.

F) Need to improve and report investigations about domestic violence complaints against police officers, Fourth Presentation, February 24, 2017.

The Puerto Rico Civil Rights Commission has seen progress in the Police force since the Reform started, although we have warned about the slowness and lack of priorities, we are extremely preoccupied that Law 20-2017 will hinder this advance and make the implementation more difficult.

The recent statements of the Public Security Secretary on May 1st 2017 labeling those who have the independence ideology as: "a group that wants anarchy and disregard the law", are extremely worrisome in regard to his impartiality toward political ideologies. The Civil Rights Commission has a fifty year history of protecting the constitutional and human rights in Puerto Rico, especially in regard to the rights of the minority which are strongly protected in a democratic society, this is also the duty of the police force and of public security.

Recommendations:

A) Amendments of Law 20 – 2017 to clarify that the authority in regard to public policy, rules, regulations, budget control, training and other areas required by the Reform Agreement, remains in the Police Commissioner and the Police Bureau.

B) Review the present compliance plan and the priorities to accelerate the training and retraining of the force in accordance to the Reform Agreement.


Georgina Candal Segurola
President