**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **Civ. No. 12-2039 (GAG)** |
| **Plaintiff,** | |
| **v.** | |
| **GOVERNMENT OF PUERTO RICO, et al.,** | |
| **Defendants,** | |

## GOVERNMENT OF PUERTO RICO WRITTEN STATEMENTS

TO THE HONORABLE COURT:

**COMES NOW** the Commonwealth of Puerto Rico, through the undersigned counsel, and respectfully alleges and prays as follows:

### I.    INTRODUCTION

This Honorable Court issued an Amended Agenda for the Puerto Rico Police Reform Second Public Hearing of 2017, to be held at the U.S. District Court for the District of Puerto Rico in Ponce.  (*See* Docket 511; *see also* Docket 521).  As stated on the Amended Agenda, the matters to be discussed on the Second Public Hearing are the following:

1.  Act No. 20 of April 20, 2017

2.  U.S. Department of Justice's current position regarding modifications and/or amendments to the Agreement, if any

3.  Capacity building period compliance by the Puerto Rico Police thus far.

Since the issues to be discussed in this public hearing are matters of Public Policy, the representatives of the Government of Puerto Rico –Wanda Vázquez-Garced, as Attorney General; Alfonso Orona-Amilivia, as the Governor of Puerto Rico's Personal Representative; Michelle Hernández-Fraley, as Police Superintendent; and Héctor Pesquera, as Secretary of the Department of Public Safety–, hereby submit a Joint Written Statement.

## II.     Act No. 20-2017 and its impact on the Police Reform Agreement

### A.  General Remarks

Before discussing the impact of Act 20-2017 (Act 20) on the Police Reform Agreement it is important to stress that Governor Rosselló's Administration has a clear and unwavering agreement with the Reform Process that is taking place in the Puerto Rico Police. The palpable changes during the capacity building period have not only improved the force's operational capacities, but also has established clear and uniform methods and procedures with regards to interventions with civilians, thus creating an atmosphere of respect and protection of Civil Rights. Thus, this Administration continues to fully support and will continue to comply with the Police Reform Agreement.

Secondly, it is important to stress that Section 286 of Police Reform Agreement clearly states that "if the Commonwealth of Puerto Rico establishes or reorganizes a government agency or entity whose function includes overseeing, regulating, accrediting, investigating, training or reviewing the operations of PRPD, any aspect thereof, or its officers, the Commonwealth of Puerto Rico agrees to ensure that these functions and entities are consistent with the terms of this Agreement and shall incorporate, to the extent possible under the applicable law, the terms of this Agreement in the oversight, regulatory, accreditation, investigation, training or review functions of the government agency or entity as necessary to ensure the full implementation of

this Agreement." Hence, the Police Reform Agreement allows the Government of Puerto Rico to create any additional entity or government agency, as the Department of Public Safety, to oversee the operations of the PRPD, as long as this new entity complies with and incorporates the terms and conditions agreed upon between the parties.

Thirdly, it is imperative to stress that Act 53-1996, the current Puerto Rico Police Department Act, as amended, makes no mention at all of the Police Reform Agreement, even though the Puerto Rico Police Department Act was amended after the Agreement was signed. Despite this, and as it will be discussed in the following sections, the PRPD has been complying with the capacity building stage and continues to do so, without the need of making any mention of the reform process in its organic law. Act 20, not only stresses the importance of the Reform Process, but has, as will be discussed, specific sections guaranteeing full compliance with the Police Reform Agreement.

B.  Act 20

Act 20-2018, signed into law on April 10, 2017, creates the Department of Public Safety, which integrates all the public safety and emergency management agencies into one department. In its statement of motives, Act 20 establishes that one of the objectives of the Department of Public Safety is to create a coherent approach in public security that is in compliance with the Police Reform Agreement. Clearly, Act 20 states that the public policy of the Government of Puerto Rico is to comply with the provisions of the Agreement.  Furthermore, the statement of motives establishes that all training procedures that take place within the newly created Center for Training and Development of Public Safety have to comply with the Police Reform Agreement. As such, it is clear that with the passing of Act. No. 20, the Government of Puerto

Rico not only reiterates, but creates a legal framework to secure compliance with the police reform.

