# OFFICE OF THE TECHNICAL COMPLIANCE ADVISOR
## 268 AVE. MUÑOZ RIVERA, SUITE 1001
## SAN JUAN, PR 00918

**Col. (Ret.) Arnaldo Claudio's Statement Before the Court**

**Public Hearing (May 22, 2017)**

**Opening Statement**

Good afternoon your Honor,

Honorable Secretary of Justice of the Commonwealth of Puerto Rico, Wanda Vazquez, Honorable Secretary of the Department of Public Safety, Hector Pesquera, Honorable Superintendent of the Puerto Rico Police Department ("PRPD") Dr. Michelle Hernandez de Fraley, distinguished officials of the Puerto Rico Department of Justice and the United States Department of Justice, representatives of the American Civil Liberties Union, Dr. William Ramirez, others Government Representatives and members of the  public, ladies and gentlemen.

I am Colonel (Ret.) Arnaldo Claudio and am the Technical Compliance Advisor ("TCA") for the Agreement on the Sustainable Reform of the Puerto Rico Police

Department ("Agreement").  In accordance with Paragraph 271 of the Agreement The TCA is the person selected by the Parties to review, assess, and report on the Commonwealth of Puerto Rico's implementation of the Agreement, and whether this implementation is resulting in constitutional and effective policing, professional treatment of individuals, and increased community trust of the Puerto Rico Police Department.  My testimony will focus on the progress and the challenges facing the PRPD in this implementation to date.

I would like to start my presentation by quoting the words of Justice Felix Frankfurter, of the United States Supreme Court, which I find are quite proper for the occasion:

**"The history of liberty has largely been the history of the observance of procedural safeguards."**


 Prior to reporting on the implementation of the Agreement by the PRPD, I will discuss two important issues.  First, I must inform the Court that pursuant to instructions of this Honorable Court, as directed in Court Docket 509, the TCA is to conduct an investigation of the demonstrations and incidents that occurred at the Capitol building on April 18, 2017, and those that took place on May 1, 2017 (Worker's Day).  On May 11, 2017, I began the administrative portion of this

investigation.  Upon completion, I will submit a report to the Court and brief the Parties,  that is the Commonwealth of Puerto Rico and the United States Department of Justice.  The main focus of the investigation is PRPD's compliance with policies, procedures, protocols, General Orders and training on policing of mass demonstrations, its command and control, as well as communications and the use of force and arrest conducted during and after the demonstrations.

**Second,** but not least important, by mid-February, with my team of legal advisors I prepared a 22-page **confidential report,** which was shared with the Parties, on how Act 20-2017 creating the Department of Public Safety may impact the implementation of the Agreement.  At that point, Act 20-2017   was pending before the House of Representatives and subsequently the Senate.  Act 20-2017 was signed into law by the Governor. The former Superintendent of PRPD, Hector Pesquera now heads the Department.  In the referenced confidential document, prepared after a meticulous study of the law as drafted, we found challenges that will affect the Reform and made them known to the Parties.  Those challenges presented in the confidential document still need to be discussed because the Agreement is precisely incorporated into the judgment of this Honorable court which the parties are compelled to abide.

A concrete example of the immediate impact Act 20-2017 has on the Agreement is a recent request by the Commonwealth asking that an additional amount of time of

four months be added to the four-year capacity building period to ensure full and proper implementation of the Actions Plans.   Pursuant to Paragraph 239 of the Agreement, the Commonwealth submitted the request to the TCA for good cause on May 9, 2017.   The Commonwealth noted that the approval of Act 20-2017 "has shifted PRPD's efforts with the changes that had already been drafted to Act 53 of 1996.   With the creation of the Department of Public Safety, Act 53-1996 will be abolished; therefore, its content must be captured as separate efforts under General Orders and Regulations."   Under the Agreement, the TCA may extend any timeframe by up to four months. The TCA awaits a response from USDOJ before a final decision can be made and USDOJ has until May 26, 2017 to render its position.

