UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff;<br><br>　v.<br><br>COMMONWEALTH OF PUERTO RICO, ET AL.,<br><br>　　　　　　Defendants. | No. 12-cv-2039 (GAG/PG) |

**UNITED STATES' MEMORANDUM IN RESPONSE TO DEFENDANTS' MOTION IN COMPLIANCE WITH ORDER AT DOCKET NO. 629**

COMES NOW, Plaintiff, the United States of America, and respectfully submits its Memorandum in Response to Defendants' Motion in Compliance with Order at Docket No. 629 (ECF No. 666) concerning the consolidation of the Puerto Rico Police Bureau (PRPB) into the new Department of Public Safety (DPS) and its impact on Defendants' ongoing obligations under the Agreement for the Sustainable Reform of the Puerto Rico Police Department (Agreement).  ECF No. 60.  Defendants' Memorandum addresses each of the issues identified by the Court, but it does not provide the level of detail necessary to assess how Defendants intend to ensure that the structural changes resulting from the implementation of Law 20 of 2017 (Law 20), P.R. LAWS ANN. tit. 25, § 3501 *et seq.* (2017), will enhance Defendants' compliance with the Agreement.  The United States recommends that the Court set a date for the Commonwealth to provide further information, and that the date be set after the next scheduled compliance tour by the Technical Compliance Advisor (TCA) to give the United States and the TCA the opportunity to assist the Commonwealth in resolving the remaining issues and furnishing additional information to the Court.

## I.     Background

On April 10, 2017, Puerto Rico enacted Law 20 creating DPS, a new cabinet-level department, responsible for, among other things, protecting public safety, responding to emergencies, and protecting civil rights. *Id.* § 3503. Law 20 consolidates the Puerto Rico Police Department, now PRPB, and six other government agencies into DPS. *Id.* § 3506. In recognition of the Agreement and the comprehensive reforms underway at PRPB, Law 20 subjects the consolidation process to the requirements of the Agreement and requires that Commonwealth officials coordinate PRPB's consolidation with the United States. *Id.* § 3711. PRPB's fusion with DPS became effective on October 10, 2017. Defs'. Mot. in Compliance at 1, ECF No. 666.

Law 20 vests supreme authority over DPS on the Governor of Puerto Rico and confers the authority to administer and supervise DPS and each of the seven consolidated bureaus, including PRPB, on the DPS Secretary. tit. 25, § 3504. The PRPB Commissioner is responsible for the daily operations of PRPB, including ensuring compliance with the Agreement. *Id.* §§ 3532, 3534. As an instrumentality and agent of Defendant Commonwealth of Puerto Rico, DPS and its Secretary are also subject to the requirements of the Agreement. *See* Order, Aug. 2, 2017, ECF No. 586; Agreement ¶ 286, ECF No. 60 ("This Agreement is binding on all Parties hereto, by and through their officials, agents, employees, and successors.")

Before Law 20 took effect, the TCA, who is responsible for assessing and reporting on Defendants' compliance with the Agreement, expressed concern over "power struggles" in the administration of PRPB. Sixth Semi-Annual Rep. 5, Aug. 21, 2017, ECF No. 609. The TCA observed that Law 20 posed challenges to the Commissioner's decision-making authority and questioned whether the Commissioner, in fact, retained responsibility for the daily operations of

PRPB, as set forth under Law 20. *Id*. at 4-5. The TCA has continued to express concerns regarding the Commissioner's authority to manage key processes covered by the Agreement, such as promotions, transfers, and administrative investigations. Other compliance controversies have developed concerning alleged noncompliance by DPS and its officials in the implementation of policies and regulations approved as part of the Agreement. *See e.g.,* Order Den. Mot. for Recons., Nov. 30, 2017, ECF No. 651.

On October 23, 2017, the Court ordered Defendants to submit a memorandum discussing ten issues related to the implementation of Law 20. Order at 2, ECF No. 629. Several of the issues addressed specific procedural requirements of Law 20, such as the completion of consolidation assessments and other certifications. *Id.* at 3. The Court's other inquiries focused on more substantive issues related to maintaining and achieving compliance with the Agreement. As the backdrop for its inquiries, the Court noted the anticipated reorganization of PRPB under Law 20, the progress achieved by experienced Commonwealth personnel trained in the requirements of the Agreement, and the possibility of needless delay and economic disruption in the movement or replacement of these personnel. *Id.* at 1-2. The Court also noted the passage of Hurricanes Irma and Maria, which caused widespread devastation on the Island. The Court ordered the United States to respond to Defendants' memorandum by January 8, 2018. *Id.* at 3.

