## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**

**Plaintiff**

**V.**

**COMMONWEALTH OF PUERTO RICO,**
**PUERTO RICO POLICE DEPARTMENT,**

**Defendants**

_____

**Iris Guardiola-Calderón,**

**Putative Intervenor**

**Civil No. 12-2039 (GAG)**

**:**

## MOTION TO INTERVENE TO SECURE FIRST AND FOURTH AMENDMENT RIGHTS THROUGH CITIZEN REPRESENTATION IN THE REFORM OF THE POLICE OF PUERTO RICO

**TO THE COURT:**

Extraordinary times require extraordinary measures. Puerto Rico is experiencing a time of crisis unparalleled in the lives of its citizens. An elderly women who suffered violation of her First and Fourth Amendment rights during the May 1, 2017 protest seeks to intervene in this action pursuant to Rule 24(a)(2) and (b) of the Federal Rules of Civil Procedure.  She does so because the very measures that were, in part, the object of the May 1st protest, the PROMESA law and the Title III action, effectively preclude any other hope of remedy.  She also does so because her injuries illustrate the need for citizen representation if this action before this court is to accomplish its purpose.

The specific grounds and reasons stated below are more specifically set forth in the accompanying Complaint in Intervention appended hereto as Exhibit 1.

In support of the motion to intervene, plaintiff further states as follows:

1. Intervention in this action is sought because prospective intervenor suffered injuries due to the failure of the Agreement in this action to prevent the use of unreasonable force during public demonstrations as described in Paragraphs 31-35 of the Complaint in this action (ECF #1) ([1] "It is common knowledge that before the Agreement was signed, demonstrations and protests . . . ended in violent responses by the PRPD against the protesters.") DKT 721-1 at 5, and ¶¶ 22, 34, 159, 177-179 of the "Agreement for the Sustainable Reform of the Puerto Rico Police Department" (ECF #60 in this action).[1]

2. The facts summarized below and expressed more fully in plaintiff's Complaint in Intervention demonstrate that the provisions relating to Community Relations and Review and Implementation (at pages 68-72, Paragraphs 243 (a) and (d) and 248-253) are, at this critical juncture in the history of Puerto Rico, inadequate to provide the Court with the information and urgency required to remedy and prevent further unreasonable use of force to chill First Amendment rights).

3. On May 1, 2017, a massive demonstration was held to protest the policies of austerity and privatization implicit in PROMESA (48 U.S.C. §2101), the imposition of a Financial Oversight and Management Board ("JCF" for its acronym in Spanish), and the government's imminent recourse to bankruptcy. Five marches convened by a broad array of organizations converged at the site of the JCF headquarters in Puerto Rico to protest measures that, in addition

to imposing economic hardship, restrict opportunities for public participation in decisions affecting every aspect of life in Puerto Rico.

4. As partially reflected at ECF #721-1 and 723-1 of this action, on May 1, 2017, the Agreement between the parties in this case, the  failed to protect the First and Fourth Amendment rights of Plaintiff and many others.

5. Two days later, on May 3, 2017, the Financial Oversight and Management Board pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), filed a voluntary petition for relief under Title III of PROMESA, 48 U.S.. §2161, triggering the automatic stay provisions of 11 U.S.C. §§362 and 922 applicable to agencies and public corporations in Puerto Rico.[2]  As a result, the traditional remedial and dissuasive protection against civil rights violations has lost all force.

***Background: Movants' experiences on May 1, 2017***

6. The facts pertinent to the prospective intervenor and her experience at the May 1, 2017 demonstration are related in detail in the attached Complaint in Intervention. What follows is an overview intended to demonstrate its relation to this action and the reasons for which intervention is sought.

7. Iris Guardiola-Calderón is an 81 year-old retiree from public service as an employee of defendant ELA, who, concerned about the impact of proposed austerity measures proposed on her already meager pension and the rights of women generally joined tens of thousands of Puerto Ricans on May 1, 2017, in a peaceful public protest.

---

[2] 48 U.S.C. §2161 adopts the automatic stay provisions of 11 U.S.C. §§362 and 922 applicable to agencies and public corporations in Puerto Rico.

