# EXHIBIT A

## MEMORANDUM OF UNDERSTANDING

### BETWEEN

### THE OFFICE OF THE ILLINOIS ATTORNEY GENERAL

### AND

### THE CITY OF CHICAGO

### AND

### *CAMPBELL v. CITY OF CHICAGO* PLAINTIFFS

### AND

### *COMMUNITIES UNITED v. CITY OF CHICAGO* PLAINTIFFS

## MEMORANDUM OF AGREEMENT

### BETWEEN

### THE OFFICE OF THE ILLINOIS ATTORNEY GENERAL

### AND

### THE CITY OF CHICAGO

### AND

### *CAMPBELL v. CITY OF CHICAGO* PLAINTIFFS AND *COMMUNITIES UNITED v. CITY OF CHICAGO* PLAINTIFFS

WHEREAS the purpose of this Memorandum of Agreement ("MOA" or "Agreement") is to establish a mechanism for meaningful community participation in the enforcement of any consent decree entered into by the Office of the Illinois Attorney General and the City of Chicago addressing and resolving the allegations in *State of Illinois v. City of Chicago*, N.D. Ill. Case No. 17-cv-6260 ("OAG Litigation");

WHEREAS the parties to this MOA are the State of Illinois through the Office of the Illinois Attorney General ("OAG"), the City of Chicago ("City"), the Plaintiffs in *Campbell v. City of Chicago*, N.D. Ill. Case No. 17-cv-4467 (the "*Campbell* Plaintiffs"),[1] and the Plaintiffs in *Communities United v. City of Chicago*, N.D. Ill. Case No. 17-cv-7151, (the "*Communities United* Plaintiffs") (collectively, the *Campbell* Plaintiffs and the *Communities United* Plaintiffs are the "Coalition Founders") (collectively, "the Parties"); and

WHEREAS the Parties share mutual interests in ensuring that police services in Chicago are delivered in a manner that is consistent with federal and state law, and in strengthening initiatives to ensure that encounters between police and African American and Latino residents

---

[1] For the purposes of this Agreement, the *Campbell* Plaintiffs consist of the following: Black Lives Matter Chicago, Blocks Together, Brighton Park Neighborhood Council, the NAACP, Network 49, the Women's All Point Bulletin, and the Chicago Urban League ("Organizational Plaintiffs").

and persons with disabilities do not result in the use of unnecessary or excessive force. The Parties hereby agree as follows:

1. The Parties acknowledge that the Coalition Founders have established a broad-based community coalition committed to monitoring, enforcing, and educating the community about the consent decree ("the Coalition"). The Coalition includes the plaintiffs in the *Campbell* and *Communities United* lawsuits. The Coalition Founders will make best efforts to ensure that the Coalition includes additional civil rights and community organizations in the City of Chicago with an expressed interest in police accountability.

2. The Parties acknowledge that the OAG and the City are in the process of negotiating a consent decree that is intended to address the following areas: (a) use of force; (b) training; (c) supervision and promotions; (d) accountability and oversight; (e) community policing and impartial policing; (f) crisis intervention; (g) officer assistance and support; (h) data management; and (i) independent monitor. In an effort to further opportunities for constructive dialogue, the Parties agree that no later than 60 days after the execution of this MOA, the Coalition Founders will provide to the OAG and to the City proposals of what should be contained in a consent decree. The OAG and the City agree to meaningfully review and consider the suggestions of the Coalition Founders.

3. The OAG and the City agree to meet with counsel for the Coalition Founders to discuss the Coalition Founders' proposed consent decree provisions, if any, as the consent decree is being drafted. To the extent the OAG or the City disagree with terms proposed by the Coalition Founders, the City or the OAG will, where feasible and appropriate, discuss with the Coalition Founders alternative terms for consideration. In the event the City or the OAG has a conceptual disagreement with a proposal from the Coalition Founders, the City or the OAG will

explain the basis of the disagreement. The Parties agree that these discussions and any documents or information exchanged by the Parties will be kept confidential unless otherwise agreed to by the Parties, and be governed by Federal Rule of Evidence 408. The terms of this paragraph shall survive the termination of this Agreement.

4. The City and the OAG acknowledge that they are in the process of engaging the community, including community members most affected by unnecessary or excessive force, via website, phone, and in-person meetings. Through these methods, the City and the OAG are soliciting feedback and input regarding the terms of a consent decree on police reform from Chicago community organizations, residents, and members of the Chicago Police Department. The City and the OAG agree to consider in good faith the ideas proposed through the community engagement process, and use best efforts to incorporate appropriate terms and conditions into the consent decree.

