# EXHIBIT B

## COMPLAINT IN INTERVENTION TENDERED BY PUTATIVE INTERVENOR IRIS GUARDIOLA-CALDERÓN

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff**<br><br>**V.**<br><br>**COMMONWEALTH OF PUERTO RICO,**<br>**PUERTO RICO POLICE DEPARTMENT,**<br><br>**Defendants**<br><br>---<br><br>**IRIS GUARDIOLA-CALDERÓN,**<br><br>**Putative Intervenor** | **Civil No. 12-2039 (GAG)**<br><br>: |

**COMPLAINT IN INTERVENTION**

**NOW COMES** the putative intervenor, Iris Guardiola-Calderón ("Ms. Guardiola"), through undersigned counsel, and respectfully tenders this Complaint as Intervenor in this case.

*INTRODUCTION*

1. This action is based on the failure of defendants to correct Fourth and First Amendment violations of the rights of citizens of Puerto Rico that persist, despite the Agreement in the action in which intervention is sought, which was filed to remedy a then-existing "pattern or practice of relying on unreasonable force in response to public demonstrations." *United States of America v. Commonwealth of Puerto Rico and Puerto Rico Police Department*, Civ. No. 12-2039(GAG),

2

Complaint (ECF #1) at ¶1.

2. The case arises from injuries suffered by an 81 year old woman on May 1, 2017, as the result of the use of tear gas and intimidation to chill the exercise of First Amendment rights. The complaint is presented with the purpose of remedying the chilling effect of such actions and further to prevent future injury to the civil and human rights of persons who lawfully protest and civilians who attempt to protect those rights through mediation efforts with the officers at the scene.

3. The complaint is filed as the result of the Defendants' violation, at all times under color of the law of Puerto Rico, of the rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. §1983, the Fifth and Fourteenth Amendments to the United States Constitution, as well as Articles 19, 20 and 21 of the International Covenant on Civil and Political Rights, (G.A. res.2200A (XXI), 21 U.N. GAOR Supp. (No. 16) at 52, U.N. Doc. A/6316 (1966), 999 U.N.T.S. 171, entered into force Mar. 23, 1976).

4. As to remedy, Ms. Guardiola seeks no money damages. Rather, she seeks intervention in the related case before this Court, *United States of America v. Commonwealth of Puerto Rico*, Civ. 12-2039 (GAG), for the purpose of securing declaratory and injunctive relief only, in particular, formal representation for a civilian/citizen representative to participate in the compliance and assessment phase of that action with respect to the use of force to control citizens engaged in protected speech and public assemblies.

### *JURISDICTION AND VENUE*

5. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343 (3) and (4), since the cause of action arises under the laws of the United States. Claims for declaratory and injunctive

relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rules 57 and 65(a) of the Federal Rules of Civil Procedure,

6. Venue is proper in the United States District Court for the District of Puerto Rico, pursuant to 28 U.S.C. § 1391 (b)(2), in that this is the judicial district in which the events giving rise to the claim occurred and in which all parties reside.

***PARTIES***

7. Plaintiff Iris Guardiola-Calderón was employed by defendant ELA between 1973 and 1996. Her income depends upon her government pension and Social Security. She is over 80 years of age, and resident of San Juan, Puerto Rico.

8. Defendant Estado Libre Asociado De Puerto Rico ("ELA") is the constitutional government of the people of Puerto Rico. At all times relevant to this action, it was directed and represented by its Governor, Ricardo Rosselló.

9. On May 1, 2017, the Police of Puerto Rico ("PRPD") was the law enforcement agency of defendant ELA.

**STATEMENT OF FACTS**

*The May 1, 2017 March*

10. On International Workers' Day (May 1) 2017, labor unions, students, religious groups, woman's organization, defendets of LGBT rights, community, civic and other organizations organized a nation-wide strike/work stoppage in Puerto Rico and a demonstration to protest the imminent implantation of austerity and bankruptcy measures as a consequence of "PROMESA" (48 U.S.C. §2101), and the assumption of control over traditional government functions by its Fiscal

Control Board.

11. As planned, five multitudinous marches converged near a stage in front of what is commonly referred to as the Seaborne Building at 268 Av. Muñoz Rivera, where the Fiscal Control Board has offices. The march was coordinated ahead of time, to the extent possible, with representatives of defendant Police of Puerto Rico, in order to protect the safety and rights of marchers and to reduce inconvenience to others.

