# ASSESSMENT REPORT

## Of recent transactions of transfer of personnel of the rank system of the Puerto Rico Police Bureau (PRPB).

*Office of the Federal Monitor to the Agreement for the Sustainable Reform of the Puerto Rico Police Department*

Federal Monitor Report — 2018

# Table of Contents

| | |
|---|---:|
| Table of Contents | 1 |
| Introduction | 2 |
| Request of Documents | 3 |
| Analysis' Results | 4 |
| Submissions to the Court | 9 |
| Conclusion | 10 |
| Transfer of Civilians | 10 |

| Federal Monitor Report | 2018 |
|---|---|

# Introduction

On July 18, 2018, during a Status Conference held in case Number 3:12-cv-02039, the United States District Court, Hon. Gustavo Gelpi, U.S.D.J., approved a request by the Federal Monitor to the Sustainable Reform of the Police of Puerto Rico to conduct an independent evaluation and assessment, followed by a report of recent transactions of transfer of personnel of the rank system of the Puerto Rico Police Bureau (PRPB). The Court also authorized the designation of retired United States Special Agent and Federal Monitor's Investigator Jose Pujol to conduct the aforesaid assessment. The Court further instructed that the parties shall fully cooperate with Mr. Jose Pujol and the Federal Monitor and immediately agree to the evaluation's methodology.

The TCA instructed Investigations Consultant (IC) Jose L. Pujol to conduct the Court ordered **ASSESSMENT** and to report on his findings. IC Jose Pujol based his work on:
- His law enforcement training and experience as a federal Special Agent for approximately twenty-one (21) years.
- The Agreement for the Sustainable Reform of the Puerto Rico Police Department
- The Puerto Rico Police Bureau's General Orders.
- Consultation on legal issues with TCA Constitutional Attorneys

IC Jose Pujol, based on law enforcement experience, training, knowledge of the Agreement for the Sustainable Reform of the Puerto Rico Police Department, herinafter the Agreement and the Puerto Rico Police Bureau's General Orders, all the evidence and facts collected during the Assessment, including the interviews of personnel, the support and advice received from all the TCA team formulated findings described in this Assessment Report to be duly submitted to the Court and the parties.

Generic identifiers were used in this Report in place of the actual names of Police Officers mentioned. A sealed document containing the names of all the officers along with the assigned identifiers will be filed with the Court.

During the Assessment:

- IC Jose Pujol dedicated more than 200 hours of work to the investigation and report-writing to turn out this Assessment.

- A considerable number of interviews were conducted involving members of the PRPB having direct and pertinent knowledge related to the matters covered by the Assessment.
- All pertinent PRPB reports were reviewed and analyzed.

IC Jose Pujol took a sample of the transfers reported by the PRPB for June 2018 consisting of the transfers of five (5) Officers from the total of ten (10) transfers reported for June 2018. During the analysis of the transfers, and after IC Pujol ended the necessary interviews, he concluded that one (1) of the transactions was a reinstatement and not a transfer, therefore not meeting the criteria to be part of this Assessment and it was excluded. So, the final sample for June 2018 consisted of four (4) Officers from the total of ten (10) transactions reported for that month.

IC Jose Pujol took a sample of the transfers reported by the PRPB for July 2018 consisting of the transfers of fifteen (15) Officers from the total on ninety-nine (99) transfers reported for that month. Of these selected fifteen (15) Officers, IC Pujol selected twelve (12) Officers at random and selected three (3) FURA Officers. During the analysis of the transfers, and after IC Pujol ended the necessary interviews, he concluded that one (1) of the transactions selected at random never took place, therefore not meeting the criteria to be part of this Assessment and it was excluded. So, the final sample for July 2018 consisted of fourteen (14) Officers from the total on ninety-nine (99) transfers reported for that month.

IC Pujol analyzed these selected samples by examining the documents provided by the PRPB and by interviewing the transferred PRPB Officers, and in some instances by interviewing PRPB Officers, other than the transferred ones[1], which knew the transfer process. All of this data was analyzed for compliance with Section 305 of PRPB's General Orders, titled "Normas y Procedimientos para las Transacciones de Traslado del Personal del Sistema de Rango" (Spanish for "Rules and Procedures for the Transactions of Transfer of Personnel of the Rank System".)

## Request of Documents

IC Pujol requested several documents to the PRPB to corroborate facts and statements directly related to this Assessment.

