# ASSESSMENT REPORT

**Police of Puerto Rico's Response to the demonstrations and incidents involving the May 1st, 2018 (Worker's Day)**

*Office of the Federal Monitor to the Agreement for the Sustainable Reform of the Puerto Rico Police Bureau*

# OPERATIONAL PLANS

**Many deficiencies were found, being one of the main ones, the multiple contradictions about <u>where the Command Center was</u> located:**

| CHOLISEO | BANCO POPULAR CENTER | PRPB HQ "FUSION CENTER" |
| --- | --- | --- |
| OP – Annex A | OP – Annex A (OPERATIONAL CENTER) | PRPB High Ranking Officer |
| PRPB High Ranking Officer | PRPB High Ranking Officer (OBSERVATION POST) | Federal Monitor Observer (NOT Command Center, ONLY Observation Center) |
| | OP – Annex of an Individual Unit (COMMAND POST) | |

# OPERATIONAL PLANS

## Contradictions about who was the Incident Commander.

| Source OPERATIONAL PLAN | Source PRPB Officer # 1 | Source PRPB Officer # 2 | Source Federal Monitor's Observer (Ponce de Leon, near Bolivia St.) |
|---|---|---|---|
| PRPB Officer # 1 | PRPB Officer # 1 | PRPB Officer # 2 | PRPB Officer # 2 |

CONCLUSION:
There were Two (2) "de facto" Incident Commanders

# TRAINING

According to the information received from the PRPB: <u>NOBODY</u> in the PRPB had been trained on the General Order, Chapter 600, Section 625, titled "Manejo y Control de Multitudes" (Spanish for "Crowd Management and Control") when the May 1, 2018 events occurred.

The PRPB informed that they worked an external course titled "Field Force Operations" issued by F.E.M.A., which allegedly included the necessary elements about how to operate in crowd control situations.

They accomplished the certification of sixteen (16) instructors and approximately two hundred (200) DOT personnel.

# TRAINING



# USE OF FORCE

On May 1st, 2018, five (5) marches were accounted for. Four (4) of these five (5) marches took place in a peaceful and orderly manner.

One (1) march that started at the University of Puerto Rico and met with the group of marchers that started in the vicinity of the Department of Labor (Departamento del Trabajo) building.

Both marches continued until they arrived at the intersection of Ponce de Leon Avenue and Muñoz Rivera Avenue, where the Liberty building is located at. There, <u>there was a thick line of Police Agents that blocked the Ponce de Leon Avenue</u>.

# TRAINING



# INFORMATION IN ASSESSMENT REPORT

## Page #7 of de ASSESSMENT REPORT

It should be noted that hearsay information transpired to the media to the effect that the order to open the blockade came directly from Fortaleza (the Governor's mansion). The misinformation was that PRPB Officer #1, the Incident Commander, allegedly informed journalist Jose Estevez (Telemundo) that it was the Governor who gave the order to the PRPB Commissioner.  The PRPB Commissioner was interviewed and he discredited the rumor stating that it was his own decision to open the blockade at the intersection of Ponce de Leon and Roosevelt Avenue to permit the protesters to go through.

# USE OF FORCE

After a long wait, protesters were allowed to continue Northbound Ponce de Leon Ave.

PRPB Commissioner Henry Escalera claimed he made a good faith decision and honored the negotiations made.

Damages were made at properties in the zone.

PRPB Officer #1 decided to again to block Ponce de Leon Avenue, near the intersection with Bolivia Street, in order to prevent that more damages could ensue to properties in the area.

The protesters encountered another compact line of Police Agents before arriving at the intersection with Bolivia Street.







# USE OF CHEMICAL AGENTS

The evidence showed that, **like it did on the 2017 demonstrations**, the PRPB **DID NOT PROVIDE**:

**Repetitive information to the protesters via loud speakers about:   1) the violations they were committing; 2) <u>informing them of the dispersal order</u>; 3) and informing them about the routes to be taken to leave the area.**

**IC Pujol reviewed many videos and NO warnings were provided.**
**Director of SWAT stated NO warnings were provided.**
**Director of Operaciones Tacticas (Tactical Op.) NO warnings were provided.**

**FAILED by not placing a police officer in civilian clothes in the back of the protesters to listen to the required communications/orders; by not preparing a video recording of the required compliance with General Order Chapter 600 Section 625 (Manejo y Control de Multitudes).**

# CONCLUSION OF THIS USE OF FORCE

The videos depict action that reflects the Police had no intention to allow the protesters to arrive to the Banco Popular area.

From the strategic viewpoint of avoiding confrontation with a crowd, allowing the protesters to pass by the first blockade made at the Liberty building <u>fails to make sense</u>.   While at the Liberty building blockade, the Police had better control of the situation and the protesters had ample space where, if dispersal orders were given, they could easily disband encountering less hazardous situations than they had at the second location where the limited dispersal opportunities and the use of chemical agents created a hectic and dangerous situation for hundreds of protesters of which, the majority was arguably not violent and did not represent an immediate danger

# ABUSE OF FORCE
## Seller of Water



**According to SWAT:**

1. This type of shot (direct to individual) is not allowed.
2. Not made by their ammunition. (Chiefs of Police)
3. Could have been Private Security.  (PRPB's Responsibility)

**According to High Ranking PRPB Officer:**

1. Shield in background (could have been a violent protester)

No PPR Form 854 was prepared for this incident of Use of Force.



# ABUSE OF FORCE
## Seller of Water



# ABUSE OF FORCE
# Spray of Chem. Agents



The evidence shows that this person didn't represent a threat or a risk to property or the safety of any officer. She only displayed <u>passive resistance</u> that did not merit aggressive techniques.

Section 604 of the General Order states that PRPB agents <u>will avoid</u> the use of pepper spray <u>at a distance of less than three (3) feet of a person, unless the situation involves an imminent risk or threat of suffering grave bodily injury, and the use of the pepper spray is the only reasonable method to control the person and avoid the damage</u>. According to Section 604, <u>the minimum distance to use the chemical agent is six (6) feet away from the person, which was not the situation in this case.</u>

No PPR Form 854 was prepared for this Use of Force.





**Request to inspect all PPR Form 854 (Use of Force) forms related to May 1st, 2018.**

**Four (4) forms were shown.**

**Agreement between FIU Director and IC Pujol**

**After Report is completed…**

# ABUSE OF FORCE
## Member of the Press

The third incident involves aggressive action taken by PRPB officers against a bona fide member of the press while attempting to cover an arrest incident with his hand-held camera equipment.

The evidence shows that the reporter <u>had properly identified himself</u> and <u>was complying with an agent's instructions</u> when he was struck with a baton in his back by another PRPB agent.

No PPR Form 854 was provided for this Use of Force.

# ABUSE OF FORCE - Member of the Press



# ABUSE OF FORCE - Member of the Press



# ABUSE OF FORCE - Member of the Press



# Arrests and Judicial Actions

The PRPB provided a Report listing that during the events of May 1st, 2018, **nineteen (19) persons were arrested (including names, crimes commited, arresting Agents.)**

Statistics provided by the **PR Office of Court Administration** include information up October 10, 2018, which revealed that **only eight (8) of the arrestees have been charged of any crime.**

One (1) of them was cleared of the charges by a Judge, who found "No Cause" against him The other seven (7) arrestees have pending hearings.

**The fact that only eight (8) of the nineteen (19) arrestees have been charged with any crime before a Court, and that one (1) of them has already been cleared by a Judge, COULD CREATE DOUBTS of if some of the other eleven (11) not charged arrestees could have been arrested without enough evidence to sustain charges in a Court of Law.**