**[CERTIFIED TRANSLATION]**

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 1 of 20

|  |  |  |
|---|---|---|
| [round logo: GOVERNMENT OF PUERTO RICO] | GOVERNMENT OF PUERTO RICO<br>DEPARTMENT OF PUBLIC SAFETY<br>Puerto Rico Police Bureau | **Héctor M. Pesquera**<br>Secretary<br>**Henry Escalera Rivera**<br>Commissioner |

**OS-1-1-375**

**October 25, 2018**

**Valerie Concepción Cintrón, Esq.**
Federal Litigation and Bankruptcy Division
Department of Justice

[illegible signature]
**Col. Reinaldo Bermúdez**
Associate Commissioner

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

[initialed: RBO] This is in reference to the "ASSESSMENT REPORT: Police of Puerto Rico's Response to the demonstrations and incidents involving the May 1, 2018 [sic] (Worker's Day)" (hereinafter, "Report") filed on October 10, 2018, by the Office of the Federal Monitor. The Report evaluates the response of the Puerto Rico Police Bureau (hereinafter, PRPB) to the events that took place on May 1, 2018, as per the instructions of the Honorable Gustavo A. Gelpí, chief judge of the U.S. District Court, which details the findings of Investigator José Pujol, a member of the monitor's team, resulting from the investigation that was conducted. The Investigator mentions the various mechanisms that were used to compile the information: search and review of documents provided by the PRPB; individual, joint, and focus group interviews; observation of available videos; and evaluation of training, among others. After receiving the final Report from the Office of the Monitor, the PRPB is filing its answer to the most significant findings presented by the Investigator in the Report. The answer of the PRPB is divided into independent topics and presented in a logical order of events.

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 2 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

## 1.  Operational Plan

Among the conclusions reached by Mr. Pujol, he determined that the Operational Plan is deficient in several aspects. First, we must detail each of the conclusions of the Investigator for a better understanding.

Mr. Pujol concluded that the PRPB did not inform what roads or route the protesters had to follow to reach the stage to be used to exercise their free speech.[1] To such effect, we must mention that the PRPB called all the participants in the demonstration to a meeting by means of a press conference so that they would inform and coordinate with the PRPB any particular need or concern pertinent to the legitimate exercise of free speech that would take place on May 1st. The press conference was held on April 24, 2018.



---

[1] Assessment Report, p. 22.

**[CERTIFIED TRANSLATION]**

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 3 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

The groups' failure to attend the PRPB's meeting prevented their opinions or preferences regarding the established routes from being taken into consideration. Only the UTIER [Power and Irrigation Industry Workers' Union] and a few other groups attended the meeting. The team of constitutional attorneys from the Office of the Federal Monitor made a comprehensive legal analysis of the controversy related to whether or not the Police could establish the route to be followed by the protesters. After a legal analysis of applicable state and federal case law, they determined that the Government of Puerto Rico can regulate a manifestation in terms of time, place, and form. Therefore, the Police Bureau's unilateral establishment of the route that the protesters would follow was a legal and legitimate exercise. As a recommendation for the future, Mr. Pujol established that the route that protesters must follow should be shared with the public through various media outlets.[2] In his Report, Mr. Pujol recognizes that the PRPB does not have a legal obligation to inform the public in advance about the route that will be followed the day of the manifestation.

[initialed: RBO]

The Investigator states that the PRPB submitted an Operational Plan that did not contemplate a number of possibilities that could occur before, during, and after the manifestation and should have been foreseen and contemplated in the same. We disagree with Mr. Pujol's assessment. The principal characteristic of an Operational Plan must be flexibility, as it must be capable of being adjusted and adapted to any eventuality that may occur. It would be counterproductive to create or list the countless events that could occur during a manifestation or mass event on an Operational Plan. The experience and expertise of the Incident Commander and the Officers posted at the manifestation will help them make the most reasonable and prudent decision required by the circumstances. Human behavior is so changeable that it would be impossible to develop an Operational Plan containing all the creativity a person is capable of exhibiting.

