No. 18-331

====================================================

In The

# Supreme Court of the United States

———————◆———————

RAFAEL PABON-ORTEGA,

*Petitioner,*

v.

ISABEL LLOMPART-ZENO, in her personal capacity;
SIGFRIDO STEIDEL-FIGUEROA, in his official
capacity as Administrator of the Administration of
Tribunals of the Commonwealth of Puerto Rico,

*Respondents.*

———————◆———————

**On Petition For A Writ Of Certiorari
To The United States Court Of Appeals
For The First Circuit**

———————◆———————

**BRIEF IN OPPOSITION FOR RESPONDENTS**

———————◆———————

CARLOS LUGO-FIOL
P.O. Box 260150
San Juan, PR 00926
Tel. (787) 645-4211
E-mail: clugofiol@yahoo.com
*Counsel of Record*

ISAÍAS SÁNCHEZ-BÁEZ
Solicitor General
 of Puerto Rico
OFFICE OF THE
 SOLICITOR GENERAL
DEPARTMENT OF JUSTICE
COMMONWEALTH OF
 PUERTO RICO
P.O. Box 9020192
San Juan, PR 00902-0192
Tel. (787) 724-2165
Fax (787) 724-3380
*Counsel for Respondents*

====================================================

i

## COUNTERSTATEMENT OF
## QUESTIONS PRESENTED

1.  Whether the Court of Appeals for the First Circuit correctly determined that the automatic stay provided for in Title III of PROMESA, wherein Congress incorporated, among others, Sections 362 and 922 of the Bankruptcy Code, 11 U.S.C. §§ 362 and 922, applies to appeals in cases brought pursuant to 42 U.S.C. § 1983.

2.  Whether the automatic stay provided for in Title III of PROMESA, wherein Congress incorporated, among others, Sections 362 and 922 of the Bankruptcy Code, 11 U.S.C. §§ 362 and 922, deprives petitioner of his right to access the courts with regards to his Section 1983 complaint.

ii

## LIST OF PARTIES AND
## CORPORATE DISCLOSURE STATEMENT

Respondents are Isabel Llompart-Zeno, in her personal capacity, and Sigfrido Steidel-Figueroa in his official capacity as Administrator of the Administration of Tribunals of the Commonwealth of Puerto Rico. No disclosure need be provided under Rule 29.6 because no parent corporation, and no non-governmental corporations or publicly held companies are a party to this action.

iii

## TABLE OF CONTENTS

Page

COUNTERSTATEMENT OF QUESTIONS PRE-
SENTED ............................................................. i

LIST OF PARTIES AND CORPORATE DISCLO-
SURE STATEMENT........................................... ii

TABLE OF CONTENTS ...................................... iii

TABLE OF AUTHORITIES ................................. v

BRIEF IN OPPOSITION ..................................... 1

COUNTER-STATEMENT OF THE CASE .......... 1

   A.   Introduction............................................... 1

   B.   Procedural Background ............................. 3

REASONS FOR DENYING THE WRIT OF *CER-
TIORARI* ........................................................... 5

   I.   Considerations Governing Review on Cer-
tiorari........................................................ 5

  II.  The First Circuit correctly determined
that the automatic stay provided for in
Title III of PROMESA, wherein Congress
incorporated, among others, Sections 362
and 922 of the Bankruptcy Code, 11 U.S.C.
§§ 362 and 922, applies to appeals in cases
brought pursuant to 42 U.S.C. § 1983 ....... 6

iv

TABLE OF CONTENTS – Continued

Page

III.  The automatic stay provided for in Title
III of PROMESA and in Sections 362 and
922 of the Bankruptcy Code do not deprive
Petitioner of his right to access to the
courts with regards to his Section 1983
complaint .................................................... 18

CONCLUSION .................................................... 20

v

## TABLE OF AUTHORITIES

Page

CASES

*Assured Guaranty Corp., et al. v. Financial Oversight and Management Board of Puerto Rico (In re The Financial Oversight and Financial Board of Puerto Rico)*, 872 F.3d 57 (1st Cir. 2017) ...................................................................6, 7

*Boddie v. Connecticut*, 401 U.S. 371 (1978) ...............20

*Christopher v. Harbury*, 536 U.S. 403 (2002) .............20

*In re City of Stockton*, 484 B.R. 372 (Bankr. E.D. Cal. 2012) ............................................. 12, 13, 14, 15

