No. 18-331

================================================

In The

# Supreme Court of the United States

——————————◆——————————

RAFAEL PABÓN ORTEGA,

*Petitioner,*

v.

ISABEL LLOMPART-ZENO, in her personal capacity;
SIGFRIDO STEIDEL FIGUEROA, in his official capacity
as Administrator of the Administration of Tribunals
of the Commonwealth of Puerto Rico,

*Respondents.*

——————————◆——————————

**On Petition For Writ Of Certiorari
To The United States Court Of Appeals
For The First Circuit**

——————————◆——————————

**PETITION FOR REHEARING**

——————————◆——————————

CARLOS A. DEL VALLE CRUZ
*Counsel of Record*
DEL VALLE LAW
P.O. Box 9022473
San Juan, Puerto Rico 00902-2473
(939) 218-1332
cdvlawpr@gmail.com

January 23, 2019

================================================

i

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ............................. 1

ARGUMENTS SUPPORTING PETITION FOR
    REHEARING..................................................... 5

  I.  JUDICIAL AUTHORITY ........................... 5

 II.  THE UNDERLYING ORDER CONCERNS
    A § 1983 CIVIL RIGHTS ACTION UN-
    DER THE FIRST AMENDMENT............. 5

III.  THE FIRST CIRCUIT STAYED THE
    FIRST AMENDMENT CASE INDEFI-
    NITELY WITHOUT ANY DISCUSSION
    OF ITS AUTHORITY TO SO SUPPRESS
    PETITIONER'S FIRST AMENDMENT
    RIGHT ......................................................... 6

IV.  THE FIRST AMENDMENT APPLIES TO
    PUERTO RICO AND PROTECTS PETI-
    TIONER'S CIVIL RIGHTS CLAIM........... 6

 V.  THE FIRST CIRCUIT'S ORDER RAISES
    AN IMPORTANT ISSUE OF CONSTITU-
    TIONAL LAW INSOFAR AS IT NULLI-
    FIES THE *INSULAR CASES* WITHOUT
    REASON OR ANALYSIS............................ 9

VI.  CONCLUSIONS: THE PETITION FOR
    REHEARING MEETS THE CRITERIA
    OF THIS COURT........................................ 10

ii

## TABLE OF AUTHORITIES

Page

CASES

*Armstrong v. United States*,
    182 U.S. 243 (1901) ...................................................7

*Balzac v. Porto Rico*,
    258 U.S. 298 (1922) ...................................................7

*Besosa-Noceda v. Capo-Rivera*,
    No. 16-2117 (1st Cir. Jan. 23, 2018).....................3, 9

*Boumediene v. Bush*,
    533 U.S. 723 (2008) ...................................................8

*Califano v. Torres*,
    435 U.S. 1 (1978) ......................................................8

*Cano-Rodriguez v. De Jesus-Cardona*,
    No. 16-1532 (1st Cir. Nov. 27, 2017).....................2, 9

*De Lima v. Bidwell*,
    182 U.S. 1 (1901) ......................................................7

*Dooley v. United States*,
    182 U.S. 222 (1901) ...................................................7

*Dorr v. United States*,
    195 U.S. 138 (1904) ...................................................7

*Downes v. Bidwell*,
    182 U.S. 244 (1901) ...................................................7

*Elrod v. Burns*,
    427 U.S. 347 (1976) .................................................10

*Ex parte Young*,
    209 U.S. 123 (1908) ..............................................6, 10

*Examining Board v. Flores de Otero*,
    426 U.S. 572 (1976) ...................................................8

iii

TABLE OF AUTHORITIES – Continued

Page

*Figueroa v. People of Puerto Rico*,
    232 F.2d 615 (1st Cir. 1956) ....................................3

*Harris v. Rosario*,
    446 U.S. 651 (1980) .................................................8

*Hawaii v. Mankichi*,
    190 U.S. 197 (1903) .................................................7

*Korematsu v. United States*,
    323 U.S. 214 (1944) .................................................2

