IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> v. <br><br> **COMMONWEALTH OF PUERTO RICO**, et al., <br><br> Defendants. | CIVIL NO. 12-2039 (GAG) |

**JOINT MOTION REQUESTING STAY OF COMPLIANCE MONITORING PENDING RECEIPT AND APPROVAL OF A MONITORING METHODOLOGY**

TO THE HONORABLE COURT:

Plaintiff, the United States of America, and Defendants, the Commonwealth of Puerto Rico and the Puerto Rico Police Bureau (collectively, "the Parties"), jointly file the instant motion requesting a limited stay of the compliance monitoring requirements of the Agreement for the Sustainable Reform of the Puerto Rico Police ("Agreement") pending receipt, evaluation, and approval of the Technical Compliance Advisor's ("TCA" or the "Monitor") monitoring plan and methodology in accordance with Paragraphs 245 through 248 of the Agreement. Because the lack of a complete monitoring methodology is foundational to other aspects of the Agreement, this motion also seeks the Court's assistance on related matters regarding the TCA's budget request, the assignment of Senior Judge Juan Perez-Gimenez, and the appointment of the Special Master in furtherance of the Agreement. In support thereof, the Parties state as follows:

**I.     INTRODUCTION**

On July 17, 2013, the Court approved the Agreement entered into by the Parties (Docket No. 60) to ensure vigorous and constitutional law enforcement by the Puerto Rico Police

1

Department ("PRPD," now the Puerto Rico Police Bureau, "PRPB").  Agreement ¶ 1.  As part of their mutual commitment to sustainable reform, the Parties agreed to an unprecedented capacity-building period during the first four years of the case to provide PRPB with the support and resources it needs to successfully implement the Agreement.  Agreement ¶ 237.  With the expiration of the capacity-building period in October 2018, the Parties remain firmly committed to the Agreement and its comprehensive reforms to protect public safety, uphold civil rights, and strengthen the community's trust in PRPB.

The Parties are also eager to commence compliance monitoring of the Agreement to determine in a reliable, objective, and even-handed manner whether the Agreement is being implemented effectively and in furtherance of its intended goals throughout Puerto Rico.  This compliance monitoring can only commence, however, with a valid and agreed-upon monitoring methodology that clearly sets forth how the TCA will evaluate the Commonwealth's compliance with each of the substantive requirements of the Agreement.  *See* Order at 1, Docket No. 954 (Sept. 22, 2018) (observing that the monitoring phase of the case will commence on October 8, 2018 and that the monitoring methodology will form the basis for PRPB's compliance henceforth.)  However, as of this date – just four (4) days from the start of compliance monitoring that was already extended for six (6) months – the TCA has not produced an acceptable and complete methodology to the Parties for review and approval, pursuant to Paragraphs 245 through 248 of the Agreement.

Without an acceptable and complete monitoring methodology, it is impossible to determine reliably whether the systemic reforms required by the Agreement are implemented effectively throughout PRPB.  It also leaves the TCA to rely on improvised, *ad hoc*, and anecdotal assessments that cannot be used to effectively measure institutional change over the life of the Agreement or

the impact of such change on achieving the intended benefits of constitutional policing. Despite the Parties' efforts to work with the TCA using the preliminary methodology submitted to the Court on October 5, 2018 (Docket No. 970), the TCA has not produced the specific audits and compliance reviews that are necessary to the monitoring methodology. These specific audits and compliance reviews were due nearly one month ago. Plan and Methodology at 10 (Docket No. 970-1). Given that measuring the PRPB's compliance with the Agreement wholly depends on the existence of a reliable and sound methodology, the Parties are compelled to bring this situation to the Court's attention and respectfully request the Court to issue an order staying all compliance monitoring activities under Paragraphs 227, 242, and 243 of the Agreement for a limited time, not to exceed ninety (90) days from the date on which the TCA submits his monitoring methodology and plan to the Parties, during which the Parties may evaluate, discuss, and approve the TCA's monitoring methodology and plan, and prepare for the compliance phase (the "Stay Period").

