## UNITED STATES OF AMERICA
## DISTRICT COURT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>       v.<br><br>COMMONWEALTH OF PUERTO RICO, et al,<br><br>    Defendants | CIVIL NO. 12-2039 (GAG) |

## INFORMATIVE MOTION

TO THE HONORABLE COURT:

COMES NOW the ACLU through the undersigned attorneys, and respectfully avers and prays as follows:

On July 17, 2019, the ACLU filed an Urgent Motion expressing concern about announcements regarding the use of a specialized unit (UOT) of the Department of Corrections to assist the Puerto Rico Police Bureau in the massive rally expected in Old San Juan during that afternoon.

In that motion the ACLU expressed that the deployment of the UOT is contrary to the Agreement for the Sustainable Reform of the Puerto Rico Police Department, ECF 60, ("Agreement") and to the General Orders approved under the Reform. The UOT officers lack the knowledge and training that police officers should have in order to address mass rallies and deploy crowd control techniques. This has adversely affected the achievements of the Police Reform and is putting in danger the physical and emotional integrity of the protestors.

1

The officers' lack of training violates the General Orders of the Puerto Rico Police Bureau Reform concerning Use of Force, Tactical Operations, SWAT, Use of Chemical Agents, and Crowd Control. It endangers not only the security and safety of the people participating in the mass rallies but also the security of the police officers themselves. During recent protests we have been witnessing use of excessive force and even potential deadly force against unarmed and peaceful civilians and pedestrians almost every day.

After the ACLU filed the Urgent Motion, this Court announced the participation of Special Master Alejandro Del Carmen and the acting monitor's team as observers of the protests. The ACLU takes issue with the appointment of Alejandro del Carmen as observer and any characterizations of Del Carmen as an expert in use of force and crowd control.

Del Carmen is an academic whose research, writing, and consulting on police matters are primarily focused on racial profiling. Although he has worked with police departments in the past and conducted some seminars for law enforcement officials, he is not an expert in policy or compliance related to police oversight of use of force, two issues at the center of the current Reform. Del Carmen does not possess the necessary experience or qualifications to effectively oversee the PRPB or make determinations as to its compliance with judicial orders.

The ACLU learned that Del Carmen served as an expert witness for the Puerto Rico Police Bureau in a sounded civil rights violation case, *Ramirez-Lluveras v. Pagan-Cruz*, 833 F.Supp.2d 151 (2011). Counsel for plaintiffs in that case authorized the ACLU to use the deposition conducted on Del Carmen in this captioned case. Del Carmen's role as an expert witness for the Police Department in *Ramirez-Lluveras v. Pagan-Cruz*, 833 F.Supp.2d 151 (2011) represents a conflict of interests that the ACLU rejects in the Police Reform process. The ACLU did not find any mention of this case in Del Carmen's *curriculum vitae*.

From the depositions conducted on Del Carmen in that case, the ACLU learned that Del Carmen lacks the necessary qualifications to effectively carry out the duties of Special Master. He is primarily an academic who has consulted with smaller police departments and been involved in what he described as a "handful" of cases. Dep. of Alejandro Del Carmen at 69-70, *Ramirez-Lluveras*, 833 F.Supp.2d 151. At the time that he was deposed in *Ramirez-Lluveras* in 2010, the largest police force that Del Carmen had consulted for was the City of Fort Worth, which has approximately 550 officers. *Id.* at 161-62.  He had trained chiefs of police from agencies like that of Houston, which has about 3,000 officers. *Id.* Del Carmen has never had direct contact as a consultant with a police force of the size of Puerto Rico's force and it is unlikely that he is equipped to confront the systemic issues facing a department of this size. From Del Carmen's *curriculum vitae* the ACLU could not find any significant changes to his qualifications as an expert.

Del Carmen does not possess the requisite expertise to analyze PRPB policies or make recommendations to effectively remedy issues that the Monitor identifies. Del Carmen's consulting work with police departments with respect to disciplinary systems has been entirely within the context of racial profiling. *Id.* at 106. He has acknowledged that most of his work does not involve evaluating specific policies. *Id.* at 348. Though he has previously reviewed data sets from police departments relating to use of force and racial profiling, he has never taught or consulted specifically on the topic of identifying violent officers and/or conducted statistical analysis for that purpose. *Id.* at 352. The Court should not regard Del Carmen's experience in analyzing racial profiling data as sufficient to support broader claims as to his expertise on police supervision or other specific issues facing the PRPB.

Del Carmen is not an expert on use of force, which is one of the primary issue areas that the Agreement seeks to address. *See* Agreement for the Sustainable Reform of the Puerto Rico Police Bureau at 17-28. He has never testified in court as a trial expert, and in the *Powers* case in El Paso, Texas, a judge excluded Del Carmen's report because he felt that his training and academic background was not sufficient to justify including the report as expert testimony. *See* Dep. of Alejandro Del Carmen at 41-42. Del Carmen did not contest the judge's ruling, and when plaintiff's counsel in *Powers* requested that Del Carmen return what he was paid, Del Carmen complied. *Id.* at 44-45. Though Del Carmen's website at the time of the 2010 deposition said that he specialized in "use of force analysis," he clarified in the deposition that he had experience in "use of force studies . . . on the level of statistical studies or analysis of patterns" with respect to use of force data from police departments. *Id.* at 302-03. However, when asked during the deposition to comment on the level of force used in a specific case, Del Carmen demurred, indicating that following the court's determination in *Powers*, he no longer felt it was honest for him to continue advertising his firm "as one that relied on use-of-force expertise." *Id.* at 55-58, 116-17, 268. Though he avoided admitting outright that he lacked the requisite qualifications, Del Carmen recognized that <u>most courts would be unlikely to consider him an expert</u>.

