Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| 58 | PRPD shall ensure that all investigatory stops, searches, and arrests are conducted in accordance with the rights, privileges, or immunities secured or protected by the Constitution and laws of the United States and the Commonwealth of Puerto Rico. PRPD shall ensure that investigatory stops, searches, and arrests are conducted as part of effective crime prevention strategies that are consistent with community priorities for enforcement. | Compliance will be determined on two separate, but inter-dependent bases: (1) the implementation of Paragraphs 59-79, and (2) the results of outcome assessments, pursuant to Paragraph 243. | | Bi-annually | |
| 59 | PRPD shall develop policies and procedures that comply with applicable law and comport with generally accepted policing practices on stops, searches, and arrests; provide training; ensure consistent supervision; and hold officers accountable for complying with applicable law and policy. PRPD policies shall define all terms clearly and provide guidance on the facts and circumstances that should be considered in initiating, conducting, terminating, and expanding an investigatory stop, detention, or search. | Note: The policy requirements of this paragraph will be assessed with Paragraphs 65, 72, 74, and 78.

Note: Training will be assessed as part of Section E (¶¶ 78-79) on Training on Stops, Searches, and Seizures.

Note: Implementation will be assessed as part of the compliance reviews for Sections B (¶¶ 60-64), C (¶¶ 65-73), and D (¶¶ 74-77) on Investigatory Stops and Searches, Arrests, and Searches, respectively. | | Annually | |

1

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| 60 | PRPD shall develop an Investigatory Stops and Searches Reporting Policy and a system to collect data on all investigatory stops and searches, whether or not they result in an arrest or issuance of a citation. PRPD's stop data collection system shall be subject to the review and approval of the TCA, and shall require officers to document the following: (a) the date, time, location, and duration of the stop and/or search; (b) the reason for the stop and/or search; (c) the subject's apparent race, color, ethnicity or national origin, gender, and age; (d) whether any contraband or evidence was seized, and the nature of the contraband or evidence; and (e) the disposition of the stop, including whether a citation was issued or an arrest made. PRPD shall require that officers submit written reports regarding investigatory stops and searches to their supervisor by end of shift for review. A copy of these reports shall be forwarded to SPR and the Reform Unit for tracking and analysis. | PRPB has not authorized investigatory or *Terry* stops based on reasonable suspicion. For Paragraphs 60-64, the Monitor's Office will assess the basis for stops and arrests based on probable cause.<br><br>1. For Paragraphs 60-64, the Monitor's Office will consider the basis for initial stops and searches as part of its review of Sections C (¶¶ 65-73) and D (¶¶ 74-77) on Arrests and Searches, respectively, to determine whether officers comply with policy limitations on investigatory stops and searches.<br><br>2, Document review every six months of documents related to consensual searches, performance evaluations, EIS records, internal audits, civilian complaints, discipline records, and CAD data obtained through incident | 1. 100% of stops and searches are justified based on probable cause. For stops and searches based on a lesser standard or that are otherwise unjustified, PRPB takes corrective and/or disciplinary action.<br><br>2. 100% of stops and searches reviewed as part of other areas of the Agreement are based on probable cause. For stops and searches based on a lesser standard or that otherwise unjustified, PRPB takes corrective and/or disciplinary action. | Bi-annually | |

2

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| | | reviews for other areas of the Agreement, such as Use of Force, Equal Protection, and Civilian Complaints, for instances of stops and searches that are not supported by probable cause. | | | |
| 61 | PRPD's Investigatory Stops and Searches Reporting Policy shall explicitly prohibit the use of boilerplate or conclusory language in all reports.  PRPD policies shall also expressly prohibit officers from knowingly using or relying on information known to be materially false or incorrect in effectuating an investigatory stop or detention. | This paragraph will be assessed with Paragraph 60. | | Bi-annually | |
| 62 | A supervisor shall review each report on Investigatory Stops and Searches to determine whether the stop or search was within PRPD policy and this Agreement. For any investigatory stop or search deemed to be outside of PRPD policy or this Agreement, the supervisor shall determine if the stop or search:  (a) should result in an internal investigation by SPR; (b) indicates a need for additional training, counseling, or any other non-punitive corrective measure for the involved officer; and (c) suggests the need for revising or | This paragraph will be assessed with Paragraph 60. | | Bi-annually | |

