**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | CIVIL NO. 12-2039 (GAG) |
| v. | |
| **COMMONWEALTH OF PUERTO RICO**, et al., | |
| Defendants. | |

**REPLY IN FURTHER SUPPORT OF
DEFENDANTS' MOTION AT DOCKET NO. 1397**

TO THE HONORABLE COURT:

COME NOW Defendants Commonwealth of Puerto Rico and the Puerto Rico Police Department ("PRPB"), by and through the undersigned counsel and, hereby reply to the "United States' Response in Opposition to Defendants' Motion to Restrict the Filing of Paragraph 241 Survey Reports" (the "Opposition" at Docket No. 1409):

I.      **PRELIMINARY STATEMENT**

Plaintiff's Opposition disregards the **crux** of Defendants' arguments in favor of the restricted filing of Paragraph 241 survey reports, *and what ought to be the utmost concern for all Parties in this case*: **preventing the disruption that the PRPB's reform process will likely experience**, should the referenced survey reports continue to be publicized.  Plaintiff argues that "Defendants have not articulated any concern … that could overcome the [*purported*] common law presumptive right to access the survey[s]."  *See* Docket No. 1409, at p. 10.  Defendants, however, cannot think of a **greater concern** than **protecting the reform process from undue hindrance** and taking *any and all necessary actions* to that end.  The PRPB respectfully submits that **this *alone*, is a reason compelling enough to "disturb" or reverse the Parties' past stipulation** to file the survey reports publicly. *See* Docket No. 1409, at p. 8.  The arguments set

forth in Plaintiffs' Opposition fail as discussed below.

## II.    ARGUMENT

### A. The Reform Agreement does not require the surveys to be filed publicly.

Plaintiff states in conclusory fashion that "Defendants' current attempt to keep the surveys secret from the public is inconsistent with the consent decree" (Opposition, at p. 1).   It bears emphasis, however, that Plaintiff does not – *and cannot* – argue that Paragraph 241 requires the surveys to be filed publicly.   As thoroughly explained in the Motion, and contrary to Plaintiff's baseless assertion, filing the surveys under a restricted viewing level is perfectly compatible with the language and intention of Paragraph 241.   *See* Motion, at pp.2-4.   Nowhere in Paragraph 241 of the Reform Agreement is there any reference to the surveys being public.   Thus, having failed to include public filing as a requirement, the USDOJ – *the architect of the Reform Agreement* – cannot now claim that its intent was always to make such surveys available to the Public.   In short, Defendants respectfully submit that, based on the language of Paragraph 241 and the balance of interests discussed below, restricted filing of the survey reports is not only reasonable but *warranted.*

### B. Defendants should not be bound by prior positions on the matter.

Furthermore, *none* of the cases cited in the Opposition defeat Defendants' argument that the Paragraph 241 surveys, and their ensuing reports, do not constitute judicial documents as they play no role in the adjudication process and relate solely to the Court's role in the enforcement of the consent decree; which, pursuant to the case law cited in Defendants' Motion at Docket No. 1397 (the "Motion"), means that no right of access attaches to the surveys at issue. In an attempt to circumvent this inconvenient fact, Plaintiff argues that Defendants, through prior counsel, "stipulated … that the surveys required by the consent decree carry a strong presumption of public access …" and that "change of counsel, alone, is insufficient grounds to allow Defendants to reverse their position now."  Opposition, at pp. 1, 7.

Considering the input of clients, as laypersons unable to fully grasp the procedural aspects of their cases, courts have often held that attorneys may exercise ample, independent discretion in procedural issues.  *See, e.g. Eury v. Huff*, 141 F.2d 554, 555 (4th Cir. 1944) (attorney has authority to control procedural matters independent of client); *Buehman v. Smelker*, 50 Ariz. 18, 29, 68 P.2d 946, 950-51 (1937) (attorney, as independent contractor rather than servant, controls drafting of pleadings); *Duffy v. Griffith Co.*, 206 Cal. App. 2d 780, 787, 24 Cal. Rptr. 161, 165 (1962) (attorney 'in full charge of his client's cause or defense'); *Board of Comm'rs v. Younger*, 29 Cal. 147, 149 (1865) ('So long as he remains attorney of record the Court cannot recognize any other as having the management of the case.').   Consequently, "Courts likewise may be empowered to **exercise broad discretion when deciding whether to grant a litigant a second chance**, for example by allowing a new trial or an **amendment to a pleading** or setting aside a default.  The goal is to reach a decision based on the merits while minimizing the burdens of relitigation by ***considering the harms* of granting or denying relief, by *shaping relief to reduce those harms*, [...]**."  Restatement (Third) of the Law Governing Lawyers § 41, comment "d" (Emphasis added).

