IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*Plaintiff*<br><br>v.<br><br>COMMONWEALTH OF PUERTO RICO, et al.<br>*Defendants.* | Civil No. 12-2039 (GAG) |

### ORDER AMENDING ORDER AT Docket No. 1443 re: USE OF NATIONAL GUARD IN SUPPORT OF PRPB

In its April 3, 2020 Order (Docket No. 1443) the Court addressed the deployment of the National Guard during the COVID-19 pandemic. Therein, the Court stated that any use of the National Guard to support the Commonwealth Police must be consistent with the Reform Agreement ("in order to comply with the Reform Agreement any non-PRPB personnel assigned to work along or in lieu of PRPB personnel must at all times adhere to all conditions established in the Agreement").

By way of the present Order, the Court will, for the benefit of the Commonwealth, United States Department of Justice, Monitor and public in general, define what "consistent with the Reform Agreement" entails. This, the Court finds imperative so that the constitutional rights of the public are clearly defined vis a vis the Commonwealth's police power, now rather than after the fact.

The Bill of Rights to the Constitution, as well as its Commonwealth counterpart, guarantees all the citizenry of Puerto Rico sacrosanct fundamental protections against government action. Relevant here are those protections that are invoked in light of the State's police power. At the forefront is the Fourth Amendment's rightly the People not to be subjected to unreasonable searches and seizures.

The Police Reform Agreement entered into by the United States Department of Justice, and approved by the Court in 2013, guarantees those very same constitutional protections. The Agreement commits the Commonwealth to constitutional policing under a court-enforced federal mandate. The same, for example, requires that Commonwealth police officers be adequately trained; that arrests and other police

interventions be conducted within Fourth Amendment parameters; and, that any use of force follow a sequential model, ranging from verbal command to actual to levels of engagement. More so, police officers must be held accountable for their unconstitutional conduct. The undersigned District Judge has supervised the implementation of the Reform now for seven years. A four-year capacity building phase concluded last year, and now the Reform finds itself in the monitoring phase as per the Agreement.

The crucial question now comes up. Can the National Guard under the Reform Agreement be employed to assist and support the Commonwealth Police? The answer is Yes and No. The Court will explain in detail.

YES, the National guard can provide support in areas as it traditionally has in moments of crisis, and has ably done during the Covid-19 pandemic. For example, transporting supplies, testing arriving passengers at the airport, and reminding the public of the Governor's executive orders. There are many other such type missions the Guard can partake to support the Police.

NO, however, as to the National Guard performing traditional police law enforcement functions such as those guaranteed by the Reform Agreement. The logic is simple and straightforward. Police officers are trained to serve and protect the citizenry, as well as interact with the criminal element, at all times observing federal and state constitutional precepts. Military officers, on the other hand, are trained to protect national security. These roles are quite distinct both in training and deployment. [1]

The undersigned's professional interaction with the Commonwealth police for nearly three decades - this last one devoted principally to the Reform - convinces me that National Guard officers cannot be trained overnight to engage in traditional law enforcement. This assessment is supported by my many visits over the years to the Police Academy, as well as having extensively revised the Reform's curriculum, and further witnessing actual training exercises, both in Puerto Rico and mainland. Such intense preparation prior to graduation and subsequent assignment to the beat is part of the federal court-approved program which takes aspiring police officers months to complete under the Reform Agreement. Even seasoned police officers must undergo continued police education on an ongoing basis. More so, even former undercover

---

[1] *See* https://www.theatlantic.com/national/archive/2012/01/asking-our-soldiers-to-do-police-work-why-it-can-lead-to-disaster/251380/.

agents are re-immersed in the Police Academy prior to learn being assigned to regular law enforcement duties.

It is hence, unfathomable to presume that National Guard officers can be trained to perform traditional police law enforcement functions in the blink of an eye. There is only one kind of constitutionally acceptable police training under the Reform Agreement, that is, approving the Academy's rigid and intense curriculum and continuing to receive periodic updated law enforcement academic and on the field education.

Let me provide some examples to evidence just how important police training is under the Agreement. In the academic aspect of training, officers learn and are constantly updated about investigative techniques, arrest procedures and acceptable use of force techniques. All of these, within constitutional parameters established by the United States Supreme Court, as well as by the Commonwealth Supreme Court. This is not as simple as reading a one paragraph case summary on line or watching a video on how to arrest an aggressive individual. It requires a learning of the big picture of what exactly constitutes Reform-mandated constitutional policing. Classroom learning is further complemented by intense and repeated on the field exercises, for example, engaging in a mock arrest or managing a crowd. At the Academy, there is even a virtual active shooter training module. National Guard officers do not undergo this court-approved training.

Another very important example entails use of force. Under the Reform, officers are trained in employing degrees of force. They are equipped and trained to use verbal commands, light physical contact, retractable baton, taser and ultimately lethal force. Constitutional use of force under the circumstances of an intervention is thus learned from extensive training at the Academy. Again, National Guard officers do not undergo this court-approved training.

Finally, police officer accountability is quintessential under the Agreement. Civilian complaints against officers must be handled within a stringent timeline. The Police Bureau also has an office exclusively devoted to internal investigations. Police officers who violate protocols are subject to disciplinary sanctions. More serious violations can result in suspension of expulsion from the force. However, if National Guard officers engage in misconduct or constitutional violations while acting in a law enforcement capacity, they cannot be held accountable by the Police Commissioner consonant with the court-approved policies.

In sum, and in light of the above, so long as the Police Reform Agreement between Commonwealth and United States Department of Justice is in effect, the

former is impeded from outright engaging National Guard personnel to conduct traditional law enforcement activity. This is consistent with the practice of police departments across the United States when hiring military officers. Just like any other police cadet, members of the military must satisfactorily complete the appropriate training and achieve certification from the police academy.

One may ask, in turn, what about National Guard Military Police officers, commonly known as MPs? Such officers have in fact undergone training in law enforcement. Are these MPs fit to participate in the federal court-approved Police Reform? The answer is not on an automatic basis. Since the advent of the Reform Agreement, the Commonwealth Police Academy has not had an arrangement with the National Guard to train its MPs, contrary to the case of municipal police officers. Thus, unless a military officer also happens to be a Puerto Rico police officer, he or she is not capacitated under the Agreement to be deployed for local law enforcement.

This is not to say that the Police Academy cannot train nor certify under any circumstance MPs to act as Commonwealth police officers. However, to do so, an appropriate curriculum agreed upon by Puerto Rico Police Bureau and United States Department of Justice must be approved by the Court. With the parties' collective experience from the capacity building stage and with the currently approved curriculum, this may be perhaps be achieved in an expedited manner. In fact, there may be areas of the curriculum in which the parties agree that the Academy can provide credit for, as occurs when any student transfers from one university to another. Any program for MPs ultimately must guarantee all the constitutional policing safeguards embodied in the Agreement, including officer accountability. In the meantime, there exists a universe of possibility as to non-law enforcement support work that National Guard officers not certified by the Academy can perform, which the parties can readily agree to.

SO ORDERED.

In San Juan, Puerto Rico, this 27th of April of 2020.

*s/ Gustavo A. Gelpí*
Gustavo A. Gelpi
US District Judge