**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>    Plaintiff,<br><br>v.<br><br>**COMMONWEALTH OF PUERTO RICO**, et al.,<br><br>    Defendants. | CIVIL NO.  12-2039 (GAG) |

**MOTION OBJECTING MONITOR INVOICES**

**TO THE HONORABLE COURT:**

**COME NOW** Defendants Commonwealth of Puerto Rico and the Puerto Rico Police Department (jointly, the "Commonwealth", "Defendants" or "PRPB"), by and through the undersigned counsel, and respectfully state and pray the Court as follows:

### I.  INTRODUCTION

Although it is always a matter of great concern and a top government priority, it has become increasingly important for the Puerto Rico Police Bureau (the "PRPB") to ensure that public funds are used properly, given the Island's current financial woes and the significant public, legislative, and media scrutiny of the Commonwealth's use of funds.  The PRPB is therefore committed to, and expects nothing short of, **transparency** in the collection and disbursement of its allocated funds; even if they are, as in this case, deposited with the Court and not under the PRPB's custody or control. It is **not only a constitutional requirement but in the People's best interes**t for the PRPB to rigorously oversee its expenditures to ensure that **public monies are used for public purposes**

**only**. Consequently, the PRPB submits that public funds should not be disbursed in this case without evidence showing that (1) public services were truly and effectively rendered by the Monitor, the members of his team and consultants in Reform Agreement related services; and (2) that the PRPB is being fairly charged for those services.

For the reasons discussed below, Defendants respectfully request that, prior to approving the April invoices, the Court order the Monitor and the members of his team and consultants, as applicable, to provide sufficient detail about the services that were rendered during the referenced month and afford the PRPB an opportunity to review the evidence to determine if the requested disbursement of public funds is fair and proper.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The *Stipulation and Order for the Establishment of the TCA Office and the Payment of TCS Expenses (*the *"*Stipulation and Order*")*, Dkt. 139 reads, in pertinent part, as follows:

> Invoices or requests for payment submitted by the TCA **shall contain: a detailed statement of the services rendered during the reporting month**; a certification of the total spent by each employee, agent or contractor on Agreement-related activities; and receipts or other evidence incurred…
>
> The parties shall review each invoice and request for payment submitted by the TCA's Office. **Each party shall have the right to object to any expense that it considers unreasonable, excessive, or beyond the scope of the duties of the TCA, as set forth in the Agreement, by notifying the TCA Office in writing of the objection and the reasons thereof within seven (7) days after the TCA files the invoice or request for payment with the Court.** If neither party raises an objection with the TCA Office **within seven (7) after the TCA Office files the invoice or request for payment with the Court**, the Court shall pay the invoice or request. If a party raises an objection, the TCA shall have seven (7) days to respond to the objection and either withdraw, modify or renew the expense…"  (Emphasis supplied).

*See* Stipulation and Order, Paragraphs 23 and 25.

### A. Monitor Romero's April 2020 Invoice

Since his appointment as Interim Monitor, Mr. Romero provided itemized monthly invoices in which he detailed all tasks performed and expenses incurred during the billing period.  Up until April, the monthly amount to be collected by the Monitor varied depending on the amount of work performed, as reflected in the detailed invoices that the Monitor used to issue (which are part of the record in this case).  However, for the month of April, Mr. Romero submitted an invoice generally describing the activities performed during the month, and a "flat" fee of $17,916.66, **with no itemization of the time spent in the different activities nor the total number hours incurred in such activities during April**. See Exhibit A. When questioned about this new manner of invoicing, Mr. Romero indicated that the Court had authorized him and/or encouraged him to invoice a flat fee and not include the hours.  This global invoicing practice is not in compliance with the Stipulation and Order, was not discussed with the PRPB, and to the best of our knowledge, with the USDOJ prior to submitting the Monitor's invoices, and furthermore, does not offer the PRPB the necessary information to make a determination as to whether the "flat" fee being invoiced is **reasonable and not excessive**.

### B. Other Invoices

The Commonwealth has reviewed the April 2020 invoices submitted by the entities and individuals hired by the Monitor to serve as staff/team members or independent consultants.  While most of the invoices are itemized (provide details regarding daily tasks), there are many with vague entries while others describe work that may have been duplicative, redundant or unnecessary and/or were performed by

individuals that were not vetted to perform such services. Also, there have been hourly rate increases that were not notified to, nor agreed to by, the parties in the case.

