UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff;<br><br>     v.<br><br>COMMONWEALTH OF PUERTO RICO, ET AL.,<br><br>                Defendants. | No. 12-cv-2039 (GAG) |

**UNITED STATES' RESPONSE TO THE COMMONWEALTH'S MOTIONS OBJECTING TO THE MONITOR'S APRIL 2020 INVOICES**

COMES NOW, Plaintiff, the United States of America, in compliance with this Court's Order of May 8, 2020, ECF No. 1490, and responds to the Commonwealth's Motion Objecting [to] Monitor Invoices, ECF No. 1500, and Motion Regarding Motion Objecting [to] Monitor Invoices and For Reconsideration, ECF No. 1502 (collectively, "Commonwealth Objections"). The Court should deny the Commonwealth Objections because they: (1) seek to impose requirements that are inconsistent with the Agreement for the Sustainable Reform of the Puerto Rico Police Department ("Agreement"), ECF No. 60 (July 17, 2013), and other orders in this case, threatening the independence of the Monitor and his team as officers of the Court; (2) are untimely; and (3) raise arguments similar to those rejected forcefully by this Court just days ago concerning the monitoring invoices submitted in a separate civil rights case. Opinion and Order, *United States v. Puerto Rico*, No. 99-1435 (D.P.R. May 7, 2020), ECF No. 2842 (warning that "[a]ny future attempt by the Commonwealth to re-litigate the same will be considered vexatious and sanctionable conduct" in reference to the repeated attacks against the court-appointed monitor and his staff, some of whom also serve on the monitoring team in the instant case).

I.      **Background**

The Agreement requires that the Commonwealth bear "all reasonable fees and costs of the [Monitor]." Agreement ¶ 273.[1]  The Agreement also requires that the Parties and the Monitor attempt to cooperatively resolve disputes regarding the "reasonableness or payment of the [Monitor's] fees and costs" prior to seeking the Court's assistance. *Id.*  To implement these and other requirements of the Agreement, in June 2014, the Court directed the Parties to determine the terms and conditions of the Monitor's engagement in the case. Order at 1-2, ECF No. 124 (June 5, 2014).  The Court emphasized that the Monitor serves as an officer of the Court, rather than a contractor of either party, and that the Court would pay the Monitor's compensation from funds deposited with the Clerk of the Court by the Commonwealth – an arrangement typical in other police reform cases around the country, which is designed to preserve the independence of the court-appointed monitor. *See id.* at 2.

Shortly thereafter, on June 26, 2014, the Court approved and endorsed the Parties' joint stipulation that, among other things, established a process for the review and payment of the Monitor's invoices in accordance with the Agreement and the Court's orders.  Joint Stipulation and Order on TCA Payments ("Stipulated Order"), ECF No. 139 (June 26, 2014).  The Stipulated Order provides:

> Invoices or requests for payment submitted by the TCA Office shall contain:  a detailed statement of services rendered during the reporting month; a certification of the total time spent by each employee, agent, or contractor on Agreement-related activities; and receipts or other evidence of expenses incurred. The TCA shall also certify that neither he nor any member of the TCA Office has received any income, compensation, or payment for services rendered under a regular employment or contractual relationship with the Commonwealth, or any of its departments, municipalities or agencies.

---

[1] The Agreement uses the term "TCA" for the "Monitor," and these terms are used interchangeably herein.

*Id.* at ¶ 23.

On April 29, 2020, the Monitor submitted nine invoices from each of the members of the monitoring team to the Parties for review ("Monitoring Invoices"). Neither party objected to the Monitoring Invoices before the Monitor filed them six days later, on May 5, 2020, together with additional invoices for rent, accounting services, and technology support. *See* Monitor's Req. for Approval and Payment of Expenses, ECF No. 1477 (May 5, 2020). The Monitoring Invoices are the subject of the Commonwealth Objections and this response. *See* Order, ECF No. 1489 (May 8, 2020) (setting apart the invoices for rent, accounting services, and technology support from those submitted to the Parties for review on April 29); *see also* Monitor's Mot. Req. for Approval and Payment of Expenses, ECF No. 1484 (May 7, 2020) (submitting amended payment request for Monitoring Invoices only). Consistent with the Stipulated Order, the Court set a firm deadline of May 12, 2020, at noon for objections to the Monitoring Invoices. Order, ECF No. 1490 (May 8, 2020); Stipulated Order ¶ 25 ("Each party shall have the right to object to any expense that it considers unreasonable, excessive, or beyond the scope of the duties of the TCA, as set forth in the Agreement, by notifying the TCA Office in writing of the objection and the reasons therefore within seven (7) days after the TCA Office files the invoice or request for payment with the Court.")

