IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

COMMONWEALTH OF PUERTO RICO, et al.,

    Defendants.

CASE NO. 12-2039 (GAG)

## OPINION AND ORDER

Seven years ago, the Commonwealth of Puerto Rico and the United States Department of Justice voluntarily entered into a consent decree in this case. The *raison dêtre* of said Reform Agreement—the most ambitious and comprehensive in the history of our Nation at the time— is to guarantee constitutionally acceptable police practices within the Commonwealth, the ultimate beneficiary being the citizenry itself.

The Agreement, in turn, calls for the appointment of a federal monitor appointed by the Court. To adequately support him in the delicate performance of his duties, the Monitor Office was duly established. Its staff consists of a deputy monitor (position that is currently vacant), subject matter area experts, legal counsel, office manager, support staff, as well as multiple consultants. Since 2013 the Monitor Office has operated under the same budget initially agreed upon by the parties, roughly one point five million dollars. Throughout this time, the Court has always been adamant in providing effective monitoring services within said seed budget, even though the amount of work considerably increased in 2019, upon conclusion of the capacity building stage of the Agreement.

**Civil No. 12-2039 (GAG)**

Over the past two months humanity has witnessed the unprecedented global challenge brought by the Covid-19 pandemic. The Commonwealth and its People are not exempt from the deadly virus' tendrils. Immediate proactive measures, in turn, were and continue to be taken by state and federal authorities. Insofar as the Police Reform is concerned, the Court instructed that work during this time focus mainly on establishing on the one hand an effective Covid-19 Protocol for police officers, and, on the other hand, necessary safeguards so that National Guard activity be compatible with the Agreement. Significant hours of extremely valuable work have in fact been performed by all, including the United States Department of Justice and Puerto Rico Police Bureau. One must also take into perspective that such work is also crucial at this time given constant devastating seismic activity, coupled with another intense hurricane season just around the corner.

Notwithstanding the above, the Commonwealth, for the first time in the history of this case, objects to the Monitor Office's April 2020 invoice, contending that the same lacks transparency, as well as evidence to support the work performed by the Monitor and his team. Additionally, the Commonwealth claims that most of the Monitor Office members have over billed for their services. *See* Motion Objecting Monitor Invoices (Docket No. 1500). The Department of Justice vehemently disagrees, responds with the exact opposite conclusions and asks that the April 2020 Monitor Office invoice indeed be approved by the Court. *See* United States' Response (Docket No. 1506). The Court wholeheartedly concurs with the Department of Justice, adopts its entire reasoning, and thus approves the monitor's April 2020 invoice.[1]

---

[1] Out of the total April 2020 invoice of $91,621.00 there appear to be two possible slight errors totaling $578.75, as the Department of Justice discretely points out. The Monitor will review this matter immediately. If an error exists, he shall redeposit with the Clerk of Court the particular amount. If not, he will explain to the parties and submit a corrected invoice. This is in fact, the sort of specific invoice review that over the years the parties routinely have conducted. When any mathematical or other error is sighted the parties should promptly bring it to the Monitor's attention for clarification or correction.

**Civil No. 12-2039 (GAG)**

Certain Department of Justice observations, however, deserve to be highlighted. First, the monitor, his staff and consultants are not Commonwealth employees nor contractors. They are fully deputized federal judicial officers bound by the Code of Judicial Conduct. Those who are licensed attorneys before this Court, just as counsel for the parties, are also bound by the Model Rules of Professional Conduct. As such, their professional actions are regulated by federal court rather than Commonwealth fiduciary principles and guidelines. Second, the funds deposited annually in the Court Registry to operate the Monitor Office are disbursed on a periodic basis by the Court, after it is satisfied that the invoices properly reflect the scope of work performed. This review and audit process is analogous to the Court's frequent review of invoices submitted by counsel appointed under the Criminal Justice Act. Third the funds in the Court Registry are deposited by virtue of the consent decree and ensuing court orders so as to guarantee an entirely independent federal monitor. This is an arrangement to which the Commonwealth since the outset agreed. Fourth, as mentioned earlier, the month of April of 2020 was characterized by intense Covid-19 pandemic work by all, the Court included. It should thus come as no surprise that the Monitor Office indeed worked beyond the expected normal by directive of the Court so that acceptable constitutional policing continues notwithstanding. Fifth, the Monitor alone is assigned the task of effectively managing his staff. When circumstances so warrant, more so during a national crisis, he may require them to perform additional and multiple functions. Seventh, the monthly work performed by the Monitor Office is typical of its counterparts across the Nation in other police consent decree cases. More so, the Court notes that in this case the Monitor and his team are greatly under-compensated for their intense and draining work, whose only goal is to ensure the Commonwealth's compliance with sacrosanct constitutional mandates, in turn, safeguarding citizens' life and liberty. Finally, since the outset of the case the Monitor has been compensated in a flat monthly fee agreed upon by the parties.

