UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br>            **Plaintiff**, <br><br> v. <br><br> **COMMONWEALTH OF PUERTO RICO, ET AL**., <br>            **Defendants**. | **Civil No. 12-2039 (GAG)** |

## TRANSITION ORDER

In furtherance of an orderly transition process that provides continuity and stability to government operations following the November 2020 General Elections in Puerto Rico, this Transition Order is intended to mitigate and prevent any undue interruption in operations or precipitous turnover in personnel that is likely to set back the Commonwealth's efforts to implement key civil rights reforms under the Agreement for the Sustainable Reform of the Puerto Rico Police Bureau ("Agreement"), Docket No. 60.

Specifically, an abrupt termination or transfer of essential personnel responsible for facilitating compliance monitoring, providing training, and implementing other requirements under the Agreement would jeopardize continued progress in this case and would deprive officers of the guidance and support that they need to carry out their law enforcement duties in an effective and constitutional manner.  As a result, the residents of Puerto Rico would remain more vulnerable to the use of excessive force, unreasonable searches and seizures, and unlawful discrimination by the Puerto Rico Police Bureau ("PRPB").

I.      Background

This Order relates to a civil action filed by the United States of America pursuant to the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141 (re-codified at 34 U.S.C. § 12601), against the Commonwealth of Puerto Rico and its officers for an alleged pattern or practice of civil rights violations by PRPB.  On July 17, 2013, the Parties entered into the Agreement to implement comprehensive reforms to ensure that PRPB delivers constitutional, effective policing services that promote public safety and foster greater trust between the public and PRPB.  The Agreement requires a complete review and update of PRPB's policies and practices in eleven substantive areas, as well as the implementation of internal and external systems of accountability that will ensure the sustainability of critical reforms.  The Parties carefully crafted the Agreement to meet the significant challenges facing PRPB and ensure that it receives the support and resources it needs to accomplish the Parties' mutual goals.

In October 2018, the Monitor began monitoring the Commonwealth's compliance with the Agreement following a 52-month, capacity-building period.  The capacity-building period gave the Commonwealth an opportunity to address significant resource, staffing, and technology needs at PRPB.  In the current monitoring phase, the Monitor conducts periodic and comprehensive assessments to determine whether each requirement of the Agreement is:
(a) incorporated into an implemented policy; (b) the subject of sufficient and adequate training; and (3) implemented in practice.  Agreement ¶¶ 242, 251.  Monitoring the Commonwealth's compliance is a significant undertaking, involving numerous document requests and productions, a coordinated review of thousands of pages of documents, interviews with Commonwealth personnel and other stakeholders, and extensive data analyses.  The Monitor filed his first

monitoring report on the Commonwealth's compliance on March 29, 2020, with the assistance of a team of subject-matter experts and other professionals. (Docket No. 1435).

Uninterrupted monitoring and continuous implementation of the Agreement depends on the work of essential Commonwealth personnel and contractors of the Department of Public Safety ("DPS") and PRPB. These essential personnel and contractors include staff who oversee the implementation of complex information systems, instructors who train officers through the Auxiliary Superintendency of Education and Training ("SAEA," in Spanish), administrative staff at the PRPB Reform Office who support the production of thousands of documents, healthcare professionals who evaluate new recruits, and interpreters. This year has been particularly challenging for the work of DPS and PRPB in light of recent natural disasters, such as earthquakes, and the global pandemic. Further interruption or precipitous turnover in the work of critical Commonwealth personnel and contractors would prove detrimental to the progress achieved by the Commonwealth and would lead to wasted resource investments that have been made since the Court entered the Agreement in 2013.

II.     Transition Order

This Court has issued "Transition Orders" in the instant matter and in other institutional reform cases that require continuity of operations to preserve critical civil rights protections during government transitions stemming from general elections in Puerto Rico. See Transition Order, Doc. No. 388 (Aug. 1, 2016); Transition Order, Docket No. 1533, United States v. Commonwealth of Puerto Rico, No. 94-cv-2080-GAG (P.R.D. Sept. 28, 2020) (ordering measures to prevent undue interruptions in operations or sudden turnover of personnel that would set back reforms in juvenile facilities); Transition Order, Docket No. 794, United States v. Commonwealth of Puerto Rico, No. 99-cv-1435-GAG (P.R.D. Dec. 10, 2008) (ordering measures to minimize or eliminate the

potential adverse impact the government administration change could have on the ongoing and future operations of the Commonwealth's Mental Retardation Program).

