UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff;<br><br>      v.<br><br>COMMONWEALTH OF PUERTO RICO, ET AL.,<br><br>                Defendants. | No. 12-cv-2039 (GAG) |

**UNITED STATES' MOTION IN COMPLIANCE WITH ORDER AT DOCKET 1607
REGARDING POTENTIAL CONFLICTS ARISING FROM
PUERTO RICO LAW 144-2020**

COMES NOW, Plaintiff, the United States of America, in compliance with this Court's Order of November 4, 2020, ECF No. 1607, and addresses concerns raised by the Monitor regarding potential conflicts between Puerto Rico Law 144-2020 and the Agreement for Sustainable Reform of the Puerto Rico Police Bureau ("Agreement"), ECF No. 60 (July 17, 2013). Law 144-2020, among other things, authorizes the Puerto Rico Governor to activate local law enforcement officers to engage in policing in a unified manner alongside the Puerto Rico Police Bureau (PRPB) following emergency declarations. In its Order, the Court directed the United States to file a motion "addressing all areas of concern [raised by the Monitor], as well as any possible remedies where a conflict with the Agreement arises." Order, ECF No. 1607 (Nov. 4, 2020).

In a memorandum dated November 23, 2020, the Monitor expressed two primary concerns regarding Law 144-2020 and identified three potential conflicts with the Agreement

("Monitor's Memo," attached hereto as Exhibit A).[1] As set forth below, the United States recognizes, as the Monitor notes, that Law 144-2020 does not refer to the Agreement or the Court's Orders on the use of non-PRPB personnel for law enforcement purposes. *See* Order, ECF No. 1288 (July 18, 2019); Order, ECF No. 1443 (Apr. 3, 2020). But nothing in Law 144-2020 precludes the Commonwealth from implementing the Law in compliance with the Agreement and the Court's Orders. In order to assess the Commonwealth's implementation of Law 144-2020, the United States requests respectfully that the Court issue an order that requires the Commonwealth to:

(a) keep the Monitor, Special Master, and the United States apprised of significant developments in the implementation of Law 144-2020, including but not limited to, the development of relevant training and the issuance of regulations, rules, interagency agreements, policies, or other operational guidance; and

(b) file with the Court, on at least a quarterly basis, a status report describing the Commonwealth's efforts to implement Law 144-2020 and the steps taken to ensure compliance with the Agreement and the Court's Orders.[2]

---

[1] On November 20, 2020, the Court extended the deadline for the filing of the instant motion from November 18, 2020, to twelve business days of receipt of the Monitor's input on Law 144-2020. Order, ECF No. 1616 (Nov. 20, 2020).

[2] This proposed order is consistent with a prior Order directing the Commonwealth to "maintain the Monitor appraised at all times of all matters involving use of non-PRPB personnel." Order, ECF No. 1443 (Apr. 3, 2020). The Court also issued similar orders in 2017 when the Commonwealth contemplated a public-private partnership to operate PRPB's training academy, and the Court directed the Commonwealth to inform the Parties and the Monitor in advance of any changes to ensure compliance with the Agreement. *See* Order, ECF No. 658 (Dec. 4, 2017) (noting that the information requested "is not only essential to the court, but more important for US DOJ and [the Monitor] to assess continued compliance with the Agreement"); Order, ECF No. 679 (Dec. 18, 2017) (requiring monthly informative motions on changes to the operation of the training academy).

I.      **Background**

The Agreement, endorsed and entered by this Court on July 17, 2013, is intended to "ensure that [PRPB] delivers policing services in a manner that upholds civil rights guaranteed by the Constitution and laws of the United States and the Commonwealth of Puerto Rico" and to "promote public safety by providing [PRPB] officers with the tools, guidance, and resources that they need to fight crime effectively." Agreement ¶ 1. The Agreement is binding on all parties by and through their officials, agents, employees, and successors. *Id.* at ¶ 286. The Agreement also provides that "[t]he Commonwealth of Puerto Rico and [PRPB] shall require compliance with this Agreement by all of its agencies, departments, officials, employees, and their respective assigns and successors." *Id.* at ¶ 299.

