CERTIFIED TRANSLATION                                          PAGE 1 of 38
*Mary Jo Smith-Parés, USCCI*

## IN THE SUPREME COURT OF PUERTO RICO

| | | |
|---|---|---|
| Kilómetro 0, Inc.<br><br>Petitioner<br><br>v.<br><br>Héctor M. Pesquera López, in his official capacity as Secretary of the Puerto Rico Department of Public Safety; Henry Escalera, in his official capacity as Commissioner of the Police Bureau, et al.<br><br>Appellees | CC-2020-0004 | Certiorari |

### Judgment

In San Juan, Puerto Rico, on April 12, 2021.

Since Soto v. Secretario de Justicia [Secretary of Justice], *infra*, this Court has highlighted the importance of citizens having access to public information that is in the hands of the Government, not only as a corollary to the exercise of a fundamental right, but also as a vital part of the oversight of public service. However, we have also recognized that such a right is not absolute, as the State

**[PAGE 2]** may impose restrictions on access to information to serve a higher public interest.

On this occasion, we are called upon to examine a restriction to such right by way of a confidentiality claim by the State. Specifically, we must determine whether certain reports related to public policy promoted by the Police Reform are open to public review or whether, on the contrary, the State has a compelling interest in not disclosing such documentation. We proceed, then, to relate the factual and procedural background of the issue before us.

**I**

On March 18, 2019, Kilómetro 0, Inc. (KM0) filed a <u>mandamus</u> petition against the Secretary of the Public Safety Department, the Commissioner of the Puerto Rico Police Bureau (NPPR, by its Spanish acronym), the Director of the Demographic Registry and the Government of Puerto Rico (State).[1] In its pertinent parts, it requested the release of: (1) the NPPR database on members' use of force from 2014 to the present, updated, in a processable <u>Excel</u>-type format and without grouped data; (2) the statistics on deaths,

---

[1] At that time, Mr. Héctor M. Pesquera López was Secretary of the Public Safety Department; Mr. Henry Escalera was Commissioner of the Puerto Rico Police Bureau, and Ms. Wanda Llovet Díaz was Director of the Demographic Registry.

**[PAGE 3]**  serious injuries, and mutilations caused by NPPR use of force from 2014 to the present; and (3) copies of all Use of Force Reports or PPR-854 Forms issued from 2014 to the present.[2] They argued that it is public information whose disclosure is not protected.

In response, the State filed a motion to dismiss.[3] As concerns us, [the motion] argued that the Use of Force Reports are not public documents because they constitute an internal communication between NPPR members and their supervisors. In the alternative, it stated that the [Reports] collect information from witnesses and informants that, if revealed, would discourage their participation in the process. It stated that a Use of Force Report is of a privileged nature, as it contains sensitive information. It also added that KM0 lacked standing. Finally, it explained that the issuance of the mandamus would adversely impact the public interest and would constitute undue interference with the executive branch.

---

[2] With respect to the Demographic Registry, KM0 requested a copy of the death certificates of twenty-one (21) persons identified in the Use of Force Reports, as well as an updated copy of the database on causes of death. Eventually, the available death certificates were released and KM0 dropped this claim. The Court of First Instance accepted the withdrawal in a partial judgment.

[3] The State accompanied its request for dismissal with a copy of the database on use of force and affirmed its compliance with the request for the statistics on use of force.

On its part, KM0 opposed the dismissal.[4] It argued that the <u>Use of Force Reports</u> are public documents, thus **[PAGE 4]** originated, issued and preserved by the NPPR. It stated that NPPR General Order Chapter 600, Section 605 (OG 600-605), signed by the Superintendent of Police, only classifies as confidential reports involving minors. It also argued that this does not pass the strict scrutiny test and suggested that any confidential information could be blacked out or redacted. It affirmed its standing under the constitutional right of access to information.

In a response, the State indicated that, even if the <u>Use of Force Reports</u> were public documents, there exists a compelling interest that justifies their confidentiality. It reiterated that KM0 does not have standing and claimed that the issue had become moot upon delivery of [materials] related to the databases, statistics and death certificates.

Thus, the Court of First Instance issued a judgment in which it recognized, first, that KM0 has standing to file its claim. It concluded, additionally, that the <u>Use of Force Report</u> is a public document, as it is created, issued and preserved by the NPPR, as well as written by public officials

---

[4] On the other hand, KM0 also argued that the State did not provide all of the statistical information requested and that the use of force database provided included grouped data.

**[PAGE 5]**

in the performance of their duties. It determined that documents that narrate events that have occurred are not confidential. Likewise, it inferred that the fact that a document can be used for the implementation of institutional policies does not exempt it from being disclosed. It reasoned that the State did not present evidence or grounds to show that the disclosure of the Use of Force Reports would affect or harm the public interest or Government operations.

Disagreeing, the State filed an appeal and petition for writ in aid of jurisdiction with the intermediate appellate court. It claimed that it does not have a ministerial responsibility to provide access to Use of Force Reports, as they are a document on departmental actions for internal purposes. The State argued that there are reasons related to law enforcement that prevent their disclosure, namely that they contain personal information of witnesses and victims, and that disclosure would impair public officials from preparing them without fear. The State added that its interest in protecting use of force investigations outweighs KM0's interest in accessing such information.

With this argument before it, the Court of Appeals issued judgment and reversed the ruling of the lower court. It determined that the right of access to public information

yields to the interest of safeguarding the rights of third parties. This, because the <u>Use of Force Reports</u> contain personal information of the witnesses and victims. The [Court of Appeals] added that disclosure of these reports could impact ongoing investigations or the Police Reform before the federal District Court.

