

ALEXIS TORRES
SECRETARIO

ANTONIO LÓPEZ FIGUEROA
COMISIONADO

31 de agosto de 2021

**MEMORANDO SOBRE ESTATUS DE CUMPLIMIENTO PERIODO CMR-4**

El Negociado de la Policía de Puerto Rico (NPPR) ha preparado este Memorando, en cumplimiento con la orden emitida por el Honorable Juez Gelpí, el día 25 de agosto de 2021. El propósito del mismo es establecer el estatus de cumplimiento con la implementación del Acuerdo para la Reforma Sostenible de la Policía de Puerto Rico, para el periodo que comprendió el Cuarto Informe de Evaluación del Monitor Federal (CMR-4), entiéndase de octubre de 2020 a abril de 2021.

La mencionada orden requirió que el presente memorando se limitara a las áreas de cumplimiento de Uso de Fuerza, Registros y Allanamientos, Igual Protección y No Discrimen, Querellas Administrativas, Investigaciones Internas y Disciplina.

**I. Uso de Fuerza**

  **A. Plan Piloto del Equipo de Intervención en Crisis (CIT)**

  <u>Marzo 2021</u>

  Este Plan Piloto comenzó el 8 de noviembre de 2019 y culminó el 8 de noviembre de 2020 y está dirigido a capacitar, adiestrar y dotar con las destrezas necesarias a los MNPPR para responder a situaciones de crisis que envuelven a individuos o problemas de salud mental.

  A la fecha de marzo 2021, el NPPR se encuentra en el proceso de planificación para extender el programa CIT a las Áreas Policiacas de Fajardo, Mayagüez y Ponce.

  Se planificaba expandir el Equipo de Intervención en crisis a las trece (13) áreas policiacas en un periodo de dos (2) años.

  <u>Agosto 2021</u>

  Actualmente, el NPPR se encuentra en revisión de la Orden General Capítulo 600 Sección 628 titulada: "Equipo de Intervención en Crisis", y el

 

Manual Operacional de Intervenciones en Crisis. Durante el mes de abril de 2021, las partes del caso de Reforma sostuvieron una reunión en donde se indicó que el periodo de dos (2) años previamente, era muy extenso. Por Instrucciones del Comisionado Antonio López, se modificó para que el periodo de expansión sea de un (1) año.

Actualmente, el NPPR sometió documentación para cualificar para una propuesta federal que, de ser aprobada, otorgará fondos para el desarrollo e implementación del CIT.

El día 9 de agosto de 2021, se publicó para todos los Miembros del Negociado de la Policía de Puerto Rico (MNPPR), una convocatoria con el propósito de reclutar agentes del NPPR para que formen parte del CIT en todas las áreas policiacas de Puerto Rico.

Teniendo esto en cuenta, se estima que el Equipo de Intervención en Crisis se extienda a las demás áreas policiacas en un periodo de un (1) año luego de la firma de la nueva reglamentación y de identificarse los recursos humanos necesarios para su establecimiento.

### B. PPR-126.2 "Tarjeta de Querella"

<u>Marzo 2021</u>

El Monitor indica en el CMR-4, que el NPPR no tiene un mecanismo establecido para los reportes de los incidentes y las estadísticas de uso de fuerza. Además, de esto, el Monitor señala que este problema era continuo durante sus visitas a las unidades del NPPR y que ha sido un problema recurrente identificado en todos los informes anteriores. Este problema se debió a que durante el período de revisión de CMR-4 no se había reemplazado el formulario, PPR-84, con el formulario PPR-126.2, según recomendó el Monitor. El formulario PPR-126.2 contiene dos campos adicionales que son imperativos para garantizar informes precisos sobre el uso de la fuerza.

<u>Agosto 2021</u>

Por instrucciones del Comisionado Antonio López, el pasado 12 de agosto de 2021, se culminó la actualización de la nueva versión del CAD, y ya está accesible en todos los Centros de Mando y retenes del NPPR. Esta actualización facilitará al NPPR recolectar información estadística desde el primer momento en que se notifica un incidente, incluyendo los incidentes de uso de fuerza.



