**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff; | |
| v. | No. 12-cv-2039 (GAG) |
| COMMONWEALTH OF PUERTO RICO, ET AL., | |
| Defendants. | |

**UNITED STATES' RESPONSE TO PRPB'S MEMORANDUM**
**IN COMPLIANCE WITH ORDER AT DOCKET 1825**

COMES NOW, Plaintiff, the United States of America, in compliance with the Court's Order of August 25, 2021, ECF No. 1825, and respectfully responds to PRPB's Memorandum in Compliance with Order at Docket 1825 (PRPB Memorandum), ECF No. 1830. This Response addresses the Commonwealth's overall status of compliance based on the Monitor's latest compliance assessment and addresses each of the issues discussed by the Commonwealth in its PRPB Memorandum.

**I.     Background**

The Court set a status conference for September 9, 2021, to address the Commonwealth's compliance in six of the eleven areas of the Agreement for the Sustainable Reform of the Puerto Rico Police Department (Agreement). Order, ECF No. 1825 (Aug. 25, 2021).[1] In anticipation of the status conference, the Court instructed the Commonwealth to address its compliance in four areas of the Agreement based on the Monitor's latest compliance assessment, the Fourth

---

[1] A status conference on August 19, 2021, covered an initial set of areas of the Agreement related to training, recruitment, supervision, promotions, information systems, and community engagement. *See* Order, ECF No. 1803 (Aug. 3, 2021).

Court Monitor Report, ECF No. 1791-1 (July 21, 2021).[2]  The Court instructed the United States to respond to the Commonwealth's memorandum by September 7, 2021.  The four areas of the Agreement are: (1) use of force; (2) searches and seizures; (3) equal protection; and (4) civilian complaints, internal investigations, and discipline.  The Court explained that the Parties' views on the current status of compliance will "enable the parties and Court to responsibly evaluate where the Commonwealth stood at the time covered by the Fourth Report and where it stands and is headed in regards to prospective sustainability and compliance." *Id.* at 2.  The Court added that "such frank discussion is intended to provide the utmost level of transparency to the Puerto Rico Police Reform." *Id.*

On August 31, 2021, the Commonwealth filed its PRPB Memorandum assessing specific findings and recommendations in the Fourth Court Monitor Report.  ECF No. 1830.  The PRPB Memorandum covers various sub-issues within the four areas required by the Court.  It also includes a short discussion of current and planned action to address the Monitor's findings and recommendations.

## II.     COMPLIANCE STATUS AND RESPONSE TO PRPB MEMORANDUM

The United States appreciates the opportunity to update the Court on the Commonwealth's accomplishments and continuing challenges based on the Monitor's latest compliance assessment.  The United States also supports the Court's efforts to promote transparency in the reform process.  Institutional change is not easy.  It requires sustained effort by the Commonwealth and new and effective ways of collaborating with the public and a diverse group of stakeholders.  While the Commonwealth has made significant strides since the United

---

[2]  The Fourth Court Monitor Report covers the Commonwealth's compliance with the Agreement from October 2020 to March 2021.

States issued its investigative findings in September 2011, much work remains to demonstrate meaningful improvements in policing practices and officers' interactions with members of the public.  As the United States stated at the August 19, 2021, status conference, sustainable reform not only involves creating new policies and training, it also involves demonstrating progress toward constitutional and effective policing for the residents of Puerto Rico and greater public trust in the Puerto Rico Police Bureau (PRPB).  *See* Agreement ¶¶ 1, 10, ECF No. 60 (July 17, 2013).  The continued collaboration between the Parties, the unencumbered work of the independent Monitor, the public's active participation, and the Court's oversight continue to be necessary to the successful implementation of the Agreement.

The sections that follow address the Commonwealth's overall status of compliance, as set forth in the Fourth Court Monitor Report, and the United States' response to the specific issues discussed in the PRPB Memorandum.

