

# FPM Review of Documents Submitted by PRPB February 10th

The following outlines the comments provided by the Monitor's Office on the documents submitted by PRPB on February 10, 2022. Specifically, commentary on the following topics are provided:

- Use of Force Work Plan
- CIT Evaluation
- Recruitment (Law 65-201; Recruitment Modules)
- Supervision (V2A study; Career Path; Promotions)
- IT
- Budget
- NIBRS

## Use of Force Work Plan

The Monitor's Office appreciates the time and effort that PRPB took to develop the submitted work plan. The Work Plan outlines the short-, mid-, and long-term resolutions to capturing reliable use of force data.

The Monitor encourages PRPB to consider the sustainability of its long-term solution. Although PRPB indicates within the draft plan it will use the SMART model to provide specific, measurable steps, but these details are missing for the long-term solution. Further, as recommended during the February 11, 2022 biweekly meeting, suggests that PRPB consider integrating the data obtained in 126.2, 605.1, and 605.3 into one singular process or continuum of data. The interface within GTE in which use of force data is entered should operate as one "form." The use of 3 separate forms (or two for that matter) into the GTE present more opportunities for the breakdown of the processes and corruption of the data. Further, the Monitor's Office understands PRPB's continued concerns over the limited resources and staffing and notes that the processes noted within the draft work plan may result in unnecessary duplication of effort. Moving away from entering data into "forms" and shifting towards an integrated process will streamline the use of force reporting and data collection efforts. For example, the system should preclude an officer from completing 605.1 if no use of force is indicated within 126.2. The system should also allow the officer or his/her supervisor to go back and correct 126.2 to indicate whether force was used. Further, these adjustments will also assist PRPB in ensuring that it is able to accurately and efficiently produce the data necessary for the Outcomes Assessments required by paragraph 243.

Timelines for each of the Phases as well as whether the Bureau will conduct any tests throughout to ensure that the temporary and long-term solutions are in fact working should also be included as part of the plan.

Office of the Technical Compliance Advisor Puerto Rico
VIG Tower, PH – 924
1225 Ave. Juan Ponce de Leon
San Juan, PR 00907
787-417-9098

Page **1** of **5**

The identification of a Project Manager is a good step forward, the Monitor's Office encourages that PRPB also assign a Project Manager within IT to this assignment. The operational manager (Agent Yeosu's H. González Ramos) should be responsible for coordinating and overseeing the development the operational processes needed to resolve these issues and the technical manager (a representative from IT) should be responsible for coordinating and overseeing the development of the technologies, systems, processes, and equipment to ensure that the data collection and interfaces assist effective and efficient operational practices.

The following provides specific comments on the draft work plan:

- Phase I:
    - The burden and ownership of correcting the data should be placed on the officer's supervisor and not on the Director of Technology and Communications and the developer. Although the plan refers to responsibilities of the field supervisor in validating information within the use of force forms, it doesn't do so until Phase III. Developing a culture of increased accountability is necessary for sustainable reform. Even if this is the short-term resolution, the accountability for ensuring that the reports completed by an officer are accurate should fall on that officer's supervisor and/or his chain of command. These reviews should also be completed before end of shift.
    - If the supervisor is not able to access and update the 126.2 at this phase, then the Area Commander or his/her designee/Area Command UOF coordinator should then be responsible for updating, correcting, reviewing 126.2.
    - The Area Command Use of Force Coordinator is not currently an official position/role within the PRPB. PRPB should consider instituting this position/role in each of the Area Commands.
    - The persons(s) interviewing staff who did not complete the form 126.2 should be identified in this plan.
    - The plan calls for the Director of Technology and Communications, Captain Figueroa, and project manager to be notified daily that information in PPR 126.2 is consistent with the information in the GTE system. This should be tasked to the Area Command where the force took place.
- Phase II (and Section III, 1 &2):
    - The burden to correct the use of force data, as noted above, continues to fall on the IT Bureau. The Monitor's Office recommends placing the accountability back on the area command/area command use of force coordinator/supervisor.
    - This intermediary step seems unnecessary and like Phase I appears to create additional and unnecessary work for the entities/stakeholders involved. The Monitor encourages PRPB utilize its resources and time to develop and test the long-term solution.
- Phase III:
    - The role of the Data analyst seems unclear. Their primary purpose seems to be validating the data, when the system and processes institutionalized could serve this purpose. In this instance data analysts would be better served assisting the Bureau and Area Command Use of Force Coordinators in periodically analyzing and synthesizing the data to inform operations, policy, and training. Monthly and annual reporting of uses of force needs to be expanded to improve its comprehensiveness and doing so will also

- ensure that PRPB is more able to respond to the data requirements of the Outcomes Assessments (paragraph 243).
- AWG Use of Force
  - The diagram is rather difficult to follow and further illustrates the underlying concern noted by the Monitor's Office, which is that the proposed solutions, especially in the short term, present numerous opportunities for breakdown and corruption of the data.

## CIT Evaluation

The Monitor's Office appreciates the initiative by PRPB to formulate a CIT Evaluation Committee. The documents submitted by PRPB on its evaluation of CIT included a draft (dated January 2022) of the first evaluation conducted by PRPB on the CIT pilot in Arecibo, a memo documenting the CIT evaluation committee members, a letter (dated May 19, 2021) documenting feedback gathered during a focus group meeting with the CIT team in Arecibo. The final document provided is a letter dated, January 31, 2020, documenting the various aspects of the CIT pilot conducted in Arecibo.

