**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | CIVIL NO. 12-2039 (FAB) |
| **COMMONWEALTH OF PUERTO RICO,** et al., | |
| Defendants. | |

<u>**Responsive Motion to the Court's Order That the
Office of the Special Master Assess
the Puerto Rico Police Bureau Reform Office**</u>

NOW COMES Special Master Dr. Alejandro del Carmen in response to the order of the Court in Docket No. 2036, dated May 23, 2022, in which the Court directed the Office of the Special Master (OSM) to assess the Puerto Rico Police Bureau Reform Office (PRPB Reform Office) staffing levels, resources, and overall construct, and to report its findings and recommendations to the Court by September 16, 2022 (extended from the original due date of on July 22, 2022, at Order No. 2097 dated July 19, 2022).  This motion was previously provided to the parties and the Monitoring Team in draft form and incorporates their recommendations.

## History and Background of the PRPB Reform Office

The initial description of the construct of the PRPB Reform Office was included in the original Agreement for the Sustainable Reform of the Puerto Rico Police Department, dated July 17, 2013 (see Docket No. 57-1) ("Agreement") at paragraphs 231 through 233 at section XIV. C. Development, Implementation, and Assessment of Action Plans:

231. PRPD shall hire and retain qualified employees, or reassign qualified current PRPD employees, to strengthen PRPD's Reform Unit, which shall be an interdisciplinary and multi-rank unit with the skills and abilities necessary to plan for and facilitate implementation of this Agreement. The Reform Unit shall serve as the source of reform within PRPD, and PRPD shall ensure that members of the Reform Unit receive all necessary training and resources to successfully complete their tasks.  This unit also shall serve as the liaison between the Parties, the TCA, and the CICs, and will assist with PRPD's implementation of and compliance with this Agreement.

232. At a minimum, the Reform Unit will coordinate PRPD's compliance and implementation activities; facilitate the

provision of data, documents, materials, and access to
Commonwealth of Puerto Rico and PRPD officials or employees
to the TCA, CICs, and DOJ, as needed, in accordance with
the terms of this Agreement; ensure that all data,
documents and records are maintained as provided in this
Agreement; and assist in assigning implementation and
compliance related tasks to PRPD personnel, as directed by
the Superintendent or his or her designee.

233. The Reform Unit shall include at least one PRPD
supervisor who reports directly to the Superintendent.
PRPD shall inform the TCA and DOJ of any changes to Reform
Unit staff, including suspensions, reassignments, and
dismissals of personnel.  The Superintendent may designate
PRPD personnel, including members of the Reform Unit, and
external resources, which are in his professional judgment
critical to the successful implementation of this Agreement
and the comprehensive reform of PRPD.  The Commonwealth and
PRPD shall make their best efforts to retain such personnel
and resources to ensure continuity of effort and successful
implementation.

Nearly two years later, on April 15th, 2015, the PRPB
issued a General Order (General Order) titled "CREACIÓN Y

ORGANIZACIÓN FUNCIONAL DE LA OFICINA DE REFORMA" (Chapter 100, Section 111) creating the Reform Office which would report directly to the Office of the Superintendent.  The General Order made reference to the investigation conducted by the U.S. Department of Justice and the Agreement that resulted from that investigation and the 11 specific compliance areas.  The order established the positions of Director and Assistant Director of the Reform Office and specifically indicated the Reform Office would be organized into sections corresponding to the 11 compliance areas: Professionalization; Use of Force; Searches and Seizures; Equal Protection and Non-Discrimination; Recruitment, Selection and Hiring; Policies and Procedures; Training; Supervision and Management; Civilian Complaints, Internal Investigations and Discipline, Community Engagement and Public Information; and Information Systems and Technology. That is, the six sections below would encompass the specific 11 compliance areas.

Those sections were identified as:

- The Implementation and Compliance Section.

- The Policies and Procedures Section.

- The Community Interaction Section.

- The Section on Efficiencies of Systems and Management Processes.

- The Professional Development Section.

The order indicated the Director of the Reform Office would request "necessary staffing" but did not specify the number of staff to be assigned to the Reform Office.  In addition to staffing organic to the Reform Office, the order stated two external sources of ongoing support to the Reform Office:

- PRPB will hire the services of a firm of auditors to supervise, under the laws of Puerto Rico, the transactions of funds and public property to determine whether the transactions have been made in accordance with the laws governing the fiscal affairs of the Commonwealth and to ensure the efficient and effective use of the Agency's resources.  The contracted auditing firm will report directly to the Superintendent (Section III.c.).

