**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff;<br><br>　　v.<br><br>COMMONWEALTH OF PUERTO RICO, ET AL.,<br><br>　　　　　　Defendants. | No. 12-cv-2039 (FAB) |

**MOTION IN COMPLIANCE WITH ORDER AT DOCKET 2174 REGARDING THE SPECIAL MASTER'S ASSESSMENT OF PRPB'S REFORM OFFICE**

COMES NOW, Plaintiff, the United States of America, in compliance with the Order of September 16, 2022, ECF No. 2174, and respectfully submits its comments on the Special Master's Responsive Motion to the Court's Order That the Office of the Special Master Assess the Puerto Rico Police Bureau Reform Office ("Special Master's Motion"), ECF No. 2170. The United States offers its comments following a court-ordered meeting with the Commonwealth, Monitor, and Special Master on September 22, 2022, and in furtherance of the Court's directive that the Special Master's recommendations "enable the Reform Office to comply with the Monitor Team's data requests in both timeliness and data accuracy." Order at 2, ECF No. 2036 (May 23, 2022).

　　The United States concurs with the Special Master's eight principal recommendations. As set forth below, the United States proposes that the Commonwealth develop an implementation plan addressing each of the principal recommendations made by the Special Master for review and approval by the United States, Monitor, and Special Master. The United States further proposes that the Commonwealth consider using the reform plan on data management developed jointly by the Puerto Rico Police Bureau (PRPB) and its contractor, AH

Datalytics, as a blueprint for operationalizing the Special Master's principal recommendations and developing the implementation plan.  Finally, the Commonwealth should address ongoing coordination and communication barriers between PRPB and the Puerto Rico Department of Public Safety (DPS) as part of the implementation plan and the Special Master's recommendation on reorganizing the Reform Office.

## I.   BACKGROUND

1.   The Commonwealth established the Reform Office at PRPB while the Parties negotiated a final settlement agreement in this case.  As part of the final settlement agreement, which the Court approved and entered in July 2013, the Commonwealth agreed to strengthen the Reform Office through various staffing methods to ensure that it has the necessary skills and abilities to plan for and facilitate the implementation of the consent decree.  Agreement for the Sustainable Reform of the Puerto Rico Police Department ("Agreement" or "consent decree") at ¶ 231, ECF No. 60 (July 17, 2013).  The consent decree also requires that the Reform Office serve as the "source of reform within [PRPB]," serve as the "liaison between the Parties, the [Monitor], and the [Community Interaction Committees]," and assist PRPB with implementation and compliance with the consent decree.  *Id.*

2.   The consent decree assigns specific tasks to the Reform Office, including coordinating PRPB's compliance and implementation activities; facilitating the provision of data and documents to the Monitor, DOJ, and the Community Interaction Committees; ensuring data, documents, and records are maintained in accordance with the consent decree; and assisting in assigning implementation and compliance-related tasks to PRPB personnel.  *Id.* at ¶ 232.  The Reform Office must also include at least one PRPB supervisor who reports directly to the PRPB Commissioner.  *Id.* at ¶ 233.

3. On May 23, 2022, as part of its observation that the Reform Office appears to lack adequate personnel and resources to produce timely and accurate data to the Monitor, the Court instructed the Special Master to assess "staffing levels, resources and overall construct in terms of the capability of the Reform Office to respond effectively to the Monitor's Office taskings and requests." Order at 1-2, ECF No. 2036 (May 23, 2022). The Court further instructed the Special Master to make findings and recommendations to the Court by July 22, 2022, on "any additions or changes it deems necessary to enable the Reform Office to comply with the Monitor Team's data requests in both timeliness and data accuracy." *Id.* at 2. The Court extended the deadline for the assessment at the Special Master's request to September 16, 2022. Order, ECF No. 2097 (July 19, 2022).

4. On June 13, 2022, the United States participated in a meeting with the Court, Monitor, Commonwealth, and Special Master to discuss the Special Master's assessment. The United States shared its view that PRPB's data management problems extend beyond the Reform Office to the operational units, which contribute to the Commonwealth's production of incomplete and inaccurate data to the Monitor. The United States also shared that the Commonwealth's contractor, Ben Horwitz and his company AH Datalytics, were working with PRPB to improve the Reform Office's analytical capabilities and PRPB's overall data management. At the meeting, counsel for the Commonwealth offered that Mr. Horwitz had produced a preliminary report with clear steps that could serve as a platform for the Special Master's work.

