# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff;<br><br>　　v.<br><br>COMMONWEALTH OF PUERTO RICO, ET AL.,<br><br>　　　　　　　Defendants. | No. 12-cv-2039 (FAB) |

## MOTION IN COMPLIANCE WITH ORDER AT DOCKET 2183 REGARDING THE COMMONWEALTH'S AMENDED PROVISIONAL USE OF FORCE DATA PLAN

COMES NOW, Plaintiff, the United States of America, and respectfully submits its comments on the Commonwealth's Amended Provisional Use of Force Data Plan ("Amended Provisional Plan"), ECF No. 2177, in compliance with the Order of September 23, 2022, ECF No. 2183.  As set forth more fully below, the United States has no objection to the Amended Provisional Plan and suggests three additional measures to strengthen the interim steps the Commonwealth has committed to undertake.  These additional measures are:  (1) assigning administrative support to the Force Investigations Unit to assist in maintaining, analyzing, and disseminating data on use of force; (2) continuing to develop and implement ReformStat[1] as part of the Puerto Rico Police Bureau's (PRPB) efforts to improve overall data management and

---

[1] ReformStat is a dedicated, recurring management meeting framework designed to enhance coordination and accountability across PRPB units responsible for implementing reforms.  AH Datalytics included ReformStat as part of a proposed ten-point "Plan to Accelerate the Reform of the Puerto Rico Police Bureau" in June 2022.  *See* Pl.'s Mot. in Compliance with Order at ¶¶ 5, 11, 12, ECF No. 2197 (Sept. 30, 2022).

decision-making; and (3) reviewing and revising the Amended Provisional Plan, as necessary, within 30 days of the Monitor filing his semi-annual compliance reports.[2]

## I.    BACKGROUND

1. The Agreement for the Sustainable Reform of the Puerto Rico Police Department ("Agreement" or "consent decree") requires that PRPB maintain "a reliable and accurate tracking system" on all uses of force, force reviews, and force investigations by PRPB.  Agreement ¶ 41, ECF No. 60 (July 13, 2013).  The Agreement also requires that PRPB analyze data on use of force at least annually, *id.*; establish information systems and use technology to implement the Agreement in an effective and efficient manner, *id.* at ¶ 218; and maintain an automated record management system and electronic files to implement the substantive requirements of the Agreement, including requirements on use of force, *id.* at ¶ 221.

2. At a January 14, 2022, status conference, the Court ordered the Commonwealth to develop a plan to address re-occurring problems and discrepancies in PRPB's use of force data.  Mins. of Proceedings at 3, ECF No. 1945 (Jan. 14, 2022).  The plan was to outline both interim and long-term changes and operational improvements to reconcile the discrepancies.  *Id.*  The Court also instructed the United States, Monitor, and Special Master to meet with the Commonwealth to discuss the Commonwealth's proposed plan.  *Id.*  Following several meetings and drafts, the Commonwealth filed its initial Provisional Use of Force Data Plan ("Initial Provisional Plan") on April 13, 2022.  Defs.' Mot. in Compliance with Order Submitting UOF

---

[2] The parties conferred on October 12, 2022, and the Commonwealth accepted the United States' second and third suggestions as additions to the Amended Provisional Plan. The parties agreed to continue conferring on the first suggestion to attempt to reach further consensus in anticipation of the November 18, 2022, meeting with the Court.

Data Plan, ECF No. 1997 (Apr. 13, 2022).  The United States and the Monitor conditionally approved the Initial Provisional Plan.  *Id.* at ¶ 3.

3.  At a status conference on May 20, 2022, the Parties and Monitor described the steps that the Commonwealth agreed to undertake in its Initial Provisional Plan to validate data and ensure that PRPB tracks accurate and reliable information on officers' use of force.  The Court instructed the Commonwealth to implement the Initial Provisional Plan and test its validation measures for the month of June 2022.  The Commonwealth conducted the validation test and reported the results in a report recommending further improvements to the validation process on July 29, 2022.  Defs.' Mot. in Compliance with Order, ECF No. 2114 (July 29, 2022).

4.  During the August 23, 2022, status conference, the Court ordered the Commonwealth to amend the Initial Provisional Plan based on the results of the June 2022 validation test with assistance from the United States, Monitor, and Special Master.  Following additional discussions, the Commonwealth filed the Amended Provisional Plan on September 22, 2022.  Defs.' Mot. in Compliance with Order Submitting Amended Provisional UOF Data Plan, ECF No. 2177 (Sept. 22, 2022).  The Court noted the Amended Provisional Plan and instructed the United States, Monitor, and Special Master to "respond with any comments, suggestions or changes to the provisional use of force plan no later than October 14, 2022."  Order, ECF No. 2183 (Sept. 23, 2022).

5.  On October 11, 2022, the Monitor filed a Motion in Compliance and reported that the Amended Provisional Plan "already contained his comments, suggestions, and changes."  Monitor's Mot. in Compliance at 1, ECF No. 2210 (Oct. 11, 2022).  The Monitor clarified other measures in the Amended Provisional Plan based on recent discussions with PRPB and noted that the Force Investigations Unit may need additional personnel:  "The Monitor and PRPB agree

3

that FIU will have greater responsibilities under this plan and, therefore, additional personnel may be needed to execute the plan." *Id.* at 2.

