# Compliance Plan Summary
*United States v. Commonwealth of Puerto Rico*, No. 3:12-cv-02039 (FAB)
November 3, 2023

### I. Introduction to the Compliance Plan

The Compliance Plan is a roadmap to accelerate the Commonwealth's compliance with the 62 paragraphs of the Agreement for the Sustainable Reform of the Puerto Rico Police Bureau ("Agreement") that remain in non-compliance based on the Monitor's most recent reports.[1]  The Compliance Plan is intended to comply with the Court's Order of August 17, 2023, instructing the Parties, Monitor, and Special Master to "prepare a plan specifically tailored to address the remaining action items needed to be accomplished in order for the [Puerto Rico Police Bureau (PRPB)] to be in compliance with all the reform paragraphs, including the [] paragraphs [rated in non-compliance]."  Order at 2, ECF No. 2467 (Aug. 17, 2023).

### II. Two Parts: This Summary & the Compliance Plan Tracker

The Compliance Plan consists of two parts – this Compliance Plan Summary and a Compliance Plan Tracker.

This *Compliance Plan Summary* provides a short synopsis of the approach taken by the Parties, Monitor, and Special Master to craft the Compliance Plan; outlines the deadlines by which the Commonwealth agrees to achieve substantial compliance with each of the 62 paragraphs rated currently as non-compliant; and sets forth additional accountability measures agreed-upon by the Parties to increase transparency and the pace of reform.

The *Compliance Plan Tracker* is a spreadsheet that describes the interim steps the Commonwealth agrees to take to achieve substantial compliance by the deadlines in this Compliance Plan Summary.  The Compliance Plan Tracker includes the following information for each of the 62 paragraphs covered by the Compliance Plan:

- a deliverable;
- action items and sub-action items needed to implement the paragraph;
- deadlines to complete the action items;
- the agency unit responsible for implementing the action items (the head of the unit is responsible for ensuring that the action is taken);
- the Reform Office personnel assigned to serve as the liaison to the responsible agency unit to support and assist in completing the action items;
- the Monitor's Office personnel assigned to assess compliance with the paragraph;
- the status of the action items; and
- the date the action items were completed.

---

[1] *See* Seventh Monitoring Rep., ECF No. 2264-1 (Dec. 15, 2022); Eighth Monitoring Rep., ECF No. 2430-1 (June 13, 2023).

The Compliance Plan Tracker is designed to ensure the Commonwealth makes progress while the Monitor completes his semi-annual, independent compliance assessments. The Compliance Plan Tracker is a living document that tracks steps the Commonwealth has taken, and confirms the steps the Commonwealth will take, on the path toward substantial compliance, subject to verification by the Monitor.

### III.     Crafting the Compliance Plan

The Compliance Plan is the product of collaboration among the Parties, Monitor, and Special Master. First, the Parties determined the scope of the Compliance Plan based on guidance form the Monitor and Special Master. Second, the Parties assessed the barriers hindering the Commonwealth's compliance and identified the steps necessary to overcome them, including exchanging drafts of the Compliance Plan Tracker and holding several meetings with the Monitor and Special Master to discuss it.

The Compliance Plan incorporates and supplements the six implementation plans designed to improve the Commonwealth's performance, overcome barriers to compliance, and expedite reforms, which were negotiated with the assistance of the Monitor and his team of subject-matter experts beginning in early 2022.[2] The Parties drew from these implementation plans to collect the action items necessary to move non-compliant paragraphs toward substantial compliance. For those non-compliant paragraphs not covered by an existing implementation plan, the Parties negotiated a series of new action items and deadlines to chart a path toward substantial compliance. The Parties incorporated all new and existing action items with deadlines into the Compliance Plan Tracker, so that it serves as a single compliance clearinghouse encompassing the 62 paragraphs rated in non-compliance.

