

# CMR-12
# PRPB Comments for Filling
## July 14, 2025

(787) 793-1234 | PO BOX 70166 San Juan, PR 00936-8166 | www.policia.pr.gov

# Contents

Compliance Area: Use of Force ................................................................................... 3
Compliance Area: Searches and Seizures: Internal Controls and Accountability ............ 6
Compliance Area: Recruitment, Selection, and Hiring ..................................................... 8
Compliance Area: Training ............................................................................................. 9
Compliance Area: Supervision & Administration ........................................................... 13
Compliance Area: Civilian Complaints, Internal Investigations, and Discipline.............. 14
Compliance Area: Community Engagement and Public Information ............................. 16

## Compliance Area: Use of Force

> Paragraph 56

**CMR-12 Draft** - <u>Monitor evaluation page 60 of the Pathway Forward:</u> *"On this point, the only training available to dispatchers is the eight-hour course provided to field personnel. PRPB needs to demonstrate it has developed in-person, scenario-based training specific to dispatchers and begin training on the course. It should be tailored specifically to dispatchers regarding how to route crisis calls to on duty CIT officers."*

<u>**PRPB comment to CMR-12 Draft:**</u> PRPB respectfully clarifies that the CIT training for dispatchers was delivered virtually between October and December 2024, reaching 99% of dispatch personnel. The course was designed to address both Crisis Intervention and Gender Violence and is officially registered as VDCG 8061: Virtual Training for Dispatchers on Crisis Intervention and Gender Violence (8 hours).

Neither the Agreement nor the monitoring methodology requires the training to be conducted in-person. The virtual format included scenario-based modules tailored specifically for dispatchers, focusing on how to appropriately route crisis-related calls to on-duty CIT officers.

The course was presented and reviewed by the Monitor's Office. During the site visit in August 2024, the content was demonstrated, and feedback provided by the Monitor's Office was addressed and incorporated into the final version of the training.

Therefore, PRPB respectfully requests recognition of compliance with this requirement.

**CMR-12 Filed** - <u>Monitor evaluation page 60 of the Pathway Forward:</u> *"On this point, the only training available to dispatchers is the eight-hour course provided to field personnel. PRPB needs to demonstrate it has developed in-person, scenario-based training specific to dispatchers and begin training on the course. It should be tailored specifically to dispatchers regarding how to route crisis calls to on duty CIT officers."*

<u>**PRPB response to the filing:**</u> The Monitor upheld the stated evaluation, <u>without addressing PRPB's comments to the CMR-12 Draft</u>. PRPB maintains its position that the CIT training for dispatchers was delivered virtually between October and December 2024, reaching 99% of dispatch personnel. The course was designed to address both Crisis Intervention and Gender Violence and is officially registered as VDCG 8061: Virtual Training for Dispatchers on Crisis Intervention and Gender Violence (8 hours).

Neither the Agreement nor the monitoring methodology requires the training to be conducted in-person. The virtual format included scenario-based modules tailored specifically for dispatchers, focusing on how to appropriately route crisis-related calls to on-duty CIT officers.

The course was presented and reviewed by the Monitor's Office. During the site visit in August 2024, the content was demonstrated, and feedback provided by the Monitor's Office was addressed and incorporated into the final version of the training.

Given this, PRPB respectfully requests recognition of compliance with this requirement.

- ➢ Paragraph 57

**CMR-12 Draft** - **Monitor evaluation page 61 of the Compliance Targets:** Missed Compliance Targets: Target #2: Training on crisis intervention for call dispatchers is consistent with approved policies and  Target #3: 95% of call takers are trained and certified in crisis intervention (or are scheduled for training, in the case of mid-year reviews)

**PRPB comment to CMR-12 Draft:** PRPB respectfully requests credit for Compliance Targets #2 and #3, and that this paragraph be rated as in substantial compliance.

With regard to Target #2, the Crisis Intervention Team (CIT) training for dispatchers—VDCG 8061: Virtual Training for Dispatchers on Crisis Intervention and Gender Violence (8 hours)—was developed in accordance with approved policies and includes scenario-based content tailored specifically for dispatcher functions, particularly on routing crisis calls to on-duty CIT officers.

