**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff,**<br><br>**v.**<br><br>COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>**Defendants.** | **Civil No.** 12-2039 (FAB) |

**MEMORANDUM AND ORDER**

Before the Court is the Chief Federal Monitor's ("Monitor") memorandum related to the Puerto Rico Police's ("PRP") administrative investigation into the conduct of current Sergeant Abdiel Soto-Méndez, Complaint No. 2025-00661, together with the certified English translations of the underlying administrative record. See Docket No. 3173.

For the reasons set forth below, the Court finds that the Superintendent's disposition declining to discipline Sergeant Soto-Méndez is inconsistent with the "Agreement for the Sustainable Reform of the Puerto Rico Police Bureau" ("Agreement"). See Docket No. 60. Accordingly, the Court vacates the Superintendent's disposition (Exhibit 8, Docket No. 3173) as inconsistent with the Agreement, and remands the matter to defendants Commonwealth of Puerto Rico and the PRP for additional review consistent with this Order.

## I. FACTUAL BACKGROUND

### A. Referral to the Monitor

This matter arose from a letter dated April 23, 2026, in which the President of the Senate of Puerto Rico, the Honorable Thomas Rivera-Schatz, requested that the Monitor examine an incident involving then Agent Abdiel Soto-Méndez ("Agent Soto"), who was assigned to the security detail of Ms. Janet Parra-Mercado, at the time nominated to become the Commonwealth's Attorney General.

PRP opened an administrative case against Agent Soto for attempting to obtain certain information from the Director of the Internal Security and Electronic Surveillance Bureau of the Puerto Rico Capitol District. The Senate President asked the Monitor to investigate and assess whether the results of PRP's investigation and Agent Soto's promotion process to the rank of sergeant conformed to the Agreement.

On April 29, 2026, the Monitor responded to the Senate President. He explained that the Monitor's office is solely subject to the Court's orders and supervision.[1] The Court then instructed the Monitor to investigate the matter and report his

[1]Under paragraph 226 of the Agreement, the Monitor "shall be subject to the supervision and orders of the Court, consistent with this Agreement, the Court's dismissal order, and applicable law."

findings. His memorandum of June 17, 2026, and the certified translations at Docket No. 3173 are the product of that review.

**B. The April 3, 2025 Capitol District Incident**

PRP's administrative record establishes that on April 3, 2025, at approximately 9:22 p.m., Sergeant José R. Calderón-Hernández ("Sergeant Calderón"), Director of the Internal Security and Electronic Surveillance Bureau of the Capitol District, noticed a missed telephone call from Agent Soto's telephone number and returned the call. Sergeant Calderón recognized Agent Soto's voice, and the two exchanged a cordial greeting.

Agent Soto then asked Sergeant Calderón whether he knew who had recently visited "the office of the Senator," which Sergeant Calderón understood to mean the office of the President of the Senate. Sergeant Calderón replied that he lacked authorization to divulge that information, and the call ended without further inquiry from Agent Soto. See Docket No. 3173, Ex. 7.

Sergeant Calderón reported the incident to the President of the Senate. The matter became public. This led PRP's Office for Professional Responsibility to open an administrative investigation into Agent Soto. PRP assigned the investigation to Second Lieutenant Miguel A. González-Rodríguez, Badge No. 7-25257 ("Lieutenant González"). See Docket No. 3173, Exhibits 1, 2, 3.

**C. The PRP's Internal Investigation**

Lieutenant González summoned Agent Soto, who provided a certified statement on May 21, 2025. Agent Soto was advised of his obligation to state the truth and to report any relevant issue even if not asked directly about any issue. Agent Soto declined to answer whether he placed the call, its purpose, or whether he acted in a personal capacity, stating each time only that his legal representation had instructed him not to testify (in other words not to answer any question.) Crucially, as further explained in this memorandum, Agent Soto did not invoke his privilege against self-incrimination. Agent Soto's counsel did not even attend Agent Soto's interview with Lieutenant González. See Docket No. 3173, Ex. 3.