Additionally, Act 20 defines the scope of the reform process. Section 1.02 (g) of the Act defines the term Police Reform as the "Puerto Rico Police Reform Agreement signed between the Government of Puerto Rico, the Puerto Rico Police Department and the United States Department of Justice. The term Police Reform includes any future amendments or orders issued by the United States District Court for the District of Puerto Rico". Act 20 not only establishes the scope of the Police Reform Agreement, but also includes any future amendments to said agreement. None of these provisions where included in Act. 53-1996 nor the amendments approved after the signing of the Agreement.

The consolidation of covered agencies into the Department of Public Safety will not happen overnight. Section 1.13 of Act 20 establishes the Puerto Rico Security Executive Committee (Executive Committee), in charge of implementing the consolidation process of covered agencies. Committee members include the Secretary of the Department of Public Safety, the Attorney General, the Superintendent of the Puerto Rico Police and the Chief Legal Advisor to the Governor of Puerto Rico, among others.  Of the mentioned members, both the Secretary of the Department of Public Safety and the Chief Legal Advisor of the Governor participated in the drafting of the Police Reform Agreement signed in 2013. The Superintendent of the Puerto Rico Police has been part of the capacity building stage both as Director of the Program for the Professionalization of the Puerto Rico Police and currently as Superintendent. The Attorney General, in its official capacity is a signatory of the Police Reform Agreement, having a direct interest in its full compliance. Hence, four members of the Executive Committee not only fully understand, but also have a clear commitment with the Police Reform Process. Also, Section

9.02 of the act establishes that the consolidation of the Puerto Rico Police shall be done in compliance with the Police Reform Agreement and in coordination with the federal authorities that are part of and supervise said Agreement. Thus, the Executive Committee shall take no action that goes against the public policy established in Act 20, which is continued compliance with the Police Reform Process and the consolidation of the Puerto Rico Police shall be in coordination of the US Department of Justice, which is part and supervises the Agreement. The Government of Puerto Rico has been in communication with officers of the US Department of Justice and has invited the agency to be part of the consolidation proceedings in order to guarantee compliance.

Section 1.11 of Act 20 establishes that one of the objectives of the Center for Training and Development of Public Safety, in charge of consolidating all training procedures for the public safety and emergency management personnel that will be part of the Department. One of the functions of said Center is to guarantee compliance with the Police Reform, securing that all training of police officers will follow the standards of the Agreement.

Regarding the daily operation of the Puerto Rico Police, Chapter 2 of Act 20 creates the Puerto Rico Police Bureau, which will substitute the Puerto Rico Police Department. The newly created Bureau will be under supervision of the Police Commissioner[1], which will be in charge of its daily operations. It is important to note that the under Act No. 20, the Police Commissioner is given additional administrative powers in areas of transfers, ranks and disciplinary measures in order to comply with the Agreement[2].

Act 20 guarantees and secures compliance with the Police Reform Agreement. Not only does it subjects the consolidation of the Puerto Rico Police into the Department of Public Safety

---

[1] The Superintendent of the Puerto Rico Police Department will serve as the Police Commissioner once the consolidation takes place.
[2] Sections 2.08, 2.11, 2.20 of Act 20-2017

to the continued compliance with the Police Reform, but also creates the legal framework to continue the implementation of the Agreement once the consolidation of the PRPD takes place.

**III.**     **Capacity building period compliance by the Puerto Rico Police thus far**

   **A. Superintendent's assessment of the PRPD's current compliance with the capacity building period, and outlook moving forward.   This includes a discussion of updates on current achievements and challenges in the year ahead.**

The capacity building period started on June 6, 2014, with the hiring of COL (Retired, United States Army) Arnaldo Claudio as the Technical Compliance Advisor.  During the past three (3) years, the PRPD has been drafting policies required by the Agreement for the Sustainable Reform of the Puerto Rico Police Department (hereafter referred to as the "Agreement"), and as delineated in the Action Plans.  Likewise, policies have been drafted by the PRPD and submitted to USDOJ and the TCA on a rolling basis for review as per Requirement 229.

As all Parties are well aware, the exchanges of these drafts for several iterations of reviews have resulted in many unexpected challenges that have surfaced in the process of getting these policies approved. For the most part, these challenges have been overcome after in-depth and fruitful discussions.