The reason for this introduction is that through my presentation I will report on my assessment of the progress made to date on the implementation of the Agreement, and will provide views that may not be entirely amenable to the Parties. It should be noted that my testimony is not intended to point fingers at anyone or to criticize actions or past events that cannot be mended.  I dislike exercises in futility.  I have a mission that I have undertaken and need to accomplish to the best of my abilities. My recommendations concerning the confidential document were not made on the spur of the moment.  They were the work product of my team of subject matter experts and the legal advice of my constitutional attorneys, which upon the advise

and consent of the parties were appointed by the court.  These recommendations stemmed from many years of experience, both legal and practical, a dedicated search for the best options and best practices, and a devoted effort to comply with the Agreement reached by the Parties with the understanding that the prime beneficiaries of the Agreement are the people of Puerto Rico.  The citizens, all of whom are entitled to be treated with dignity and respect, are to be safe in their homes and the streets of this Island.  They must have their constitutional rights, including the right to free speech and political association, protected. They are entitled to dissent, particularly when their views differ or are opposite to the views of the majority.  This is the very nature and the fabric of life that sustains our nation.

I now introduce my assessments, comments, and recommendations to this Honorable Court of what has taken place in the time span from the past public hearing to the present one.  At the next hearing before this Court, I will comment on how the implementation of Act 20-2017 complies, affects or fails to comply, with the terms of the Agreement to date.  Even though I am only concerned with issues affecting police reform, at this time I would like to recommend to Mr. Pesquera the creation of an operational manual directed to all members of the Department of Public Safety where the actions and boundaries of each Bureau, in particular when interacting with the PRPD, are clearly established for inter-departmental integration when engaging

in joint efforts in the delivery of public services.  I also suggest this manual specifies the chain of command.

I turn my attention to the implementation of the Agreement and related Action Plans for the eleven (11) compliance areas.

 **Paragraph 250 of the Agreement** provides that"[d]uring the first four years from the Appointment Date, the TCA shall file with the Court, every six months, written, public reports." These reports shall include:

> a) **a description of the work conducted by the TCA**;
> b) **a listing of each detailed step in the Action Plans** and its timeframe indicating whether the timeframe has been met and whether the Commonwealth of Puerto Rico is making satisfactory progress toward implementation of the Agreement by rating PRPD in full, partial, or noncompliance with steps in the Action Plan;
> c) **the methodology and specific findings** for each review conducted, where appropriate, and redacted as necessary for privacy concerns. An unredacted version shall be filed under seal with the Court and provided to the Parties. The underlying data for each audit or review shall not be publicly available, but shall be retained by the TCA and provided to either or both Parties upon request;
> d) for any detailed steps that were reviewed and found not to have been fully implemented in practice, the **TCA's recommendations** regarding necessary steps to achieve compliance; and
> e) **a projection of the work to be completed** during the upcoming reporting period and any anticipated challenges or concerns related to implementation of the Agreement."

On December 23, 2016, the TCA submitted to the Court the 5th semi-annual report. This report, as well as the other previous reports, assesses and informs on the progress made toward the implementation of the Agreement by the Puerto Rico Police Department ("PRPD"), and summarizes the work conducted by the TCA for the past six-months. The next Report will cover the period from December 9 through June 9, 2017. It should be noted, for those interested, that all reports can be found in the Puerto Rico Police web site; policia.pr.gov/ under the title of "Reform."

Prior to itemizing the Reform's efforts, accomplishments, and challenges to this date, the TCA acknowledges the historical precedent PRPD reached by having the first female Superintendent of the PRPD- Dr. Michelle M. Hernandez de Fraley. However, no stranger to PRPD, Dr. Fraley previously was the Director PRPD Police Academy where she saw and interacted with the PRPD from its raw recruits to its accomplished Lt. Colonels. She also oversaw the first-ever Field Training Officer (FTO) program for PRPD. The FTO program trained and evaluated new officers as they engaged with the community and functioned in the practical aspects of policing. Dr. Fraley helped to usher in the new reform through an academic and practical perspective. Dr. Fraley assumed her new responsibility to lead PRPD in January 2017, and the TCA and his team look forward to the continued meaningful professional relationship with her and the PRPD Reform Office. The Reform Office

- in particular, the legal team - has accomplished outstanding work crafting new policies, Action Plans, and General Orders and all sorts of legal documents needed to further the Reform.