On December 8, 2017, Defendants filed a Motion in Compliance with Order at Docket No. 629 addressing the Court's inquiries related to Law 20. ECF No. 666. The Court subsequently ordered that the United States submit its memorandum in response to Defendants' Memorandum by December 19, 2017. Order, Dec. 9, 2017, ECF No. 670.

## II. <u>Discussion</u>

Puerto Rico is recovering from two devastating hurricanes and continues to face unprecedented fiscal challenges while its public safety agencies undergo a massive reorganization. Understandably, these circumstances may create profound uncertainties among officers and civilians, and they could jeopardize the significant gains that PRPB has achieved over the last three years. The inquiries posed by the Court gave Defendants an opportunity to provide greater clarity to their reform efforts and assure that the consolidation process is advancing reforms as required by the Agreement and Law 20. However, Defendants' Memorandum leaves many questions unanswered concerning the steps Defendants are taking to implement the Agreement within PRPB's new organizational structure.

Law 20 makes the Commissioner responsible for ensuring that Defendants comply with the Agreement and confers authority to regulate transfers, personnel assignments, recruitment, performance evaluations, promotions, and discipline among sworn personnel. tit. 25, §§ 3534, 3538, 3541, 3550. At the same time, Law 20 diminishes the Commissioner's control and authority over other critical functions that are necessary to effectuate reform, such as administering budgets, hiring personnel, and managing equipment. Direct authority over these functions is conferred on the DPS Secretary. *Id.* §§ 3505, 3510. In addition, Law 20 creates new components that are under direct supervision of DPS, and not PRPB, that relate to specific requirements of the Agreement.

The United States' identifies specific questions that remain unanswered and issues that are unresolved in the context of the inquiries posed by the Court in its October 23 Order. Specifically, we address Issues Five through Nine of the October 23 Order, which raise more substantive issues concerning the implementation of the Agreement.

**A. Issue Five: A statement discussing how the process of consolidating the Bureau of Police will continue to be subject to compliance with the provisions of the Agreement.**

Defendants cite Article 9.02 of Law 20 to affirm only that the consolidation process is subject to compliance. *Id.* § 3711. The response fails to explain how compliance will be achieved. For instance, the response does not address the following pertinent questions:

- Policy Development: Currently, the Policies and Procedures Division of the PRPB Reform Offices drafts policies and procedures required by the Agreement. Law 20 continues to authorize the Commissioner to determine the duties, responsibilities, and conduct of PRPB personnel through regulations that are approved by the DPS Secretary. *Id.* at § 3534. Does DPS contemplate issuing policies, procedures, or other directives related to the Agreement that do not originate in the PRPB Reform Office? Will DPS have its own centralized policy development unit?

- Personnel Transfers: Law 20 provides that the Commissioner is authorized to consider and order transfers of PRPB personnel. *Id.* at § 3538. However, the TCA has reported transfers that allegedly originated from DPS. What steps will DPS take to ensure that transfers and other personnel decisions are made in accordance with the Agreement and related orders issued by the Court? Does the Commissioner maintain discretion over the placement and assignment of personnel as part of her authority over daily operations at PRPB?

- Human Resources: Law 20 creates a new Office of Administrative Services at DPS that oversees human resources. What responsibilities does this Office have in ensuring Defendants' compliance with the Agreement's requirements related to promotions, performance evaluations, and recruitment?

- Officer Assistance and Support:  Law 20 creates a new Medical Evaluation Board at DPS that is responsible for conducting evaluations of candidates to officer positions and offering counseling to officers who experience traumatic events.  *Id.* § 3512.  What responsibilities does this Board have in ensuring Defendants' compliance with the Agreement's requirements related to hiring, selection, and officer assistance?

- Technology and Information Systems:  Currently, PRPB's Technology Division coordinates PRPB's compliance and implementation activities related to the Agreement.  Law 20 creates a new Office of Information Management at DPS that is responsible for, among other things, establishing communication systems, providing access to information between DPS bureaus, and serving as a liaison with federal and other agencies.  *Id.* at §3515.  What responsibilities does this Office have in ensuring Defendants' compliance with the Agreement's requirements related to information systems and technology?  Will PRPB's Technology Division be eliminated or consolidated into the new Office at DPS?