8. At the conclusion of the protest, as Ms. Guardiola attempted to return to her car in the company of two other women, an officer of the Police of Puerto Rico dressed as a member of a tactical unit aimed and fired a tear gas gun at this 81-year old.

9. Ms. Guardiola immediately suffered intense burning, pain, uncontrollable secretions nausea, vomiting, disorientation and panic. Days later, her eyes were too irritated to permit a routine vision inspection. She remains under treatment for post-traumatic stress.

10. At the time the gas gun was fired in her direction, no one in her immediate vicinity was engaging in violent, illegal, or even remotely threatening behavior. No order had been given to the crowd, and no police action beyond a fixed formation blocking Avenida Chardón was underway.

11. On August, 15, 2017, Ms. Guardiola submitted a formal complaint to the Police of Puerto Rico (Formulario de Querella Administrativa, PPR-111), with a sworn statement. This followed a Notice of Claim against the Police of Puerto Rico dated June 28, 2017.

12. On information and belief, no further administrative investigation was made to determine who fired the gas gun, on whose order, and what disciplinary and corrective measures were required to avoid a recurrence of such unconstituional behavior specifically being dealt with in the current action.

13. Despite what she suffered, Ms. Guardiola wishes continue to exercise her First Amendment rights. She is afraid to do so, however, without some assurance that she will be protected, the violation subject to some remedy, and the reforms concerning use of force, crowd control, equal protection and citizen complaint stipulated in EC #60 of this action are effectively enforced.

4

14. As a practical matter, given the current situation in Puerto Rico and the stay of all actions against the government and government employees, the filing an independent action under 42 U.S.C. §1983 at this time would not provide Ms. Guardiola an effective remedy. Also as a practical matter, in light of her age, it is unlikely that she will have any effective assurance or other remedy for the duration of her active life.

*Reasons for Intervention in this Action*

15. The stay and bankruptcy provisions of PROMESA render the traditional remedy for the violation of the rights of citizens –an independent action under 42 U.S.C. §1983, or a similar action in damages in the courts of Puerto Rico–an expensive and time consuming exercise in futility.[3] There would be no judgment while proposals for public work force reductions, abolition and modification of laws protecting workers, school closings, and salary and pension cuts are being debated or imposed.[4]

16. The case at bar was intended to provide a systemic remedy for civil rights violations. However. despite the Agreement's attention to First and Fourth Amendment rights, the parties, faced with the gargantuan task of reforming the Police of Puerto Rico in the midst of an economic and humanitarian crisis, have multiple priorities and problems beyond ensuring the

---

[3] *See, eg, Rafael Pabón Ortega v. Isabel Llompart,* Case Number 16-1599 in the United States for the First (appeal of First Amendment discrimination case seeking equitable remedies stayed pursuant to §§ 362 and 922 adopted in Title III of PROMESA.

[4] *See*, Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 2362(a), 265 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Pre-petition Lawsuits and Application of Contract Proections (DKT #534 in *In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of THE COMMONWEALTH OF PUERTO RICO, et. Al., Debtors*, (17 BK 3283-LTS) pending in this District.

protection of the right to protest. *See*, *e.g*., ECF #560 (impact of governmental reorganization on Police of Puerto Rico) and 694 (impact of "Blue Flu" police protest).

17.  While the movant is certainly aware that this court has taken a dim view of prior intervention-like requests (*e.g*., ECF ## 37, 63-68, 99-102,117), she also appreciates this court's understanding of the importance of resolving issues imbricated with this proceedings. *E.g*., ECF, 118, 648-50).

18. This Court has demonstrated its sensitivity to this reality and the value of transparency and citizen consultation (*e.g.,* through quarterly public hearings held in Spanish) at various times and in various ways. *See, e.g*. ECF #267, 268, 521, 778, specifically ordered inclusion of the police response to the May 1 demonstrations at public hearings, and ordered a special assessment report. ECF ##509, 511, 521, ECF #721 ("Assessment Report," of police response to demonstration by Technical Compliance Office).

19. As important as those steps are, they are far from adequate to do what our legal system relies upon civil rights actions to accomplish. For example, the Technical Compliance Officer's public statement three weeks after May 1 took note of reorganization and training in human and civil rights for specialized units (ECF 538-1 at p. 12), and lauds the public hearings as "a forum for the people of Puerto Rico to voice their complaints and provide their own ideas for improvement," (*id*. At 12) and community surveys designed to "generate a better understanding of the police."