5. The Coalition Founders shall have an opportunity to make a presentation to the negotiating teams from the OAG and the City and explain how their experiences with police misconduct should inform changes in the policies and practices of the Chicago Police Department.

6. The City and the OAG shall provide the Coalition Founders with a full and complete version of the proposed draft consent decree as soon as feasible. The Coalition Founders will have a reasonable time to provide feedback to the OAG and the City on the terms contained in the proposed consent decree before the proposed consent decree is filed with the Court.

7. The Coalition Founders are the sole arbiters of the Coalition's objectives, composition and structure. All Parties acknowledge and understand that the composition of the

Coalition will likely change over time.

8. Within 60 days of the execution of this MOA, counsel for the Coalition Founders will provide the OAG and the City with a document that includes the following: (a) a list of the Coalition's members; (b) a description of the Coalition's objectives; (c) the Coalition's leadership structure; and (d) name and contact information for notice and communications with the Coalition. Should any of the items set forth in this Paragraph 8 change, counsel for the Coalition Founders will notify the OAG and the City within seven days of the change in writing.

9. The OAG and the City agree that the proposed draft consent decree will include terms that will require the Independent Monitor to participate in quarterly meetings with the Coalition, outside the presence of the City and the OAG, to discuss the City's compliance with the consent decree.

10. The OAG and the City agree that they will make a joint request to the Court for a Fairness Hearing on the Consent Decree. The OAG and the City agree that they will not object to the Coalition's standing to file with the Court any motions or filings relating to the adequacy or fairness of the proposed consent decree in conjunction with the Fairness Hearing.

11. The OAG and the City agree that they will not object to the Coalition's standing to file written comments with the Court regarding all reports filed by the Independent Monitor in *State of Illinois v. City of Chicago*, Case No. 17-cv-6260.

12. The OAG and the City will not object to the standing of the Coalition to file motions to enforce the consent decree if (a) the Coalition first presents its motion to enforce the consent decree to the OAG, the City, and the Independent Monitor for their consideration; and (b) the Coalition follows any procedural prerequisites to filing enforcement motions that the consent decree terms require of the OAG. In order to effectuate the terms of this MOA, the

OAG and the City agree that any proposed consent decree that either party submits to the Court shall contain the following terms (or substantially similar terms pre-approved by the Coalition Founders):

    a. Notwithstanding any other provision of this Consent Decree, the Consent Decree is enforceable by the Court upon a motion by the Coalition subject to the conditions in subparagraphs (a) through (b) herein. Prior to filing any enforcement motion the Coalition will (i) meet and confer in good faith with the Parties to attempt to resolve issues identified by the Coalition without the need for intervention by the Court and (ii) follow the prerequisites for filing enforcement motions required of the State set forth in Paragraphs [_____].

    b. The Coalition is defined as the plaintiff organizations in the *Campbell* lawsuit and the plaintiffs in the *Communities United* lawsuit (collectively "Coalition Founders"), as well as other civil rights and community organizations in the city of Chicago who are members of the Coalition. The Coalition's rights set forth in Paragraph (a) above shall not apply to any individual or organization that is not a member of the Coalition, including but not limited to individuals or organizations that were once members of the Coalition but subsequently left or were removed from the Coalition. The Coalition Founders are the sole arbiters of the Coalition's objectives, composition, and structure.

13. The OAG and the City agree that they will not include any term in the consent decree that either party proposes to the Court that purports to limit the powers or rights of the Coalition enumerated in Paragraph 12 above.

14. The Parties agree that the Coalition's rights set forth herein, and the OAG's and the City's obligations herein, shall not apply to any individual or organization that is not a member of the Coalition, including but not limited to individuals or organizations that were once members of the Coalition but subsequently left or were removed from the Coalition.

15. Within 14 days of the effective date of this Agreement, the *Campbell* Plaintiffs and the City agree to file a joint motion with the Court in *Campbell v. City of Chicago*, Case No. 17-cv-4467, seeking to stay that litigation as to the injunctive claims, the *Monell* claims, and the claims of the Organizational Plaintiffs. The claims of the individual *Campbell* Plaintiffs for

money damages shall proceed. The *Campbell* Plaintiffs further agree that they will not file any motion for intervention, consolidation, relatedness, reassignment, or joinder in the OAG Litigation unless any other party successfully intervenes in the OAG Litigation during any stage of the litigation or consent decree time period, or it is procedurally necessary to pursue a motion to enforce. The OAG and the City agree to waive all timeliness objections if the *Campbell* Plaintiffs file a motion for intervention, consolidation, relatedness, reassignment, or joinder under these circumstances.