12. While vehemently denouncing both the manner in which PROMESA and the Fiscal Control Board planned to solve Puerto Rico's economic and humanitarian crisis, and the fact that this legislation stripped the people of Puerto Rico of the power to remedy it, the organizers consistently emphasized the peaceful nature of the protest. Both before and during the activity, they also explicitly called upon the police to avoid unwarranted use of force, and upon the protesters to avoid provocations to violence.

13. At times, certain heavily clad persons committed acts of vandalism at the headquarters of the Banco Popular e Puerto Rico at 208-209 Av. Ponce de León and near-by buildings housing banking and financial institutions. These incidents occurred at a considerable distance from the stage where the demonstrators gathered, and were, with rare exceptions, directed against property, not police or civilians in the area.

*Plaintiff's Experiences on May 1, 2017*

14. On May 1, 2017, Plaintiff left her home with a friend of approximately the same age who drove to the assembly point for a peaceful march of women. At about 10 am, they parked at Plaza las Americas and joined a large contingent of women who marched for well over an hour up Avenida

Chardón towards the stage which had been set up in front of the Seaborne Building from which speakers addressed the demonstrators.

15. Already tired from marching, Ms. Guardiola found a low wall upon which she could sit and listen to the activities on the stage. The immense mass of marchers gathered as close to the stage as possible to participate in the official activities remained peaceful and did not appear to be violating any law, although Ms. Guardiola did perceive tension about blue-uniformed police in a line amidst the demonstrators.

16. Near the end of the demonstration, at some distance down the street, near the Banco Popular building, Ms. Guardiola observed that some heavily clad individuals were throwing or heaving objects at windows there, which only increased her desire to leave as quickly as possible to avoid being caught up in any disturbance.

17. To return to the car, Ms. Guardiola crossed Avenida Muñoz Rivera and headed towards Avenida Chardón, where she noticed several lines of police blocking the street. They appeared to be directing people to Avenida Roosevelt, which, in Ms. Guardiola's tired condition, was a considerable distance.

18. A women who was accompanying her pleaded with the officers to allow them to return to their car by the shortest route, pointing out that they were elderly and tired, but no officer would respond. "They just stood there like wooden soldiers," despite the fact that the window breaking continued.

19. There was no disturbance of any kind in the vicinity where the officers were blocking her path, and other than the silent line of police, there was no indication, verbal or other, that Avenida Chardón was off-limits to pedestrians.

6

20. Since none of the officers would speak to or even make visual contact with her, Ms. Guardiola turned to find an alternate route. After taking a few steps, she glanced back and noticed an individual within the ranks of blue-uniformed police, in a second or third row, who was dressed entirely in very dark gear, with his head completely covered and no visible means of identification, and carrying a long weapon, which he aimed in her direction.

21. Almost immediately, Ms. Guardiola heard a pop and was overcome by fumes spewing from something that fell at her feet. She felt extreme burning, stinging and itching of her face, neck, and mouth, and experienced uncontrollable secretions from her eyes, nose, throat and mouth, as well as nausea and vomiting. She had difficulty breathing and could not see. Believing she was about to die, she suffered an attack of panic.[1]

22. People at the site of the demonstration, apparently from a first aid contingent, came to her aid and called a motorized cart which took her to a medical station provided by the Municipio de San Juan near its office building on Avenida Chardón. There, she received additional treatment until she was stabilized enough to be taken home.

23. She remained at home, afraid to go out for two days, until she had a scheduled appointment with her eye doctor on May 3rd. At that time, the physician could not examine her eyes due to the irritation caused by defendants' use of chemical agents.

24. When she returned to her doctor's office for the re-scheduled appointment over two

---

[1] These injuries were the result of an officer shooting a tear gas-gun at the citizens in the area. The use of tear gas is prohibited under the in warfare under the Geneva Protocol for the Prohibition of the Use in War of Asphyxiating Poisonous or Other Gases and of Bacteriological Methods of Warfare, June 17, 1925, 26 U.S.T. 571, 94 L.N.T.S. 65 (entered into force Feb. 8, 1928, for the United States, Apr. 10, 1975) (the "1925 Geneva Protocol"), which does not apply to civil police actions.

weeks later, Ms. Guardiola's eyes were still too irritated for him to examine. It was not until mid-June that they were sufficiently recovered to permit a routine examination for new glasses.

25. At no time during the events described above was Ms. Guardiola violating any law or order. She was not armed, was not, and did not appear to present a danger to herself or others.