---

[1] These additional interviewed PRPB personnel consisted mainly of co-workers (rank system and civilian), supervised personnel and administrative personnel.

| Federal Monitor Report | 2018 |
|---|---|

The PRPB provided the transfer forms of the Officers chosen for the Assessment:
- PPR-144 "Request for External Transfers"
- PPR-851 "Request for Internal and External Transfers Due to the Need for Service"
- PPR-191 "Assignment of New Functions"

Counsel Valerie Concepcion Cintron on behalf of PRPB sent to the Monitor's Office the following documents:
- "Informe Individual de Vuelo" PPR-100 Form (Spanish for "Individual Flight Report") reports for the year 2014, most of 2016, 2017, and from January to August of 2018.
- Standard Airworthiness Certificate for an airplane Hawker Beechcraft Corporation G58, dated 07/12/2012.
- Weight and Balances reports for the following helicopters:
    Two (2) Bell 429 helicopters
    Two (2) Bell 407 helicopters

# Analysis' Results

To conclude the results below, IC Pujol:
- Reviewed documentation received from the PRPB for compliance with all requirements established in the General Order (GO) Chapter 300, Section 305, for "Voluntary Transfers" and "Transfers for Service Requirement or Professional Development" (Section IV, A, 2 and Section IV, A, 4), and he found the PRPB complied with all requirements specified in them.
- Verified all selected transferred Officers were duly notified of their transfer and informed of their right to appeal it.
- Analyzed reasons provided by the PRPB for the transfers based on Service Requirement and he did not find any non-valid justification.
- As previously explained, he performed many interviews related to the transfers which helped to reach the below conclusions.

### PRPB Officer #1:

According to the documentary information received from the PRPB and the interview of PRPB Officer #1, **the PRPB made this transfer in accordance with the requirements established in the GO Chapter 300, Section 305**.

| Federal Monitor Report | 2018 |
|---|---|

### PRPB Officer #2:

According to the documentary information received from the PRPB, and the interview of PRPB Officer # 2, **the PRPB made this transfer pursuant to the requirements established in the GO Chapter 300, Section 305.**

### PRPB Officer #3:

According to the documentary information received from the PRPB, and the interview of PRPB Officer # 3, **the PRPB made this transfer pursuant to the requirements established in the GO Chapter 300, Section 305**.

### PRPB Officer #4:

According to the documentary information received from the PRPB, and the interview of PRPB Officer # 4, it can be concluded that **the PRPB made this transfer pursuant to the requirements established in the GO Chapter 300, Section 305**.

### PRPB Officer #5:

According to the documentary information received from the PRPB, and the interview of PRPB Officer # 5, it can be concluded that **the PRPB made this transfer pursuant to the requirements established in the GO Chapter 300, Section 305**.

### PRPB Officer #6:

PRPB Officer # 6 **never appeared for an interview adducing** medical reasons) although the PRPB's Reform Unit had summoned him several times. Records received by the PRPB show that PRPB Officer # 6 was fired from the PRPB, but that during his appeal process both parties reached an agreement by which PRPB Officer # 6 was going to be reinstated to the position he is currently employed at. Taking into consideration that this was an agreement reached by both parties and that this was a reinstatement and not a transfer, **this case doesn't meet the criteria to be part of this Assessment so it not CONSIDERED of any value for the Assessment but it is included for completeness of the Report.**

### PRPB Officer #7:

According to the documentary information received from the PRPB, and the interview of PRPB Officer # 7, it can be concluded that **the PRPB made this transfer pursuant to the requirements established in the GO Chapter 300, Section 305**.

### PRPB Officer #8:

According to the documentary information received from the PRPB, and the interview of PRPB Officer # 8, it can be concluded that **the PRPB made this transfer pursuant to the requirements established in the GO Chapter 300, Section 305**.

### PRPB Officer #9:

According to the interview of PRPB Officer # 9, it can be concluded that **the PRPB made this transfer pursuant to the requirements established in the GO Chapter 300, Section 305**. Despite this fact, the PRPB never provided a copy of the requested copy of the PPR-191 Form to the Monitor's Office, but PRPB Officer # 9 assured that he received it.

### PRPB Officer #10:

According to the interview of PRPB Officer # 10, he was issued a PPR-191 Form dated July 16, 2018, informing he was immediately transferred to a Specialized Unit. The PRPB provided to the Monitor's Office the month of July 2018 Transfer Report list, including PRPB Officer # 10's transfer. **PRPB Officer # 10 informed that his transfer never took place, so it not CONSIDERED of any value for the Assessment but it is included for completeness of the Report.**

### PRPB Officer #11:

According to the documentary information received from the PRPB, and the interview of PRPB Officer # 11, it can be concluded that **the PRPB made this transfer pursuant to the requirements established in the GO Chapter 300, Section 305**.

| Federal Monitor Report | 2018 |
|---|---|

### PRPB Officer #12:

According to the documentary information received from the PRPB, and the interview of PRPB Officer # 12, it can be concluded that **the PRPB made this transfer pursuant to the requirements established in the GO Chapter 300, Section 305**.