We must emphasize that the PRPB made reasonable efforts to call the groups that would attend the manifestation to a meeting, and the Assistant Superintendent for Field Operations, Colonel Luis Colón, was able to meet with several groups, as established by Public Law No. 366-2004, as

---

[2] *Id.*, p. 43.

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 4 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

amended, known as the *Act to Plan and Coordinate Public Impact Activities*. In general terms, the purpose of this legislation is to protect the right to free speech within a context of peacefulness, stability, and safety for everyone. The statute therefore establishes a public policy framework that enables planning and contingency mechanisms that will allow the State to coordinate with various organizations the activities, marches, and protests of all civic, social, union, political, and religious sectors of the country. The PRPB transparently complied with said public policy.

In relation to the issue of the operational plans, we reiterate that they are work tools that must be adjusted to the wide range of possibilities that can arise in this kind of event.

We respectfully disagree with Mr. Pujol's statements regarding the fact that the PRPB has the absolute responsibility to prevent private security agencies from being present in the area of the manifestation.[3] In our legal system, these agencies are government by Public Law No. 108 of June 29, 1965, as amended, known as the "*Act to Regulate the Private Detective and Security Guard Professions in Puerto Rico*," 25 LPRA §§285, *et seq.* (Public Law No. 108).

Article 9 of Public Law No. 108 establishes the provisions related to security agency licenses to protect persons or real or personal property. It states that the Superintendent (Commissioner) shall grant a security agency license when requested by one or more private detectives or by a corporation organized with the purpose of operating an agency, as long as its chief executive officer is a private detective with a license granted by the Superintendent (Commissioner). 25 LPRA §285(h).

Note that PRPB regulates the issuing of licenses for security agencies, private detectives, and security guards, but does not interfere with the power of private businesses and entities to retain

---

[3] Assessment Report, p. 26.

**[CERTIFIED TRANSLATION]**

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 5 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

these agencies to protect their property. This is a matter involving the legal power of said private corporations to retain private companies, a contractual relationship that the PRPB cannot impair. Regarding this matter, Article 2 of Public Law No. 108 establishes that private security guards have various powers—such as protecting persons or real or personal property or preventing dangerous incidents, risks, crimes, thefts, or the misappropriation or illegal removal of money, bonds, shares, or any kind of securities or documents—with a preventive purpose aimed at maintaining order in a specific area. 25 LPRA §285(a).

We would like to emphasize the fact that the right to free speech does not imply an absolute lack of restriction. That is, it may be subordinated to other interests when public need, safety, and convenience require it. *Mari Bras v. Casañas*, 96 DPR 15. In that sense, the PRPB cannot be required to have infallible operational plans, because countless variants of public safety [incidents] can occur in that kind of free speech manifestation, in which members of the PRPB must maintain a fair balance between defending the exercise of free speech while simultaneously promoting the protection and safety of people and property.

[initialed: RBO]

The exercise of violence is not protected under the constitutional right to free speech. Violence or other kinds of potentially expressive but harmful behaviors, regardless of their possible communicative impact, constitute practices deprived of constitutional protection. The opinion claiming that, as long as a person is trying to communicate an idea, there is an unlimited variety of behaviors that can be labeled as "speech" has been rejected. Therefore, physical assault is not an expressive behavior protected by the First Amendment of the U.S. Constitution. *Pueblo v. Figueroa Jaramillo*, 170 DPR 932 (2007). Fifteen (15) police officers were injured at said manifestation by people who intended to unleash violence in an act of freedom of speech. Nevertheless, we do not intend to generalize; only a handful of people attended [the manifestation] with the intention of using violence and tainting a valid constitutional exercise, which the PRPB did not allow. The Puerto Rico Supreme Court (PRSC) has established that individual or organized

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 6 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

expressive behaviors that present violence, significant disorder, or encroachment upon the rights of other citizens, even within the context of a worker-employer dispute, can be restricted by government authority. Maintaining public peace and order, sound social coexistence, and general welfare are values that warrant protection above any consideration of any individual or particular group. *Pueblo v. Figueroa Jaramillo*, *supra*, p. 941.