*In re Commonwealth of Puerto Rico*, Case No. 17-1758 ....................................................................4

*In re Soares*, 107 F.3d 939 (1st Cir. 1997) .................12

*In re The Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico, et al.*, Bankruptcy Case No. 17-03283 (LTS) ..............................8

*Logan v. Zimmerman*, 455 U.S. 422 (1982) ..........19, 20

*Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1 (1st Cir. 2003) ...............................................12

*Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 424 U.S. 494 (1986) ....................................................................11

*Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) ................................................17

vi

TABLE OF AUTHORITIES – Continued

Page

*Newberry v. City of San Bernardino (In re City of San Bernardino)*, 558 B.R. 321 (C.D. Cal. 2016) ...................................................... 12, 14, 15, 19

*Peaje Investment, LLC v. Garcia-Padilla*, 845 F.3d 505 (1st Cir. 2016) ............................................6

*State of Md. v. Baltimore Radio Show*, 338 U.S. 912 (1950) ..................................................................5

*Sunshine Dev., Inc. v. FDIC*, 33 F.3d 106 (1st Cir. 1994) ....................................................................12

CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I ....................................................2

U.S. Const. amend. XI ................................................16

STATUTES

11 U.S.C. § 362 ..................................................*passim*

11 U.S.C. § 362(a)......................................................17

11 U.S.C. § 362(a)(2) ...................................................8

11 U.S.C. § 362(a)(3) ............................................8, 15

11 U.S.C. § 362(a)(6) ...................................................8

11 U.S.C. § 362(b)......................................................17

11 U.S.C. § 362(d)(1) .................................................19

11 U.S.C. § 922 ..................................................*passim*

11 U.S.C. § 922(a)(1) ............................................8, 14

42 U.S.C. § 1983 ................................................*passim*

vii

TABLE OF AUTHORITIES – Continued

Page

48 U.S.C. § 2121(a).........................................................7

48 U.S.C. §§ 2161 *et seq.* ...........................................4, 7

48 U.S.C. § 2161(b)(5) ...................................................7

48 U.S.C. § 2161(c)(2)..................................................4, 7

48 U.S.C. § 2161(c)(5)....................................................7

48 U.S.C. § 2166(b).......................................................7

48 U.S.C. § 2168(a).......................................................7

Cal. Gov't Code § 825..........................................13, 15

Cal. Gov't Code § 825.2.......................................13, 15

Laws of P.R. Ann., tit. 32 §§ 3077 *et seq.* ......................4

Laws of P.R. Ann., tit. 32 §§ 3086-3092a...................15

Laws of P.R. Ann., tit. 32 § 3087................................16

Laws of P.R. Ann., tit. 32 § 3088(a) ...........................15

Laws of P.R. Ann., tit. 32 § 3088(b) ...........................15

Puerto Rico Oversight, Management, and Eco-
  nomic Stability Act (PROMESA), 48 U.S.C.
  §§ 2101 *et seq.*..................................................*passim*


RULES

Sup. Ct. R. 10 ...........................................................1, 5

Fed. R. Bankr. P. 7001(1), (7), (9)................................19

viii

TABLE OF AUTHORITIES – Continued

Page

OTHER AUTHORITIES

6-922 *Collier on Bankruptcy* ¶ 922.02
(16th 2017) ...............................................14

H.R. Rep. No. 95-595 (1977) .....................................12

S. Rep. No. 95-989 (1978)...........................................12

1

## BRIEF IN OPPOSITION

Respondents Isabel Llompart-Zeno, in her personal capacity, and Sigfrido Steidel-Figueroa in his official capacity as Administrator of the Administration of Tribunals of the Commonwealth of Puerto Rico (hereinafter "Respondents"), hereby oppose the Petition for Writ of *Certiorari*, which seeks review of the United States Court of Appeals for the First Circuit's Order, staying the proceedings in Petitioner's appeal in light of the filing by the Commonwealth of Puerto Rico of a petition pursuant to Title III of PROMESA.