*Marbury v. Madison*,
    5 U.S. (1 Cranch) 137 (1803) ....................................1

*Pabón-Ortega v. Llompart-Zeno*,
    No. 16-1599 (1st Cir. Jan. 24, 2018).....................2, 9

*Pickering v. Bd. of Educ.*,
    391 U.S. 563 (1968) .................................................9

*Pickering v. Bd. of Educ.*,
    408 U.S. 563 (1972) .............................................5, 9

*Posadas de Puerto Rico v. Tourism Co.*,
    478 U.S. 328 (1986) .................................................8

*Puerto Rico v. Sanchez Valle*,
    579 U.S. ___, 136 S.Ct. 1863 (2016) .........................8

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) .................................................9

*Rodriguez v. Popular Democratic Party*,
    457 U.S. 1 (1982) .....................................................8

*Ruíz-Colón v. Rodriguez-Elías*,
    18 USWL 2041964 (D.P.R. April 30, 2018)...........2, 9

iv

TABLE OF AUTHORITIES – Continued

Page

CONSTITUTIONAL AND STATUTORY PROVISIONS

U.S. Const. amend. I ..........................................*passim*

STATUTES AND RULES

11 U.S.C. § 362 ......................................................1, 10

11 U.S.C. § 922 ............................................................1

48 U.S.C. § 2101 ..........................................................1

48 U.S.C. § 2161 ..........................................................1

Puerto Rico Oversight, Management, and Eco-
    nomic Stability Act ("PROMESA"), Public
    Law No. 114–187, 130 Stat. 550 (2016) (codi-
    fied at 48 U.S.C. § 2101 et seq.) .....................*passim*

Public Law No. 600, Act of July 3, 1950, 64 Stat.
    319, 48 U.S.C. § 731b et seq. ...................................7

Public Law No. 447, Act of July 3, 1952, 66 Stat.
    327 ...........................................................................7

98 Cong. Rec. at p. 5119–28, 5126–27, 6184–86,
    8715 (1952)................................................................8

Supreme Court Rule 44(2) ....................................5, 13

LAW REVIEWS AND TREATISES

Chapter Two, *Development in the Law, The U.S.
    Territories*, 130 Harv. L. Rev. 1656 (2019) ..............12

Chemerinsky, E., Constitutional Law: Principles
    and Policies (4th ed. 2011) ........................................9

v

TABLE OF AUTHORITIES – Continued

Page

Wechsler, H., *Toward Neutral Principles of Constitutional Law*, 73 Harv. L. Rev. 1 (1959)................2

OTHER AUTHORITIES

Bible, Job 28:12.............................................................1

Declaration of Independence (1776) ...........................4

Gabriel García Marquez,
  *One Hundred Years of Solitude* (1967)................1, 3

Resolution 748 VIII ....................................................11

United Nations and Decolonization, Trust and Non-Self-Governing Territories (1945–1999), online at http://www.un.org/en/decolonization/ nonselfgov.shtml....................................................11

United Nations Charter, Article 73(e).............3, 11, 12

1

> *But where shall wisdom be found?*
> *And where is the place of understanding?*
> Job 28:12

## SUMMARY OF ARGUMENT

In *One Hundred Years of Solitude*, Gabriel García Marquez narrates the marvelous rise and apocalyptic end of the town of Macondo, a tale that serves as a mythic allegory for the enchanted oscillations that mark not just Columbia or Latin America specifically, but modernity generally. Given the constitutional antithesis of the First Circuit order at issue here, Petitioner resorts to this fictional analogy to highlight that no matter which theory of judicial review is advocated, none justifies the First Circuit order in Petitioner's case: the stay for an indefinite period and without any type of reasoned analysis of his First Amendment claim and by extension all fundamental constitutional rights of the over 3 million American citizens that reside in the territory of Puerto Rico. In so doing, the Circuit has nullified all the precedents of this Court, known collectively as the *Insular Cases*, which had resolved that these fundamental rights apply in Puerto Rico. Furthermore, it has done so not solely on the presumptuousness that the Bankruptcy Code trumps the Constitution[1] – that is, *contra Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803) – but on the unprecedented

---

[1] The Puerto Rico Oversight, Management, and Economic Stabilization Act, 130 Stat. 550, 48 U.S.C. § 2101 et seq., 48 U.S.C. § 2161 incorporates the automatic provisions of the Bankruptcy Code, 11 U.S.C. §§ 362 and 922. As the Commonwealth is not a municipality, only § 362 is at play here.