## II. ARGUMENT

A. *The TCA Cannot Monitor the Commonwealth's Compliance Without the Benefit of a Reliable and Sound Monitoring Methodology Duly Approved by the Parties.*

The Agreement requires that PRPB implement hundreds of provisions ranging from drafting and approval of polices, and forms, to training, implementation and systemic and sustainable compliance with the policies. The areas of compliance range from recruitment to use of force. The Monitor cannot assess a process as complex and intricate as this without an agreed-upon, appropriate methodology to properly measure compliance. Without such methodology, the TCA is left to monitor using improvised, disjointed, and *ad hoc* activities that do not provide a comprehensive assessment of institutional change within PRPB or its interactions with individuals.

The Agreement requires, at Paragraph 245, that "**within 90 days of assuming duties as the TCA**, the TCA shall develop a plan for conducting the above compliance reviews and outcome

assessments and shall submit [the] plan to the Parties for review and approval." In addition, "**at least 90 days prior to the initiation of any outcome assessment or compliance review**, the TCA shall submit a proposed methodology for the review or assessment to the Parties." Agreement ¶ 248 (emphasis added).

On October 5, 2018, the TCA filed a request for approval under Paragraphs 245 through 248 of what he deemed to be his "final version of the methodology approved by the Parties for the monitoring part of the Agreement." Docket No. 970. Despite the TCA's characterization of the tendered document as a final version of his methodology, the filing consisted merely of a preliminary methodology and a roadmap for the Parties to confer in the hope of ultimately agreeing-upon an "**updated and complete methodology to be applied beginning on [April 9, 2019]**." Docket No. 970-1 at p. 10 (emphasis added). In other words, far from the Parties approving an acceptable monitoring methodology for the compliance phase of the case, the Monitor simply filed a "roadmap" for further discussion with the Parties about the methodology to be used to monitor compliance. Also, "Appendix A" to Docket No. 970-1, which referenced in generic terms multiple evaluation methods, was actually not filed with the Court precisely because the Parties had not agreed on a final monitoring methodology.

The failure by the TCA to develop a complete methodology for discussion with, and approval by, the Parties, necessitated a six-month delay in the compliance monitoring. *See id.* ("The Ninth Semi-Annual Report ("SMR-9"), covering October 8, 2018 to April 8, 2019, will report on the results of the baseline assessment and gap analysis, including identifying which paragraphs are measurable using the agreed-upon methodology.") For that reason, the TCA was not expected to begin compliance monitoring with the Agreement until April 8, 2019 for the purpose of allowing the TCA more time to comply with the requirements of Paragraphs 245

through 248 of the Agreement.[1]  The intent was that during such six-month period, the TCA would work on developing the monitoring methodology, submit to and discuss the same with the Parties, for review and approval, so that the compliance monitoring could begin on April 9, 2019. Unfortunately, this did not happen, and as of this date, barely four (4) days from the start of the monitoring phase of the case, the TCA has yet to submit the methodology to the Parties so that they can review and approve the same.

In light of the above situation, in mid-March, with the April 9 deadline approaching and yet waiting for the methodology from the TCA, **the Parties invited the TCA to meet and discuss the proposed methodology to be evaluated and approved by the Parties pursuant to Docket No. 970-1.** It quickly became apparent during the meetings that the specific monitoring methodology had not yet been developed by the monitoring team, and that the TCA was not clear on how to develop the same.

With the consent of the Parties, the TCA agreed to continue to work on the methodology and provide the same to the Parties in phases, starting on March 22, 2019.  It is now April 5, 2019, four days removed from the start date of the compliance monitoring phase, and the TCA has yet to provide the Parties with a proposed compliance methodology for evaluation, discussion, and approval by the Parties.