Del Carmen acknowledged a number of additional deficiencies in his experience during the 2010 deposition. At the time that he was questioned, Del Carmen had never: written a book on issues of supervision, the deliberate indifference standard, or its application to supervision; written any articles having to do with deliberate indifference in management of police officers; been a police officer or police supervisor; fired a weapon in a hostile situation; taught at a police academy regarding monitoring of officers with violent tendencies; taught at a police academy

4

regarding monitoring of officers with violent tendencies, maintenance of statistics regarding officer-involved shootings not within the context of racial profiling data, or the functioning of disciplinary systems within police departments; been employed as a consultant to provide advice to police institutions or police entities regarding management of supervisors with violent tendencies; written a policy on administrative review of officer-involved shootings; or written a policy on police supervision other than on racial profiling. *Id.* at 98-107. These gaps in his experience are relevant to his ability to effectively address the problems facing the PRPB; without expertise in these key areas, he is unlikely to be able to recommend appropriate remedies to the PRPB's struggles with use of force, discipline, and police supervision.   This recommendation is particularly significant in light of recent developments with regard to mass protests in San Juan.

Given the limited scope of Del Carmen's expertise and the broad range of problems currently facing the PRPB, it is unlikely that he is equipped to effectively carry out the role of Special Master. Per the Court's Order appointing Del Carmen, ECF 1038, the Special Master is tasked with identifying the causes of failures in adherence to the Agreement and recommending solutions to bring the PRPB in compliance. Such a task requires practical and policy experience in a wide range of areas, including recruitment and hiring, training, use of force, supervision, and discipline. As an academic expert in racial profiling who has little to no experience in other critical issue areas relevant to the PRPB reform, Del Carmen lacks the qualifications to serve as Special Master.

Protesters, residents, business owners, elderly people and children have been adversely affected by PRPB's illegal and arbitrary use of chemicals, pepper spray, rubber bullets, pellets, and other equipment and ammunitions.   PRPB's excessive and illegal use of force, which is

now drawing international attention, is the consequence of the wrong orders issued by the PRPB Commissioner Henry Escalera, Secretary of the Department of Security Elmer Roman and their legal advisors, who have also been using special units of the Department of Corrections that are not trained to be activated during mass rallies.

The PRPB response to the concerns brought before the consideration of the Court by the ACLU, ECF 1287, was an inadequate quote of legislation, giving the false impression that the Public Safety Department is not under the scope of the Police Reform.  This issue has already been addressed by the Court in previous orders. The Court recently indicated that any personnel selected to support the PRPB during the protests "under the directives of the Secretary of Public Safety must at all times adhere to all conditions established in the Agreement". (Dkt. 1288)  This is not happening.

The U.S. DOJ's response to the ACLU's concerns regarding using the UOT of the Department of Corrections, is unacceptable: "after the protests are concluded, the Parties and the Acting Monitor should evaluate the use of non-PRPB personnel to ensure that applicable provisions of the Agreement have been followed."  (Dkt. 1289).  Here, the U.S. DOJ is "looking to the other side" as has been previous stated by the former Police Monitor.  The ACLU hopes that the U.S. DOJ assume a position , without having to wait for a fatality in order to finally address the grave violations committed by the PRPB.

The ACLU requests that this Court take notice of our concerns for the health, life and physical integrity of civilians in Old San Juan, and other demonstrations.  We should not wait for a dead body in order to act and take the necessary measures to control police behavior, as directed in the Reform Agreement.

The ACLU continues to recommend that the Agreement to reform the PRPB be

6

modified to adopt some form of independent civilian oversight mechanism. The parties are also failing to incorporate "community policing" as one of the essential cornerstones of the Reform.

THEREFORE, *amicus* ACLU of Puerto Rico respectfully requests from this Honorable Court to take notice of ACLU serious concerns.

RESPECTFULLY SUBMMITED.

At San Juan, Puerto Rico this July 25, 2019.

I HEREBY CERTIFY that on this same date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will notice the filing of this document to all parties in this action.

*/S/ FERMÍN L. ARRAIZA NAVAS*
FERMÍN L. ARRAIZA NAVAS
USDC-PR 215705
farraiza@aclu.org

WILLIAM RAMIREZ-HERNANDEZ, Esq
Executive Director
American Civil Liberties Union
of Puerto Rico
E-Mail wramirez@aclu.org

Union Plaza Building
416 Ave. Ponce de León, Suite 1105
San Juan, PR 00918
Phone: 787-753-8493
Fax: 787-753-4268