3

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
|  | reformulating agency policy, strategy, tactics, or training.  The supervisor shall document on an auditable form those investigatory stops and searches that are unsupported by reasonable suspicion; are in violation of PRPD policy or this Agreement; or that indicate a need for corrective action or review of agency policy, strategy, tactics, or training.  The quality of these supervisory reviews shall be taken into account in the supervisor's performance evaluations. |  |  |  |  |
| 63 | A command-level officer or official shall review, in writing, all supervisory auditable forms related to investigatory stops and detentions.  The commander's review shall be completed within three business days of receiving the document reporting the event.  The commander shall evaluate the corrective action and recommendations in the supervisor's written report and ensure that all appropriate corrective action is taken, including referring the incident for administrative or criminal investigation. | This paragraph will be assessed with Paragraph 60. |  | Bi-annually |  |
| 64 | At least annually, PRPD shall analyze investigatory stop and search data to determine significant trends, identify and correct deficiencies revealed by this analysis, and document its findings in a public report. | This paragraph will be assessed with Paragraph 60. |  | Bi-annually |  |

4

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| 65 | PRPD shall revise its policies on arrests to ensure that they comply with applicable law and comport with generally accepted policing practices. | 1. Content analysis of policies and related forms to determine whether they incorporate the requirements of Paragraphs 59, 65-71.<br><br>Note: Training will be assessed as part of Section E (¶¶ 78-79) regarding Training on Stops, Searches, and Seizures.<br><br>2. Document review at least every six months of a random sample* of arrests and related incident reports and CAD data to determine whether:<br>(a) officers notify arrests as required by approved policies;<br>(b) supervisors respond to the scene of an arrest as required by approved polices; and<br>(c) exigent circumstances and the elements of probable cause are articulated over a recorded channel when a supervisor | 1. Polices and forms incorporate all of the requirements of Paragraphs 59, 65-71. See Searches and Seizures Worksheet #1.<br><br>2. 95% of selected arrests are notified and reviewed by supervisors in accordance with approved policies.<br><br>3. Officers transport arrestees and complete required arrest documentation in accordance with approved policies in 95% of selected arrests.<br><br>4a. Supervisors respond to injuries and complaints of pain by detainees or arrestees in accordance with approved policies in 95% of selected arrests. | Annually with respect to Data Source #1. Bi-annually for all others. | |

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| | | does not respond to the scene; and<br>(d) supervisors review an officer's initial arrest determination as required by approved policies.<br><br>3. Document review at least every six months of a random sample* of arrests, related incident reports, CAD data, and mapping software to determine whether:<br>(a) routes taken are safe and direct as required by approved policies;<br>(b) officers provide all required information to the communication command center; and<br>(c) officers complete all written arrest forms and booking recommendations at the time of presentment as required by approved policies. | 4b-e. Supervisors review, document, and take corrective action, including making referrals when necessary, as required by approved policies in 95% of selected arrests. See Searches and Seizures Worksheet #2.<br><br>5. Unit commanders review, document, and take corrective action, including making referrals when necessary, as required by approved policies in 95% of selected arrests. See Searches and Seizures Worksheet #2. | | |

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| | | 4. Document review of arrest and incident reports, CAD data, SARP investigations, and related documents at least every six months of a random sample* of arrests to determine whether: (a) watch commanders or supervisors visually inspect, interview, and provide medical attention, as necessary, to detainees and arrestees in accordance with approved policies; (b) supervisors personally review and approve all booking recommendations in writing in accordance with approved policies; (c) supervisors evaluate incidents involving interference with a police officer, resisting arrest, assault on a police officer or similar charge in accordance with approved policies; (d) supervisors document the results of their reviews in accordance with the | | | |

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| | | Agreement and approved policies; and (e) supervisors refer evidence of an arrest indicating apparent misconduct or apparent criminal conduct by an officer to the appropriate investigating unit as required by approved policies. 5. Document review of arrest and incident reports, CAD data, SARP investigations, and related documents at least every six months of a random sample* of arrests to determine whether: (a) commanders or officials review auditable forms in writing in accordance with approved policies; (b) commanders or officials evaluate supervisors' corrective action and recommendations in accordance with approved policies; and | | | |

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| | | (c) commanders or officials refer evidence of an arrest indicating apparent misconduct or apparent criminal conduct by an officer to the appropriate investigating unit as required by approved policies. | | | |
| 66 | PRPD shall require that officers notify the communications command center and a supervisor immediately after an arrest, or as soon as practicable.  For felony arrests, or an arrest for obstructing or resisting an officer, PRPD shall require a field supervisor to respond to the scene of the incident and approve the officer's arrest determination, based on the existence of probable cause.  If an officer's arrest determination is insufficient, or otherwise unjustified, the supervisor may, if necessary, interview the subject.  The supervisor shall take appropriate action to address violations or deficiencies in an officer's arrest determination, including releasing the subject, recommending non-punitive corrective action for the involved officer, or referring the incident for administrative or criminal investigation.  If a supervisor is unavailable to respond to the scene or there are exigent | This Paragraph will be assessed with Paragraph 65. | | Bi-annually | |