Here, Defendants' prior counsel agreed to join Plaintiff in moving the Court to lift the viewing restriction on a Paragraph 241 survey report at an *earlier procedural stage*, where the surveys could have served as an additional source of information for the Public concerning the PRPB's efforts to build capacity pursuant to the Reform Agreement.  Since the case's compliance phase began, however, circumstances changed; the biannual Monitor compliance reports (*all of which are required to be **filed publicly***) will become the primary tool to keep the Court, the Parties, *and the Public* apprised of all reform developments, particularly the PRPB's compliance with the Reform Agreement.

Plaintiff also suggests in the Opposition that Commissioner Henry Escalera, not just the PRPB's prior counsel, recognized the importance of reporting to the Public about reform issues through the surveys.  *See* Opposition, at p.4 (*citing* Exhibit C thereto, at p. 3).  This is a flagrant

misrepresentation of Commissioner Escalera's expressions in his February 14, 2019 letter to Mr. Arnaldo Claudio (the "Letter") (Opposition, Exhibit C).   In said Letter, the Commissioner stated that in the beginning phase of the reform process, "the results of the [compliance] efforts will probably not be seen through the surveys.  In order to achieve such objectives it will be necessary to work with a diversity of strategies aimed at educating, creating awareness and informing the country about multiple activities which affirmatively demonstrate our genuine commitment to complying with the established requirements."  Opposition, Exhibit C, at p. 2.  In the same vein, he further stated that "[t]he PRPD … will continue to keep the communities informed of the initiatives developed, of the reform process and crime statistics, **through different platforms** of public outreach.[1] The **importance of reporting on proceedings and initiatives *through the mass media and social networks* has been highlighted through** discussions, community events, **surveys (paragraph 241)** and particular community meetings."  Opposition, Exhibit C, at p. 3 (Emphasis added).  *At no point* did Commissioner Escalera state in the Letter that it is important to communicate Paragraph 241 survey results to the Public.

If any PRPB officer involved in the reform process expressed agreement at any given point with publicizing Paragraph 241 survey results and/or with the manner in which the surveys were to be conducted, they did so *under different circumstances*, and before the compliance period began.  In fairness, however, and pursuant to the above-cited authorities, the PRPB should not be bound by prior understandings concerning the public filing of the surveys at issue or the approval of both the flawed survey methodologies and the professional who was chosen to conduct the same.

---

[1] Commissioner Escalera mentioned, for instance, radio shows, television programs, a YouTube channel, and a regional newspaper. Opposition, Exhibit C, at pp. 3-4.

C.    **A balance of interests favors the restricted filing of Paragraph 241 survey reports.**

Plaintiff correctly states in the Opposition that the Reform Agreement "explicitly identifies transparency and public accountability as one of its primary goals" and, to that end, quotes Paragraph 4: "To ensure public accountability, this Agreement requires the **collection and public dissemination of information regarding the reform efforts and their results**. It is **critical to strengthen the community's trust** in PRPD that there be timely and **reliable** public information about PRPD's progress and accomplishments under these reforms."  (Emphasis added). Consequently, Paragraph 4 of the Reform Agreement requires the Public to be informed of the PRPB's reform initiatives and whether they have been successful or not.  This is consistent with the public filing of the biannual Monitor compliance reports as well as the mass media and social network awareness campaigns that Commissioner Escalera mentioned in the Letter.   This, however, *does not* mean that the potentially biased and unreliable[2] views of survey participants need to be publicly disseminated.

Defendants *are not interested in keeping the Public in the dark* as to the PRPB's reform process.  Quite the contrary.  As the Letter reflects, Defendants are committed to educating the Public about the PRPB's initiatives carried out in compliance with the Reform Agreement.  It is for this very reason that Defendants oppose publicizing Paragraph 241 survey reports as they are more likely to *misinform* the Public, *unduly taint* its perception, and *diminish* its *trust* in the PRPB.

Plaintiff argues that "maintaining public access to the surveys furthers the objectives of the Agreement" by citing to the United States' experience in other police reform cases from a handful of States with cultures, idiosyncrasies, and police relations histories markedly different from those of Puerto Rico.  Following the protests that took place in the summer of 2019 –

---

[2] The surveys that have been conducted thus far are unreliable for the reasons described in Defendants' Motion, at pp. 8-11.  Furthermore, Commissioner Escalera's 02/14/2019 letter to former Monitor Claudio bolsters such arguments by stating "the results of the [compliance] efforts will probably not be seen through the surveys … [given] the [low] level of community awareness of the Police Department Reform …" Opposition, Exhibit C, p. 2.