As with respect to the Monitor, there are several Monitor team members and consultants also working in the case against the Commonwealth and the Division of Services for Adult Persons with Intellectual Disability (DSPDI, for its acronym in Spanish).[1] Vague, imprecise invoicing in either case makes it impossible for the PRPB to provide the oversight required to ensure that the Commonwealth's public funds are being adequately, fairly and transparently used, and that there is no double dipping. For these reasons, the PRPB submits the below objections to the Monitor and his team's invoices.

### i. Constitutional Attorneys:

After the change in Monitor (from Arnaldo Claudio to John Romero), the Court informed at in-chambers meeting after the Status Conference held on June 25, 2019 that the "constitutional" attorneys (Alfredo Castellanos and Federico Hernández Denton) would remain in the case only on an "as needed basis" to provide legal advice to the Monitor and also to the Court. The hourly rate for Mr. Castellanos was $125.00 and for Mr. Hernández Denton, $150.00.  Unbeknownst to the parties, the hourly rate was increased by $50.00 per hour for Mr. Castellanos, and by $25.00 for Mr. Hernández Denton, to $175.00 per hour for each one. The PRPB was not notified of the intent to increase the rates and the reasons for such increase.  The PRPB became aware of the increase upon review of the April 2020 invoices, and subsequent

---

[1] *United States of America v. Commonwealth of Puerto Rico, et al.,* Case 3:99-cv-01435 (GAG-MEL).

conversations with the Monitor who informed that the increases had been authorized by the Court.

The reasons for the increase need to be explained and justified.  The PRPB has not received any information that would otherwise require and/or justify a $50.00 / $25.00 increase per hour for the constitutional attorneys.   It is also important to point out that the services provided during the month of April by either counsel, as reflected in the invoices submitted, do not appear to be related to "constitutional" issues or even legal advice. This increase, in light of the current fiscal situation of the Commonwealth, and the apparent lack of a reasonable justification is unwarranted.[2]

As this Court is aware, both constitutional attorneys also provide services in the DSPDI case. Alfredo Castellanos serves as the Joint Compliance Coordinator (equivalent of a monitor) in the DSPDI case (both before the same Judge).  This is particularly relevant because in this case, Mr. Castellanos submitted an invoice amounting to $10,927.50 for 62.5 hours of services. *See* <u>Exhibit B</u>. The invoice contains numerous entries referencing "communications with", "conference calls with", "review of communications from" Javier González (Executive Director in the DSPDI case) and Mr. Hernández Denton (also a "constitutional" attorney in the DSPDI case); as well as communications with the Court that do not identify or describe the subject of the communication or activity.  The failure to include a proper description of communications with individuals also involved in the DSPDI case (and, as matter of fact, dealing with COVID-19 protocols and related matters during April in both cases),

---

[2] We do not question here the specific rates authorized by the Court, but rather, the fact that there was an increase in the rates without even notice to the Parties nor an explanation of the reasons for the rate increases and their justification.

makes it extremely difficult to properly assess whether the services were **reasonable, not excessive, and within the scope of the Reform Agreement** in the PRPB case.

It bears emphasis that, in the DSPDI case, Mr. Castellanos is charging a fixed fee of $12,725.00 for the month of April for entirely undisclosed services (*see* Exhibit C). The Court has allowed this because the JCC has purportedly been working so many hours in the case, that invoicing based on the "monthly fee" would likely prove less costly as it would presumably cover less than the hours actually worked. For this month, the JCC is requesting a disbursement of Commonwealth funds totaling **$23,652.50** (between this case and the Police Reform case) and the Commonwealth has the right to receive a properly detailed invoice with adequate descriptions of the services provided in this case.

### ii. Vague invoicing

As stated above, many of the invoices that do provide entries on work performed, are vague, full of generic phrases, and fail to offer sufficient information for the Commonwealth to properly assess them. An example of this is patent in the April 2020 invoice issued by the Monitor's Administrative Director, Mr. Javier González, who also happens to be the JCC's Executive Director in the DSPDI case.