Approximately two hours after the Court's deadline on May 12, 2020, the Court approved the Monitor's request for payment of the Monitoring Invoices "given that no objections were presented as per the directives at Docket No. 1490." Order, ECF No. 1498 (May 12, 2020). The Commonwealth filed its Motion Objecting [to] Monitor Invoices, ECF No. 1500, nearly an hour after the Court approved payment and three hours after the deadline, followed immediately by a Motion Regarding Motion Objecting [to] Monitor Invoices and For Reconsideration, ECF No. 1502 (requesting that the Court treat its Motion Objecting [to] Monitor Invoices as a request

3

for reconsideration of the Order approving payment of the Monitoring Invoices, pursuant to Fed. R. Civ. Pro. Rule 60(b)(6)).  The Commonwealth did not address its failure to comply with the noon deadline or offer any justification for its request to be relieved of the Order approving the Monitoring Invoices.  The Court then directed the United States to file its response to the Commonwealth's "belatedly filed objection to the TCA April invoice (Docket No. 1500) on or before Thursday, May 14, 2020, as previously directed by the Court."  Order, ECF No. 1503 (May 12, 2020).

II.     **Argument**

The Commonwealth Objections seek to withhold payment of the Monitoring Invoices based essentially on three objections:  (1) that the payment of the Monitoring Invoices could violate the constitution and laws of Puerto Rico; (2) that some of the Monitoring Invoices are vague and reflect redundant work; and (3) that the Monitoring Invoices fail to provide sufficient detail.  This Court rejected each of these objections last week when the Commonwealth filed a nearly identical brief objecting to the invoices of the court-appointed monitor in a case involving the federally-protected rights of individuals with intellectual and developmental disabilities in Puerto Rico.  Opinion and Order, *United States v. Puerto Rico*, No. 99-1435 (D.P.R. May 7, 2020), ECF No. 2842 (denying Defendants' objections to the Joint Compliance Coordinator's invoices).  The Court should deny these arguments because they seek to impose requirements that are inconsistent with the Agreement and the Court's orders and because they imperil the independence of the Monitor as an officer of the Court.  The Commonwealth also provides no justification for its belated objections.

**A. The Monitor is Not Subject to the Commonwealth's Invoicing Requirements.**

The Commonwealth argues that it has a constitutional and legal requirement to manage public funds with the highest fiduciary and ethical principles under Commonwealth law and that

public funds should only be spent for legitimate public ends.  Defs.' Mot. Obj. Monitor Invoices at 10-11, ECF No. 1500 (May 12, 2020).  The Commonwealth also cites to a "Government Accounting Policy" that requires proper fiscal operation to ensure that public funds are spent on legitimate public services and to "Act No. 237 of 2004" on the invoicing requirements for professionals and consultant services contracted by Commonwealth agencies and entities.  *Id.* at 11-12.  In making these arguments, the Commonwealth ignores that there are already requirements in the Agreement and orders in this case to ensure that the Monitor's billing meets all legal and ethical requirements.

      As the United States advanced in its Reply to the Commonwealth's Motion Objecting to the April Invoices of the Joint Compliance Coordinator in the separate intellectual and developmental disabilities case, these Commonwealth laws and requirements may apply to Commonwealth personnel and contractors, but they do not apply to the Monitor and his team who serve as officers of the Court.  Order, ECF No. 124 (June 5, 2014) (appointing the Monitor as an officer of the Court); Stipulated Order ¶ 3 (incorporating the Court's June 5, 2014, Order).  When the Court instructed the Parties to determine the terms and conditions of the Monitor's engagement in the case, the Court expressly prohibited the Parties from placing the Monitor or his staff under contract.  Order at 2, ECF No. 124 (June 5, 2014).  The Court also stated that it would pay the Monitor's invoices directly from funds deposited with the Clerk of the Court by the Commonwealth.  *Id*.  Although the Parties play a role in reviewing the Monitor's invoices, they do not direct the work of the Monitor or manage other members of the monitoring team.  The Monitor and his team are subject to the Agreement, the Court's orders, and the Code of Conduct for Judicial Employees, and not to any contracting law or policy from the Commonwealth.  *See* Agreement ¶ 226 (subjecting the Monitor to the supervision and orders of the Court); Stipulated Order ¶ 9 (requiring the Monitor and his staff to comply with the Code of

Conduct for Judicial Employees). The Commonwealth acknowledges that the Monitor is not a Commonwealth contractor in its filing. Defs.' Mot. Obj. Monitor Invoices at 12, ECF No. 1500 (May 12, 2020).