The Court is compelled at this time to address the Commonwealth's serious sweeping allegation that in particular the Monitor and his counsel have engaged in a pattern of over billing, "double dipping", and claiming compensation for vague, redundant and unnecessary tasks. Other team members are nonetheless similarly targeted, for example the IT subject matter area expert and administrative manager. The Court takes profound exception to this unfounded character assassination as to the motives of highly dedicated individuals who for several years have ably, uniquely and collectively contributed to the effectiveness of the Monitor Office. Up to now, their invoices, professionalism and integrity had never been questioned by the Commonwealth, United States Department of Justice and the Court. Nor has the value of their particular work to the Police Reform. The very timing of doing so now at this juncture, however, undoubtedly comes as a consequence of their carrying out multiple Court initiatives that are seemingly not welcome by the Commonwealth.

Monitor John Romero came to this case in 2013 with the parties' recommendation as the Monitor's subject matter area expert in use of force. In 2019 the Court, again with the parties' encouragement, appointed him Acting Monitor. More recently, the Court formally appointed him Monitor. Mr. Romero is a retired thirty-year veteran of the New York Police Department, who then served as Police Chief another decade and a half in the city of Lawrence, Massachusetts. A total of forty-five years of impeccable law enforcement experience. Attorney Federico Hernández Denton holds undergraduate and law degrees from Harvard University. He has been a licensed attorney for half a century. Notably, he served in the Puerto Rico Supreme Court for thirty years, first as an associate justice for twenty years, followed by ten years as its chief justice. Unquestionably, an expert in matters involving constitutional issues and law enforcement, with also an immense understanding of how local government operates. Attorney Alfredo Castellanos Bayouth, holds an undergraduate degree from the University of Maryland and a law degree from

the University of Puerto Rico. He has been a licensed attorney for thirty years, with extensive federal court litigation, trial and appellate experience. He holds various certifications in mediation from the Harvard Law School - MIT Program and is also a court certified federal mediator. Prior to his work in this case he represented the Commonwealth Department of Corrections in the *Morales Feliciano* class action prison litigation, which also involved intense federal monitoring — an experience which only adds to the overall prestige of the Monitor Office. Undoubtedly the three gentlemen combined, along with all other core team members and staff, provide to the Court the highest quality of expertise possible, even with a *sub par* budget as compared to court ordered ones in other federal police monitoring cases. As a matter of fact, the hourly rate of the Monitor's counsel is less than half of the top contractual rate for Commonwealth counsel in this case. Note that in 2013 the United States Department of Justice proposed a budget for the Monitor Office more than double of the current operating one. The Court, in light of the Commonwealth's then precarious fiscal predicament prompted the parties to agree to a lesser amount.

The Commonwealth posits that both counsel Hernández Denton and Castellanos Bayouth came to this case on a limited basis as "constitutional counsel", however, their work has entailed matters beyond this intended scope. This is the first occasion this matter is raised. Indeed, their title was such because this case involves monitoring of constitutional police practices. This title, however, was never intended as a straitjacket to limit the scope of their work. More so, over the years, the Commonwealth was aware of and never raised any concerns as to the myriad of tasks they both performed (*i.e.*., scheduling public hearings and town hall meetings, mediating and resolving the election year ban as to Police Bureau advertising required by the Reform Agreement, Monitor Report writing). Attorney Antonio R. Bazan, a now retired constitutional counsel, served at times as a general counsel, and worked on numerous administrative and contractual matters for the Monitor Office. As a matter of fact, some time ago, the Court began to refer to both attorneys

**Civil No. 12-2039 (GAG)**

as Senior Counsel. *See, e.*g., Introductory and ninth paragraphs of Minutes of December 9, 2019 (Docket No. 1388). The idea behind this was to eventually appoint a General Counsel team and to have senior counsel available for specific and critical matters requiring their vast expertise. This more so now, given the fact that Attorney Castellanos Bayouth recently (as explained below) became the Monitor in another case which, in turn, requires that a considerable percentage of his time now be devoted to said matter.