The Transition Order in this case is necessary because Commonwealth contracts for professional services often terminate automatically at the end of the calendar year before the inauguration of a newly-elected Governor. The Commonwealth's precarious fiscal situation also creates uncertainty in PRPB's ability to fill critical positions, maintain essential contracts, and produce timely work product.

This Transition Order is designed to ensure continued progress in the case, avoid noncompliance with this Court's orders, facilitate compliance monitoring, and supplement the Commonwealth's own efforts to ensure an orderly government transition in furtherance of the Agreement. To protect against undue interruptions in operations or precipitous turnover in personnel and contractors that are essential to the implementation of the Agreement, the Court hereby orders the following safeguards and requirements:

A. The Commonwealth shall continue to implement the reforms required by the Agreement and facilitate compliance monitoring in accordance with the Agreement and the approved monitoring methodology, including producing documents and data, and permitting access to Commonwealth personnel and facilities.

B. By December 15, 2020, the Commonwealth shall notify the Court, the Monitor, and the United States of existing personnel and contractors of DPS and PRPB designated as essential to the successful implementation of, and compliance with, the Agreement and subsequent Orders being monitored. This includes personnel and contractors from the PRPB Reform Office, Technology Bureau, and SAEA, in accordance with Paragraph 233 of the Agreement. The notification shall include the name of the staff person, the position held, the staff person's duties

and responsibilities, and the employment status of the staff person, namely, whether the staff person is a sworn officer, civilian employee, confidential assistant, or contractor.

C. By December 15, 2020, the Commonwealth shall also notify the Court, the Monitor, and the United States of the steps that the Commonwealth has taken or will take to retain the essential personnel and contractors noted above in their current positions through June 30, 2021. These steps shall include eliminating automatic termination provisions in professional service contracts, extending the period of performance for professional service contracts to June 30, 2021, and prohibiting the transfer or reassignment of the essential personnel and contractors noted above without just cause. This Order shall not be interpreted as creating any vested interest for incumbents in any of the positions identified, nor an invitation for substandard performance, or as a measure to alter the function of any existing human resources or contracting process. The Court recognizes that the incoming administration must be allowed to exercise its widest discretion, as long as it complies with existing Court Orders to implement the Agreement and subsequent Orders in this case in an effective and constitutional manner.

D. The Commonwealth shall ensure that there are sufficient funds to pay for essential personnel as identified herein, as well as essential personal service contracts deemed essential for implementation of the Agreement and subsequent Orders, in accordance with Paragraph 289 of the Agreement.

E. Until June 30, 2021, the Commonwealth shall notify the Court, the Monitor and the United States whenever there is a vacancy, for any reason, in personnel or professional service contract designated as essential herein. The Court may issue supplemental orders on its own, or by petition of a Party, to ensure continuity of efforts and proper implementation of the Agreement and subsequent Orders.

F. By no later than December 15, 2020, PRPB must produce all information requested by the Monitor as of the date of this Order in connection with the Third Court Monitoring Report. If for any reason PRPB is unable or unwilling to produce the information requested, PRPB must state the grounds for its inability or unwillingness to produce the information by citing specific references, such as, the Agreement, policies, laws and/or regulations.

G By December 15, 2020, DSP or PRPB shall retain the services of a qualified interpreter to assist DPS and PRPB personnel in any matter relevant to the Agreement, methodologies agreed by the parties, documents, contracts or other initiatives that would advance the interests of the Agreement and reduce administrative costs. This requirement is consistent with, and in furtherance of, the Order dated November 13, 2020. Doc. No. 1612.

H. The DPS Secretary is hereby ordered to deliver a copy of the present Transition Order to the members of the Commonwealth's Transition Committee for the upcoming administration.

I. After the inauguration of a new governor on January 2, 2021, the Court will consider any request by the Commonwealth to modify, amend or vacate the appropriate and pertinent provisions of the present Transition Order and allow for the substitution of personnel, including professional service contractors, as the new Commonwealth administration deems proper to submit.

J. By February 1, 2021, the Commonwealth shall notify the Court, the Monitor, and the United States of the new governor's designated personal representative for this case.

K. Through June 30, 2021, the Parties and the Court Monitor shall consider whether additional provisions are necessary to mitigate or prevent undue interruptions or precipitous turnover of essential employees and contractors. Either Party may petition the Court for

appropriate relief.

**SO ORDERED.**

In San Juan Puerto Rico, this 18th day of November, 2020.

                                                *s/ Gustavo A. Gelpí*
                                                GUSTAVO A. GELPI
                                         Chief United States District Judge