The Court has addressed the potential deployment of non-PRPB personnel for law enforcement purposes and the Commonwealth's compliance with the Agreement on at least two occasions. The first instance involved mass protests outside of the Governor's mansion in July 2019. On July 17, 2019, the Commonwealth notified the Court that the Secretary of the Department of Public Safety (DPS) was contemplating the deployment of outside resources, including guards from the Department of Corrections and Rehabilitation, to "protect the life, safety and property of all citizens…should the situation escalate and give rise to acts of violence…" Defs.' Notice of Potential Use of Additional Resources to Safeguard the Life, Safety, and Property of Citizens ¶ 7, ECF No. 1287 (July 17, 2019). The following day, and in light of the evolving situation, the Court issued an order stating, "To comply with the Reform Agreement any non-PRPB personnel assigned to work under the directives of the Secretary of Public Safety must at all times adhere to all conditions established in the Agreement." Order, ECF No. 1288 (July 18, 2019). The United States agreed with the Court's Order based on Paragraphs 286 and 299 of the Agreement. Pl.'s Resp. to Defs.' Notice ¶ 6, ECF No. 1289

(July 18, 2019).  The United States further noted that certain provisions of the Agreement may not apply to non-PRPB personnel, given the temporary and exigent nature of the deployment and the specific duties assigned to them.  *Id.*

On April 3, 2020, the Court reaffirmed its Order of July 18, 2019, after taking judicial notice that the Commonwealth planned to deploy the Puerto Rico National Guard to assist PRPB in the enforcement of the Governor's executive orders on COVID-19.  Order, ECF No. 1443 (Apr. 3, 2020).  Specifically, the Court extended its prior Order, which it described as requiring that "non-PRPB personnel assigned to work along or in lieu of PRPB personnel must at all times adhere to all conditions established in the Agreement," to "the National Guard, as well as any non-PRPB personnel that the Commonwealth may need to employ in order to protect the life, safety and property of its citizens."  *Id.*  The Court further ordered the Commonwealth to "maintain the Monitor appraised at all times of all matters involving use of non-PRPB personnel."  *Id.*

On October 30, 2020, the Commonwealth enacted Law 144-2020, titled "Act to Unify the Duties of the Public Order Agents in Puerto Rico in the Event of a Declaration of Emergency or Disaster."  Law 144-2020 authorizes the Governor to activate "public order agents" or officers who meet certain training requirements when "it is necessary for the protection of human life or property of the citizens during a declaration of emergency or disaster…"  Law 144, Art. 8 (2020).  Law 144-2020 defines "public order agent" as "[e]very official member under the jurisdiction of the Government of Puerto Rico, whose duties imposed by Law include preventing, detecting, investigating, and making arrests of persons suspected of having committed a crime…"  *Id.* at Art. 4.  The definition includes a list of twelve agencies and types of officers that are covered by Law 144-2020, including PRPB, municipal police officers, and

4

custody officers from the Department of Corrections and Rehabilitation.[3] *Id.* In addition to the authority granted by their respective enabling statutes, Law 144-2020 confers supplemental powers to "public order agents" to "[e]nforce the laws of Puerto Rico and the executive orders issued during a declaration of emergency or disaster." *Id.* at Art. 6. Law 144-2020 also authorizes "public order agents" to investigate the commission of a crime; report; arrest; execute the orders of the courts; and possess and bear firearms. *Id.*

To be eligible for activation under Law 144-2020, "public order agents" must be trained in a program that is prepared by the DPS Secretary or his/her designee. *Id.* at Art. 7, 8. The training program must include the following topics:

(a) Roles and duties of activated "public order agents";

(b) Vehicular intervention;

(c) Development of leadership in emergency situations;

(d) Arms Act;

(e) Vehicles and Transit Act;

(f) Use of force and civil rights; and

(g) Any other matter that the DPS Secretary deems necessary.