**[PAGE 6]**

Dissatisfied, KM0 submitted a petition for <u>certiorari</u> before this Court. We issued the requested writ on March 6, 2020. In summary, KM0 pointed out that the reports only contain a narrative of the facts, not an assessment of the same or recommendations on public policy. It also rejected the argument that these [reports] were used solely for internal investigative purposes. They argued that limiting access to this type of document would make public oversight impossible, reiterating that nothing prevents the disclosure of all non-confidential information.[5]

On the other hand, the State argued that the right of access to information is not absolute and yields to public interests, such as protecting confidential information and preventing an impact on investigations or on Police Reform.

---

[5] In addition, KM0 indicated that the NPPR had not yet provided the updated database in a processable format and without grouped data.

With the benefit of the briefs from both parties, we proceed to resolve whether, in the first place, the <u>Use of Force Reports</u> are public documents subject to disclosure and review by the public. In the second place, this Court must determine whether the State proved a compelling interest that justifies the denial of access to said reports. Let us consider.

**II**

**A.**

[PAGE 7]    As the pillar of any democratic society, the citizens of Puerto Rico have a fundamental right of access to public information, which is closely linked to the rights to freedom of speech, press, and association. Art. II, Sec. 4, Const. of the Commonwealth of Puerto Rico, LPRA, Volume 1; <u>Trans Ad de P.R. v. Junta de Subastas</u>, 174 DPR 56, 67 (2008); <u>Ortiz v. Dir. Adm. de los Tribunales</u>, 152 DPR 161 (2000); <u>Soto v. Srio. de Justicia</u>, 112 DPR 477, 485-486 (1982). This right guarantees that every person can examine the content of the files, **reports** and documents **compiled by the State in the course of its governmental endeavors**. <u>Ortiz v. Dir. Adm. de los Tribunales</u>, supra. In our legal system, this constitutional mandate has also been guaranteed by statute, recognizing that "[e]very citizen has the right to inspect

and copy any public document of Puerto Rico, except when otherwise expressly provided by law." Art. 409 of the Puerto Rico Code of Civil Procedure, 32 LPRA sec. 1781.

The right of access to public information is anchored in the idea that all persons are entitled to know and be aware of governmental affairs. E. Rivera Ramos, <u>La libertad de información: Necesidad de su reglamentación en Puerto Rico</u> [Freedom of information: The Need for its Regulation in Puerto Rico], 44 Rev. Jur. UPR 67, 67-68 (1975). This because, in a democratic society, "it is imperative to recognize the legal right that the common citizen has to examine and investigate how [these] affairs are conducted." <u>Ortiz v. Dir. Adm. de los Tribunales</u>, supra (citing <u>Soto v. Srio de Justicia</u>, supra, p. 485). Its importance is rooted in the notion that knowledge of public affairs facilitates the free discussion of government affairs and, therefore, the full exercise of free speech. <u>Colón Cabrera v. Caribbean Petroleum</u>, 170 DPR 582, 590 (2007).

**[PAGE 8]**

Likewise, such knowledge allows for a more adequate evaluation and oversight of public service, and also acts as a catalyst for more effective and intelligent citizen participation in government processes. This, in turn, promotes transparency in government operations, thus

stimulating healthy public administration. <u>Bhatia Gautier v. Gobernador</u>, 199 DPR 59, 80-81 (2017). In other words, as an oversight tool, the right of access to information empowers the people to make informed judgments on the actions of their government. <u>Colón Cabrera v. Caribbean Petroleum</u>, supra. As is known, our democratic principles "guarantee the right of the people to pass supervisory judgment on all of the actions and determinations of their Government." <u>Trans Ad de P.R. v. Junta de Subastas</u>, supra, p. 67. Otherwise, "[a]llowing the government to manage public affairs under the cloak of secrecy invites arbitrariness, maladministration, governmental indifference, public irresponsibility, and corruption." Rivera Ramos, <u>op. cit.</u>, p. 69. Hence, "[n]owadays, secrecy in **[PAGE 9]** public affairs is the exception and not the norm." <u>Santiago v. Bobb y El Mundo, Inc.</u>, 117 DPR 153, 159 (1986).

Having said that, the right of access to information requires, as a precursor, that the nature of the information requested be, in fact, public. <u>Bhatia Gautier v. Gobernador</u>, supra, p. 81. To that end, Article 1(b) of the Puerto Rico Public Documents Administration Act, Act No. 5 of December 8, 1955, as amended, 3 LPRA sec. 1001, defines a public document as:

> [A]ny document originated, kept or received by any
> agency of the Commonwealth of Puerto Rico in

accordance with the law or related to the management of public affairs and preserved pursuant to the provisions of sec. 1002 of this title requiring that it be preserved permanently or temporarily as proof of transactions or for its legal value. [This] includes those [documents] produced electronically that meet the requirements established by laws and regulations.

In other words, "a public document is one that a state body receives in the course of its affairs and that it is obligated to preserve." Trans Ad by P.R. v. Junta de Subastas, supra, p. 69. Thus, "[o]nce a document falls under one of these definitions, the common citizen has the right to request access to that information and, as we shall see, the State can only validly deny access to an interested citizen in a specific number of cases." Ortiz v. Dir. Adm. de los Tribunales, supra, p. 176. That is, once a document is classified as public, every citizen has standing to request and access such information. Colón Cabrera v. Caribbean Petroleum, supra, p. 589. This, because "[t]o the extent that every citizen has the right to inspect any public document, the act of denying access, in and of itself, causes the applicant a clear, palpable and real damage." Ortiz v. Dir. Adm. de los Tribunales, supra, p. 177. In sum, this right requires that the State disclose all public information in order to "expedite the path for interested citizens-- including critics and adversaries--to find out the truth and

**[PAGE 10]**

not throw obstacles in that path." <u>Soto v. Srio de Justicia</u>, supra, p. 504.