## C. Estadísticas de Uso de Fuerza

<u>Marzo 2021</u>

El Monitor señala hay discrepancia sobre la información estadística de los incidentes de uso de fuerza. En su informe indica que esta discrepancia se debe a que la información proviene de diversas fuentes y unidades. El Monitor recomienda que el Centro de Mando de cada Comandancia de área sea la fuente primaria de información estadística en estos incidentes.

<u>Agosto 2021</u>

Con la implementación del PPR-126.2 "Tarjeta de Querella", en todos los Centros de Mando de las trece (13) áreas policiacas, el NPPR estará en mejor posición para brindar estadísticas de incidentes de uso de fuerza, de forma confiable, y poder cumplir de forma sostenible con los requerimientos del Acuerdo.

Además, se revisó la Orden General Capítulo 600 Sección 605 titulada: "Informe de Investigación de Incidentes de Uso de Fuerza", la misma fue aprobada y firmada, y tendrá vigencia del día 31 de agosto de 2021. Para atender el asunto señalado por el Monitor, la misma dispone que todo informe de incidente de uso de fuerza (PPR-605.1) se realizará a través del sistema GTE. Esto permitirá que la información recopilada y las estadísticas de uso de fuerza sean confiables.

## D. Documentación de Incidentes de Uso de Fuerza en Manifestaciones Multitudinarias

<u>Marzo 2021</u>

El Monitor y el Departamento de Justicia de Estados Unidos (USDOJ) señalaron que el NPPR debía modificar la forma en que notificaba los usos de fuerza realizados por las escuadras de las Divisiones Tácticas Especializadas, en las manifestaciones multitudinarias. El Monitor indica en el CMR-4 que el NPPR debe revisar la práctica de permitir a los supervisores preparar un informe general de uso de la fuerza (PPR-605.1) para usos múltiples de fuerza menos letal en una manifestación y/o protesta.

<u>Agosto 2021</u>

Se revisó por las partes la Orden General Capítulo 600 Sección 620 titulada: "Armas Especializadas de la Divisiones Tácticas Especializadas (DTE)", la misma fue firmada y tendrá efectividad el día 31 de agosto de 2021.



En esta Orden General se modificó el lenguaje para atender lo señalado por el Monitor. La misma dispone que los informes de uso de fuerza grupales estarán autorizados solamente cuando una multitud está expuesta a gases lacrimógenos como parte de una orden de dispersión válida del Líder de Escuadra y/o Supervisor que autoriza el uso de estos agentes químicos y, además, solo dentro del mismo tiempo y lugar de la orden de dispersión. En los casos donde los Jefes de Operaciones, Oficiales o el Comandante de Incidente que autoricen la utilización de la fuerza para controlar o manejar un disturbio o multitud mediante los gases lacrimógenos, tendrán que cumplimentar el formulario PPR-605.1.

**E. Divisiones Tácticas Especializadas (DTE)**

Marzo 2021

El Monitor señala que el NPPR no tiene un sistema para monitorear los despliegues y activaciones de las Divisiones Tácticas Especializadas.

Agosto 2021

Por Instrucciones del Comisionado Antonio López, se ha comenzado con el desarrollo de los formularios de las DTE, a través de la Plataforma GTE, que serán utilizados para monitorear los despliegues y activaciones de las DTE.

**F. Información Pública de Incidentes de Uso de Fuerza**

Marzo 2021

El Monitor señala que no se están publicando las estadísticas de incidentes de uso de fuerza.

Agosto 2021

El NPPR ordenó a desarrollar un *dashboard* que permitirá publicar las estadísticas de incidentes de uso de fuerza a tiempo real. Una vez este *dashboard* sea creado, se notificará a las partes para su evaluación y posterior publicación en la página web del NPPR.



## II.     Registros y Allanamientos

### A. Porcentaje de Allanamientos Negativos

<u>Marzo 2021</u>

El Monitor manifestó su preocupación con el alto número de allanamientos diligenciados con resultados negativos.