### A. Overall Status of Compliance Reported by the Monitor

In his Fourth Court Monitor Report, the Monitor concludes that the Commonwealth's overall compliance fell for the period covering October 2020 to March 2021, when compared to the period covered in the Second Court Monitor Report from July 2019 to March 2020.[3] Executive Summary, Fourth Court Monitor Rep. at 1, ECF No. 1791-2 (July 21, 2021).  The chart depicting the Commonwealth's compliance levels in each of the Monitor's four compliance reports shows an increase in the number of paragraphs rated in Non-Compliance and a marked decrease in paragraphs rated in Partial and Substantial Compliance in the most recent evaluation

---

[3]   The Monitor compared the results of his Fourth Court Monitor Report with the results of his Second Court Monitor Report, ECF No. 1649 (Dec. 16, 2020), because they covered similar paragraphs of the Agreement.  The Third Court Report, ECF No. 1714 (Mar. 21, 2021), assessed a different set of paragraphs from April to September 2020.

period. *Id.* at 2. The Monitor emphasizes that he "continued to encounter numerous issues with PRPB's capacity to identify, collect, disseminate, and analyze valid data on its performance," including in core areas of the Agreement such as use of force. *Id.* at 1. The Monitor encouraged the Secretary of Public Safety and the PRPB Commissioner to continue striving for "better knowledge management capabilities and practices." *Id.* at 2.

The United States agrees that significant efforts are needed to improve the Commonwealth's data management capabilities, together with the actual implementation of new processes and accountability systems that are required by the Agreement. Much of the implementation work completed by the Commonwealth thus far involves the development of new policies and training, and many of the Monitor's Non- and Partial Compliance ratings reflect the need to implement those policies and training in practice. The level of performance needed to demonstrate that policies and training are being implemented as designed and that they are achieving the intended results for Substantial Compliance is set out in the monitoring methodology, which the Parties, Monitor, and Special Master developed jointly. Because the Commonwealth bears the burden of demonstrating compliance with the Agreement under paragraph 294, the Commonwealth's data systems are essential to the monitoring and compliance process.[4]

The Commonwealth's data capabilities not only serve to demonstrate compliance, they are fundamental to sound decision-making and management, particularly in such a large and

---

[4] Indeed, the Agreement requires that the Commonwealth "collect and maintain all data and records necessary to: (a) document implementation of and compliance with this Agreement, including assisting the [Monitor's] outcome assessments and the data collection and reporting required by this Agreement; (b) perform ongoing performance improvement activities in each of the areas addressed by this Agreement; (c) facilitate and ensure transparency and wide public access to information related to [PRPB] decision making and activities, as permitted by law; and (d) promote officer and civilian safety." Agreement ¶ 219.

complex law enforcement agency as PRPB. With reliable and mature data capabilities, PRPB should be able to identify systemic deficiencies and performance lapses on its own and act to correct these problems even before the Monitor completes his compliance assessments and reports back to the Court and the Parties months after each evaluation period. We view this capability as a hallmark of sustainable reform.

Finally, the United States notes that a potential explanation for the decline in compliance in the Fourth Court Monitor Report compared to the Second Court Monitor Report is that the Monitor's assessments and reports have become better aligned with the terms of the Agreement and the approved monitoring methodology over time.[5] For instance, in earlier reports, we observed that the Monitor rated the completion of a policy as Substantial Compliance when the Agreement requires that the Commonwealth implement the policy in practice, or the Monitor did not use a sufficient sample to determine whether evaluation results were representative of PRPB as a whole. As a result, the Commonwealth's actual compliance with the Agreement may have held steady over this period, even though the Fourth Court Monitor Report appears to show a decline. More recent assessments depict an accurate snapshot of the state of compliance based on the approved monitoring methodology.

**B. Issues Raised in the PRPB Memorandum**

The PRPB Memorandum provides the Commonwealth's assessment of specific findings and recommendations in the Fourth Court Monitor Report in the four areas specified by the Court. We address the Commonwealth's assessments, in turn, below.

---

[5] *See, e.g.*, United States' Motion Submitting its Position on the Commonwealth's Response to the Third Report of the Federal Monitor Filed at Docket 1715 at n. 3, ECF No. 1746 (Apr. 28, 2021) ("[O]verall the United States observed that the draft of the Third Compliance Report was more closely aligned to the approved monitoring methodologies over previous reports, which provides for greater consistency, objectivity, and comparative value in the Monitor's reports.")