The following are the Monitor's Office comments on these documents as well as other considerations for PRPB to review as it continues to develop the evaluation plan of the CIT pilot:

- As PRPB noted during the January 14, 2022 Status Conference hearing, the draft evaluation only provides a documentation of the interventions/calls conducted by the CIT team during the Pilot. The revised evaluation should provide a comparative analysis of data before and after the pilot program. Data such as officer injuries, suspect injuries, outcomes/resolutions of the incident, whether medical assistance was required should also be included in this evaluation.
- The Monitor concurs with USDOJ that the evaluation committee should also include external stakeholders such as a representative from a mental health service provider that works in Arecibo as well as a representative from the state public health system for mental health needs.

## Recruitment

The Monitor reviewed the commentary provided by PRPB within the cover letter submitted on February 10th. The following are comments from the Monitor's Office on each of the documents provided under this topic area.

### Law 65-2021

As it relates to Law 65-2021, the Monitor reviewed the information provided and recommends that PRPB establish a plan to move forward with the efforts related to this Law. Even if no short-term changes are expected to be made, the Monitor stresses the importance of formally establishing a strategy/plan (also required by the Court as stated during the January 14, 2022 Status Conference), with proposed implementation phases annotating the changes and steps noted within the cover letter. Items such as the formation of a committee/working group, its roles and objectives, targeted timeline, the impact of this change on other departments/units within the Bureau, and tasks/activities associated with developing courses or seeking input and certification from local universities should be outlined within this plan. It is understood that the plan would be a living document and may evolve as PRPB and its stakeholders move through the process. The Monitor's Office further concurs with the USDOJ that this plan should include a statement of commitment that PRPB will provide the Parties a draft regulation for review, an explanation that as part of the regulation PRPB is not going to allow anyone without an

associate's degree work as an officer, as well as a list of potential higher education institutions it is planning on working with.

### Recruitment modules

The Monitor reviewed the materials related to the Recruitment modules for the Applicant, Examiner, and Scheduler. The Monitor has the following comments and questions:

- What is the status of these modules? Are they operational?
- Who is the "owner" of these modules? Is this person/unit also in charge of periodically reviewing and producing the statistical reports produced by the modules?
- Who was involved in the design and development of these modules?
- Are these modules integrated with other modules/systems/programs (i.e., FTO program, performance evaluations, officer's personnel file)?
- Have these modules been tested by the operational staff and recruits?
- Do these modules allow PRPB to analyze the various points in the application process that in which candidates are dropping from the program? This data can be helpful to inform whether adjustments need to be made to recruitment efforts and/or the application process to address potential unintended issues in recruitment of marginalized populations.

## Supervision

PRPB provided documents and materials related to the V2A study, draft general order OG-213 on the Career path, and promotions. The Monitor has reviewed these documents and recommends PRPB develop a comprehensive plan that outlines these below efforts in a comprehensive manner, while also noting how each of the items below seeks to address the issues raised by the Monitor's Office during the January 14th Status Conference and in previous monitoring reports.

### V2A/Staffing Study

While the project plan provided outlines the timelines for the tasks associated with Interboro's work, the Monitor's Office would also appreciate additional detail on this project. Details such as the objectives of the pilot in San Juan and the data sources used to conduct the staffing analysis (i.e., focus groups, CAD data, response times) would be helpful to the further the Monitor's understanding of Interboro's work and its compliment to V2A's study and PRPB's 2018 Staffing plan. The comprehensive plan for supervision should also indicate what initiatives from the 2018 staffing plan are part of the proposed solution, i.e., Program Management, Civilianization, Redistribution of police stations and investigative units.

### OG 213 Programa de Desarrollo de Carrera Profesional

The Monitor looks forward to receiving and reviewing the General Order as part of paragraph 229.

### Promotions

The Monitor has reviewed the material provided and recommends that PRPB include this detail in the comprehensive plan it develops and delivers to the Court on February 28th. The Monitor's Office looks forward to working with PRPB in the review of the related promotional exams and other related materials.

### Information Systems and Technology

The Monitor acknowledges receipt of the documents provided and has no additional comments on the certification and purchase orders provided. The Monitor will confirm the status of these items during the next site visit while also confirming PRPB claims regarding the following: NIBRS revisions, the Staffing module, Recruitment Module and Budget Module.

And as noted during the January 14th Status Conference and again in meetings on the 16th and 17th of February, the Monitor urges PRPB to immediately develop a "plan for a Plan" before 28 February 2022 to outline PRPB's necessary actions to develop a comprehensive IT Action by 30 June. In furtherance of delivering against that timeline, the monitors office participated in the aforementioned meetings and echoed our stated positions that were provided in our memorandum submitted to the Parties on February 1, 2022.  Additionally, the IT Monitor recommended in accordance with widely accepted "Best Practices" for IT management that in it's plan, PRPB should at minimum include schedules, costs, critical success factors, estimated risks and mitigations, accountable organizations and individuals, alignment with mission needs, obstacles, dependencies, assumptions, roles & responsibilities, assignment of critical, essential and non- essentials systems and applications, phases and priorities.  The plan should also address governance and oversight guidelines, the completion of an IT GAP Analysis, requirements assessment and acquisition of needed experts

### Budget

The Monitor's Office has reviewed the information provided. Additional information regarding the funds spent and unused in FY2018 should also be provided. Further, PRPB should also provide in a clear format, the amount of unused funds for each fiscal year since 2018. In line with the information requested at the January 14th Status Conference, this will provide a more accurate representation of the unspent funds for reform that may be carried over from previous years.

### NIBRS Certification

Thank you for providing an update on this process. As was noted during the January 14th Status Conference, please provide to us a copy of the submission to the FBI as well as a copy of the certificate when available. The Monitor's Office would also like to request the planned next steps in this process, i.e., will additional personnel be trained?