- Each Assistant Superintendent, Area Commander, Office, District, or Precinct Director shall be responsible for providing, without objection or delay, all information, documents, or resources as may be requested by the Reform Office (Section III.g.).

On April 10, 2017, the Commonwealth passed Act No. 20 of 2017 (the Act). That law created the Department of Public Safety and redefined the independent Puerto Rico Police Department into one of seven Bureaus under "the administration and immediate supervision" of DSP (§ 2.02 of the Act) and reiterated that the Commissioner of PRPB had the duty "to ensure compliance with the Police Reform Agreement" (§ 2.04(b) of the Act).

Significantly, on February 17, 2022, Puerto Rico Governor Pedro R. Pierluisi, issued an executive order reorganizing the overall executive management of the Reform by the Commonwealth. The order stated the following:

> I appoint the Secretary of DPS, as his official representative in all matters concerning the police reform case, to exercise all powers, administrative and supervisory as per [relevant laws of Puerto Rico]. The Secretary will coordinate the efforts for the completion of the Reform with the PRPB Commissioner, steadfast and within the parameters of supervision and collaboration.

The order described the chronological progress of the Reform and noted that the Reform had reached a crucial stage in which it was urgent to provide all possible support to the reform of the PRPB, and that the Reform being directly managed by the Department of Public Safety (DPS) would more quickly lead to the required level of compliance.

## **Methodology**

The OSM has requested and received documents related to the history and organization of the PRPB Reform Office and has conducted interviews with relevant individuals with knowledge of, and experience with, the PRPB Reform Office. Some of these individuals work in the Reform Office and have experienced its evolution throughout the years. The OSM conducted interviews of PRPB personnel ranging from the lowest non-supervisory employees through, and including, the PRPB Commissioner. The leadership of the Monitoring Team was interviewed along with a few of the subject matter experts. Further, attorneys representing the USDOJ Civil Rights Division (plaintiffs in this case) were also interviewed. The entire executive management team of DPS that has any nexus to the PRPB Reform Office was interviewed, to include the Secretary. Additionally, representatives in numerous other Federal Consent Decrees across the country were

interviewed at length regarding their respective reform offices organic to their defendant police departments.  The focus of the OSM during these interviews was to identify best practices and common errors across the country on the structure of reform offices, their function, limitations, and strengths, along with their ability to obtain data and relevant information for the monitors.

**Results of the Assessment and Finding of the OSM**

1. **The staffing of the PRPB Reform Office is inadequate and inconsistent with the founding General Order.**  The current Director of the PRPB Reform Office is Captain Carlos J. Figueroa Ortolaza. He replaced Lieutenant Colonel Alba Iris Díaz Torres in April 2021. There is no Assistant Director of the Reform Office as mandated by the founding General Order.  The PRPB Reform Office is located in the headquarters building of the PRPB in San Juan and has approximately 20 uniformed personnel staff members with rotating cadets to support office duties.  Approximately six staff members are Lieutenants, five are Sergeants, and seven are non-supervisory agents.  The PRPB Reform Office also has three internal legal advisors. Members of the PRPB Reform Office remarked that there has been a significant

loss of personnel in the PRPB Reform Office since the period of capacity building despite the growth of responsibilities and duties to provide information and data to the Monitoring Team.

While generally consistent with the Agreement, the PRPB Reform Office is grossly understaffed.  Literally everyone interviewed by the OSM with knowledge of the day-to-day information request and response process indicated it needed significant enhancements to its personnel.  The PRPB Reform Office management indicated the number of staff should be at least doubled.  For comparison, the Chicago Police Department which is comparable in size to the PRPB with a Consent Decree addressing fewer issues, staffs their reform office with over 200 personnel, and another 600 throughout the department are identified as having supporting roles.

An aspect of the PRPB Reform Office which is unique compared to other reform offices in police departments under similar Consent Decrees is that nearly all assigned personnel are sworn, uniformed officers.  In other consent decrees across the country, reform offices - particularly in leadership roles - are staffed by non-sworn managers

with demonstrated skill in project management.  Most of
these civilian managers have no prior law enforcement
experience but have extensive experience in leading and
managing complex and sensitive organizational and cultural
change.

The requirement established in the founding General Order
that a firm of outside auditors be retained to supervise
and provide oversight of the financial expenditures of the
PRPB Reform Office has never been implemented.  While
germane to this assessment, it noted that this issue is
currently being thoroughly addressed by the Court (see
Order at docket 2112).