5. On June 15, 2022, following the meeting with the Court, counsel for the Commonwealth shared a document titled, "Plan to Accelerate the Reform of the Puerto Rico Police Bureau" ("Reform Plan") from AH Datalytics, dated June 2022.[1]  The Reform Plan is described as follows:

> This plan provides strategies to support the Puerto Rico Government's goal of accelerating Consent Decree reforms to deliver a better agency for its community and officers in a more timely manner.  In short, this plan will help the Puerto Rico Police Bureau (PRPB) build reform management capacity, increase reform accountability across the Bureau, and deploy data-driven systems to proactively manage reform performance and ultimately deliver full compliance with the Consent Decree.

Reform Plan at 2.  The Reform Plan provides a roadmap with ten steps to advance reform at PRPB.  These steps include, among other things, assigning reform responsibilities to units outside of the Reform Office, designating reform managers at the Reform Office for each compliance area of the consent decree, increasing the Reform Office's civilian capacity for reform management, and creating a ReformStat process to increase coordination and accountability across PRPB units responsible for implementing the consent decree.  *Id.* at 3-5.

6. The United States participated in other meetings and discussions regarding the Special Master's ongoing assessment of the Reform Office, including an August 16, 2022, meeting to offer additional input on improving data management and compliance-related productions by the Reform Office and PRPB as a whole.  On September 14, 2022, the United States also submitted comments on a draft of the Special Master's Motion, which the Special Master circulated to the Parties and Monitor on September 11, 2022.

---

[1]  The United States understands that the Reform Plan is still under consideration by the Commonwealth and that certain aspects of the Reform Plan may change.  Accordingly, the United States is not filing a copy of the Reform Plan at this time, unless the Court instructs otherwise.

7. On September 15, 2022, the Special Master filed his assessment. Special Master's Mot., ECF No. 2170. In the assessment, the Special Master made eight principal recommendations and, within each recommendation, made more detailed suggestions on sub-issues related to the Reform Office. The following day, on September 16, 2022, the Court noted the Special Master's Motion and instructed the Parties and Monitor to meet with the Special Master to discuss his findings by September 30, 2022. Order, ECF No. 2174 (Sept. 16, 2022). The Court also instructed the Parties and Monitor to "inform the Court with any comments or suggestions as to this very important issue." *Id.* In compliance with the Court's September 16 Order, the Parties and Monitor met with the Special Master on September 22, 2022. Among the major issues discussed was the need to develop an implementation plan to operationalize the Special Master's recommendations.

## II. SPECIFIC COMMENTS ON THE SPECIAL MASTER'S MOTION

8. The United States offers three proposals in response to the Special Master's Motion to assist in operationalizing the Special Master's recommendations and detailed suggestions in accordance with the consent decree and applicable laws. These proposals are also intended to further the Court's objective of enabling the Reform Office to "comply with the Monitor Team's data requests in both timeliness and data accuracy." Order at 2, ECF No. 2036 (May 23, 2022).

### A. The Commonwealth Should Develop an Implementation Plan to Operationalize and Implement the Special Master's Recommendations.

9. As discussed in the Parties' meeting on September 22, 2022, the Commonwealth should develop an implementation plan to operationalize and implement the Special Master's recommendations, in accordance with the consent decree and applicable laws. This proposal is consistent with the Special Master's suggestions that the Parties, Monitor, and Special Master discuss further recommendations to address the Special Master's findings. *See* Special Master's

Mot. at 20-21, 23-25.  The implementation plan should include detailed action steps, identify persons responsible for each step, and timetables to complete each step.  These steps should be divided between short- and long-term goals, and should address Reform Office issues such as: appropriate staffing levels, including the role of civilians; personnel assignments and incentives; potential reorganization; and development of necessary policies and procedures.

      10. To complete the implementation plan, the United States recommends that the Commonwealth develop an initial draft within 30 days of the Court's approval of this proposal. The Commonwealth should submit the draft implementation plan to the United States, Monitor, and Special Master for review and approval.  The Parties, Monitor, and Special Master should have 15 days to review and comment on the draft plan, and the Commonwealth should have an additional 15 days to address comments, make changes, and obtain approval from the Parties, Monitor, and Special Master before a final plan is filed with the Court.  If the Parties, Monitor, and Special Master are unable to reach consensus on the final implementation plan, a party, the Monitor, or the Special Master may raise objections to the Commonwealth's implementation plan for resolution by the Court.