## II.      COMMENTS AND RECOMMENDATIONS ON THE AMENDED PROVISIONAL PLAN

6. The United States has no objection to the Amended Provisional Plan. The Amended Provisional Plan provides interim solutions to obstacles that are impeding the Commonwealth's compliance with the consent decree requiring a reliable and accurate tracking system on use of force. *See* Agreement at ¶¶ 41, 218, 221. These obstacles include the lack of a single database to record official statistics on use of force; the lack of coordination among personnel entering data and field supervisors reviewing force reports by officers; and the need for a unique numerical identifier to track uses of force, including when multiple units are involved in an incident. Am. Provisional Plan at 3-4.[3]

7. As noted in the Commonwealth's cover motion, the Amended Provisional Plan reflects considerable feedback from the United States and Monitor. Defs.' Mot. in Compliance at ¶ 5, ECF No. 2177 (Sept. 22, 2022). It also incorporates lessons learned from the Commonwealth's June 2022 validation test. Am. Provisional Plan at 11-12. For instance, the Amended Provisional Plan identifies the database used by PRPB's Force Investigations Unit as the most precise tracking system to maintain official statistics on use of force because data are entered after all steps are taken to validate and review force reports from the field. Am. Provisional Plan at 10-12. The Amended Provisional Plan also clarifies that responding field supervisors are

---

[3] Other obstacles, such as the need for additional field supervisors and updates to PRPB's information systems and technology, are being addressed by separate implementation plans approved by the Court. *See* Order Approving Stipulation on Staffing and Supervision, ECF No. 2002 (Apr. 18, 2022); Order Approving Stipulation for an Information Systems and Technology Needs Assessment and Action Plan, ECF No. 2000 (Apr. 18, 2022).

responsible for evaluating, approving, and signing all force reports from officers following a use of force, even when the field supervisors are covering neighboring precincts or districts due to insufficient numbers of supervisors during a shift – a concern raised by the United States. *Id.* at 9-10.  In his Motion in Compliance, the Monitor reported that the Amended Provisional Plan incorporates his input.  Monitor's Mot. in Compliance at 1, ECF No. 2210 (Oct. 11, 2022).

8. To further strengthen the Amended Provisional Plan and ensure that accurate and reliable data on use of force are maintained by PRPB, the United States offers the following three suggestions:

   a. **Administrative Support**:  The Commonwealth should assign a civilian to provide administrative support to the Force Investigations Unit.  As discussed in the Amended Provisional Plan, the database used by the Force Investigations Unit will maintain PRPB's official statistics on use of force.  The Force Investigations Unit is led currently by a lieutenant from the Auxiliary Superintendency for Professional Responsibility with little to no administrative support from civilians.  The civilian member should assist the lieutenant with providing quality control of the database, tracking upgrades and changes to information systems, handling requests for information, preparing reports and analyses of force data, and any other tasks assigned by the Force Investigations Unit lieutenant to support the proper maintenance and use of PRPB's force statistics.  This suggestion is consistent with the Monitor's observation that the Force Investigations Unit may need additional personnel to execute the Amended Provisional Plan.  Monitor's Mot. in Compliance at 2, ECF No. 2210 (Oct. 11, 2022).

b. **ReformStat and Improvements to Data Management**: The Commonwealth should continue to develop and implement ReformStat as part of a coordinated plan to improve overall data management and decision-making at PRPB with the assistance of PRPB's contractor, AH Datalytics. The Amended Provisional Plan provides that PRPB will use monthly ReformStat meetings to coordinate and hold PRPB units accountable for reform requirements. Am. Provisional Plan at 13. Force statistics will be included in these monthly ReformStat meetings beginning in January 2023 after an initial pilot test period. *Id.* To ensure that ReformStat works as intended, the Commonwealth should consider implementing ReformStat as part of the comprehensive reform plan proposed by AH Datalytics in June 2022. The reform plan includes a series of strategies that are designed to improve coordination, communication, and accountability at PRPB using shared performance measures that are consistent with the consent decree. This recommendation is consistent with the United States' recent recommendation that the Commonwealth consider using AH Datalytics' proposed reform plan as a framework to address the Special Master's findings regarding the Reform Office's ability to produce timely and accurate compliance data and documents to the Monitor. *See* Pl.'s Mot. in Compliance with Order at ¶¶ 5, 11, 12, ECF No. 2197 (Sept. 30, 2022).

c. **Review and Revision**: The Commonwealth should account for the Monitor's compliance assessments when reviewing the Amended Provisional Plan and determining whether any revisions are necessary. The Amended Provisional Plan provides currently that it will be updated as the need arises to conform to changes in PRPB's information systems. Am. Provisional Plan at 13. Although accounting for changes in PRPB's information systems is important, the Commonwealth should also determine whether any

updates or modifications are necessary based on the Monitor's semi-annual compliance reports, which include his review of PRPB's force data. The Commonwealth should consider the Monitor's compliance assessments to determine whether any steps in the Amended Provisional Plan should be modified or deleted as part of an ongoing effort to improve the accuracy and reliability of force data. This review should occur within 30 days of the Monitor filing his final semi-annual compliance reports, pursuant to Paragraph 251 of the Agreement.

### III.   CONCLUSION

For the foregoing reasons, the United States does not object to the Commonwealth's Amended Provisional Plan and makes three suggestions to strengthen the Amended Provisional Plan and ensure that PRPB maintains accurate and reliable force data, as required by the consent decree.

Respectfully submitted this 14th day of October, 2022.

<div style="margin-left:40%">

**STEVEN H. ROSENBAUM**
Chief, Special Litigation Section
Civil Rights Division

*s/Luis E. Saucedo*
**TIMOTHY D. MYGATT**
Deputy Chief
**LUIS E. SAUCEDO** (G01613)
**JORGE CASTILLO** (G02912)
**KATHERINE CHAMBLEE-RYAN** (G03515)
Trial Attorneys
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 598-0482
Fax: (202) 514-4883
luis.e.saucedo@usdoj.gov

</div>

jorge.castillo@usdoj.gov
katherine.chamblee-ryan@usdoj.gov

Attorneys for Plaintiff