The Compliance Plan also draws from the consensus monitoring methodology to align the Commonwealth's efforts with the metrics used by the Monitor to assess compliance.[3] The consensus monitoring methodology specifies the evaluation methods, compliance targets, and monitoring frequencies that are used by the Monitor to assign compliance ratings to each paragraph in the Monitor's semi-annual reports. The semi-annual reports include a description of the compliance ratings: Deferred, Not Compliant, Partially Compliant, and Substantially Compliant. *See* Eighth Monitoring Rep. at 278. The Parties expect that the discrete actions the Commonwealth has agreed to take within the specified timeframes in the Compliance Plan Tracker will move the 62 non-compliance paragraphs from non-compliance to substantial compliance in accordance with the schedule in Section IV, below.

---

[2] *See* Order, EFC No. 2000 (Apr. 18, 2022) (approving information systems and technology needs assessment and action plan); Order, EFC No. 2002 (Apr. 18, 2022) (approving staffing and supervision plan); Order, EFC No. 2183 (Sept. 23, 2022) (noting amended provisional use of force validation plan); Order, EFC No. 2348 (Mar. 30, 2023) (noting training plan); Order, EFC No. 2484 (Sept. 6, 2023) (noting searches and seizures plan, plan for the investigations of domestic violence and sexual assaults, and revision of the staffing and supervision plan).

[3] The Court approved the consensus monitoring methodology following extensive discussions with assistance from the Monitor and Special Master. *See* Order, ECF No. 1364 (Oct. 30, 2019).

IV. **Substantial Compliance Dates for Non-Compliant Paragraphs**

The table below provides the dates by which the Commonwealth expects to achieve substantial compliance with the 62 paragraphs of the Agreement currently rated in non-compliance. Most, if not all, will achieve partial compliance before attaining substantial compliance, and this will be indicative of progress. Once these paragraphs achieve substantial compliance, the Commonwealth must maintain substantial compliance for a period of two consecutive years thereafter to attain sustained compliance under Paragraph 294 of the Agreement. The interim steps and deadlines the Commonwealth will take to demonstrate progress towards substantial compliance are outlined in detail in the Compliance Plan Tracker.

| Para. | Paragraph Topic | Expected Substantial Compliance Date |
|---|---|---|
| 42 | Quality of supervisory reviews on use of force | 2/29/2024 |
| 49 | Supervisor and FIU responses to the scene of a use of force | TBD (pending update to methodology)[4] |
| 51 | Timeliness of force investigations | 7/30/2024 |
| 57 | Crisis intervention team assignments and dispatcher training | 6/30/2025 |
| 60 | Policies and data collection on stops and searches | 12/31/2024 |
| 61 | Prohibited conduct related to stops and searches | 12/31/2024 |
| 62 | Supervisory reviews of stops and searches | 12/31/2024 |
| 63 | Command-level reviews of stops and searches | 12/31/2024 |
| 64 | Data analysis on stops and searches | 12/31/2024 |
| 65 | Arrest policies | 12/31/2024 |
| 66 | Notifications following arrests | 12/31/2024[5] |
| 67 | Transporting arrestees to booking locations | 12/31/2024 |
| 68 | Inspections and interviews of detainees at time of booking | 12/31/2024 |
| 69 | Supervisory reviews of arrests | 12/31/2024 |
| 70 | Documenting supervisory reviews of arrests | 12/31/2024 |
| 71 | Command-level reviews of arrests | 12/31/2024 |
| 72 | Procedures for seized property | 12/31/2024 |
| 74 | Search policies | 12/31/2024 |

---

[4] The Monitor reports that he found sufficient evidence in his last compliance assessment to support a rating of partial compliance for Paragraph 49. *See* Eighth Monitoring Rep. at 50. The non-compliance rating was the result of a flaw in the consensus monitoring methodology that does not measure the specific requirements of the paragraph. The Parties agree to meet and confer on an appropriate compliance target for Paragraph 49 to ensure that it is accurately and systematically evaluated for compliance by the Monitor before the end of the tenth evaluation period, or March 31, 2024. *See, infra*, Part V.2.