For Target #3, the training was delivered between October and December 2024, achieving 99% coverage of dispatch personnel, which exceeds the 95% compliance threshold.

The training was reviewed and presented to the Monitor's Office, and feedback provided during the August 2024 site visit was incorporated into the final version.

Given this information, PRPB respectfully requests that this paragraph be recognized as having reached substantial compliance.

**CMR-12 Filed** - **Monitor evaluation page 61 of the Compliance Targets:** Missed Compliance Targets: Target #2: Training on crisis intervention for call dispatchers is consistent with approved policies and  Target #3: 95% of call takers are trained and certified in crisis intervention (or are scheduled for training, in the case of mid-year reviews)

**PRPB response to the filing:** The Monitor sustained the stated evaluation, <u>without addressing PRPB's comments to the CMR-12 Draft</u>. PRPB maintains its position requesting credit for Compliance Targets #2 and #3, and that this paragraph be rated as in substantial compliance.

With regard to Target #2, the Crisis Intervention Team (CIT) training for dispatchers—VDCG 8061: Virtual Training for Dispatchers on Crisis Intervention and Gender Violence

(8 hours)—was developed in accordance with approved policies and includes scenario-based content tailored specifically for dispatcher functions, particularly on routing crisis calls to on-duty CIT officers.

For Target #3, the training was delivered between October and December 2024, achieving 99% coverage of dispatch personnel, which exceeds the 95% compliance threshold.

The training was reviewed and presented to the Monitor's Office, and feedback provided during the August 2024 site visit was incorporated into the final version.

Given this information, PRPB respectfully requests that this paragraph be recognized as having reached substantial compliance.

## Compliance Area: Searches and Seizures: Internal Controls and Accountability

> Paragraph 68

**CMR-12 Draft** - **Monitor evaluation page 75 of the Pathway Forward:** *"Also, the Monitor's Office has noted that most arrestees are not held in cells while arrest paperwork is being processed. This is contrary to generally accepted policing practice. It is extremely important that arrested persons are secured once inside police facilities to ensure the safety of officers, arrestees, as well as third parties. The Monitor's Office recommends policies addressing arrests and booking procedures be updated to reflect this generally accepted policing practice for officer safety."*

**PRPB comment to Draft CMR-12:** PRPB respectfully requests the removal of the referenced comment. PRPB acknowledges the Monitor's concerns regarding the securing of arrestees during the processing of arrest paperwork. However, PRPB respectfully clarifies that its current practices are aligned with General Order 600-631, which governs procedures related to the entry and exit of arrestees from holding cells. This policy does not mandate that all arrestees be placed in cells by default. Rather, it grants officers the discretion to evaluate the specific circumstances of each case—including the arrestee's behavior, risk level, and overall security considerations—before determining whether detention in a cell is warranted.

This discretionary approach ensures a balance between officer safety and respect for individual rights, especially in cases where the arrestee is cooperative, non-violent, and does not pose a threat. The use of cells is a preventive measure applied when necessary, not a universal requirement, and this flexibility is consistent with generally accepted policing practices focused on proportional response and community trust.

PRPB is committed to continuous improvement and is open to reviewing this policy in consultation with the Monitor's Office. However, it respectfully maintains that its current procedures comply with internal policy and appropriately support both safety and constitutional policing principles.

**CMR-12 Filed** - **Monitor evaluation page 75 of the Pathway Forward:** *"Also, the Monitor's Office has noted that most arrestees are not held in cells while arrest paperwork is being processed. Although this is not a requirements of this paragraph this practice is contrary to generally accepted policing practice. It is extremely important that arrested persons are secured once inside police facilities to ensure the safety of officers, arrestees, as well as third parties. The Monitor's Office recommends that PRPB update its policies addressing*
*arrests and booking procedures to reflect this generally accepted policing practice for officer safety."*

**PRPB response to the filing:** The Monitor recognized that it is not a requirement in the Agreement. The Puerto Rico Police Bureau (PRPB) maintains its position. It is important to note that this comment was previously included as part of CMR-11, and at that time, the Police Bureau clearly stated its position on the matter.