Lieutenant González concluded that the substance of the call could not be established as a fact. Because of Agent Soto's refusal to cooperate, however, Lieutenant González recommended that Agent Soto be found responsible for Minor Violation No. 1[2]

[2] According to Regulation No. 9001, Article 14.6, Minor Violation No. 1 is when a police officer shows "ineptitude, carelessness, bias, or negligence in the performance of his duties, functions, and responsibilities."

and Major Violation No. 18[3] of Article 14.6 of PRP's Regulation No. 9001.

### D. The OAL's Probative Analysis and the Superintendent's Disposition

The PRP's Office of Legal Affairs ("OAL") reviewed Lieutenant González's findings and recommendations. In its Probative Analysis Memorandum of October 16, 2025, the OAL recognized that PRP members have an ethical commitment to truth and transparency, and that they "shall cooperate fully in any internal administrative investigation carried out by this or other authorized entity and shall provide true, complete, and correct information regarding any issue under investigation," quoting General Order No. 600-617, Code of Ethics, pt. III(A), (D)(1). See Docket No. 3173, Exs. 7, 9.

The OAL, nonetheless, characterized Sergeant Calderón's inference that Agent Soto's question served an improper purpose as an assumption drawn from experience and inflection rather than "real evidence," and agreed with Lieutenant González that the substance of the call could not be established as a fact. The OAL then indicated that the violations could not be proven "with clear,

[3] A Major Violation No. 18 occurs when police officers do "[n]ot follow or disobey legal orders communicated verbally or in writing by any superior or official of the Puerto Rico Police with authority to do so, or perform insubordination acts, or lack of discipline. For purposes of these violations, it will be understood as superior the person who has a higher rank or due to the position designated."

robust, and convincing evidence," a standard more demanding than Paragraph 159's preponderance-of-the-evidence requirement. Later in the same memorandum, however, the OAL described its overall conclusion by a different evidentiary standard, indicating that the record, which included testimony as well as documentary evidence, did not establish, "based on the preponderance of the evidence," that Agent Soto's actions or omissions violated PRP policy.

The OAL separately acknowledged, however, that Agent Soto "did not cooperate with the administrative process," referring to Agent Soto's statement that counsel had instructed him not to testify. Despite this acknowledgement, the OAL reiterated that a PRP member "has the responsibility to cooperate fully with any internal administrative investigation carried out by this entity." Without citing any legal basis or authority, the OAL indicated that, "in light of the totality of the circumstances," it was "forced to conclude" that the record was insufficient to sustain the violations; and recommended that the complaint be deemed "NOT PROVEN," but that Agent Soto be "oriented with the purpose of advising [Agent Soto] regarding the link between his actions and/or omissions" and PRP policy. See Docket No. 3173, Ex. 7.

The Superintendent adopted the OAL's recommendation that an "Orientation" sufficed. Agent Soto received an orientation letter, served on him personally, on November 2, 2025, which indicated that it "is a corrective measure and does not constitute a disciplinary measure." See Docket No. 3173, Ex. 8.

### E. The Monitor's Findings and Recommendation

In his June 17, 2026 memorandum, the Monitor concluded that Agent Soto's refusal to answer Lieutenant González's questions, given on the advice of counsel and without expressly invoking his privilege against self-incrimination, supported discipline. The Monitor took the position that Lieutenant González's recommended findings were appropriate, and that the OAL erred by confining its analysis to whether the underlying complaint could be proven rather than focusing on Agent Soto's refusal to cooperate with the investigation itself.

## II. DISCUSSION

After considering the Monitor's memorandum, the Court turns to the threshold question on whether it has the authority to determine whether the disposition of Complaint No. 2025-00661 falls within the class of violations that federal courts may enforce under a consent decree. Only if that authority exists can the Court determine whether the Superintendent's disposition, on

this record, departs from the Agreement's requirements. The Court concludes that it does have that authority.