As of May 15, 2017, the PRPD, in coordination with USDOJ and the TCA, has completed the development sixty (60) policies. These are policies that have been approved by the TCA, signed by the Superintendent, and published. At present, thirty-one (31) additional policies have been drafted that are in the review and comments process of paragraph 229 and 230 of the Agreement. We also report eight (8) policies that are yet still pending, according the Action Plans. Noteworthy, that as a result of the above mentioned development of policies specific to

the Agreement, the PRPD has had to review and update seventy-five (75) policies on other topics outside the Agreement, but with operational ramifications.

As of April 30, 2017, the PRPD has developed and carried out training for eleven (11) policies approved, signed, and distributed.  It is important to clarify that not all policies require training.  The percentages of training are as follows:

| Training Courses | PRPDM's Trained |
| --- | --- |
| General Order 601 and 605 Use of Force | 83% |
| General Order 602 Electronic Control Weapon | 87% |
| General Order 603 Baton | 91% |
| General Order 604 Pepper Spray | 90% |

| Training Courses | PRPDM's Trained |
| --- | --- |
| General Order 612 Searches and Seizures | 36% |
| General Order 615 Arrests and Citations | 84% |
| General Order 617 Code of Ethics | 87% |
| General Order 622 Sexual Offences | 34% |
| General Order 623 Police Pursuits | 64% |
| General Order 624 Transgender | 70% |
| General Order 627 Domestic Violence | 18% |

As of today, the Puerto Rico Police Academy is in the development process of ten (10) new courses for the training of our police officers in various subjects.

Other achievements in the training arena, include the contract to transfer face-to-face training to virtual training using the Internet.  The first course will be run as a pilot program, which should start in July, 2017.  This effort will reduce the hours that police officers spend on training because training will be self-paced. This effort will also reduce expenditures associated with personnel and official vehicle wear and tear to the training centers, as well as time spent at the training range.

In the area of technology, it is meritorious to review the progress and the base-line approach in the information systems and technology development to support the implementation of the Agreement. The information systems and technologies are the tools to collect and maintain all data and records necessary to document and report the administrative, operational and investigative police work related to the Agency and the Agreement. To highlight the ongoing activities in each of the areas addressed by this Agreement, it is commendable to report the following achievements:

1.  The updating of the Technology and Communications Infrastructure.

2.  Fielding of the Information System for Crime Incidents Data Collection (CAD).

3.  The digitalization and implementation of forms approved by the PRPD and implemented in the CAD.

4.  Access to the NCIC and RCI databases to the CAD Mobile System, through the implementation of Airwatch.

5.  Acquisition of computer equipment for CAD implementation.

6.  Implementation of the Assistance and Human Resources System (KRONOS).

7.  Development of the Early Intervention Information System (EIS).

8.  Development of the subsystem of Domestic Violence and Sexual Crimes.

9.  Implementation of the Sexual Crimes Hotline

10. Development and implementation of the Central Repository for Data Analysis and Crime Related Information (CIW).

11. Development of the Registration Subsystem for the Auxiliary Superintendence on Education and Training ("SAEA" for its acronym in Spanish).

12. Development of the Sub-system for the Report on Formal Community Partnerships.

13. Establishment of Technology Centers in Area Commands.

14. Information sub-system to offer virtual training or retraining.

15. Creation and development of the PRPD Virtual Library.

16. Implementation of the platform for emails and productivity tools.

Our biggest challenge in the years ahead will be the funding cuts in our general budget:

a.  Lack of funds for recruitment.

b.  Possible approval of Senate Bill 404 that could result in the retirement of at least 1,994 police officers within the next three (3) years.

c.  We will lose 258 transitory employees throughout the command because funds were never provided by OMB in FY16. However, Act 8-2017, known as the Unique Employer Act, might help us mitigate the risk.

**B. Steps PRPD is taking regarding Act 20-2017, known as the Puerto Rico Department of Public Safety Act (hereinafter referred to as "Act 20-2017") in order to continue to comply with the Police Reform Agreement.**

Concerning the steps that are being taken by the PRPD regarding Law 20-2017, and to continue complying with the Agreement, I would like to first highlight the following:

Act 20-2017, Article 2.04, states under paragraph (b) that the Police Commissioner is solely responsible to ensure compliance with the Agreement. This paragraph sets the stage to continue to move forward using the Action Plans.

Five amendments (enmiendas) to the original project were submitted and approved by both Senate and House, and later enacted into law. These amendments have paved the way to the continued compliance with the Agreement. The amendments gave the Police Commissioner the authority to do in-service transfers, regulate working hours based on operational needs, determine recruitment, evaluation, as well as promotion system, and own the administrative investigation process.