The TCA already has noticed an increased commitment by the Superintendent to address some of the thorny issues that previously plagued the PRPD and seemed to have lingered under the previous administration. Specifically, she has tackled illegitimate promotions, unexplained personnel transfers, and failed officer polygraph examinations. In addition to immediately rectifying these issues, she has also directed that policies are developed that ensure that these deficiencies do not repeat itself.

To ensure a measured and synchronized transition into this administration, the United States District Court, mindful that 2016 was an election year, issued a "Transition Order" to prevent the transfer of critical personnel that would have jeopardized the Reform process. The Court provided directives to enable the PRPD to continue in the process by maintaining key personnel in the Reform Office and the Police Academy unless there was just cause for a transfer. Additionally, PRPD was to retain current professional services contracts and to ensure there was sufficient funding to assure the continuity of the Reform process. We submit that

this transition was accomplished in a responsible manner. Furthermore, we are particularly pleased to see that Col. Clementina Vega is still heading the Reform Office. Col. Vega has been instrumental these past years to guarantee the continuity of the Reform process.

During the last reporting period, the TCA reported the excellent progress PRPD made in the drafting of 48 new policies.  This great work has continued during this period with the drafting and revising of over 40 more policies and the completion of all eleven (11) Action Plans, a critical milestone within the capacity-building period of the Agreement.

The PRPD also made important progress in training.  The Police Academy continues to develop a very polished training curricula based on a training development model that ensures a seamless transition from policy to training and eventually to implementation. The TCA has also documented advances in the number of officers trained on impact weapons, use of force, ethics, administrative complaints, searches and seizures, and equal protection pursuant to the requirements of Paragraph 237.

Some of the achievements the TCA Office noted because real improvements were achieved are:

1. The K-9 and Mounted Police Units total reorganization with:

   a) New and improved Working Dog/Mounted Police Policy

   b) Creation of a new training and certification program focused on narcotics,   weapons and bomb detection and handler's certification.

   c) Upgraded facility for the safeguard and training of their K-9 units and horses.

2. The various specialized units; SWAT, DOT and Mounted police reorganization and training related to Civil and Human Rights.

3.  Polygraph Examiner's Unit testing of the Drug and Narcotics Division. As part of its Reorganization effort which produced the transfer and administrative investigation of more than 80 personnel for failure to pass test. The TCA has past reported on PRPD's use and failure to act on questionable polygraph results of certain members of the PRPD's Drugs, Narcotics, Vice, and Illegal Firearms Bureau. Police departments typically use polygraph examinations to verify information on application forms or to confirm or refute information the police discovered during a background investigation. For journey officers in specialty assignments, such examinations may ensure that officers have not compromised their position or otherwise engaged in any serious undetected criminal activity. For officers investigating narcotics, firearms, or other vices, polygraph examination can point to whether officers engaged in the use or sale of illegal narcotics or

weapons.  Though failing such a polygraph examination containing pinpointed questions relating to narcotics and weapons may not sustain disciplinary action, it may initiate an internal affairs investigation or transfer the officer pending its outcome. In the past, (former administration) the PRPD had not provided the TCA with any justifiable explanation on why certain members of its Drugs, Narcotics, Vice, and Illegal Firearms Bureau have remained in the Bureau or at a minimum have not been investigated. The communities, and the officers deserve to have this specter of suspicion removed. Though there are a myriad of laws and regulations to ensure due process to the officers, to which the TCA agrees, having officers remain in a unit investigating violations dealing with drugs and guns, and having officers display deception on an exam directed toward their illegal use or possession, is akin to "putting the fox in the hen house." The TCA expects the PRPD to address and rectify this situation immediately and has informed the Superintendent this will receive his direct attention and the TCA will comment on the Superintendent's progress in future reports.  The TCA acknowledges the effort of Colonel Fraley who took ownership of the issue and transferred all personnel previously which failed the polygraph examinations and will also follow-up with internal investigations where appropriate. This is the type of administrative action expected of leadership at the highest level to have a meaningful impact on reform.

4.  The completion of a General Order for the much-contested issue of Transfers and Promotions for the benefit of the Members of the Police of Puerto Rico (MPPR).

5.  A General Order was written to address the deplorable conditions of the Evidence Rooms with a vision toward prosecution of cases with a methodology designed to preserve the evidence and account for every step in the chain of custody.