- Administrative Investigations:  Currently, the Auxiliary Superintendency for Professional Responsibility (SARP) at PRPB is responsible for conducting administrative investigations of PRPB personnel.  What role or authority will DPS have to conduct or review these types of investigations?  What steps will DPS take to ensure that criminal and administrative investigations are kept appropriately separate?  Will SARP or DPS administer the Early Intervention System required by the Agreement?

- Discipline:  Law 20 provides the Commissioner with the authority to establish regulations on disciplinary action and non-punitive corrective action, as well as to set

sanctions for violations. *Id.* § 3550. What role will DPS have in issuing discipline or non-punitive corrective action in accordance with the Agreement?

### B. Issue Six: Whether the Reform Unit will continue to operate as the unit responsible for the implementation of the reform process.

Defendants state that the Reform Office will continue to direct all implementation efforts related to the Agreement. Will the Reform Office remain at PRPB or will it be reassigned or transferred to DPS, given DPS' oversight responsibilities under Law 20? Will DPS conduct compliance reviews, inspections, or program evaluations related to the Agreement?

### C. Issue Seven: Whether the Police Academy will continue to operate in the training of new cadets and the retraining of police officers or whether a different entity will oversee the instructional process.

Defendants state that there are no plans to change the Police Academy in the foreseeable Future and that notice will be provided to the United States and the TCA if those plans change. Defendants' Memorandum makes no reference to the new Center for Public Safety Training and Development at DPS, which is responsible for supporting compliance with the Agreement. *Id.* § 3511. How will the Center support compliance and will it assume any current responsibilities of the Police Academy? Will the Police Academy be rehabilitated following the recent hurricanes to accommodate future cadet classes and other in-service training? Will these improvements be completed by January 15, 2018, when Defendants have agreed to resume training programs required by the Agreement?

### D. Issue Eight: How the approved Action Plans shall continue to be executed? Any information regarding the possible delay in the execution of the Action Plans and intended remedial action shall also be brought to the attention of the Court.

Defendants indicate that they have made several requests for extensions of time to implement their Action Plans in the wake of recent hurricanes. PRPB's Actions Plans were developed prior to the enactment of Law 20 and they do not reflect the new organizational

7

structure of DPS.  For example, the Action Plans do not reference the Center for Public Safety Training and Development or the Office of Information Management at DPS.  Because the Memorandum is silent on any issue beyond the impact of recent hurricanes, it is unknown whether Defendants made any effort to review the Action Plans in light of its consolidation into DPS to determine whether any modifications are necessary.

### E.  Issue Nine:  Budget and resources

In their Memorandum, Defendants discuss the DPS Secretary's authority to manage and supervise the budgets of DPS and each of its bureaus.  They also indicate that DPS will not operate through a consolidated budget until FY 2018-19, and that resources assigned to the reform process will not be affected.  However, the Memorandum provides no details on the funds allocated for reform.  How will DPS ensure that funding allocated specifically for reform will be used for that purpose?  Will PRPB continue to manage its use of Equitable Sharing Program funds from federal agencies?  Who is responsible for seeking federal and private grants or other assistance to support the reform effort?

### III.  Conclusion

For the foregoing reasons, The Court should order Defendants to supplement their Memorandum to discuss the concrete steps that Defendants, including DPS and PRPB, will take to prevent undue delay or other interruption in the implementation process in furtherance of the Agreement.  The United States further requests that the date for this supplement be set after the next scheduled compliance tour by the TCA to give the United States and the TCA the opportunity to assist the Commonwealth in resolving the remaining issues and furnishing additional information to the Court.

Respectfully submitted, this 19th day of December, 2017,

        JOHN M. GORE
        Acting Assistant Attorney General

        STEVEN H. ROSENBAUM
        Chief

        <u>S/ Luis E. Saucedo</u>
        TIMOTHY MYGATT
        Deputy Chief
        LUIS E. SAUCEDO
        Counselor to the Chief
        BRIAN BUEHLER
        LYNDA GARCIA
        Trial Attorneys
        U.S. Department of Justice
        Civil Rights Division
        Special Litigation Section
        950 Pennsylvania Avenue, NW
        Washington, DC  20530
        Tel:   (202) 598-0482
        Fax:  (202) 514-4883
        luis.e.saucedo@usdoj.gov

        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th of December, 2017, I filed the foregoing pleading electronically through the CM/ECF system, which caused the parties, counsel of record and the Technical Compliance Advisor on the service list to be served by electronic means.

        <u>*s/Luis E. Saucedo*</u>
        LUIS E. SAUCEDO (G01613)
        Counselor to the Chief