20. The Assessment Report (ECF 721-1 and Seventh Interim Report (ECF #723-1) are far more critical, noting that the police "completely failed to adhere to its policies, prior to using

chemical agents and less than lethal ammunition against the protesters," failed comply with policies requiring audible warning that demonstrators were in violation of the law, and an opportunity to safely disperse (DKT 721-1 at 10), and resistance to relevant disclosure.[6]

21. No action to remedy or prevent these or similar violations in the future appears in the docket.

22. The economic and humanitarian crisis that provoked the May, 2017 demonstration has only deepened in the last year. Ongoing confrontations between the sectors most affected by the austerity measures and the governments of Puerto Rico and the United States–the only parties to this action–are likely to increase as the austerity measures become more clearly defined and implemented.

23. Mere documentation of past injuries provides neither a remedy for past violations nor security for the future exercise of First Amendment rights. The failure to remedy the pattern and practice of using unreasonable force to control public demonstrations and disturbances is chilling the First Amendment rights of interventors and many citizens of Puerto Rico.[6]

24. Ms. Guardiola, the prospective intervenor, turns to this court, in this action, as the only means available to protect and guarantee the right to assemble and publicly oppose decisions and proposals that threaten her ability, and that of hundreds of thousands, to live and exercise rights in Puerto Rico. She seeks to provide the court with advocacy on behalf of those

---

[6] *See, e.g.*, *Handschu et al v. Police department of the City of New York, et al.*, 241 F.Supp.3d 433 (S.D.N.Y. 2017)(modification of consent decree regarding surveillance related to First Amendment activities with respect to role of civilian participation); and *Campbell v. City of Chicago*, 17-cv-4467 and *Communities United v. City of Chicago*, 17-cv-7151(staying individual cases and defining civilian role (pre-consent decree)(copy attached hereto as Exhibit A).

rights, and ensure a citizen's perspective on the importance of reform in this specific area and the progress to date, as well as potential solutions.

25. She seeks no money damages or other relief requiring the expenditure of public funds. They seek declaratory and injunctive relief, and s the institution of a mechanism to ensure that this Court has the benefit of formal representation of citizens in this action, as has been done in other jurisdictions,[7] prior to any final outcome assessment and review.

26. In summary:

(a) this action provides the only realistic, efficient and effective forum for examination and evaluation of her claims. It is, however, deprived of citizen advocacy;

(b) while Ms. Guardiola's  injuries are part of a pattern and practice this action was instituted to remedy, none appears to be imminent;

(c) attending to Ms. Guardiola's  claims in this context will serve the interests of the parties in this action, and will also provide the parties and the Court with specific, concrete evidence against which to judge the adequacy of the agreement and/or assessement and enforcement mechanisms to protect First and Fourth Amendment rights;

(d) allowing citizen intervention in the assessment and enforcement process would provide security for those rights and contribute to a genuine reform.


**MEMORANDUM OF LAW IN SUPPORT OF INTERVENTION**

Rule 24(a) provides in pertinent part: "On timely motion, the court must permit anyone to intervene who ....  (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may, as a practical matter impair or

8

impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

This motion is timely because it relates exclusively to the assessment and enforcement phase and will cause no delay or interference with ongoing proceedings. Timeliness in this context is "not measured, . . in terms of specific units of time, but rather derives meaning from assessment of prejudice in the context of the particular litigation." *Puerto Rico Telephone v. Sistema de Retiro*, 637 F.3d 10 (1st Cir. 2011). It was "not designed to penalize prospective intervenors for failing to act promptly, but rather to insure that existing parties . . . are not prejudiced by ...[their] failure to act in a timely fashion. *Id*. at 15, brackets and citations omitted. The putative Intervenor seeks purely declaratory and equitable relief and, due to extensive documentation already available about the events of May 1, 2017 require little or no discovery to prove her claims.

This motion could not have been made until after May 1, 2017. Less than five months later, Puerto Rico was devastated by Hurricane María, depriving homes and offices of power, and effectively closing this Court to non-emergency civil matters for months. It is filed within and intended to toll any statute of limitations on the prospective intervenor's right to file individual actions.