16. Within 14 days of the effective date of this Agreement, the *Communities United* Plaintiffs and the City agree to file a joint motion with the Court in *Communities United v. City of Chicago*, Case No. 17-cv-7151, seeking to stay that litigation. The *Communities United* Plaintiffs further agree that they will not file any motion for intervention, consolidation, relatedness, reassignment, or joinder in the OAG Litigation unless any other party successfully intervenes in the OAG Litigation during any stage of the litigation or consent decree time period, or it is procedurally necessary to pursue a motion to enforce. The OAG and the City agree to waive all timeliness objections if the *Communities United* Plaintiffs file a motion for intervention, consolidation, relatedness, reassignment, or joinder under these circumstances.

17. In the event the City or the OAG materially breaches this MOA, the Coalition Founders shall be entitled to move to vacate the stays in their cases and may file a motion for intervention, consolidation, relatedness, reassignment, or joinder with the OAG Litigation. In the event the Coalition objects to the proposed consent decree filed with the Court, the Coalition Founders shall be entitled to move to vacate the stays in their cases. The City and the OAG agree to waive all timeliness objections to the *Campbell* or *Communities United* Plaintiffs' motions for intervention, consolidation, relatedness, reassignment, or joinder under these

circumstances. The City and the OAG retain their rights to object to any such motion on any other basis. The City further agrees it will not object to the Coalition Founders' requesting to vacate stays in their respective lawsuits, and agrees that the status of the individual damages cases shall not be a basis for staying the injunctive claims in the *Campbell* case.

18. If a proposed consent decree is not filed with the Court before September 1, 2018, or entered by the Court before January 1, 2019, then the Coalition Founders shall be entitled to move to vacate any stay in their cases. Notwithstanding this provision, the Coalition Founders shall not move to vacate a stay if the City and the OAG demonstrate to the Coalition, through ongoing communication regarding the consent decree development process and the discussion regarding draft consent decree provisions as contemplated in Paragraph 3 of this MOA, that the City and the OAG are working in good faith to file with the Court, in 2018, a consent decree containing provisions designed to reduce the likelihood that encounters between police and African American and Latino residents and persons with disabilities will result in the use of unnecessary or excessive force.

19. The effective date of this MOA is the date of the last signature below.

20. Nothing in this MOA shall be interpreted as a waiver of the Parties' rights to seek breach of contract remedies in the court of appropriate jurisdiction, including specific enforcement.

21. This MOA constitutes the entire agreement between the Parties on the matters raised herein, and no other statement or promise, either written or oral, made by any party or agents of any party regarding the matters raised herein that is not contained or referred to in this MOA shall be enforceable. The Coalition and the Coalition Founders are not entitled to any additional rights or claims on the matters raised herein beyond those expressly stated in this

MOA. The City and the OAG bear no additional burdens or obligations on the matters raised herein beyond those expressly stated in this MOA.

By signing this MOA, each party represents it is fully authorized to enter into this MOA and accepts the terms, responsibilities, obligations and limitations of this MOA.

For the Office of the Illinois Attorney General:

By: *[signature]*

Karyn L. Bass Ehler
Chief, Civil Rights Bureau
Office of the Illinois Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601

Dated: 3-20-18

For the City of Chicago:

*[signature]*

Allan T. Slagel
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2800
Chicago, Illinois 60601

Dated: 3-16-18

For *Campbell v. City of Chicago* Plaintiffs:

*[signature]*

Craig B. Futterman
Clinical Professor of Law
University of Chicago Law School
Mandel Legal Aid Clinic
6020 S. University Street
Chicago, IL 60637

Dated: 3-16-18

*[signature]*

Sheila A. Bedi
Clinical Associate Professor of Law
Northwestern Pritzker School of Law
Bluhm Legal Clinic
MacArthur Justice Center
375 E. Chicago Ave. 8th Floor
Chicago 60611

Dated: 3-16-18

For *Communities United v. City of Chicago* Plaintiffs:

*[signature]* 3/16/2018

Karen A. Sheley
Roger Baldwin Foundation of ACLU, Inc.

8

150 N. Michigan Avenue, Suite 600
Chicago, IL 60601

Dated: _____