26. No warning was given before the gas-gun was fired, and no route of escape or avoidance was made available.

27. While Ms. Guardiola has recovered from the physical effects of the gas, she has not recovered from the psychological effects of the attack. As of May 1, 2017 she was taking a battery of medications for cardiac arrythmia, high blood pressure, thyroid replacement, involuntary movements, anxiety and depression. Since then, as the result of the events described above, she is also receiving treatment for post-traumatic stress syndrome.[1]

28. In June, 2017, Ms. Guardiola went to the Puerto Rico chapter of the American Civil Liberties Union (ACLU) for help. On June 28, the Department of Justice received a Notice of Claim on her behalf. On August 15, 2017, a Complaint (PPR-111) was filed with the Police of Puerto Rico on her behalf.

29. In February, 2018, she was interviewed at Police Headquarters by Agent Yesenia de Jesús Márquez, Badge 26811, who informed Ms. Guardiola that her interview would be sent to the Department of Justice.

30. On one occasion, while at ACLU headquarters, Ms. Guardiola, in the company of a number of other civilians, was interviewed about the events of May 1 by a representative of the Monitor or Technical Compliance officer assigned to assess compliance in this case, Civil No. 12-2039.

31. At the present time, Ms. Guardiola wishes to participate in additional demonstrations, but is afraid that she will again be subject to use of force in violation of the Fourth Amendment, or singled out for harassment if she does so.

32. As a direct and proximate result of the Defendants' acts, Ms. Guardiola suffered intense physical pain and emotional distress.  She has suffered and continues to suffer the following damages:

(a) her physical and psychological wellbeing have deteriorated. She remains under treatment for post-traumatic stress syndrome;

(b) her Fourth Amendment right to be free from use of unreasonable force has been violated;

(c) she has suffered a violation and suprression of her exercise of her First Amendment rights to association, assembly and speechm and continues to be chilled by the fear of violence on the part of the authorities should she again decide to exercise that right.

.
***FACTS CONCERNING THE ACTION IN WHICH INTERVENTION IS SOUGHT***

33. On December 21, 2012, the United States, through the Department of Justice Civil Rights Division filed this civil action against the Police of Puerto Rico, Civil action 12-2039 in this District, together with a proposed Agreement. At issue was, among other things, the use of excessive force during public demonstrations against those perceived as critics of the government, "including those who pose little or no threat to officers, others, or themselves" in violation of the Fourth Amendment, the failure to maintain discipline, to display identification, and indiscriminate reliance upon chemical agents are all spelled out and identified as resulting in the suppression of acts protected by the First Amendment *I*d. at ¶31. And see ¶¶32-55.

34. Paragraph 56 of the Complaint before this court specifically predicts what motivates this action: "The use of unreasonable force and extreme displays of force by PRPD officers during public demonstrations can be reasonably expected to deter protestors, witnesses and other observers from participating in future public demonstrations due to the fear that they will be subjected to physical harm."

35.. On July 17, 2013 an Agreement was entered on the docket and the action was conditionally dismissed. The court retained jurisdiction to ensure compliance, and continues to do so.

36. Paragraphs ¶¶31-56 of the Complaint summarize a pattern and practice of reliance upon unreasonable and extreme displays of force by the Police of Puerto Rico during public demonstrations existing prior to December 2012 which "can be reasonably expected to deter protestors, witnesses, and other observers" from participating in the future for fear of physical harm. *Id*. at ¶56.

37. Section IV of the Agreement governs reforms related to the Use of Force, including the use of specialized tactical units, crowd control, force reporting and use of force training. ECF # 60 at pages 17-25.

38. In order to engage in the ongoing compliance assessment, the court in this action receives periodic and special assessments. Two specifically both reported on the May 1, 2017 demonstration. *See, Executive Summary of the Assessment Report, Police of Puerto Rico's Response to the demonstrations and Incidents involving the Capitol building, the "Centro Para Puerto Rico," and the Workers' Day*" (ECF #721-1), which reported, *inter alia*, that:the PRPB completely failed to adhere to its policies, prior to using chemical agents . . .against the protesters, by not providing

repetitive information to the protesters . . . by not placing a police officer [behind them] to listen to the required communications/orders from the police to the protesters, " and by not making required videos documenting "the protesters' response to police orders and warnings." *Id*. at 10.