### PRPB Officer #13:

According to the documentary information received from the PRPB, and the interview of PRPB Officer # 13, it can be concluded that **the PRPB made this transfer pursuant to the requirements established in the GO Chapter 300, Section 305**.

### PRPB Officer #14:

According to the documentary information received from the PRPB, and the interview of PRPB Officer # 14, it can be concluded that **the PRPB made this transfer pursuant to the requirements established in the GO Chapter 300, Section 305**.

### PRPB Officer #15:

IC Jose Pujol asked PRPB Officer #15 during his interview if his transfer related to retaliation; he opted not to answer the question. IC Pujol inquired why he did not want to answer the question? He replied it was because he was afraid of retaliation.

IC Pujol conducted several interviews of co-workers at the Police Precinct where PRPB Officer #15 worked and based on the information obtained concluded that **it is more probable than not that PRPB Officer #15's transfer was not based on retaliation**. Thus, **there is no evidence that the PRPB made this transfer contrary to the requirements established in the GO Chapter 300, Section 305**.

### PRPB Officer #16:

IC Pujol interviewed PRPB Officer #16, and he estated believing that his transfer was the product of a retaliation, because "no soy del combo" (Spanish for "I am not part of the gang"), meaning he gets no special consideration from the actual upper management.

IC Pujol conducted several interviews of co-workers at the Police Precinct where PRPB Officer #16 worked at and based on the data obtained, concluded that **it is more probable than not that the transfer of PRPB Officer #16 was not based on retaliation**. Thus, **there is lack of evidence that the PRPB made this transfer contrary to requirements established in the GO Chapter 300, Section 305**.

### PRPB Officer #17:

On July 6, 2018, the PRPB issued and handed a PPR-191 Form to PRPB Officer #17 informing of his immediate transfer to another unit. When IC Pujol interviewed PRPB Officer #17, he asked PRPB Officer #17 if his transfer was based on retaliation. PRPB Officer #17 did not answer with a yes or no but remarked **it could have been related to politics/ideological matters**. **He did not provide any other information** in support of his claim. PRPB Officer #17 **never contested his transfer**. Due to this lack of evidence, there is no reason to contest that **the PRPB made this transfer pursuant to the requirements established in the GO Chapter 300, Section 305**.

### PRPB Officer #18:

On July 5, 2018, the PRPB issued and handed a PPR-191 Form to PRPB Officer #18 informing of his immediate transfer to another unit. When IC Pujol interviewed PRPB Officer # 18, he informed that he admonished one employee under his supervision that was not doing his job. According to PRPB Officer # 18, this employee is very close to the PRPB Commissioner with whom said employee has lunch on many occasions. He stated that on the same day that he was transferred to his new position, an administrative complaint against him was filed by this employee, which is still pending.

IC Pujol interviewed several employees that worked for PRPB Officer #18. IC Pujol also visited the SARP offices and reviewed the investigation file related to the administrative complaint. The SARP investigation concluded that the allegations in the complaint against PRPB Officer #18 were SUSTAINED. The file is now at the PRPB Legal Division pending a final determination.

**This case is pending a final determination by the PRPB's Legal Division. Based on the evidence examined and the file reviewed it is more probable than not that the transfer of Officer #18 was not based on retaliation.**

### PRPB Officer #19:

When IC Pujol interviewed PRPB # 19 (a FURA Pilot and Supervisor), he informed that he had filed a PPR Form-144 "Request for External Transfer" (which was approved) because he was receiving exaggerated and unjust pressure from his supervisors. PRPB # 19 explained that a Colonel informed him that the PRPB would pass a directive by which any pilot that refused to transport individuals as ordered (including civilians, which orders he deems are against FAA Regulations) could not be part of FURA. PRPB # 19 alleged that he responded to the Colonel that he disagreed with that directive and that he believed that directive was wrong. He added to his argument with the Colonel that he had already

requested his transfer to leave FURA. PRPB # 19 commented that his transfer request was immediately accepted. PRPB # 19 did not explain why he did not file an administrative complaint, but explained he requested to leave FURA because he was receiving too much pressure from his supervisors to order pilots under his command to engage in flights that were in violation on FAA Regulations and he could not stand this situation for any longer.