Another area that Mr. Pujol mentions as a deficiency in the development of the Operational Plan consists of the fact that the abovementioned Plan (Appendix A) determined that there were two (2) Command Centers.[4] On the contrary, an officer whom he identified as number 21 reported that there would be two (2) Command Center and one (1) Observation Center. This statement by the officer is not in keeping with the provisions of the Operational Plan, as shown in what Mr. Pujol reported. Therefore, it would not be correct to find a deficiency in the Operational Plan.

Appendix A of the Operational Plan established an Interagency Command Center located at the Coliseo de Puerto Rico José Miguel Agrelot and an Operational Center located on the 10th Floor of Banco Popular. Both Centers were constituted in accordance with this Plan. The statements made by an officer do not constitute evidence that the PRPB established an Observation Center. We must point out that the investigation conducted by Mr. Pujol's work team did not produce evidence of that third Observation Center. Therefore, presenting information provided by an officer about the existence of said Center in a report that will be published for the public without having evidence supporting the officer's allegation could send the wrong message to the public about PRPB's actions and be interpreted as a deliberate attempt by the PRPB to misinform the Office of the Monitor about the true location [of the center].

Mr. Pujol alleges that there was a deficiency in the Operational Plan and a violation of the General Order, Chapter 600, Section 625, entitled "Crowd Management and Control" (GO 625) consisting

---

[4] Assessment Report, p. 21.

**[CERTIFIED TRANSLATION]**

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 7 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

of having two (2) Incident Commanders; one who was allegedly the person designated to handle the manifestation and another one who crafted the Plan and would implement it in the field. As shown in the Operational Plan, Colonel Luis O. Colón Ortiz, Assistant Commissioner of the Office of the Assistant Superintendent for Field Operations, was designated as Incident Commander. We must point out that, taking into consideration the prior experience on May 1, 2017, Lieutenant Colonels were assigned to the various posts in the event with the responsibility of covering a perimeter in order to manage the event efficiently.

We must reiterate that the Operational Plan was crafted by Colonel Luis O. Colón Ortiz and included as appendices the various Operational Plans drafted by the Area Commander, the Forces United for Rapid Action (FURA) Bureau, and the Highway Patrol Bureau, among others. If any officer perceived that being in charge of a perimeter meant that he or she was the Incident Commander, that assessment was incorrect. The PRPB reaffirms that there was only one Incident Commander who participated in the manifestation of May 1, 2018.

[initialed: RBO]

**2.   Lifting of the first blockade**

In his Report, Mr. Pujol states that the PRPB violated GO 625 by allowing decisions to be made from La Fortaleza about allowing protesters to pass through the first blockade. This resulted from the interview of an officer identified as number 1 (Incident Commander) who told news reporter José Estévez from Telemundo that the decision to allow the protesters through was made by the Governor. According to Mr. Pujol, this undermines the ability of the Incident Commander to control the actions in accordance with the established plan. However, the Governor of Puerto Rico is the Commander in Chief of the PRPB. The Secretary of the Department of Public Safety is next in line in terms of the authority to make decisions, as provided by Public Law No. 20-2017, as amended, known as the *Puerto Rico Department of Public Safety Act* (Public Law No. 20). Neither the Agreement for the Sustainable Reform [of the Puerto Rico Police Bureau] nor GO 625 nor any

[CERTIFIED TRANSLATION]

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

other statute or internal rule of the Bureau can limit the Governor's legal power to issue legal instructions to his heads of agencies.

We deny the fact that the Governor issued instructions in said manifestation. Nonetheless, if he had, it would be in keeping with his powers and authorities as chief executive of the country. The fact that Article IV, Section 4 of the Constitution of the Government of Puerto Rico establishes as one of the powers of the Governor precisely being Commander in Chief in matters of public safety supports our argument. Likewise, Article 1.04 of Public Law No. 20 establishes that the supreme authority in relation to the management of the Department of Public Safety shall be exercised by the Governor of Puerto Rico and the immediate management and supervision of the organization is delegated to the Secretary of Public Safety. Moreover, Article 1.05 (a) establishes that the Secretary shall have duties and powers including, but not limited to being in charge of the hierarchical authority, management, and immediate supervision of the Department of Public Safety. In turn, Article 2.01 of Public Law No. 20 establishes that the PRPB shall be attached to the Puerto Rico Department of Public Safety under the direct, non-delegable supervision of the Secretary of Public Safety.