———————◆———————

## COUNTER-STATEMENT OF THE CASE

### A.  Introduction

Further review of the First Circuit's decision in this case is unwarranted. First, Petitioner has failed to set forth compelling reasons in order for this Court to exercise its judicial discretion and review on a writ of *certiorari* pursuant to Rule 10 of the Rules of the Supreme Court of the United States. The First Circuit's decision is not in conflict with a decision of another court of appeals or this Honorable Court under the same circumstances. Indeed, the First Circuit correctly applied the provisions of Title III of PROMESA, in which Congress established a debt restructuring procedure for territories such as the Commonwealth of Puerto Rico, and, *inter alia*, incorporated in the statute the provisions of Sections 362 and 922 of the Bankruptcy Code, 11 U.S.C. §§ 362 and 922. These

2

provisions are clear and establish an automatic stay of all claims against the estate of the debtor, in this case, the Commonwealth of Puerto Rico. Under the circumstances of this case, in which (1) Respondent Steidel-Figueroa is sued in his official capacity, and Respondent Llompart-Zeno was sued in her personal capacity, but is represented in this litigation by the Attorney General of Puerto Rico pursuant to Puerto Rico law, and, (2) in which the Commonwealth is incurring in litigation costs to represent Respondents and a possible monetary judgment for Petitioner may have to be paid by the Commonwealth, Petitioner's claim affects the funds of the Commonwealth and is therefore a claim against it for the purposes of Title III of PROMESA. Therefore, the petition constitutes a claim against the Commonwealth and was properly stayed.

Second, Petitioner has not presented in his petition any question of great importance. Petitioner alleges in very general terms that the decision of the First Circuit violates his rights under the Constitution by completely depriving him of his Section 1983 claim. However, he does not specify exactly what constitutional right is being violated, nor does he analyze the First Circuit's Order in light of the applicable standard. In reality, Petitioner's claim falls under the Due Process Clause or the Petition Clause of the First Amendment, but he utterly fails to show that the operation of Title III of PROMESA completely deprived him of access to any remedy, because he does have remedies available under that statute before the district

3

court that presides over the Title III process (hereinafter "Title III court").

In essence, what Petitioner seeks from this Honorable Court is that it determine that Section 1983 claims are exempt from the application of the automatic stay provided for in Title III of PROMESA and in Sections 362 and 922 of the Bankruptcy Code. This is a policy choice that Congress did not make when enacting and/or amending any of these acts and this omission violates no constitutional right of Petitioner. Petitioner's invitation to this Honorable Court to legislate such an exemption into these acts of Congress should be rejected.

## B.   Procedural Background

On February 2016, Petitioner filed a complaint under 42 U.S.C. § 1983 before the United States District Court for the District of Puerto Rico, against Respondent, Isabel Llompart-Zeno, who was, at the time the events alleged took place, Administrator of the Judicial System in Puerto Rico. She was sued in both her official and personal capacities.[1] Petitioner alleged that he was dismissed from his public employment in violation of his right to freedom of speech under the First Amendment. He requested compensatory and punitive

---

[1] Respondent, Sigfredo Steidel-Figueroa, replaced Isabel Llompart-Zeno as Administrator during the pendency of the appeal. On April 3, 2018, Petitioner moved to amend the caption in this regard, and the Court of Appeals granted this motion on May 24, 2018.

4

damages, as well as injunctive relief and reinstatement to his former position. The Attorney General of Puerto Rico assumed the legal representation of Respondent pursuant to Puerto Rico Law No. 104 of June 29, 1955, as amended by Law No. 9 of November 26, 1977, commonly referred to as "Law 9," Laws of P.R. Ann., tit. 32 §§ 3077 *et seq.*, which governs the Commonwealth's power to assume the legal representation of public officers sued in their personal capacity under Section 1983 and to assume the payment of any judgment in those cases.

On May 9, 2016, the district court dismissed the complaint. On June 1, 2016, Petitioner filed a Notice of Appeal to the United States Court of Appeals for the First Circuit. Respondent was again represented by the Commonwealth of Puerto Rico, through the Puerto Rico Solicitor General's Office. The parties fully briefed and argued the case before the court.

In the meantime, on June 30, 2016, Congress enacted the federal law known as the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), 48 U.S.C. §§ 2101 *et seq*. On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico, created by PROMESA, filed a petition for adjustment of debts before the United States District Court for the District of Puerto Rico, pursuant to Title III of PROMESA (*In re Commonwealth of Puerto Rico*, Case No. 1758) 48 U.S.C. §§ 2161 *et seq*. The Commonwealth is the debtor in the Petition pursuant to Section 301(c)(2) of PROMESA, 48 U.S.C. § 2161(c)(2).