2

conceit that in Puerto Rico the federal judiciary is no longer duty bound to provide a reasoned analysis for the abeyance of constitutional civil rights.[2] By refusing to review this disavowal of fundamental formal and substantive principles of constitutional law, this Court is allowing an inferior tribunal to disregard with impunity controlling precedent and procedure, thus endorsing by silence the most egregious disregard of civil rights since the Japanese internment of WW II: *qui tacet consentire videtur, ubi loqui debuit ac potuit*. See *Korematsu v. United States*, 323 U.S. 214 (1944).

To exacerbate this situation, the First Circuit order in this case, warrantless as it is, is nonetheless now being cited as authority by the Puerto Rico district court to paralyze the § 1983 civil rights claims of other civil rights plaintiffs. See *Ruíz-Colón v. Rodriguez-Elías*, 18 USWL 2041964 (D.P.R. April 30, 2018). *Ruíz Colón* cites not only the First Circuit decision here, but also all other cases in which the First Circuit has stayed civil rights cases on appeal via the same one-line phrase, devoid of reason or analysis. See *Ruíz Colón,* citing *Pabón-Ortega v. Llompart-Zeno*, No. 16-1599 (1st Cir. Jan. 24, 2018) ("In view of the petition to restructure its debts filed by the Commonwealth of Puerto Rico, this appeal is stayed."); *Cano-Rodriguez v. De Jesus-Cardona*, No. 16-1532 (1st Cir. Nov. 27, 2017)

---

[2]  As any first-year law student is taught, reason and analysis constitute fundamental elements of the neutral principles of adjudication in constitutional law. See, e.g., Wechsler, H., *Toward Neutral Principles of Constitutional Law*, 73 Harv. L. Rev. 1 (1959) (judicial decisions must be based upon reasoning and analysis that transcend the immediate result).

3

(same); *Besosa-Noceda v. Capo-Rivera*, No. 16-2117 (1st Cir. Jan. 23, 2018) (same). The instant Petition, thus, concerns not an isolated case, but an error that turns and turns in a widening gyre, resulting in the suppression of all § 1983 civil rights cases in the territory of Puerto Rico. In sum, the situation is so abhorrent that there is no judicial language capable of conveying its full insidiousness, only fiction seems sufficiently malleable to illuminate the judicial aberrance forced on the island by the First Circuit: the pig-tailed offspring described towards the end of *One Hundred Years*, become now a caricature of the people of Puerto Rico in the face of their own epochal constitutional solitude.

The result is that unless this Court acts to correct this miscarriage of justice, not only will the Petitioner and other civil rights litigants be deprived without cause of their constitutional rights, but the legitimacy of the Commonwealth itself under domestic and international law – as a self-governing entity with a complete panoply of civil rights – will no longer be sustainable. In this light, the Commonwealth will be revealed to have become what Judge Magruder feared it could become: "a monumental hoax." *Figueroa v. People of Puerto Rico*, 232 F.2d 615, 620 (1st Cir. 1956). If so, the people of Puerto Rico would be entitled to request the United Nations to reinstate the island in the list of non-self-governing territories that required reporting under Article 73(e) of the UN Charter.[3]

---

[3] See *infra*, pp. 10–12.