It is impossible for the PRPB to prepare for a monitoring process without knowing under what criteria, methods, and/or process it is going to be evaluated.  Entering into a process without an approved and established methodology is akin to taking an exam without knowing what material is going to be tested (science, history, or religion), the testing method (true or false, essay questions, multiple choice), or how the answers will be graded (passing or fail, percentage, curve).

---

[1] The Court noted and approved the preliminary methodology and roadmap on October 5, 2018.  Docket No. 972.

This is grossly untenable in light of the PRPB's strong commitment during the "capacity building" phase of the Reform, and the emphasis the PRPB has placed on fully complying with the Agreement.

For this reason, the PRPB has also not been able to inform its members on **how** the TCA will conduct its monitoring, and **what** specifically the TCA will evaluate, so that they can know what to expect and how to prepare for the monitoring phase. This puts the PRPB in a very unfair position that could result in negative compliance assessments, simply because the PRPB members do not know how the TCA will conduct its monitoring and what it will be looking for, due to no fault of the PRPB, but rather the inability of the TCA to comply with its obligations under the Agreement to develop the methodology for review and approval by the Parties ahead of the compliance phase of the case.

Most importantly, under both Paragraphs 245 and 248, as well as the agreements referenced by the TCA in his submission to the Court (Docket No. 970-1), all of the TCA's plans for compliance review are expressly subject to comment and approval by the Parties. Therefore, even if the TCA were to provide the Parties with a proposed methodology in the coming days, the required process of reviewing and approving the methodology by the Parties would necessarily push the actual start date for compliance at least [ninety] days after the submission by the TCA. This would also include training of the PRPB on the monitoring methodology for use by the Monitor, which has not happened because of the absence of an approved methodology. To allow the TCA to continue to conduct assessments on the PRPB's internal operations while the Parties remain in the dark as to his methods and means for doing so, is to set the PRPB up for failure and to "stack the deck" against it, which is inherently unfair to the PRPB and could result in a miscarriage of the Reform.

B. *The Parties Cannot Consider, Much Less Approve, the TCA's Proposed Budget for Fiscal Year 2019-2020 Without the Benefit of a Reliable and Sound Monitoring Methodology Duly Approved by the Parties that Supports the Budget Increase Proposed by the TCA.*

Per the Court's prior orders, the TCA is to submit his proposed budget for the coming fiscal years to the Parties for approval at least sixty days prior to the conclusion of each budget year, or by April 1st. Docket No. 139, ¶ 16. In compliance with the Court's directives, on January 29, 2019, the TCA submitted his proposed budget for Fiscal Year 2019-2020 ("FY 2019-2020") to the Parties for approval. The proposed budget sought an overall increase of approximately 25% compared to the budget for Fiscal Year 2018-2019. Upon receiving comments from the Parties, the TCA revised his proposed budget and submitted his amended budget on February 13, 2019. However, the amended submission reflected the same approximate budget increase, without any explanation of how the increase was related to compliance monitoring.

As discussed above, the monitoring plan and methodology are key documents that describe the sources, methods, and frequency of evaluation to be used by the TCA to assess the Commonwealth's compliance with the Agreement. They serve as the most useful gauge of the Court Monitor's anticipated workload for the fiscal year and, thus, as justification for the significant increase in the proposed budget. Yet, to date, the TCA has not submitted to the Parties the methodology he will use to monitor compliance, nor explained how that methodology requires a 25% increase in his budget. The Parties cannot blindly approve such an increase in the TCA's budget.

In consideration of the importance of the monitoring plan and methodology to the Parties' ultimate decision regarding the TCA's proposed budget, on April 1, 2019, the United States filed a motion for extension of time, until April 8, 2019, to express their position on the TCA's proposed budget, as the Parties had yet to receive the TCA's monitoring plan and methodology. *See* Docket

7

No. 1174. Considering the TCA has yet to provide the monitoring plan and methodology for compliance assessments to the Parties, the Parties remain unable to duly analyze the TCA's proposed budget, particularly the 25% increase, and respectfully request that the Court vacate any deadline on which the Parties are to provide their position regarding the TCA's proposed budget for FY 2019-2020 until after receipt and discussion of the TCA's monitoring plan and methodology.