9

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
|  | circumstances, the officer shall notify his or her immediate supervisor over a recorded channel of the elements of probable cause for the felony arrest or arrest for obstructing or resisting an officer. If the officer's immediate supervisor is unavailable, the officer shall notify any field supervisor over a recorded channel of the elements of probable cause for the felony arrest or arrest for obstructing or resisting an officer. |  |  |  |  |
| 67 | When transporting an arrestee, officers shall take the safest and most direct route to the booking location.  PRPD policy shall require that officers notify the communications command center of the starting and ending mileage on the transporting vehicle, as well as the gender, race, ethnicity, national origin, and apparent age of the arrestee.  The officer shall complete all written arrest forms and booking recommendations at the time an arrestee is presented at any PRPD precinct, station, or specialized unit for booking. | This Paragraph will be assessed with Paragraph 65. |  | Bi-annually |  |
| 68 | At the time of presentment at a PRPD precinct, station, or specialized unit, a watch commander or supervisor shall visually inspect each detainee or arrestee for injury, interview the detainee or arrestee for complaints of pain, and ensure that the detainee or arrestee receives | This Paragraph will be assessed with Paragraph 65. |  | Bi-annually |  |

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
|  | medical attention from an appropriate medical provider, as necessary. |  |  |  |  |
| 69 | PRPD shall require that all booking recommendations be personally reviewed and approved in writing in an auditable form by a supervisor as to appropriateness, legality, and conformance with PRPD policies within 12 hours of the arrest, absent exceptional circumstances. Supervisors shall also examine arrest reports and forms related to the arrest for boilerplate or conclusory language, inconsistent information, lack of articulation of the legal basis for the action, or other indicia that the information in the reports or forms is not authentic or correct. Supervisors shall evaluate each incident in which a person is arrested for interfering with a police officer, resisting arrest, assault on a police officer, or other similar charge to determine whether the incident raises any issue or concern regarding the basis for the arrest or implications on training, policies, or tactics. | This Paragraph will be assessed with Paragraph 65. |  | Bi-annually |  |
| 70 | As part of the supervisory review, the supervisor shall document on an auditable form those arrests that are unsupported by probable cause, are in violation of PRPD policy or this Agreement, or that indicate a need for corrective action or review of agency policy, strategy, tactics, or training. | This Paragraph will be assessed with Paragraph 65. |  | Bi-annually |  |

11

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| | The quality of these supervisory reviews shall be taken into account in the supervisor's performance evaluations. | | | | |
| 71 | A command-level officer or official shall review, in writing, all auditable forms related to arrests. The commander's review shall be completed within seven days of receiving the document reporting the event. The commander shall evaluate the corrective action and recommendations in the supervisor's written report and ensure that all appropriate corrective action is taken. Whenever a reviewing supervisor or command-level officer finds evidence of an arrest indicating apparent misconduct or apparent criminal conduct by an officer, he or she shall immediately notify his or her supervisor for referral to the appropriate investigating unit or the PRDOJ. The Superintendent shall be notified of the referral. | This Paragraph will be assessed with Paragraph 65. | | Bi-annually | |
| 72 | PRPD shall require officers to provide written receipts to individuals whenever property is seized from the individuals. PRPD shall establish procedures that are based on generally accepted policing practices to ensure that all seized property is properly stored and returned, as appropriate. | 1. Content analysis of policies on seized property and evidence to determine whether they incorporate the requirements of Paragraphs 59 and 72.

Note: Training will be assessed as part of Section E (¶¶ 78-79) regarding | 1. Polices incorporate all of the requirements of Paragraphs 59 and 72. See Searches and Seizures Worksheet #3.