*unquestionably unique in U.S. history* – Puerto Ricans have become increasingly interested in monitoring State action (and inaction), and are highly sensitive and reactive to perceived abuses; indeed, they proved capable of organizing on a massive scale to successfully pressure the Governor and other top government officials into resigning from their positions.  Therefore, the *mere risk* of unduly influencing public opinion – by, for example, publicizing survey results obtained through questionable methodology – should be taken seriously and is compelling enough to restrict public access to the survey reports at issue.

Furthermore, Plaintiff points out that "[t]he surveys are part of a number of court-ordered compliance assessments, such as **the semiannual reports the Monitor compiles**, that have been regularly made public and ensure that the implementation of this Agreement between governmental entities is accountable to the people that we each serve."  Opposition, at p. 5 (Emphasis added).  Defendants respectfully submit that this fact does not weaken but *strengthen* its arguments in favor of restricted filing.   Given the amount of relevant information that the Public already has access to, publicizing the Paragraph 241 survey reports is unlikely to advance a public interest; and, given the risk they pose of tainting future survey results (thereby frustrating the purpose for which the surveys are conducted in the first place), the substantial interest of protecting the reform process from undue hindrance outweighs any public interest in disclosure. *See, e.g., Eil v. U.S. Drug Enforcement Administration*, 878 F.3d 392, 395 (1st Cir. 2017) ("We conclude that the district court's balancing of the public interest in disclosure against the relevant privacy interests was flawed because the court applied the wrong standard. … First, **the release of the requested records is unlikely to advance a valid public interest, given the amount of relevant information that Eil already has access to**.  And second, the substantial privacy interests implicated by the records would outweigh any public interest in disclosure.") (Emphasis added).

Finally, in a last-ditch attempt to show why public filing of the survey reports is beneficial, Plaintiff suggests that, because the first survey results were filed publicly, "Defendants took

remedial action to address some of the survey's findings." Opposition, at p. 3.  In truth, the PRPB would have taken the same remedial action had the survey report been filed under a "case participants" viewing level; indeed, public access to the survey reports has no bearing on Defendants' review, analysis, and response thereto.

### III.    CONCLUSION

Plaintiff argues that "Defendants' current attempt to keep the surveys secret from the public is inconsistent with the consent decree, their previous position in this case, and the law…" Opposition, at p. 1.  Plaintiff is correct in stating that Defendants' Motion at Docket No. 1397 is different from their prior position, which they formed at an early procedural stage and under different circumstances.  As discussed above, however, Defendants' prior position should not bind them in this stage of the case, given that the survey reports do not qualify as judicial documents to which a presumptive right of access attaches and because the interest of protecting the reform process from any hindrance **far outweighs** any interest in public disclosure of such reports. Finally, contrary to Plaintiff's bare-boned assertion, and as thoroughly discussed in Defendants' Motion, the restricted filing of Paragraph 241 survey reports is consistent with both the consent decree and the law.

WHEREFORE, the PRPB respectfully reiterates its request for an Order directing (a) all future survey reports to be filed under a "case participants" viewing level; (b) that the viewing level of the surveys reports at Docket Nos. 406-1 and 774-1 be modified to "case participants;" and (c) that Docket No. 774-1 be withdrawn from the case link in the Court's website.   Alternatively, the PRPB respectfully moves the Court to (d) provide that all future survey reports remain confidential and be filed in a restricted manner under a "case participants" viewing level.

CERTIFICATE OF SERVICE: It is hereby certified that on this same date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record which are CM/ECF system participants at their corresponding e-mail addresses and which, pursuant to Local Civil Rule 5.1(b)(2), constitutes the equivalent service.

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 14th day of February, 2020.

**McCONNELL VALDÉS LLC**
**P.O. Box 364225**
**San Juan, Puerto Rico 00936-4225**
**Tel: (787) 250-5632**
**Fax: (787) 759-8282**

*s/ Arturo J. García-Solá*
Arturo J. García-Solá
USDC-PR No. 201903
ajg@mcvpr.com

*s/ Lizzie M. Portela-Fernández*
Lizzie M. Portela Fernández
USDC-PR No. 208401
lpf@mcvpr.com

*s/ Sonia M. López del Valle*
Sonia M. López del Valle
USDC-PR No. 231413
sld@mcvpr.com

*Counsel for Defendants*

8