Mr. González is not a monitor but rather an administrative manager. However, a review of his April 2020 invoice reflects that he appears to have been involved in little to no management activities and substantially in many other generic non-descriptive activities that cannot be properly assessed due to the vagueness of the descriptions. *See* Exhibit D. A review of the invoice reflects that Mr. González had, without being exhaustive, almost everyday:

- communications/conference calls with Monitor and/or share information with the Monitor (3/31, 4/1, 4/3, 4/5, 4/6, 4/8, 4/10, 4/14, 4/15, 4/16, 4/20, 4/21, 4/24, 4/27)
- communications with the Team members and/or staff and review (4/1, 4/7, 4/13, 4/15, 4/16)
- review of emails (4/1, 4/3, 4/7, 4/9, 4/10, 4/13, 4/14, 4/15, 4/20, 4/27)
- communications/conference calls with Counselor Castellanos (4/2, 4/3, 4/9, 4/13, 4/15, 4/21, 4/22)
- review of emails, information and documents sent by the USDOJ (4/1, 4/7)

However, there is absolutely no description on the object of those activities; again, very generic language without any kind of detail. It does appear however, judging from the numerous hours spent by Mr. González in the above listed activities that Mr. González has been involved in much more than administrative work.  The fact that he appears to be doing substantial non-administrative work is particularly concerning because Mr. González was vetted by the parties to provide services as an office administrator and not as a monitor, nor to serve as subject matter expert.  Based on the vague and cryptic entries in Mr. Gonzalez's invoices, it is not possible to surmise the nature of the work performed, nor how it relates to his administrative duties to the Monitor.

According to the invoice submitted by Mr. González, he worked **91.75** hours for a total of **$7,798.75**. As previously mentioned, Mr. González is the Executive Director of the JCC's Office in the DSPDI case. Therefore, he is also invoicing for services in that

7

case.³  His April 2020 invoice, which also contains many similar vague entries, amounts to $8,000.00 for 100 hours of work. *See* Exhibit E.  In fact, the entry of 4/16 in the invoice submitted in this case, makes reference to "review of documents sent by the DSPDI". This has to be corrected or clarified.

Therefore, Mr. González is invoicing **a total of $15,798.75** (between both cases) to be paid from Commonwealth funds, for a total of **191.75 hours**. These are a lot of hours and hence, a significant amount of money coming out of Commonwealth funds.

There are many other examples of invoices with entries that do not provide the required detail to determine whether the invoiced amount is reasonable and not excessive. Invoices that are also lacking in details present an additional and not less important problem: it is difficult to determine if the service for which the PRPB is being invoiced is being provided by an individual that has the capacity, training or expertise to perform that particular service. For ease of review and analysis, a Table and Invoices with examples of some of the entries at issue are attached hereto as Exhibit H.

  iii.  **Redundancy of Work**

In order to show the redundancy in invoicing and the excessive and unnecessary use of resources, we have selected the COVID-19 Protocol as an example. *See* Table and Invoices, attached as Exhibit I. **The COVID-19 Protocol was totally and fully drafted by the PRPB within a very limited time frame (3 days) as ordered by the**

---

[33] A similar situation exists with the invoices of Federico Hernández Denton, who serves as a "constitutional" counsel in both this case and the DSPDI case. *See* invoices for fees amounting to $22,531.25, attached as Exhibits F and G.

8

**Court**.[4] However, as reflected in the Table (Exhibit I), the Monitor, his team members and consultants are invoicing an enormous number of hours in work related to the protocol (including time invested after the Protocol was approved for filing by the Monitor and the USDOJ on May 8th). This notwithstanding, the end result was the offering of just a few <u>recommendations</u> for the PRPB to accept <u>at its discretion</u>.

The Table includes a compilation of entries from 9 team members and/or consultants that **specifically** made reference to work related to the COVID-19 protocol (which means that there may be other applicable entries that, due to vagueness, could not be identified and included in the Table). It is hard to determine the total number hours spent by all 9 individuals in researching, reading discussing, conferring over the protocol (because many of the entries are block entries) but it is indeed clear the many unnecessary hours, including by some people with no expertise in COVID-19 (hence all the hours invested in research), went into that project. For example, Mr. David Levy, engaged by the Monitor to assist in the preparation of the CMRs is invoicing 3 hours for editing the COVID-19 protocol response. Mr. Scott Cragg, subject matter expert in IT, invoiced a significant number of hours (hard to determine the number due to the use of block entries) in COVID-19 protocol related matters. The constitutional attorneys also invested a lot of hours in "researching" and providing "attention to coronavirus related matters", and Mr. González in reviewing the COVID-19 information sent by the team members.

### iv. Other issues

---

[4] On April 2, 2020, the Court ordered the PRPB to submit a COVID-19 protocol by no later than April 8th, at noon (Dkt. 1441). On that same date, the Monitor informed that the Judge had ordered that the PRPB submit a draft of the Protocol to the Monitor and the USDOJ by April 5th at noon.