Moreover, the Commonwealth's past conduct in this case demonstrates that it knows the Monitor is not subject to the Commonwealth laws and regulations it now asserts. Since the June 2014 Stipulated Order, the Commonwealth has approved the payment of the Monitor's invoices without imposing any of the local laws or requirements that the Commonwealth's current counsel now seeks to impose on the Monitor. Indeed, the Parties designed the Stipulated Order to promote the very principles that the Commonwealth now argues are lacking in the Monitor's invoicing process: "[T]his Stipulation is intended to establish terms and conditions for the creation and administration of the [Monitor] Office, promote transparency in the [Monitor's] operations and expenses, and ensure the sound administration of public funds." Stipulated Order at 1.

Since entry of the Stipulated Order, the Commonwealth has not challenged an invoice submitted by the Monitor or his team based on a purported failure to meet any technical or substantive requirement under Commonwealth law or policy. The Parties have also worked cooperatively with the Monitor over the years to identify and correct any discrepancy or calculation error in accordance with the Stipulated Order and the Agreement. *See* Agreement ¶ 273 (providing that the Parties and Monitor must attempt to resolve disputes cooperatively regarding the reasonableness or payment of the Monitor's fees or costs before seeking the Court's assistance). Only now, after launching nearly identical attacks on the invoices submitted by the monitor in the intellectual and developmental disabilities case, does the Commonwealth find a purported need to impose extraneous and unnecessary requirements on the Monitor's invoices, which this Court should again reject.

6

### B. The Monitoring Invoices Comply with the Stipulated Order and are Consistent with Prior Invoices Approved by this Court.

The Commonwealth's remaining objections that the Monitoring Invoices are vague, redundant, and lack sufficient detail also fail. The Commonwealth Objections apply an erroneous reading of the Stipulated Order and ignore that the Parties and the Court have accepted similar levels of detail describing the work performed by the monitoring team for years without objection. There is nothing unique or different in the level of detail or information in the Monitoring Invoices from prior approved invoices. This includes the invoice for John Romero, who submitted a flat-fee invoice similar to those submitted by the former Monitor for years.

Further, while the Parties play an important role in reviewing the Monitor's invoices to ensure that that they are not unreasonable, excessive, or beyond the scope of the Monitor's duties, it is up to the Monitor and the Court to supervise the day-to-day work of the monitoring team. The Monitor and the Court are in the best position to assign tasks and responsibilities to meet the independent monitoring and reporting requirements of the Agreement within judicial standards of conduct and approved budget allocations.[2] This is a foundational principle that is intended to preserve the independence and even-handedness of the Monitor and is consistent with other police consent decrees around the country. It is precisely why this Court, from the outset, prohibited the Parties from having a contractual relationship with the Monitor and

---

[2] Based on our review of the Monitor's invoices for the current fiscal year, the Monitor has spent less than half of the requested budget for Fiscal Year 2019-20, ten months into the fiscal year. Specifically, from July 1, 2019, though the present and including the April 2020 invoices at issue in the Commonwealth Objections, the Monitor's Office has spent $760,628.52, from the $1,867,892.48, deposited by the Commonwealth into the Court's Registry. *See* Defs.' Mot. for Deposit of Funds for the Monitor's Office ¶ 5, ECF No. 1226 (May 30, 2019) (depositing the budget amount requested by the former Monitor and limiting expenditures to the approved budget for Fiscal Year 2018-19 of $1,494,833.91, until a final agreement was reached by the Parties and the Monitor).

required that the Court pay the Monitor's invoices from funds deposited into the Court's Registry.