Lastly, the Commonwealth asserts that Attorneys Hernández Denton and Castellanos Bayouth, as well as certain members of the Monitor Office also work for the Monitor Office in another consent decree case before the Court. *See* United States v Commonwealth of Puerto Rico, Civil Case 99-1435(GAG). This is no Area 51 secret given that the Commonwealth and United States Department of Justice are also parties thereto. Indeed, counsel and other staff have worked in that other case for almost the same time as in this case in a similar capacity. During the past two years Attorney Castellanos Bayouth also served in the other case as Lead Monitor and Special Master, as well as Acting Monitor. In December of 2019 he was properly appointed Monitor. No one from the Commonwealth nor Department of Justice ever moved to disqualify counsel and others from working in both cases. The parties until now never raised with the Court any conflict of interest issues involving anyone from the Monitor Office. And, until just now, the Commonwealth did not ever adduce the existence of any purported violation under the local constitution and laws until the April 2020 invoices were filed in both cases. If the latter were the case, then the same retained counsel for the Commonwealth in both cases could be subject to this very same exacting and unfounded scrutiny.

In Civil Case 99-1435(GAG) as here, the Commonwealth for the first time in the twenty-year history of said case raised mirroring allegations. The timing in both cases evidences that what is at stake here is more than the mere questioning of specific items in monitor invoices. The

Commonwealth has weaponized the routine invoice review process. It has converted the same into a litigious indictment—not against an opposing party, but rather against officers of the Court—something which cannot be taken lightly. It is the Court which ultimately determines who the Monitor and his team are and the direction of the work they perform. Here, the Court, having two enormous consent decree proceedings before it, has opted to use several of its experienced officials to work in both matters and in multiple functions. This indeed works, permitting the Court to effectively employ its time and resources. As judicial officers of an Article III court, Monitor team members are not accountable to the Commonwealth nor Department of Justice. If so, then the Monitor could under no circumstance perform a neutral, balanced and objective task of oversight nor provide technical advice to the Commonwealth when directed to do so by the Court. However, the Monitor and his team are indeed accountable to the Court, under federal law, by performing work under the scope of the Agreement and court directives—something which has always occurred in both cases.

To conclude, following discussions with fellow Article III colleagues, it is extremely rare and extraordinary to see challenges to a federal monitor's invoices. More so, like that now presented here. Attacking a federal monitor's integrity and work is disruptive and distractive, more so given that a consent decree case is not a litigious proceeding between the state and monitor. This adds unnecessary and significant costs to the Commonwealth and Monitor, as well as requires the Court and Department of Justice to devote precious time and effort to unduly address the matter. A protracted war against any Office of the Monitor cannot serve as a means to an end of preventing or obstructing a monitor from effectively monitoring. This would tantamount to an attack against the judicial function itself. Any such future action by the Commonwealth accordingly shall be considered vexatious and sanctionable, and the Court will not hesitate to take all necessary action.

**Civil No. 12-2039 (GAG)**

The Court reminds the Commonwealth that a great deal of work remains to be done if it realistically expects the Court to put an end to the Police Reform consent decree within schedule. Unnecessary collateral matters such as the present only add delay. Now with the looming COVID-19 pandemic, the Police Reform will continue to face a great many unexpected challenges. Thus, a spirit of collaboration, cooperation and transparency amongst all is in order. The Court will be carefully scrutinizing any future attempt to undermine the credulity of its Monitor via unjustified legal filings, which only divide the spirit of collective effort.

**SO ORDERED.**

In San Juan, Puerto Rico this 14th day of May, 2020.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States Chief District Judge