*Id.* at Art. 7. Law 144-2020 also requires that the DPS Secretary and agency heads "create a regulation which will list the faculties, define the duties, and establish a protocol for the execution of their duties, in a coordinated and unified way." *Id* at Art. 10. Law 144-2020 requires that the DPS Secretary and agency heads comply with its requirements within 180 days of its enactment.[4] *Id.*

---

[3] Members of the Puerto Rico National Guard are excluded from the definition of "public order agents."
[4] Law 144-2020 also authorizes the Governor to seek assistance from the United States Government and establish a "Peace Officers Corps" composed of federal law enforcement

On November 4, 2020, the Court ordered the Commonwealth to file a certified English translation of Law 144-2020 and the Monitor to "provide to the parties and Special Master a rundown of areas in [Law 144-2020] which actually or potentially conflict with the Agreement, as well as a brief explanation as to why." Order, ECF No. 1607 (Nov. 4, 2020). The Court also directed that "[o]nce USDOJ has both the Monitor's input, as well as the benefit of the translation it shall file with the Court on or before November 18, 2020, a motion addressing all areas of concern, as well as any possible remedies where a conflict with the Agreement arises." The Monitor submitted a Memorandum to the Parties on November 23, 2020, attached hereto as Exhibit A, with his concerns and potential conflicts arising from Law 144-2020.

## II.     Discussion

Law 144-2020 does not conflict with the Agreement or the Court's Orders on its face, and the United States therefore recommends that the Court, Monitor, Special Master, and United States monitor the implementation of Law 144-2020 to assess and ensure ongoing compliance with the Agreement and the Court's Orders. In his Memorandum of November 23, 2020, the Monitor raises concerns over the Commonwealth's failure to refer to the Agreement and its disregard of the Court's Orders. Specifically, the Monitor cites the Court's Order of July 18, 2019, ECF No. 1288, regarding the potential deployment of personnel from the Department of Corrections and Rehabilitation during the July 2019 protests, and the Order of April 3, 2020, ECF No. 1443, regarding the deployment of the Puerto Rico National Guard in

---

officers who are empowered to enforce Commonwealth laws. *Id.* at Art. 9. Law 144-2020 further requires the DPS Secretary and agency heads to "consult and request authorization" from the United States Government to include federal law enforcement officers in Law 144-2020's implementing regulation. *Id.* at Art. 10. The United States does not offer an opinion or take a position regarding any provision of Law 144-2020 concerning federal law enforcement officers in the instant motion.

response to the COVID-19 pandemic.  In each instance, the Court ordered that "non-PRPB personnel assigned to work along or in lieu of PRPB personnel must at all times adhere to all conditions established in the Agreement." *Id.*  The Monitor also identified three potential conflicts in his November 23, 2020, Memorandum related to use of force and training; searches and seizures; and accountability systems and statistics.  We address the Monitor's concerns and each of the three potential conflicts in turn, and we explain why monitoring the implementation of Law 144-2020 is the appropriate path going forward.

    **A. The Commonwealth Must Consider the Agreement and the Court's Orders When Implementing Law 144-2020.**

Law 144-2020 does not facially violate the Agreement or the Court's Orders.  The United States agrees with the Monitor that the Commonwealth did not refer to the Agreement or specifically address the Court's Orders in its enactment of Law 144-2020.  However, because neither the Agreement nor the Court's Orders prohibit the Commonwealth from authorizing the Governor to activate local law enforcement officers or conferring police powers to them under Commonwealth law, the Commonwealth's omissions do not violate the Agreement or the Court's Orders on their face.