Nevertheless, on previous occasions we have recognized particular circumstances where the State may request that the confidentiality of certain public information be preserved. For a confidentiality claim to be successful, the State must accurately and unequivocally prove the applicability of any of the following exceptions: (1) that it is so stated by law; (2) that the communication is protected by an evidentiary privilege; (3) that the disclosure of the information may harm the fundamental rights of third parties; (4) that it is related to an informer, pursuant to Rule 515 of [the Rules of] Evidence of 2009, 32 LPRA App. VI; or (5) that it is official information in accordance with Rule 514 of [the Rules of] Evidence of 2009, 32 LPRA App. VI. <u>Santiago v. Bobb y El Mundo, Inc.</u>, supra.

[PAGE 11]    However, restrictions imposed by the State on access to information must meet the criteria of a strict scrutiny. See, <u>Bhatia Gautier v. Gobernador</u>, supra, p. 82; <u>Ortiz v. Dir. Adm. de los Tribunales</u>, supra, p. 178; <u>Colón Cabrera v. Caribbean Petroleum</u>, supra, p. 593. In other words, when invoking any of the aforementioned exceptions, the State cannot deny access to public information in a capricious or

arbitrary manner. <u>Colón Cabrera v. Caribbean Petroleum</u>, supra, p. 590. When the State claims the confidentiality of a public document, it "has the burden of proving that it satisfies any of the exceptions listed above." Id., p. 591. Consequently, the refusal by the State to disclose public information must be substantiated and justified, as "[m]ere generalizations are not sufficient." <u>Santiago v. Bobb y El Mundo, Inc.</u>, supra.

For that reason, the courts must be "wary in granting lightly any request for confidentiality from the State." <u>Santiago v. Bobb y El Mundo, Inc.</u>, supra. Thus, "[f]acing the hermetic resistance from the State to make viable the right of access to information, it falls upon the courts to clear the way." <u>Soto v. Srio. de Justicia</u>, supra, p. 504. Otherwise, we would be encouraging a reversal of the advances made in the right of access to government information and equality between the State and its citizens. <u>Eng'g Servs. Int'l, Inc.</u> **[PAGE 12]** <u>v. Autoridad de Energía Eléctrica de Puerto Rico</u>, 2020 TSPR 103 (<u>citing Santiago v. Bobb y El Mundo, Inc.</u>, supra, p. 160.)

**B.**

In 2008, the United States Department of Justice (DOJ) began an investigation into alleged patterns of use of excessive force, unconstitutional searches and seizures, and

certain discriminatory police practices in the then-called Puerto Rico Police. Rico (PRP). In response, the PRP committed to reform through the publication of its Plan of Excellence in 2011. That same year, the DOJ published a report identifying certain deficiencies that should be addressed systematically in PRP, among them: the use of force, external supervision and accountability, and interaction with the community.

After a few years of cooperation between the PRP and the DOJ, on July 17, 2013, the Government of Puerto Rico and the United States signed an <u>Agreement for the Sustainable Reform of the Puerto Rico Police</u> (the Agreement).[6] The [Agreement] was filed with the District Court [for the District] of Puerto Rico for the purpose of affirming the PRP's commitment to providing police services beyond citizens' constitutionally guaranteed rights. The Agreement also set forth an acknowledgment that public safety, constitutional police actions, and community trust operate interdependently.

**[PAGE 13]**

In the effort to reform PRP practices, the Agreement highlighted the following areas for development: (1)

---

[6] Puerto Rico Police, Acuerdo para la Reforma Sostenible de la Policía de Puerto Rico [Agreement for the Sustainable Reform of the Puerto Rico Police], <u>https://docs.google.com/file/d/0Bztr-H26ENotOUdvR2hzajdVM0E/view</u> (last visit, February 19, 2021).

CERTIFIED TRANSLATION
*Mary Jo Smith-Parés, USCCI*

professionalization; (2) use of force;[7] (3) searches and seizures; (4) equal protection and non-discrimination; (5) recruitment, selection, and appointment; (6) policies and procedures; (7) training; (8) supervision and administration; (9) administrative complaints, internal investigations, and discipline; (10) interaction with the community and public information, and (11) information systems and technology. In its relevant sections, the Agreement established a procedure for notifying any use of force by a member of the PRP:

36. The PRP will develop a policy for preparing use of force reports and a Use of Force Report form that comply with applicable laws and are in accordance with generally accepted police practices. The Use of Force Report policy will obligate PRP members to notify their immediate supervisor after any use of force, injury to an arrestee, or allegation of excessive use of force. In cases involving grave use of force, notification shall occur within one (1) hour, unless there exist compelling circumstances.

**[PAGE 14]**

37. The policy on Use of Force Reports will require all PRP members to report in writing every [instance of] use of force in a Use of Force Report form prior to ending their shift. Said Report will include: (a) a detailed description of the incident from the perspective of the PRP member; (b) the initial reason for police presence; (c) a specific description of the acts that motivated the use of force, including the behavior of the individual(s); (d) the level of resistance faced; and (e) a

---

[7] According to the definitions of the Agreement, use of force refers to "any physical coercion used to affect, influence or persuade a person to comply with an order of a member of the PRP, beyond being handcuffed without resisting, including drawing and aiming a firearm."

> description of every type of force used. The Use of
> Force Reports policy will explicitly prohibit the
> use of repetitive or conclusive language in use of
> force reports. Failure to report a use of force or
> injury to an arrestee by a member of the PRP will
> be grounds for imposing disciplinary measures on
> said member of the PRP, including their supervisors
> and high-ranking officials.
> [...]
> 39. The policy on Use of Force Reports shall
> order members of the PRP to submit copies of said
> Report to their immediate supervisor and to the
> SARP [Deputy Superintendent for Professional
> Responsibility] for follow-up and analysis. The
> SARP shall preserve the original copies of these
> Reports in a central location.

The Agreement then established a staggered procedure for

reviewing, investigating, and analyzing such reports in order

to determine whether the conduct was justified and in

accordance with PRP policy. It also imposed upon the PRP the

responsibility of, at least once a year, analyzing the data

"to determine significant trends, identify and correct

deficiencies spotted through this analysis, and document its

findings in a public report."