<u>Agosto 2021</u>

El asunto de los allanamientos negativos está fuera del control del NPPR. De los expedientes evaluados por el Monitor se puede observar una cantidad de allanamientos negativos que surgen luego de haber obtenido el consentimiento de la persona o posterior al olfato de un Can, es muy común que estos sean negativos en estas circunstancias. Además, es de conocimiento que las organizaciones criminales constantemente mueven el material delictivo de un lugar a otro con el propósito de eludir a las autoridades, lo que puede ocasionar que en el momento del diligenciamiento el material delictivo fuese transportado a otro lugar. Cabe señalar que el estándar de causa probable para obtener las órdenes de allanamiento en los expedientes evaluados por el Monitor, cumplen con los requerimientos del Acuerdo, asimismo lo señaló el Monitor en su Informe.

### B. Evaluaciones de Supervisores de Registros y Allanamientos

<u>Marzo 2021</u>

El Monitor señala que existe deficiencia por parte de los supervisores al momento de revisar los motivos fundados para realizar arrestos, registros y allanamientos, utilizando el formulario PPR-615.8 "Evaluación de Arresto".

<u>Agosto 2021</u>

Actualmente, el NPPR está creando un formulario con el propósito de evaluar el desempeño de los supervisores, en su evaluación de motivos fundados para arrestos, registros y allanamientos.  Este formulario será compartido con las partes del caso de Reforma.

Además de esto, hemos revisado la Orden General Capítulo 600 Sección 615 titulada "Arrestos y Citaciones", con el propósito de aclarar las responsabilidades de los supervisores al momento de evaluar un arresto.



### C. Detenciones Investigativas "Terry Stops"

<u>Marzo 2021</u>

El Monitor indica que el NPPR no tiene un sistema para documentar y recolectar información sobre las detenciones investigativas, en cumplimiento con el Acuerdo.

<u>Agosto 2021</u>

Actualmente, las detenciones investigativas están prohibidas en el ordenamiento jurídico puertorriqueño. El NPPR estará en conversación con el USDOJ para desarrollar un plan a seguir para modificar los párrafos 60-64 del Acuerdo, y lograr que el NPPR pueda cumplir con los requerimientos del mismo.

### D. Arrestos

<u>Marzo 2021</u>

El Monitor señala en el CMR-4 que recibió para su evaluación expedientes de arrestos incompletos, ya que le faltaban documentos.

<u>Agosto 2021</u>

Realizando una evaluación de los expedientes enviados, entendemos que la mayoría de estos están completos, y que no todos los expedientes requieren exactamente los mismos documentos. No obstante, en la revisión de la mencionada OG-615, incluimos un formulario PPR-615.11 "Hoja de Cotejo Expediente de Arresto". El mismo fue diseñado para atender el señalamiento del Monitor, y que pueda haber un desglose de los documentos que debe contener un expediente de arresto, según las circunstancias de cada caso. Se hace la salvedad en la misma Orden General, que los documentos habidos en el expediente de arresto pueden variar, según las circunstancias del caso y el delito que motivó el arresto.



### E. Lenguaje Estereotipado en los Informes de Arrestos y evaluaciones de los supervisores

<u>Marzo 2021</u>

El Monitor señala que los MNPPR no documentan de forma correcta los motivos fundados en los informes de arresto, y los supervisores continuamente firman estos informes defectuosos.

<u>Agosto 2021</u>

Se estará revisando el material de adiestramiento de arrestos y citaciones, al igual que la OG-615, para incorporar instrucciones específicas de cómo evitar el lenguaje estereotipado en los informes policiacos. Además de esto, el NPPR se encuentra evaluando posibles cursos de acción para modificar los adiestramientos a los supervisores, para que evalúen propiamente los motivos fundados de los arrestos, según las políticas del NPPR, utilizando el formulario PPR-615.8.

## III. Igual Protección y Discrimen

### A. NIBRS

<u>Marzo 2021</u>

El Monitor señala que el NPPR debe desarrollar la capacidad de cumplimiento de NIBRS desde la política hasta su implementación. Indica, además, que el NPPR no ha proporcionado evidencia de que haya respondido de manera demostrable a implementar NIBRS.