1. Use of Force

The Monitor evaluated 34 of 36 paragraphs related to use of force in his Fourth Court Monitor Report. He rated 12 paragraphs in Non-Compliance, 20 paragraphs in Partial Compliance, and two paragraphs in Substantial Compliance.

    a. Pilot Program on Crisis Intervention Teams

The Agreement requires that the Commonwealth improve its response to individuals in behavioral health crisis by creating teams of officers with specialized training in each area (referred to as Crisis Intervention Teams or CIT) and training all officers on basic behavioral health issues. Agreement ¶¶ 56-57. The Monitor found the Commonwealth in Partial Compliance with these requirements. During the evaluation period, PRPB implemented its first-ever CIT program in Arecibo as part of a pilot project. Based on our own observations, the CIT program was well-received by officers who participated in the specialized training. According to the Fourth Court Monitor Report, CIT in Arecibo responded to six incidents involving persons in behavioral health crisis. The Commonwealth reports that it is planning to expand CITs to the remaining twelve police areas within one year of PRPB updating its policies and procedures.

We commend PRPB for initiating its first-ever CIT program in Arecibo. We agree with the Monitor that a thorough evaluation of the pilot project is necessary to document accomplishments and areas needing improvement as the program expands to other areas. PRPB should also document and track its encounters with persons in crisis in all police areas while the CIT program expands. PRPB reported no encounters during the evaluation period outside of the pilot project in Arecibo. However, the Monitor discovered several incidents as part of a separate review of use of force involving calls for service under the Commonwealth's involuntary commitment law that were not reported as relevant encounters. PRPB should be using these

types of data and other information from community stakeholders to identify priority needs as it expands the CIT program. We also agree with the Monitor that additional training is necessary for call takers and dispatchers to support CIT officers in the field.

      b.  Use of Force Data[6]

The Agreement requires that the Commonwealth maintain a "reliable and accurate tracking system" for all uses of force. Agreement ¶ 41. The Monitor has consistently found errors in the Commonwealth's force data since compliance monitoring began in October 2018. This includes force used by specialized tactical units. The Commonwealth's inability to accurately track all uses of force creates other compliance problems because the Monitor is unable to draw representative samples to assess related requirements concerning force investigations and reviews (Paragraphs 36-52) and public reporting of force statistics (Paragraph 41). As a result, the Monitor rated Paragraph 41 and other related paragraphs in Non-Compliance in the Fourth Court Monitor Report.

The Commonwealth reports, and the Monitor has confirmed, that PRPB has recently taken steps to implement new reporting forms to capture force incidents in a consistent manner through the command centers. While this provides a short-term solution, we urge the Commonwealth to provide a more durable solution by expanding its field reporting capability and further integrating its electronic dispatch and record management systems. These improvements will enable PRPB to meet its data tracking obligations more efficiently and assist the Monitor in completing systematic compliance reviews. They will also improve the quality and reliability of force data reported to the public.

---

[6] This topic covers related issues addressed in the PRPB Memorandum, including changes to PRPB's complaint card form, PPR 126.2; force statistics; and public information on use of force.

      c.  Documentation of Uses of Force During Protests

The Monitor identified instances where officers used force against protesters, including use of less lethal impact projectiles, outside of the parameters of a crowd dispersal order. Rather than completing separate force reports for these instances, as required by the Agreement and PRPB policy, officers simply referenced their uses of force as part of a single report on the crowd dispersal order without providing a separate and complete justification for the use of force. This permitted officers to evade close review and investigation by supervisors and force investigators.

As reported in the PRPB Memorandum, the Parties worked with the Monitor following the Fourth Court Monitor Report to amend PRPB's policy on less lethal weapons to require separate reports when force is used outside of the parameters of a crowd dispersal order and to clarify that a single force report is permitted only when chemical agents are used as part of a crowd dispersal order. The United States requests that the Monitor assess the implementation of these updated requirements as part of future compliance reviews. The Monitor should also follow-up on the outcome of investigations into alleged use of excessive force during prior evaluation periods to ensure that the investigations were completed in accordance with the Agreement and PRPB policy.

      d.  Specialized Tactical Units

The Agreement requires that the Commonwealth track the activities and deployment of specialized tactical units in a systematic manner. Agreement ¶ 31. The Monitor reports that a uniform tracking system has not been implemented. In the PRPB Memorandum, the Commonwealth reports that it is developing electronic forms to use as part of its general electronic reporting system to track covered activities by specialized tactical units. The Monitor

should assess whether the development of such forms through the general electronic reporting system will provide the necessary analytical capabilities required by the Agreement.