2. **The assignments of staff members in the PRPB Reform Office
   are not focused.**  Reform Office staff are not individually
   or specifically assigned to the 11 specific compliance
   areas defined in the Agreement and noted in the founding
   General Order.  There is no mention of the six sections
   defined in the General Order in the current organization of
   the PRPB Reform Office.  Because of the limited number of
   personnel assigned to the Reform Office, management, and
   data collection in the 11 compliance areas of the Agreement
   are randomly assigned to six members of the PRPB Reform

Office.  This creates a lack of ownership among staff members, does not allow them to develop expertise on specific topics, and does not encourage staff members to develop relationships with specific PRPB personnel in the field to facilitate information flow and execute policy change implementation.

Significantly, there are only approximately six staff members in the PRPB Reform Office tasked with interacting with the Monitoring Team to provide the information requested for the recurring Chief Monitor's Reports (CMR). Again, there is nothing in the current construct that reflects tailored assignments to the 11 compliance areas and six sections as defined in the founding General Order. Data requests, policy development and directives regarding training are randomly assigned to staff members of the PRPB Reform Office.  Further, no members of the PRPB Reform Office go out to the field (on a regular basis), and there are no designated points of contact with respect to the Reform in the 13 field precincts.

The OSM observed in its interaction with consent decrees across the country that virtually every current reform office in police departments under consent decree have

assigned personnel levels that allow the specific
assignment of adequate staffing to each identified
compliance area.  Typically, those reform offices have a
supervisor responsible for each compliance area with a team
who are personally responsible and accountable for the
management of compliance in that area(s).  Those
individuals then routinely interact with department
personnel outside the reform who are identified
specifically as points of contact for those reform office
compliance area teams.  This provides defined pipelines
throughout those departments to facilitate the work of
those reform offices and establishes responsibility and
accountability to PRPB employees in the 13 precincts and
headquarters substantive units.

3. **Inadequate PRPB Executive Management engagement with the
Reform process.**  Interviewees cited little to no leadership
engagement since the inception of the Reform.  This is
particularly true of the senior executive management of
PRPB lacking coordination with DPS which negatively affects
the regular course of business of the PRPB Reform Office.
While the current leadership of the PRPB Reform Office is
universally well regarded, there clearly needs to be higher

ranking supervision assigned to the PRPB Reform Office and more critical attention by the senior leaders in PRPB. This was evident in the Chief Monitor's Reports where issues cited by the Monitoring Team do not change or improve when assessed every six months.  In fact, in some instances, areas that have been designated by the monitor as having achieved "partial compliance" revert back to "noncompliance". Other issues identified included:

- There is inadequate connectivity between PRPB and DPS in the day-to-day operations of the PRPB Reform Office.

- The Director of the Reform office appears to be answering independently to the Secretary of DPS and the PRPB Commissioner, which often results in conflicting directions.

- The PRPB Reform Office appears to have no capacity to compel compliance of those in the PRPB they request information from who provide inadequate or inaccurate information.

- Reform is not being reinforced from the executive ranks down through the chain-of-command.  Presently, reform efforts are viewed as the Reform Office's responsibility.

- PRPB Supervisors often appear disinterested in the Reform
  and/or unaware of the requirements of the reform
  Agreement.

Captain Figueroa is universally highly regarded but the
PRPB Reform Office Director should be a Lieutenant Colonel
or higher.  This may be one of the reasons that prompted
the Governor to issue the recent Executive Order
establishing the Secretary of DPS as the lead executive
manager of the Reform.  It is noted that no reorganization
or additional assignments to the PRPB Reform Office have
been made as a result of the Executive Order.

An observation made by many interviewed by the OSM was that
the PRPB Reform Office was very distinct from the rest of
PRPB.  That is, the PRPB Reform Office was seen as a lone
entity disconnected from the mainstream PRPB – not as an
integral component of PRPB incorporated throughout the
fabric of the department.  This is another aspect that
profoundly distinguishes the PRPB Reform Office from other
police departments undergoing a consent decree.  In other
reforms, particularly those with many years into the
process, police departments have developed entities tasked
with oversight and compliance.  For example, the Baltimore

Police Department is in its sixth year of a Consent Decree
with U.S. DOJ.  The department has approximately 2,800
sworn officers and one of the highest violent crime rates
in the United States.  The department is organized under
four distinct Bureaus: The Operations Bureau, the Public
Integrity Bureau, the Compliance Bureau, and the
Administrative Bureau (see:
https://www.baltimorepolice.org/sites/default/files/2022-
05/Org%20Chart%20Revised%20May%202022%20-%20web.pdf). The reform
office in the department is housed under the umbrella of
the Compliance Bureau.  This not only affirmatively
supports the efforts of the reform office, but it infuses
the efforts and messaging of the reform office throughout
the department by strategically developing and instilling
cultural change in addition to specific tangible measures
that will remain after the conclusion of the consent
decree.