**B. The Commonwealth Should Consider Using the Reform Plan Developed by PRPB and AH Datalytics in Devising its Implementation Plan for the Special Master's Recommendations.**

      11. Consistent with the Parties' discussion with the Court regarding the Special Master's assessment on June 13, 2022, the United States proposes that the Commonwealth consider using its Reform Plan on data management as a blueprint for the implementation plan on the Special Master's recommendations.  The Reform Plan addresses many of the issues uncovered by the Special Master related to shortcomings in PRPB's data management and compliance productions and are consistent with the Special Master's recommendations.  For

6

instance, the Reform Plan provides that the Reform Office assign compliance managers to each compliance area of the consent decree and that PRPB assign reform responsibilities to units outside of the Reform Office.  Reform Plan at 3-4.  These steps are similar to the Special Master's second recommendation to "make the assignments of staff members in the PRPB Reform Office and throughout the PRPB focused" on the eleven compliance areas of the consent decree.  Special Master's Mot. at 21.  The Reform Plan also provides for increasing the Reform Office's civilian capacity for reform management, which includes having a sufficient number of civilians with diverse skill sets who collaborate with sworn members across the police agency to implement reforms.  Reform Plan at 4-5.  This step is consistent with the Special Master's first recommendation to consider permitting civilians with experience in project management and organizational change to fill some management positions at the Reform Office.  Special Master's Mot. at 20.  Other steps in the Reform Plan could help support the Commonwealth's overall efforts to increase capacity at the Reform Office and improve the quality and timeliness of the Commonwealth's compliance productions to the Monitor.

12. The Reform Plan may also serve as a blueprint for the Commonwealth to develop a unified strategy on implementation to address a major finding in the Special Master's assessment.  In the Special Master's Motion, he finds that "PRPB lacks a unified vision to implement the consent decree." *Id.* at 24.  The Reform Plan offers a ten-step approach to improve coordination, communication, and accountability among internal and external PRPB stakeholders based on performance measures that are consistent with the consent decree to accelerate compliance.  The Reform Plan draws from AH Datalytics' experience working directly with other jurisdictions that are also implementing comprehensive consent decrees.  Accordingly, the Reform Plan can serve as a blueprint for a unified strategy among PRPB, DPS,

and other Commonwealth entities responsible for the collection, analysis, and operational use of data that are necessary to demonstrate compliance with the consent decree.

### C. Reorganization of the Reform Office and DPS Involvement Should Focus on Improving Coordination and Communication Between PRPB and DPS.

13. As recommended by the Special Master, the Commonwealth should seek to improve coordination and communication between PRPB and DPS as part of its implementation plan. Specifically, the Special Master recommends that the Parties, Monitor, and Special Master "meet as soon as practicable to discuss and define what reorganization of the Reform Office oversight and DPS involvement is appropriate and how to implement those changes." Special Master's Mot. at 25. In his Motion, the Special Master noted communication barriers between PRPB and DPS, and that steps were being taken by each entity "without collaboration or meaningful coordination with the other." Special Master's Mot. at 16-17. The Special Master added, "This balkanized approach undermines the entire reform process." Id. at 17. The Commonwealth should address this barrier to compliance in developing its implementation plan.[2]

### III. CONCLUSION

For the foregoing reasons, the United States recommends that the Court enter an order requiring the Commonwealth to develop a draft plan to implement the Special Master's principal recommendations within 30 days and submit it for review and approval by the United States, Monitor, and Special Master. The Parties, Monitor, and Special Master should have 15 days to review and comment on the draft plan, and the Commonwealth should have an additional 15 days to address comments, make changes, and obtain approval from the Parties, Monitor, and

---

[2] Certain forms of reorganization of the Reform Office may require a modification of the consent decree under Paragraph 296 and should be discussed by the Parties as the Commonwealth develops the implementation plan.

Special Master before a final plan is filed with the Court. If the Parties, Monitor, and Special Master are unable to reach consensus on the final implementation plan, a party, the Monitor, or the Special Master may raise objections to the Commonwealth's implementation plan for resolution by the Court.

Respectfully submitted this 30th day of September, 2022.

> **STEVEN H. ROSENBAUM**
> Chief, Special Litigation Section
> Civil Rights Division
>
> *s/Luis E. Saucedo*
> **TIMOTHY D. MYGATT**
> Deputy Chief
> **LUIS E. SAUCEDO** (G01613)
> **JORGE CASTILLO** (G02912)
> **KATHERINE CHAMBLEE-RYAN** (G03515)
> Trial Attorneys
> U.S. Department of Justice
> Civil Rights Division
> Special Litigation Section
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530
> Telephone: (202) 598-0482
> Fax: (202) 514-4883
> luis.e.saucedo@usdoj.gov
> jorge.castillo@usdoj.gov
> katherine.chamblee-ryan@usdoj.gov
>
> Attorneys for Plaintiff