[5] Paragraphs 66 and 67 will advance, in part, with the implementation of the Radio Coverage Initiative of the Information Systems and Technology Needs Assessment and Action Plan. The schedule for implementing that initiative may change, and it is not yet known if that will affect the expected substantial compliance date for these paragraphs. The Commonwealth will update this Summary and the itemized Tracker in real time and reflect any changes in quarterly status reports in accordance with the additional accountability measure described at Part V.6.

| 76 | Tracking search warrants and maintaining files | 12/31/2024 |
|---|---|---|
| 78 | Officer training on stops, searches, and seizures | 12/31/2024 |
| 79 | Supervisor training on stops, searches, and seizures | 12/31/2024 |
| 80 | Equal protection and non-discrimination generally | 6/30/2026 |
| 85 | Using NIBRS to collect and report crime data | TBD[6] (pending IT plan update) |
| 86 | Collecting and reporting crime data on hate crimes | TBD (pending IT plan update) |
| 90 | Officer training on biased-free policing | 6/30/2025 |
| 91 | Assessing programs, initiatives, and activities for bias | TBD (pending IT plan update) |
| 92 | Investigating abuse in juvenile facilities | 6/15/2024 |
| 94 | Investigating sexual assaults | 6/30/2026 |
| 98 | Responding to domestic violence | 6/30/2026 |
| 135 | Supervision and management generally | 9/30/2025 |
| 136 | Assignments to a single and consistent supervisor | 1/30/2025 |
| 137 | Assignment of first-line supervisors in the field | 1/30/2025 |
| 138 | Program to ensure consistent field supervision | 1/30/2025 |
| 139 | Close and effective supervision | 1/30/2025 |
| 140 | Ensuring compliance with policies, laws, and the Agreement | 1/30/2025 |
| 147 | Implementing an early intervention system | TBD (pending IT plan update) |
| 148 | Database for the early intervention system | TBD (pending IT plan update) |
| 149 | Unit implementing the early intervention system | TBD (pending IT plan update) |
| 150 | Equipment needs for the early intervention system | TBD (pending IT plan update) |
| 151 | Protocol for using the early intervention system | TBD (pending IT plan update) |
| 152 | Maintaining personally identifiable information | TBD (pending IT plan update) |
| 153 | Modifications to the early intervention system | TBD (pending IT plan update) |
| 157 | Integrity audits | 9/30/2025 |

---

[6] Paragraphs 85-86 (reporting crime data to federal systems), 91 (data-informed assessments of bias), 147-153 (data-informed early intervention system), and 219-220 and 223 (information technology systems) rely on the implementation of several initiatives that pertain to the Information Systems and Technology Needs Assessment and Action Plan. The Parties are working to finalize revised implementation schedules for some of the constituent initiatives. For example, the schedule to implement access to the National Crime Information Center ("NCIC") will be updated by December 30, 2023; the schedule to implement a new Records Management System will be updated on February 29, 2024. The Commonwealth will update this Summary and the itemized Tracker in real time and reflect all changes in quarterly status reports in accordance with the additional accountability measure described at Part V.6.

| 168 | Intake of misconduct complaints | 6/30/2024 |
| --- | --- | --- |
| 173 | Assigning misconduct complaints for investigation | 6/30/2024 |
| 179 | Timeliness of administrative investigations | 6/30/2024 |
| 182 | Compelled statements in administrative investigations | 6/30/2026 |
| 189 | Command-level reviews of administrative investigations | 6/30/2024 |
| 196 | Training on misconduct investigations | 12/31/2024 |
| 202 | Training on officer support protocols | 7/29/2024 |
| 208 | Measuring community partnerships | 1/30/2025 |
| 211 | Allocating resources to community interaction councils | 12/30/2024 |
| 212 | Collaborating with community interaction councils | 9/30/2024 |
| 213 | Annual reports of community interaction councils | 2/29/2024 |
| 214 | Community outreach and public information program | 7/30/2024 |
| 215 | Open meetings on police reform | 7/30/2024 |
| 216 | Summaries of audits and reports at open meetings | 7/30/2024 |
| 217 | Maintaining and disseminating crime statistics | 12/30/2023 |
| 219 | Data collection for implementation and compliance | TBD (pending IT plan update) |
| 220 | Protocol for data collection and analysis | TBD (pending IT plan update) |
| 222 | Handheld recording devices for investigations | 9/30/2025[7] |
| 223 | Access to National Crime Information Center data | TBD (pending IT plan update) |