Also, PRPB would like to know in which units and under what circumstances the Monitor has observed this situation, so that the process can be reviewed and the appropriate explanations may be provided.

The current practices are aligned with General Order 600-631, which governs procedures related to the entry and exit of arrestees from holding cells. This policy does not mandate that all arrestees be placed in cells by default, nor it is required by this paragraph. <u>Rather, it grants officers the discretion to evaluate the specific circumstances of each case— including the arrestee's behavior, risk level, and overall security considerations—before determining whether detention in a cell is warranted.</u>  <u>This is what is consistent with generally accepted policing practices</u>.

This discretionary approach ensures a balance between officer safety and respect for individual rights, especially in cases where the arrestee is cooperative, non-violent, and does not pose a threat. The use of cells is a preventive measure applied when necessary, not a universal requirement, and this flexibility is consistent with generally accepted policing practices focused on proportional response and community trust.

## Compliance Area: Recruitment, Selection, and Hiring

- Paragraphs 101 – 102, 104 - 108

**CMR-12 Filed** - **Assessment Schedule:** April 2023 – March 2024

**PRPB response to the filing:** The assessment Schedule should be April 2024 – March 2025 for all paragraphs included in the section.

## Compliance Area: Training

> Paragraph 119

**CMR-12 Draft - Monitor evaluation page 122 of the Pathway Forward:** *"To sustain its current level of substantial compliance, PRPB should continue implementing a pre-service training program that exceeds the required 900 instructional hours and adheres to the quality and content standards outlined in the Agreement."*

**PRPB comment to Draft CMR-12:** PRPB respectfully requests that the stated premise be corrected. The Agreement establishes that the pre-service training program must consist of at least 900 hours of instruction aligned with generally accepted policing practices and the requirements of the Agreement. It does not require that this number be exceeded in order to achieve or sustain compliance.

**CMR-12 Filed - Monitor evaluation page 123 of the Pathway Forward:** *"To sustain its current level of substantial compliance, PRPB should continue implementing a pre-service training program that exceeds the required 900 instructional hours and adheres to the quality and content standards outlined in the Agreement. Although 900 hours is the minimum established by the Agreement, it is best practice to provide more than 900 hours of training. The program must remain consistent with generally accepted policing practices, with curriculum and instructional materials regularly reviewed and updated to reflect contemporary standards and policy changes."*

**PRPB response to the filing:** The Monitor modified its evaluation, but PRPB disagrees with the modification <u>as the Monitor exceeds the scope of the paragraph</u>. The Puerto Rico Police Bureau (PRPB) maintains its position. The Agreement establishes that the pre-service training program must consist of at least 900 hours of instruction aligned with generally accepted policing practices and the requirements of the Agreement. <u>It does not require that this number be exceeded in order to achieve or sustain compliance</u>.

The 900 hours encompass the necessary material to adequately train cadets to serve as police officers.

> Paragraph 123

**CMR-12 Draft - Monitor evaluation page 127 of the Compliance Assessment:** *"As of this reporting period, no such incentive process has been implemented. The Monitor's Office notes that while incentivization is not specifically required by the Agreement, it is considered a general policing best practice. Accordingly, we continue to emphasize the importance of integrating incentives into the FTO policy and program."*

**PRPB comment to CMR-12 Draft:** As established by the Monitor's Office, incentives are not required by the Agreement nor by the compliance methodology. Therefore, the status of the paragraph should not be impacted by this recommendation. PRPB respectfully requests the removal of this language from the paragraph's evaluation.