**A. The Court's Authority to Enforce the Agreement**

A consent decree is both a contract and a judicial decree. Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004). "Federal courts[, however,] are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced." Id., at 440. In this vein, "[i]t is well established that the district court has the inherent authority to enforce compliance with a consent decree that it has entered in an order, to hold parties in contempt for violating the terms therein, and to modify a decree." Nehmer v. U.S. Dep't of Veterans Affs., 494 F.3d 846, 860 (9th Cir. 2007); see also United States v. Commonwealth of Puerto Rico, No. CV 12-2039 (FAB), 2022 WL 20402343, at *2 (D.P.R. Apr. 27, 2022).

Furthermore, Paragraph 294 of the Agreement permits the Court to enforce the Agreement's terms until the Commonwealth has maintained full and effective compliance for two consecutive

years.[4] That enforcement power, however, has a limit. A court may act only where a party has actually violated a term of the decree. Ricci v. Patrick, 544 F.3d 8, 22 (1st Cir. 2008) (quoting Pigford v. Veneman, 292 F.3d 918, 924 (D.C. Cir. 2002)).

The question here is whether the Superintendent's disposition of Complaint No. 2025-00661 violates a specific obligation that the Agreement imposes. For the reasons indicated below, it does.

**B. Section XI of the Agreement**

Section XI of the Agreement governs civilian complaints, internal investigations, and discipline within PRP. Six paragraphs from Section XI matter here.

Pursuant to paragraphs 159, 180 and 186 of the Agreement, the PRP must hold officers accountable for misconduct through a disciplinary system that is fair and consistent, on findings

---

[4] Paragraph 294 of the Agreement states:

> To ensure that the provisions of this Agreement are properly and timely implemented, the Court shall retain jurisdiction to enforce this Agreement until such time as the Commonwealth of Puerto Rico and PRPD have achieved full and effective compliance with this Agreement and maintained such compliance for no less than two consecutive years. At all times, PRPD shall bear the burden of demonstrating full and effective compliance with this Agreement. Full and effective compliance requires either sustained compliance with all requirements of this Agreement, or sustained and continuing improvement in constitutional policing, as demonstrated pursuant to the Agreement's outcome measures.

supported by a preponderance of the evidence,[5] consistent with the facts,[6] and based on all relevant evidence.[7]

Likewise, pursuant to paragraph 181, PRP must require officers to cooperate with administrative investigations. That duty includes appearing for an interview and producing the documents and evidence that the investigators request.[8]

---

[5] Paragraph 159 of the Agreement states:

> PRPD shall ensure that all allegations of officer misconduct are received and are fully and fairly investigated; that all investigative findings are supported by a preponderance of the evidence; and that all officers who commit misconduct are held accountable pursuant to a disciplinary system that is fair and consistent. PRPD shall develop policies and practices for the intake, investigation, and adjudication of misconduct complaints against PRPD officers. These policies and practices shall comply with applicable law and comport with generally accepted policing practices, and shall include the requirements set out below.

[6] Paragraph 180 of the Agreement states that "PRPD shall ensure that investigations of officer misconduct are thorough and the findings are consistent with the facts."

[7] Pursuant to paragraph 186:

> In each investigation, PRPD shall consider all relevant evidence, including circumstantial, direct, and physical evidence. There will be no automatic preference for an officer's statement over a non-officer's statement, nor will PRPD disregard a witness' statement merely because the witness has some connection to the complainant or because of any criminal history. PRPD shall make efforts to resolve material inconsistencies between witness statements.

[8] Paragraph 181 states:

> PRPD shall require officers to cooperate with administrative investigations, including appearing for an interview when requested by a PRPD or Commonwealth investigator and providing all requested documents and evidence. Supervisors shall be notified when an officer under their supervision is summoned as part of an administrative investigation and shall facilitate the officer's appearance, unless such notification would compromise the integrity of the investigation.

An officer's duty to cooperate, however, has one exception. Pursuant to paragraph 182, an officer need not give a statement where a potential criminal investigation or prosecution of that officer exist.[9] Pursuant to paragraph 183,[10], [11] absent that criminal exposure, investigators shall not even warn the officer that he has a right to withhold a self-incriminating answer.