Act 8-2017, as amended, known as the Unique Employer Act (hereinafter referred to as "Act 8-2017") excluded the police officers from mobility ("empleador único"). However, the PRPD civilian component falls under Act 8-2017.

As a result of the approval of Act 20-2017, the PRPD has shifted efforts with the changes that had already been drafted to Act 53-1996. This law will be repealed and, therefore, its content must be captured as separate efforts under General Orders and Regulations. To assist in our effort, we have formed a Regulation Committee. The committee carried out an evaluation of the current legislation, identified the issues to be developed in general orders and regulations and has already begun drafting the same, in topics such as personnel evaluation of the ranking system and promotions, to give an example. This way we guarantee an orderly transition of public policy. Although the content exists, drafting new General Orders and Regulations will have to undergo the process of Requirement 229, requiring additional time. We have requested four additional months to the capacity-building period, which is until October 6, 2018.

This Honorable Court has ordered us to discuss today any amendments to the Agreement that the PRPD believes to be necessary. Regarding the review and implementation of policies, procedures and programs, both Parties, in conjunction with the TCA Core Team, have been discussing the necessity to amend paragraph 229 of the Agreement since July 2016. To summarize, this paragraph provides for the PRPD to submit a policy to DOJ and TCA for review and comments; DOJ and TCA to review and submit any comments; and for the PRPD to implement said policy within a period of forty-five (45) days.

On July 15, 2016, the Parties and the TCA held a meeting in which they unanimously concluded that the terms set out in the Agreement for the development and revision of policies have presented major challenges in complying the this task. This process is a neuralgic element in the Agency's reform process. In fact, it is estimated that each policy is taking an average of one hundred and twenty (120) days to be developed, and not forty-five (45) days as provided in paragraph 229 of the Agreement. Some have taken more than a year to be approved by the TCA, with numerous redlines in between. For this reason, the PRPD has submitted a joint motion draft in August, 2016, and several redlines later, we continue to carry out discussions on this subject between the Parties and TCA.

During last month's TCA monthly visit, DOJ stated that they could submit a more succinct version of our reviewed draft and, at the moment, we are waiting for DOJ to submit said document.

In closing, the biggest and most tangible evidence of the successful transformation of the Puerto Rico Police Department during these past three (3) years, is the performance of our police officers and leaders in the events of May 1st, 2017.  The police officers in this event, as well as other events in the Capitol building, roads/streets marches during manifestations, to include the

incident with the President of the Puerto Rico Senate, taxi drivers' strike, and multitudinous activities have shown that policies capturing best police practices accompanied with well-developed training and certified instructors, provide Puerto Rico with Constitutional policing.

Act 20-2017, under Article 9.02, Transition Disposition, (Disposiciones Transitorias), states as follows: "El proceso de consolidación del Negociado de la Policía estará sujeto al cumplimiento con lo establecido en el acuerdo entre el Departamento de Justicia de los Estados Unidos, el Gobierno de Puerto Rico y la Comisionada de la Policia (Agreement for Sustainable Reform of Puerto Rico Police Department).  La fusión dispuesta en esta Ley se realizará en coordinación con las autoridades federales que forman parte y/o supervisan el Acuerdo de Reforma de la Policía de Puerto Rico."

**WHEREFORE**, the Commonwealth of Puerto Rico hereby submits a Joint Written Statement in compliance with the Court's Order at dockets 511 and 521.

**IT IS HEREBY CERTIFIED** that on this same date the instant document has been filed with the Court's CM/ECF System, which will simultaneously serve notice on all counsels of record to their respective registered e-mail addresses.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 19th day of May, 2017.

> **WANDA VÁZQUEZ GARCED**
> Secretary of Justice
>
> **WANDYMAR BURGOS VARGAS**
> Acting Deputy in Charge of
> General Litigation
>
> **SUSANA PEÑAGARÍCANO BROWN**
> Acting Director of Federal Litigation
> and Bankruptcy

**S/JOEL TORRES ORTIZ**
**Joel Torres Ortiz**
U.S.D.C. NO. 302311
Federal Litigation Division
Department of Justice

P.O. Box 9020192
San Juan, P.R., 00902-0192
Tel. (787) 721-2900, ext. 2647,2650,2624,2606
Fax (787) 723-9188
joeltorres@justicia.pr.gov