6.  Community Interaction Councils (General Order 801) is a major achievement for improving community relations and interactions with the PRPD.

7.  The Reform has brought about the Public Hearings that this Honorable Court presides on to have, not only the Police participate and inform improvements but also to provide a forum for the people of Puerto Rico to voice their complaints and provide their own ideas for improvement. The doubts are dispelled.  The Reform is here for the benefit of everyone.

8.  The PRPD internal investigation concerning promotions and their continued effort to promote conferences regarding Human trafficking and exploitation.

9.  We also what to commend PRPD for looking into the challenges of the Traffic Bureau by requesting Technical Assistance to the TCA and

jointly working together in examining road and pedestrian safety, traffic enforcement and investigations, highway patrol, fleet management, and other areas of general traffic administration. The TCA will prepare a report of its findings and recommendations to the Superintendent.

10. Finally, we commend PRPD for supporting the efforts related to the Survey conducted under Paragraph 241. They help the TCA office interact with community leaders, helped identified areas of concerns and were instrumental in supporting the TCA staff coordination and movement to the different areas of operations. In keeping with the responsibility of the TCA consistent with Paragraph 241 the TCA completed its second survey of the community which will generate a better understanding of the police through its community survey, which was completed this period and included in-depth discussions with diverse community groups. These groups included Blacks, LGBT, Dominican, Homeless, and Residents of Loiza among others. The TCA appreciates that the community leaders have assumed an active role in supporting the survey by providing input on the questions, seeking greater inclusion by identifying affected groups, and also working with the Puerto Rico and the United States Departments of Justice in establishing a workable format in ensuring the success of the survey. The survey's findings will be presented to the Parties, and community and published in a special report to the Court, sometime in late June or early July. The TCA always welcomes community advocacy groups into his ever-expanding umbrella, and all that is needed for inclusion is communication with the PRPD and the TCA. These focus groups were

again under the direction of renowned sociologist Dr. Richard Blanco Peck where he and his team provided guided discussions to gauge community sentiments and experience with PRPD. The findings of the focus group will assist PRPD in determining why the community retains certain beliefs, how change can come about, and which policies and community strategies need reassessment and revision.

### *Challenges:*

Notwithstanding the progress made in the areas of planning, policy development, and training, there are several other key areas of the Agreement where less than adequate compliance caused unnecessary drawbacks towards implementation. Most of these areas are residuals from the past administration.

**Challenge #1 - Promotions:** This challenge was identified by the TCA in prior semi-annual reports. The TCA recommended that the PRPD should not make any additional promotions until they had completed the staffing study pursuant to Paragraph 13 of the Agreement and ensured that personnel decisions were made on both, operational needs and the establishment of a rigorous system of merit-based promotions. The TCA argued against the PRPD promoting personnel without first understanding the strategic demands of the organization and having established a tested and reliable merit-based system of promotions. As it is documented in our

last report, the round of promotions made by the former Superintendent was plagued with deficiencies, violated the terms of the Agreement, and in the TCA's opinion, caused irreversible damage toward the implementation of a career plan for supervisors by giving an unfair advantage to individuals who lacked the qualifications to be promoted. After reviewing the files used to promote candidates, the TCA presented his findings on the systemic and widespread problems to the PRPD. The TCA recommended, and the Commonwealth agreed to make important legislative and policy changes. These changes are underway. However, it is indisputable in the aftermath, that the repercussions forewarned by the TCA have already taken place.

The Professionalization focus area of the Agreement has three key components, and they are all interrelated. These components are: **(1)** the development of a staffing plan (Paragraph 13), **(2)** the adoption of merit-based promotions (Paragraphs 14 through 20), and **(3)** the implementation of a developmental career path (Paragraph 21). The PRPD, like any other organization, is affected when the right people are not placed to work in the job they are most qualified to undertake. Proficient members of the PRPD are also unjustly affected when they are deprived of a promotion to a level where they can provide maximum productivity and, as a direct consequence, of receiving just compensation for their services. Lack of appropriate

recognition is a terrible mistake, and a demoralizing component in any organization, and directly affects the organization when its works cannot be compensated for doing a good job.