Determination of the relation between the "interest" and the "property or transaction" requires an exercise of discretion. *See, e.g., B. Fernández & Hnos, Inc. v. Kellogg USA, Inc., et al*, 440 F.3d 541(1st Cir. 2006)(contractual interest); *Puerto Rico Telephone v. Sistema de Retiro*, 637 F.3d 10 (1st Cir. 2011).

The exact contours of the "interest" that satisfies Rule 24(a)(2) is a question that "is

peculiarly difficult to answer" *(Cotter v. Massachusetts Assn'n of Minority Law Enforcement Officers*, 219 F.3d 31, 34 (1st Cir. 2000)), and highly "fact-specific" *(Utahns for Better Transportation vs. United States Department of Transportation*, 295 F.3d 111 (10th Cir.2002)(granting intervention of sergeants promoted under race-conscious policy in an action challenging that policy). In *Cotter* Judge Boudin noted that the doctrinal rules are so general as to provide very little help and the diversity of facts and interests make simple formulas "impossible to contrive." *Id*. While the "outer boundaries have yet to be developed," a narrow reading of this term is "disfavored." *Daggett v. Commission on Governmental Ethics & Election Practices*, 172 F.3d 104, 110 (1st Cir. 1999).  Rather, the decision requires "a balancing of factors that arise in highly idiosyncratic settings" *(Students for Fair Adminssions, Inc. v. Harvard Corp.*, 807 F.3d 472, 475, quoting *Ungar v. Arafat*, 634 F.3d 48, 51 (1st Cir. 2011)).

By any reading, the interest of the proposed intervenor is so entwined with this action that this action provides not only the most appropriate but also the only possible forum for the protection of that interest. At the same time, Ms. Guardiola's  intervention and proposed remedy would provide a valuable perspective for this Court and the parties, and contribute to the protection of civil and human rights in Puerto Rico in this exceptional period.


**B. Ms. Guardiola is so situated so that, as a practical matter, disposing of this action may impair or impede their ability to protect that interest.**

By its text, Rule 24 does not require a prospective intervenor to show that disposing of the action *will* impair or impede her ability to protect her interest, but that, "*as a practical matter*," it "*may*" do so. F.R.Civ.P. 24(a)(2). It should also be clear from the foregoing that how

10

the Court responds in this action to the persistent practices involving the use of unreasonable

force in response to public demonstrations will indeed, as a practical matter, impair or impede

Ms. Guardiola's  ability to exercise First Amendment rights in the future.

In addition, an independent action would also be a far less efficient use of judicial

resources. Much of the relevant background and information has already been considered or

gathered in this action, and this Court is perfectly poised to evaluate the facts of the Complaint

against this background and to appreciate its implications for efforts to provide genuine

sustainable reform. Thus, intervention will further the objectives of this litigation while actually

determine the security *vel non* of First and Fourth Amendment rights–for proposed intervenor

and others.

### C. *No other party can adequately represent Ms. Guardiola's position and interests.*

The Police of Puerto Rico is plainly an adversary party. Although it will undoubtedly be

argued that intervenors' interest is presumed to be adequately represented by the Department of

Justice. *Pennsylvania v.Rizzo*, 530 F.2d 501,505 (3rd Cir. 1976), this is not in fact the case. Here,

as in *Trbovich v. Mine Workers*, 404 US 528 (1972)(presumption rebutted despite Secretary of

Labor's statutory mandate to new, democratic union elections on complaint of the proposed

intervenor/candidate), the theoretical alignment of interests fails to account for significantly

divergent focus and priorities.

The Department of Justice shares intervenors' interest in protecting First and Fourth

Amendment rights in Puerto Rico. But its responsibilities with respect to reforming the nation's

largest police department, plagued– at least at the outset– with violations of criminal laws as well

as civil rights, means that it cannot prioritize the rights of demonstrators when they are most threatened: now.

Indeed, the DOJ is proud of "very positive changes in the way the PRPB responds" to demonstrations, in part because it has learned to stop "chasing and hitting the protesters like they did in the past." ECF #721-1 at p. 5. Laudable as it may be, this praise provides no security for those who wish to protest in the future and, from the perspective of those who need to brave police armed with tear gas, it presents a wholly inadequate view of progress in reforming the Police Department.