39. Both the Assessment Report and the following *Sixth Month Review (Seventh interim) Report of the Technical Compliance Advisor* (ECF 723-1), establish that although one was required, no use of force report was made regarding the tear gas gun fired at Ms.Gardiola, and that the Police failed or refused to provide and otherwise concealed evidence of their use of excessive and unwarranted force. *See , e.g.*, ECF #721-1 at 6-10 (summarizing under-reporting of use of force, failure to comply with procedures and contradictory evidence about video recording, and concluding that the police "completely failed to adhere to policies regarding use of chemical agents; ECF #723-1 at p. 52-54 (refusal to produce use of force forms and complete video recordings made by police employees), *id.* at p. 55 (as of November 2017, Police deny having any complaint regarding Plaintiff Guardiola's injury).

## *PLAINTIFF'S CLAIMS*

### *FIRST CAUSE OF ACTION, CONSTITUTIONAL VIOLATIONS ACTINABLE UNDER 42 U.S.C. §1983*

40. Each and every one of the foregoing paragraphs is incorporated as if individually realleged herein.

41. The defendants and their agents, at all relevant times, acted under color of law and in concert to individually and collectively deprive Plaintiff of rights clearly established under the First and Fourth Amendments to the Constitution of the United States.

42. The facts alleged herein constitute the continuation of "the pattern or practice of relying

upon unreasonable force in response to public demonstrations" (Complaint, ECF #1 at ¶1), intended to be remedied in this Civil Action 12-2039.

43. Because the acts described in the foregoing paragraphs violated specific provisions of an Agreement and policies implemented to remedy a previously documented pattern or practice of violations of the First and Fourth Amendments, they were either deliberate, or, at a minimum, carried out in reckless disregard of rights clearly established under the Fourth Amendment involving the use of excessive force to punish and chill the exercise of First Amendment rights.

44. As a direct consequence of defendants' acts on May 1, 2017, Ms. Guardiola's right to not to be subject to unreasonable use of force was violated and she suffered injury.

45. As a direct consequence of defendants' acts on May 1, 2017, her right to peacefully assemble, demonstrate, express their views and publicly criticize the government were violated.

46. As a direct consequence of defendants' acts, plaintiff has been chilled in the exercise of their First Amendment rights freedom of speech and assembly.

### *RESERVATION OF RIGHTS*

47. Any possible waiver by plaintiff of any category of relief, including waivers of economic rights are limited to this Complaint in intervention. In the event any claim of Plaintiff is not accepted for intervention, Plaintiffs reserve the right to any and all remedies to which they may be otherwise entitled by any laws of the United States and Puerto Rico for any acts complained of herein. If any defendant claims no previous notice of these claims, this Complaint serves to toll any pertinent statute of limitations.

*RELIEF REQUESTED*

46. Plaintiffs seek declaratory and equitable relief to eliminate and end the continuing pattern and practice of relying upon unreasonable force, in violation of the Fourth Amendment, and further to quell dissent and punish or intimidate persons exercising First Amendment rights.

**WHEREFORE,** plaintiff Guardiola requests that the Court:

a. Declare that Plaintff's First Amendment rights have been violated by the use of unreasonable force in response to assemblies and expressions critical of the government, its agencies and/or agents on May 1, 2017;

b. Declare that Ms. Guardiola's Fourth Amendment rights were violated by the use of unreasonable force on account of her participation in an activity protected by the First Amendment;

c. Enjoin defendants and their agents from taking any reprisal against Plaintiff either on account of her participation on May 1, 2017 or her filing of this action;

d. Enjoin defendants, on pain of contempt, from

(i) authorizing the use of chemical agents other than in compliance with the relevant revised General Orders, including, but not limited to use of force reports regarding each use;

(ii) failing to investigate and provide appropriate remedial and disciplinary measures where warranted for failure to follow those orders;

(iii) falsifying, destroying, editing or refusing to produce required documentation of compliance vel non with policies relating to use of force in the context of activities protected by the First Amendment or permitting their subordinates to do so;

(iv) failing to investigate civilian complaints of abuse of force and produce them to

13

interested parties with a right to receive them.

e. Issue an order authorizing Plaintiff to submit to the Court, through counsel, a proposal for citizen representation in the pending phases of the action in Civil No. 12-2039, and

f. Order such other and further relief as justice requires.


DATED: April 24 , 2018.


 s/ Linda Backiel
Linda Backiel
DPR# 212110
PMB 597
267 C. Sierra Morena
San Juan, Puerto Rico
00926-5583
787-751-4941
lbackielr@gmail.com