Considering all interviews conducted and documentation obtained and reviewed by IC Pujol, **it can be concluded that although PRPB Officer #19 requested a voluntary transfer instead of using the available PRPB's internal complaint processes, <u>PRPB Officer #19's statements appear to be truthful and correct[2] and accordingly, Officer #19 was unduly pressed to leave FURA due to retaliatory threats contained in the illicit directive.</u>**

**PRPB Officer #20:**
IC Pujol interviewed PRPB Officer #20 (a FURA Pilot and Supervisor) who informed that he advised to his superior officer, a Colonel, that he could not convey the illicit instructions (against FAA Regulations) that the Colonel had proposed or intended to impose, to his supervised personnel. He stated that he went home and the next day he received a telephone call from another Colonel informing of his removal from his unit (FURA) and that the following Monday he had to report to another unit. According to all interviews conducted and the documents reviewed by IC Pujol, **this is a RETALIATION case**. PRPB Officer #20 did not contest his transfer.

## Submissions to The Court

Twelve (12) Memorandums of Interview (MOI) supporting the conclusions IC Pujol made regarding the statements of PRPB Officers #19 and #20, and other nine (9) MOIs of interviewed PRPB Officers, will be submitted to the Court in a sealed envelope. The PRPB Officers agreed with IC Pujol that their names would not appear in the Assessment Report, so their identities would not be known by the PRPB[3].

---

[2] IC Pujol concluded that PRPB # 19' statements appear to be truthful and correct after interviewing several other FURA Pilots that directly and indirectly corroborated PRPB # 19's statements.
[3] IC Pujol strongly believes that revealing the identity of the interviewed Officers in these twelve (12) MOIs, could make them target of potential retaliation.

# Conclusion

There were five (5) cases in which the PRPB Officers claimed that their transfers were based on Retaliation, but IC Pujol found only one (1) claim to be correct, that is, the case involving one (1) FURA Pilot/Supervisor, PRPB Officer #20. There was another transfer that it was Retaliatory, the transfer of one (1) FURA Pilot/Supervisor, PRPB Officer #19, who requested a Voluntary Transfer, but who was unduly pressured to leave FURA due to retaliatory threats contained in an illicit directive that a Colonel informed was going to impose. This illicit directive was going to be imposed on the FURA Pilots that PRPB Officer #19 supervised (and on himself, as a Pilot and Supervisor at the same time).

# Transfers of Civilians

On November 1, 2018, IC Pujol met with Ms. Zoraida Sanchez, Head of the PRPB's Human Resources (HR) Department, and three other employees of the HR Department under her supervision. The reason for the meeting was for them to inform IC Pujol how the system of transfers of civilians works at the PRPB.

They explained that it is usually the employee who requests the transfer via a letter. Once this happens, they evaluate the employee's necessity for the transfer and the PRPB real need of him/her at the position that he/she is currently working at. If the supervisor agrees to the transfer, he communicates with the department to which the employee wants to transfer. If the receiving department agrees to the transfer, Human Resources, hereinafter HR, sends a letter to the employee communicating him/her that the transfer has been approved. If the transfer is not approved, a letter is sent to the employee communicating the denial. The PRPB Commissioner signs these letters. The letters inform the employees of the right to appeal the denial of transfer.

If the PRPB transfers an employee based on "Service's Necessity," the process is the following: The Director of the PRPB area that needs the employee must write a request and explain the need. After that, HR evaluates which employees fit the profile, according to the request. Once HR identifies the person, HR informs him/her of the transfer via a letter, and they also inform the employee of the right that he/she has to appeal within

thirty (30) days in the event there is opposition to the transfer. If the employee belongs to a Union, HR informs the Union as well. If the employee appeals the transfer, the CAS handles the appeal. If the employee belongs to a Union, the employee appears along with a Union's Representative before the Office of Complaints and Grievances of the PR Department of Labor.

The HR employees informed IC Pujol that when an employee is transferred, the position remains frozen (closed) until OGP (Management and Budget Office) reopens the same.

They also explained that currently, since Law 8, "Law for the Administration and Transformation of Human Resources in the Government of Puerto Rico." was approved on February 4, 2017, prior to transferring an employee to another agency, they evaluate if the employee's academic preparation, and experience match the requirements of the position. They always try to make "parallel transfers," which means that the transfer does not causes the employee to be promoted or demoted. If the transfer is a temporary one, it only can be for a term of twelve (12) months. Before a determination is made to keep the employee on a permanent basis, OGP must be consulted. There is a requirement to honor the salary that the employee had at the previous agency. The HR personnel informed that the government is working now in creating a unique civilian classification that will apply to all government agencies, to facilitate interagency transfers of civilian personnel.

San Juan, Puerto Rico, this 23rd. day of November 2018.

_____
José L. Pujol
Investigations Consultant

**OFFICE OF THE FEDERAL MONITOR
TO THE SUSTAINABLE REFORM OF
THE POLICE OF PUERTO RICO**
268 Muñoz Rivera, Suite 1001
San Juan, PR 00918