On the other hand, we must point out that the reason that led to the lifting of the first blockade was the importance of honoring the agreements between the PRPB and the protesters, who requested access to go through the Ponce de León Avenue and informed that they would maintain order. The acts of violence caused by the protesters once they went through the first blockade showed that it would be impossible to allow them to continue along said avenue.

3. **Second blockade**

During the second blockade on the Ponce de León Avenue at the intersection of Bolivia Street, the protesters' behavior was extremely violent. Mr. Pujol's Report shows that the protesters were throwing rocks, bricks, and irritating liquids, among other sharp and blunt objects, at the members of the PRPB who were in blockade formation.[5] In view of this behavior, the use of gases and other

---

[5] Assessment Report, p. 10.

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 9 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

less-than-lethal weapons to control the situation, which the Investigator himself recognizes throughout his Report represented an imminent risk to all parties present therein, was unavoidable.

The controversy raised by the Investigator is based on the fact that he received contradictory information regarding the compliance with the provision of GO 625 that imposes on the PRPB the obligation to give dispersal warnings before employing gases or using less-than-lethal weapons. Nonetheless, we very respectfully disagree and reaffirm that the Investigator erred in concluding that the dispersal orders were not given. The Report itself shows that Mr. Pujol received conflicting information from various officers. Some of the officers informed him that dispersal warnings were given, but the equipment used by the PRPB at that second blockade had less capacity in terms of decibels than the equipment used at the first blockade.[6] Therefore, the vehicle with sound equipment used by the protesters did not allow the warnings to be heard. Other officers informed the Investigator that the warnings were not given. This contradiction in the information received by the Investigator does not allow him to reasonably and objectively reach any conclusion.

[initialed: RBO]

Moreover, we must specify that the person responsible for giving the protesters the warnings preceding the dispersal order was Commander Guillermo Rivera Rosario, Badge No. 3-16569.[7]

The second blockade presents another controversy to the effect that the PRPB did not place a Member of the PRPB (hereinafter, MPRPB) behind the protesters to record and evidence that the dispersal warnings were given, in compliance with GO 625. The PRPB recognizes that the MPRPB was not placed. The reason for this decision was directly due to the degree of extreme risk this MPRPB would have faced of being assaulted or murdered by some of the protesters who were committing crimes. The Investigator himself recognized the reality experienced on May 1, 2018, minutes before the dispersal of gases. Recognizing the level of risk involved in placing a Member

---

[6] *Id.*, p. 13.
[7] To such effect, refer to **Exhibit 1** herein: Megaphones used during the manifestation of May 1, 2018.

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 10 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

of the PRPB in these circumstances, the team of constitutional attorneys of the Office of the Monitor recommends looking into the possibility of amending GO 625 to eliminate said requirement. The PRPB agrees with the assessment of the Monitor's team of experts in constitutional matters and informs that it will submit a formal request to the U.S. Department of Justice and the Monitor to eliminate said requirement from GO 625.

Nonetheless, the PRPB informs that Colonel Francisco Rodríguez, Colonel Luis Colón, and Lieutenant Colonel Israel Vázquez were in the area close to where the dispersal orders were issued along with the corresponding warnings, and they maintain that they heard them.

### 4.  Use of Force

According to the Report that was filed, there were multiple incidents of use of force that were not documented or were documented deficiently.[8] In an interview with Lieutenant Javier Santiago, FIU Director, he informed that he had four (4) Use of Force Reports. Later on, at a meeting held by the PRPB with Lieutenant Santiago, he said that the number of Use of Force [Reports] had increased to fifteen (15). The PRPB recognizes the obligation to prepare all Use of Force Reports (PPR-854). Therefore, instructions were given to identify and thoroughly analyze all Use of Force Reports or any other report produced as a result of the manifestation of May 1st, including PPR 920 (A) reports, entitled "Record of Mobilizations of the Specialized Tactical Units (STU)," as part of a self-assessment process. They will also be referred to the Office of the Monitor for the corresponding assessment.