5

On November 29, 2017, the First Circuit entered an Order in which it instructed the parties to show cause whether the automatic stay provided for in Title III of PROMESA applied to the case. On December 13, 2017, both parties filed their respective briefs on that question. Petitioner argued that the Title III automatic stay did not apply, while the Respondents argued that it did. On January 24, 2018, the Court of Appeals entered an order staying the appeal and ordering the parties to file status reports with the court in ninety-day intervals. On January 31, 2018, Petitioner filed a petition for rehearing and/or rehearing *en banc*. On June 13, 2018, the Court of Appeals *en banc* entered an Order denying Petitioner's request. On September 11, 2018, Petitioner filed the instant Petition for Writ of Certiorari.

―――――◆―――――

## REASONS FOR DENYING THE WRIT OF *CERTIORARI*

### I.   Considerations Governing Review on Certiorari

"Review on a writ of certiorari is not a matter of right, but of judicial discretion. A petition for writ of *certiorari* will be granted only for compelling reasons." Rule 10 of the Rules of the Supreme Court of the United States. "Congress has placed the control of the Court's business, in effect, within the Court's discretion." *State of Md. v. Baltimore Radio Show*, 338 U.S. 912, 918 (1950). There are no compelling reasons to grant the present petition as prescribed by the Rules

6

of this Honorable Court. The petition fails to present this Honorable Court with a real conflict between decisions of the Circuit Courts or a compelling federal question of any nature.

**II.   The First Circuit correctly determined that the automatic stay provided for in Title III of PROMESA, wherein Congress incorporated, among others, Sections 362 and 922 of the Bankruptcy Code, 11 U.S.C. §§ 362 and 922, applies to appeals in cases brought pursuant to 42 U.S.C. § 1983.**

Petitioner alleges that the automatic stay provided for in Title III of PROMESA, which incorporates Sections 362 and 922 of the Bankruptcy Code, *supra*, may not apply to cases brought under Section 1983. This allegation is incorrect because it misapprehends PROMESA, the Bankruptcy Code, particularly the automatic stay, the applicable Puerto Rico law and the reality of Section 1983 litigation in Puerto Rico.

Congress enacted PROMESA in 2016 to address an ongoing financial crisis in the Commonwealth. *Assured Guaranty Corp., et al. v. Financial Oversight and Management Board of Puerto Rico (In re The Financial Oversight and Financial Board of Puerto Rico)*, 872 F.3d 57, 59 (1st Cir. 2017), citing *Peaje Investment, LLC v. Garcia-Padilla*, 845 F.3d 505, 509 (1st Cir. 2016). This statute created a Financial Oversight and Management Board (hereinafter, the "Board") to help the Commonwealth achieve fiscal responsibility and access to the capital markets. *Id.*, citing *Peaje*

7

*Investment*, 845 F.3d at 515, quoting 48 U.S.C. § 2121(a). Among others, PROMESA empowered the Board to file on behalf of the Commonwealth a petition for restructuring of its debts under Title III of the act, which established quasi-bankruptcy proceedings and incorporated many provisions of the Bankruptcy Code and the entire Rules of Bankruptcy Procedure. *Assured Guaranty*, 872 F.3d at 59-60.

Section 301(a) of PROMESA, 48 U.S.C. § 2161, expressly makes applicable to cases under Title III the provisions of Sections 362 and 922 of the Bankruptcy Code. Subsection (c)(2) defines "Debtor" as the "territory or covered territory instrumentality concerning which a case under this title has been commenced," 48 U.S.C. § 2161(c)(2). Subsection (c)(5) provides that "property of the estate" in Title III means "property of the Debtor," 48 U.S.C. § 2161(c)(5). Section 306(b) of PROMESA provides that the district court where a petition under Title III has been filed shall have exclusive jurisdiction over the property of the estate. 48 U.S.C. § 2166(b). Finally, the term "property of the estate" means property of the debtor. 48 U.S.C. § 2161(b)(5).

As stated before, the Board filed a Title III petition on behalf of the Commonwealth on May 3, 2017, before the United States District Court for the District of Puerto Rico (hereinafter, the "Title III court"), thereby commencing the Title III case. Section 308(a) of PROMESA provides that, for cases in which the debtor is a territory, the Chief Justice shall designate a district court judge to sit by designation to conduct the case. 48 U.S.C. § 2168(a). The Chief Justice appointed

8

District Judge Laura Taylor Swain to preside the Commonwealth's Title III case.