4

Likewise, they will acquire equal claim to reiterate demands akin to those made by the American colonies against the British Empire in the Declaration of Independence.[4] Given that the grave state of present affairs, if unremedied, belie both constitutional precedents and international representations, it is imperative that this Honorable Court grant the previously denied petition for certiorari, and right the egregious breach of normative principles by the First Circuit below. This is the last recourse available to Petitioner. If this is not the place of understanding, then where? Thus, the prayer.

———————◆———————

---

[4] See Declaration of Independence (1776): " . . . We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable rights, that among these are life, liberty and the pursuit of happiness. That to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed. That whenever any form of government becomes destructive to these ends, it is the right of the people to alter or to abolish it, and to institute new government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their safety and happiness. Prudence, indeed, will dictate that governments long established should not be changed for light and transient causes; and accordingly all experience hath shown that mankind are more disposed to suffer, while evils are sufferable, than to right themselves by abolishing the forms to which they are accustomed. But when a long train of abuses and usurpations, pursuing invariably the same object evinces a design to reduce them under absolute despotism, it is their right, it is their duty, to throw off such government, and to provide new guards for their future security."

5

## ARGUMENTS SUPPORTING
## PETITION FOR REHEARING

### I.   JUDICIAL AUTHORITY

This is a petition for rehearing of an order of January 7, 2019 denying a petition for certiorari. It is timely brought pursuant to Supreme Court Rule 44(2).

### II.  THE UNDERLYING ORDER CONCERNS A § 1983 CIVIL RIGHTS ACTION UNDER THE FIRST AMENDMENT

Petitioner's underlying case is a § 1983 civil rights action for violation of the First Amendment. He was dismissed by Respondent from his public employment for a running a Facebook blog that fictionally described the underbelly of Puerto Rican society in the wake of its socio-economic implosion; that is, for writings Respondent considered unbecoming a judicial employee. On February 3, 2016, he filed his § 1983 civil rights action alleging that his blog as speech protected by the First Amendment under *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). The district court dismissed the case for lack of jurisdiction. On appeal, Petitioner argued that the dismissal was plainly erroneous (a point not even Respondent contested) and that given there were factual disputes the Circuit could decide the First Amendment issue on the merits.

6

### III. THE FIRST CIRCUIT STAYED THE FIRST AMENDMENT CASE INDEFINITELY WITHOUT ANY DISCUSSION OF ITS AUTHORITY TO SO SUPPRESS PETITIONER'S FIRST AMENDMENT RIGHT

PROMESA was enacted on June 30, 2016. The parties briefed and argued the case on November 3, 2016. On November 29, 2017, the Circuit requested supplemental briefing as to whether the automatic stay provisions of the Bankruptcy Code applied to Petitioner's appeal. Petitioner argued, as it did here, that a § 1983 action did not create any liability contemplated by PROMESA because *Ex parte Young*, 209 U.S. 123 (1908) provided that in a § 1983 action any potential damage award would go against the state official in her personal capacity, not the Commonwealth; and any injunctive relief was circumscribed to prospective compliance with the First Amendment, not back pay. On January 14, 2018, the Court without reasons or analysis, disponed of the case in one-line: "In view of the petition to restructure its debts filed by the Commonwealth of Puerto Rico, this appeal is stayed." The Court summarily denied Petitioner's petition for rehearing and for rehearing en banc. This petition for certiorari followed.

### IV. THE FIRST AMENDMENT APPLIES TO PUERTO RICO AND PROTECTS PETITIONER'S CIVIL RIGHTS CLAIM

Is it beyond dispute that the residents of Puerto Rico enjoy the protection of the First Amendment and