## C. *Senior Judge Juan Perez-Gimenez Was Appointed to Aid the Parties in Working Toward a Reliable and Sound Methodology*

On March 4, 2019, the Court entered an order recognizing that, due to its increased workload, Senior Judge Juan M. Perez-Gimenez could be of great assistance to the Court and the Parties as the Reform enters the most crucial stage of the process. In doing so, the Court appropriately highlighted Senior Judge Perez-Gimenez's "experience and expertise of thirty years of federal court monitoring [which could] be of assistance to Puerto Rico's Police Reform." Docket No. 1137.  Subsequently, on March 26, 2019, the Court ordered the Parties and the TCA to meet with Senior Judge Perez-Gimenez in his chambers.  *See* Docket No. 1166.

Although the TCA was unable to participate in said meeting due to a calendar-related miscommunication, the Parties did meet with Senior Judge Perez-Gimenez.  During the meeting, it became evident to the Parties that Senior Judge Perez-Gimenez would be of great benefit to the Parties and the TCA as they embark on the new compliance phase of the case.  The Parties further believe that Senior Judge Perez-Gimenez could provide crucial assistance to facilitate a consensus-based and appropriate methodology that would properly measure the PRPB's compliance with the Agreement.  Accordingly, the Parties respectfully request that, in the event the Court is inclined to grant the Parties' request for a stay, the Court refer the matter to Senior Judge Perez-Gimenez so he may assist the Parties in achieving consensus on a final monitoring plan and methodology.

8

D. *The PRPB Will Continue to Work with Special Master Dr. Alex del Carmen in Furtherance of Their Compliance with the Agreement*

On December 4, 2018, the Court appointed Dr. Alex del Carmen as Special Master (the "Special Master") under Federal Rule of Civil Procedure 53 (Rule 53) "in matters that are complex and difficult or involve accountability and statistical analysis." Docket No. 1038. On February 8, 2019, the Parties jointly requested that the Special Master be tasked with assisting the PRPB in the following areas:

> 1. The development of protocols and procedures to review law enforcement activities and programs for potential bias and ensure the equal protection of the law under Paragraph 91 of the Agreement, including the collection and use of reliable data from agency information systems, like Computer-Aided Dispatch, Kronos, and Early Intervention System;
>
> 2. The development of a robust career path that promotes effective leadership, professionalism, and equal opportunity within the rank system in furtherance of Paragraph 21 of the Agreement; and
>
> 3. The design and implementation of internal audits and integrity checks in accordance with Paragraphs 154-157 of the Agreement, including establishing effective and comprehensive information systems that support internal auditing and monitoring, such as the Early Intervention System.

Docket 1095 at p. 9. On February 12, 2019, the Court adopted the Parties' recommendations regarding the Special Master's work areas and, in doing so, the Court stated that "[w]hen the need becomes apparent for work in any additional subjects, the Parties will bring the matter to the Court's attention." Docket No. 1102, ¶7.

From the date of his appointment, the Special Master has been diligently assisting the PRPB in the aforementioned areas. If the Court were to grant the Parties' request for a stay, Dr. del Carmen would continue assisting the PRPB in the matters of data collection and information technology systems. Moreover, the Parties respectfully request the Court grant the Parties leave to consult the Special Master and make use of his services in designing a preliminary methodology that would assist the Parties in the course of evaluation, discussion, and approval of the TCA's

9

monitoring methodology and plan, as Dr. del Carmen's experience in the subject matters subject to monitoring, as well as in monitoring, would be of great assistance to the Parties in their collaborative efforts towards achieving a comprehensive and reliable monitoring plan and methodology during the limited Stay Period requested by the Parties.