2. Property is seized, stored, and returned, as appropriate, in accordance with | Annually with respect to Data Source #1. Bi-annually for all others. | |

12

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| | | Training on Stops, Searches, and Seizures.<br><br>2. Document review, at least every six months of a random sample* of property seizure receipts and storage documentation to determine whether property is seized, stored, and returned, in accordance with approved policies.<br><br>3. Document review of a random sample* of administrative investigations involving seized property to determine compliance with policies on the issuance of receipts, storage, and return of seized property. | approved policies in 95% of selected arrests.<br><br>3. PRPB takes disciplinary and/or corrective action in response to all sustained complaints where an officer fails to issue a receipt, store, or return seized property in accordance with approved policies. | | |
| 73 | PRPD shall develop a protocol to seek formal feedback from the prosecutor's office, the public defender's office, and Commonwealth judges on a regular basis regarding the quality of PRPD investigations, arrests, court testimony, and indicia of misconduct and to make operational and policy changes based upon this feedback.  In addition, PRPD shall | 1. Content analysis of interagency agreements and protocols to determine whether they incorporate the requirements of the paragraph. | 1. Interagency agreements and policies incorporate the requirements of the paragraph. | Annually | |

13

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| | refer to SPR for investigation any information regarding specific incidents of possible officer misconduct received through this protocol. | 2. Interviews of relevant PRPB officers and document review at least every six months to determine whether PRPB seeks and obtains feedback from criminal justice agencies and entities as required by approved agreements and policies.<br><br>3. Document review of SARP files related to any allegations of misconduct received through this protocol to determine whether an internal investigation resulted from such allegations. | 2. PRPB officers seek and obtain feedback from criminal justice agencies and entities as required by approved agreements and policies.<br><br>3. 100% of alleged misconduct noted in protocol documentation corresponds with a SARP investigation. | | |
| 74 | PRPD shall revise its policies on searches to ensure that they comply with applicable law and comport with generally accepted policing practices.  PRPD policies shall define all terms clearly and specify procedures for executing search warrants and warrantless searches, including handling, recording, and taking custody of seized property or evidence. | 1. Content analysis of policies and related forms to determine whether they incorporate the requirements of Paragraphs 59, 74-77.<br><br>Note:  Training will be assessed as part of Section E (¶¶ 78-79) regarding | 1. Polices and forms incorporate all of the requirements of Paragraphs 59, 74-77. See Searches and Seizures Worksheet #1. | Annually with respect to Data Source #1.  Bi-annually for all others. | |

14

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
|  |  | Training on Stops, Searches, and Seizures.<br><br>2. Document review at least every six months of a random sample* of searches and related incident reports to determine whether:<br>(a) officers followed approved procedures for executing search warrants and warrantless searches;<br>(b) supervisors review and approve requests for search or arrest warrants in accordance with approved policies; and<br>(c) officers obtain and document consent from individuals who consent to a voluntary search in accordance with approved policies. | 2. Searches are conducted and reviewed by supervisors in accordance with approved policies in 95% of selected searches. See Searches and Seizures Worksheet #4. |  |  |
| 75 | PRPD shall require that a supervisor review and approve in writing each request for a search or arrest warrant, including each affidavit or declaration before it is filed by an officer in support of a warrant application, for appropriateness, legality, and conformance with PRPD policy. | This Paragraph will be assessed with Paragraph 74. |  | Bi-annually |  |

15

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| 76 | PRPD shall track each search warrant, the case file where a copy of such warrant is maintained, the officer who applied for the warrant, and each supervisor who reviewed the application for a search warrant. | Note: Policy content will be assessed as part of Paragraph 74.<br><br>Note: Training will be assessed as part of Section E (¶¶ 78-79) regarding Training on Stops, Searches, and Seizures.<br><br>1. Content analysis to determine whether the tracking system accounts for all of the elements in the paragraph and the outcome measures required by Paragraph 243.<br><br>2. Document review at least every six months to determine whether the tracking system is current and accurate based on a review of a random sample* of search warrants.<br><br>3. Unannounced and random site visits to units that execute search warrants to determine whether documentation on search | 1. Tracking system accounts for all of the elements in the paragraph and outcome measures as required by Paragraph 243.<br><br>2. All search warrants are tracked in the tracking system.<br><br>3. Documentation on search warrants is maintained in accordance with approved policies in 95% of precincts and units visited. | Bi-annually with respect to Data Source #2, and Annually for all others. | IST |

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| | | warrants is maintained in accordance with approved policies. | | | |
| 77 | PRPD shall require officers to obtain and document consent from an individual who consents to a voluntary search of his/her person or vehicle when the search is conducted as part of a routine pedestrian or vehicle stop, unless a non-consensual search is otherwise legally permissible. | This Paragraph will be assessed with Paragraph 74. | | Bi-annually | |
| 78 | PRPD shall train all PRPD officers on PRPD's stop, search, and seizure policies. Thereafter, PRPD shall provide all PRPD officers with training at least every two years for the first four years of this Agreement, and annually thereafter. PRPD shall also provide training on stops, searches, and seizures as necessary, based on developments in applicable law and PRPD policy. PRPD shall coordinate and review all policies and training on stops, searches, and seizures to ensure quality, consistency, and compliance with the Constitution and laws of the United States and the Commonwealth of Puerto Rico, this Agreement, and PRPD policy. PRPD shall conduct regular subsequent reviews of this training at least annually, and report its findings. PRPD's training program shall include the following topics: | 1. Content analysis of training on stops, searches, and seizures to evaluate quality and content in accordance with approved policies and the requirements of Paragraphs 59, 65-78.