In order for the PRPB to be able to duly assess the invoices for reasonableness, the same must include detailed descriptions of the services and of the hours per day invested in those services or activities. This applies to the invoices submitted by Mr. Donald Gosselin and by Mr. Scott Cragg, the latter of which includes simply a block entry of 19.75 hours. *See* Exhibits J and K. It is also important to make sure that the entries correspond to this case. For example, see entry of 4/3 of invoice submitted by Mr. Hernández Denton which reads as follows: "Reading of documents and emails exchanged by Management Team with lawyers in the states." This entry needs to be either removed or clarified. *See* Exhibit F.

For all of the above, Defendants respectfully request that the Monitor submit an invoice detailing the services and expenses he incurred during the month; and that the team members and consultants revise and amend their April 2020 invoices to address the concerns of the PRPB. Moreover, the Court must afford the PRPB additional time to review and evaluate the revised invoices, prior to approval for payment.

### III. ARGUMENT

Article VI, Section 9 of the Constitution of Puerto Rico states that "[p]ublic property and funds **shall only be disposed of for public purposes**, for the support and operation of state institutions, and pursuant to law." P.R. Const. Art. VI § 9 (Emphasis added). As recognized by the Supreme Court of Puerto Rico, said provision imposes on the State (and consequently, public servants) the obligation to manage public funds with the highest fiduciary and ethical principles. *Jaap Corp. v. Depto. Estado*, 187 D.P.R. 730, 739 (2013); *see also Disaster Sols., LLC v. City of Santa Isabel, Puerto Rico*, No. CV 18-1898 (RAM), 2019 WL 6719866, at *2 (D.P.R. Dec. 10, 2019); *Cecort Realty Dev. Inc. v. Llompart-Zeno*,

100 F. Supp. 3d 145, 157 (D.P.R. 2015). Indeed, "the sane and correct administration of public funds is linked to the highest public interest and **all government organs are obligated to comply with the essence of the constitutional provisions requiring that public funds only be spent for legitimate public ends.**" *APA Int'l Film Distributors, Inc. v. Corporación de Puerto Rico para la Difusión Pública*, 394 F. Supp. 2d 443, 448–49 (D.P.R. 2005) (Emphasis added). Accordingly, public funds should not be disbursed unless there is certainty that those funds are to be used exclusively for legitimate public ends.

Furthermore, the Government Accounting Policy sets forth that "**the heads of dependencies […] [shall] be in the first instance those responsible for the legality, correctness, exactitude, necessity and propriety of the fiscal operation needed to conduct their respective programs.**" 3 L.P.R.A. § 283a (f) (Official Translation) (Emphasis added). Thus, the Commissioner, as head of the PRPB, must ensure that public funds are adequately spent on compensations for legitimate public services rendered to the PRPB. Failure to comply with this provision may entail negative consequences for the Commissioner, who would, by omission, likely infringe the Puerto Rico Government Ethics Act of 2011: "[n]o public servant shall fail to comply with any of his/her duty as provided by law or regulation, if such action shall result in the loss of public funds or cause damages to public property." 3 L.P.R.A. § 1857a (r) (Official Translation).[5]

Logic dictates that, in order to comply with the constitutional provision that mandates use of public funds for public purposes only, the PRPB must have detailed knowledge of the services that it pays for; otherwise, the PRPB has no way of monitoring its compliance with the Puerto Rico Constitution in this regard. Therefore, to ensure compliance with the

---

[5] The original (Spanish) text reads: "Un servidor público no puede omitir el cumplimiento de un deber impuesto por ley o reglamento, si con ello ocasiona la pérdida de fondos públicos o produce daño a la propiedad pública".

referenced constitutional and legal provisions, the Defendants must, at a bare minimum, have access to a detailed description of the daily professional services rendered by the Monitor, the members of his team and consultants, which are all paid from Commonwealth funds.

Act No. 237 of 2004[6] requires professionals or consultants to submit an invoice, which "shall be specific, itemized and accompanied by a report detailing the services rendered and the hours worked in the rendering of said services. The invoice submitted shall include a certification indicating that the services were rendered and have not yet been paid for." 3 L.P.R.A. § 8613 (j) (Official Translation). Said requirement allows the State to be certain of the types of services rendered by an individual and determine whether such services have benefitted the public system. While Defendants acknowledge that the Monitor is not a Government contractor, the rationale underlying the requirement of itemized invoices and detailed service reports is equally applicable: the State cannot legally disburse public funds without knowing what it is paying for. Indeed, such was the reasoning behind the Stipulation and Order that required "**detailed statement[s] of the services rendered.**" Also, as stated above, while the funds are deposited with the Court for payment of the Monitor's expenses, it is no less true that the funds are Commonwealth funds.