1. <u>The Monitoring Invoices meet the requirements of the Stipulated Order.</u>

The Stipulated Order requires that each invoice contain a detailed statement of services rendered during the reporting month, a certification of the total time spent on Agreement-related activities, and receipts or other evidence of expenses incurred. Stipulated Order ¶ 23. Each of the Monitoring Invoices complies with these requirements. Specifically, the Monitoring Invoices include a statement describing the work performed by the member of the monitoring team with the level of detail similar to invoices approved previously by the Court. *See, e.g.,* Gosselin Invoice from March 2020, ECF No. 1445-8 (Apr. 6, 2020); Cragg Invoice from March 2020, ECF No. 1445-3 (Apr. 6, 2020). The Monitoring Invoices also include either the total time spent on Agreement-related activities for the month or an itemized list of activities with associated hours per activity. The Monitor also complied with the Stipulated Order's requirement that he certify that neither he nor any member of his team "has received any income, compensation, or payment for services rendered under a regular employment or contractual relationship with the Commonwealth, or any of its departments, municipalities or agencies." Stipulated Order ¶ 23; *see, e.g.,* Monitor's Req. for Approval and Payment of Expenses ¶ 3, ECF No. 1477 (May 5, 2020); Monitor's Req. for Approval and Payment of Expenses ¶ 3, ECF No. 1484 (May 7, 2020).[3]

---

[3] Two specific items totaling $578.75 out of the $91,621.66 claimed by the Monitoring Invoices may be inappropriate for payment. The items relate to: (1) an April 3 entry for $175.00, Hernandez Denton Invoice at 4, ECF No. 1484-9; and (2) an April 16 entry for $403.75, Gonzalez Invoice at 2, ECF No. 1484-7; *see also* Defs.' Mot. Obj. Monitor Invoice at 8, 10, ECF No. 1500 (May 12, 2020) (identifying these specific items as ones that should be corrected, removed, or clarified). The United States agrees that the Monitor should review these entries for relatedness and accuracy, and the Monitor should be given an opportunity to respond. *See* Stipulated Order ¶ 25 ("If a party raises an objection, the TCA Office shall have seven (7) days

The Commonwealth argues that the Monitor and his team must itemize the hours spent on each monitoring activity or service per day.  *See* Defs.' Mot. Obj. Monitor Invoices at 10, 12, ECF No. 1500 (May 12 2020) ("In order for the PRPB to be able to duly assess the invoices for reasonableness, the same must include detailed descriptions of the services and of the hours per day invested in those services or activities.")  While this requirement may apply to Commonwealth contractors under Commonwealth laws and policies, they do not apply to the Monitor under the Stipulated Order.  To support its position, the Commonwealth also points to Paragraph 23 of the Stipulated Order, which it materially misquotes in its filing.  Defs.' Mot. Obj. Monitor Invoices at 12, ECF No. 1500 (May 12, 2020).  The Commonwealth Objections omit the word "time" from Paragraph 23 of the Stipulated Order, which requires that each invoice certify the "total **time** spent…on Agreement-related activities."  Stipulated Order ¶ 23 (emphasis added); *see* Defs.' Mot. Obj. Monitor Invoices at 2, ECF No. 1500 (May 12, 2020) (quoting the text of Paragraph 23 of the Stipulated Order).  There is no requirement for itemized hours by activity, service, or day in the Stipulated Order.  Thus, the Monitoring Invoices, including those submitted by Mr. Gosselin and Mr. Cragg that include the total number of hours spent performing Agreement-related activities during the month are sufficient for payment.  The level of detail in the Monitoring Invoices describing services rendered is also similar to numerous other invoices that have been accepted and paid by the Court without objection from the Parties.

On the invoice submitted by Monitor John Romero, the Commonwealth alleges that Mr. Romero submitted "zero detail concerning the hours invested in the services rendered or work performed during the month of April."  Defs.' Mot. Obj. Monitor Invoices at 13, ECF No.

---

to respond to the objection and either withdraw, modify, or renew the expense.  Only the specific expense that is the subject of an objection shall be withheld pending resolution.").

1500 (May 12, 2020). However, Mr. Romero included a short memorandum at the beginning of his invoice describing nine major activities performed during the month. *See* Romero Invoice at 1, ECF No. 1477-8 (May 5, 2020). The flat rate claimed by the Monitor is also similar to the invoices submitted by the former Monitor that included a short memorandum describing the work and accomplishments of the Monitor's Office. *See, e.g.,* Claudio Fixed Expense Invoice, ECF No. 1061-1 (Jan. 3, 2019) (providing a short memorandum of work completed and accomplishments of the Monitor's Office). The Commonwealth should not be permitted to attack the precise form of invoicing it has accepted so many times in the past, and which meet all of the requirements of the Stipulated Order.