To avoid running afoul of its obligations in this case, including Paragraph 299 of the Agreement,[5] the Commonwealth must consider the Agreement and the Court's Orders in the regulations, rules, interagency agreements, policies, and operational guidance that will implement Law 144-2020.  This includes addressing several threshold issues to determine whether, and how far, to extend the substantive provisions of the Agreement to non-PRPB personnel activated by the Governor under Law 144-2020.  These threshold issues include:

---

[5]  As stated above, Paragraph 299 of the Agreement requires that the Commonwealth and PRPB "shall require compliance with this Agreement by all of its agencies, departments, officials, employees, and their respective assigns and successors."

(a) whether the Commonwealth is assigning PRPB's policing powers to non-PRPB personnel;

(b) whether "public order agents" will be acting under a unified command under DPS or PRPB when activated by the Governor, or whether these officers will remain under the direct supervision of their respective agency heads and supervisors; (c) the policies that will serve as the basis for mandatory training under Article 7 of Law 144-2020 and for accountability purposes; (d) the entity that will be responsible for investigating alleged misconduct by "public order agents" when acting under Law 144-2020; and (e) the systems of accountability that will apply to "public order agents," such as reporting uses of force, documenting police activity, reviewing the conduct of subordinate officers, and compiling statistics.  The Commonwealth's decisions on these threshold issues implicate the Agreement, and it should keep the Monitor, Special Master, and United States informed about the choices it makes in the regulations, rules, interagency agreements, policies, and operational guidance that will implement Law 144-2020.

### B. Potential Conflicts Should Be Addressed in Implementation

The Monitor identifies potential conflicts in three areas:  (1) use of force and training; (2) searches and seizures; and (3) accountability systems and statistics.  The United States believes that each of these potential conflicts can be resolved in the implementation of Law 144-2020 without violating the Agreement or the Court's Orders.

1. <u>Use of Force and Training</u>

The Monitor indicates that Article 7 of Law 144-2020 "bypasses the existence and applicability of the Agreement" related to training on use of force; stops, searches, and seizures; and general training and supervision.  Monitor's Mem. at 2.  The Monitor posits that the Commonwealth should cure this omission by incorporating compliance with the Agreement into the implementing regulation required by Article 10 of Law 144-2020.

Article 7 of Law 144-2020 provides seven topics that must be incorporated into the training program for officers who are eligible for activation.  Subparagraph (f) includes "use of force and civil rights," and subparagraph (g) is a catch-all provision that includes "[a]ny other matter that the Secretary deems necessary."  Law 144-2020, Art. 7.  The Agreement requires training on the Fourth and Fourteenth Amendments concerning use of force, searches and seizures, and unlawful discrimination consistent with subparagraph (f) of Article 7.  To comply with the Agreement, the Commonwealth must include sufficient additional training under subparagraph (g) of Article 7 on the supervision and accountability systems to protect against civil rights violations and related misconduct.  This includes training on reporting force, documenting police activities, reviewing the activities of subordinates, reporting and investigating alleged misconduct, and protecting individuals from retaliation for reporting alleged misconduct.  The Commonwealth may address all of these requirements of the Agreement when it implements training on Law 144-2020.

    2.    <u>Searches and Seizures</u>

The Monitor states that "stops, searches and seizures [are] not specifically referenced in [Article 6 of Law 144-2020] which creates the uncertainty on whether non-PRPB personnel will engage on it or not."  Monitor's Mem. at 2.  The Monitor further observes that if searches and seizures are permitted, then Law 144-2020 "may potentially conflict with paragraphs 58 to 79 of the Agreement."  *Id.*  Paragraphs 58 to 79 of the Agreement cover various aspects of searches and seizures, including investigatory stops, arrests, searches, and related training.  Finally, the Monitor posits that non-PRPB personnel performing searches and seizures must comply with constitutional requirements, rather than separate administrative procedures.  *Id.* at 3.