As a result of this policy, the following orders were

issued: General Order Chapter 600, Section 601, titled "Rules

for Use of Force" (OG-600-601),[8] and General Order Chapter

600, Section 605, titled "Reporting and Investigating

**[PAGE 15]**

---

[8] Puerto Rico Police, General Order 600-601, https://docs.google.com
/file/d/lyVPFAatDYvSnQpoON6z403Lmd3sM--Zh/view (last visit, February 19,
2021).

Incidents of Use of Force by Members of the Puerto Rico Police" (OG 600-605).[9] OG 600-601 sets the limits governing use of force by members of the now called NPPR, which must conform to citizens' rights recognized as such in our legal system. In short, it instructs the members of the NPPR to use a minimum, reasonable level of force proportional to the threat. In addition, it orders all members of the NPPR involved in a use of force incident to notify their immediate supervisor and to comply with the procedure established by OG 600-605.

OG 600-605, on its part, sets forth as public policy that all use of force incidents must be reported by members of the NPPR in a timely, complete, and accurate manner. It then establishes the rules and procedures for reporting and investigating all incidents of use of force. In essence, any NPPR member who uses force against more than one (1) person or animal must complete a Use of Force Report, also known as Form PPR-854. Every report must include a detailed description of the incident from the NPPR member's perspective, without stereotyped or conclusive language, and in addition: the reason for the NPPR's initial presence at

**[PAGE 16]**

---

[9] Puerto Rico Police, General Order 600-605, https://docs.google.com/file/d/0Bztr-H26ENotSU14aUs5UlB2Nnc/view (last visit, February 19, 2021).

the scene; a specific description of the acts that motivated the use of force, including the behavior of the person against whom force was used; the level of resistance faced; a description of every type of force used, and all information related to injuries and medical treatment received or refused by the member of the NPPR or the person against whom the force was used.

### C.

A <u>mandamus</u> is a highly privileged and discretionary judicial remedy by means of which a natural or legal person is compelled to fulfill a ministerial duty within the duties or responsibilities of the position he or she occupies. Art. 649 of the Code of Civil Procedure, 32 LPRA sec. 3421. A ministerial duty refers to a specific mandate that does not allow for the exercise of discretion in its fulfillment. <u>Romero Lugo v. Cruz Soto</u>, 2020 TSPR 143; <u>AMPR v. Srio. Educación, ELA</u>, 178 DPR 253, 264 (2010); <u>Báez Galib y otros v. C.C.E. II</u>, 152 DPR 882 (2000). Due to its extraordinary nature, <u>mandamus</u> is available only when "the petitioner lacks an adequate and effective remedy in the ordinary course of the law." Art. 651 of the Code of Civil Procedure, 32 LPRA sec. 3423; Aponte Rosario v. <u>Presidente Comisión Estatal de Elecciones</u>, 2020 TSPR 119.

Now, when considering whether or not to issue a writ of

**[PAGE 17]** mandamus, the courts have an obligation to consider the impact

of the writ on the public interests involved, the possibility

of undue interference in the work of the Executive Branch,

and the effect on the rights of third parties. Romero Lugo v.

Cruz Soto, supra (citing Noriega v. Hernández Colón, 135 DPR

406, 448 (1994)); Bhatia Gautier v. Gobernador, supra, p. 75.

As pertains to the case at bar, this Court has ruled that

mandamus is the appropriate recourse to "succeed in reviewing

and obtaining copies of public documents." Bhatia Gautier v.

Gobernador, supra (citing Ortiz v. Panel F.E.I., 155 DPR 219

(2001)).

Having set forth applicable law, we proceed to discuss

its application to the matter at hand.

**III**

In its petition to this Court, KM0 asserts that Use of

Force Reports are public documents and argues that their

disclosure would facilitate public oversight of the NPPR.

They reject [the claim] that the reports are used exclusively

for internal investigative purposes, reasoning that, even if

they include confidential information, nothing prevents

access to those that do not. Km0 adds that the State has not

CERTIFIED TRANSLATION                                                        PAGE 19 of 38
*Mary Jo Smith-Parés, USCCI*

demonstrated a compelling interest surpassing their right to access the information.

On its part, the State reiterates that disclosure is not appropriate in light of the public interest in protecting confidential information and preventing an impact on its investigations. At the same time, the State reaffirms that

**[PAGE 18]** <u>Use of Force Reports</u> are not public in nature, since they are produced as part of the duties of an NPPR member for internal administrative and investigative purposes.

As we discussed, any controversy regarding the right of access to information requires, in the first place, that we determine whether the document or information requested is of a public nature. Therefore, we must examine whether the <u>Use of Force Reports</u> requested by KM0 constitute public information subject to public review. As we have indicated, our legal system considers as a public document any document originated, preserved, or received by any State agency related to the management of public affairs. Puerto Rico Public Documents Administration Act, <u>supra</u>, 3 LPRA sec. 1001(b). Likewise, this Court has recognized that the term "public document" includes the range of official documents prepared by public officials in the performance of a public duty. <u>Pueblo v. Millán Meléndez</u>, 110 DPR 171, 176 (1980)

(citing <u>Cirino v. Fuentes Fluviales</u>, 91 DPR 608, 614-616 (1964)).

In the case at bar, the Agreement dictates that <u>Use of Force Reports</u> refers to a written report in which members of the NPPR document any use of force beyond handcuffing without resistance. As is well known, the NPPR is a dependency of the Department of Public Security and thus attached to the executive branch. The reports at issue are produced in the **[PAGE 19]** NPPR and, pursuant to the Agreement and OG 600-605, are completed by members of the NPPR and kept by the Office of the Deputy Superintendent for Professional Responsibility (SARP, by its Spanish acronym), an NPPR division that carries out internal investigations of members and employees of the NPPR. In other words, <u>Use of Force Reports</u> originate, are received and are preserved by a State agency. Also, they are documents that collect information on specific incidents that occur during the performance of a public duty and that must be prepared as part of the duties of the position held by members of the NPPR. Consequently, we must conclude that <u>Use of Force Reports</u> are, indeed, public documents.