<u>Agosto 2021</u>

Se está revisando la Orden General Capítulo 600 Sección 621 titulada: "Manejo de los Informes de Incidentes o Servicios Policiacos", el *Manual para el Manejo de los Informes de Incidentes o Servicios Policiacos* (Edición NIBRS 2018), y el formulario PPR-621.1 "Informe de Incidentes". Estos documentos serán sometidos al FBI para que certifiquen el cumplimiento con las normativas federales.



## B. Crímenes de Odio

<u>Marzo 2021</u>

El Monitor señala que el NPPR indicó que no hizo referidos de crímenes de odio a las autoridades federales, a pesar de que el Monitor tiene información de que varios crímenes de odio se han reportado por diferentes medios.

<u>Agosto 2021</u>

Por instrucciones del Comisionado Antonio López, se estará velando estrictamente con el cumplimiento de la Orden General Capítulo 600 Sección 630 titulada: "Identificación e Investigación de Crímenes de Odio", y el Manual para la Identificación e Investigación de Crímenes de Odio. Además de esto, se desarrolló el Módulo de Crímenes de Odio, que actualmente está en uso.

## C. Violencia de Género

<u>Marzo 2021</u>

El Monitor indica que el NPPR no puede detener la agresión sexual o la violencia doméstica. Sin embargo, el NPPR tiene un papel significativo para priorizar el tema de la violencia contra la mujer. En respuesta, el NPPR puede proporcionar información actualizada y apoyar programas de promoción, lo que transmite un mensaje vital a cualquier persona que esté sufriendo violencia.

<u>Agosto 2021</u>

Actualmente, el NPPR se encuentra revisando las políticas de estructura sobre las unidades dentro del NPPR que atienden este tipo de incidentes. Hemos creado la Unidad de Violencia de Género. Esta tendrá la responsabilidad de atender de manera prioritaria la investigación y procesamiento de los delitos perpetrados contra mujeres o violencia de género. La Oficina mantendrá comunicación, coordinación y estrecha colaboración con el Coordinador del CIC a nivel central para la búsqueda e integración de estrategias y activación del equipo de respuesta en caso de crímenes basados en el género.

Además, estamos desarrollando el *Protocolo de Investigación de Muertes Violentas de Mujeres por Razón de Género*, que no sólo brinda guías claras y precisas de los procesos de investigación y esclarecimientos de las



muertes violentas de mujeres, sino que integra y hace participe al Departamento de Justicia de Puerto Rico, el Instituto de Estadísticas y el Instituto de Ciencias Forenses dentro de sus respectivas funciones, en la investigación y procesamiento penal de los delitos que comprenden la muerte violenta de mujeres por razón de género.

La Unidad contará con la Sección de Alertas, la cual atenderá de conformidad a los Protocolos y Reglamentos promovidos por el Negociado de la Policía, las alertas Rosa, Amber, Silver, Mayra Elías y Ashanti.

Además, se estableció el Centro de Operaciones y Procesamiento de Órdenes de Protección (COPOP), creado al amparo de la Ley de Archivo Electrónico de Órdenes de Protección, Ley Núm. 420-2000.

El propósito del COPOP es centralizar y estructurar el procesamiento de las órdenes de protección para lograr fácil acceso de la información a todo el componente de seguridad, manteniendo la información actualizada y segura. El mismo es un centro de operación con una estructura tecnológica robusta donde se centraliza la asistencia de seguridad a los peticionarios de órdenes de protección, dándole respuesta rápida, unificada y efectiva.

### D. Línea Confidencial de Ayuda a Víctimas de Abuso Sexual y Maltrato a Menores

<u>Marzo 2021</u>

El Monitor indicó que no pudo confirmar la disponibilidad de la Línea Confidencial de Ayuda a Víctimas de Abuso Sexual y Maltrato a Menores, las veinticuatro horas del día, los siete días de la semana (24/7). Indica, además, que no pudo corroborar que los operadores de la línea se encuentren adiestrados en el uso y manejo de esta línea.