    2. <u>Searches and Seizures</u>

The Monitor assessed 18 of 22 paragraphs related to searches and seizures in his Fourth Court Monitor Report. He rated 13 paragraphs in Non-Compliance, five paragraphs in Partial Compliance, and zero paragraphs in Substantial Compliance.

    a. Percentage of Negative Searches

The Monitor reported that 187 out of 546 search warrants that were obtained during the evaluation period (or 34%) did not result in a seizure of evidence or an arrest (six of the search warrants were not executed). The Monitor noted that this is a high "failure" rate when compared to cities like Chicago and San Diego, and recommended that PRPB closely monitor this data point to determine whether additional supervision, training, or other corrective action is necessary. In the PRPB Memorandum, the Commonwealth argues that the "failure" rate is out of its control. We agree with the Monitor that, in addition to supervisory review of individual search warrant applications that is required by Paragraph 75 of the Agreement, PRPB should track the number of search warrants that do not result in seized evidence or an arrest as a performance indicator, with the understanding that the data point alone is not dispositive of a performance problem or misconduct. The Monitor's recommendation is consistent with Paragraph 76, which requires tracking of all search warrants; enables PRPB to assess its policy, training, and supervision needs; and assists PRPB in conducting bias evaluations of programs and activities under Paragraph 91.

b. Supervisor Evaluations of Searches and Seizures

The Monitor examined 118 arrest files selected at random during the evaluation period and found that 98 of these files lacked complete documentation, as required by PRPB policy. In some cases, arrest reports failed to state the basis for probable cause. In its PRPB Memorandum, the Commonwealth reports that it is creating a form to evaluate supervisors' review of arrest reports and revising policy to clarify supervisors' responsibilities. The Commonwealth should conduct a thorough assessment of the deficiencies uncovered by the Monitor to determine whether additional corrective action is necessary, including revising officer and supervisor training. The Monitor should also continue to closely evaluate the Commonwealth's compliance with Paragraphs 65-73.

c. Investigatory or *Terry* Stops

The Agreement requires that the Commonwealth develop a system to collect data on all investigatory stops, whether or not they result in arrest or citation. Agreement ¶ 60. The Monitor reported in the Fourth Court Monitor Report that PRPB does not have a tracking system in place for investigatory stops. In its PRPB Memorandum, the Commonwealth indicates that investigatory stops are not authorized by PRPB policy or Commonwealth law and that it is engaged in discussions on a possible modification of the Agreement to reflect the state of Puerto Rico law. During our investigation, we found that PRPB officers conducted stops without probable cause, and the Monitor continues to find problems in arrest files where officers fail to justify the basis for arrests. As we have indicated in the past, even if PRPB prohibits investigatory stops based on reasonable suspicion, it needs to develop a reporting and accountability system to ensure that such stops, in fact, do not occur. Currently, PRPB lacks a

reporting and tracking system to document when stops occur to ensure compliance with PRPB policy and the Agreement.

      d.  Arrests

In the PRPB Memorandum, the Commonwealth disputes the Monitor's finding that 98 of 118 sampled arrest files lacked complete documentation.  The Commonwealth asserts that some of the files have complete documentation.  The Commonwealth also reports that it developed a checklist to audit arrest files to ensure documentation is completed consistently.  We recommend that the Monitor assess the checklist and any other audit tools developed by PRPB to ensure that they are aligned with policy, the Agreement, and the approved monitoring methodologies.

      e.  Canned Language in Arrest Reports and Supervisor Evaluations

In response to the Monitor's finding that officers do not consistently document the basis of an arrest in arrest reports, the Commonwealth indicates that it will review training on arrests to address the use of canned language by officers and ensure that supervisors conduct adequate supervisory reviews.  We recommend that the Commonwealth conduct a through assessment of its arrest procedures to determine whether additional corrective action is necessary.  We also request that the Monitor continue to closely examine this area for compliance, as well as to identify specific incidents of concern for follow-up by PRPB.