4. **PRPB is not adequately responsive to requests for
   information from the Monitoring Team.**  There are
   significant systemic issues with the process of the
   monitoring team requesting information and receiving
   thorough accurate responses from PRPB.  Numerous examples

were provided by many of those interviewed citing specific
requests for information to various sections of PRPB with
responses that were inadequate, incomplete, and inaccurate.
The reason typically cited for these subpar responses were
that the reform office was understaffed, the responding
entities were understaffed, there was inadequate management
oversight of the information request process, and no
accountability by those responsible for ensuring the
integrity of the information request process.  The entire
information request process lacks critically needed quality
control.  A macro view example illustrating these points is
that CMR-5, 6, and 7 are largely unchanged.  Several
members of the Monitoring Team expressed frustration over
data requests being repeated over several CMR iterations
resulting in the repeated same inadequate response being
provided.

5. **Inadequate information flow throughout relevant
   Commonwealth entities.** A consistent theme from interviews
   conducted by OSM indicated communication barriers between
   DPS and PRPB. Both entities were viewed by those we
   interviewed, as independently taking steps to move the
   Reform forward - without collaboration or meaningful

coordination with the other. This balkanized approach
undermines the entire reform process.

An example of this communication disconnect: while
interviewing the DPS Secretary, the OSM learned the
Secretary planned to hire between 20-23 Certified Public
Accountants (CPA) to compile financial information from the
13 area commands and condense the information into one
report for the Monitoring Team.  The CPAs would provide
quality control for the information's accuracy and
structure the information for easy review by the Monitoring
Team.  Shortly thereafter, when the OSM interviewed the
PRPB Commissioner, he advised the OSM of the planned
deployment of 26 officers to perform the same functions in
the 13 area commands as the CPAs.  It was clear the DPS
Secretary and PRPB Commissioner were unaware of each
other's plans.

The 13 area commands of the PRPB operate independently with
great autonomy.  This creates an inherent challenge for the
Reform Office in making information requests from the
Monitoring Team by tasking the 13 area commands.  The
collective information provided by the area commands to the
Reform Office is not consistent and often unresponsive to

the information request or with significant inaccuracies.
The Reform Office lacks the personnel to ensure the Monitor
receives accurate information from the 13 area commands as
it is staffed only to act as a conduit between the
Monitoring Team and the 13 Precincts and not provide
review, quality control and encourage or compel compliance
and production.

6. **Lack of accountability of PRPB management.**  Noncompliance
   with requests from the Monitoring Team typically goes
   unanswered by anyone in the chain-of-command. As noted
   above, requests from the Monitoring Team through the PRPB
   Reform Office to the field precincts often have inadequate
   or inaccurate replies.  That noncompliance is rarely noted
   and addressed internally by PRPB.

7. **IT systems are inadequate, not functional and IT expertise
   is lacking.**  PRPB has an IT staff of two individuals.
   Although considered competent, PRPB requires significantly
   more IT staff to operate in the Reform Office.  At present,
   PRPB's IT systems do not produce accurate data, are
   incapable of creating changes in forms to comply with the
   reform, and many necessary forms are not contained in
   PRPB's IT system.  There is currently significant Court

mandated attention to this issue including PRPB retaining the IT firm Gartner and AH Analytics to improve information systems and make recommendations for improved IT efficiencies, as part of a recent U.S. DOJ initiated and court approved IT Plan.

8. **Training Division is minimally involved in the Reform Process**

For the goals of the Reform to become part of the cultural change within the PRPB, training curricula must reflect the changes mandated by the Reform.  The Monitoring Team reported in CMR-6 that PRPB failed to provide training calendars, schedules, and/or course curriculums for review. Seven paragraphs (of 18 in the Training Section) were rated not compliant.  In addition, constant communication between the Reform Office and Training Division is crucial to implementing change.  For example, the Training Division was recently unaware of the need to train newly appointed Sergeants.

**Recommendations**

Note that some recommendations have already been initiated due to the assessment of the OSM and specific practices and issues identified in the assessment.