### V.     Additional Accountability Measures

The Parties agree that additional accountability measures will assist the Commonwealth to accelerate the pace of reform under the Agreement. These measures represent "constructive tangible changes" contemplated by the Court's Order of August 17, 2023, that are intended to increase transparency, improve performance, and streamline periodic reporting on the Commonwealth's progress. *See* Order at 2, ECF No. 2467. The Parties include the steps they intend to take and a timeline to carry out each measure below.

1. *Secure public access to all implementation plans.*

Nearly all the implementation plans filed with the Court are restricted for viewing by the Parties, Monitor, and Special Master only. The Parties agree that filings related to the Commonwealth's implementation plans should be accessible to the public to promote transparency and public accountability. Accordingly, the Parties agree to request jointly that the Court remove the

---

[7] Paragraph 222 is an existing IT Project referenced in the Information Systems and Technology Needs Assessment and Action Plan. The schedule for fully implementing this paragraph may be affected by updates to the implementation schedule of the IT Plan's initiatives. The Commonwealth will update this Summary and the itemized Tracker in real time and reflect any changes in quarterly status reports in accordance with the additional accountability measure described at Part V.6.

restrictions on relevant filings with appropriate redactions to protect sensitive information in accordance with applicable rules.

To implement this measure, the Parties agree to the following:

- By December 15, 2023, the Parties will identify restricted filings that should be unrestricted for public viewing, make necessary redactions to public versions of these documents, and submit a joint request to the Court.
- If the Court grants the Parties' request, the Parties will file redacted versions in unrestrictive view.

2. *Ensure effective compliance monitoring for all paragraphs.*

During their discussions, the Parties, Monitor, and Special Master noted that portions of the consensus methodology warrant closer review to ensure they sufficiently describe how compliance will be measured. For example, as described above, the methodology for Paragraph 49 does not measure the specific requirements of the paragraph and must be revised. In addition, the methodology for paragraphs assigned to the Special Master for technical assistance should be assessed to determine whether existing methods of evaluation remain appropriate and deferred methodologies are updated. *See* Jt. Stip. At 3-4, ECF No. 1148 (Mar. 15, 2019) (assigning paragraphs 21 (developmental career path), 91 (program assessments for bias), and 154-157 (internal audits and integrity checks) for technical assistance); *see also* Monitoring Matrix and Methodology on Professionalization at 9, ECF 1327-1 (Aug. 30,2019) (explicitly deferring the development of evaluation method for paragraph 21). Having the Monitor assess compliance with all paragraphs ensures that the Commonwealth is accountable for its performance in those paragraphs, even while it continues to receive technical assistance related to any given paragraph.

To implement this measure, the Parties agree to the following steps:

- By December 15, 2023, the Parties agree to determine whether any modifications to the consensus monitoring methodology are necessary and to meet and confer regarding those modifications.
- The Monitor should apply the consensus monitoring methodology to these paragraphs in the tenth evaluation period, which covers October 1, 2023 to March 31, 2024.

3. *Augment human resource staffing to redeploy sworn personnel to the field.*

The lack of sufficient supervisors and sworn personnel in the field to preform patrol and investigative functions has been a persistent barrier to compliance. To overcome this barrier, the Commonwealth agreed to hire civilians to replace sworn personnel performing administrative duties in its initial Paragraph 13 Staffing Plan (2018) and its Updated Staffing Plan (2022 & 2023). Despite these plans, the Commonwealth has had little success hiring significant numbers of civilian employees to perform administrative duties and other non-police work at PRPB. This is due, in large measure, to limited human resources capacity at PRPB and the Department of Public Safety (DPS).