**CMR-12 Filed - Monitor evaluation page 128 of the Compliance Assessment:** *"Without an adequate FTO program, incoming cadets will not acquire the training required by the Agreement, PRPB policy, and best policing practices. The Monitor's Office emphasizes the need of mitigating any factors that might hinder or have a negative impact on FTOs, which are an integral part of the PRPB program.*

**PRPB response to the filing:** The Monitor's Office modified its position regarding incentives for the FTO Program. However, the Puerto Rico Police Bureau maintains that the program should be valued for its formative purpose, not based on the existence of additional incentives that are not required by the Agreement or its methodology. The focus should remain on the quality of the training and the preparation of newly graduated officers, rather than on compensatory measures that are not established as a requirement in the Agreement.

➢ Paragraph 123

**CMR-12 Draft - Monitor evaluation page 128 of the Compliance Assessment:** *"For Target 3, the Monitor's Office reviewed 48 apprentice files and found no information regarding the completion of Phase Four of the FTO Program. PRPB recently modified the 800-hour training requirement by introducing four distinct phases. The final phase, covering criminal investigation techniques, is now being taught at the Academy by instructors from the Criminal Investigation Division, rather than by FTOs in the field as was previously the practice. This change is being implemented for the first time with Class 235, which is currently in progress. As a result, Phase Four has not yet been evaluated for effectiveness, and Target Three is not met."*

**PRPB comment to CMR-12 Draft:** PRPB respectfully clarifies that the change described—regarding the delivery of Phase Four at the Academy by instructors from the Criminal Investigation Division—has not yet been implemented. Therefore, PRPB requests that the files reviewed under Compliance Target 3 be reevaluated based on the FTO Program structure in effect during the reporting period. The files submitted included the required Phase Four documentation. Accordingly, PRPB respectfully requests that Compliance Target 3 be considered as met, and that the paragraph be reassessed and marked as achieving Substantial Compliance.

**CMR-12 Filed - Monitor evaluation page 128 of the Compliance Assessment:** *"For Target 3, the Monitor's Office reviewed 48 apprentice files and found information regarding the completion of Phase Four of the FTO Program."*

**PRPB response to the filing:** The Monitor's Office reconsidered the evaluation and marked Objective 3 as Met. However, <u>it did not update the paragraph's rating to</u>

<u>"substantial compliance," which is the appropriate classification once all three objectives have been met</u>.

➢ Paragraph 126

**CMR-12 Draft - <u>Monitor evaluation page 131 of the Compliance Assessment:</u>**
*"Partially Compliant: PRPB continues to recognize the importance of providing structured training for apprentice agents and adheres to GO 701 (FTO Program) in the coordination and delivery of the program. During this reporting period, the Monitor's Office reviewed 30 apprentice agent files from the 5 regions conducting FTO training: Bayamón, Caguas, Carolina, Fajardo, and San Juan. The review found that the files were thorough and well-documented, reflecting compliance with policy-driven processes. Each file included evaluations for all four phases of the program, as well as evaluations of the assigned FTOs using PPR 701.4 (Apprentice file included evaluations for all four phases of the program, as well as evaluations of the assigned FTOs using PPR 701.4 (Apprentice Agent Evaluation Final Phase).*

**<u>PRPB comment to CMR-12 Draft:</u>** PRPB respectfully requests a reconsideration of the rating assigned to this paragraph and that compliance be updated to "substantial". According to the requirement established in the paragraph—"PRPB shall ensure that recruits in the field training program are trained in a variety of geographic areas within Puerto Rico; in a variety of shifts; and with several FTOs"—and based on the content of the Monitor's first evaluation paragraph, this condition is met. The Monitor's Office reviewed 30 apprentice agent files from the five regions conducting FTO training and found them thorough, well-documented, and compliant with policy-driven processes. This directly supports compliance with the core requirement of varied geographic and operational exposure. It is our understanding that the observations included in the second paragraph of the evaluation relate to opportunities for future development and continuous improvement, but do not reflect non-compliance with the specific requirement. Therefore, we respectfully request that the compliance rating for this paragraph be revised to "substantial compliance." Also, the Compliance Targets for this paragraph are evaluated as "MET".