**C. Analysis of the OAL's and Superintendent's Disposition**

Pursuant to the Court's review of the underlying administrative investigation, the Monitor's memorandum and the

---

[9] Paragraph 182 states:

> The subject officer of an administrative investigation shall not be compelled to provide a statement to administrative investigators where there is a potential criminal investigation or prosecution of the officer until the remainder of the investigation has been completed, and after the administrative investigators have consulted with the prosecutor's office and the SPR commander, except where the taking of such a statement is authorized by the Superintendent after consulting with the prosecutor's office.

[10] Pursuant to Paragraph 183, "[w]here there is no potential criminal investigation or prosecution of the subject officer, SPR investigators shall not warn the subject officer that he or she has a right not to provide a statement that may be self-incriminating."

[11] Paragraphs 182 and 183 stem from Garrity v. New Jersey, 385 U.S. 493 (1967) which holds that the government may not use, in a later criminal prosecution, a statement it compelled from a public employee by threatening an adverse employment action for silence, nor any evidence derived from that statement. Id., at 500. The immunity is automatic as it attaches the moment the employer compels an answer under threat of discipline, whether or not the employer or anyone else says so. Sher v. U.S. Dep't of Veterans Affs., 488 F.3d 489, 501-502 (1st Cir. 2007). No warning, no prosecutor's letter, and no formal grant is necessary to create the immunity, and none is necessary to preserve it. Id. at 502. Because a compelled statement is already shielded from criminal use, the employee ordinarily has nothing left to protect by remaining silent, and the employer may order him to answer and discipline him for refusing. Gardner v. Broderick, 392 U.S. 273, 278 (1968).

relevant paragraphs of Section XI of the Agreement, Agent Soto had no lawful basis to refuse to answer Lieutenant González's questions, for two reasons.

First, no criminal exposure excused Agent Soto from answering Lieutenant González's questions. Nothing in the record shows that the PRP referred this matter for criminal investigation, consulted a prosecutor, or otherwise identified any potential criminal case against Agent Soto. Because there was no potential criminal investigation or criminal conduct alleged, Paragraph 182 of the Agreement did not excuse Agent Soto from his duty to cooperate and answer Lieutenant González's questions pursuant to Paragraph 181, and Paragraph 183 prohibited Lieutenant González from warning Agent Soto that he had a right not to provide a statement that could be self-incriminating.

Second, and independently, Agent Soto never invoked his privilege against self-incrimination. Agent Soto's certified statement demonstrates that Lieutenant González advised him of his duty to tell the truth. When Agent Soto refused to answer whether he placed the call, why he placed it, or whether he acted in a personal capacity, he relied on his lawyer's advice that he not testify. That reliance is insufficient because it is not an invocation of the individual's Fifth Amendment privilege against self-incrimination. In contrast to the <u>Garrity</u> immunity, the

privilege against self-incrimination is not similarly self-executing and a witness who desires its protection must expressly claim it at the time he relies on it. Salinas v. Texas, 570 U.S. 178, 184-185 (2013). Because Agent Soto refused to answer any question at all without proper recourse to Paragraph 182 and failed to invoke his Fifth Amendment Rights, the only issue presented here is whether Agent Soto's silence may be disciplined.[12]

Measured against this framework, the OAL's disposition does not survive scrutiny.[13]

The OAL never explained why Agent Soto's failure to cooperate did not warrant discipline. The OAL's own report concedes that Agent Soto did not cooperate. Having found that violation, the OAL did not treat it as a basis for discipline, and it cited no legal basis or authority for setting it aside. That

[12] An employer does not violate an officer's privilege against self-incrimination by disciplining an officer for refusing to answer questions that relate specifically, directly, and narrowly to his official duties. O'Brien v. DiGrazia, 544 F.2d 543, 546 (1st Cir. 1976).