**Challenge # 2** - Paragraph 13:  Paragraph 13 requires the PRPD to conduct a staffing allocation and resource study to assess human resource needs of the PRPD.  This study is the cornerstone of the professionalization reform and the basis for a staffing and resource allocation plan rooted in community-oriented policing principles.  This requirement is part of the Action Plan on Professionalization. The initial deadline to develop this study was June 2016; to date, the PRPD has not complied with this deadline, and it is unlikely to be met within the first semester of 2017.  The sole responsibility for this lack of progress lies in PRPD's past leadership.  However, we acknowledge that on May 16, 2017, the TCA attended the first entry brief by the Company V2A ( Vision to Action) who has been contracted to complete this study. The timeline has been set to start immediately and to produce results within in a year. Again, I caution that before any organizational structure is contemplated within PRPD, it should be put on hold until the study is completed.

It is the assessment and the recommendation of the TCA that the PRPD's top priority in the next six to twelve months should be to totally focus on this project so it can

turn into an instrument of measurement to organize itself.  The goal is to conduct a significant and important reorganization of its structure to better serve Puerto Rico and its citizens. The TCA will continue to provide support to the work of the PRPD in this area. Until the staffing study is completed PRPD will continue to be ill-informed on the correct supervisor-to-officer ratio and consequently for PRPD to continue to make promotions throughout all ranks is only based on historical precedent or guesswork of operational needs. Similarly, promotions without a merit-based framework and a carefully structured career path will always raise questions of the qualifications of those promoted. The TCA expects PRPD and the Commonwealth to initiate legislative and policy changes, which they have already agreed in principle and with the change in the PRPD leadership, the TCA expects concrete changes in practice. The staffing study touches on all phases of police administration: command, control, promotion, communication, and training to identify a few. Proper staffing is the thread that is interrelated throughout police organizations and as such is critical to its success.

**Challenge # 3 - Drugs, Vice, and Illegal Firearms Bureau** - The TCA continues to document serious problems with the structure and operation of the Drugs, Vice, and Illegal Firearms Bureau.  During the preparation of the new General Order for

the Bureau, there was a lack of openness and transparency by PRPD's leadership in rejecting the cooperation of the TCA and his technical assistance. During the current reporting period, the public has continued to read news reports about incidents of alleged corruption and civil rights violations by members of the Bureau. These incidents, to say the least, reflect a pattern of conduct of an organization still in disarray and lacking leadership and direction. Once again, the TCA strongly recommends a full operational reorganization be implemented at once. The TCA has reported problems with this Bureau almost since the beginning of his tenure and has included recommendations for improvement and reform in previous semi-annual reports. We encourage the Superintendent to take this task of reorganization head on and note that she has already taken some positive steps in transferring personnel followed by an administrative internal investigation.

**Challenge # 4** – **Funding of the Police Academy** - Again, the TCA is compelled to comment on the PRPD's failure to devote significant resources to the restoration of the infrastructure at the Police Academy. If their excuse is that the financial commitment needed is beyond their control, then the financial bureaucracy of the Commonwealth should step in and ensure the PRPD is sufficiently funded to meet this challenge. Until the TCA observes some meaningful effort to correct the Police Academy's situation, the PRPD will remain outdated, which in and of itself bears

additional costs. If there is any logical and recommended use of funds is here at the Academy which provides the foundation and the future of PRPD.

## Challenge # 5 Domestic Violence and Mental Health Services -

In the Fourth Semi-Annual Report, the TCA noted that the PRPD was experiencing an increase in incidents of police-perpetrated violence, either in cases of domestic abuse or "blue-on-blue" violence.  The TCA again unhappily reports that very little if anything has been done to correct this situation. Specifically, the TCA past reported that there were insufficient mental health professionals to assist officers----that has not changed. There are the same number of professionals. The TCA also past reported on the lack of a comprehensive General Order to provide guidance and resolution to this problem. This is a continual problem of enormous consequences to officers and their families, and the TCA would like to favorable report a change by the next Public Hearing.

An example of the lack of support the police receive is that every psychologist has a service contract of 100 hours per month. Out of these 100 hours, they need to allocate time to document their interaction with the officers.  The need to record

these interactions and prepare paperwork means that they have fewer than 100 hours of direct service.  They are also supposed to perform functions of psychological evaluation of all staff, but presently they are only conducting these assessments for special divisions (e.g. drugs and narcotics). Consequently, there are too few professional health professionals contracted to devote too few hours to helping PRPD. The PRPD has a responsibility under Paragraphs 201-204 to provide officers with needed employee assistance and interventions to enable them to perform their responsibilities free of job-related stressors.

**Challenge # 6 – Information Technology** - The TCA is fully cognizant that Puerto Rico faces unprecedented fiscal problems that affect police reform efforts, particularly relating to the Agreement requirements for Information Technology. The TCA continues to encourage the PRPD to search for new funding and grant opportunities.  This, among many others, is the main reason why the decision of allocating budget funds to promote members of the PRPD without conducting a staffing study determining the real current needs of the agency was fundamentally wrong.  The irrefutable fact is that PRPD must make hard decisions about the implementation of the reforms by setting priorities consistent with, not outside of, the Agreement.  Information Technology is an issue where compliance should not be postponed.  The lives and safety of citizens and policemen depend on having a

system capable of producing data, information, and communication in the least amount of time.

During this reporting period, the TCA and members of his team conducted various site visits and held meetings with members of the PRPD's information System team.  The primary objective of these meetings and site visits is to coordinate closure and finalization of the General Order for Information Systems and Technology ("IT"), the IT Action Plan, and to monitor the overall progress being made in IT.  Other topics reviewed in depth during these visits included;

1.  The Office of Technology Reorganization proposal

2.  The highly significant context of the Office of Technology's and CIO's relationships with leadership and customers for the effective implementation of IT Governance and Oversight

3.  Conceptual overarching assessment and monitoring methodology which must include the definitive alignment of guidance (leading to actions required) such as the decree, policies, General Orders, Action Plans, and tasks.

The TCA proposed a broad array of topics for review such as contract review, Zones of Excellence visits, and review of the CAD Lab at the Academy.  However, the PRPD narrowly scoped their focus for discussion limiting the ability of the TCA's team to conduct a systematic and systemic analysis. While the Reform Office has provided extensive support to the Chief Information Officer ("CIO") in this area, moving forward will require continuing the explicit examination of topics relevant to the Decree during subsequent on-site visits.  This can be accomplished with the availability of the translated IT Action Plan and publishing of the IT Action Plan "spreadsheet," which as of the end of this reporting period should be near completion. This spreadsheet orders aligns and reconciles the specific actions required of the PRPD-CIO and IT Action Plan in direct support of tasks required of the other ten (10) Plans necessary for compliance.

The assessment of the TCA is that progress continues to be made by the Office of Technology and Reform regarding transformation and capacity building in IT.  However, it is becoming more noticeable that clear, undeniable support from the Superintendent is a must.

**Closing Remarks**

The work of the TCA and the Core Team, along with the Constitutional Attorneys, is an on-going effort to improve the functions, policies, capacity, management, instruction and image of the PRPD in every conceivable way in accordance with the Agreement.  This is not the _cliché,_ "We are here from Washington to help."  Our work is sometimes misunderstood.  We are here to provide an honest service and have enlisted the services of very able and experts that every day goes all out to attain excellence in their work.  In our quest to bring about improvements, we often face the attitudes of those resistant to change, most of the time for the sake of presenting an opposition or because of ill-intended misinformation.  The Reform is not here to take anything away from the PRPD.  Quite the contrary, the Reform is a full-fledged effort to have the best police department our endeavor can bring about.  Our doors remain open to everyone for whatever is necessary for us to do within the mandate of the Agreement and our resources.

The TCA thanks, this Honorable Court for its support and the opportunity to provide this information to the Parties and the general public.  Most importantly, this hearing also serves the purpose of clarifying the nature of our work, which is strictly to enable the PRPD to comply with the terms of the Agreement.  Our mission needs to

be understood by everyone. We are not here to override anyone's authority but are fully entitled to observe, make recommendations, and inform the Court on compliance with the Agreement and the Action Plans during the capacity-building period. The Court has the full and indisputable authority to take the necessary measures to ensure compliance.

We are truly here to help.

_____

s/ Col. (Ret.) Arnaldo Claudio

Technical Compliance Advisor