It should also be noted that this view was expressed despite the fact that as of May 1, 2018–almost five years after the Agreement was submitted in this case– , "nobody in the PRPB had been trained on" GeneralOrder 600.625, ("Crowd Management and Control")(emphasis in the original), then in effect for almost a year. ECF #721-1 at 25, 30, 33. That report also documents the fact that all members of specialized tactical forces were reported to have been trained on the use of their special weapons, but little or no documentation of their use was produced *(id.)* (and none related to Ms. Guardiola's case).

Furthermore, the parties may modify or suspend provisions of the Agreement without prior knowledge of or consultation with citizens, and have recently agreed to extend for another year the period required to train officers. While this may make a lot of sense from the perspective of the current parties, it leaves citizens out of the process and their First and Fourth Amendment rights extremely vulnerable at a particularly volatile time in our history. It is respectfully submitted that a citizen's-eye view is essential to secure and protect those rights through this litigation, and, indeed, if this litigation is to serve its intended purpose.

In addition, the Memorandum for Heads of Department Components and United States Attorneys from the Attorney General dated March 31, 2017 (requiring review of, among other things, training and compliance reviews of local police agencies), causes some concern for the future of reform efforts. The response to this Court's inquiry regarding its impact (DKT 525 at p.6) was far from definitive, and underscores the need for the remedy requested by prospective intervenor.

Finally, intervention would benefit the parties and help the Court ensure that the reform of the Police of Puerto Rico is genuine, permanent, and capable of restoring citizen confidence in that agency.

### *If this court denies intervention pursuant to R. 24(a), it should granit it under R. 24(b)*

Rule 24(b) provides in pertinent part:

Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

The foregoing argument incorporated here establishes that prospective intervenors claim clearly "shares with the main action" common questions of both law and fact. The claim is timely, as explained above, because intervenors' interest is not in the initial phases of this action, but in providing information about how it is working in practice, from the position of women and men on the street. Periodic surveys and focus groups and Citizen Interaction Councils serve the parties and help inform the Court only indirectly and through the filter of the parties and the Monitor, TCA and their staff.

Intervention would clearly redound to the benefit of a more complete record of facts

relevant to two limited but important aspect of this action. While vindication of First and Fourth Amendment rights is not the principle objective of this action, it is an important one. Section 1983 places enforcement "in the hands of the people. But it was filed against a background in which each citizen acts as a private attorney general who takes on the mantel of the sovereign, guarding for all of us the individual liberties enunciated in the Constitution." *Wood v. Breier*, 54 F.R.D. 7, 10-11 (E.D. Wis. 1972) (quoting (*Newman v. Piggie Park Enterprises*, *Inc*., 390 U.S. 400, 402 (1968)). This is no longer the case in Puerto Rico. At a time when citizens are deprived of any real opportunity to act as a "private attorney general," permitting intervention in this action is critical to maintaining the paths of peaceful protest available to the people.

The protection of First and Fourth Amendment rights is one of many interests of the parties; it is the paramount interest of proposed intervenors who, by virtue of their roles and experiences, represent (in common parlance, not the legal sense) the voice of citizens on the ground in Puerto Rico today. The primary remedy sought is not personal space in this litigation, but an opportunity to propose a mechanism for citizen participation and review in the assessment and evaluation phase with a view towards assuring protection of those rights when it is otherwise impossible to do so.

**A copy of the proposed Complaint of the putative Intervenor, Iris Guardiola-Caldreón, is appended hereto as Exhibit B.**

14

**WHEREFORE,** it is respectfully requested that this Motion be granted and Plaintiff's

Complaint in Intervention be accepted for filing in this action.


DATED: April 24 , 2018.

 s/ Linda Backiel
Linda Backiel
DPR# 212110
PMB 597
267 C. Sierra Morena
San Juan, Puerto Rico
00926-5583
787-751-4941
lbackielr@gmail.com


**CERTIFICATION**

        I hereby certify that on this date, the foregoing was electronically filed with the Clerk of

the Court via CM/ECF system which will serve all other parties.

s:/ Linda A. Backiel