One of the incidents that the Report alleges was not documented was that of a water street seller. This man received nine (9) impacts of what seems to be rubber or plastic bullets. Mr. Pujol's

---

[8] Assessment Report, at pp. 14 and 110.

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 11 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

conclusion to the effect that the wounds the man received were caused by a Member of the PRPB is unsustainable. The evidence evaluated by the Investigator was, first, the testimony of the victim himself, who described the clothing worn by the person responsible for causing his wounds as grey.[9]

In an interview, Officer #12, SWAT Unit Director, told Mr. Pujol that the color of the uniform of the members of his work unit, which they used on the day of the manifestation, is green. He also stated that, in his opinion and according to his expertise, the wounds presented by the gentleman are not compatible with the rubber bullets used by the SWAT Unit. On the contrary, they seem to have been caused by plastic bullets, which are not used by his work unit. The experience of Officer #12 regarding dispersal patterns of rubber bullets, their effects, and the physical marks they leave on the body is the result of his training on the matter. In an interview with Officer #12, Pujol found unsurmountable inconsistencies between what the interviewee stated and the General Order, Chapter 600, Section 620, Specialized Weapons for Specialized Tactical Divisions, regarding the issue of the distance of the shots.

[initialed: RBO]

Mr. Pujol mentions that Officer #12 stated the following: "If the person is located 6 feet or less away from the Member of the PRPB, they must shoot at the floor so that the ricochet hits the person. If the person is located 6 feet away or more, the person may be shot directly."[10] The PRPB clarifies that what Officer #12 stated was that General Order 620, *supra*, provides for dispersal techniques and training courses that the Members of the PRPB assigned to Specialized Tactical Units must take. Later on, at the training, MPRPBs are prepared so that they can shoot at the floor when the person is less than six (6) meters away, not six (6) feet as Mr. Pujol said. Officer #12 never stated that the information about the distances was included in General Order 620, *supra*, but rather in the training. He also stated that the pattern and circular marks of the wounds presented

---

[9] *Id.*, at pp. 16 and 63.
[10] Assessment Report, at pp. 76 and 109.

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 12 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

by the individual are not compatible with the pellets of the less-than-lethal impact ammunition used by the SWAT Division.

The irregular pattern, circular marks, and depth seen in the photo show that the ammunition shot at the individual is of a higher caliber or measurement than that used by the Division. Currently, there is a variety of less-than-lethal impact ammunition in the market with bigger pellets made of different materials, such as solid plastic, among others, that can be easily accessed by correctional and private security agencies both through direct sales, at local stores, and online. To conclude our assessment of this incident, we would like to state that no Use of Force Report was prepared in relation to this event because it is not accepted by the PRPB. The PRPB does not recognize that the incident was committed by a Member of the PRPB.

Another Use of Force incident discussed by Mr. Pujol is the incident of a woman who was at the manifestation and received an application of pepper spray from a Member of the PRPB belonging to a work unit that could be concluded is SWAT. Mr. Pujol alleges in his Report that no PPR-854 entitled "Use of Force Report" was prepared.[11] Nonetheless, it is extremely important that we refer to page 16 of the "ASSESSMENT REPORT" filed by the Office of the Monitor, where the Investigator evaluated the photo presented therein. Concluding that the event presented there lacked any justification is incorrect. The Investigator does not know all of the circumstances surrounding the moments before the picture was taken.

The third incident mentioned by the Investigator points out the alleged aggressive actions by some Members of the PRPB toward a Metro newspaper reporter.[12] Mr. Pujol said that no PPR-854 entitled "Use of Force Report" was prepared. We must state that the case was referred to the Office of the Assistant Superintendent for Professional Responsibility (SARP [Spanish acronym]) by the

---

[11] Assessment Report, p. 17.
[12] *Id.*

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 13 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

Commissioner himself for the corresponding investigation procedures as an affirmative action [showing] the PRPB's commitment to addressing allegations that are presented in a responsible and diligent manner. The administrative investigation is underway.

In turn, we must consider that, on May 3, 2018, the Metro newspaper filed a Motion for Provisional and Permanent Injunction against the Department of Public Safety and the PRPB with the Court of First Instance (CFI), San Juan Part.[13] On May 4th, the Court issued an *Order and Subpoena* denying the motion, but scheduled an urgent hearing to rule on whether or not the requested injunction was in order. To such effect, the Government of Puerto Rico filed an *Urgent Motion to Dismiss* and a *Petition for Writ of Certiorari and Order in Aid of Jurisdiction* with the Court of Appeals. Said Court issued a *Resolution* staying the proceedings before the CFI and granting plaintiff-respondent a period of time to express its position about the petition that was filed. On September 25, 2018, after holding two hearings at the San Juan Court, the Honorable Judge Anthony Cuevas Ramos issued the following *Order* addressed to Metro:

[initialed: RBO]

> At the hearing held on September 13, 2018, we ordered plaintiff to express its position regarding its insertion in the administrative and court proceedings carried out through the Police Reform and the Federal Monitor assigned by Judge Gelpí from the federal court. It was specifically required to express the reasons why we should not dismiss the complaint in view of these appropriate legal remedies to address its claim. Proceed to express its position providing the grounds for the same.

Therefore, the procedural matter is pending resolution.

Moreover, the Investigator concludes that Use of Force Reports are missing and were not prepared because the images of the manifestation he was able to see showed a high number of interactions between Members of the PRPB and the protesters. We must remember that GO 625 establishes that "as a general rule, people will not be arrested only because they have disobeyed the instructions of the PRPB during a civil disturbance. Nonetheless, during this kind of situation,

---

[13] Metro Puerto Rico, LLC, y otros vs. Departamento de Seguridad Pública, civil case no. SJ2018-CV-02876.

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 14 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

it shall be reasonable to use soft [empty] hand, hard [empty] hand, and people lifting techniques." In short, the assessment that all physical contact between protesters and MPRPBs will necessarily result in a Use of Force Incident Report is not correct.

It is important to point out that GO 625 provides that, if there is use of force by Members of the PRPB belonging to a squadron, group Use of Force Reports shall be prepared by the Squadron Leader who gave the instructions to use chemical agents or less-than-lethal weapons (see paragraph 7, page 24 of GO 625). These group reports were prepared and are available for evaluation by Mr. Pujol and the Federal Monitor.

Part III, section D of General Order 600-625 entitled "Crowd Management and Control" provides that each use of less-than-lethal weapons and ammunition against a person or animal constitutes an independent use of force. We must point out that, in these events, when an MPRPB uses force, the supervisor has five (5) business days to conduct the investigation, the Precinct Director has three (3) business days to review the supervisor's investigation, and the Area Commander has the same period of time as the Director. However, in the case of level 2 and 3 use of force incidents, the Area Commander must activate the Use of Force Board; once the Board evaluates the incident, it submits the results of the investigation to the Area Commander, who will have fifteen (15) business days to complete the evaluation of the incident.

After this procedure is completed, it is sent to the Office of the Assistant Superintendent for Professional Responsibility for analysis and follow-up. As a result of the procedure described above, when Mr. Pujol requested the Use of Force Reports from the Use of Force Incidents Investigation Division, he was only shown four (4) reports. This was the number of reports that had been received until then. However, eight incidents occurred during the event, with sixteen (16) Use of Force Reports. We respectfully request that Mr. Pujol reconsider and verify the remaining Use of Force Reports that are available at the Use of Force Incidents Investigation Division.

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 15 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

We must point out that a protocol will be established to facilitate the accounting of Use of Force Reports in future events during manifestations and mass events.

**5.   Arrestees:**

The Investigator establishes a direct relation between the failure to file criminal charges against eleven (11) of the nineteen (19) persons who were arrested during the manifestation of May 1st and an improper and unlawful action by the Members of the PRPB. Mr. Pujol relies on the fact that the failure to file charges is due to a lack of enough evidence to prevail in court.[14] It is important to point out that the legal standard in Puerto Rico to justify the intervention of a Member of the PRPB with a citizen is "probable cause" under Rule 11 of the Rules of Criminal Procedure, 34 LPRA App. II.

[initialed: RBO]

In that sense, we must keep in mind that a law enforcement officer is authorized to make an arrest in the following circumstances:

   a.   When the officer has probable cause to believe that the person who is to be arrested has committed a crime in the officer's presence. In this case, the person must be arrested immediately or within a reasonable amount of time after committing the crime. Otherwise, the officer must request an arrest warrant.

   b.   When the arrestee has committed a felony, albeit not in the officer's presence.

   c.   When the officer has probable cause to believe that the person who is to be arrested has committed a felony, regardless of whether or not the crime has really been committed. 34 LPRA App. II, R. 11.

There are numerous rulings in which the Puerto Rico Supreme Court has defined what constitutes the "probable cause" that, by exception, allows an arrest without a warrant. To such effect, the

---

[14] Assessment Report, p. 20.

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 16 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

Court has ruled that there is probable cause if the totality of the circumstances of the case in question shows that an ordinary, prudent person would have the information and knowledge that would lead said person to believe that the arrestee has committed or is going to commit the crime in question. *Pueblo v. Colón Bernier*, 128 DPR 180 (1999). The arrests made by the Members of the PRPB were in keeping with the existing legal principles regarding how to make the same, particularly under the provisions of Rule 11 of the Rules of Criminal Procedure.

Moreover, the truth is that the final decision as to whether or not to file criminal charges against a person does not rest with the PRPB but with a prosecutor of the Department of Justice. The prosecutor's decision not to file charges can be the result of a number of factors that are not necessarily related to the course of action of the Member of the PRPB.

### 6.  Training

The Investigator requested information on all the training taken by the Members of the PRPB who participated in the manifestation. According to the Report, 1,225 MPRPBs participated in the manifestations of May 1st and information was provided only on the training received by 287 of them.

With regard to GO 625, we must establish that the challenges faced by the PRPB to develop training have been discussed at length. One of the particularly determining factors has been that the existing instructors had not been recertified for approximately ten (10) years, which implied a new scenario to consider in the process of designing training. However, in July 2017, the Office of the Assistant Superintendent for Education and Training (SAEA [Spanish acronym]), together with FEMA, certified 16 instructors, as well as all the personnel of the Tactical Operations Division, on the Crowd Management and Control course designed for this Division.

The Joint Motion filed by the U.S. and Puerto Rico Departments of Justice for an extension of time

**[CERTIFIED TRANSLATION]**

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 17 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

for the 33 activities of the Action Plans includes a document establishing the affirmative actions carried out by the SAEA to try to comply as soon as possible with the development of the Crowd Management and Control training courses for all Members of the PRPB, as well as the Incident Commander training aimed at the high-ranking officers of the Bureau. We recognize that this is a matter of vital priority for us and that we are still working on carrying out said projects.

We must also consider that we are in the process of developing and validating several technological systems that have the ultimate objective of digitizing the processes. We will soon inaugurate a system that will contain the training record of the Members of the PRPB. It will be updated with the records of the SAEA Registration Office. This will allow [us to obtain] a snapshot of the record of each MPRPB and, in turn, facilitate the production of the required information. Currently, not all the information is mechanized in our records, which makes it onerous to identify the training record of each MPRPB who participated in the manifestations.[15]

[initialed: RBO]

## 7.  Self-assessment

Mr. Pujol stated that the Self-assessment Report filed by the PRPB lacks important information, as it only includes seven (7) strengths and three (3) weaknesses.[16] Based on the foregoing, the Investigator makes several recommendations regarding what, in his opinion and according to best police practices, a self-assessment report must contain. The PRPB would like to thank Mr. Pujol for his recommendations and very respectfully informs that the Self-evaluation that was filed complies with the stipulations of GO 625 (page 27, paragraph (d)).

We must point out that the Report ("Critique") prepared on May 18, 2018, by the PRPB Assistant Commissioner for Field Operations meets the criteria established in the General Order cited above.

---

[15] To such effect, see **Exhibit 2** of the document herein: Justification of Extension of Time for Training.
[16] Assessment Report, at pp. 92 and 111.

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 18 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

In fact, the Report objectively describes the weaknesses and strengths shown during the manifestation. In general terms, it concludes that the MPRPBs acted in keeping with the instructions provided, according to the operational plan prepared for the manifestation. The self-assessment that was conducted is a positive one because, if we look at the number of administrative complaints filed against the PRPB, it has been a tiny number in proportion to the thousands of protesters and human resources deployed for the event. The foregoing leads us to conclude that the PRPB did an outstanding and admirable job in keeping with GO 625.

The PRPB would like to thank the Office of the Monitor for its efforts identifying areas we must improve. However, the PRPB has made many advancements in the implementation of the Agreement for the Sustainable Reform [of the Puerto Rico Police Bureau] and, in particular, GO 625. We respectfully disagree with Mr. Pujol's conclusions as to most of the core points that the Report classifies as deficiencies of the Bureau. The deficiencies found in the investigation contain a highly subjective element in the assessment of the evidence [Mr. Pujol] had before his consideration. Nonetheless, we recognize that there are still challenges we must overcome, and we are willing to reinforce whatever may be necessary institutionally and operationally to meet the dual duty to protect the exercise of free speech within an environment that will, in turn, protect people's life and property, in compliance with what our highest Court has established: "The principle of peaceful social coexistence must continue to be our standard and guide in the democratic exercise of our constitutional and legal rights." *Pueblo v. Figueroa Jaramillo*, *supra*, p. 947.

After a detailed and in-depth analysis of the conclusions reached by Mr. Pujol, the PRPB very respectfully requests that the possibility of amending the "ASSESSMENT REPORT" filed by the Office of the Federal Monitor be considered to correct the findings presented as deficiencies that we will mention below:

     i.     The determination that there were unreported use of force incidents from the mere observation of videos and images that led him to conclude said fact without further information.

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 19 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

    ii.     The determination that the Operational Plan was deficient for the reasons set forth above.

    iii.    The conclusion that the warnings preceding the dispersal of gases and the use of less-than-lethal weapons during the second blockade, in accordance with GO 625, were not given.

    iv.    The determination that there was more than one (1) Incident Commander during the manifestation of May 1st.

    v.     The determination and insinuation that the PRPB deliberately misinformed the Office of the Federal Monitor about the real location of the Command Centers.

    vi.    The interpretation that GO 625 establishes that all use of force incidents must be reported individually. GO 625 is clear as to how to report use of force incidents by MPRPBs who belong to specialized unit squadrons.

[initialed: RBO]

    vii.   The Investigator's statement ascribing to the MPRPBs absolute responsibility for controlling and preventing any private security agency working in the area of the manifestation from doing its job.

    viii.  The determination that the failure of the Department of Justice to file criminal charges against some of the persons who were arrested during the manifestation of May 1st was due to the fact that the PRPB did not have "enough evidence" to prove the charges.

We are proud of the performance of the Members of the PRPB during the manifestation of May 1st. They demonstrated commitment, integrity, and compliance with the established rules and procedures. We do not agree with Mr. Pujol's assessment that the manifestation of May 1, 2017, was the same as this one. There were great advancements that cannot be disregarded. We are in a process of constant learning, so we will take advantage of any window of opportunity that will allow us to continue improving our police practices. Finally, the PRPB reiterates its commitment

[CERTIFIED TRANSLATION]

Case 3:12-cv-02039-GAG   Document 1044-1   Filed 12/07/18   Page 20 of 20

**Comments of the Puerto Rico Police Bureau to the Assessment Report on the Demonstration of May 1, 2018, filed by the Office of the Monitor**

and interest in making this Bureau fully and effectively compliant with the Agreement for the Sustainable Reform [of the Puerto Rico Police Bureau].

**CERTIFICATE OF TRANSLATION INTO ENGLISH**

I, Miriam R. García, of legal age, married, a resident of Valladolid, Spain, and a federally-certified court interpreter and professional translator, do HEREBY CERTIFY that I have personally translated the foregoing document and that it is a true and accurate translation to the best of my knowledge and abilities.

In Valladolid, Spain, today, January 3, 2019.

Miriam R. García
ATABEX TRANSLATION SPECIALISTS, Inc.
P.O. Box 195044, San Juan, PR 00919-5044