Pursuant to Section 362 of the Bankruptcy Code, a petition operates as a stay, among others: of the enforcement, against the debtor or property of the estate, of a judgment obtained before the commencement of the case, 11 U.S.C. § 362(a)(2); of an act to obtain property of the estate, 11 U.S.C. § 362(a)(3); or any act to collect a claim against the debtor that arose before the commencement of the action, 11 U.S.C. § 362(a)(6). Section 922 provides, in addition to the stay provided in Section 362, a stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor." 11 U.S.C. § 922(a)(1).

Consistently with the provisions set out above, on June 29, 2017, the Title III court entered an Order titled, *Order pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* (hereinafter the "Stay Order"). The Stay Order confirmed the application of the PROMESA automatic stay, pursuant to Sections 362 and 922 of the Bankruptcy Code, to cases wherein either the Commonwealth or Commonwealth officers, in their official and/or personal capacities, are parties. *In re The Financial Oversight and Management Board for*

9

*Puerto Rico, as representative of the Commonwealth of Puerto Rico, et al.*, Bankruptcy Case No. 17-03283 (LTS), U.S. District Court for the District of Puerto Rico ("*In re Commonwealth*"). Docket No. 543.

Among other provisions, paragraph 2 of the Stay Order specifies as follows:

> Pursuant to Bankruptcy Code section 362(a), made applicable by PROMESA section 301(a), and subject to any exceptions thereto, or other rights or defenses a party may have, under applicable law, including the Bankruptcy Code as made applicable by PROMESA, all persons (including individuals, partnerships, corporations, limited liability companies, and all those acting for or on the behalf of the foregoing), all foreign or domestic governmental units, and all other entities (and those acting for or on their behalf) are hereby stayed, restrained, and enjoined from:
>
> (a)   commencing or continuing *any judicial, administrative, or other action or proceeding against the Debtors*,[2] including the issuance or employment of process, that was or could have

---

[2] The Stay Order's reference to "Debtors" is a means to encompass other Commonwealth entities that have filed for PROMESA Title III relief. The Stay Order refers to as Debtors: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS).

10

been commenced before the Title III Cases were commenced;

(b)   enforcing a judgment obtained before the commencement of the Title III Cases against the Debtors or property of the Debtors;

(c)   taking any action to obtain possession of property of or from the Debtors or exercise control over property of the Debtors;

(d)   taking any action to create, perfect, or enforce any lien against property of the Debtors, to the extent that such lien secures a claim that arose before the commencement of the Title III Cases;

(e)   taking any action to collect, assess, or recover a claim against the Debtors that arose before the commencement of the Title III Cases; and

(f)   offsetting any debt owing to the Debtors that arose before the commencement of the Title III Cases against any claim against the Debtors.

Additionally, the Stay Order clarified at paragraph 4 that the Section 922 stay also applies, as follows:

Pursuant to Bankruptcy Code section 922(a), made applicable by PROMESA section 301(a), and subject to any exceptions thereto, or other rights or defenses a party may have, under applicable law, including the Bankruptcy Code as made applicable by PROMESA, all persons (including individuals, partnerships, corporations, limited liability companies, and all

11

those acting for or on the behalf of the foregoing), all foreign or domestic governmental units, and all other entities (and those acting for or on their behalf) are hereby stayed, restrained, and enjoined from:

(a)   commencing or continuing any judicial, administrative, or other proceeding against an officer or inhabitant of the Debtors, including the issuance or employment of process, that seeks to enforce a claim against the Debtors; and

(b)   enforcing a lien on or arising out of taxes or assessments owed to the Debtors.

The Title III court then clarified that, as to officers and inhabitants of the Debtors, the Section 922 stay applies "**in all respects** to the Debtors' officers **in both their official and personal capacities** with respect to actions whereby parties pursuing such actions seek to enforce claims against any of the Debtors." Stay Order, p. 3-4, ¶ 5 (Emphasis added). The Title III court further clarified that the Section 922 stay applies "with respect to actions whereby parties pursuing such actions seek to enforce claims against any of the Debtors." *Id.*, p. 4, ¶ 6. The Title III court retained jurisdiction "to hear and determine all matters arising from or related to the implementation, enforcement, or interpretation of this Order." *Id.*, p. 6, ¶ 15.

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. *Midlantic National Bank v. New Jersey Dept. of Environmental Protection*, 424 U.S. 494, 503 (1986), quoting

12

S. Rep. No. 95-989, p. 54 (1978) and H.R. Rep. No. 95-595, p. 340 (1977). It is intended to give the debtor breathing room by stopping all collection efforts against the debtor. *In re Soares*, 107 F.3d 939, 975 (1st Cir. 1997). The stay springs into being immediately upon the filing of a bankruptcy petition, operates without the need for judicial intervention, and remains in force until the bankruptcy court either disposes of the case or lifts the stay. *In re Soares*, *supra*. This respite enables debtors to resolve their debts in a more orderly fashion, and also safeguards their creditors by preventing "different creditors from bringing different proceedings in different courts, thereby setting in motion a free-for-all in which opposing interests maneuver to capture the lion's share of the debtor's assets." *Id.*, citing *Sunshine Dev., Inc. v. FDIC*, 33 F.3d 106, 114 (1st Cir. 1994). It also prevents the "disorderly, piecemeal dismemberment of the debtor's estate outside the bankruptcy proceedings." *Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1, 3 (1st Cir. 2003).

The extent of the automatic stay pursuant to both Section 362 and Section 922 is illustrated by two important Chapter 9 municipal bankruptcy cases: *In re City of Stockton*, 484 B.R. 372, 374 (Bankr. E.D. Cal. 2012) and *Newberry v. City of San Bernardino (In re City of San Bernardino)*, 558 B.R. 321, 325 (C.D. Cal. 2016).

In *In re City of Stockton*, which is a leading case regarding the extent of the automatic stay provided for by Section 922, the bankruptcy court held that:

13

> For the same reason that geometry holds that
> the shortest distance between two points is a
> straight line, the additional automatic stay of
> § 922(a), rather than the § 362 automatic stay,
> directly protects municipal officers in chapter
> 9 cases without the need for a court to perform
> the mental gymnastics required to extend the
> § 362 automatic stay.

*In re City of Stockton*, 484 B.R. at 375-376.

The plaintiff in *In re City of Stockton* had brought a Section 1983 suit for wrongful termination of employment and violation of federal civil rights against the City of Stockton and two City of Stockton officers in their personal and official capacities. The plaintiff sought relief from the bankruptcy stay to pursue his claims against the city officers only. *In re City of Stockton*, 484 B.R. at 375. The City had assumed the legal representation of the personal defendants pursuant to a California indemnification statute, but the plaintiff theorized "that the City's insurer will pay defense expenses." *Id.*

The bankruptcy court rejected plaintiff's contention and concluded that:

> [t]he action against the individual officers is
> an exercise of the well-known strategy of su-
> ing a sovereign by falsely pretending to sue an
> officer. To the extent that there is a judgment
> against the individuals, the City, having un-
> dertaken their defense, will be required to pay
> the judgment. Cal. Gov't Code §§ 825 & 825.2.
> Hence, the civil action against the individuals

14

> "seeks to enforce a claim against the debtor" within the meaning of § 922(a). 11 U.S.C. § 922(a)(1).

*Id.* at 376.

Moreover, the court found it problematic that the City of Stockton was exposed to the financial risk of the judgment and, furthermore, that "[t]he City having undertaken the defense of the individual defendants, it follows that the expense of further litigation against them will deplete the coffers of the City treasury." *Id.* at 379.

Although certainly informative and persuasive as to its broader pronouncements, the core holding of *In re City of Stockton* regarding the additional stay provided by Section 922 – as noted by prominent authors – is that it "prohibits a creditor from bringing or continuing tort claims against an officer or inhabitant of the debtor, where the claim asserted is in effect a claim against the municipality." 6-922 *Collier on Bankruptcy* ¶ 922.02 (16th 2017) (citing *In re City of Stockton*, 484 B.R. 372 (Bankr. E.D. Cal. 2012)).

*Newberry* involved post-petition claims from plaintiffs seeking relief from the bankruptcy stay to litigate Fourth Amendment violations against the City of San Bernardino and several city officers. The district court ultimately denied relief from the stay, and found that Sections 362 and 922 barred plaintiffs' claims against the city and its officers, even if their claims sought injunctive relief only. The court reasoned that granting injunctive relief that would instruct employees paid by

15

the city to follow certain procedures for executing search warrants, amounted to "effectively exercise[ing] control over [] [city] money" in violation of Section 362(a)(3). *Newberry*, 558 B.R. at 329. Accordingly, "even assuming Newberry intends to file a lawsuit seeking only injunctive relief . . . such a lawsuit would be subject to stay under § 362(a)(3)." *Id.*

An important parallel between this case and *In re City of Stockton* is worth noting. Part of the analysis in that case turned on a California statute pursuant to which government entities are to provide legal representation to officer defendants and – if certain conditions are met or agreed to – may be required to pay for adverse judgments where, generally, the judgment is based upon findings that the employee's acts or omissions arise within the scope of employment, and not due to actual malice, actual fraud or corruption. *Id.* at 379; see also Cal. Gov't Code §§ 825, 825.2.

As stated before, the Commonwealth also has a conditioned indemnity statute, Law 104, as amended by Law 9, which generally provides for the Puerto Rico Department of Justice to both assume the legal representation and pay for judgments that are adverse to officer or former officer defendants. Laws of P.R. Ann., tit. 32 §§ 3086-3092a. Similar to the California statute, there are limited exceptions such as when the officers' acts constitute felonious conduct, or acts outside the scope of employment. *Id*. at § 3088(a), (b).

Crucially, although the initial decision to either assume the representation of the officer-defendant or

16

pay the adverse judgment lies in the Commonwealth's Attorney General, Law 9 provides all officer-defendants with an avenue for judicial review. *Id.* at § 3087. Hence, although the Commonwealth may initially decline to represent or pay the adverse judgment of an officer-defendant, in that event, the officer-defendant may seek judicial review from that denial and a court may well impose on the Commonwealth both the duty to defend, and/or the duty to indemnify the officer from the adverse judgment. *Id.*

Ultimately, as a matter of practice, as in this case, the Commonwealth provides legal representation to an overwhelming majority of employee defendants, pursuant to the provisions of Laws 104 and 9. It thus bears the cost of litigation of suits against its employees, regardless of what capacity they are sued in. Likewise, the Commonwealth pays for the vast majority of adverse judgments against its employees and officers for civil rights suits by way of the indemnity provisions of Laws 104 and 9. Plaintiffs litigate Section 1983 cases against lawyers paid by the Commonwealth, negotiate settlements with lawyers paid by the Commonwealth, and if they prevail, seek to secure payment from the Commonwealth. It is therefore clear that, regardless of the Eleventh Amendment, Petitioner's Section 1983 suit is a claim against the Commonwealth for purposes of the Title III automatic stay when, as here, the Commonwealth assumes the defense of a defendant public officer because (1) litigation expenses inevitably affect the Commonwealth's estate, and (2) under Laws 104 and 9, the Commonwealth would probably pay for

17

either a settlement of the suit or a judgment against the defendant. It is therefore subject to the automatic stay.

From the above, it is clear that Congress enacted Title III of PROMESA for the purpose of enabling the Commonwealth of Puerto Rico to restructure its enormous debt. This is a very complex bankruptcy case which involves thousands of creditors with different claims against the Commonwealth. By incorporating into Title III the provisions of Sections 362 and 922 of the Bankruptcy Code, Congress made a policy choice to apply the automatic stay provided by these provisions to their full extent, so as to assure an orderly restructuring process for the benefit of the Commonwealth of Puerto Rico and its creditors.

Notably, Congress has approved, in Section 362(b), more than forty (40) exceptions to the applicability of the automatic stay, but none of them cover a case brought under Section 1983, even though public officials may be subject to pay a damages award in their personal capacity and may file a bankruptcy petition. Further, in Section 922, Congress provided that the automatic stay of Section 362(a) also applies to proceedings against an officer or inhabitant of a debtor that seeks to enforce a claim against a debtor, even though municipalities are persons who may be sued under Section 1983, as determined by this Court in *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978). Again, Congress did not establish in that provision that Section 1983 claims against municipalities or their officers are exempt from the

18

automatic stay. It is therefore clear that, in staying this appeal, the First Circuit was following Congress' clear intent that Section 1983 actions be subject to the automatic stay upon the Commonwealth's filing of a petition under Title III of PROMESA.

Thus, Petitioner's claim in this case in reality is not whether the First Circuit's Order, by itself, violated his constitutional rights; but rather, Petitioner is alleging that the provisions of Title III of PROMESA and of Sections 362 and 922 of the Bankruptcy Code are unconstitutional. As will be seen below, Petitioner's claim has no merit.

### III. The automatic stay provided for in Title III of PROMESA and in Sections 362 and 922 of the Bankruptcy Code do not deprive Petitioner of his right to access to the courts with regards to his Section 1983 complaint.

Petitioner has presented his constitutional arguments in very general terms, emphasizing on the importance of Section 1983 suits to safeguard the constitutional rights of all persons and in his perception that the Order entered by the First Circuit staying his appeal completely deprives him of any remedy. However, Petitioner utterly fails to specify which constitutional right has been infringed by the application of the Title III automatic stay and fails to discuss the applicable standard to review his allegation. This, by itself, is enough to deny the writ of certiorari that Petitioner seeks.

19

However, it may be discerned that Petitioner's allegations are that (1) he would be denied access to the courts to continue litigating his Section 1983 claim in violation of the Due Process Clause; and (2) that his right to petition the redress of grievances under the First Amendment has been breached. These allegations, however, have no merit.

In the case of *Newberry*, *supra*, the court confronted the same arguments that Petitioner is making here. The court pointed out that the bankruptcy stay does not immunize Chapter 9 debtors from ongoing civil rights violations; aggrieved persons may always file adversary proceedings in bankruptcy court. *Id.* at 330 (citing Fed. R. Bankr. P. 7001(1), (7), (9)). Further, Section 362(d)(1) of the Bankruptcy Code, 11 U.S.C. § 362(d)(1) provides that the bankruptcy court may grant relief from stay upon finding cause.[3] Therefore, the automatic bankruptcy stay does not deprive Petitioner from continuing to assert his claims before the Title III court.

The fact that Petitioner still has a remedy available before the Title III court disposes of both his potential constitutional claims. With regard to the Due Process access to courts claim, in *Logan v. Zimmerman*, 455 U.S. 422 (1982), this Court stated that the Due Process clause of the Fourteenth Amendment prevents the States from denying potential litigants the use of

---

[3] Neither Respondents nor the Commonwealth waive their right to assume any position and to assert any defense that they may have should Petitioner take any of these courses of action in the Title III case.

20

established adjudicatory procedures when such an action would be "the equivalent of denying them an opportunity to be heard upon their claimed right[s]." *Logan*, 455 U.S. at 429-430, quoting *Boddie v. Connecticut*, 401 U.S. 371, 380 (1978). However, as stated before, neither Title III of PROMESA nor Sections 362 and 922 of the Bankruptcy Code deny any Section 1983 litigant an opportunity to be heard, since the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure provide them the means to assert their claims. With regard to the Petitions Clause, this Court stated in *Christopher v. Harbury*, 536 U.S. 403, 414-415 (2002) that "[w]hether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief from some wrong." The availability of various procedural opportunities within the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, as incorporated in Title III of PROMESA, negates any claim by Petitioner under the Petitions Clause.

———◆———

## CONCLUSION

The instant Petition for Writ of *Certiorari* should be denied for the following reasons: (i) the First Circuit correctly stayed Petitioner's appeal pursuant to the automatic stay provided for in Title III of PROMESA; (ii) neither in PROMESA, nor in Sections 362 and 922 of the Bankruptcy Code did Congress establish an

21

exemption from the automatic stay for Section 1983 actions even though it could have easily done so; and (iii) Petitioner utterly failed to establish that any of the mentioned statutes deprived him of all opportunity to seek relief from some wrong. What Petitioner really wants, and cannot obtain, is for this Court to amend these statutes and impose a new exception to the automatic stay that Congress has not seen fit to establish. Therefore, Petitioner has not presented a question of great importance that could merit review from this Honorable Court.

For the foregoing reasons, the Petition for Writ of *Certiorari* should be denied.

Respectfully submitted in San Juan, Puerto Rico, this 6th day of December, 2018.

CARLOS LUGO-FIOL
P.O. Box 260150
San Juan, PR 00926
Tel. (787) 645-4211
E-mail: clugofiol@gmail.com
*Counsel of Record*

ISAÍAS SÁNCHEZ-BÁEZ
Solicitor General of Puerto Rico
OFFICE OF THE SOLICITOR GENERAL
DEPARTMENT OF JUSTICE
COMMONWEALTH OF PUERTO RICO
P.O. Box 9020192
San Juan, PR 00902-0192
Tel. (787) 724-2165
Fax (787) 724-3380
*Counsel for Respondents*