7

the other fundamental rights of the Bill of Rights. After acquiring Puerto Rico from Spain following the American War of 1898, the Supreme Court issued a series of opinions known as the *Insular Cases* that crafted the doctrine of incorporation. Said doctrine created a distinction between incorporated territories (destined for statehood and to which the Constitution applied fully) and unincorporated territories (former Spanish possessions to which only fundamental constitutional rights followed). See *De Lima v. Bidwell*, 182 U.S. 1 (1901); *Dooley v. United States*, 182 U.S. 222 (1901); *Armstrong v. United States*, 182 U.S. 243 (1901); *Downes v. Bidwell*, 182 U.S. 244 (1901); *Hawaii v. Mankichi*, 190 U.S. 197 (1903); *Dorr v. United States* 195 U.S. 138 (1904). In the tail-end of these cases, *Balzac v. Porto Rico*, 258 U.S. 298, 312 (1922), the Court held that Congressional grant of citizenship did not constitute an expression of intent to make Puerto Rico a State, and thus Puerto Rico continued as an unincorporated territory, to which only fundamental rights applied.

This is the prevailing state of the law. The enactment of the Commonwealth status did not alter the application of the incorporation doctrine to the island. In 1950, Congress enacted Public Law No. 600, Act of July 3, 1950, 64 Stat. 319 (codified at 48 U.S.C. § 731b et seq.) granting the people of Puerto Rico authority to write their own constitution subject to Congressional approval. The proposed constitution was submitted for Congressional approval. In 1952 Congress approved the same, subject to some modifications. Public Law

8

No. 447, Act of July 3, 1952, 66 Stat. 327; 98 Cong. Rec. at p. 5119–28, 5126–27, 6184–86, 8715 (1952). "The Puerto Rico Constitution created a new political entity, the Commonwealth of Puerto Rico." *Puerto Rico v. Sanchez Valle*, 136 S.Ct. 1863, 1874 (2016). These constitutional developments were of great significance, and "grant[ed] Puerto Rico a measure of autonomy comparable to that possessed by the States." *Sanchez Valle*, *id*., citing *Examining Board v. Flores de Otero*, 426 U.S. 572, 594 (1976) ("[T]he purpose of Congress in the 1950 and 1952 legislation was to accord to Puerto Rico the degree of autonomy and independence normally associated with States of the Union."); *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 8 (1982) (same). Not once, following the enactment of the Commonwealth, has the Court suspended the application of the *Insular Cases*. See *Califano v. Torres*, 435 U.S. 1 (1978) (parity in socio-economic legislation is not a fundamental right); *Harris v. Rosario*, 446 U.S. 651 (1980) (same); *Boumediene v. Bush*, 533 U.S. 723 (2008) (continued application of the *Insular Cases* to Guantanamo detainees). Likewise, there is no doubt that the First Amendment is a fundamental right that shelters the residents of Puerto Rico. *Posadas de Puerto Rico v. Tourism Co*., 478 U.S. 328, 331 n. 1 (1986). Finally, it is undisputed that the Civil Rights Act, 42 U.S.C. § 1983, enables civil rights claims for fundamental rights in Puerto Rico. *Flores de Otero*, 426 U.S. at 586.

9

## V.  THE FIRST CIRCUIT'S ORDER RAISES AN IMPORTANT ISSUE OF CONSTITUTIONAL LAW INSOFAR AS IT NULLIFIES THE *INSULAR CASES* WITHOUT REASON OR ANALYSIS

Although the First Circuit has not provided reasons or analysis for suspending the Bill of Rights, it is evident that it has deployed the automatic stay provision of the Bankruptcy Code to stay for an indefinite period Petitioner's First Amendment civil rights action under § 1983, and this error has spread to other appellate cases. It has evolved to become cited precedent by the District Court of Puerto Rico. See *Ruíz-Colón*, *Pabón-Ortega*, *Cano-Rodriguez* and *Besosa-Noceda*, *supra*.

It is axiomatic that the Constitution does not countenance the suspension of the First Amendment by a federal law in the absence of a compelling state interest implemented via the least restrictive means. See *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992) (viewpoint discrimination); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) (government workers); Chemerinsky, Erwin, Constitutional Law: Principles and Policies 695, n. 15 (4th ed. 2011) ("Under strict scrutiny a law is upheld if it is proved necessary to achieve a compelling government interest. The government . . . must show that it cannot achieve its objective through any less discriminatory alternative."). Here, the Commonwealth's interest in the Code's automatic stay is not compromised because Petitioner's First Amendment

10

cases is brought pursuant to § 1983, and under *Ex parte Young* the component of the civil rights action for monetary damages is limited to the state official in her personal capacity, not the Commonwealth's finances. Thus, there is no compelling reason for applying the Code's automatic stay to Petitioner's First Amendment case. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").

## VI. CONCLUSIONS: THE PETITION FOR RE-HEARING MEETS THE CRITERIA OF THIS COURT

Petitioner respectfully request that this Honorable Court grant this petition for rehearing to determine whether Petitioner's civil right case under the First Amendment, brought pursuant to § 1983, may de stayed pursuant to the automatic stay of the Bankruptcy Code, 11 U.S.C. § 362. There is no precedent for congealing the Bill of Rights in a territory, or for willfully nullifying the *Insular Cases*, or failing to produce such unprecedented results without the reason and analysis required for judicial adjudication. The First Circuit here not only defies all principles of adjudication and all known precedent, but in so doing, it also calls into question the understandings guiding the concession of self-government under the Commonwealth arrangement.

11

Following the formal adoption of the Constitution of the Commonwealth of Puerto Rico in 1952, the United States informed the United Nations that Puerto Rico had achieved such degree of self-government that it would no longer be required to file the reports mandated by Art. 73(e) of the UN Charter (requiring periodic reports concerning Non-Self-Governing Territories). By Resolution 748 VIII, the UN accepted this view of the matter, noting that "the people of the Commonwealth of Puerto Rico have been invested with attributes of political sovereignty which clearly identify the status of self-government attained by the Puerto Rican people as that of an autonomous political entity." See *Sanchez Valle*, 136 S.Ct. at 1882–1883 (2016); United Nations and Decolonization, Trust and Non-Self-Governing Territories (1945–1999), online at http://www.un.org/en/decolonization/nonselfgov. shtml (noting that Puerto Rico underwent a "change in status" in 1952, "after which information was no longer to be submitted to the United Nations").

If the premises upholding Resolution 748 are nullified, as it seems the First Circuit has done here, Puerto Rico or entities within Puerto Rican society would be entitled with renewed cause to request that the colony be reinserted in the list of non-self-governing territories, and the United States be immediately ordered to reassume the Article 73(e) reporting requirements. These requirements mandate annual reports to the Secretary-General "relating to the economic, social and educational conditions in the territory," such as education, employment, and health

12

studies, and the servicing of the debt under PROMESA, among other related developmental matters. Article 73(e) reports, moreover, form the basis of the working papers elaborated by the Special Committee, and inform the content of the Special Committee's annual reports sent to the General Assembly, where they are available for review and action by the body's 193 constituent states. In sum, the reporting requirements of Art. 73(e) internationalize the Puerto Rican territorial/colonial condition. See Chapter Two, *Development in the Law, The U.S. Territories*, 130 Harv. L. Rev. 1656, 1673–74 (2019).

It is evident that the First Circuit order below is arrayed with important constitutional issues and international ramifications. Petitioner submits that it meets the criteria meriting full review on the merits. For these reasons, he respectfully requests that this petition for rehearing be granted.

In San Juan, Puerto Rico, this January 23, 2019.

CARLOS A. DEL VALLE CRUZ
*Counsel of Record*
DEL VALLE LAW
P.O. Box 9022473
San Juan, Puerto Rico 00902-2473
(939) 218-1332
cdvlawpr@gmail.com

13

## CERTIFICATE OF COUNSEL

Pursuant to Rule 44(2), Counsel certifies that the Petition is restricted to the grounds specified in the Rule with substantial grounds not previously presented concerning the widening application of the First Circuit order. Counsel certifies that this Petition is presented in good faith for the purpose of redeeming the fundamental constitutional rights of the residents of Puerto Rico and not for delay.

_____

CARLOS A. DEL VALLE CRUZ