In this way, during the Stay Period, the Parties do not intend to remain idle, as they will continue to work, with the assistance of the Special Master, on (1) the development of a proposed monitoring methodology that could be discussed with, and approved by, the Monitor so that the monitoring phase can begin as soon as possible, in the event that the methodology submitted by the TCA is not acceptable to the Parties and thus cannot be approved by them; (2) data collection and analysis to aid in the monitoring process; (3) the continued development of the information technology infrastructure of the PRPB to better support the monitoring process; and (4) the continued development of additional policies and processes for the professionalization of the PRPB, such as those related to the promotions of the command ranks of the PRPB (<u>i.e., </u>the ranks above captain), as well as other matters relevant to the Reform.  Moreover, once a final monitoring methodology is approved by the Parties and the Court, the TCA may retroactively review the Commonwealth's compliance during the Stay Period.

### III. CONCLUSION

As could be readily ascertained from the arguments made above, the absence of a final monitoring methodology and plan compromises several essential components of the reform process.  Moving forward with compliance assessments in the absence of a final monitoring plan and methodology would compromise the integrity of the Reform and would place the PRPB at a perilous disadvantage.  Consequently, the ninety-day Stay Period requested herein for the evaluation, discussion, and approval of the TCA's monitoring methodology and plan is warranted

insofar as it places the PRPB in a position to be duly evaluated by the TCA, and ensures the Agreement is properly followed and the compliance therewith is appropriately measured. Moreover, the aid of both Senior Judge Perez-Gimenez and Special Master Dr. del Carmen during this phase would be of positive consequence to the process and would certainly assist the Parties in tracing a path on which the Parties may walk together towards ultimate compliance with the Agreement.

**WHEREFORE**, the Parties respectfully request the Court:

a) order a stay of all compliance monitoring activities under Paragraphs 227, 242, and 243 of the Agreement until the Parties agree on a reliable and sound methodology to evaluate PRPB's compliance with the Agreement;

b) vacate the Parties' deadline for approving the TCA's proposed budget for FY 2019-2020 until the Parties agree on a reliable and sound methodology to monitor the PRPB's compliance with the Agreement;

c) appoint Senior Judge Juan Perez-Gimenez to work with the Parties on finalizing a reliable and sound monitoring methodology; and

d) permit the PRPB to continue working with Special Master Del Carmen in the three work areas selected by the Parties and ratified by the Court.

**RESPECTFULLY SUBMITTED**.

**WE HEREBY CERTIFY**: That today we have electronically filed the foregoing document with the Clerk of the Court for the District of Puerto Rico, using the CM/ECF system which will send a copy and notification of filing to all counsel of record.

In San Juan, Puerto Rico, this 5th day of April, 2019.

| For Plaintiff UNITED STATES OF AMERICA: | For Defendants COMMONWEALTH OF PUERTO RICO, ET AL.: |
|---|---|
| **STEVEN H. ROSENBAUM**<br>Chief, Special Litigation Section<br><br>s/<br>**TIMOTHY D. MYGATT**<br>Deputy Chief<br>**LUIS E. SAUCEDO** (G01613)<br>Counselor to the Chief<br>**JORGE CASTILLO** (G02912)<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Rights Division<br>Special Litigation Section<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530<br>Telephone: (202) 598-0482<br>Fax: (202) 514-4883<br>luis.e.saucedo@usdoj.gov<br>jorge.castillo@usdoj.gov<br><br>Attorneys for Plaintiff | s/ *Arturo J. Garcia Sola*<br>Arturo J. Garcia Sola<br>USDC-PR No. 201903<br>ajg@mcvpr.com<br><br>s/ *Maria A. Dominguez*<br>Maria A. Dominguez<br>USDC-PR No. 210908<br>madt@mcvpr.com<br><br>s/ *Javier F. Micheo Marcial*<br>Javier F. Micheo Marcial<br>USDC-PR No. 305310<br>jfmm@mcvpr.com<br><br>McCONNELL VALDÉS LLC<br>P.O. Box 364225<br>San Juan, PR 00936-4225<br>Telephone (787) 250-5641<br>Fax: (787) 759-8282<br><br>Attorneys for Defendants |