2. Document review, at least every six months to determine whether officers are trained and certified in stops, searches, and seizures. Review a random sample* of personnel files to determine whether certifications validate training records. | 1. Training on stops, searches and seizures is consistent with approved policies and the requirements of Paragraphs 59, 65-78.

2. 95% of officers are trained and certified in stops, searches, and seizures (or scheduled for training, in the case of mid-year reviews).

3. 95% of relevant trainings are reviewed at least once a year. | Annually | |

17

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
|  | a) PRPD policies and requirements in this Agreement regarding stops, searches, and seizures;<br>b) the Fourth Amendment and related law;<br>c) examples of scenarios faced by PRPD officers and interactive exercises that illustrate proper police practices, methods, and tactics in conducting consensual field interviews, investigatory stops, consent and non-consent searches, and arrests.  These training scenarios shall address the difference between various police contacts by the scope and level of police intrusion; between probable cause, reasonable suspicion and mere speculation; and voluntary consent from mere acquiescence to police authority; and<br>d) comprehensive testing that shows complete understanding of rules and regulations. | 3. Document review of the findings of annual reviews to determine whether annual review of trainings is occurring. |  |  |  |
| 79 | PRPD shall train all supervisors and command officers on PRPD's stop, search, and seizure policies.  Thereafter, PRPD shall provide all supervisors and command officers with training on reviewing subordinates' stops, searches, and seizures at least annually and, as necessary, based on developments in applicable law and PRPD policy.  PRPD shall coordinate and review all policies and training on stops, searches, and seizures to ensure quality, | 1. Content analysis of training on stops, searches, and seizures for supervisors and commanders to evaluate quality and content in accordance with approved policies and the requirements of Paragraphs 59, 65-77, and 79. | 1. Training on stops, searches, and seizures is consistent with approved policies and the requirements of Paragraphs 59, 65-77, and 79. | Annually |  |

18

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

| Para. | Agreement Paragraph Text | Data Sources and Evaluation Methods | Compliance Targets/Thresholds | Monitoring Frequency | Staffing or IST |
|---|---|---|---|---|---|
| | consistency, and compliance with the Constitution and laws of the United States and the Commonwealth of Puerto Rico, this Agreement, and PRPD policy.  PRPD shall conduct regular subsequent reviews of this training at least annually, and report its findings.  PRPD's training on stops, searches, and seizures for supervisors and command officers shall include the following topics:<br>a) requesting medical services and questioning detainees and arrestees for pain or injury;<br>b) report writing, including reviewing reports on stops, searches, and seizures for completeness, accuracy, and quality, including recognizing boilerplate language and how to document discrepancies;<br>c) assessing the legality and appropriateness of a stop, search, or seizure;<br>d) legal standards governing searches and seizures, including legal standards and requirements for criminal accountability, administrative accountability, and performance improvement related to tactics, training, equipment, and policy sufficiency; and<br>e) recommending and administering proper discipline and non-punitive corrective action related to searches and seizures. | 2. Document review, at least every six months to determine whether supervisors and commanders are trained and certified on stops, searches, and seizures.  Review a random sample* of personnel files to determine whether certifications validate training records.<br><br>3. Document review of the findings of annual reviews to determine whether annual review of trainings is occurring. | 2.  95% of supervisors and commanders are trained and certified in stops, searches, and seizures (or scheduled for training, in the case of mid-year reviews).<br><br>3. 95% of relevant trainings are reviewed at least once a year. | | |

Office of the Court Monitor
Monitoring Matrix and Methodology on Searches and Seizures

*Denotes a randomized sample obtained through 20% of the population/universe to be studied.  Randomization minimizes sampling errors while ensuring equal representation of all variables.  Percentages for training compliance will be based on the number of officers who are eligible for training.

Note:  when referencing a "content analysis" of training, the monitor may conduct random and unannounced site visits to the Police Academy and/or training sites, which will allow for the review of the training content, delivery of materials, and learning process as a whole.  Content analyses of policies and training will be based on applicable law and generally-accepted policing practices.