The same transparency and accountability standards would apply to the Monitor's invoices if the same were to be paid with federal government funds.  It is well-settled that the proper use and disbursement of federal funds is a matter of great public concern. *See, e.g., Community-Service Broadcasting of Mid-America, Inc. v. Federal Communications Commission*, 593 F.2d 1102, 1119 (D.D.C. 1982) (recognizing that "oversight of the

---

[6] Known as the "Act to establish uniform parameters in the procedures for contracting professional or consulting services for government agencies and entities in the Commonwealth of Puerto Rico."

expenditure of federal funds is a substantial and important government objective"); *State of Oklahoma v. Schweiker*, 655 F.2d 401, 417 (D.D.C. 1981) (stating that "[t]he courts have long recognized the legitimacy of Congress' interest in ensuring the proper use of federal funds"). Consequently, courts have held that federally funded programs are subject to strict transparency and accountability standards in making expenditures. *See, e.g., City of Newark, New Jersey v. U.S.D.O.L*, 2 F.3d 31, 34 (3d Cir. 1993) (affirming the Secretary of Labor's decision ordering the City to repay to the DOL misspent funds and holding that "both [the Comprehensive Employment and Training Act ("CETA")] and the [Job Training Partnership Act ("JTPA")] impose reporting requirements on grant recipients and auditing requirements on DOL in order to assure proper expenditure of federal funds […] both CETA and the JTPA authorize the Secretary to recover misspent funds." (internal citations omitted)); *Michigan Dept. of Education v. U.S. Dept. of Education*, 875 F.2d 1196, 1198 (1989) ("Section 3 of the [Rehabilitation] Act authorizes the Secretary to take whatever actions are necessary to ensure that funds are expended only for the purposes contemplated by the Act. Each grantee must keep records to account for its use of grant funds and to facilitate an effective audit. […] The USDOE also has the power to audit state programs to ensure the proper use of federal funds"). As a Guardian for the compliance with applicable laws, this Court should be equally mindful in ensuring that public funds – albeit the Commonwealth's funds in this case – are used reasonably and for public purposes.

The invoice submitted by the Monitor requires a flat fee and **zero** detail concerning the hours invested in the services rendered or work performed during the month of April. As stated above, even though all other April 2020 invoices provide some details about the services rendered, they are plagued by vagueness, seem to describe unnecessary or redundant work and/or reflect excessive billing. Said deficiencies

13

impede the PRPB, *and the Court*, from determining whether the public funds to be disbursed would constitute adequate compensation for legitimate public ends. **The total amount to be disbursed, once the invoices are approved, is significant: $91,621.66**. *See* Exhibit L. Consequently, Defendants respectfully submit that the referenced invoices should not be approved at this juncture. The contrary would place the Commonwealth and, particularly, the PRPB, in a potential violation of the Constitution of Puerto Rico, which it is called to uphold, and of the Government accounting and ethics laws and policies to which it must adhere.

**WHEREFORE**, Defendants respectfully request that, prior to approving the invoices, the Court **(1)** order the Monitor, as well as its staff members and consultants, to (a) provide sufficient detail about the services that they rendered during the month of April; (b) provide an explanation and/or justification for the increase in rates of the constitutional attorneys; and (c) revise those invoices that have questionable entries; and **(2)** afford the PRPB an opportunity to review and determine if the requested disbursement of public funds is fair and proper.

**RESPECTFULLY SUBMITTED**.

**WE HEREBY CERTIFY**: That today we have electronically filed the foregoing document with the Clerk of the Court for the District of Puerto Rico, using the CM/ECF system which will send a copy and notification of filing to all counsel of record.

In San Juan, Puerto Rico, this 12th day of May, 2020.

By:

McCONNELL VALDÉS LLC
P.O. Box 364225
San Juan, Puerto Rico 00936-4225
Tel: (787) 250-5632

Fax: (787) 759-8282

*s/ Arturo J. García-Solá*
Arturo J. García-Solá
USDC-PR No. 201903
ajg@mcvpr.com

*s/ Lizzie M. Portela-Fernández*
Lizzie M. Portela Fernández
USDC-PR No. 208401
lpf@mcvpr.com

*s/ Sonia M. López del Valle*
Sonia M. López del Valle
USDC-PR No. 231413
sld@mcvpr.com

*Counsel for Defendants*