    2. <u>The Monitoring Invoices are not redundant.</u>

The Commonwealth's arguments that the Monitoring Invoices are redundant also fail. *See* Defs.' Mot. Obj. Monitor Invoices at 3, 13, ECF No. 1500 (May 12, 2020). The Commonwealth points primarily to work claimed by the monitoring team related to COVID-19, which has had a significant impact on nearly all facets of police operations and monitoring in the case, as well as society at large. As discussed above, the Court and the Monitor are in the best position to manage the work and assignments of the monitoring team in accordance with the Agreement and within allocated budgets and judicial standards that apply to officers of the Court. The "all-hands-on-deck" approach by the Monitor to address the rapidly evolving situation in Puerto Rico is consistent with the all-encompassing scope of the pandemic emergency.

That the Administrative Director would perform work nearly every day in April, including on issues related to COVID-19 – a criticism raised by the Commonwealth Objections – is hardly surprising. *See id.* at 6-9. The Administrative Director and the two constitutional attorneys are the only team members who reside in Puerto Rico. All other members were unable

10

to travel to Puerto Rico at a time when safety and security issues on the Island were evolving on a daily basis, including information on potential protests in the days leading to International Worker's Day on May 1, 2020.  It is reasonable that the Monitor and most of his team would rely on the Administrative Director to keep them informed of conditions on the ground while they were unable to perform any direct observation, transact business on behalf of the Monitor's Office, or independently verify information conveyed by Commonwealth officials and community stakeholders.  Like PRPB and other federal, state, and local agencies that perform essential services during emergencies, the Monitor's Office continued its operations through the efforts of the Administrative Director and the Monitor's counsel in Puerto Rico, as evidenced by their consistent participation in various conference calls and email correspondence involving the United States.

### C.  The Court Should Also Deny the Commonwealth Objections as Untimely

The Commonwealth Objections should also be denied as untimely.  The Court set a firm deadline of May 12, 2020, at noon for the filing of objections by the Parties.  The Commonwealth failed to meet this deadline and offered no explanation for its delay in its subsequent request for reconsideration.  Like the United States, the Commonwealth received copies of the Monitoring Invoices on April 29, 2020, thirteen days before the Court's May 12 deadline.  Approximately two hours after the noon deadline on May 12 had passed, the Court issued an Order approving the Monitoring Invoices, noting that no objections had been lodged by the Parties.  Order, ECF No. 1498 (May 12, 2020).  The Commonwealth filed its objections almost an hour later, offering no justification for its delay or support for its Motion for Reconsideration of the May 12 Order approving the Monitoring Invoices.  The Commonwealth cited Rule 60(b)(6) of the Federal Rules of Civil Procedure, without more.  This Rule provides that a party may seek relief from an order for "any other reason that justifies relief." Fed. R. Civ.

P. 60(b)(6). Because the Commonwealth tendered no reason or justification, Rule 60(b)(6) provides no refuge, and the Commonwealth's request for reconsideration of the May 12 Order approving the Monitoring Invoices should be denied.

WHEREFORE, the United States respectfully requests that the Court take notice of the foregoing, deny the Commonwealth Objections, and allow the Monitor to review the two items identified above – an April 3 item in the Hernandez Denton Invoice and an April 16 item in the Gonzalez Invoice – for relatedness and accuracy, pursuant to Paragraph 25 of the Stipulated Order.

I HEREBY CERTIFY that on this date I filed the foregoing pleading electronically through the CM/ECF system, which caused the parties, counsel of record and the Monitor on the service list to be served by electronic means.

Respectfully submitted, this 14th day of May, 2020,

**STEVEN H. ROSENBAUM**
Chief, Special Litigation Section
Civil Rights Division

*s/ Luis E. Saucedo*
**TIMOTHY D. MYGATT**
Deputy Chief
**LUIS E. SAUCEDO** (G01613)
Counselor to the Chief
**JORGE CASTILLO** (G02912)
Trial Attorney
U.S. Department of Justice
Special Litigation Section
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Tel: (202) 598-0482
Fax: (202) 514-4883
luis.e.saucedo@usdoj.gov
jorge.castillo@usdoj.gov

Attorneys for the United States