Article 6 of Law 144-2020 does refer to searches and seizures where it confers authority on "public order agents" to, among other things, enforce Commonwealth laws and executive

9

orders, arrest, and execute court orders.  Law 144-2020 at Art. 6.  We agree with the Monitor that in conducting searches and seizures, all officers acting under Law 144-2020 as assignees or agents of PRPB must comply with the Agreement.  To ensure compliance with the Agreement, the Commonwealth must also ensure that there are sufficient protections against unconstitutional searches and seizures, including providing adequate operational guidance, training, supervision, and accountability systems in the application of Law 144-2020.

      3.      <u>Other Matters Involving Accountability Systems and Statistics</u>

The Monitor states that the Commonwealth should address civilian complaints, internal investigations, and discipline in the regulations implementing Law 144-2020 to ensure compliance with Paragraphs 159 to 204 regarding misconduct allegations.  Monitor's Mem. at 3.  The Monitor also recommends that the regulations address the collection of statistics by the DPS Secretary.  *Id.*  We agree with the Monitor's recommendations.  To comply with the Agreement, the Commonwealth must ensure that Law 144-2020's implementing regulations, training, and operational guidance provide sufficient accountability systems to meet the substantive provisions of the Agreement for non-PRPB personnel who are PRPB's assignees or agents.  Pursuant to the Agreement, the Commonwealth must also require the collection of accurate and reliable statistics on law enforcement activities and crime to ensure public accountability and promote public trust for all non-PRPB personnel who are covered by the Agreement.  These issues are not addressed by Law 144-2020 itself, and should be considered expressly in the statute's implementing regulations and related operational guidance.

      **III.**      **Conclusion**

Law 144-2020 confers authority on "public order agents" that is commensurate to the policing powers of PRPB to enable a unified and coordinated response to Puerto Rico's public safety needs following emergency declarations.  In conferring such authority, the

Commonwealth must ensure that officers acting under Law 144-2020, to the extent they are covered by the Agreement as assignees or agents of PRPB, comply with the Agreement's requirements.  Because Law 144-2020 is silent on how it will ensure such compliance beyond requiring the DPS Secretary to establish a training program, the Commonwealth should address the threshold issues outlined in Section II.A above to enable the United States to assess, and this Court to determine, whether, and to what extent, the substantive provisions of the Agreement apply to non-PRPB personnel.  As the Commonwealth develops implementing regulations, rules, interagency agreements, policies or other operational guidance for Law 144-2020, it must ensure that there are sufficient protections in place to prevent and address alleged civil rights violations by non-PRPB personnel to ensure compliance with the Agreement.

WHEREFORE, the United States respectfully requests that the Court take notice of the foregoing and issue an order requiring the Commonwealth to:

(a) keep the Monitor, Special Master, and the United States apprised of significant developments in the implementation of Law 144-2020, including but not limited to, the development of relevant training and the issuance of regulations, rules, interagency agreements, policies, or other operational guidance; and

(b) file with the Court, on at least a quarterly basis, a status report describing the Commonwealth's efforts to implement Law 144-2020 and the steps taken to ensure compliance with the Agreement and the Court's Orders.

I HEREBY CERTIFY that on this date I filed the foregoing pleading electronically through the CM/ECF system, which caused the parties, counsel of record and the Monitor on the service list to be served by electronic means.

Respectfully submitted, this 10th day of December, 2020,

**STEVEN H. ROSENBAUM**
Chief, Special Litigation Section
Civil Rights Division

<div style="margin-left: 40%;">

*s/ Luis E. Saucedo*
**TIMOTHY D. MYGATT**
Deputy Chief
**LUIS E. SAUCEDO** (G01613)
**JORGE CASTILLO** (G02912)
Trial Attorneys
U.S. Department of Justice
Special Litigation Section
Civil Rights Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Tel: (202) 598-0482
Fax: (202) 514-4883
luis.e.saucedo@usdoj.gov
jorge.castillo@usdoj.gov

Attorneys for the United States

</div>