Having determined that the information requested by KM0 comes from a public document, every citizen's right of access to it is born. As we have stated, every person has the right

to access public information collected in the course of government affairs. Eng'g Servs. Int'l, Inc. v. Autoridad de Energía Eléctrica de Puerto, supra. However, such right is not absolute, as it may be subject to limitations by the State as long as they are not capricious or arbitrary. In other words, such obstacles to the exercise of the right of access to public information must serve a compelling State interest. Bhatia Gautier v. Gobernador, supra, p. 61.

**[PAGE 20]**     Hence, we must now dissect the State's refusal to release the Use of Force Reports. On previous occasions, this Court has recognized exceptional circumstances in which the right of access to public information is forced to yield due to public policy considerations and, consequently, the information is kept confidential. Trans Ad de P.R. v. Junta de Subastas, supra, p. 68. Those circumstances are limited to: (1) when it is so declared by law; (2) when the communication is protected by an evidentiary privilege that may be invoked by citizens, Sierra v. Superior Court, 81 DPR 554 (1959); (3) when disclosure of the information may harm the fundamental rights of third parties, E.L.A. v. P.R. Tel. Co., 114 DPR 394 (1983); (4) when dealing with an informant, pursuant to Rule 515 of [the Rules of] Evidence of 2009, and (5) when it is official information, pursuant to Rule 514 of

[the Rules of] Evidence of 2009. See <u>Colón Cabrera v. Caribbean Petroleum</u>, supra, p. 591. Consistent with this, it is the State who has the burden of proving that the confidentiality of a public document is justified by a compelling interest. In this context, mere generalizations and arbitrary grounds will not suffice. <u>Santiago v. Bobb y El Mundo, Inc.</u>, supra.

Now, the legal analysis of a confidentiality claim "will depend on the exception invoked by the State <u>vis-à-vis</u> the request for information." <u>Nieves v. Junta</u>, 160 DPR 97, 104

**[PAGE 21]** (2003). However, it is important to emphasize that our jurisprudence has recognized that, between those two (2) rights, the balance must tip in favor of the claimant of the request and against the privilege. <u>Nieves v. Junta</u>, supra; <u>López Vives v. Policía de P.R.</u>, 118 DPR 219, 233 (1987). In other words, "[t]he scales must lean towards a greater recognition of the right to information." A.M. López Pérez, <u>El privilegio ejecutivo frente al derecho a la información pública</u> [Executive privilege vis-à-vis the right to public information], 34 (Nos. 2-3) Rev. Der. Pur. 345, 359 (1994).

In sum, the State's confidentiality claim in the case at bar is based on three (3) main reasons: (1) that <u>Use of Force Reports</u> are compiled for investigative purposes and their

disclosure could affect ongoing investigations; (2) that the reports contain sensitive third-party information; and (3) that their disclosure would act as a deterrent for NPPR members or witnesses to complete Form PPR-854 with the honesty and frankness required.

As to the first grounds, this Court agrees that the protection of ongoing investigations constitutes a compelling government interest. The proper discharge of the public safety duty does indeed require that the State have at its disposal a capable investigative apparatus. <u>Soto v. Srio. de Justicia</u>, supra, p. 494. However, we cannot lose sight of the fact that the interest in protecting ongoing investigations ends simultaneously with the investigation itself. In other words, once an official investigation ends, the risk that disclosure of the <u>Use of Force Reports</u> will have an impact upon it ceases. Consequently, although this interest may excuse the restriction of access to <u>Use of Force Reports</u> that are under investigation, it does not justify restricting access to those reports whose investigation has come to an end.[10]

**[PAGE 22]**

_____

[10] It is worth mentioning that some courts in state jurisdictions have explored and rejected assertions similar to those presented by the State in this case. As an example, the New Jersey Supreme Court found that, in contrast to witness statements and investigative reports with narrative details, the disclosure of <u>Use of Force Reports</u> "presents far less of a risk of taint to an ongoing investigation," especially in the

**[PAGE 23]**      On the other hand, given the proposition that there exists a categorical classification of confidentiality for <u>Use of Force Reports</u>, it is necessary to point out that the Agreement does not establish that all of the information collected as part of its initiatives is covered by a cloak of confidentiality. In fact, the Agreement merely states that the Technical Compliance Advisor (also called the Federal Monitor) and the DOJ

> "shall maintain the confidentiality of all information **that is not of a public nature provided by the PRP,** the CUJC, or any other ELA agency, pursuant to this Agreement. Except as expressly provided in the Agreement, this Agreement shall not be considered a waiver of any right or privilege that the PRP, the CUJC, or any other ELA agency may exercise, including those recognized by common law

---

absence of evidence regarding its adverse effect on the public interest. <u>N. Jersey Media Grp., Inc. v. Twp. of Lyndhurst</u>, 229 N.J. 541, 577-78, 163 A.3d 887, 908 (2017). Likewise, certain state courts seem to rule out the contention that these reports cannot be disclosed as they are internal documents that ensure compliance with the agency's public policy and the conduct of its members. Among these, a court in New Jersey found that it does not consider "the possible, speculative use of a UFR in an internal affairs investigation to provide the necessary basis for precluding access under [the Open Public Records Act]." <u>O'Shea v. Twp. of W. Milford</u>, 410 N.J. Super. 371, 386, 982 A.2d 459, 468 (App. Div. 2009). Analogously, the Arkansas Supreme Court denied that reports of this nature constituted a type of public employee evaluation or generated internal records on employment and were therefore exempt from disclosure. <u>Thomas v. Hall</u>, 2012 Ark. 66, 15, 399 S.W.3d 387, 395 (2012). Also, a court in New York rejected that <u>Use of Force Reports</u> qualified as personal records and that, hence, their disclosure was prohibited, reasoning that, even if they could be used to evaluate an officer's performance, that would not be their only use. <u>Prisoners' Legal Servs. of New York v. New York State Dep't of Corr. & Cmty. Supervision</u>, 173 A.D.3d 8, 13, 98 N.Y.S.3d 677, 681 (2019). Similarly, a Texas court rejected [the argument] that <u>Use of Force Reports</u> could not be released "because they are not any more reasonably related to an individual officer's employment relationship with the department than an 'offense report' completed by the same officer detailing the same incident." <u>City of San Antonio v. San Antonio Exp. News</u>, 47 S.W.3d 556, 565 (Tex. App. 2000).

or established by law, rules or regulations, against any other person or entity regarding the disclosure of any document." (Emphasis added).

As a matter of fact, the only express protection set out in the Agreement with respect to the information collected extends to information regarding personal identification.

Along this line, the State's second grounds is related to the protection of the rights of third parties to preserve the confidentiality of their personal or sensitive information. In this regard, as this Court has repeatedly established, when a law or regulation denies a citizen access **[PAGE 24]** to public information, the regulation must withstand strict judicial scrutiny. Ortiz v. Dir. Adm. de los Tribunales, supra, p. 178. Such standard is measured by the following requirements: (i) that the regulatory exercise is within the government's constitutional power; (ii) that it promotes a compelling government interest; (iii) that such interest is not directly related to suppressing freedom of expression; and (iv) that the restriction on freedom of expression is not greater than is necessary to promote such interest. Id.

When applying the aforementioned legal guidelines to the State's complete refusal to disclose the reports, it is abundantly clear that obstructing access to the totality of the information merely because it contains personal

information constitutes a restriction greater than necessary to protect its interest. In other words, safeguarding the right of third parties to non-disclosure of their identifying information does not prevent access to the parts of the document that do not infringe upon such protection.

In view of this situation, OG 600-605 classifies as confidential a single category of <u>Use of Force Reports</u> and orders the SARP to "[k]eep in an independent, separate and confidential manner files on use of force incidents involving minors, including the originals of <u>Use of Force Reports</u>. Those files will not be [made] available without a court order, even after the investigation has concluded." However, that imposition of confidentiality is not supported by a compelling interest that justifies it. That is, neither OG 600-605 nor the State's appearances during this judicial process prove a particular and compelling interest regarding the confidentiality of <u>Use of Force Reports</u> that involve minors.[11]

**[PAGE 25]**

---

[11] Similarly, the State points to Article XV of the <u>Reglamento para el Recibo, Trámite, Investigación y Adjudicación de Querellas Administrativas contra Empleados de la Policía de Puerto Rico</u> [Regulations for the Receipt, Processing, Investigation, and Adjudication of Administrative Complaints against Puerto Rico Police Employees], Regulation No. 8841 of October 31, 2016, as the basis for arguing that there is an express mandate that prohibits access to the information collected in the investigation files kept at the SARP, except in certain specific instances. It is worth mentioning that this article does not make any reference to the <u>Use of Force Reports</u>, but rather deals with investigations of administrative complaints against members of the NPPR.

If, as was the case with the rest of the <u>Use of Force</u> <u>Reports</u>, the State's interest lies in protecting the minor's personal identification information, as already discussed, this does not require a categorical denial of access to the report. In fact, our legal system has recognized as public policy the protection of the personal information of victims

**[PAGE 26]** and witnesses, including minors, within a judicial or investigative context.[12] However, as we have already indicated, this does not block disclosure of the rest of the report, even more so when this type of information represents a key tool in vindicating the rights of victims. This is even more ubiquitous in the case of minors, who find themselves in an even more vulnerable position in such circumstances.

Ultimately, the interest in protecting the identification information of victims, witnesses and minors is not incompatible with the disclosure of the rest of the Report. Denying access to all this information is,

---

In addition, as we have already discussed, a regulation that entirely prohibits access to public information must, among other requirements, protect a compelling interest and not be more excessive than is necessary to protect that interest. The cited article does not mention a compelling interest, but, assuming that the interest lies in protecting ongoing investigations or personal identification information, it applies the same already stated reasoning.

[12] See Act No. 22 of April 22, 1988, as amended, known as the <u>Ley para Establecer la Carta·de Derechos de las Víctimas y Testigos de Delito</u> [Act to Establish a Bill of Rights for Victims and Witnesses of Crimes], 25 LPRA sec. 973 <u>et seq</u>.

unequivocally, a restriction greater than necessary to protect that interest. Safeguarding personal identification information can be guaranteed without blocking access to the rest of the information to which citizens are entitled and the withholding of which the State has not yet been able to justify.

**[PAGE 27]**

As a final argument, the State argues that the disclosure of Use of Force Reports would have a dissuasive effect on members of the NPPR, who would feel inhibited from completing the reports with the sincerity, frankness and honesty that the process requires. To support the confidentiality of these reports by using as a shield the argument that, if disclosed to the public, the State could not ensure the responsibility and honesty of NPPR members, works against the very public policy pursued by the Agreement and OG 600-605. Consequently, it is paradoxical to invoke the interest of promoting greater honesty by members of the Police in reporting use of force incidents by setting as a condition that the performance of said duty take place under a cloak of secrecy. That intention does not constitute a compelling interest but instead reveals an interest that is cause for concern and contrary to the Police Reform.

As transparency and accountability are guiding
principles of the Police Reform, the Agreement recognizes
that, "[i]n order to guarantee the public responsibility of
the PRP," it is necessary that "the collection and public
dissemination of information regarding the efforts made
towards reform and their results" be published in a "timely
and reliable manner so as to strengthen public confidence in
the PRP." In turn, the Agreement directs the NPPR to develop
"a policy for exchanging information with the public on the
use of serious force and the dissemination of information to
the family members of civilians involved in incidents where
force is used." As recognized by the Federal Monitor in its
First Report, "[p]ublic accountability of police use of
deadly force is a cornerstone of trust between the PRPB and
the community that they protect. Any lack of transparency in
**[PAGE 28]** these matters of significant public concern will only result
in a detrimental impact on the public's confidence in their
police bureau. The above is clearly antagonistic to the goals
in the Agreement."[13] It is crystal-clear, then, that citizen

---

[13] Puerto Rico Police, <u>Primer Informe del Monitor Federal Marzo 2020,
cubriendo de octubre 2018 a junio 2019; Estado del Negociado de la Policía
de Puerto Rico de conformidad con el Acuerdo entre el Departamento de
Justicia de los Estados Unidos y el Estado Libre Asociado de Puerto Rico
aprobado por la Corte Federal</u> [First Report of the Federal Monitor, March
2020, Covering October 2018 through June 2019; Compliance status of the
Puerto Rico Police Bureau in accordance with the Federal Court approved
Settlement Agreement between the United States Department of Justice and
the Commonwealth of Puerto Rico], <u>https://policia.pr.gov/wp-content/</u>

oversight is not only promoted by the Agreement but is also

an essential part of the effective implementation of Police

Reform.[14]

---

uploads/2020/06/Primer-Informe-del-Monitor-Federal-espanol.pdf (last visit February 19, 2021).

[14] In the First Report cited above, which was filed in the case of United States of America v. Commonwealth of Puerto Rico and Police Department of Puerto Rico, Civil No. 3:12-cv-2039, the Federal Monitor expressed its concerns about the rigor of the investigations and the conclusions regarding use of force incidents: "[t]he fact that so many cases lacked both witness statements and forensic evidence, and yet were closed by FIU [Force Investigation Unit] and upheld by SFRB [Superintendent's Force Review Board] as justified in-policy uses of force is implausible **and would most likely not stand up to inevitably intense public scrutiny.**" (Emphasis added). The Monitor also ruled that "the public deserves a level of transparency on the part of those who have the unique and devastating ability to take the life of another while acting under color of law. With such awesome responsibility comes a duty to be transparent and above board at all times. No exceptions." In its Second Report, the Federal Monitor found discrepancies in the documentation and reporting of use of force incidents by members of the NPPR, concluding that such deficiencies "1) failed to hold PRPB accountable for the greater number of force incidents that actually occurred and 2) failed to provide PRPB'S management with the necessary information to make informed decisions." Similarly, it reiterated that "[t]he significance of establishing 'Real Time' accurate information on use of force incidents occurring Bureau-wide cannot be overstated. As previously noted, for the Puerto Rico Police Bureau to effectively monitor its members' use of force, **it must have accurate and timely information and must also be transparent and provide that information to the residents of Puerto Rico upon request.**" (Emphasis added). Puerto Rico Police, Second Report of the Federal Monitor - December 2020 (July 2019 to March 2020); Compliance status of the Puerto Rico Police Bureau in accordance with the Federal Court approved Settlement Agreement between the United States Department of Justice and the Commonwealth of Puerto Rico, https://noticiasmicrojuris.files.wordpress.com/2020/12/1649-1.pdf (last visit, February 19, 2021). On the other hand, in its report from December 2014 through June 2015, the Federal Monitor noted discrepancies and statistical anomalies in the reports on use of force. Puerto Rico Police, Six-Month Report of the Technical Compliance Advisor December 7, 2014 - June 7, 2015, https://docs.google.com/file/d/0BztrH26ENotblVWWXpjVFg5ZkU/view (last visit, February 19, 2021). In another report, he emphasized his **concern regarding the NPPR's ability to audit its own use of force statistics.** Puerto Rico Police, Six-Month Report of the Technical Compliance Advisor December 9, 2015 - June 9, 2016, https://docs.google.com/file/d/0Bztr-H26ENotdVFCQ3EwTnlNNms/view (last visit, February 19, 2021). Recently, he also reiterated the existence of inconsistencies in the documentation and reporting of use of force incidents. Puerto Rico Police, Seventh Six-Month Report of the Technical Advisor June 10, 2017

**[PAGE 29]**        Hence, in the absence of a compelling interest that justifies infringing unconditionally on citizens' right of access to information, the State cannot conceal the <u>Use of Force Reports</u> of investigations that have already concluded. Likewise, its confidentiality claim can only extend to the personal identification information of victims, witnesses and **[PAGE 30]** minors, and therefore, beyond that, the rest of a <u>Use of Force Report</u> is susceptible to disclosure.

**IV**

On the grounds stated above, the judgment of the Court of Appeals is modified. Consequently, respondent is ordered to deliver the requested documentation, in accordance with the herein established parameters. That is, to deliver the reports or documents related to investigations that have already concluded and protecting the disclosure of the personal information of victims, witnesses and minors. Consequently, the case is remanded to the Court of First Instance for subsequent procedures aimed at complying with this ruling, providing that said court will use all available mechanisms to ensure that respondent complies with what is ordered herein.

---

- March 31, 2018, <u>https://docs.google.com/file/d/1iNE61EgOjgdyJUns3PY0L-6xlDP5yHgt/view</u> (last visited February 19, 2021).

Agreed by the Court and certified by the Clerk of the Supreme Court. Associate Justice Mr. Rivera García, concurring in part and dissenting in part, issues the following opinion, joined by Associate Justice Mrs. Pabón Charneco:

**[PAGE 31]**

"There is no doubt that access to public information is a fundamental pillar of any democratic society. This is why we recognized the press and citizens' access to public information as a fundamental right. See *Soto v. Secretario de Justicia*, 112 DPR 477 (1982). This is a constitutional guarantee firmly linked to the exercise of the rights of freedom of speech, press and association enshrined in our constitution. Art. II, Sec. 4, Const. ELA, LPRA, Volume I. In harmony with the foregoing, we concur with this judgment by considering **Use of Force Reports** public documents according to Art. 3(b) of Act No. 5 of December 8, 1955, known as the Puerto Rico Public Documents Administration Act, as amended. However, we dissent on whether these Reports should be disclosed, understanding that the State has a compelling

interest in protecting the confidential information that emerges from them. Let us see.

It is necessary to point out that this Court has stated that the right [of access] to information is not absolute and is **subject to those limitations imposed by the State out of the utmost necessity**. *Bhatia Gautier v. Gobernador*, 199 DPR 59, 84 (2017). Those restrictions, however, must be duly justified since access to public information cannot be denied in a capricious and arbitrary manner. *Colón Cabrera v. Caribbean Petroleum*, 170 DPR 582, 589 (2007). Given that access to public information is a fundamental right, in order to prevail, the restrictions imposed by the governmental apparatus must respond to a **compelling interest** of the State. *Colón Cabrera v. Caribbean Petroleum*, supra. Thus, we have established that there are situations where this right must yield in consideration of other public interest imperatives.

[PAGE 32]

In this sense, through our jurisprudence we have established the cases where the State can validly claim the confidentiality of information in its possession, namely: (1) when it is so stated by

law; (2) when the communication is protected by any
of the evidentiary privileges that can be invoked
by citizens; (3) when disclosing the information
may harm the fundamental rights of third parties;
(4) when it is related the identity of an informer;
or (5) when it is "official information," pursuant
to Rule 514 of [the Rules of] Evidence, 32 LPRA
App. IV. *Bhatia Gautier v. Gobernador*, supra.

**[PAGE 33]**            Consistent with the above, Rule 514 defines
"official information" as "that which is acquired
in confidence by a person who is a public official
or employee in the performance of his duty and which
has not been officially disclosed or is accessible
to the public up the moment when the privilege is
invoked." Rule 514(a) of the [Rules] of Evidence,
supra. On the other hand, this privilege is
triggered "if the court concludes that the matter
is official information and its disclosure is
prohibited by law, or that disclosure of the
information in the case would be **detrimental to
government interests**." Rule 514 (b) [of the Rules
of] Evidence, *supra*.[16] Therefore, a confidentiality
claim by the government may be successful when it

[TRANSLATOR'S NOTE: The translated document received does not have a footnote number 15 or any
text corresponding to footnote 16.]

CERTIFIED TRANSLATION
*Mary Jo Smith-Parés, USCCI*

involves official information that harms the interests of the government.

Just as stated by treatise author Chiesa Aponte, this privilege arises from **the government's need to keep certain information confidential for the proper course of government**, particularly in relation to the frank discussion of governmental alternatives or possible courses of action to address the multiple social, economic—and other—problems of the State [...]. E.L. Chiesa Aponte, *Tratado de derecho probatorio* [Treatise on Evidentiary Law], Dominican Republic, Ed. Corripio, [n.d.], Vol. I, p. 292. Thus, when evaluating a confidentiality claim, one must weigh, on the one hand, the need for the government to keep confidential certain sensitive information and the harm that the government may invoke, and, on the other hand, the need of the party requesting the information and their right to obtain it. E.L. Chiesa Aponte, *Reglas de evidencia comentadas* [Rules of Evidence, Commentated], San Juan, Ed. Situm, 2016, p. 164.

**[PAGE 34]**

In the instant case, the Government maintains that the mentioned Use of Force Reports are prepared for internal investigative purposes. In addition, they argue that under the *Agreement for the Sustainable Reform of the Puerto Rico Police Department* (Agreement), members of the Police are obligated to notify their immediate supervisors of any incident of use of force, injury to an arrestee or allegation of excessive use of force, with the aim of maintaining internal controls. These Reports serve the specific purpose of allowing the Police Bureau to maintain the internal controls that are required as part of the Agreement. In them, police officers outline their interpretation of the

**[PAGE 35]**

incidents in which they used force, the events that took place, and they convey their mental impressions and subjective conclusions regarding the same.

Consequently, in light of these statements, we understand that the State is correct. Certainly, there exists a compelling interest in maintaining the confidentiality of said documents that far outweighs the interest of the party wishing to

CERTIFIED TRANSLATION
*Mary Jo Smith-Parés, USCCI*

access such reports. In other words, providing access to these Reports would have adverse consequences on the public interest that is sought to be protected, as it could dissuade the officials obligated to complete them from acting with the freedom and integrity necessary to comply with the duty to report use of force incidents. In our opinion, this could exponentially increase the probability of them choosing to hide or alter information regarding such events. Consequently, the public interest would be severely affected and the effectiveness of the investigations into use of force incidents that must be carried out by the Puerto Rico Police Bureau would be impaired.

**[PAGE 36]**     It is imperative that members of the Puerto Rico Police complete those reports with the utmost freedom and frankness, as this promotes the best and most effective identification and prevention of improper conduct. Thus, internal controls are developed that facilitate imposing the appropriate corrective and disciplinary measures to tackle incidents of abuse of authority by police officers.

CERTIFIED TRANSLATION                                          PAGE 38 of 38
*Mary Jo Smith-Parés, USCCI*

In consequence, we think that there exists a compelling interest on the part of the State in limiting the disclosure of the aforementioned Use of Force Reports, which responds to protecting the effectiveness of government operations. A contrary course of action would be detrimental to the investigative efforts of the main security agency in Puerto Rico. Indeed, it would hinder effective compliance with the agreements executed with the United States Department of Justice for the Reform of the Puerto Rico Police."

                              Bettina Zeno Gonzalez, Esq.
                          Acting Secretary of the Supreme Court

---

**CERTIFICATION BY TRANSLATOR**

I, MARY JO SMITH-PARÉS, an English-Spanish interpreter certified to that effect by the Administrative Office of the United States Courts, do hereby certify that I have translated from Spanish into English the foregoing documents consisting of  38  pages, including this certification, and that this is a true and accurate translation to the best of my knowledge and ability.

_____                    ___May 26, 2021___
Mary Jo Smith-Parés, USCCI                              Date