<u>Agosto 2021</u>

Esta línea telefónica se encuentra actualmente en operaciones, en uso, y es uno de los primeros recursos para atender y prevenir delitos sexuales y maltrato a menores. Todos los recursos asignados a trabajar como primera respuesta en esta línea telefónica, están adiestrados en delitos sexuales y maltrato a menores, así como en atender las llamadas telefónicas que llegan a través de ella.



**E. Información sobre Inmigración**

<u>Marzo 2021</u>

El Monitor señala que el NPPR debe asegurarse de ofrecer suficiente información sobre las leyes de inmigración a las diferentes comunidades de extranjeros en Puerto Rico.

<u>Agosto 2021</u>

Actualmente, estamos revisando la Orden General Capítulo 600 Sección 626 titulada: "Intervención con Personas Extranjeras". Esta revisión tiene el propósito de mejorar los procedimientos y atender los señalamientos tanto del Monitor, como de las personas que tuvieron la oportunidad de revisar la política. Se incluirá en esta revisión, un anejo sobre orientación a las personas extranjeras que son víctimas de delito y la Visa U, según la ley de Inmigración Federal y el formulario federal de inmigración I-918.

El 26 de mayo de 2021, se realizó una reunión con los Cónsules de diferentes países representantes de las comunidades extranjeras en Puerto Rico. Esta reunión tuvo el propósito de comenzar a estrechar comunicaciones y de fomentar la participación de estas comunidades a los procesos policiacos.

Además de esto, por instrucciones del Comisionado Antonio López, estas reuniones con los Cónsules serán continuas y periódicas. Se compartirán con los Cónsules las políticas del Negociado de la Policía para que las compartan con miembros de su comunidad y puedan emitir las recomendaciones que entiendan necesarias.

Es importante mencionar que se les envió a todos los cónsules la Orden General Capítulo 600 Sección 626 titulada: "Intervención con Personas Extranjeras", vigente, con el propósito de que la publiquen en su página web, ya que nos percatamos que la que tenían publicada era la versión de la política derogada.

El Cuerpo Consular envió el Anejo de la OG 626 con los números telefónicos vigentes, para lograr comunicación con éstos, según la política del NPPR. Este documento será enviado a todos los MNPPR mediante directriz.

Por último, se está desarrollando material informativo, para orientar a las comunidades extranjeras sobre las leyes de inmigración y los derechos que les cobijan en Puerto Rico.



**F. Intervención con Personas Transgénero y Transexuales**

<u>Marzo 2021</u>

El Monitor señala que el NPPR proporcionó evidencia insuficiente de que la política que rige la interacción con personas transgénero o transexuales se ha implementado.

<u>Agosto 2021</u>

Se revisó la Orden General Capítulo 600 Sección 624 titulada: "Intervención con Personas Transgénero y Transexuales". Además de esto, estamos desarrollando material informativo para compartir, sobre los derechos de las personas de la comunidad LGBTIIQ+.

Además de esto, se están modificando los formularios, para que, en la recopilación de información demográfica, se atiendan y respeten las expresiones de género de las personas intervenidas y/o perjudicadas, añadiendo la categoría de No Binario.

**IV. Querellas Administrativas, Investigaciones Internas y Disciplina**

**A. Calidad de Entrevistas**

<u>Marzo 2021</u>

El Monitor indica que los investigadores de la Superintendencia Auxiliar en Responsabilidad Profesional (SARP) necesitan ser readiestrados en técnicas de entrevistas de víctimas y testigos.

Además, el Monitor recomienda que se modifique el currículo de REA114, para permitir un mayor enfoque en la parte práctica de entrevistar personas y menos tiempo dedicado a la teoría.

<u>Agosto 2021</u>

Los adiestramientos de los investigadores de la SARP serán evaluados en cuanto a la necesidad de modificar la parte en donde se le ofrece a los MNPPR técnicas para realizar entrevistas.



B. **Confidencialidad y Privacidad en las Entrevistas**

Marzo 2021

Durante las entrevistas, el Monitor identificó una total falta de privacidad y confidencialidad, debido a la falta de espacio privado para entrevistas disponible para el investigador administrativo.

Agosto 2021

Se le ha solicitado a la SARP que realice un análisis interno sobre las facilidades del NPPR disponibles para realizar las entrevistas de investigaciones administrativas.

C. **Localización de Investigaciones de Asuntos Internos**

Marzo 2021

El Monitor indica que no se han tomado las medidas recomendadas anteriormente con respecto a la preservación de la confidencialidad de las investigaciones penales sobre el personal del NPPR. Específicamente, todos los investigadores criminales entrevistados indicaron que sus oficinas, desde las cuales realizarán sus investigaciones, entrevistas, interrogatorios, entre otros, están ubicadas dentro de las Comandancias del NPPR.

El Monitor recomienda remover asuntos internos de las comandancias de área del NPPR.

Agosto 2021

El NPPR está evaluando el señalamiento del Monitor para buscar alternativas viables, que faciliten al Negociado a garantizar la privacidad en este tipo de investigaciones y a cumplir con los requerimientos del Acuerdo.

D. **Equipo y Recursos**

Marzo 2021

El Monitor también señaló a través de sus entrevistas que los investigadores de Asuntos Internos, en toda la isla, carecen de herramientas esenciales como equipos de vigilancia y vehículos encubiertos con los que realizar la tarea vital de monitorear y documentar las presuntas actividades delictivas de los agentes del NPPR.



Agosto 2021

Se le ha solicitado a la SARP que haga el correspondiente análisis interno para identificar la necesidad de recursos dentro de sus unidades de trabajo conforme al estudio de necesidades del párrafo 13 del Acuerdo.

### E. Querellas Anónimas

Marzo 2021

El Monitor indica que las querellas anónimas no se están investigando con la seriedad adecuada. Indica, además, que tiene serias preocupaciones sobre el trato de las denuncias anónimas sobre irregularidades administrativas y penales que obviamente provienen de fuentes internas.

Agosto 2021

Se está evaluando, en conjunto con la SARP, el Manual del Investigador de la SARP, para verificar si es necesario un cambio a las instrucciones sobre investigaciones sobre querellas anónimas.

### F. Advertencias Garrity

Marzo 2021

El Monitor observó que a menudo se asigna al mismo investigador administrativo para realizar la investigación penal de asuntos internos. Aunque Garrity no requiere que investigadores separados lleven a cabo las investigaciones penales y administrativas, la aplicación práctica de Garrity en la mayoría de las jurisdicciones crea prácticas de investigación separadas y simultáneas, que dividen física y organizativamente a los investigadores internos penales y administrativos.

Agosto 2021

Actualmente, estamos desarrollando el Protocolo de Advertencias Garrity, para atender estas preocupaciones señaladas por el Monitor. Una vez culminado el Protocolo, será enviado a todas las partes del caso de Reforma para la correspondiente evaluación.



## V.     Cumplimiento General

Es importante mencionar que, por instrucciones del Comisionado, se realizó un análisis adecuado de los señalamientos del Monitor en sus informes CMR-1 al CMR-4 para realizar planes de acción afirmativa, y llevar al NPPR al pleno cumplimiento con el acuerdo. Se inició un plan de acción afirmativa en colaboración con la Superintendencia Auxiliar en Responsabilidad Profesional, para atender los señalamientos del Monitor, detallados en los informes CMR-1 hasta el CMR-4. Asimismo, se realizarán planes de acción afirmativa con todas las superintendencias, según los señalamientos que realice el Monitor.

Por último, el Comisionado ha dado instrucciones a todos los componentes del NPPR, para que se continúen con los esfuerzos para cumplir con el Acuerdo y sus once (11) áreas de cumplimiento. Asimismo, hizo énfasis a la Oficina de Reforma, sobre la importancia de trabajar en conjunto y de manera integrada con el Monitor, el Special Master y el USDOJ para lograr el pleno cumplimiento con el Acuerdo.

**f/ Cap. Carlos J. Figueroa Ortolaza 5-23921**
Director
Oficina de Reforma