    3.  <u>Equal Protection</u>

The Monitor evaluated eight of 21 paragraphs related to equal protection in his Fourth Court Monitor Report.  He rated the eight paragraphs in Non-Compliance.

      a.  National Incident-Based Reporting System (NIBRS)

The Agreement requires PRPB to collect and report crime data using NIBRS.  Agreement ¶ 85.  To be compliant with this obligation, PRPB must have policies, procedures, and forms that

are compliant with NIBRS, train personnel on the proper use of the system, collect data in a NIBRS-compliant records management system, and report the data to the FBI.

The Commonwealth reports that PRPB is revising its policy, manual, and principal incident reporting form. After these are completed, it intends to submit these documents to the FBI for certification. The Commonwealth did not refute the Monitor's findings regarding the lack of training and implementation of NIBRS.

We concur with the Monitor's assessment that PRPB has made little progress to implement NIBRS. The Monitor approved the manual that PRPB is revising back in 2018. PRPB instructors were trained on delivering a NIBRS course since at least the second compliance period ending in March 2020, yet the rank-and-file have not received training. The Monitor should provide specific recommendations on the steps PRPB should take to implement NIBRS, including working with external stakeholders to inform the public about changes in crime data reporting.

      b.  Hate Crimes

The Agreement requires PRPB to collect accurate and reliable data on hate crimes, and report them to the FBI for analysis and publication in the the FBI's Hate Crimes Statistics reports. Agreement ¶ 86. The Monitor found the Commonwealth in Non-Compliance with Paragraph 86 for failing to demonstrate that it had provided compliant trainings or properly investigated hate crimes in order to report them. The Monitor raised questions about PRPB's report of zero hate crimes occurring between October 2020 and March 2021 based on various news reports of violence against members of the LGBT community.

In the PRPB Memorandum, the Commonwealth reports that it will be closely overseeing the implementation of PRPB's policy on hate crimes and that PRPB has developed a new

module to track hate crime cases. The developments reported by the Commonwealth occurred after the evaluation period in the Fourth Court Monitor Report. We request that the Monitor assess the Commonwealth's progress in reporting and investigating hate crimes in the next monitoring report. The Monitor should include an assessment of individual cases to identify areas needing improvement.

c. Gender Violence

The Agreement requires PRPB to improve its response to domestic violence and sexual assault. Agreement ¶ 93. This includes obligations to have individualized trainings for each stage of PRPB's response to these cases, *id.* at ¶¶ 94, 98, special measures for responding when PRPB personnel are implicated in an allegation, *id.* at ¶ 99, proper classification protocols, *id.* at ¶¶ 95, and case tracking, *id.* at ¶¶ 97, 100. The Monitor only assessed Paragraph 93 in the Fourth Court Monitor Report and found it in Non-Compliance. The Monitor indicated that he will review additional paragraphs in his next compliance report.

In the PRPB Memorandum, the Commonwealth discusses several ongoing initiatives to improve PRPB's response to gender-based violence as part of recent changes to Puerto Rico law, an emergency declaration issued by the Governor, and the Agreement. For instance, the Commonwealth reports that PRPB created a new Gender Violence Unit. The Commonwealth also reports that PRPB is working on a new system to track protective orders and collaborating with other Commonwealth agencies on a protocol to investigate deaths of women that may have been motivated by gender-based bias.

Much work remains in this important area to implement reforms and to monitor them for compliance. The United States is contributing to this effort by evaluating training and case investigations involving domestic violence and sexual assault with subject-matter experts. The

United States will be sharing the results of its evaluations with the Monitor and the Commonwealth.

        d.   Confidential Hotline to Assist Victims of Sexual and Child Abuse

The Agreement requires PRPB to operate a dedicated sex crimes hotline 24-hours a day with trained responders. Agreement at ¶ 96. The Monitor reported that he was unable to validate the operation of the hotline due to COVID-related travel restrictions and deferred a compliance rating in the Fourth Court Monitor Report. However, the Monitor reported that PRPB failed to provide proof that hotline personnel are properly trained or evidence that the hotline is staffed 24 hours a day.

The Commonwealth asserts in the PRPB Memorandum that staff who operate the hotline are trained and that the hotline is operational. The United States requests that the Monitor evaluate the Commonwealth's compliance in accordance with the approved monitoring methodology in the next compliance report.

        e.   Immigration Information

As part of the Agreement's remedial measures on equal protection and non-discrimination, the Commonwealth agreed to seek the assistance of community advocates to widely disseminate PRPB's policies on immigration-related laws. Agreement at ¶ 88. The Monitor rated this requirement in Non-Compliance in the Fourth Monitoring Report and reported that PRPB will need to demonstrate that officers are receiving appropriate training.

The Commonwealth lists several actions it has taken since the Fourth Court Monitor Report to disseminate PRPB's policies on immigration-related laws, including meeting with consulates in May 2021 and developing informative bulletins to share with the public. The Commonwealth also reports that PRPB is revising its policies based on feedback from the

Monitor and others to include procedures for certifying when noncitizens cooperate in the investigation of certain crimes for purposes of obtaining special immigration visas. These activities will need to be evaluated by the Monitor as part of his next compliance assessment. PRPB should also expand beyond consular offices to disseminate its immigration-related policies to include the Civilian Interaction Committees, victim advocates, and other community stakeholders.

f. Interventions with Persons who are Transgender and Transsexual

The Agreement requires that PRPB develop and implement a policy to guide officers' interactions with transgender and transsexual individuals. Agreement at ¶ 89. The Monitor reported that PRPB did not produce documentation on relevant training or evidence that a policy is being implemented. Accordingly, the Monitor rated Paragraph 89 in Non-Compliance in the Fourth Court Monitor Report.

The Commonwealth reports in its PRPB Memorandum that PRPB is revising its policy and developing information materials to share with members of the community. It also reports that PRPB is modifying forms to add a nonbinary category to capture data on gender. The Monitor should evaluate these actions in accordance with the Agreement and the approved monitoring methodology in the next compliance report.

4. Civilian Complaints, Internal Investigations, and Discipline

The Monitor evaluated 41 of 46 paragraphs related to civilian complaints, internal investigations, and discipline in his Fourth Court Monitor Report. He rated eight paragraphs in Non-Compliance, 14 paragraphs in Partial Compliance, and 19 paragraphs in Substantial Compliance.

      a. Quality of Interviews

The Agreement requires that PRPB conduct thorough investigations into allegations of officer misconduct and ensure that the findings are consistent with the facts. Agreement ¶ 180. The Monitor rated this requirement in Partial Compliance. The Monitor made several recommendations to address serious deficiencies in the quality of interviews conducted by PRPB investigators. These include improving interview techniques, expanding practical training, and recording interviews. The Monitor also recommended that PRPB cease using questionnaires to interview persons involved in internal complaints of misconduct.

In the PRPB Memorandum, the Commonwealth agrees to review investigator training. The Commonwealth must ensure that internal investigations are adequate and that PRPB investigators are trained properly. The United States intends to follow-up with the Monitor and the Commonwealth to ensure that concrete steps are taken to correct deficiencies.

      b. Confidentiality and Privacy of Interviews

Among the concerns expressed by the Monitor regarding the quality of internal investigations by PRPB is the lack of privacy to interview subjects and witnesses. Interviews are a key tool in the investigation of complaints involving officer misconduct and must be conducted in accordance with generally accepted practices, pursuant to Paragraphs 177, 180, 186, and 194. The Commonwealth reports in the PRPB Memorandum that it has directed the PRPB unit charged with conducting internal investigations to seek appropriate settings for interviews. The Monitor should evaluate these efforts as part of his next monitoring report.

      c. Location of Internal Affairs Investigations

The Monitor continued to express concern in the Fourth Court Monitor Report that PRPB does not preserve the confidentiality of its criminal investigations into officer misconduct

because investigators' offices are located in PRPB buildings. These investigators currently have no alternative locations to receive in-person complaints or conduct interviews, which may discourage complainants or witnesses from cooperating with investigations. The Monitor has recommended that PRPB consider moving these sensitive investigative units to off-site locations. The Commonwealth reports in the PRPB Memorandum that it is evaluating alternative locations to preserve the confidentiality of criminal investigations against officers. The United States agrees with the Monitor's concerns and requests that the Monitor evaluate the Commonwealth's progress in locating alternative locations in the next monitoring report.

        d.   Equipment and Resources

The Agreement requires that the Commonwealth provide sufficient resources and equipment to PRPB investigators to enable them to conduct adequate criminal and administrative investigations into officer misconduct. Agreement ¶ 194. The Monitor rated this requirement in Partial Compliance and reported that PRPB investigators lack basic tools and equipment to conduct sensitive criminal investigations against other officers, such as unmarked vehicles and surveillance equipment. The Commonwealth reports in the PRPB Memorandum that it has directed the PRPB unit charged with conducting internal investigations against officers to assess its personnel and resource needs. The United States requests that the Monitor evaluate the Commonwealth's progress in identifying and addressing these needs in the next monitoring report.

        e.   Anonymous Complaints

The Agreement requires that the Commonwealth accept all misconduct complaints, including anonymous and third-party complaints, for review and investigation. Agreement

¶ 168.  In the Fourth Court Monitor Report, the Monitor expressed "grave concerns" about PRPB's handling of internally-generated, whistleblower complaints, which the Monitor found are "clearly not taken seriously by PRPB."  Fourth Court Monitor Rep. at 113, 120, ECF No. 1791-1 (July 21, 2021).  The Monitor founds several instances where anonymous complaints were misclassified as purely administrative in nature when they involved potential criminal conduct and complaints that were closed administratively "with little or any investigation…" *Id.* at 120.  The Monitor recommended that PRPB further investigate these cases.  The Commonwealth reports in the PRPB Memorandum that PRPB is evaluating whether changes to its investigation procedures manual are necessary.

The United States shares the Monitor's concerns regarding the Commonwealth's handling of anonymous complaints.  The deficiencies uncovered by the Monitor suggest a much deeper problem that requires thorough evaluation and follow-up, beyond identifying changes to a procedures manual. The United States will be working with the Monitor and the Commonwealth to determine the extent of the deficiencies and ensure that corrective action is taken.

      f.   Garrity Warnings

The Agreement includes several requirements regarding the taking of compelled statements in administrative investigations and the development of procedures for parallel criminal and administrative investigations.  Agreement ¶¶ 182-185.  In the Fourth Court Monitor Report, the Monitor found that investigators conducting criminal investigations against officers are often instructed to conduct the administrative investigation of the same allegations once the criminal investigation is complete.  The Monitor also noted that criminal investigators do not have access to the complaint histories of alleged targets of criminal investigations.  These findings indicate that PRPB is not implementing the Agreement, which requires parallel

investigations to take place.  *See* Agreement ¶ 184.  The Commonwealth reports in the PRPB Memorandum that it is developing a protocol on warnings that should be given to officers in connection with the taking of compelled statements.  However, the problems identified by the Monitor extend beyond the taking of compelled statements.  Under Paragraph 185, the Commonwealth must develop protocols on parallel proceedings that guide criminal and administrative investigators on the types of evidence that can be shared and those that cannot, including compelled statements.  The United States requests that the Monitor evaluate the Commonwealth's progress in developing an appropriate parallel proceedings protocol that complies with Paragraphs 182 to 185 in the next monitoring report.

### III.    CONCLUSION

The Commonwealth has continued to make steady progress in the development of policies and training, as required by the Agreement, but is facing limitations in its ability to report on the success of its implementation efforts based, in part, on its limited data capabilities.  The United States agrees with the Monitor's principle recommendation that concerted effort from Commonwealth leadership is necessary to overcome these challenges.  The Monitor also identifies other serious concerns that PRPB must evaluate and correct in accordance with the Agreement.

WHEREFORE, the United States requests respectfully that the Court take notice of the foregoing in compliance with the Court's Order of August 25, 2021, ECF No. 1825.

I HEREBY CERTIFY that on this date I filed the foregoing pleading electronically through the CM/ECF system, which caused the parties, counsel of record, the Special Master, and the Monitor on the service list to be served by electronic means.

Respectfully submitted, this 7th day of September, 2021,

        **STEVEN H. ROSENBAUM**
        Chief, Special Litigation Section
        Civil Rights Division

        *s/ Luis E. Saucedo*
        **TIMOTHY D. MYGATT**
        Deputy Chief
        **LUIS E. SAUCEDO** (G01613)
        **JORGE CASTILLO** (G02912)
        Trial Attorneys
        U.S. Department of Justice
        Special Litigation Section
        Civil Rights Division
        950 Pennsylvania Avenue, NW
        Washington, DC 20530
        Tel:  (202) 598-0482
        Fax:  (202) 514-4883
        luis.e.saucedo@usdoj.gov
        jorge.castillo@usdoj.gov

        Attorneys for the United States