1. **Make the staffing of the PRPB Reform Office adequate and consistent with the founding General Order.**

- The PRPB Reform Office staff needs to be significantly increased.  The OSM recommends that the court order the parties and the Monitoring Team to meet and discuss these findings and define a specific recommendation for the overall staffing needed. It is recommended that the staffing levels in the reform office increase by a minimum of 150% of its current capability. This should be done in the next 30 to 60 days.

- In defining those positions, the Commonwealth should strongly consider making some management positions in the Reform Office non-sworn civilians with demonstrated skills in project management and extensive experience in leading and managing complex and sensitive organizational and cultural change.  While preferred, it is not necessary for these managers to have law enforcement experience.

- The Commonwealth might consider incentive pay for personnel assigned to the Reform as they do for other critical positions.  The OSM learned of highly educated PRPB officers holding master's degrees and, in some

cases, Doctorate degrees.  When asked why the Reform Office is not staffed with these highly educated officers, the response was that no one wants to be in the Reform Office and personnel were actively trying to be transferred out of the Reform Office due to lack of financial incentives.  Proposals for incentive pay for those assigned to the reform office, have been made in the past to former PRPB Commissioners, however, the Reform Office personnel never heard any response to these requests.

- The OSM makes no specific recommendation regarding the requirement established in the founding General Order that a firm of outside auditors be retained to supervise and provide oversight of the financial expenditures of the PRPB Reform Office has never been implemented, other than for the Court to continue the course defined in its Order at docket 2112.

2. **Make the assignments of staff members in the PRPB Reform Office and throughout the PRPB focused.**

- In determining the staffing increase needed, the parties, Monitoring Office and OSM should define an organizational body which specifically assigns positions corresponding

to the 11 identified compliance areas.  This may include creating the six sections identified in the founding General order as oversight entities and assigning relevant compliance areas to each section.

- The critical recommendation is for there to be assigned personnel of the PRPB Reform Office to each of the 11 compliance areas dedicated to those areas to foster ownership and accountability.

- In addition to assigning specific compliance areas of responsibility to PRPB Reform Office staff members, there should also be specific points of contact in the 13 geographic divisions and non-geographic substantive units throughout the Commonwealth.  Points of contact in each of the 13 precincts should be identified and work in concert with management in those units as required by General Order, Section III.g.

- A General Order should be established outlining the selection process for personnel assigned to the Reform Office.  The General Order should include the knowledge, skills, and abilities required for assignment to the Reform Office.  For example, personnel possessing policy writing, industrial psychology, program management, and

change management skills could be sought for assignment to the Reform Office.

- Moreover, PRPB should consider drafting Standard Operating Procedures for personnel assigned to the Reform Office.  This will ensure the unit operates uniformly, consistently, and with defined roles and responsibilities.  Also, an SOP will ensure continuity of operations upon the reassignment of personnel as they relocate in and out of the Reform Office due to promotions, retirements, and transfers.

3. **Consider reorganizing the structure of the oversight of the PRPB Reform Office to have direct collaboration and interaction with DPS and implement other practices that improve PRPB Executive Management engagement with the Reform process.**

- The current engagement of the PRPB Reform Office and PRPB executive management is perceived as being inadequate and in need of significant change – hence the Executive Order from the Governor.  The OSM recommends the Governor's Executive Order mandating the Secretary will coordinate all compliance efforts be strongly considered by the parties and the Court in evaluating a more significant

role of the Secretary of Public Safety in coordination with the senior Executive Management of the PRPB.

- Implementation of policy and procedures has been severely lacking across the 11 areas of the Reform Agreement according to the Chief Monitor's Reports.  PRPB Executive Management should develop a system of accountability for the tracking of policies and procedures cited repeatedly as not compliant with the requests of the Monitoring Team.  In addition to rating each paragraph, the Monitoring Team has included the way forward in each Chief Monitor's Report for PRPB to attain compliance for each paragraph in the Agreement.  PRPB Executive Management should adopt the Monitor's recommendations and implement suggestions where feasible to show progress towards compliance.

- PRPB lacks a unified vision to implement the consent decree.  PRPB's original strategy at the end of the capacity building period at the end of 2018, was to develop, train and implement all policies within four zones of excellence and expand to other police areas over time.  PRPB abandoned this strategy with no replacement strategy.  Due to the size and complexity of PRPB across

the Island of Puerto Rico, consideration should be given to reimplementing the four zones of excellence strategy in the absence of a strategy to implement the consent decree.

- Within PRPB or DPS, but outside of the PRPB Reform Office, a new administrative entity should be created which oversees compliance generally.  The creation of this new section independent of the PRPB Reform Office, as is the case in other cities in the country under a federal consent decree, will facilitate ongoing compliance and oversight of the work of the PRPB Reform Office and serve as the primary mechanism to ensure adherence to the reforms made under the Agreement once the reform of the PRPB has ended.  In addition to the benefit to the Reform, this entity will continue the work of the Reform after the conclusion of the Reform Agreement.

- The parties, the Monitoring Team, and the OSM should meet as soon as practicable to discuss and define what reorganization of the Reform Office oversight and DPS involvement is appropriate and how to implement those changes.  This would include submitting recommendations

to the Office of Management and Budget of Puerto Rico
(OGP) and Financial Oversight and Management Board of
Puerto Rico (FOMB) for funding as needed.

**4. PRPB must adequately respond to requests for information
from the Monitoring Team.**

Once the above recommendations are implemented and staffing
is increased both in the PRPB Reform Office and in the
outside entities, the new management structure must ensure
that information requests are attended to promptly and
accurately.  With properly staffed personnel in the PRPB
Reform Office and in the field collecting and forwarding
requested information, this will no longer be a recurring
issue which will be reflected in future iterations of the
CMR. Given that the requests by the Monitor are consistent
and similar in nature regarding the type of information
being sought, an adequately staffed PRPB Reform Office
would be in a position to anticipate requests before these
are being made.

**5. Commonwealth entities must have functional collaboration
and information flow.**

- Once these recommendations have been implemented, the
  information flow is expected to improve dramatically.

Staff assigned to specific compliance areas with
dedicated supervisory staff responsible and accountable
for specific compliance areas will improve the accuracy
and quality of data provided to the Monitoring Team.

- The OSM suggests the Governor's Executive Order making
  the DPS Secretary the accountable executive over the
  Police Reform be followed and enforced.  The Executive
  Order explicitly stated DPS Secretary must collaborate
  with the Police Commissioner, but the Executive Order
  placed the DPS Secretary in charge of the Police Reform.

6. **PRPB management must be accountable for failures in the
   Reform process.**

Once the above recommendations are implemented and the
senior management of the Reform is supplemented and led by
DPS, standard operating procedures should be established to
make the accountability process clear, and shift
responsibility to the 13 geographic areas for the accuracy
and punctuality of requested information. If PRPB
designated personnel in the 13 geographic areas are not
accountable to the requests made by the Reform Office, they
must be held accountable. The challenge currently in place
was very few, if any, are being held accountable for non-

compliance with the PRPB Reform Office Requests, which
cannot continue to go unnoticed.

7. **Current efforts to bolster IT systems and IT expertise
   should be supported and continued.**

This issue has received significant attention from the
Court, the OSM, the parties, and the Monitoring Team.  PRPB
has brought in the IT firm Gartner and AH Analytics to
improve information systems and make recommendations for
improved IT efficiencies.  The OSM recommends the
continuation of the current innovation in the IT systems
underway and the identified significant investment in IT
systems, protocols, and personnel.  The OSM highly
recommends PRPB follow IT experts' recommendations
currently being offered.  The success of the reform is
dependent upon having adequate IT systems to produce
accurate and timely data.

In addition, DPS reported to the parties and the OSM the
hiring of 77 IT personnel within the PRPB to enhance the IT
capabilities of the PRPB and the Reform Office.  In June
2022, it was learned the Office of Human Resources
Administration and Transformation in the Government of

Puerto Rico (OATRH) instructed the DPS to cancel the job postings.  The hiring of IT personnel for PRPB is critical to the success of the Reform.  The OSM strongly recommends the hiring of the 77 IT personnel for PRPB should be reconsidered.

8. **Training Division should be included in all aspects of the Reform Process**

The lack of information provided by the Training Division and cited communication issues between the Reform Office and Training Division demonstrate the need for the Training Division to be made a part of the reform process.

The Special Master certifies that the foregoing document was electronically filed with the Clerk of the Court for the District of Puerto Rico, using the CM/ ECF system which will send a copy and notification of filing to the Monitor and all counsel of record.

**RESPECTFULLY SUBMITTED** this 15th day of September 2022,

**ALEJANDRO DEL CARMEN**
Special Master

*s/Alejandro del Carmen*
delcarmen@specialmasterpuertorico.com