To accelerate implementation of this initiative, the Commonwealth agrees to undertake the following:

- The Commonwealth will maintain an executive committee consisting of DPS and PRPB administrators and commanders to, among other matters, expedite recruitment at PRPB, including the recruitment of civilians responsible for administrative duties performed currently by sworn PRPB personnel.
- The Commonwealth will maintain a human resources working group consisting of qualified employees or contracted staff to augment existing human resources capacity at DPS and PRPB. The working group will be responsible for:
    - Extending at least 111 offers to qualified candidates for civilian positions by March 30, 2024, to permit reassignment of 111 police officers who currently perform administrative duties;
    - Extending at least 500 additional offers to qualified candidates for civilian positions by August 30, 2024, to permit reassignment of additional police officers from administrative responsibilities; and
    - Extending at least 500 additional offers to qualified candidates for civilian positions by June 30, 2025, to permit reassignment of additional police officers from administrative responsibilities.

4. *Remediate the backlog of misconduct and administrative investigations.*

The Monitor has identified that a barrier to the Commonwealth meeting its obligation to timely adjudicate misconduct investigations is the insufficient staffing available in the Legal Affairs Office to review and complete the adjudication of otherwise complete misconduct investigations. *See* Eighth Monitoring Rep. at 204-06. The Commonwealth agrees to take necessary and timely action to review and adjudicate misconduct and administrative investigations for disciplinary action, where appropriate, by the Commissioner.

To address this backlog, the Commonwealth agrees to take the following steps:

- The Commonwealth will hire or contract with at least eight additional legal personnel by December 15, 2023, to maintain a sufficient staffing level to review and adjudicate administrative investigations completed by SARP and make recommendations to the Commissioner on appropriate dispositions;
- The Commonwealth commits to review, adjudicate, and clear at least 75% of backlogged administrative investigations by June 30, 2024; and
- The Commonwealth commits to review, adjudicate, and clear 95% of backlogged administrative investigations by September 30, 2024.

5. *Implement Reform Office improvements.*

Communication, data analysis, and other improvements would significantly improve how the Commonwealth manages the reform process. *See, e.g.*, Special Master Assessment of the Puerto Rico Police Bureau Reform Office, ECF No. 2170 (Sept. 15, 2022). The Compliance Plan also

requires the Commonwealth to increase the Reform Office's capacity to audit and measure compliance. The Commonwealth's contractor, AH Datalytics, submitted recommendations to accelerate reform that can be implemented alongside the action steps identified in the Compliance Plan Tracker.

To realize these improvements, the Parties commit to the following action:

- By January 22, 2024, the Parties, in collaboration with the Monitor, Special Master, and AH Datalytics, to finalize a plan to increase the Commonwealth's capacity to self-monitor, analyze data, develop corrective action plans, and self-report results; and
- After the plan is finalized, the Commonwealth will timely implement its initiatives.

6. *Produce one quarterly status report for all implementation plans.*

The Parties have developed six implementation plans, each of which requires periodic status reports from the Commonwealth to document progress and explain how it is navigating potential setbacks. With the submission of this Compliance Plan, the Commonwealth intends to consolidate the status reports for all plans into one quarterly report.

To consolidate status updates for all implementation plans, the Commonwealth agrees to the following:

- The Commonwealth will provide one consolidated status report every 90 days, starting from the day the Court accepts the Compliance Plan. The status report will include an update of the Compliance Plan Tracker, the implementation of the additional accountability measures, and information related to other initiatives not already captured in the tracker. The quarterly updates will also address missed deadlines and compliance targets, and identify steps taken to remediate delays or other hurdles.