**CMR-12 Filed - <u>Monitor evaluation page 131 of the Compliance Assessment:</u>** *"As established by the court approved methodology, Paragraph 126 is assessed with Paragraph 123, and thus found to be partially compliant. Once the compliance status of Paragraph 123 reaches substantial compliance, this paragraph will reach substantial compliance. Full implementation of this practice islandwide is still in development. Additional regions are developing the FTO program. For example, during this reporting period Ponce had an FTO coordinator but has yet to conduct any FTO training."*

**<u>PRPB response to the filing:</u>** The Monitor's Office modified its evaluation and indicated that Paragraph 126 is assessed with Paragraph 123, which has not yet been rated as in substantial compliance. According to the Monitor's interpretation, both paragraphs must achieve substantial compliance simultaneously. Additionally, the Monitor stated that the FTO Program should be implemented island-wide, noting that certain regions are still in development.

However, Paragraph 123 should be considered in substantial compliance, <u>as all three established targets were met</u>. Regarding Paragraph 126, <u>the language of the Agreement does not require implementation across the entire island</u>, but rather the establishment of the FTO Program in various regions.

Currently, the FTO Program is operational in the regions of Bayamón, Caguas, Carolina, Fajardo, and San Juan, and is under development in the Ponce region, demonstrating compliance with the paragraph's requirements.  This complies with the requirements of the Agreement.

## Compliance Area: Supervision & Administration

➢ Paragraphs 145 & 146

**CMR -12 Draft** - <u>Monitor evaluation page 163 of the Compliance Targets:</u> *"Missed Compliance Targets: Target #3: 95% of sampled personnel files indicate that supervisors are trained and certified on policies regarding performance evaluations (or scheduled for training, in the case of mid-year reviews).*

**PRPB comment to CMR-12 Draft:** The Performance Evaluation Training was conducted in person for Sargeant's promoted in 2023 and virtually for all other supervisors, from Sargeant to Colonel. The training was completed by December 31, 2024, with a total of 2,097 supervisors trained. Accordingly, PRPB respectfully requests that Compliance Target 3 be considered as met, and that both paragraphs be reassessed and marked as achieving Substantial Compliance. Appendix A.

**CMR-12 Filed** - <u>Monitor evaluation page 163 of the Compliance Targets:</u> *"Missed Compliance Targets: Target #3: 95% of sampled personnel files indicate that supervisors are trained and certified on policies regarding performance evaluations (or scheduled for training, in the case of mid-year reviews).*

**CMR-12 Filed** - <u>Monitor evaluation page 163 of the Compliance Assessment:</u> **"***Although the training for performance evaluations and the new process has been conducted, the Monitor's Office continues to find that the implementation of the training is not being operationalized, most evidently among supervisors with tenure."*

**PRPB response to the filing:** In its evaluation, the Monitor's Office acknowledges that the training was provided; however, Target #3, related to training, remains classified as Missed. The Puerto Rico Police Bureau maintains that the training was properly delivered and that the supporting evidence was submitted for review, and therefore Target #3 was met.

## Compliance Area: Civilian Complaints, Internal Investigations, and Discipline

➢ Paragraph 166

**CMR-12 Draft** - <u>**Monitor evaluation page 192 of the Compliance Assessment:**</u> *"While PRPB has met the compliance threshold for training related to this paragraph, there are a number of PRPB employees who continue to produce illegible documents including the Administrative Complaint Form (PPR 311.1), Hojas de Entrevista, and other related reports commonly found in a SARP file. The Monitor's Office is unable to assess illegible documents provided in any language."*

<u>**PRPB comment to CMR-12 Draft:**</u> PRPB respectfully requests the removal of the referenced comment. As clarified during prior meetings with the Monitor's Office, the illegible entries referenced—such as those found in the Administrative Complaint Form (PPR 311.1)—are written by complainants or members of the public, not by PRPB personnel.

**CMR-12 Filed** - <u>**Monitor evaluation page 193 of the Compliance Assessment:**</u> *"In the past, illegible 311.1 forms (Complaint Forms) written or accepted by PRPB officers were submitted to the Monitor's Office for evaluation. During this reporting period, most illegible 311.1 forms were handwritten by the complainant and not by a PRPB member. The most glaring examples of illegible documents are Hojas de Entrevistas, which are often used by PRPB investigators to capture an officers' contemporary written version of a particular incident. Many of these forms are written using an illegible version of cursive handwriting and are unreadable by the Monitor's Office. These reports are crucial to any investigation and frequently involve serious events such as arrests, UOFs, internal reprisals, and allegations of criminal behavior involving a PRPB member. While the Monitor's Office is aware that a future Benchmark Analytics IT solution may eventually cure this handwriting defect, the Monitor's Office must be able to read and digest all current reports pertaining to any internal investigation conducted by PRPB against any of its members. Accordingly, and until such time as a Benchmark Analytics IT solution has cured this defect, PRPB must not allow handwritten Hojas de Entrevista or other similar reports to be submitted by any PRPB member unless it is typewritten, dated, signed, and completely legible."*

<u>**PRPB response to the filing:**</u> The Monitor developed its evaluation and proposed that the process related to Form 311.1 – Administrative Complaints Form be fully automated. However, it is important to note that the current process already allows for the submission of information through multiple channels, ensuring accessibility, flexibility and automation in filing complaints. The complaints are received through Mailing Address, Toll-Free Phone, Fax, Website, Email and Digital Form.

This multi-channel system allows any citizen—whether within or outside the Bureau—to submit a complaint, either anonymously or with identification, based on their preference and comfort level.

Further automating the process may limit existing methods of submission and could discourage complainants, particularly those in vulnerable situations or with limited trust in institutional systems. Therefore, the approach should remain focused on broad accessibility and responsiveness to the diverse needs of the public.

## Compliance Area: Community Engagement and Public Information

- Paragraph 207

**CMR-12 Draft** - <u>**Monitor evaluation page 248 of the Compliance Assessment:**</u> *"However, training on community policing was not included in the approved training schedule submitted for this reporting period"*

<u>**PRPB comment to CMR-12 Draft:**</u> PRPB respectfully requests the removal of the referenced sentence. The 2025 training plan was submitted to and approved by the parties. Furthermore, Community Policing training was delivered in both 2023 and 2024, achieving a completion rate of over 95%. This meets and exceeds the required standards and is consistent with the objectives established in the Training Sustainability Plan submitted to the Court.

**CMR-12 Filed** - <u>**Monitor evaluation page 249 of the Compliance Assessment:**</u> *"However, training on community policing was not included in the approved training schedule submitted for this reporting period"*

<u>**PRPB response to the filing:**</u> The Monitor's Office maintained the previously noted comment in the evaluation without changes. However, in paragraphs 205 and 206, the Monitor's Office clarified the following:

"The Monitor's Office notes that although the Agreement does not require annual community policing training, the Commonwealth should incorporate principles of community policing in all of its training, including those topics that should be conducted annually. The community policing training should be conducted as a refresher course periodically."

- Paragraph 213

**CMR-12 Draft** - <u>**Monitor evaluation page 261 of the Compliance Assessment:**</u> *"A review of PRPB's website indicates that the CICs published their annual report on March 2, 2025, which is after the outlined deadline"*

<u>**PRPB comment to CMR-12 Draft:**</u> PRPB clarifies that the annual report referenced was published on January 31, 2025, in accordance with the applicable General Order. Supporting documentation is included as an annex. Appendix B.

**CMR-12 Filed** - **Monitor evaluation page 262 of the Compliance Assessment:** *"A review of PRPB's website indicates that the CICs published their annual report on March 2, 2025, which is after the outlined deadline"*

**PRPB response to the filing:** The Monitor's Office maintained the comment that a review of PRPB's website indicates the CICs published their annual report on March 2, 2025, which is after the outlined deadline, failing to address PRPB's comment. Evidence was provided demonstrating that the report was in fact published on January 31, 2025, within the required timeframe. PRPB maintains its position regarding the timely publication of the report, and therefore the statement should be corrected.