[13] The OAL applied the wrong standard of proof. Paragraph 159 requires that PRP's investigative findings rest on a preponderance of the evidence. The OAL instead required "clear, robust, and convincing evidence," a standard the Agreement does not authorize and one considerably more demanding than preponderance. The OAL invoked the correct preponderance standard only later in its findings where it concluded "NOT PROVEN," but it never revisited the call-content question under the correct preponderance standard. This error requires correction on remand, though it is not by itself dispositive. Lieutenant González recommended discipline because of Agent Soto's refusal to cooperate with the investigation, not because of the content of the call, and the OAL's extended discussion of what Sergeant Calderón could or could not infer about Agent Soto's purpose does not bear on Lieutenant González's recommendation.

omission is itself a departure from Paragraph 181 of the Agreement, which requires the PRP to compel cooperation with administrative investigations. In the Monitor's last Report from June 2026, the Monitor noted that there was evidence that there continues to be a misunderstanding as to Garrity immunity. (Docket No. 3153-1 at p. 222.) The Court is unsure if the OAL's departure from Paragraph 181 stems from this misunderstanding. See id. at p. 222 n.67 ("Surely there are lingering misconceptions concerning Garrity among SARP investigators as well as among the five different layers of review that SARP cases normally follow."). In any case, Garrity immunity does not shield Agent Soto from being disciplined for his failure to cooperate in an administrative inquiry against him; Garrity immunity only impedes the government from using an employee's compelled statements given in an administrative investigative interview, against him or her in a future criminal proceeding.

To the extent the OAL's unexplained invocation of "the totality of the circumstances" reflects a view that Agent Soto's reliance on counsel's advice excused his failure to cooperate, that view fares no better. Counsel was not even present at Agent Soto's interview with Lieutenant González. An officer's reliance on counsel's advice does not excuse a failure to answer duty-related questions in a purely administrative inquiry, where, as

here, no criminal exposure existed and the officer never invoked his privilege against self-incrimination personally and expressly. Sher, 488 F.3d at 504-06 (sustaining a failure-to-cooperate charge against a represented employee, and distinguishing Modrowski v. Dep't of Veterans Affairs, 252 F.3d 1344 (Fed. Cir. 2001), where the employee had no chance to consult counsel before he was questioned). Agent Soto's refusal to answer questions, therefore, supports discipline on its own terms. Accordingly, Agent Soto can be disciplined for refusing to answer Lieutenant González's questions, in accordance with Violations No. 1 and No. 18 of Regulation 9001, as stated in Lieutenant González's recommended findings. Gardner, 392 U.S. at 278; Docket No. 3173-1 at pp. 6-7.

Paragraph 159 of the Agreement requires the PRP to hold officers accountable for misconduct through a disciplinary system that is fair and consistent. The Superintendent's own letter states that the orientation "is a corrective measure and does not constitute a disciplinary measure." A report that concedes that Agent Soto did not cooperate, followed by a disposition that imposes no discipline for it, does not amount to accountability. The Superintendent's disposition, therefore, departs from Section XI of the Agreement, and it triggers the Court's enforcement authority pursuant to Paragraph 294.

To enforce a decree, however, the Court is mindful that "federal courts in devising a remedy must take into account the interests of state and local authorities in managing their own affairs," Milliken v. Bradley, 433 U.S. 267, 280–281 (1977), and should use "the least possible power adequate to the end proposed." Spallone v. United States, 493 U.S. 265, 280 (1990) (citing Anderson v. Dunn, 19 U.S. (6 Wheat.) 204, 231 (1821)). The Court may require the officials responsible to perform their obligations, but may not go beyond their good faith professional best efforts. Brewster v. Dukakis, 675 F.2d 1, 5 (1st Cir. 1982).

Consistent with these principles, the Court vacates the Superintendent's disposition. The matter is remanded to the Commonwealth with instructions to reconsider Lieutenant González's recommendation pursuant to the correct legal standard – a preponderance of the evidence - and the obligations imposed by the Agreement, namely, that an officer's refusal to answer duty-related questions, in an administrative inquiry and without invoking the privilege against self-incrimination, supports discipline.

## III. CONCLUSION

For the reasons set forth above, the Superintendent's disposition in Complaint No. 2025-00661 is inconsistent with Section XI of the Agreement. Accordingly, the Court vacates the

Superintendent's disposition in Complaint No. 2025-00661, and remands the matter to the Commonwealth and the PRP to reevaluate Lieutenant González's recommendation consistent with this Order and the Agreement.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 21, 2026.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE